## ANNEX 1

*In re Bridgeport Holdings, Inc.*

**No. 03-12825(PJW)**

**2005 Bankr. LEXIS 1552**

**(Bankr. D. Del. Aug. 12, 2005)**

LEXSEE 2005 BANKR LEXIS 1552

**In Re: BRIDGEPORT HOLDINGS, INC., et. al., Debtors. KEITH F. COOPER, as Liquidating Trustee of the Bridgeport Holdings, Inc. Liquidating Trust, Plaintiff, v. TECH DATA CORPORATION, Defendant.**

**Chapter 11, Case No. 03–12825 (PJW), Jointly Administered, Adv. Proc. No. 05–50064 (PJW)**

**UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE**

**2005 Bankr. LEXIS 1552**

**August 12, 2005, Decided**

**PRIOR HISTORY:** Cooper v. Tech Data Corp.(In re Bridgeport Holdings, Inc.), 326 B.R. 312, 2005 Bankr. LEXIS 1257 (Bankr. D. Del., 2005)

**LexisNexis(R) Headnotes**

**COUNSEL:** **[*1]** For Keith F. Cooper, as Liquidating Trustee of the Bridgeport Holdings Inc. Liquidating Trust, Plaintiff: S. Margie Venus, Akin Gump Strauss Hauer & Feld, LLP, Houston, TX; William H. Sudell, Jr., Morris, Nichols, Arsht & Tunnell, Wilmington, DE.

For Tech Data Corporation, Defendant: Andrew J. Flame, Howard A. Cohen, Drinker Biddle & Reath LLP, Wilmington, DE.

For Bridgeport Holdings, Inc., Debtor: Brendan Linehan Shannon, Edmon L. Morton, Kara S. Hammond, Matthew Barry Lunn, Young, Conaway, Stargatt & Taylor, Wilmington, DE; Daniel B. Butz, Morris, Nichols, Arsht & Tunnell, Wilmington, DE; Gordon Z. Novod, Jack A. Hazan, Robert T. Schmidt, Kramer Levin Naftalis Frankel, LLP, New York, NY.

For United States Trustee, U.S. Trustee: David Michael Klauder, Wilmington, DE.

For OFFICIAL COMMITTEE OF UNSECURED CREDITORS, Creditor Committee: Christopher Martin Winter, Duane Morris LLP, Wilmington, DE; Daniel B. Butz, Morris, Nichols, Arsht & Tunnell, Wilmington, DE; William H. Sudell, Jr., Morris, Nichols, Arsht & Tunnell, Wilmington, DE.

Attorneys for Defendant and Movant, Tech Data Corporation: Charles M. Tatelbaum, Stephen C. Hunt, Adorno & Yoss, LLP, Fort Lauderdale, **[*2]** FL.

Attorneys for Plaintiff, Keith F. Cooper, as Liquidating Trustee of the Bridgeport Holdings, Inc. Liquidating Trust: Daniel B. Butz, Morris, Nichols, Arsht & Tunnell, Wilmington, DE; Matthew S. Okin, Katy Gottsponer, Akin Gump Strauss Hauer & Feld LLP, Houston, TX.

**JUDGES:** Peter J. Walsh, United States Bankruptcy Judge.

**OPINIONBY:** Peter J. Walsh

**OPINION:**

### REVISED MEMORANDUM OPINION *

* This is a revision of the Court's Memorandum Opinion of July 1, 2005 (Doc. # 23) to correct two minor factual misstatements. See pages 18 and 19.

**WALSH, J.**

In this adversary proceeding defendant Tech Data Corporation's ("Tech Data") motion (Adv. Doc. # 4) n1 seeks to dismiss the preference action complaint of Keith F. Cooper, as liquidating trustee (the "Liquidating Trustee") of the Bridgeport Holdings, Inc. Liquidating Trust (the "Liquidating Trust"). For the reasons set forth below, Tech Data's motion will be denied.

n1 References to documents filed in adversary proceeding 05–50064 will be cited as "(Adv. Doc. # .)." References to documents filed in chapter 11 case number 03–12825 will be cited as "(Doc. # .)."

**[*3]**

### BACKGROUND

2005 Bankr. LEXIS 1552, *3

On September 10, 2003, Bridgeport Holdings Inc. and its domestic affiliates (the "Debtors" or "Bridgeport") filed voluntary petitions under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code"). n2 Prior to filing for bankruptcy, the Debtors were one of the country's largest specialty catalog and online retailers for computer hardware, software, and related products. Excluding foreign operations, the Debtors had net sales of approximately $1.15 billion for the fiscal year ending December 31, 2002. (Doc. # 815 at 7.) Immediately prior to and during the course of the Debtors' chapter 11 cases, substantially all of their assets were sold. Thereafter, the Debtors' disclosure statement (the "Disclosure Statement") was approved. Pursuant to the order (Doc. # 937) issued by this Court on September 21, 2004 (the "Confirmation Order"), the Debtors' plan of distribution (the "Plan") and liquidating trust agreement (the "Liquidating Trust Agreement") were confirmed, and the Plan became effective on October 14, 2004. n3 Under the terms of the Confirmation Order and Plan, the Liquidating Trustee is the designated [*4] representative of the Debtors' estates with respect to all causes of action arising under § 547 of the Bankruptcy Code. n4 (Adv. Doc. # 1 at 3.)

n2 Particular sections of the Bankruptcy Code will be cited herein as "§    ."

n3 The Disclosure Statement, Plan, Confirmation Order, and Liquidating Trust Agreement will be referred to collectively as the "Confirmation Documents."

n4 Section 547(b) provides:

(b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made

(A) on or within 90 days before the date of the filing of the petition; or

(B) between 90 days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and

(5) that enables such creditor to receive more than such creditor would receive if

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

[*5]

This liquidating chapter 11 concerns more than 1,000 creditors, roughly $102 million in general unsecured claims, and over 3,000 property transfers aggregating over $221 million made during the 90 day pre-petition period. (Doc. # 1; Doc. # 815 at 6.) Tech Data is only one of the numerous entities that may have received a preferential transfer from the Debtors. Virtually none of the details relating to the 3,000 potential preference actions were listed in the Debtors' Confirmation Documents. As is often the case in large chapter 11 liquidations, the Plan was confirmed well before any preference actions were filed.

