# EXHIBIT C

Westlaw.

147 Fed.Appx. 248                                                                                                        Page 1
147 Fed.Appx. 248, 2005 WL 1793503 (3rd Cir.(Del.))
**(Cite as: 147 Fed.Appx. 248, 2005 WL 1793503 (3rd Cir.(Del.)))**

H

**Briefs and Other Related Documents**

This case was not selected for publication in the Federal Reporter.

NOT PRECEDENTIAL

Please use FIND to look at the applicable circuit court rule before citing this opinion. Third Circuit Local Appellate Rule 28.3(a) and Internal Operating Procedure 5.3. (FIND CTA3 Rule 28.0 and CTA3 IOP APP I 5.3.)

United States Court of Appeals,
Third Circuit.
In re: HECHINGER INVESTMENT COMPANY OF DELAWARE, Debtor,
Hechinger Litigation Trust, not individually, but solely as indenture
trustee a/k/a HSBC Bank USA, Appellant,
v.
Bankboston Retail Finance, Inc., individually and as agent for lenders under
Credit Agreement dated as of September 26, 1991, Credit Agreement dated as of
December 31, 1998, and Amended and Restated Credit Agreement dated March 18,
1999; General Electric Capital Corporation, Intervenor-Defendant in District
Court,
Hechinger Liquidation Trust, Appellant.
**No. 04-2112.**

Argued June 30, 2005.
Decided July 29, 2005.

**Background:** Liquidation trust brought adversary proceeding against lenders seeking "equitable lien" in property of debtor and its subsidiaries and equitable subordination. The United States District Court for the District of Delaware, Sue L. Robinson, Chief Judge, dismissed proceeding, 2004 WL 724960. Trust appealed.

**Holdings:** The Court of Appeals, Van Antwerpen, Circuit Judge, held that:
(1) district court's factual findings provided basis for review, and

(2) district court's valuation determination was not clearly erroneous.
Affirmed.

West Headnotes

**[1] Federal Civil Procedure** ⚿2282.1
170Ak2282.1 Most Cited Cases
District court's factual findings with regard to value of acquired company were sufficient to indicate factual basis for ultimate conclusion of whether debt assumed by debtor during particular transaction caused breach of negative pledge clause in prior indenture, and thus basis for review had been provided, where court stated, inter alia, that there was uncontroverted evidence of professional advice and opinions with respect to compliance with terms of clause, it was uncontroverted that independent audit confirmed post-merger valuation, and there was absence of showing of fraud or bad faith with respect to both debtor's valuation and auditor's independent audit of that valuation.

**[2] Corporations** ⚿473
101k473 Most Cited Cases
District court's valuation determination of acquired company was not clearly erroneous, which afforded great weight to contemporaneous valuation made by debtor in resolving issue of whether debt assumed by debtor during particular transaction caused breach of negative pledge clause in prior indenture, where valuation was confirmed by outside auditor and was further corroborated by independent contemporaneous evidence which included, inter alia, fact that debtor and its counsel made multiple representations to lenders that transaction had not breached indenture's negative pledge clause.

**[3] Corporations** ⚿473
101k473 Most Cited Cases
District court's valuation determination of acquired company was not clearly erroneous, which rejected $10 million valuation proposed by liquidation trust in resolving issue of whether debt assumed by debtor during particular transaction caused breach of negative pledge clause in prior indenture, where trust's valuation omitted other non-cash consideration made in conjunction at the time, including 30 percent ownership in company, in form of warrant, that would have arisen from that transaction, subtenant in approximately 100 sites where rental obligation

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:05-cv-00427-KAJ   Document 16-4   Filed 01/23/2006   Page 3 of 5

147 Fed.Appx. 248                                                                                              Page 2
147 Fed.Appx. 248, 2005 WL 1793503 (3rd Cir.(Del.))
(Cite as: 147 Fed.Appx. 248, 2005 WL 1793503 (3rd Cir.(Del.)))

would have otherwise arisen, and $10.7 million promissory note.

*250 On Appeal from the United States District Court for the District of Delaware. (D.C. No. 00-CV-973). District Judge: Honorable Sue L. Robinson.

Mark Minuti, Michael Bonkowski, Saul Ewing LLP, Wilmington, DE, David M. Friedman, David E. Ross, (Argued), Howard W. Schub, Andrew K. Glenn, Ian D. Katz, Marvin Peguese, Kasowitz, Benson, Torres & Friedman LLP, New York, NY, for Appellant Hechinger Litigation Trust.

Teresa K.D. Currier, Peter J. Duhig, Klett Rooney Lieber & Schorling, Wilmington, DE, Paul S. Samson, (Argued), Jeffrey D. Ganz, Craig J. Ziady, Riemer & Braunstein LLP, Boston, MA, for Appellee Fleet Retail Finance, Inc.

