# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE:<br><br>**GENESIS HEALTH VENTURES, INC., et al.,**<br><br>Debtors.<br><br>──────────────────────────<br><br>**RICHARD HASKELL, et al.,**<br><br>Appellants,<br><br>v.<br><br>**GOLDMAN, SACHS & CO., et al.,**<br><br>Appellees. | **C.A. No. 05-CV0427 (KAJ)**<br>**Related to Case No. 00-2692 (JHW)**<br>**Jointly Administered**<br><br><br><br><br>**Adv. Pro. No.: 04-53375 (JHW)** |

### APPELLEE HIGHLAND CAPITAL MANAGEMENT, L.P.'S SUPPLEMENTAL
### BRIEF IN OPPOSITION TO THE APPEAL OF RICHARD HASKELL ET AL.

ORAL ARGUMENT REQUESTED

Daniel K. Hogan, Esquire
DE Bar No. 2814
THE HOGAN FIRM
1311 Delaware Avenue
Wilmington, Delaware 19806
(302) 656-7540

and

LACKEY HERSHMAN, L.L.P.
Paul B. Lackey
State Bar No. 00791061
Michael P. Aigen
State Bar No. 24012196
3102 Oak Lawn Avenue
Suite 700
Dallas, Texas 75219-4241
Telephone: (214) 560-2201
Telecopier: (214) 560-2203

**ATTORNEYS FOR APPELLEE
HIGHLAND CAPITAL
MANAGEMENT, L.P.**

Dated: January 23, 2006

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF CONTENTS.................................................................................. i

TABLE OF AUTHORITIES ............................................................................ ii

I.  PRELIMINARY STATEMENT ................................................................ 1

II. FACTUAL AND PROCEDURAL BACKGROUND.................................... 2

  A.  Factual Background ........................................................................ 2

  B.  Noticeably Absent From Appellants' Complaint Are Any Factual
      Allegations Of Wrongdoing Against Highland ................................ 4

III. ARGUMENTS AND AUTHORITIES.......................................................... 6

  A.  Appellants' Complaint Is Barred Because It Fails To
      State a Claim Upon Which Relief Can Be Granted ........................... 6

    1.  Appellants' fraud claim was appropriately dismissed for the
        additional reason that Appellants failed to comply with
        Federal Rule of Civil Procedure 9(b)........................................ 7

    2.  Appellants' fraud claim was appropriately dismissed for the
        additional reason that Appellants do not adequately allege
        reliance on the misrepresentations ......................................... 11

    3.  Appellants' conspiracy to commit fraud claim was appropriately
        dismissed for the additional reason Appellants fail to allege acts
        that would support such a claim............................................ 14

    4.  Appellants' gross negligence claim was appropriately dismissed
        for the additional reason that it fails to state a claim on which
        relief can e granted.............................................................. 14

  B.  Appellants' Complaint Is Barred Because Appellants Do Not Have
      Standing To Assert The Claims ..................................................... 15

IV. REQUEST FOR RELIEF ........................................................................ 20

## TABLE OF AUTHORITIES

**Page**

## STATUTES

Federal Rule of Civil Procedure 9(b)..........................................................................3, 4, 7, 8, 9, 10

Federal Rule of Civil Procedure 12 (b)(6) ..................................................................................6, 13

## CASES

*Airlines Reporting Corp. v. Belfon*,
   2004 U.S. Dist. LEXIS 7381 (D. V. I. 2004)......................................................8

*Bernstein v. Kelso*,
   231 A.D.2d 314 (N.Y. App. Div. 1987) ...........................................9

*Black & Yates, Inc. v. Mahogany Association*,
   129 F.2d 227 (3d Cir. 1942)..............................................................14

*Board of Trustees v. Foodtown Inc.*,
   296 F.3d 164 (3d Cir. 2002)...........................................................18, 19

*Browne v. Robb*,
   583 A.2d 949 (Del. 1990) ..................................................................11

*Brug v. Enstar Group, Inc.*,
   755 F. Supp. 1247 (D. Del. 1991) ....................................................11

*City of Philadelphia v. Beretta U.S.A. Corp.*,
   277 F.3d 415 (3d Cir. 2002)..............................................................14

*City of Pittsburgh v. West Penn Power Co.*,
   147 F.3d 256 (3d Cir. 1998)................................................................6

*Goldin v. Primavera Familienstiftung, TAG Associates, Ltd., (In re Granite
   Partners)*, 194 B.R. 318 (Bankr. S.D.N.Y. 1996)............................16

*In re Educator's Group Health Trust*,
   25 F.3d 1281 (5th Cir. 1994) ............................................................19

*In re E.F. Hutton Southwest Properties II, Ltd.*,
   103 B.R. 808 (Bankr. N.D. Tex. 1989)........................................16, 17

