## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | |
| | : | |
| Genesis Health Ventures, Inc., et al., | : | Civ. Act. No. 05-CV-427 (KAJ) |
| | : | Related to Case No. 00-2692 (JHW) |
| Debtors, | : | Jointly Administered |
| | : | |
| Richard Haskell et al., | : | |
| | : | |
| Plaintiffs-Appellants, | : | |
| | : | |
| v. | : | Adv. Pro. No.: 04-53375 (JHW) |
| | : | |
| Goldman, Sachs & Co., et al., | : | |
| | : | |
| Defendants-Appellees. | : | |
| | : | |

## SUPPLEMENTAL MEMORANDUM OF LAW
## OF APPELLEE MELLON BANK, N.A.

Teresa K.D. Currier (3080)
Peter J. Duhig (4024)
KLETT ROONEY LIEBER &
SCHORLING, PC
The Brandywine Building
1000 West Street, Suite 1410
Wilmington, Delaware 19801
(302) 552-4200

Attorneys for Defendant Mellon Bank, N.A.

- and -

Steven Russo
SIVE, PAGET & RIESEL, P.C.
460 Park Avenue
New York, New York 10022
(212) 421-2150

Attorneys for Defendant Mellon Bank,
N.A. with respect to plaintiffs Charles
L. Grimes, Louis IG Ireland Trust C.
Yvonne Cooke, Jane G. Brown,
Serena R. Schwartz and
Gordon W. Chaplin

Richard S. Toder
Menachem O. Zelmanovitz
Matthew E. Schernecke
MORGAN, LEWIS & BOCKIUS LLP
101 Park Avenue
New York, New York 10178
(212) 309-6000

Attorneys for Defendant Mellon Bank, N.A. with
respect to all Plaintiffs other than Charles L.
Grimes, Louise IG Ireland Trust, C. Yvonne
Cooke, Jane G. Brown, Serena R. Schwartz and
Gordon W. Chaplin

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................................ i

PRELIMINARY STATEMENT ................................................................................. 2

SUPPLEMENTAL RELEVANT FACTS ................................................................. 4

THE COMPLAINT .................................................................................................... 5

THE BANKRUPTCY COURT DECISION ............................................................. 5

STANDARD OF REVIEW ....................................................................................... 6

ARGUMENT .............................................................................................................. 6

    I.     The Complaint Was Properly Dismissed as an Improper Collateral Attack on the Plan and Confirmation Proceedings. ............................................. 6

    II.    The Plaintiffs' Fraud Claim Fails to Satisfy the Rule 9(b) Specificity Requirement With Respect to Mellon. ................................................... 9

    III.   The Plaintiffs Failed to Adequately Plead Scienter With Respect to Mellon. ................................................................................................ 12

    IV.   Plaintiffs Civil Conspiracy Claim Fails to State A Claim. .................. 15

    V.    Mellon Owed No Duty to the Plaintiffs and Cannot Be Liable for Gross Negligence. ....................................................................................... 17

CONCLUSION .......................................................................................................... 19

## TABLE OF AUTHORITIES

## CASES

Airline Reporting Corp. v. Belfon,
No. Civ. 2003-146, 2004 WL 903800 (D. V.I. April 24, 2004) .......................................12

B.E.L.T., Inc. v. Wachovia Corp.,
403 F.3d 474 (7th Cir. 2005) ........................................................................................18

Bernstein v. Kelso & Co.,
231 A.D.2d 314 (N.Y. App. Div. 1997) ...........................................................................12

Brown v. Robb,
583 A.2d 949 (Del. 1990) ..............................................................................................17

In re Burlington Coat Factory Sec. Litig.,
114 F.3d 1410 (3d Cir. 1997) ........................................................................................12

In re Crown Am. Realty Trust Sec. Litig.,
No. Civ. A. 95-202, 1997 WL 599299 (W.D. Pa. Sept. 15, 1997) ............................12, 13

In re Crown Simplimatic Inc.,
299 B.R. 319 (Bankr. D. Del. 2003) ...............................................................................15

De Lage Landen Fin. Servs., Inc. v. Cardservice Int'l, Inc.,
No. Civ. A. 00-2355, 2001 WL 799870 (E.D. Pa. July 12, 2001) ...................................11

Devaney v. A.P. Chester,
709 F. Supp. 1255 (S.D.N.Y. 1989) ...............................................................................16

Duggan v. Terzakis,
275 F. Supp. 2d 968 (N.D. Ill. 2003) .............................................................................12

Fritz v. Yeager,
790 A.2d 469 (Del. 2002) ..............................................................................................17

In re Genesis Health Ventures, Inc.,
324 B.R. 510 (Bankr. D. Del. 2005) .....................................................................2, 6, 7, 10

In re Genesis Health Ventures, Inc.,
266 B.R. 591 (Bankr. D. Del. 2001), appeal dismissed, 280 B.R. 339 (D. Del. 2002) ......7

In re GEX Kentucky, Inc.,
100 B.R. 887 (Bankr. N.D. Ohio 1988) ..........................................................................18

Grant v. Kingswood Apts.,
No. Civ. A. 01-1523, 2001 WL 1178796 (E.D. Pa. Oct. 2, 2001) ......................................9