On January 13, 2005, the Liquidating Trustee filed its § 547 complaint alleging that Tech Data had received over $19 million in preferential transfers. In its motion to dismiss, Tech Data argues that the Liquidating Trustee is precluded from bringing this preference action because it was not sufficiently preserved in the Debtors' Disclosure Statement and Plan. (Adv. Doc. # 5 at 5.) Tech Data argues that this action is bared by the doctrine of res judicata and, therefore, this Court lacks jurisdiction to hear the preference claim. In response, the Liquidating Trustee [*6] points to numerous provisions in the Confirmation Documents regarding the preservation of preference actions for post-confirmation adjudication. A number of these provisions are detailed below.

The Plan defines "Cause of Action" in a manner that preserves all claims that have been or could have been

brought by or on behalf of the Debtors, including those "arising under chapter 5 of the Bankruptcy Code." (Doc. # 937, Ex. A at 3.) The term "Cause of Action" is then incorporated into the definition of "Transferred Causes of Action" and paragraph 24 of the Confirmation Order, Article V Section C of the Disclosure Statement, and Article IV Section E of the Plan vest any Transferred Cause of Action with the Liquidating Trust and give the Liquidating Trustee power to pursue those claims. Specifically, paragraph 24 of the Confirmation Order provides:

> Entry of the Confirmation Order shall not constitute a waiver or release by the Debtors or their Estates of any Cause of Action except as expressly provided for by the Plan. On and after the Effective Date, and pursuant to Bankruptcy Code section 1123(b)(3), the Liquidating Trust shall be designated representative [*7] of the estates with respect to, and shall be assigned, all Causes of Action arising under sections 542, 543, 544, 547 through 551, and 553 of the Bankruptcy Code . . . but excluding (i) avoidance claims against Apple and its affiliates . . . (the "Transferred Causes of Action"). The Liquidating Trust shall be authorized to enforce, prosecute, settle or compromise the Transferred Causes of Action. . . . The Liquidating Trustee may pursue such Transferred Causes of Action. . . .

(Doc. # 937 at 24–25.)

Article V Section C of the Disclosure Statement and Article IV Section E of the Plan do not reference § 1123(b)(3), n5 but are identical to paragraph 24 of the Confirmation Order in all material respects. Those passages provide:

> Entry of the Confirmation Order shall not constitute a waiver or release by the Debtors or their Estates of any Cause of Action except as expressly provided for by the Plan. On and after the Effective Date, the Liquidating Trust shall be assigned all Causes of Action arising under sections 542 [*8] , 543, 544, 547 through 551, and 553 of the Bankruptcy Code . . . but excluding (i) avoidance claims against Apple and its affiliates . . . (the "Transferred Causes of Action"). The Liquidating Trust shall be authorized to enforce, prosecute, settle or compromise the Transferred Causes of Action. . . . The Liquidating Trustee may

pursue such Transferred Causes of Action. . . .

(Doc. # 815 at 32; Doc. # 937, Ex. A at 17.)

> n5 Section 1123(b)(3) provides that, subject to certain exceptions not relevant here, a plan may —
>
> (3) provide for —
>
> (A) the settlement or adjustment of any claim or interest belonging to the debtor or to the estate; or
>
> (B) the retention and enforcement by the debtor, by the trustee, or by a representative of the estate appointed for such purpose, of any such claim or interest.

The Bridgeport Confirmation Documents refer to the Transferred Causes of Action [*9] (defined to include preference actions), the Liquidating Trust, and the powers of the Liquidating Trustee in numerous provisions. For example:

(1) Article V Section C of the Plan and Article V Section E of the Disclosure Statement provide: "The Liquidating Trust shall be empowered . . . to prosecute, litigate, settle, adjust, retain, enforce or abandon any of the Transferred Causes of Action assigned to the Liquidating Trust. . . ." (Doc. # 937, Ex. A at 27; Doc. # 815 at 42.)

(2) Article V Section C of the Plan also provides: "With respect to any Transferred Causes of Action or other claims or rights assigned to the Liquidating Trust in which the asserted amount is equal to or less than $200,000, the Liquidating Trustee shall be empowered and authorized, without approval of the Bankruptcy Court or notice to any other Person, to settle, adjust, dispose of or abandon any such Transferred Causes of Action . . . (Doc. # 937, Ex. A at 28.)

(3) Article I Section 1.1 of the Liquidating Trust Agreement provides: "The Debtors hereby transfer, assign, and deliver to the Liquidating Trust all of their right, title, and interest in and to all of the Transferred Causes of Action. . . ." (Doc. [*10] # 937, Ex. B at 2.)

(4) Article III Section 3.2 of the Liquidating Trust Agreement empowers the Liquidating Trustee "to compromise, adjust, arbitrate, sue on or defend, pursue, prosecute, abandon, or otherwise deal with and settle . . . the Transferred Causes of Action. . . ." (Doc. # 937, Ex. B at 6.)

(5) Article V Section E of the Disclosure Statement and Article V Section A of the Plan provide: "From and after the Effective Date, the Liquidating Trustee shall . . . liquidate all other assets, including the Transferred Causes of Action." (Doc. # 815 at 34; Doc. # 937, Ex. A at 20.)