Clay J. Pierce, Salans, New York, NY, Michael Kip Maly, (Argued), Winston & Strawn LLP, San Franscisco, CA, Stephen M. Miller, Carl N. Kunz, III, Morris, James, Hitchens & Williams LLP, Wilmington, DE, for Appellee General Electric Capital Corporation.

Before FUENTES, SMITH and VAN ANTWERPEN, Circuit Judges.

OPINION OF THE COURT

VAN ANTWERPEN, Circuit Judge.

**1 Appellant Hechinger Litigation Trust appeals from the March 31, 2004 judgment of the District Court entering judgment in favor of Appellees BankBoston Retail Finance, Inc. and General Electric Capital Corporation. The District Court had jurisdiction pursuant to 28 U.S.C. §§ 157(b)(2) and § 1334(b). We have jurisdiction pursuant to 28 U.S.C. § 1291 and will affirm.

I.
Because we write only for the parties who are familiar with the factual and procedural background of this lawsuit, we need not recite the history of this case at length. In the proceedings below, pursuant to the governing indenture's negative pledge clause and the purchase money exception to that clause, the District Court instructed the parties to submit evidence addressing whether the assets and liabilities of Builders Square exceeded some $153 million of debt that Hechinger assumed during the 1997 merger between Hechinger and Builders Square (the "transaction"). The District Court then held a three-day bench trial to determine the fair market value of Builders Square. Through experts, the parties presented retrospective valuations created for purposes of the trial. The parties also presented contemporaneous evidence of the valuation of Builders Square dating to 1997. Specifically, Appellant claimed Builders Square assets and liabilities had a fair market value of $10 million, evidenced, they claimed, by the cash paid to acquire Builders Square at the start of the 1997 transaction. Appellees, in turn, presented evidence of Hechinger's 1997 valuation of Builders Square assets and liabilities pursuant to GAAP purchase accounting rules. That valuation led Hechingers to conclude that Builders Square had a fair market value of $260 million. This purchase accounting valuation was confirmed by an outside accounting firm, KPMG. Appellant did not argue before the District Court or this Court that either the Hechinger valuation or the KPMG audit were improper or otherwise in error, and Appellees independently presented evidence that the 1997 transaction was negotiated at arm's length, conducted in good faith, and employed sufficient due diligence. Upon reviewing the parties' evidence, the District Court, on the basis of Appellee's 1997 valuation evidence, determined that the value of Builders Square in 1997 was greater than $153 *251 million. It accordingly determined that the 1997 transaction had not breached the negative pledge clause and dismissed all claims against Appellees in an opinion dated March 28, 2004 and judgment dated March 31, 2004. This appeal followed.

II.
This Court exercises plenary review over a district court's selection of a valuation standard. See, e.g., Amerada Hess Corp. v. C.I.R., 517 F.2d 75, 82 (3d Cir.1975). Once a standard is applied, a valuation is a question of fact that this Court reviews only for clear error. See id. Clear error, in turn, exists "only if [a finding] is completely devoid of a credible evidentiary basis...." Shire U.S., Inc. v. Barr Labs., Inc., 329 F.3d 348, 352 (3d Cir.2003). As long as a district court's evidentiary determination is "plausible in light of the record," we may not reverse, even if convinced that we "would have weighed the evidence differently." Anderson v. City of Bessemer, 470 U.S. 564, 574, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985). See also Interfaith Comm. Org. v. Honeywell Intern., Inc., 399 F.3d 248, 254 (3d Cir.2005), cert. denied, --- U.S. ----, 125 S.Ct. 2951, 162 L.Ed.2d 869 (2005) (summarizing clear error review).

**2 [1] With these standards in mind, we have reviewed the District Court's March 28, 2004 opinion

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:05-cv-00427-KAJ    Document 16-4    Filed 01/23/2006    Page 4 of 5

147 Fed.Appx. 248                                                                                                          Page 3
147 Fed.Appx. 248, 2005 WL 1793503 (3rd Cir.(Del.))
**(Cite as: 147 Fed.Appx. 248, 2005 WL 1793503 (3rd Cir.(Del.)))**

dismissing Appellant's claims. We find no error of law or fact for substantially those reasons set forth in the District Court's opinion. As the District Court correctly concluded, the fundamental question in this case is whether or not the debt assumed by Hechinger during the 1997 transaction caused a breach of the 1992 indenture. Dispositive to this question of breach, as the District Court also correctly concluded, is the fact that, under the indenture's purchase money exception to the negative pledge clause, breach was an impossibility absent a finding that the assets and liabilities of Builders Square at the time of the transaction were less than $153 million. The analysis, then, collapses to two fairly straightforward inquires: (1) did the District Court make a finding of fact with respect to the valuation of Builders Square; and (2), if so, was that finding clearly erroneous?