*In re W.T. Grant Co.,*
    699 F.2d 599 (2d Cir. 1983)...........................................................................................15

*Interlease Aviation Investors II (ALOHA) LLC v. Iowa Corp.,*
    262 F. Supp. 2d 898 (N.D. Ill. 2003) ...........................................................................9

*Kalmanovitz v. G. Heileman Brewing Co.,*
    595 F. Supp. 1385 (D. Del. 1984)................................................................................14

*Kollar v. Miller,*
    176 F.3d 175 (3d Cir. 1999)....................................................................................18, 19

*MBIA Insurance Corp. v. Royal Indemnity Co.,*
    2004 U.S. Dist. LEXIS 6609 (D. Del. Apr. 6, 2004)...................................................8, 10

*Maio v. Aetna, Inc.,*
    221 F.3d 472 (3d Cir. 2000)...........................................................................................6

*S.I. Acquisition., Inc. v. Eastway Delivery Serv., Inc. (In re S.I. Acquisition, Inc.),*
    817 F.2d 1142 (5th Cir. 1987) ................................................................................16, 17

*Schertz Cebolo Universal City v. Wright, (In re Educator's Group Health Trust),*
    25 F.3d 1281 (5th Cir. 1994) .......................................................................................16

*Seville Industrial Machine Corp. v. Southmost Machine Corp.,*
    742 F.2d 786 (3d Cir. 1984)...........................................................................................7

*Snyder v. Butcher & Co.,*
    1992 Del. Super. LEXIS 362 (Del. Super. CT. Sept. 15, 1992).......................................13

## APPELLEE HIGHLAND CAPITAL MANAGEMENT, L.P.'S SUPPLEMENTAL BRIEF IN OPPOSITION TO THE APPEAL OF RICHARD HASKELL ET AL.

Appellee Highland Capital Management, L.P. ("Highland") files this Supplemental Brief in Opposition to the Appeal of Richard Haskell, et al., as follows:

## I.

## PRELIMINARY STATEMENT

Appellants, debenture holders of Genesis Health Ventures, Inc. ("Genesis"), initiated this action in a desperate attempt to reallocate the proceeds of the Genesis Bankruptcy Plan that has long since been approved by this Court. Appellants seek hundreds of millions of dollars from several financial entities, including Highland, for actions that allegedly occurred and were adjudicated in the United States Bankruptcy Court for the District of Delaware ("Bankruptcy Court") during the Genesis bankruptcy proceedings. Initially, Appellants do not have standing to bring these claims, which, if they existed, were owned by the Genesis estate. Furthermore, these issues have already been litigated in, and decided by, the Bankruptcy Court, and Appellants have no right to re-litigate these issues.[1] Finally, Appellants fail to allege a single fact demonstrating that Highland has done anything wrong. Accordingly, Highland requests that the Court affirm the Bankruptcy Court's decision to dismiss the Complaint.

---

[1] The issues of whether the Bankruptcy Court was correct in dismissing Appellants' claims because they are jurisdictionally time-barred, and barred by res judicata and collateral estoppel, are being briefed and submitted in a Joint Opposition separately filed on behalf of all Appellees. Therefore, these issues are not addressed in this Opposition. This Opposition addresses specific issues raised by Appellee Highland that were not addressed by the Bankruptcy Court because of its decision to dismiss the Complaint on alternative grounds. Additionally, Appellee Highland joins the arguments set forth in the supplemental briefs filed by Goldman, Sachs & Co. and Mellon Bank, N.A.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

### A.     Factual Background.

Appellants are 275 investors who collectively held over $205,000,000 in debentures issued by Genesis.[2]  The Complaint alleges that Goldman, Sachs & Co. ("Goldman") and Mellon Bank, N.A. ("Mellon"), the lead bank in the bank group that included Highland, were "direct beneficiaries" of alleged improper accounting maneuvers perpetrated by Genesis's Chief Financial Officer, George Hager.[3]  Appellee Highland, along with several other investment banks, including Appellees Goldman and Mellon (Highland, Goldman, and Mellon are collectively referred to as the "Appellees"), owned senior debt participations and allegedly conspired with Genesis management to file Genesis into bankruptcy and "cram down" a reorganization plan that would eliminate the junior creditors, including Appellants, from recovering anything out of the bankruptcy.[4]

Specifically, Appellants allege that Appellees misled the Court and the junior creditors by representing that the enterprise value of Genesis was approximately $1.3 billion.[5]  Appellants allege that the Appellees deceived the Court into accepting this valuation, and thus persuaded the Court to approve a Plan that allowed the senior creditors to gain 94% of the equity of Genesis as a result of the bankruptcy.[6]

---

[2]  *See* Complaint at ¶ 1.

[3]  *See id.* at ¶¶ 9, 11.