In re Harvard Footwear, Inc.,
153 B.R. 617 (Bankr. E.D.N.Y. 1993) ..............................................................................16

In re Hechinger Inv. Co. of Del., Inc.,
No. 99-02261-PJW, Civ. 00-973-SLR, 2004 WL 724960 (D. Del. Mar. 28, 2004), aff'd,
2005 WL 1793503 (3d Cir. July 29, 2005) ...................................................................17

Interlease Aviation Investors II (Aloha) L.L.C. v. Vanguard Airlines, Inc.,
262 F. Supp. 2d 898 (N.D. Ill. 2003) ...............................................................................12

Liafail, Inc. v. Learning 2000, Inc.,
No. C.A. 01-599 GMS, No. C.A. 01-678 GMS, 2002 WL 31667861, (D. Del. Nov. 25,
2002) ................................................................................................................................9

MBIA Ins. Corp. v. Royal Indem. Co.,
221 F.R.D. 419 (D. Del. 2004) ........................................................................................12

Mills v. Polar Molecular Corp.,
12 F.3d 1170 (2d Cir. 1993) .............................................................................................11

Nappier v. Pricewaterhouse Coopers LLP,
227 F. Supp. 2d 263 (D.N.J. 2002) ..................................................................................12

Naporano Iron & Metal Co. v. Am. Crane Corp.,
79 F. Supp. 2d 494 (D.N.J. 1999) ....................................................................................11

O'Brien v. Nat'l Prop. Analysts Partners,
936 F.2d 674 (2d Cir. 1991) .............................................................................................15

Odyssey Re (London) Ltd. v. Stirling Cooke Brown Holdings Ltd.,
85 F. Supp. 2d 282 (S.D.N.Y. 2000), aff'd, 2 Fed. Appx. 109 (2d Cir. 2001) ...........15, 16

Paradise Hotel Corp. v. Bank of Nova Scotia,
842 F.2d 47 (3d Cir. 1988) ...............................................................................................18

Playtex, Inc. v. Columbia Cas.,
No. Civ. A. 88C-MR. 233, 1993 WL 390469 (Del. Super. Ct. Sept. 20, 1993) ...............18

In re Prods. Liab. Litig.,
No. MDL 1014, 1996 WL 482977 (E.D. Pa. Aug. 22, 1996) ...........................................16

P. Schoenfeld Asset Mgmt. LLC v. Cendant Corp.,
142 F. Supp. 2d 589 (D.N.J. 2001) ..................................................................................15

In re Public Service Co. of New Hampshire,
43 F.3d 763 (1st Cir. 1995), cert. denied, 514 U.S. 1108 ...........................................7, 8, 9

In re Public Service Co. of New Hampshire,
148 B.R. 702 (Bankr. D.N.H. 1992), aff'd, 848 F. Supp. 318 (D.R.I. 1994),
    aff'd, 43 F.3d 763 (1st Cir. 1995), cert. denied, 514 U.S. 1108 ..................................7

In re Rockefeller Ctr. Inc. Sec. Litig.,
311 F.3d 198 (3d Cir. 2002) ........................................................................................9

In re Sharp Int'l Corp.,
302 B.R. 760 (E.D.N.Y. 2003), aff'd, 403 F.3d 43 (2d Cir. 2005) ...................................18

Shearin v. E.F. Hutton Group, Inc., 885 F.2d 1162, 1166 (3d Cir.1989) ........................16

State Farm Mut. Auto. Ins. Co. v. Makris,
No. Civ. A. 01-5351, 2003 WL 924615 (E.D. Pa. Mar. 4, 2003) ......................................12

## STATUTES AND RULES

11 U.S.C. § 1144 ....................................................................................................3, 6, 9

Fed. R. Civ. P. 9(b) ..................................................................................3, 9, 10, 11, 15, 16

## OTHER AUTHORITIES

Restatement (Second) of Torts, § 552 ...........................................................................18

5 Wright & Miller, Fed. Prac. & Proc. Civ. 3d § 1233 (West 2004) ................................15

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | : |
| | : |
| Genesis Health Ventures, Inc., et al., | :   Civ. Act. No. 05-CV-427 (KAJ) |
| | :   Related to Case No. 00-2692 (JHW) |
|                Debtors, | :   Jointly Administered |
| | : |
| Richard Haskell et al., | : |
| | : |
|        Plaintiffs-Appellants, | : |
| | : |
|    v. | :   Adv. Pro. No.: 04-53375 (JHW) |
| | : |
| Goldman, Sachs & Co., et al., | : |
| | : |
|      Defendants-Appellees. | : |
| | : |

**SUPPLEMENTAL MEMORANDUM OF LAW**
**OF APPELLEE MELLON BANK, N.A.**

Mellon Bank, N.A. ("Mellon") submits this Supplemental Memorandum of Law in opposition to Plaintiffs-Appellants'("Plaintiffs") appeal from the Bankruptcy Court's May 10, 2005 order dismissing the complaint in the above action (the "Complaint").[1]

**PRELIMINARY STATEMENT**

Plaintiffs, former subordinated debt-holders of Genesis Health Ventures, Inc. ("Genesis"), have appealed from the Bankruptcy Court's dismissal of an action they brought more than two years after the confirmation of the Genesis Joint Plan of Reorganization ("Plan"). In re Genesis Health Ventures, Inc., 324 B.R. 510 (Bankr. D. Del. 2005) (Wizmur, J.). In asserting specious claims of fraud, conspiracy to commit

---

[1] To avoid duplication, this Memorandum supplements and will not seek to reargue the points made in the Brief of Appellees in Opposition to the Appeal of Richard Haskell, et al. from the May 10, 2005 Order of the Bankruptcy Court (the "Joint Appellees' Brief"), filed contemporaneously herewith, in which Mellon has joined. Mellon also joins in the arguments set forth in the supplemental memoranda filed by Goldman, Sachs & Co. ("Goldman") and Highland Capital Management, L.P. ("Highland").