Article IV Section J of the Disclosure Statement contains a section titled "Preference and other Causes of Action" that explains in some detail what preference litigation is about:

> Pursuant to the Bankruptcy Code, a debtor may seek to recover, through adversary proceedings in the bankruptcy court, certain transfers of the debtor's property, including payments of cash, made while the debtor was insolvent during the ninety (90) days immediately prior to the commencement of the bankruptcy case (or, in the case of a transfer to, or on behalf of, an "insider," one year prior to the commencement of the **[*11]** bankruptcy case) in respect of antecedent debts to the extent the transferee received more than it would have received on account of such pre-existing debt had the debtor been liquidated under chapter 7 of the Bankruptcy Code. Such transfers include cash payments, pledges of security interests or other transfers of an interest in property. In order to be preferential, such payments must have been made while the debtor was insolvent; debtors are presumed to have been insolvent during the 90-day preference period.
>
> However, there are certain defenses to preference claims. For example, transfers made in the ordinary course of the debtor's and the transferee's business according to ordinary business terms are not recoverable. Furthermore, if the transferee extended credit contemporaneously with or subsequent to the payment, and prior to the commencement of the bankruptcy case, for which the defendant was not repaid, such extension constitutes an offset against an otherwise recoverable transfer of property. If a payment is recovered by a debtor, the defendant has a general unsecured claim against the debtor to the extent of the recovery.
>
> Under the Plan, all Causes of Action will be preserved **[*12]** including preference claims and all other claims under Chapter 5 of the Bankruptcy Code. The extent of recoveries from such claims is uncertain and

speculative in nature.

(Doc. # 815 at 22–23.)

Also, Article IV Section J of the Disclosure Statement clearly puts creditors on notice that some of them may be targeted for preference complaints:

> The Bankruptcy Code preserves the Debtors' rights to prosecute claims and causes of action which exist outside of bankruptcy, and also empowers the Debtors to prosecute certain claims which are established by the Bankruptcy Code, including claims to avoid and recover preferential transfers and fraudulent conveyances (collectively, "Causes of Action"). . . . The Plan preserves all of the Debtors' rights in respect of all Causes of Action, transfers the Debtors' rights in respect of such Causes of Action to the Liquidating Trust or the Prepetition Secured Lender Agent, and empowers the Liquidating Trustee on behalf of the Liquidating Trust or the Prepetition Secured Lender Agent, as the case may be, to investigate, prosecute, collect, and/or settle the Causes of Action as deemed appropriate.
>
> * * *
>
> **IN REVIEWING THIS DISCLOSURE [*13] STATEMENT AND THE PLAN, AND IN DETERMINING WHETHER TO VOTE IN FAVOR OF OR AGAINST THE PLAN, CREDITORS AND INTEREST HOLDERS (INCLUDING PARTIES THAT RECEIVED PAYMENTS FROM THE DEBTORS WITHIN NINETY (90) DAYS PRIOR TO THE COMMENCEMENT DATE) SHOULD CONSIDER THAT A CAUSE OF ACTION MAY EXIST AGAINST THEM, THAT THE PLAN PRESERVES ALL CAUSES OF ACTION, AND THAT THE PLAN AUTHORIZES EITHER THE LIQUIDATING TRUST OR THE PREPETITION SECURED LENDER AGENT TO PROSECUTE THE SAME.**

(Doc. # 815 at 21.)

The Disclosure Statement also explains how distributions from the Transferred Causes of Action will benefit the Debtors' general unsecured creditors. The general un-

secured creditors are grouped into Class 3 under the Plan. (Doc. # 815 at 6, 28.) The Disclosure Statement provides:

> Actual distributions to holders of Class 3, 4 and 5 Claims will depend upon, among other things, the amount of allowed claims against the Debtors' Estates, the expenses incurred by the Debtors' Estates and the Liquidating Trust, and the ultimate realization on the Debtors' assets including the prosecution of Transferred Causes of Action. Please refer to Article V.C.5 herein regarding Transferred Causes **[*14]** of Action that may result in substantial changes to the estimated recoveries on Class 3, 4 and 5 Claims.

(Doc. # 815 at 4.)

Furthermore, that the Confirmation Documents foretold of post–confirmation preference actions being filed is clearly reflected in the provisions that preserve set–off rights for any preference defendants who may be creditors. Article V Section M of the Disclosure Statement and Article XII Section D of the Plan provide:

> Nothing contained herein, in the Plan or the Confirmation Order shall be deemed to discharge, enjoin, restrict or otherwise impair any rights that may exist in favor of the holder of any Claim to setoff such Claim against any Causes of Action that may be asserted before, on or after the Effective Date against such holder by any Debtor or successor in interest to a Debtor (including, without limitation, the Liquidating Trust).

(Doc. # 815 at 54; Doc. # 937, Ex. A at 40.) n6 And paragraph 26 of the Confirmation Order, titled "No Waiver of Rights", provides:

> n6 This paragraph in the Plan does not contain the word "herein."

**[*15]**

> Unless otherwise agreed to in writing, no distribution on account of any claim, whether allowed on or after the Effective Date shall be deemed to waive the rights of the Debtors in connection with any causes of action against the holder of any claim receiving such distribution, including without limitation, any causes of action under chapter 5 of the Bankruptcy code. Nothing in the Plan or this Confirmation Order shall be deemed to discharge, enjoin, restrict or otherwise impair any rights that may exist in favor of a person or entity to assert any defensive rights of setoff or recoupment with respect to any cause of action that may be asserted against such person or entity by the Debtors or successor in interest to the Debtors, including the Liquidating Trust.

(Doc. # 937 at 26.)

The issue presented here is whether the retention language used in the Bridgeport Confirmation Documents is sufficiently specific to preserve preference actions for post–confirmation adjudication by the Liquidating Trustee. Notwithstanding the reservation language listed above, Tech Data argues that the Confirmation Documents are insufficiently specific. Tech Data contends that this preference **[*16]** action would only be actionable if the Debtors' Confirmation Documents identified Tech Data by name and listed this matter as a future cause of action.

### DISCUSSION

A motion to dismiss must be denied "unless it appears beyond doubt that the [nonmoving party] can prove no set of facts in support of its claims which would entitle it to relief." Conley v. Gibson, 355 U.S. 41, 45–46, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957). In ruling on a motion to dismiss, "I accept the allegations of the complaint as true and draw all reasonable factual inferences in favor of the [nonmoving party]." Weston v. Pennsylvania, 251 F.3d 420, 425 (3d Cir. 2001).