At oral argument, the parties invited us to decide that the District Court had not made a finding as to the Builders Square valuation. Based on our review of the District Court's thorough opinion, we decline such invitation. At a minimum, paragraphs 17, 21 and 30 of that opinion accurately summarize and reflect not only the indenture's governing language-- the negative pledge clause and the purchase money exception--but also the parties' voluminous contemporary and retrospective valuation evidence. Paragraph 30 then sets forth multiple summary statements about the cumulative valuation and breach evidence as it existed in 1997, specifically that there was (1) "uncontroverted" evidence of "professional advice and opinions with respect to *compliance* with the terms of the Negative Pledge" (emphasis added); (ii) that "[i]t is uncontroverted that post-merger, Hechinger valued Builders Square's net assets and liabilities at $260 million under GAAP fair market value standards for purchase accounting"; (iii) that "[i]t is also uncontroverted that an independent audit confirmed the post-merger valuation"; and (iv) that there was "the absence of a showing of fraud or bad faith" with respect to both Hechinger's valuation and KPMG's independent audit of that valuation. We believe that these articulations plainly satisfy the requirements for findings of fact. As the Supreme Court has stated, a district court's findings need only be "sufficient to indicate the factual basis for the ultimate conclusion." *252*Kelley v. Everglades Drainage Dist., 319 U.S. 415, 422, 63 S.Ct. 1141, 87 L.Ed. 1485 (1943)* (per curiam). And as this Court has stated, findings of fact will be deemed sufficient provided they "allow us to ascertain what evidence the District Judge accepted as credible or what he rejected ... and to provide a basis for review of the District Judge's finding[s]...." *Chalfant v. Wilmington Institute, 574 F.2d 739, 751 (3d Cir.1978)* (Garth, J. and Van Dusen, J., dissenting) (internal quotation omitted). We are satisfied here that the District Court's factual summary in its opinion is sufficiently comprehensive to satisfy these standards.

**\*\*3** [2] We therefore turn to the question of whether the District Court's valuation determination was clear error. It was not. " 'Fair market value is the price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or to sell and both having reasonable knowledge of relevant facts.' " *Amerada Hess Corp., 517 F.2d at 83* (quoting *United States v. Cartwright, 411 U.S. 546, 551, 93 S.Ct. 1713, 36 L.Ed.2d 528 (1973))* (internal quotation omitted). We have reviewed the evidentiary record and, in light of this definition, we find no error in the District Court affording great weight to the contemporaneous 1997 valuation made by Hechinger. This valuation was confirmed by an outside auditor and was further corroborated by independent contemporaneous evidence in the record. This included the fact that (1) Hechinger and its counsel made multiple representations to Appellees' predecessors that the 1997 transaction had not breached the indenture's negative pledge clause; (2) Hechinger found the valuation sufficiently reliable to submit it to the United States Securities and Exchange Commission for use in public filings; and (3) the Liquidation Trustee for Appellant, who was also both the former head of financial planning at Hechinger and its Chief Financial Officer, testified that he himself did not know of a breach of the negative pledge clause by Hechinger at any time, including during the 1997 transaction.

[3] Similarly, we find no error in the District Court's decision to remain unpersuaded by Appellant's claim that "$10 million in cash" constituted the fair market value of Builders Square in 1997. Our review of the record shows that Appellant's purported $10 million valuation omits other non-cash consideration made in conjunction at the time, including (1) a thirty percent ownership in the company that would arise from the 1997 transaction, in the form of a warrant; (2) a subtenant in approximately 100 sites where a rental obligation would otherwise arise; and (3) a $10.7 million promissory note. While the value of these additional consideration components is not clear, they cast significant doubt upon Appellant's asserted valuation. For all of these reasons, we conclude that the District Court's valuation finding was manifestly correct, and therefore not clearly erroneous.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

147 Fed.Appx. 248 Page 4
147 Fed.Appx. 248, 2005 WL 1793503 (3rd Cir.(Del.))
**(Cite as: 147 Fed.Appx. 248, 2005 WL 1793503 (3rd Cir.(Del.)))**

We have considered the remaining issues raised by the parties and conclude that no discussion is necessary in light of the District Court's valuation finding and its conclusion that the indenture was not breached.

III

For the foregoing reasons, we will affirm the March 31, 2004 judgment of the District Court.

147 Fed.Appx. 248, 2005 WL 1793503 (3rd Cir.(Del.))

**Briefs and Other Related Documents (Back to top)**

• 04-2112 (Docket) (Apr. 23, 2004)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.