[4]  *See id.*

[5]  *See id.* at ¶ 3.

[6]  *See id.*

Additionally, Appellants allege that as a result of this scheme, Appellants received "next to nothing" out of the bankruptcy.[7]

On June 22, 2000, Genesis filed its Chapter 11 Bankruptcy Petition.[8]  On October 2, 2001, the Bankruptcy Court issued an Order confirming a Joint Plan of Reorganization for Genesis under Chapter 11 of the Bankruptcy Code (the "Plan").[9]  Appellants allege that the Plan canceled all of the Genesis debentures in exchange for nominal consideration, while transferring over 94% of the equity in Genesis to the senior creditors, including Appellees.[10]

On January 27, 2004, almost two and a half years after the Plan was confirmed, Appellants filed this action in the Supreme Court of the State of New York.  Appellees removed the action to the New York federal courts and, by agreement among all of the parties, the case was transferred to the Bankruptcy Court.

Appellees filed a Motion to Dismiss, arguing that Appellants' Complaint should have been dismissed because, among other things, Appellant's claims were time-barred by Section 1144 of the Bankruptcy Code, precluded by *res judicata* and collateral estoppel, because it failed to comply with Federal Rule of Civil Procedure 9(b), and because Appellants lack standing to assert these claims.  On May 10, 2005, Judge Judith H. Wizmur entered an order dismissing Appellants' Complaint against the Debtor as

---

[7] *See id.*

[8] *See id.* at ¶ 2.

[9] *See id.* at ¶ 7.

[10] *See id.*

time-barred by operation of Section 1144, against the Senior Lenders, including Appellee Highland, by the doctrine of *res judicata*, and against the Senior Lenders and George Hager by the doctrine of collateral estoppel.  As a result of this decision, the Bankruptcy Court never addressed the question of whether Appellants' Complaint should have been dismissed pursuant to Federal Rule of Civil Procedure 9(b) or whether Appellants have standing to assert these claims.

**B.    Noticeably Absent From Appellants' Complaint Are Any Factual Allegations Of Wrongdoing Against Highland.**

Appellants' Complaint fails to allege any legally cognizable claims against Highland in any of its 192 paragraphs.  Although Appellants set out an extremely long (86-page) description of how they were "defrauded" by the senior lenders, the only "allegations" even mentioning Highland are described below:

- Paragraph 31:  The Genesis senior lender group was initially headed by Mellon Bank, but by March 2000, Goldman and **Highland** had acquired so many of the debt participations that they were invited to join Mellon on the seven member Senior Lending Steering Committee.  (emphasis added).

- Paragraph 126:  Goldman and **Highland** made an all-out, successful effort to persuade the unsecured creditors committee and its financial advisors, Houlihan Lokey, that the Mariner business was likely to be lost and that a downward adjustment of EBITDA was therefore warranted.  (emphasis added).

- Paragraph 154:  In July of 2000, Goldman, **Highland**, Mellon and two other senior creditors committed to providing debtor-in-possession ("DIP") financing of $200 million for Genesis and $50 million for MC. (emphasis added).

- Paragraph 161 (p. 72):  Goldman orchestrated and directed the scheme described herein, with the cooperation of Mellon and **Highland**.  Goldman and **Highland** aggressively purchased Genesis debt participations at

drastic discounts, seeking an opportunity to double or triple their money within the space of 18 months.  (emphasis added).

- Paragraph 163:  After that point Goldman, Mellon and **Highland**, acting in concert, effectively controlled all of the Genesis purse strings for the duration of the bankruptcy, and they also controlled the financial fate of the individual Genesis senior managers, including the four individual Appellees named in this action.  (emphasis added).

- Paragraph 164:  Goldman, Mellon and **Highland** procured the cooperation of Genesis senior management by offering them immensely lucrative retention bonuses, including stock grants, options and the forgiveness of debt they had incurred to purchase Genesis shares. (emphasis added).

- Paragraph 168:  James Dondero of **Highland Capital** (the second largest holder) also sits on the Genesis Board and its audit committee.  (emphasis added).

- Paragraph 181:  **Highland Partners**, another member of the senior lender group, is the second largest shareholder, with just over 7% of the outstanding stock.  **Highland Partners** has placed one of his executives, James D. Dondero, onto the Genesis Board as well.  (emphasis added).

- Paragraph 185:  Goldman, Mellon and **Highland** controlled this entire process, periodically reviewing in detail the financial information prepared by Genesis management on a monthly basis, to assure that EDITDA data were matching the "target" of about $158 million and that sufficient adjustments were being made to the budgeted EDITDA to bring about the same result.  They offered enormous financial inducements to Genesis management to perpetrate this fraud, and they were the principle beneficiaries of the fraud. (emphasis added).