                    

fraud and gross negligence premised on allegations that defendants withheld or failed to disclose relevant information, Plaintiffs sought to re-litigate valuation issues fully litigated, heard and determined by the Bankruptcy Court in the contested Plan confirmation proceedings.

As set forth in the Joint Appellees' Brief at 37, the Bankruptcy Court properly dismissed the Complaint as against Mellon on the grounds of res judicata and collateral estoppel and could have done so (as it did for Genesis) as time-barred under 11 U.S.C. § 1144. The dismissal of the Complaint also may be affirmed on multiple additional grounds that the Bankruptcy Court did not reach in its decision below:

- The Complaint was an impermissible collateral attack on the confirmation proceedings and the order confirming the Plan (the "Confirmation Order");

- Plaintiffs' fraud claim utterly failed to satisfy the specificity requirement of Fed. R. Civ. P. 9(b) in alleging no specific actionable conduct by any identified Mellon officer or employee;

- Plaintiffs' fraud claim also failed to adequately allege scienter on the part of Mellon, which demonstrably had no motive to commit any of the alleged misconduct;

- The conspiracy to commit fraud claim was similarly deficient in the absence of a viable, underlying fraud claim and a lack of specificity; and

- Mellon and the other Senior Lenders (defined below) owed no
  duty, and thus, could not be liable for gross negligence to the
  Plaintiffs.

The Complaint and the instant appeal represent nothing more than a blatant, renewed attempt by the Plaintiffs to reorder the priorities among creditors and effectively revoke the confirmed Plan years after its effective date. Plaintiffs' transparent attempt to add another "deep pocket" by essentially relying solely on Mellon's position as administrative agent for the Senior Lenders cannot support any of their claims. Accordingly, the dismissal of the Complaint as against Mellon should be affirmed.

## SUPPLEMENTAL RELEVANT FACTS[2]

Prior to the filing of Genesis' bankruptcy petition, Genesis, Mellon, as administrative agent, and certain lenders (the "Senior Lenders") entered into that certain Fourth Amended and Restated Credit Agreement dated as of August 20, 1999, as amended (the "Prepetition Credit Agreement"). (AA 780-81).[3] At confirmation of Genesis' Plan, in excess of $1.2 billion was due and outstanding under the Prepetition Credit Agreement. (AA 683). In addition, during Genesis' bankruptcy case, Genesis, Mellon, as administrative agent, and certain of the Senior Lenders entered into that certain Credit and Guaranty Agreement dated as of June 22, 2000, as amended, whereby Genesis was provided with debtor-in-possession financing up to a maximum amount of

---

[2] The Court is referred to the Joint Appellees' Brief at 6-14, for a further recitation of the relevant facts, procedural history and decision below.

[3] All references to the Appendix to the Joint Appellees' Brief are denoted "AA" with numerical page references.

$250,000,000. (AA 1849). Thus, Mellon acted as administrative agent under both Genesis' prepetition and post-petition loan agreements.

It is undisputed that prior to the confirmation hearing on Genesis' Plan, Mellon sold and assigned its entire claim against Genesis under the Prepetition Credit Agreement at a discount and, consequently, Mellon received no equity of the reorganized company upon the effectiveness of the Plan. (AA 1711). Indeed, Plaintiffs expressly concede that Mellon owns no equity of the reorganized company. (Plaintiffs-Appellants' Opening Memorandum dated November 21, 2005 ("Appellants' Brief") at 37 n. 21).

## THE COMPLAINT

The Complaint asserted three causes of action against each of the defendants, including Mellon: fraud, conspiracy to commit fraud and gross negligence. However, with respect to Mellon, the Complaint was utterly devoid of any specificity. Indeed, in the 86-page Complaint there was but one fleeting reference to any identified Mellon officer or employee, and that sole reference merely alleged that Sherman White, a former Mellon officer, "suggested" Beverly Anderson's name for the position of independent restructuring officer. (A83-84).[4] No specific misconduct by any officer or employee of Mellon is alleged in the Complaint.

## THE BANKRUPTCY COURT DECISION

The Bankruptcy Court dismissed the Complaint as against Genesis on the grounds that 11 U.S.C. § 1144 and the release provisions of the Plan barred the claims against it.

---

[4] All references to the Appendix to Appellants' Brief are denoted "A" with numerical page references.

In re Genesis, 324 B.R. at 517.  The Court dismissed the Complaint as against Mellon and the other Senior Lenders on the grounds of res judicata and collateral estoppel and as against defendant George V. Hager on the basis of collateral estoppel.  Id. at 526, 529. The Bankruptcy Court did not reach the alternative grounds raised by Mellon or the other Senior Lenders for dismissal of the Complaint.  Id. at 529.