### A. Res Judicata

For the doctrine of res judicata to apply, three factors must be present: (1) a final judgment on the merits, rendered by a court of competent jurisdiction, in a prior action involving; (2) the same parties or their privies; and (3) a subsequent suit based on the same cause of action. E.g., CoreStates Bank, N.A. v. Huls America, Inc., 176 F.3d 187, 194 (3d Cir. 1999); Novacare Holdings, Inc. v. Mariner Post–Acute Network, Inc. (In re Mariner Post–Acute Network Inc.), 267 B.R. 46, 52 (Bankr. D. Del. 2001).

On two prior occasions, I issued **[*17]** opinions addressing questions almost identical to those presented here by Tech Data's motion. Under the facts of both Peltz v. Worldnet Corp. (In re USN Communications, Inc.), 280 B.R. 573 (Bankr. D. Del. 2002) and Cohen v. TIC Fin. Sys. (In re Ampace Corp.), 279 B.R. 145, 155 (Bankr. D. Del. 2002), I found that the doctrine of res judicata did not stand as a bar to the filing of post–confirmation

preference actions. I rested my decisions, in part, on findings that those preference actions and the prior confirmation proceedings did not constitute the same cause of action. Therefore, the third factor in the res judicata analysis was not present. Furthermore, and most relevant for this proceeding, I also recognized that the doctrine of res judicata did not apply where confirmation documents preserved preference actions for post-confirmation adjudication. In their pleadings, neither Tech Data nor the Liquidating Trustee conducted a traditional res judicata analysis. Rather, both parties focus their arguments on what degree of specificity is required of reservation language to preserve causes of action for post-confirmation pursuit. Because neither [*18] of the parties addressed the issue and because I find the reservation language sufficient, a full res judicata analysis is unnecessary here.

### B. Retention of Preference Actions

In arguing for dismissal of this preference action, Tech Data does two things: (1) it cites numerous cases that it alleges support its position and (2) argues that creditors were unable to cast an informed vote because the Confirmation Documents provided insufficient notice. I will address each of these arguments in turn.

#### 1. Cases Relied On By Tech Data

In presenting the cases on which it relies, Tech Data contends that my decisions in USN Communications and AMPACE represent the minority view. Tech Data argues that a majority of courts find that preference actions can only be reserved for post-confirmation adjudication where confirmation documents contain reservation language detailing the specific actions to be preserved. Tech Data believes that a general retention clause identifying the category of actions to be brought (e.g. preference actions under § 547) is insufficient. In support of its position, Tech Data cites a long list of cases. Because I believe that almost every [*19] case cited by Tech Data is factually distinguishable, and because I disagree with the legal holdings of the cases that are not factually inapposite, I will rule against Tech Data and deny its motion to dismiss.

Tech Data first cites D&K Properties Crystal Lake v. Mutual Life Insurance Co., 112 F.3d 257 (7th Cir. 1997). In that case, a former chapter 11 debtor pursued a breach of contract action against a secured creditor. In finding the plaintiff's cause of action barred by res judicata, the court of appeals found reservation language in the debtor's plan to be insufficiently specific. Unlike the matter before me, D&K Properties' cause of action was based on facts known to it before its plan of reorganization went effective. Indeed, the facts of D&K Properties' action were even clear pre-petition. Before filing for bankruptcy protection, D&K Properties had instituted a related cause of action

in an Illinois state court. Once D&K Properties filed its petition, the action was removed to the bankruptcy court and the creditor persuaded the court that D&K Properties was not entitled to relief.

Furthermore, the reservation language in D&K Properties' plan was less specific [*20] than the relevant language before me. D&K Properties unsuccessfully argued that a passage preserving "all causes of action existing in favor of the Debtor" was sufficient to preserve its breach of contract action. D&K Properties, 112 F.3d at 260. Bridgeport's Plan specifically reserved preference actions pursuant to § 547. On both the facts of D&K Properties and the reservation language used in its confirmation documents, the matter before me is distinguishable.

Tech Data next cites Goldin Assocs., L.L.C. v. Donaldson, Lufkin & Jenrette Sec. Corp., 2004 U.S. Dist. LEXIS 9153, 2004 WL 1119652 (S.D.N.Y May 20, 2004). The facts of Goldin Associates could not be more dissimilar. The issue before that court was whether a general reservation of rights in a plan of reorganization, coupled with a specific reservation in the corresponding disclosure statement was sufficient to preserve certain causes of action. The Goldin Associates court was not ruling on the specificity required of reservation language in the plan because the language contained in the Goldin Associates' disclosure statement was clearly sufficient. Among other things, the complaint alleged breach [*21] of fiduciary duty and fraud, and the actions were filed by the committee of unsecured creditors before the disclosure statement and plan of reorganization were finalized. 2004 U.S. Dist. LEXIS 9153, [WL] at *1-2. The facts underlying those causes of action were known pre-confirmation and, therefore, a detailed reservation in the Goldin Associates' disclosure statement was possible. At no time did the Goldin Associates court address what language would be required to preserve a post-confirmation preference action in a large chapter 11 case.

Bonwit Teller, Inc. v. Jewelmasters, Inc. (In re Hooker Investments, Inc.), 162 B.R. 426 (Bankr. S.D.N.Y. 1994) is similarly distinguishable. The specificity required to preserve causes of action for later adjudication was not at issue in Hooker Investments. The plan contained "an express reservation for Bonwit (or the Committee on its behalf) to commence an avoidance action against Jewelmasters. . . ." Id. at 434. The court never discussed whether language reserving a category of actions would be acceptable.

The facts of Browning v. Levy, 283 F.3d 761 (6th Cir. 2002) are quite different from those here. In [*22] Browning, the causes of action at issue, which arose out of prepetition facts, were breach of fiduciary duty, legal

malpractice, breaches of duty under Ohio law, and violations of the Employment Retirement Income Security Act. No preference actions were considered by the Browning court. The Court addressed the issue in the context of what it characterized as a "blanket reservation" which read as follows:

> In accordance with section 1123(b) of the Bankruptcy Code, the Company shall retain and may enforce any claims, rights, and causes of action that the Debtor or its bankruptcy estate may hold against any person or entity, including, without limitation, claims and causes of action arising under section 542, 543, 544, 547, 548, 550, or 553 of the Bankruptcy Code.