- Paragraph 191:  Goldman, Mellon and **Highland** were aware that the financial information being released by Genesis, and upon which the reorganization valuation of the Company would be determined, was false and misleading and had been designed to defraud the junior creditors of Genesis, and would be relied upon by the Appellants and the Court. (emphasis added).

- Paragraph 192:  Goldman, Mellon and **Highland** conspired with, orchestrated, and rewarded Genesis and its management, and in particular Appellee George Hager, for perpetrating this fraud.  (emphasis added).

Appellants' Complaint fails to provide any specific allegations of wrongdoing against Highland (or even any factual allegations that Highland, as opposed to other Appellees, did anything at all). Instead, Appellants merely make conclusory, unsupported allegations about Highland's general participation in a conspiracy.

## III.

## ARGUMENTS AND AUTHORITIES

**A.    Appellants' Complaint Is Barred Because It Fails To State A Claim Upon Which Relief Can Be Granted.**

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a motion to dismiss may be granted if, accepting all well-pleaded allegations in the complaint as true, and viewing them in the light most favorable to the Appellants, Appellants are not entitled to relief.[11] In deciding a Rule 12(b)(6) motion, however, the Court need not "accept as true unsupported conclusions and unwarranted inferences."[12] Courts are instructed to "view the complaint as a whole and to base rulings not upon the presence of mere words but, rather, upon the presence of a factual situation which is or is not justiciable."[13]

Appellants have asserted three claims against all of the Appellees: 1) fraud; 2) conspiracy to commit fraud; and 3) gross negligence. Appellants, however, fail to provide factual support for essential elements of each of these claims. Therefore, pursuant to Federal Rule of Civil Procedure 12(b)(6), Appellants' claims should be dismissed because they fail to state a claim upon which relief can be granted.

---

[11]  *See Maio v. Aetna, Inc.*, 221 F.3d 472, 481-82 (3d Cir. 2000).

[12]  *See City of Pittsburgh v. West Penn Power Co.*, 147 F.3d 256, 263 n. 13 (3d Cir. 1998).

[13]  *See id.* at 263.

---

1. **Appellants' fraud claim was appropriately dismissed for the additional reason that Appellants failed to comply with Federal Rule of Civil Procedure 9(b).**

Federal Rule of Civil Procedure 9(b) requires that in a pleading alleging fraud "the circumstances constituting fraud or mistake shall be stated with particularity."[14] Specifically, a plaintiff must provide sufficient factual detail regarding the circumstances of the alleged fraud to place the Appellees on notice of the precise misconduct charged.[15] The lack of any detail regarding acts by Highland in Appellants' Complaint fails to place Highland on notice of the nature of the misconduct with which they are charged.

Specifically, Appellants failed to allege that any specific misstatements were made by Highland or any of its representatives. Further, Appellants failed to provide any information related to when and where such representations were allegedly made by Highland.

Appellants attempted to counter this black-letter statement of law by claiming in its Response to Highland's Motion to Dismiss that they have "no obligation, before discovery, to provide further identification, including specific names of the senior creditor Appellees' representatives."[16] In support of this legal contention, Appellants cite several cases (all of which are either unpublished or from other jurisdictions) that generally upheld general fraud allegations against several different Appellees that are lumped together. These cases, however, are easily distinguished from the case at bar.

---

[14] FED. R. CIV. P. 9.

[15] *See Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 791 (3d Cir. 1984).

[16] *See* Response at 70.

---

In each of the cases cited by Appellants in response to Appellee Highland Motion to Dismiss, the Appellees grouped together in the complaint were all officers or representatives of the same corporate Appellee or related entities, thus leading the courts to conclude that their acts could not be easily distinguished. For example, in *MBIA Ins. Corp. v. Royal Indem. Co.*, 2004 US Dist. LEXIS 6609 (D. Del. Apr. 6, 2004), cited by Appellants, the court found that a justification existed to relax Rule 9(b)'s particularity standards.[17] In that case, however, the court found that this relaxation of the Rule was necessary in the case "of a small corporation, where the boundaries between the corporate entity and the individual director are often permeable."[18] In that case, the court stated:

> Because Mr. Yao is alleged to control or own each of the SFC Group of Entities, the Court is persuaded that it would be unfair to hold Royal to a requirement that it identify which of the SFC Group of Entities Mr. Yao was acting through when he, or the entities, made the various alleged fraudulent statements, misrepresentations, or concealments.[19]

Similarly, in *Airlines Reporting Corp. v. Belfon*, 2004 US Dist. LEXIS 7381, at *10 (D. V. I. 2004), also cited by Appellants, the court also relaxed the Rule 9(b) standards. In that case, however, as in *MBIA Ins. Corp.*, the Appellees were all officers of the same company.[20]

---

[17]  *See MBIA Ins. Corp.*, 2004 US Dist. LEXIS 6609, at *9 (D. Del. Apr. 6, 2004).