## STANDARD OF REVIEW

As set forth in the Joint Appellees' Brief at 15-16, in reviewing the issues on appeal, the Court must apply a clearly erroneous standard to the Bankruptcy Court's findings of fact and a plenary standard to its legal conclusions.  In particular, the Bankruptcy Court's determinations on res judicata and collateral estoppel are subject to the clearly erroneous standard.  Id.

Further, the Bankruptcy Court's order may be affirmed on grounds supported by the record, even if not addressed by the Bankruptcy Court below.  Id. at 16.

## ARGUMENT

**I.      The Complaint Was Properly Dismissed as an Improper Collateral Attack on the Plan and Confirmation Proceedings.**

As set forth in the Joint Appellees' Brief at 16-17, the Bankruptcy Court's dismissal of Plaintiffs' claims against all defendants may be affirmed on the grounds that such claims are time-barred under 11 U.S.C. § 1144.  The time limitation of § 1144 protects all parties from late revocation of a confirmed plan of reorganization, not just the debtor.  Id.; see also In re Public Service Co. of New Hampshire, 43 F.3d 763, 768 (1st Cir. 1995), cert. denied, 514 U.S. 1108.

Further, by their Complaint, Plaintiffs patently seek to collaterally attack and relitigate the very same valuation issues that were litigated before the Bankruptcy Court during the confirmation proceedings and that were determined by that Court in its Opinion on Confirmation, In re Genesis Health Ventures, Inc., 266 B.R. 591 (Bankr. D. Del. 2001), appeal dismissed, 280 B.R. 339 (D. Del. 2002), and the Confirmation Order. Genesis, 324 B.R. at 516-17. In strikingly similar circumstances, the First Circuit held that "the courts have authority to fashion appropriate limitations on [such] collateral attacks," In re Public Service, 43 F.3d at 767 n. 2.

In Public Service, following confirmation of the plan by the New Hampshire bankruptcy court, former shareholders of the debtor brought a fraud complaint in New York state court alleging that certain information in the debtor's disclosure statement, including financial projections and valuations, was inaccurate. The bankruptcy court granted the debtor's and other defendants' motion to enjoin the state action and the district court affirmed. In re Public Service Co. of New Hampshire, 148 B.R. 702 (Bankr. D.N.H. 1992), aff'd, 848 F. Supp. 318 (D.R.I. 1994), aff'd, 43 F.3d 763 (1st Cir. 1995), cert. denied, 514 U.S. 1108. In affirming the lower court decisions, the Court of Appeals stated:

> In acting to protect its prior proceedings, the bankruptcy court acts in an equitable capacity. Later suits that threaten to undermine a bankruptcy judgment are not merely the concern of the individual litigants; the willingness of future claimants and creditors to compromise in chapter 11 proceedings depends on giving the reorganization court's approval a due measure of finality. And in determining how much finality is due, equitable considerations and policy concerns can properly justify results that are not literally compelled by statutory language.

Public Service, 43 F.3d at 768.  The Court thereupon concluded:

> [T]his case can be disposed of based on a single, relatively narrow circumstance: the attacks now made ... were in part made in the reorganization proceeding itself; and, to the extent that they were not made there, they could and (if meritorious) should have been made there.
>
> *       *       *
>
> The bankruptcy judge found, in issuing the injunction, that the appellants 'did raise or had the opportunity to raise' in the reorganization all of the issues that they now seek to litigate.  148 B.R. at 718.  It is implicit in this finding that the appellants by exercising due diligence could have learned enough to raise their present contentions in opposing confirmation. . . . . <u>Because the alleged inaccuracies could have been, and in part were, litigated in the bankruptcy court, we think that court was entitled to prohibit a new (albeit indirect) attack upon the disclosure statement it had approved . . . . [W]e think it evident that allowing such an attack would disrupt Congress' detailed scheme for approval of ... reorganizations, and would frustrate the proper administration of the Bankruptcy Code.</u>

Id. at 767-68 (emphasis added).

These precise factors apply here and mandate the affirmance of the Bankruptcy Court's decision dismissing the Complaint.  The Bankruptcy Court found[5] that Plaintiffs did raise or had the opportunity to raise in the confirmation proceedings all of the issues that they now seek to litigate, and Plaintiffs, by exercising due diligence, could have learned enough to raise their present contentions in opposing confirmation of the Plan.  In re Genesis, 324 B.R. at 516-17.

Accordingly, the Bankruptcy Court was entitled to prohibit a "new (albeit indirect) collateral attack" on its Confirmation Order and the Plan that it had approved,

---

[5] As stated above, the Bankruptcy Court's findings may not be overturned unless "clearly erroneous". supra at 5.

by dismissing the Complaint. This decision was consistent, indeed compelled, by the purpose and intent of the statutory provisions because "the Bankruptcy Code looks not only toward repose for a confirmed plan, 11 U.S.C. § 1144, but toward protecting those who have participated in the development of execution of the plan." Public Service, 43 F.3d at 768.

Therefore, the order dismissing the Complaint as against all defendants must be affirmed.