Id. at 774-75. In that context the court found that because the debtor's reservation neither named the defendant nor stated the factual basis for the claim the claim was barred by res judicata. Aside from the fact [*23] that Browning did not address the reservation of preference actions, as discussed below, a recent bankruptcy court decision in the Sixth Circuit, Elk Horn Coal Co. v. Conveyor Manufacturing & Supply, Inc. (In re Pen Holdings, Inc.), 316 B.R. 495 (Bankr. M.D. Tenn. 2004), casts serious doubt on the application of the Browning holding to the reservation of preference actions for post-confirmation pursuit.

Kelley v. South Bay Bank (In re Kelley), 199 B.R. 698 (B.A.P. 9th Cir. 1996) is inapposite. Kelley involved the res judicata effect of a confirmed plan on the ability of individual debtors to object to the claim of one of the debtors' secured lenders. Kelley did not involve a preference action and did not arise against the backdrop of a large corporate chapter 11 case. Furthermore, unlike in this avoidance action, the court in Kelley found that the circumstances giving rise to the debtors' objections were known to the debtors at least four months before plan confirmation. Id. at 703. The court also noted that the bankruptcy court found that the debtors' negotiated with the lender pre-confirmation, and that the secured [*24] lender's vote was obtained in exchange for favorable treatment of that lender's claim. n7 Id. at 701. Presumably, because Tech Data is not a creditor of the Debtors' estates, Bridgeport and Tech Data did not engage in pre-confirmation discussions regarding claims treatment under the Plan. star2

n7 Although the Kelley court found that res judicata was a bar to the causes of action at issue in that case, the Bankruptcy Appellate Panel for the Ninth Circuit has since had opportunity to elaborate on its holding in Kelley. As discussed below, in Alary Corp. v. Sims (In re Associated Vintage Group, Inc.), 283 B.R. 549 (9th Cir. B.A.P. 2002) the court clarified that Kelley does not stand for the proposition that a general reservation of rights is never sufficient to preserve causes of action for post-confirmation adjudication.

* This revised sentence is a correction.

Tech Data's reliance on Tracar v. Silverman (In re American Preferred Prescription, Inc.), 266 B.R. 273 (E.D.N.Y. 2000) [*25] is also misplaced. American Preferred involved an attempt by a chapter 11 trustee to expunge claims of a creditor more than two years after plan confirmation. American Preferred in no way involved prosecution of timely filed preference actions by a liquidating trustee. In addition, unlike the situation before me where the Debtors have specifically reserved a particular type of avoidance action, the reservation language in American Preferred provided the "Debtor with the right to object to any claim filed with the Bankruptcy Court' . . . ." Id. at 279. In holding that language to be overly general, the court relied on a Second Circuit case, Sure-Snap Corp. v. State Street Bank and Trust Co., 948 F.2d 869 (2nd Cir. 1991).

Sure-Snap, however, never addressed how specific the reservation language must be to preserve causes of action, and the American Preferred court acknowledged that the Second Circuit had not ruled on that issue. American Preferred, 266 B.R. at 278. At most, Sure-Snap only offers dicta from the Second Circuit that a blanket reservation may be insufficient. The Sure-Snap court merely held [*26] that a bankruptcy judge's statement, "I think it's a matter of law, is it not, that any claims, I mean any actions, are reserved to the debtor," Sure-Snap, 948 F.2d at 872, was insufficient to preserve lender liability claims that could have been brought prior to confirmation. Id. at 873. The Sure-Snap decision did not turn on the interpretation of a retention provision. star3 Thus, Tech Data's reliance on American Preferred and Sure-Snap is unpersuasive.

* Correction: a sentence has been deleted.

In Holly's Inc. v. City of Kentwood (In re Holly's Inc.), 178 B.R. 711 (W.D. Mich. 1995) the district court affirmed the bankruptcy court's holding that res judicata prevented the debtor from bringing a post-confirmation action to determine the debtor's real property tax liability. Holly's, Inc. has no relevance here. As the district court noted, "Holly's was aware that there was an issue

in the bankruptcy proceeding regarding the real property taxes based [*27] upon [the taxing authority's] proofs of claim filed." Id. at 714. The taxing authority had filed its proofs of claim "prior to the confirmation of the plan. . . ." Id. Furthermore, with that information readily available, Holly's, Inc.'s plan of reorganization failed to "reserve the right to institute a post–confirmation proceeding under 11 U.S.C. § 505. . . ." Id. at 713.

Tech Data's reliance on Westland Oil Development Corp. v. MCORP Management Solutions, Inc.,157 B.R. 100 (S.D. Tex. 1993) is also misplaced. In Westland Oil, the debtor sued on theories of successor liability, breach of contract, and tortious interference. The action arose because of an unsuccessful attempt to restructure Westland Oil's debt on the eve of filing. No preference or similar avoidance action was at issue in Westland Oil. Furthermore, the Westland Oil court stated that "Westland was aware of its claim against [that creditor] before it filed for bankruptcy." Id. at 103. The Court also noted that "Westland knew about the claim, was mad about it, and hid it within the murky language of a general [*28] retention clause." Id. The retention language in Westland Oil did not specify the categories of actions to be preserved and did not mention the claim that Westland Oil had against the relevant creditor. The court explained that "the institution of bankruptcy exists to give debtors a fresh start, not to allow debtors to seek revenge against creditors who were difficult in earlier business dealings. General retention clauses are not convenient hiding places for debtors." Id. In contrast to the facts of Westland Oil, the retention language in Bridgeport's Plan is not murky, nor is there any indication that Bridgeport's reservation of preference actions is an attempt to seek revenge against a particular party.