[18]  *See id.* (citation omitted).

[19]  *See id.* at *10.

[20]  *See Airlines Reporting Corp.*, 2004 US Dist. LEXIS 7381, at *10 ("ARC has alleged that all three WWT officers conspired and participated in the alleged fraud.").

---

In *Bernstein v. Kelso*, 231 A.D.2d 314, 320-21 (N.Y. App. Div. 1987), also cited by Appellants in their response to Highland's Motion to Dismiss, the court once again allowed a plaintiff to plead fraud without alleging which Appellees were specifically involved in which meetings. In that case, like the other cases cited by Appellants, the Appellees were all officers of the same corporation, as well as the corporation.[21]

Appellants' reliance on *Interlease Aviation Investors II (ALOHA) LLC v. Iowa Corp.*, 262 F.Supp.2d 898 (N.D. Ill. 2003) is also misplaced. Appellants cite that case for the general proposition that Appellants cannot be expected to provide the particulars demanded by Appellees when "it is obvious that a plaintiff may not be privy to the workings of a group of Appellees who have acted in concert to defraud him."[22] In that case, however, the Appellees who moved to dismiss the complaint had specific detailed allegations made against them in the complaint. Specifically, the Appellants in *Interlease Aviation* alleged that the Appellees met with plaintiff on a particular date and made specific misrepresentations to plaintiff.[23] The court found that the specific allegations "satisfied Rule 9(b)" by placing [the Appellees] on notice of their roles in the fraudulent scheme.[24]

Appellants cannot rely on this relaxed pleading requirement found in a few unpublished cases from other jurisdictions. Each of the Appellees in this case are

---

[21] *See id.* at 319.

[22] *See* Appellants' Response at 71.

[23] *See id.* at 915.

[24] *See id.* at 915.

---

unrelated entities with no control over each other.  Therefore, Appellants must meet the pleading requirements of Rule 9(b) and separately plead the fraudulent acts of each Appellee.

The general rule, as described in cases cited by Appellants in response to Appellee Highland's Motion to Dismiss, is that "when alleging fraudulent behavior against a group of Appellees, a plaintiff is required to separately plead the fraudulent acts of each Appellee to satisfy Rule 9(b).[25]  "Collective allegations of fraud against a group of Appellees generally do not satisfy Rule 9(b) because the Rule was intended to insure that each Appellee has adequate notice of the charges against it, thereby permitting each Appellee to mount a defense and not just deny that they did anything wrong."[26]  Although the unpublished cases and/or cases from other jurisdictions that are cited by Appellants relax the requirements of this general rule in limited circumstances, this is not justified in this case because each of the Appellees are unrelated, distinct entities.  Because Appellants fail to provide any information related to any specific misstatements made by Highland, including when and where such representations were allegedly made, Highland has not been adequately put on notice of its alleged misconduct.  As such, Highland has not been adequately put on notice of the alleged misconduct and, therefore, Appellants' fraud claims should have been dismissed pursuant to Federal Rule of Civil Procedure 9(b).

---

[25] *See MBIA Ins. Corp.*, 2004 US Dist. LEXIS 6609, at *8.

[26] *See id.* (citation omitted).

---

2.    **Appellants' fraud claim was appropriately dismissed for the additional reason that Appellants do not adequately allege reliance on the alleged misrepresentations.**

The general elements of fraud are (1) a false representation, (2) made either with knowledge or belief or with ruthless indifference to its falsity, (3) with an intent to induce the plaintiff to act or refrain from acting, (4) the plaintiff's action or inaction resulted from a reasonable reliance on the representation, and (5) reliance damaged the Appellee.[27]   Noticeably absent from Appellants' Complaint are any facts supporting Appellants' allegation that they relied on any misrepresentations by Appellees, including Highland.  In their Complaint, Appellants generally describe their purported reliance as follows:

> Appellants relied on the integrity of the Budgeted EBITDA and DATA the LTM EBITDA data.  More importantly, the Bankruptcy Court relied on that information in approving the Plan and cramming it down on the debenture holders, despite their objections.[28]

Appellants fail to describe what specific acts they took or what acts they refrained from taking in reliance upon Highland's representations.  Instead, Appellants make generalized statements that they relied on certain data.  Such generalized conclusory statements, absent any specific facts to indicate that acts or reliance occurred, are insufficient to state a cause of action for fraud.[29]

---

[27]   *See Browne v. Robb*, 583 A.2d 949, 955 (Del. 1990).

[28]   *See* Complaint at ¶ 188.

[29]   *See Brug v. Enstar Group, Inc.*, 755 F. Supp. 1247, 1254 (D. Del. 1991).