## II.     The Plaintiffs' Fraud Claim Fails to Satisfy the Rule 9(b) Specificity Requirement With Respect to Mellon.

Although not reached by the Bankruptcy Court, additional arguments justify dismissal of the Plaintiffs' fraud claim against Mellon and affirmance of the decision below.

Fed. R. Civ P. 9(b) provides that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." The Plaintiffs utterly failed to plead with specificity the requisite "who, what, when, where, and how" of their fraud allegations against Mellon or the other Senior Lenders. See In re Rockefeller Ctr. Inc. Sec. Litig., 311 F.3d 198, 217 (3d Cir. 2002); Liafail, Inc. v. Learning 2000, Inc., No. C.A. 01-599 GMS, No. C.A. 01-678 GMS, 2002 WL 31667861, at *4 (D. Del. Nov. 25, 2002); see also Grant v. Kingswood Apts., No. Civ. A. 01-1523, 2001 WL 1178796, at *1-2 (E.D. Pa. Oct. 2, 2001).

There is not a single allegation in the Complaint of a specific fraudulent act or statement by any Mellon officer or employee. The sole allegation in the Complaint that identified a Mellon officer, to the effect that Sherman White, a former officer of Mellon,

"suggested" Beverly Anderson for the position of independent restructuring officer for Genesis (A83-84), can hardly form the basis of a fraud claim, much less satisfy the specificity requirement of 9(b).

Indeed, the purported issue of Beverly Anderson's independence was a patent red herring. Ms. Anderson was appointed in recognition of the existing conflicts between Genesis and Multicare resulting from, among other things, the management and related contracts that existed between Genesis and Multicare AMC, Inc. ("Multicare"). (AA 1143-44). The only possible relevance of Ms. Anderson's independence was to the question of the fairness of such contracts. (AA 1168-69).[6] However, the ultimate compromise that modified the pricing of such contracts -- a direct result of the adversarial process between the polar-opposite interests separately championed by the Genesis and Multicare creditors committees -- best demonstrated the fairness of the process. (AA 1821-22, 1856). Moreover, the independence of Beverly Anderson was expressly and fully raised in the Multicare creditors committee's motion for appointment of a trustee that was filed months before confirmation of the Plan.[7] (AA 1143-44). Plaintiffs had a full and fair opportunity at discovery and to be heard at the confirmation proceedings on that and any other issue. Genesis, 324 B.R. at 526. In failing to otherwise identify any

---

[6]Some of Plaintiffs' valuation issues were raised at or prior to confirmation by other parties as well. For example, the Multicare creditors committee, whose valuation position was diametrically opposite to that of the Plaintiffs, filed a motion for a trustee, challenging the valuation effect of the contracts between Multicare and Genesis, among other things. (AA 1135). Eventually, the Multicare and Genesis unsecured creditors committees, the debtors and the Senior Lenders, reached a compromise which was incorporated into the Plan. (AA 801).

[7]Plaintiffs were well aware of this motion and the alleged Beverly Anderson "independence" issue. GMS Group LLC (an affiliate of GMS Investment Advisors, Inc.), acting on behalf of many of the Plaintiffs, was a member of the Genesis unsecured creditors committee. In re Genesis, 324 B.R. at 522. It is not surprising that the Multicare creditors committee alleged that Ms. Anderson's loyalty favored Genesis, while Plaintiffs now allege that her loyalties lay with Multicare. In any event, Plaintiffs can certainly not offer this issue as a newly discovered fact.

Mellon officer in the Complaint, much less any actionable conduct by such officer, Plaintiffs clearly failed to satisfy the specificity mandated under Rule 9(b).

In fact, Plaintiffs simply lumped Mellon together with its co-defendant Senior Lenders, relying on Mellon's role as administrative agent to the Senior Lenders as the basis for their allegations of fraudulent conduct. (A 17). Such generally pled allegations of fraud against a group of defendants do not suffice under Fed. R. Civ. P. 9(b) which requires that fraud be pled with specificity and particularity as to each defendant, thereby permitting each defendant to be on notice of the allegations against it. See, e.g., Naporano Iron & Metal Co. v. Am. Crane Corp., 79 F. Supp. 2d 494, 511 (D.N.J. 1999) ("A plaintiff must plead fraud with particularity with respect to each defendant, thereby informing each defendant of the nature of its alleged participation in the fraud"); De Lage Landen Fin. Servs., Inc. v. Cardservice Int'l, Inc., No. Civ. A. 00-2355, 2001 WL 799870, at *3 (E.D. Pa. July 12, 2001) (when allegations of fraud are alleged against multiple defendants, complaint "must also separately allege each defendant's fraudulent conduct"); see also Mills v. Polar Molecular Corp., 12 F.3d 1170, 1175 (2d Cir. 1993) (complaint insufficient where it failed to link alleged fraudulent statements to particular

defendants).[8]

Accordingly, Plaintiffs failed to adequately plead their fraud claim against Mellon and the Bankruptcy Court's dismissal of the claim should be affirmed.