In Galerie Des Monnaies of Geneva, Ltd. v. Deutsche Bank, A.G. (In re Galerie Des Monnaies), 62 B.R. 224 (S.D.N.Y. 1986), aff'g 55 B.R. 253 (Bankr. S.D.N.Y. 1985), both the bankruptcy and district court applied the doctrine of judicial estoppel and not res judicata. Therefore, the analysis provided by those cases is tangentially relevant at best. The debtor in Galerie Des Monnaies, filed its preference action on the same day [*29] that its plan of reorganization was confirmed. The action was curious considering that Galerie Des Monnaies' disclosure statement provided that "the Debtor has discussed the nature of preferential payments and fraudulent conveyances with its counsel and accountants. The Debtor's management does not believe any preferences or fraudulent transfers have occurred. . . ." Galerie Des Monnaies, 55 B.R. at 259. As a result of that provision, the debtor convinced its creditors to approve a plan of reorganization that vested the proceeds of any preference action with the debtor. Galerie Des Monnaies, 62

B.R. at 225. The fact that the debtor's "management knew of at least some of the alleged preferential transfers prior to the Bankruptcy Court's confirmation of its reorganization plan" and did not amend the debtor's disclosure statement persuaded the court that judicial estoppel was appropriate. Id. at 225.

The retention language in Galerie Des Monnaies is nothing like the provisions before me. Whereas Galerie Des Monnaies stated that it did not believe that any preference actions existed, Bridgeport preserved § 547 causes of action because [*30] it obviously anticipated a substantial number of actions with prospects for significant recoveries for unsecured creditors. Furthermore, as stated above, the Galerie Des Monnaies decisions base their relevant holdings on the doctrine of judicial estoppel, not res judicata. Tech Data's reliance on Galerie Des Monnaies is unpersuasive.

Tech Data cites Mickey's Enterprises, Inc. v. Saturday Sales, Inc. (In re Mickey's Enterprises, Inc.), 165 B.R. 188 (Bankr. W.D. Tex. 1994) for the proposition that general retention clauses are always insufficient to preserve preference actions for post–confirmation adjudication. Considering the extreme facts of Mickey's Enterprises, it is unclear to me whether that case was intended to stand for such a sweeping proposition. In Mickey's Enterprises, the court repeatedly stated that the debtor had knowledge of the facts and circumstances supporting the preference action prior to confirmation and that the debtor "veiled its existence from the creditors and the Court." Id. at 193. The court alluded to impropriety on the part of the debtor by stating that "the Debtor lay behind the proverbial log until this [*31] creditor's remedies were exhausted and then, and only then, did it come forward with its claim." Id. at 194. The court added, "this Debtor . . . waited for the right moment to spring its trap." Id. at 194–95. Given the extensive provisions relating to reservation of and prosecution of preference actions set forth in the Confirmation Documents, by no stretch of the imagination can it be suggested that Bridgeport was either attempting to spring a trap on Tech Data or attempting to veil the existence of this preference action from the Court. Thus, I find Mickey's Enterprises factually distinguishable from the matter before me. However, to the extent that Mickey's Enterprises stands for the proposition that general retention clauses are never sufficient to preserve preference actions from the preclusive effect of res judicata, I must respectfully disagree.

Tech Data's reliance on Harstad v. First American Bank, 39 F.3d 898 (8th Cir. 1994) is also misplaced. The Harstad court did not conduct a res judicata analysis and the facts of Harstad demonstrate that a large number of preference actions were never contemplated by [*32] the

debtors. Language in the Harstad disclosure statement included a provision stating that the "Debtors do not know at the present time whether or not there are any avoidable preferential transfers." Id. at 901.

The Harstad court based its decision, in part, on the grounds that the debtor did not have standing to bring the action because the plan failed to retain any post–confirmation preference actions for the Harstads. Id. at 902, 903. The Harstad court also took issue with who would receive the benefit of the alleged preference. The Harstad plan

> [did] not provide for the distribution of any preference recoveries to creditors. Moreover, the Harstads [were] not suggesting that they voluntarily will turn over additional funds to creditors or that they will seek a modification of the Plan in order to insure that the creditors share in any recovery. . . . They contend that the "estate" is now Keith and Diane Harstad d/b/a Harstad Companies, which would be directly benefited by the recovery of the alleged preference.

Id. at 903–04.

I am not faced with the situation presented in Harstad. Under the facts **[*33]** before me, any recovery will benefit general unsecured creditors. (Doc. # 815 at 6.) The Bridgeport Disclosure Statement provides that "actual distributions to holders of [unsecured claims] will depend upon, among other things, . . . the ultimate realization on the . . . Transferred Causes of Action." (Doc. # 815 at 4.) And, "class 3 consists of General Unsecured claims. . . . Each holder of an Allowed Class 3 Claim will receive Class 3 Trust Interests entitling such holder to receive distributions from the Liquidating Trust. . . ." (Doc. # 815 at 28.) Furthermore, "the Liquidating Trustee shall distribute any proceeds of the liquidation of Trust Assets, including Transferred Causes of Action . . . to the holders of Class 3 . . . in accordance with the Plan." (Doc. # 815 at 41.) Harstad is distinguishable.

Tech Data's reliance on Southtrust Bank N.A. v. WCI Outdoor Prods. (In re Huntsville Small Engines, Inc.), 228 B.R. 9 (Bankr. N.D. Ala. 1998) is similarly unconvincing. In Huntsville Small Engines, the debtor attempted to assign a preference action to one of its largest secured creditors. In disallowing the preference action, the Huntsville **[*34]** Small Engines court concluded that the third–party creditor lacked standing to pursue the action, that the action would not provide a benefit to the debtor's estate, and that the action was barred by res judicata. The court held that the general retention language found in the disclosure statement and plan of reorganization was insufficient to preserve the cause of action. The language cited by the court was a general retention provision that did not even mention preference actions. Therefore, I find Huntsville Small Engines to be not on point. However, to the extent that Huntsville Small Engines holds that a debtor's plan and disclosure statement must always specifically name each party that will be subject to a preference action, I must respectfully disagree.

Although not cited by Tech Data, I note the recent holding in Slone v. M2M Int'l, Inc. (In re G-P Plastics, Inc.), 320 B.R. 861 (E.D. Mich. 2005) that supports Tech Data's position. G-P Plastics, like the matter before me, arose out of a liquidation case in which the liquidating trust brought an action after plan confirmation. The court found that a "blanket reservation" in a chapter 11 **[*35]** plan was insufficient to preserve from res judicata effect a preference action coupled with other causes of action. The court noted that the reservation of rights provision was similar to that addressed in the Browning case. In the G-P Plastics case, the reservation of rights read as follows:

> "Notwithstanding the confirmation of the Plan, except as stated herein, the Reorganized Debtor shall retain all causes of action which the Debtor and/or the Debtor in Possession may have under the Bankruptcy Code, including, but not limited to, causes of action under Chapter 5 of the Bankruptcy Code."