---

Upon realizing that their fraud claims would fail because of this lack of reliance, Appellants attempt an alternative argument that, instead of Appellants relying on the alleged misrepresentations, it was the Bankruptcy Court that relied on the alleged misrepresentations.[30]  This, of course, is irrelevant.  Appellants must demonstrate that they relied on the representations, not that some third party, including the Court, relied on the misrepresentations.

Additionally, Appellants fail to allege any facts from which fraudulent knowledge on the part of Highland can be inferred.  The Complaint states broadly that "Goldman, Mellon, and Highland controlled this entire process, periodically reviewing in detail the financial information prepared by Genesis Management on a monthly basis. . . ."[31]  These general allegations do not claim that Highland was actually aware of any falsity in the misrepresentations and more importantly, no supporting facts are included which might indicate that any of the Appellees had such knowledge.

In their Response to Appellee Highland's Motion to Dismiss, Appellants completely ignore this issue.  Instead, Appellants respond by simply stating that "it certainly cannot be said that Appellants will not be able to prove any set of facts to establish reliance.  Reliance is thus a question of fact rather than law."[32]  Appellants, however, have not pled any facts that would demonstrate any kind of reliance on their part.

---

[30]  *See* Complaint at ¶ 188.

[31]  *See id.* at ¶ 185.

[32]  *See* Response at 72.

Appellants have not alleged reliance for a simple reason. Appellants did not rely upon anything said or done by Appellees. Specifically, Appellants admit that they did not accept any valuation proposed by Appellees in the bankruptcy. To the contrary, Appellants were the principle objecting parties to the confirmation of the Plan.

Additionally, Appellants' reliance on *Snyder v. Butcher & Co.*, 1992 Del. Super LEXIS 362 (Del. Super. CT. Sept. 15, 1992), for the proposition that reliance is a question of fact is also misplaced. In that case, unlike the case at bar, the Appellants specifically pled that they purchased securities in reasonable reliance on Appellees' misrepresentations.[33] The question of fact referred to by the court in that case was whether Appellants' reliance was "justifiable," not whether there was any reliance at all.[34] Therefore, Appellants have not provided any authority that they are excused from pleading acts that would constitute reliance on the part of Appellants and have still not alleged any acts in their Complaint that would constitute reliance on their part. Therefore, Appellants' fraud cause of action should have been dismissed pursuant to Federal Rule of Civil Procedure 12 (b)(6).

---

[33] *See id.* at 19.

[34] *See id.* at 23 ("This question of what Appellees' warnings covered must go to the trier of fact.").

---

**3.**    **Appellants' conspiracy to commit fraud claim was appropriately dismissed for the additional reason that Appellants fail to allege acts that would support such a claim.**

The Third Circuit has long required that claims of conspiracy be supported by allegations of specific facts.[35]    General allegations of a conspiracy are inadequate.[36] Instead, allegations of a conspiracy must be particularized, such as including the period of the conspiracy, the object of the conspiracy, and certain actions of the alleged conspirators taken to achieve that purpose.[37]

Appellants' Complaint fails to allege *any* acts taken by Highland in support of any alleged conspiracy.  For example, nowhere in the Complaint is there any allegation that any employees of Highland made any false representations or aided and abided another individual making such false representations.    Therefore, Appellants' conspiracy to commit fraud claim should have been dismissed because it fails to state a claim upon which relief can be granted.

**4.**    **Appellants' gross negligence claim was appropriately dismissed for the additional reason that it fails to state a claim on which relief can be granted.**

As explained above, Appellants' Complaint fails to allege any negligent (much less grossly negligent) acts taken by Highland.  In addition, gross negligence requires that there be a legal duty between Highland and Appellants.[38]  In its Complaint, Appellants

---

[35]    *See Kalmanovitz v. G. Heileman Brewing Co.*, 595 F. Supp. 1385, 1400 (D. Del. 1984) (citing *Black & Yates, Inc. v. Mahogany Ass'n.*, 129 F.2d 227 (3d Cir. 1942)).

[36]    *See Kalmanovitz*, 595 F. Supp. at 1400.

[37]    *See id.* at 1400-01.

[38]    *See City of Philadelphia v. Beretta U.S.A. Corp.*, 277 F.3d 415, 422 n. 9 (3d Cir. 2002).

---

**APPELLEE HIGHLAND CAPITAL MANAGEMENT, L.P.'S SUPPLEMENTAL BRIEF IN OPPOSITION TO THE APPEAL OF RICHARD HASKELL ET AL.**                    **PAGE 14**

allege that the Appellees, including Highland, owed a "duty of care" to Appellants because Appellees were debtors in the bankruptcy proceeding; they were senior creditors of the debtor; and because they were a proponent of the bankruptcy organization plan.[39] During the bankruptcy proceedings, Highland was one of many creditors competing with Appellants to collect on their respective claims.  As a matter of law, Highland did not owe a duty to Appellants because creditors simply do not owe a duty to other creditors in a bankruptcy proceeding.[40]  Therefore, Appellants' gross negligence claim should have been dismissed as a matter of law.