## III.    The Plaintiffs Failed to Adequately Plead Scienter With Respect to Mellon.

An even more glaring defect in the Complaint was Plaintiffs' failure to adequately plead scienter with respect to Mellon.   A factual allegation of scienter must either demonstrate "a motive and a clear opportunity for committing the fraud," or "circumstances indicating conscious or reckless behavior by defendants."  In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1422 (3d Cir. 1997); see also In re Crown American Realty Trust Sec. Litig., No. Civ. A. 95-202, 1997 WL 599299, at *11 (W.D. Pa. Sept. 15, 1997).  More specifically, a plaintiff "must state facts that, if true, would compel or forcefully suggest that a given defendant acted with the required state of mind."  Nappier v. Pricewaterhouse Coopers LLP, 227 F. Supp. 2d 263, 278 (D.N.J. 2002).

---

[8]  In opposition to the motion to dismiss, Plaintiffs erroneously argued that their "group pleading" satisfied the stringent pleading requirements of Rule 9(b), citing clearly inapposite cases.  (AA 1557).  Bernstein v. Kelso & Co., 231 A.D.2d 314, 320-21 (N.Y. App. Div. 1997), was a fraud case applying New York law, not federal law, in which the lower court erroneously decided factual issues in granting the motion to dismiss and where the alleged fraud was "peculiarly within the knowledge" of a group of management defendants.   Similarly, in Airline Reporting Corp. v. Belfon, No. Civ. 2003-146, 2004 WL 903800, at *3-4 (D. V.I. April 24, 2004), the defendants were controlling persons of a small corporation who were the only ones who "would know who participated in the alleged fraud."  In MBIA Ins. Corp. v. Royal Indem. Co., 221 F.R.D. 419, 422 (D. Del. 2004), the defendants were small "closely related entities" with a "shared controlling officer."  In Duggan v. Terzakis, 275 F. Supp. 2d 968, 973 (N.D. Ill. 2003), each of the defendants was put on notice although "lumped together," because of the "substantial overlapping ownership among the [defendant] entities" who were potentially "alter egos of one another."  In Interlease Aviation Investors II (Aloha) L.L.C. v. Vanguard Airlines, Inc., 262 F. Supp. 2d 898 (N.D. Ill. 2003), two of the defendants were related -- a corporation and its officer who held himself out to be an officer of the third defendant.  Finally, State Farm Mut. Auto. Ins. Co. v. Makris, No. Civ. A. 01-5351, 2003 WL 924615 (E.D. Pa. Mar. 4, 2003) involved claims of an alleged racketeering conspiracy under the RICO statute where the "association-in-fact enterprise" may include all defendants.  Id. at *5.  Here, in contrast, Plaintiffs seek to lump together Mellon, the administrative agent to the Senior Lenders which sold its claim pre-confirmation and was in a demonstrably different position, with the other Senior Lenders and the debtors.

As stated above, the Complaint utterly failed to identify any specific "conscious or reckless behavior" by Mellon. Equally absent was any rational allegation of motive.

> To establish motive and opportunity a plaintiff must establish … concrete benefits that would be realized by one or more of the false statements and wrongful nondisclosures alleged. Opportunity would entail the means and likely prospect of achieving [such] concrete benefits.

In re Crown American Realty, 1997 WL 599299, at * 11 (quoting Shields v. Citytrust Bancorp, Inc., 25 F.3d 1124, 1130 (2d Cir. 1994)). Plaintiffs did not and cannot meet this burden. It is undisputed that Mellon sold its prepetition claim prior to confirmation of the Plan, and thus, received no shares of the reorganized Genesis' stock.[9] Accordingly, there were "no concrete benefits that would be realized" by Mellon from the alleged fraudulent scheme.

Further, analysis of the scienter allegations in the Complaint identified by Plaintiffs in their opposition to the motion to dismiss below (AA 1560) demonstrates that Plaintiffs failed to establish either motive or "'circumstantial evidence that would indicate fraudulent behavior or recklessness'" on the part of Mellon. In re Crown American Realty, 1997 WL 599299, at *14 (quoting Shields, 25 F.3d at 1129).

- Paragraph 11 of the Complaint (A53-54) is a blanket allegation against "senior lender power concentrated in the hands of the seven member Steering Committee" with no specific allegations against Mellon.

- Paragraphs 19 through 23 of the Complaint (A57-59) are merely expositions as to the identity of the defendants.

- Paragraph 49 of the Complaint (A70), alleging that the senior creditors received "94.3% of the newly issued

---

[9] Indeed, as noted above, the Plaintiffs concede that Mellon owns no equity in the reorganized Genesis. See supra at 4.

common stock" of Genesis, conveniently omits to note that none of such stock was received by Mellon.

- Paragraph 62 of the Complaint (A78) is a general and unsupportable allegation as to knowledge of the senior creditors, with no specificity as to Mellon.

- Similarly, paragraph 67 of the Complaint (A81) is nothing more than a general allegation against the senior creditors, improperly attributing knowledge to each of them.

- Paragraph 109 of the Complaint (A89-90) is wholly inapplicable with respect to Mellon; Mellon did not acquire a greater share, or any share at all, of the equity in the reorganized Genesis.

- Paragraphs 126 and 127 of the Complaint (A96-97) fail entirely to plead any reckless conduct or motive on the part of Mellon. The allegations in these paragraphs simply state that the "creditors committee was persuaded" to agree to a reduction in EBITDA based on the loss of the Mariner business but that the senior creditors were "told" that the Mariner contract was "locked in." Such a vague allegation simply cannot constitute evidence of scienter by Mellon.