Id. at 868. The court found that the debtor's plan "fails to (1) name [defendant], (2) describe the specific cause of action, or (3) identify the factual basis for any claim against the defendant as required by Browning." Id. at 868. It therefore concluded that the reservation of rights provision "was an insufficient basis upon which to avoid the res judicata effect of the Plan." Id. at 868. I do not believe that Browning should be read in such a fashion. Rather, I believe the interpretation of Browning found **[*36]** in Pen Holdings, discussed below, more accurately interprets that Sixth Circuit decision.

### 2. Cases Holding Contrary to Tech Data's Position

As noted above, I have rendered two prior published opinions holding contrary to Tech Data's position. There are additional noteworthy opinions supporting the position I take here.

The Pen Holdings facts are similar to those before me, the opinion is quite instructive on the issue here, and the court reached the same result as I reach here. In

Pen Holdings, on the eve of the § 546 two-year statute of limitations, the reorganized debtor filed 173 adversary proceedings to avoid preferential transfers. The sole issue in the decision was whether the reservation language contained in the Pen Holdings confirmation documents was sufficient to preserve preference actions for post-confirmation adjudication. In holding that res judicata did not bar § 547 actions, the court stated that general reservation language was sufficient for purposes of § 1123(b)(3) under the facts of that case. In reaching its decision, the court conducted a review of the legislative history of § 1123(b)(3) and concluded that "as history of § 1123(b)(3) [*37] plainly shows . . . the notice at issue in § 1123(b)(3) is not notice to potential defendants, it is notice to creditors generally that there are assets yet to be liquidated that are being preserved for prosecution by the reorganized debtor or its designee." Pen Holdings, 316 B.R. at 500-01.

Furthermore, in discussing Browning, the Pen Holdings court had this to say: "Browning does not establish a general rule that naming each defendant or stating the factual basis for each cause of action are the only ways to preserve a cause of action at confirmation of a Chapter 11 plan." Id. at 504. The court also stated:

> Ironically for current purposes, § 547 is one of the sections listed in the "blanket reservation" rejected by the Sixth Circuit in Browning. Because the complaint in Browning alleged breach of duty and malpractice, the Sixth Circuit had no occasion to express an opinion whether the reservation of "causes of action arising under . . . § 547" was or was not sufficiently specific to preserve preference actions.

Id. at 503. Finally, the Pen Holdings court observed:

> It is not practicable, [*38] especially in larger cases, for the debtor to identify by name in the plan or disclosure statement every entity that may have received a preferential payment. There is no common practice in Chapter 11 cases of even attempting to do so. Nothing in § 1123(b)(3) suggests such specificity is required. The history of § 1123(b)(3) suggests just the opposite — that preserving the value of preferences for distribution to creditors after confirmation should be easily accomplished in the plan without magic words or typographical traps.

Id. at 504-05.

The Pen Holdings court's view is consistent with my experience with post-confirmation pursuit of preference actions in large chapter 11 cases. Large chapter 11 liquidation cases typically result in the filing of hundreds of preference actions. In liquidation cases, unless the debtor's business was sold as a going concern with the purchaser insisting on eliminating or limiting preference actions so as to not disturb its business relationship with vendors and suppliers, the prosecution of preference actions will usually be handed over to a liquidating trustee or administrator whose appointment will often be selected [*39] by the creditors committee. That trustee or administrator usually will also be responsible for the claims resolution process. These functions are costly and time consuming — oftentimes running on for many months, if not years, after the plan confirmation. It is not a process that is typically undertaken by the debtor or even by the creditors committee during the plan negotiations and confirmation process. It is usually deferred to a later time. Consistent with that experience, I note the Disclosure Statement provision that "all books and records of the Debtors shall become the property of the Liquidating Trust." (Doc. # 815, p. 37.) In my view, absent unusual circumstances, not present here, requiring names and causes of action specific information to be included in confirmation documents places an unnecessary burden on the bankruptcy process and is not required by the Bankruptcy Code.

There is an interesting factual parallel in the matter before me and the Pen Holdings opinion. In its statement of financial affairs, Bridgeport disclosed that during the 90-day period preceding the petition date, it made over 3,000 transfer payments aggregating over $221 million. In Pen Holdings [*40] the court noted that for the 90-day pre-petition period, the debtor made over 700 payments aggregating $160 million (of which at least $120 million were unlikely candidates for preference actions). The 700 plus payments in Pen Holdings resulted in the filing of 173 preference actions. This clearly portends that in the Bridgeport case we can anticipate hundreds of preference actions to be filed. To date, the Liquidating Trustee has filed 44 preference actions. The § 546 two-year statute of limitations for such actions is not set to expire until September 10, 2005.

Cases from the Seventh, Ninth, and Tenth Circuits also support the conclusion reached in Pen Holdings. While discussing the requirements of § 1123 (b)(3) in the context of a preference action, the Seventh Circuit Court of Appeals has stated that, "while there might be some logic in requiring specific and unequivocal' language to preserve claims belonging to the estate that have never been raised, the statute itself contains no such requirement."

P.A. Bergner & Co. v. Bank One (In re P.A. Bergner & Co.), 140 F.3d 1111, 1117 (7th Cir. 1998). The Bergner decision was recently discussed by the **[*41]** Bankruptcy Court for the Northern District of Illinois in Kmart Corp. v. Intercraft Co. (In re Kmart Corp.), 310 B.R. 107 (Bankr. N.D. Ill. 2004). The court in Kmart stated that

> Bergner stands for the proposition that plan provisions identifying causes of action by type or category are not mere blanket reservations. Therefore, categorical reservation can effectively avoid the *res judicata* bar. Dispensing with a requirement of cataloging claims by name comports with the Court's view in Bergner that section 1123(b)(3) does not require "specific and unequivocal" identification.