## B.    Appellants' Complaint Is Barred Because Appellants Do Not Have Standing To Assert The Claims.

Appellants' Complaint fails to state a claim upon which relief can be granted because even if these claims were viable, they were owned by the debtor.  The underlying basis of Appellants' alleged losses, and thus their attempt to make a private right of action claims against Highland and the other Appellees, is the pre-petition debt originally owed to Appellants by Genesis.[41]  Therefore, Appellants' alleged losses and purported claims derive from the pre-petition debtor-creditor relationship between them and Genesis and alleged actions aimed at devaluing the bankruptcy estate.

These claims, however, belong to the bankruptcy estate of Genesis, not Appellants.  A cause of action belongs to the bankruptcy estate if the claim alleges only

---

[39]  *See* Complaint at ¶ 195.

[40]  *See In re W.T. Grant Co.*, 699 F.2d 599, 610 (2d Cir. 1983) ("[A] creditor is under no fiduciary obligation to its debtor or to other creditors of the debtor in the collection of its claims.").

[41]  *See* Complaint at ¶ 1.

indirect harm to a creditor and the debtor could have raised a claim for its direct injury under applicable law.[42]    Courts are instructed to "look to the injury for which relief is sought and consider whether it is peculiar and personal to the claimant or general and common to the corporation and creditors," in order to determine whether the bankruptcy estate or a particular creditor owns a cause of action.[43]    A cause of action belongs to the corporation if the injury is common to the corporation and the creditors.[44]

Appellees' "fraud," if all of Appellants' allegations were true, was committed on the estate, which would be the only entity with standing, and which, far from making a claim, sponsored the Plan Appellants now seek to attack.[45]    Appellants' damages, if any, are derived from Appellees' alleged wrongdoing that devalued the Genesis estate. Because these alleged damages are common to Appellants <u>and</u> to Genesis, Appellants lack standing to bring their claims.[46]    Appellants' claims are for actions regarding the

---

[42]    *See Schertz Cebolo Universal City v. Wright, (In re Educator's Group Health Trust)*, 25 F.3d 1281, 1284-85 (5th Cir. 1994); *Goldin v. Primavera Familienstiftung, TAG Associates, Ltd.*, (*In re Granite Partners*), 194 B.R. 318, 325 (Bankr. S.D.N.Y. 1996).

[43]    *See In re E.F. Hutton Southwest Properties II, Ltd.*, 103 B.R. 808, 812 (Bankr. N.D. Tex. 1989) (citation omitted); *S.I. Acquisition., Inc. v. Eastway Delivery Serv., Inc.* (*In re S.I. Acquisition, Inc.*), 817 F.2d 1142, 1151-52 (5th Cir. 1987).

[44]    *See id.*

[45]    Moreover, to the extent the senior lenders are alleged to have committed wrongdoing through any of the professionals and representatives including those of Mellon Bank, NA as agent for the senior lenders, such claims were released by the Genesis estate.  *See* Joint Plan of Reorganization, filed July 6, 2001 at ¶ 5.10; Opinion on Confirmation, dated September 12, 2001 at 21-24.

[46]    *See In re E.F. Hutton Southwest Properties II, Ltd.*, 103 B.R. at 812; *In re S.I. Acquisition, Inc.*, 817 F.2d at 1151.

---

**APPELLEE HIGHLAND CAPITAL MANAGEMENT, L.P.'S SUPPLEMENTAL BRIEF IN OPPOSITION TO THE APPEAL OF RICHARD HASKELL ET AL.**                        **PAGE 16**

valuation of the estate, which do not depend on dealings or reliance by any one creditor or creditor group.[47]

In opposition to Highland's challenge to Appellants' lack of standing, Appellants' only response is the incorrect legal conclusion that causes of action that arise after a bankruptcy commences cannot be property of the bankruptcy estate and, therefore, their claims cannot belong to the Genesis bankruptcy estate. Appellants' argument is fatally flawed in several ways.

As an initial matter, Appellants' argument fails because it is based on the incorrect premise that their claims arose after the commencement of the bankruptcy. To the contrary, Appellants make it clear throughout their Complaint that the "fraudulent scheme" began before the filing of the Genesis Chapter 11 bankruptcy petition on June 22, 2000. For example, Appellants allege that the Appellees purchased senior debt participations "at a massive discount from face value" . . . and "then conspired with Genesis management to put the Company into bankruptcy . . . ."[48] Therefore, even if property of the estate was limited to causes of action that arise prior to commencement of a bankruptcy, the estate would still be the proper party to bring the claims alleged by Appellants.