- Paragraphs 148 and 152 of the Complaint (A106-07) have absolutely nothing to do with Mellon as they relate to EBITDA adjustments made based on Medicare census data and adjusted personnel costs.

- Paragraphs 160 through 162 of the Complaint (A112-14) are merely restatements of the vague and unsupported allegations of fraudulent activities and statements by the group of "lumped" co-defendants described above. Mellon is specifically mentioned only once, in paragraph 161[10] as having cooperated with Goldman.

- Paragraph 166 of the Complaint (A116) is yet another blanket assertion against the members of the Steering Committee.

- Finally, paragraph 180 of the Complaint (A122-23) bears no relation to Mellon whatsoever, being a recitation of the terms of several former Genesis management officers' severance packages.

---

[10] The Complaint was apparently misnumbered in this section. The reference here is to paragraph 161 of the Complaint found on page 72 (A113).

Such vague, speculative and conclusory allegations directed at Mellon solely based upon its status as administrative agent for the Senior Lenders cannot support a finding of scienter against it. See, e.g., O'Brien v. Nat'l Prop. Analysts Partners, 936 F.2d 674, 676 (2d Cir. 1991); see also P. Schoenfeld Asset Mgmt. LLC v. Cendant Corp., 142 F. Supp. 2d 589, 617 (D.N.J. 2001) (the court cannot "infer scienter based on the defendant's positions as a director or officer"). Accordingly, the failure to establish scienter is yet another grounds for upholding the Bankruptcy Court's dismissal of the fraud claim against Mellon.

## IV.    Plaintiffs Civil Conspiracy Claim Fails to State A Claim.

As set forth above and in the Joint Appellees' Brief at 30-35, as well as in the supplemental memoranda filed by Goldman and Highland, Plaintiffs failed to state an actionable claim for fraud against any of the defendants. Absent such an actionable fraud claim, Plaintiffs' conspiracy to commit fraud claim may not be "sustained as an independent tort." See, e.g., In re Crown Simplimatic Inc., 299 B.R. 319, 327 (Bankr. D. Del. 2003).

Further, the heightened pleading standard of Rule 9(b) applies to allegations of civil conspiracy that are grounded in an alleged underlying fraud. See, e.g., Odyssey Re (London) Ltd. v. Stirling Cooke Brown Holdings Ltd., 85 F. Supp. 2d 282, 297-98 (S.D.N.Y. 2000), aff'd, 2 Fed. Appx. 109 (2d Cir. 2001) (finding that a civil conspiracy to defraud was inadequately established as to one alleged co-conspirator, and granting that party's motion to dismiss); 5 Wright & Miller, Fed. Prac. & Proc. Civ. 3d § 1233 (West 2004).

A proper allegation of a civil conspiracy to commit fraud must:

set forth with certainty facts showing particularly: (1) what a defendant or defendants did to carry the conspiracy into effect; (2) whether such acts fit within the framework of the conspiracy alleged; and (3) whether such acts, in the ordinary course of events, would proximately cause injury to the plaintiff.

Odyssey, 85 F. Supp. 2d at 297; see also Shearin v. E.F. Hutton Group, Inc., 885 F.2d 1162, 1166 (3d Cir.1989) ("To plead conspiracy adequately, a plaintiff must set forth allegations that address the period of the conspiracy, the object of the conspiracy, and the certain actions of the alleged conspirators taken to achieve that purpose"); In re Prods. Liab. Litig., No. MDL 1014, 1996 WL 482977, at *7 (E.D. Pa. Aug. 22, 1996) ("the United States Court of Appeals for the Third Circuit has required parties pleading conspiracy to do so with specificity").

Plaintiffs failed to meet the heightened pleading standard of Rule 9(b) with respect to Mellon's participation in the alleged fraudulent scheme constituting the civil conspiracy. The Complaint is utterly devoid of any "underlying facts…which might connect [Mellon] even inferentially, with an alleged conspiracy" and thus the conspiracy claim must be dismissed. In re Harvard Footwear, Inc., 153 B.R. 617, 628 (Bankr. E.D.N.Y. 1993); see also Devaney v. A.P. Chester, 709 F. Supp. 1255, 1264 (S.D.N.Y. 1989) ("[b]ald allegations . . . that a defendant acted "in concert" with another are clearly insufficient to state a claim for conspiracy liability under Rule 9(b)" (citing Decker v. Massey-Ferguson, Ltd., 681 F.2d 111, 119 (2d Cir. 1982)).

Thus, the Bankruptcy Court's dismissal of the conspiracy to commit fraud claim against Mellon should be affirmed.

**V.     Mellon Owed No Duty to the Plaintiffs and Cannot Be Liable for Gross Negligence.**

Plaintiffs' gross negligence claim appears to be premised on the theory that the alleged factual misrepresentations made by defendants, if they were not intentionally made, were made through gross negligence.  (A126).  See Brown v. Robb, 583 A.2d 949, 953 (Del. 1990) ("Gross negligence is a higher level of negligence representing 'an extreme departure from the ordinary standard of care.'") (internal citations omitted).  Since, as demonstrated above, Plaintiffs failed to plead facts showing any factual misrepresentation by Mellon, the dismissal of Plaintiffs' gross negligence claim against Mellon should be affirmed on that ground as well.