Kmart, 310 B.R. at 124.

The Bankruptcy Appellate Panel for the Ninth Circuit similarly allows for more general reservation language to preserve causes of action. In clarifying its earlier decision in Kelley, the court stated: "We agree with the other courts that regard it as impractical and unnecessary to expect that a disclosure statement and plan must list each and every possible defendant and each and every possible theory." Associated Vintage, 283 B.R. at 564. Unlike in its earlier Kelley decision which involved a claim **[*42]** objection, in Associated Vintage the court was addressing a preference action and in doing so expressed a view similar to that of the Pen Holdings court:

> A plan, as here, may provide that particular causes of action, or categories of causes of action, are preserved and not affected by confirmation and may, likewise, prescribe terms for conducting post–confirmation litigation over specific matters or categories of matters.
>
> * * *
>
> Moreover, the argument in this appeal illustrates the danger of engrafting an unduly burdensome specificity requirement onto the § 1123(b)(3) authorization for the retention and enforcement of claims belonging to the estate. 11 U.S.C. § 1123(b)(3). The statute does not require it. As Alary's appeal demonstrates, no defendant will ever concede a reservation is specific enough.

Id. at 563–64.

Along with the Seventh and Ninth Circuits, courts in the Tenth Circuit agree that general retention language in confirmation documents can be sufficient to preserve causes of action for post–confirmation adjudication. In Connolly v. City of Houston (In re Western Integrated Networks, LLC), 322 B.R. 156, 2005 WL 674890 **[*43]** (Bankr. D. Col. 2004), the Bankruptcy Court for the District of Colorado recently addressed the power of a liquidating trustee to bring preference actions post–confirmation where the reservation language stated that "the [Liquidating] Trustee shall have the right to commence adversary proceedings to enforce any claim or interest belonging to Consolidated WIN, including any claims or interests arising under Section 547 through 551 of the Bankruptcy Code." 322 B.R. 156, [WL] at *3. That reservation language clearly failed to identify defendants and claim–specific causes of action. Nevertheless, the court stated that "until the Tenth Circuit provides direction contrary to the strong implication . . . approving section–specific reservation language, this Court does not believe it is appropriate to apply a more restrictive analysis." 322 B.R. 156, [WL] at *4.

In summary, I believe that a substantial body of case law supports the view that clear and unambiguous retention provisions such as those involved here, that specify the category of causes of action to be preserved and the potential effect of the pursuit of those causes of action, suffice to preserve **[*44]** such causes of action for post–confirmation adjudication.

It is not my intent to limit the position I take here to liquidation cases. Even in chapter 11 reorganization cases when it may be advisable to pursue preference actions, it may be appropriate to defer consideration of preference actions to the post–confirmation period and the reservation of those causes of action may be effected in a manner similar to what was done in this chapter 11 case. The Kmart decision, a reorganization case, supports this position.

### 2. Sufficiency of Notice

Tech Data argues that creditors who may be targets of post–confirmation preference actions should receive notice of those actions before voting on a plan of reorganization. Tech Data believes that the Confirmation Documents were insufficiently specific and that notice was improper. Tech Data's argument is misplaced for three reasons.

First, Tech Data is not a creditor of the Debtors' estates. Indeed, Tech Data's argument defeats itself. Tech Data was not entitled to receive the Plan and Disclosure Statement and, therefore, presumably did not rely on its terms. And, as pointed out in Pen Holdings, § 1123(b)(3)

was intended to **[*45]** benefit the creditors of a bankruptcy estate, not the potential defendants of the preserved claims.

Second, this is not a reorganizing chapter 11 case. Bridgeport is a liquidation. Therefore, the vote of the general unsecured creditors is in large part not a significant factor. In the vast majority of liquidation cases, general unsecured creditors will either receive a money distribution under a liquidation plan or a money distribution under a chapter 7 administration of the estate. The unsecured creditors in this type of a liquidation will not generally be affected by the vote on the plan. n8 Indeed, if the plan is rejected and the case is converted to chapter 7, the chapter 7 trustee would likely pursue preference actions that have merit.

> n8 I do not recall a liquidation plan in my court that was rejected by the voting class of general unsecured creditors.

Finally, as detailed above, Article IV Section J of the Disclosure Statement clearly put creditors on notice that they may be defendants to later filed **[*46]** preference actions. Once again, in relevant part, that provision states:

**IN REVIEWING THIS DISCLOSURE STATEMENT AND THE PLAN, AND IN DETERMINING WHETHER TO VOTE IN FAVOR OF OR AGAINST THE PLAN, CREDITORS AND INTEREST HOLDERS (INCLUDING PARTIES THAT RECEIVED PAYMENTS FROM THE DEBTORS WITHIN NINETY (90) DAYS PRIOR TO THE COMMENCEMENT DATE) SHOULD CONSIDER THAT A CAUSE OF ACTION MAY EXIST AGAINST THEM, THAT THE PLAN PRESERVES ALL CAUSES OF ACTION, AND THAT THE PLAN AUTHORIZES EITHER THE LIQUIDATING TRUST OR THE PREPETITION SECURED LENDER AGENT TO PROSECUTE THE SAME.**

(Doc. # 815 at 21.)

**CONCLUSION**

For the reasons set forth above, I find that the Confirmation Documents adequately describe preference actions as causes of action preserved for pursuit by the Liquidating Trustee for the benefit of general unsecured creditors.

Tech Data also asserts that the complaint fails to comply with Bankruptcy Rule 7008 and, alternatively, seeks dismissal on that basis. I find no merit to that assertion. The complaint satisfies the notice pleading standard and further details regarding the many transfers can easily be fleshed out in the discovery process.

**ORDER**

For **[*47]** the reasons set forth in the Court's letter ruling of this date, Defendant Tech Data Corporation's motion (Doc. # 29) to alter, amend, and reconsider the Court's Memorandum Opinion of July 1, 2005 (Doc. # 23) is denied, except that two minor factual misstatements are corrected by the entry of a Revised Memorandum Opinion of this date.

Peter J. Walsh

United States Bankruptcy Judge

Dated: August 12, 2005