---

[47] *See id.*

[48] *See* Complaint at 8; *see also id.* at 54 ("But somewhere between March of 2000 and August of 2001 . . . over half a billion dollars of enterprise value had disappeared . . . ."); at 41 ("By March of 2000, . . . these senior Genesis/MC managers had begun an examination of the management, pharmacy, therapy and service contracts between Genesis and MC. . . . The real purpose of this exercise, however, was to divert as much value as possible from Genesis . . . .").

---

**APPELLEE HIGHLAND CAPITAL MANAGEMENT, L.P.'S SUPPLEMENTAL BRIEF IN OPPOSITION TO THE APPEAL OF RICHARD HASKELL ET AL.**         **PAGE 17**

Additionally, Appellants ignore the fact that the property of the estate is not solely limited to property held "as of the commencement of the bankruptcy case."  Although it is true that the estate does own this type of property under Section 541(a)(1) of the Bankruptcy Code, the estate's property is much broader that what is encompassed under this provision.  Appellants' "analysis" ignores Section 541(a)(7) of the Bankruptcy Code, which further delineates additional types of  property contained in the bankruptcy estate. Specifically, Section 541(a)(7) includes "[a]ny interest in property that the estate acquires after the commencement of the case" in the property of the estate.  The Third Circuit has specifically held that these interests include causes of action.[49]  Therefore, the timing of the accrual of the claims asserted by Appellants is irrelevant – the claims belong to the estate regardless of whether they arose pre- or post- petition.

The cases cited in response to Highland's Motion to Dismiss by Appellants for the proposition that "causes of action that arise *after* the bankruptcy petition . . . are not considered property of the bankruptcy estate," actually support Highland's position. (This is especially true when the actual language of the opinions is read as opposed to the creative description that Appellants have inserted into their parenthetical.)  For example, Appellants cite *Board of Trustees v. Foodtown Inc.*, 296 F.3d 164 (3d Cir. 2002) for this proposition.  This case does, as Appellants contend, indeed state that "[a] cause of action is considered property of the estate if the claim existed at the commencement of the filing and the debtor could have asserted the claim on his own behalf . . . ."[50]  The case does

---

[49] *See Kollar v. Miller*, 176 F.3d 175, 178 (3d Cir. 1999) ("[Sections 541(a)(1) and (a)(7)] have been interpreted broadly, and include an interest in a cause of action.").

[50]*See Board of Trustees*, 296 F.3d at 169 n. 5.

not, however, state anywhere that a "claim that accrued after filing of bankruptcy petition [is] not part of [the] estate," as Appellants assert in their brief by placing this phrase in the parenthetical for *Board of Trustees* outside of the quotes.  In fact, *Board of Trustees* does find, which Appellants fail to mention, that the property of the bankruptcy estate includes, pursuant to Section 541(a)(7), "any interest in property that the estate acquires after the commencement of the case."[51]

Appellants also attempt to twist cases cited by Highland it its Motion to Dismiss to support their erroneous position.  For example, Appellants note in their Response that the court in *In re Educator's Group Health Trust*, 25 F.3d 1281, 1286 (5th Cir. 1994), stated that "the bankruptcy estate succeeds to the causes of action which the debtor could have bought [sic] as of the commencement of the case . . . ."[52]  Appellants fail to mention, however, that the Court's analysis was limited to Section 541(a)(1), and contained no reference to Section 541(a)(7).  The cases cited by Appellants, as well as the cases cited by Highland it its Motion to Dismiss, all support the basic proposition of law accepted by the Third Circuit in *Kollar* that the estate's property can consist of causes of action that accrue after the commencement of the bankruptcy.  Therefore, Appellants' claims should have been dismissed as a matter of law.

---

[51] *See id.* at 169.

[52] *See* Appellants' Response at 59.

---

**IV.**

**REQUEST FOR RELIEF**

WHEREFORE, Highland requests that the Court affirm the Bankruptcy Court's dismissal of Appellant's Complaint.

Dated:  January 23, 2006

Respectfully submitted,

/s/Daniel K. Hogan
Daniel K. Hogan, Esquire
DE Bar No. 2814
THE HOGAN FIRM
1311 Delaware Avenue
Wilmington, Delaware   19806
(302) 656-7540

and

Lackey Hershman, L.L.P.
Paul B. Lackey
State Bar No. 00791061
Michael P. Aigen
State Bar No. 24012196
3102 Oak Lawn Avenue
Suite 700
Dallas, Texas  75219-4241
Telephone:    (214) 560-2201
Telecopier:   (214) 560-2203

**ATTORNEYS FOR APPELLEE
HIGHLAND CAPITAL
MANAGEMENT, L.P.**