There is an additional reason to uphold the dismissal of Plaintiffs' gross negligence claim against Mellon.  As with negligence, a necessary element of a gross negligence claim is a duty of care owed by defendant to plantiff.  See Fritz v. Yeager, 790 A.2d 469, 471 (Del. 2002) ("In order to be held liable in negligence, a defendant must have been under a legal obligation – a duty – to protect plaintiff from risk of harm which caused his injuries.").

There is simply no duty owed by a secured lender to unsecured creditors.  See, e.g., In re Hechinger Inv. Co. of Del., Inc., No. 99-02261-PJW, Civ. 00-973-SLR, 2004 WL 724960, at *5 (D. Del. Mar. 28, 2004), aff'd, 2005 WL 1793503 (3d Cir. July 29, 2005)("In the absence of the presence of the badges of fraud, to require something less than actual knowledge on the part of defendants would result in the imposition of a duty as between a secured lender and prior unsecured creditors of the debtor.  Such a duty, the

Court finds, does not have a basis in law."); <u>see</u> <u>also</u> <u>In re Sharp Int'l Corp.</u>, 302 B.R.

760, 775-76 (E.D.N.Y. 2003), <u>aff'd</u>, 403 F.3d 43 (2d Cir. 2005); <u>B.E.L.T., Inc. v.</u>

<u>Wachovia Corp.</u>, 403 F.3d 474 (7th Cir. 2005).[11]

   Since Mellon owed no duty to Plaintiffs, Plaintiffs could not as a matter of law

establish an essential element of their gross negligence claim against Mellon.  Therefore,

the dismissal of that claim must be affirmed.

---

[11]In opposition to the motion to dismiss below, Plaintiffs erroneously inferred a duty on the part of the Senior Lenders premised on (i) equitable subordination and (ii) Section 552 of the Restatement (Second) of Torts.  (AA 1562-65).  However, a claim for equitable subordination must be brought prior to confirmation of a plan of reorganization since it would substantively reorder the distributions made under the plan, which has <u>res judicata</u> effect upon confirmation.  <u>See, e.g.</u>, <u>In re GEX Kentucky, Inc.</u>, 100 B.R. 887  (Bankr. N.D. Ohio 1988).  In addition, cases outside of the equitable subordination context have held that a creditor owes no duty to a debtor, and by extension, to any subordinated lenders to the debtor.  <u>See, e.g.</u>, <u>Paradise Hotel Corp. v. Bank of Nova Scotia</u>, 842 F.2d 47, 53 (3d Cir. 1988); <u>In re Sharp Int'l Corp.</u>, <u>supra</u>; <u>B.E.L.T., Inc.</u>, <u>supra</u>.
   Section 552 states that liability may be had for supplying "false information for the guidance of others in their business transactions" but that such liability is limited to "the person or one of a limited group of persons for whose benefit and guidance" the information was intended to be supplied and "through reliance upon [the information] in a transaction that [the information supplier] intends the information to influence." Restatement (Second) of Torts, § 552.  In order for Section 552 to apply, the allegedly fraudulent or false information "must be used in a <u>transaction not involving the defendant</u>."  <u>Playtex, Inc. v. Columbia Cas.</u>, No. Civ. A. 88C-MR. 233, 1993 WL 390469, at *8 (Del. Super. Ct. Sept. 20, 1993) (emphasis added).  Clearly, Section 552 has no application to the confirmation proceedings, a patently adversarial litigation pitting Plaintiffs, subordinated debenture holders, against the Senior Lenders.

## CONCLUSION

For the reasons presented above and those set forth in the Joint Appellees' Brief

and the supplemental memoranda of appellees Goldman and Highland, Mellon

respectfully requests that this Court affirm the Bankruptcy Court's dismissal of the

Complaint and grant Mellon such other and further relief as this Court deems just and

proper.

Dated:  January 23, 2006
        Wilmington, Delaware

                                    Teresa K.D. Currier (3080)
                                    Peter J. Duhig (4024)
                                    KLETT ROONEY LIEBER &
                                    SCHORLING, PC
                                    The Brandywine Building
                                    1000 West Street, Suite 1410
                                    Wilmington, Delaware  19801
                                    (302) 552-4200

                                    Attorneys for Defendant Mellon Bank, N.A.

                        - and -

| | |
|---|---|
| Steven Russo | Richard S. Toder |
| SIVE, PAGET & RIESEL, P.C. | Menachem O. Zelmanovitz |
| 460 Park Avenue | Matthew E. Schernecke |
| New York, New York  10022 | MORGAN, LEWIS & BOCKIUS LLP |
| (212) 421-2150 | 101 Park Avenue |
| | New York, New York  10178 |
| Attorneys for Defendant Mellon Bank, | (212) 309-6000 |
| N.A. with respect to plaintiffs Charles | |
| L. Grimes, Louis IG Ireland Trust C. | Attorneys for Defendant Mellon Bank, N.A. with |
| Yvonne Cooke, Jane G. Brown, | respect to all Plaintiffs other than Charles L. |
| Serena R. Schwartz and | Grimes, Louise IG Ireland Trust, C. Yvonne |
| Gordon W. Chaplin | Cooke, Jane G. Brown, Serena R. Schwartz and |
| | Gordon W. Chaplin |