IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | : |
| | : |
| Genesis Health Ventures, Inc., et al., | : Civ. Act. No. 05-CV-427 (KAJ) |
| | : Related to Case No. 00-2692 (JHW) |
| Debtors, | : Jointly Administered |
| | : |
| Richard Haskell et al., | : |
| | : |
| Plaintiffs-Appellants, | : |
| | : Adv. Pro. No.: 04-53375 (JHW) |
| v. | : |
| | : |
| Goldman, Sachs & Co., et al., | : |
| | : |
| Defendants-Appellees | : |
| | : |

BRIEF OF DEFENDANT- APPELLEES IN OPPOSITION TO
THE APPEAL OF RICHARD HASKELL ET AL. FROM
THE MAY 10, 2005 ORDER OF THE BANKRUPTCY COURT

Steven K. Kortanek
Morton R. Branzburg
KLEHR, HARRISON, HARVEY,
BRANZBURG & ELLERS LLP
919 Market Street, Suite 1000
Wilmington, Delaware 19809-3062
(302) 426-1189
        -and-
Sheldon Raab
Eric A. Hirsch
FRIED, FRANK, HARRIS, SHRIVER &
JACOBSON LLP
One New York Plaza
New York, New York 10004-1980
(212) 859-8000

Attorneys for Defendant Goldman,
Sachs & Co.

Russell C. Silberglied (No. 3462)
Jason M. Madron (No. 4431)
RICHARDS, LAYTON & FINGER, P.A.
P.O. Box 551, Wilmington, Delaware 19899
(302) 651-7700
        - and -
Michael F. Walsh
Diane Harvey
Gary T. Holtzer
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
(212) 310-8000
        - and -
Adam P. Strochak
Joanne M. Guerrera
WEIL, GOTSHAL & MANGES LLP
1501 K Street, NW, Suite 100
Washington, DC 20005
(202) 682-7000

Attorneys for Defendant NeighborCare Inc.
(sued herein as Genesis Health Ventures, Inc.)

Daniel K. Hogan (No. 2814)
1701 Shallcross Avenue, Suite C
Wilmington, Delaware 19806
(302) 656-7540
                    - and -

Paul Lackey
Michael Aigen
LACKEY, HERSHMAN LLP
3102 Oak Lawn Avenue, Suite 700
Dallas, Texas 75219
(214) 560-2206

Attorneys for Defendant Highland Capital
Management, L. P.


Robert S. Brady (No. 2847)
YOUNG CONAWAY STARGATT &
TAYLOR LLP
1000 West Street, 17th Floor
Wilmington, Delaware 19899-0391
(302) 571-6690
                    - and –
Paul V. Shalhoub
WILLKIE FARR & GALLAGHER LLP
787 7th Avenue
New York, New York 10019-6099
(212) 728-8000

Attorneys for Defendant George V. Hager

Teresa K.D. Currier
Peter J. Duhig (No. 4024)
KLETT ROONEY LIEBER &
SCHORLING, PC
The Brandywine Building
1000 West Street, Suite 1410
Wilmington, Delaware 19801
(302) 552-4200

Attorneys for Defendant Mellon Bank,
N.A

- and –

Richard S. Toder
Menachem O. Zelmanovitz
MORGAN, LEWIS & BOCKIUS LLP
101 Park Avenue
New York, New York 10178
(212) 309-6000

Attorneys for Defendant Mellon Bank,
N.A. with respect to all Plaintiffs other than
Charles L. Grimes, Louis IG Ireland Trust,
C. Yvonne Cooke, Jane G. Brown, Serena
R. Schwartz and Gordon W. Chaplin

- and –

Steven Russo
SIVE, PAGET & RIESEL, P.C.
460 Park Avenue
New York, New York 10022
(212) 421-2150

Attorneys for Defendant Mellon Bank N.A.
with respect to plaintiffs Charles L.
Grimes, Louis IG Ireland Trust, C. Yvonne
Cooke, Jane G. Brown, Serene R. Schwartz
and Gordon W. Chaplin

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................... ii

PRELIMINARY STATEMENT ............................................................. 1

STATEMENT OF FACTS ..................................................................... 6

    A.    Appellants' Conduct During Genesis' Bankruptcy Proceeding ............ 6

        1.    Appellants' Objections to Genesis' Disclosure Statement ............ 6

        2.    Appellants' Objections to the Debtors' Plan and the Discovery Taken In Connection Therewith ............... 7

    B.    The Contested Confirmation Hearing ........................................ 8

    C.    Bankruptcy Judge Wizmur Approves Genesis' Plan ................... 10

    D.    Appellants' Post-Trial Motions and Appeals ............................... 11

    E.    Appellants' Complaint ............................................................ 12

STANDARD OF APPELLATE REVIEW ................................................ 14

ARGUMENT .................................................................................... 16

I.    APPELLANTS' COMPLAINT IS TIME BARRED UNDER SECTION 1144 ......... 16

    A.    Bankruptcy Code Section 1144 Is Strictly Construed and Applies Even If Fraud is Discovered Beyond the 180-Day Time Limit ............ 17

    B.    Appellants Cannot Avoid Section 1144 By Characterizing Their Allegations As Claims For Money Damages ................................... 19

    C.    The Section 1144 Time Bar Should Be Extended To All Appellees ....... 22

II.    JUDGE WIZMUR CORRECTLY FOUND THAT THE PLAN RELEASED GENESIS FROM THE APPELLANTS' CLAIMS ............................. 23

III.    THE BANKRUPTCY COURT PROPERLY DISMISSED THE COMPLAINT AS BARRED BY THE DOCTRINE OF RES JUDICATA ....................... 24

    A.    The Same Cause of Action Was or Could Have Been Litigated ........... 25

    B.    Eastern Minerals and CoreStates Support The Application f Res Judicata In The Instant Case ............................................... 27

    C.    Appellants Cannot Rely On A Fraud Exception To Res Judicata ......... 30

    D.    The Plan's Exculpation Provision Does Not Operate as a Reservation of Rights ......................................................... 34

IV.    THE COMPLAINT IS BARRED BY COLLATERAL ESTOPPEL ................. 36

CONCLUSION .................................................................................. 39

# TABLE OF AUTHORITIES

**Cases:**
**Page(s)**

Alnwick v. European Micro Holdings, Inc., 281 F. Supp. 2d 629 (E.D.N.Y. 2003) .................................. 32

In re Am. Preferred Prescription, Inc., 266 B.R. 273 (E.D.N.Y. 2000) ................................. ..... .............. 36

In re B. Cohen & Sons Caterers, Inc., 108 B.R. 482 (E.D. Pa. 1989) ................................................. 15, 38

In re Botany Indus., Inc., 463 F. Supp. 793 (E.D. Pa. 1978) aff'd, 609 F.2d 500 (3d Cir.
1986) ................................................................................................................................................. 14

Browning v. Levy, 283 F.3d 761 (6th Cir. 2002) ..................................... .... ....... ......................... .31

Browning v. Prostok, 165 S.W.3d 336 (Tex. 2005) ................................................................ ......... ........... 22

CareFirst of Md., Inc. v. Care First Transp., Inc., 2002 WL 31500927 (D. Del. Nov. 1,
2002) ................................................................................................................................................. 16

Celotex Corp. v. Edwards, 514 U.S. 300 (1995) ...................................................................................... 28

In re Chicago, Milwaukee, St. Paul & Pac. R.R. Co., 6 F.3d 1184 (7th Cir. 1993) ................................ 23

Christian v. Am. Home Assurance Co., 577 P.2d 899 (Okla. 1978) ........................................................ 34

In re Circle K Corp., 171 B.R. 666 (Bankr. D. Ariz. 1994) ..................................................................... 21

In re Circle K Corp., 181 B.R. 457 (Bankr. D. Ariz. 1995) ................................................. ... .......... 21

In re Coffee Cupboard, Inc., 119 B.R. 14 (E.D.N.Y. 1990) ............................................................... 20, 21

Concrete Pipe & Prods. Inc. v. Constr. Laborers Pension Trust, 508 U.S. 602 (1993) .............................. 15

Conley v. Gibson, 355 U.S. 41 (1957) ...................................................................................................... 16

CoreStates Bank, N.A. v. Huls Am., Inc., 176 F.3d 187 (3d Cir. 1999) ............................................. 24, 29

In re Crown-Globe, Inc., 107 B.R. 60 (Bankr. E.D. Pa. 1989) ............................................................ 17, 22

D&K Props. Crystal Lake v. Mut. Life Ins. Co., 112 F.3d 257 (7th Cir. 1997) ....................................... 36

Daily Variety, Ltd. v. Term Leasing, Inc., 1989 U.S. Dist. LEXIS 5605 (S.D.N.Y., May
22, 1989) ........................................................................................................................................... 32

In re Docteroff, 133 F.3d 214 (3d Cir. 1997) ........................................................................................... 36

Donaldson v. Bernstein, 104 F.3d 547 (3d Cir. 1997) .............................................................................. 24

E. Minerals & Chem. Co. v. Mahan, 225 F.3d 330 (3d Cir. 2000) .................................. 25, 28, 29

Edwards v. Wyatt, 266 B.R. 64 (Bankr. E.D. Pa. 2001) ................................................... 30

In re Emmers Bros. Co., 52 B.R. 385 (D. Minn. 1985) ................................................ 20, 21

Federated Dep't Stores, Inc. v. Moitie, 452 U.S. 394 (1981) ........................................ 26, 28

Garr v. Lerner, 528 F. Supp. 630 (S.D.N.Y. 1981) ........................................................... 26

Glaser v. Norris, 1992 Del. Ch. LEXIS 1 (Del. Ch. Ct., Jan. 6, 1992) ................................. 32

Glen Holly Entm't, Inc v. Tektronix, Inc., 100 F. Supp. 2d 1086 (C.D. Cal. 1999) ............... 32

Great Lakes Chem. Corp. v. Pharmacia Corp., 788 A.2d 544 (Del. Ch. 2001) ..................... 32

Hotel Corp. of the South v. Rampart 920, Inc., 46 B.R. 758 (E.D. La. 1985), aff'd, 781
F.2d 901 (5th Cir. 1986) .............................................................................................. 19, 22

In re Huntsville Small Engines, Inc., 228 B.R. 9 (Bankr. N.D. Ala. 1998) .......................... 36

In re Ikon Office Solutions, Inc. Sec. Litig., 277 F.3d 658 (3d Cir. 2002) ......................... 32

Katchen v. Landy, 382 U.S. 323 (1966) .......................................................................... 28

In re Kelley, 199 B.R. 698 (9th Cir. BAP 1996) .............................................................. 36

Lum v. Bank of America, 2004 U.S. App. LEXIS 4637 (3d Cir. Mar. 11, 2004) ..................... 6

MSR Exploration, Ltd. v. Meridian Oil, Inc., 74 F.3d 910 (9th Cir. 1996) .......................... 18

McCarty v. First of Ga. Ins. Co., 713 F.2d 609 (10th Cir. 1983) ................................... 30, 34

McDuffy v. DeGeorge Alliance, Inc., 2002 WL 1858779 (D. Del. Aug. 9, 2002) .................... 30

In re Memorex Telex Corp., 242 B.R. 826 (D. Del. 1999) ................................................ 15

Miller v. Meinhard-Commercial Corp., 462 F.2d 358 (5th Cir. 1972) ............................... 23, 26

Morse v. Lower Merion Sch. Dist., 132 F.3d 902 (3d Cir. 1997) ...................................... 15

In re Newport Harbor Assocs., 589 F.2d 20 (1st Cir. 1978) ........................................... 19, 21

In re Orange Tree Assocs., 961 F.2d 1445 (9th Cir. 1992) ............................................. 17, 19

Powell v. Am. Bank & Trust Co., 640 F. Supp. 1568 (N.D. Ind. 1986) ................................ 34

In re Public Service Co., 43 F.3d 763 (1st Cir. 1995) ....................................................... 21

In re Public Serv. Co., 148 B.R. 702 (Bankr. D.N.H. 1992), aff'd, 848 F. Supp. 318
(D.R.I. Mar. 23, 1994), aff'd, 43 F.3d 763 (1st Cir. 1995) ........................................... 26, 27

Rafferty v. First Union Mortgage Corp., 1998 U.S. Dist. LEXIS 104 (E.D. Pa. Jan. 9, 1998) ........................................................................................................................... 14, 15

Rottlund Homes, Inc. v. Saul, Ewing, Romick & Saul, L.L.P., 243 F. Supp. 2d 145 (D. Del. 2003) ............................................................................................................................ 16

S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Group Ltd., 181 F.3d 410 (3d Cir. 1999) ............................................................................................................................... 6

Saudi v. Acomarit Maritimes Servs., S.A., 114 Fed. App'x 449 (3d Cir. 2004) ................... 36

Scott-Douglas Corp. v. Greyhound Corp., 304 A.2d 309 (Del. Super. Ct., 1973) ............... 32

Selkridge v. United of Omaha Life Ins. Co., 360 F.3d 155 (3d Cir. 2004) ........................... 29

In re 680 Fifth Ave. Assocs., 209 B.R. 314 (S.D.N.Y. 1997) ............................... 17, 19, 22

Southmark Properties v. Charles House Corp., 742 F.2d 862 (5th Cir. 1984) ..................... 27

In re Transworld Airlines, 322 F.3d 283 (3d Cir. 2003) ........................................................ 14

Universal Minerals, Inc. v. C.A. Hughes & Co., 669 F.2d 98 (3d Cir. 1981) .............. 15, 38

Witkowski v. Welch, 173 F.3d 192 (3d Cir. 1999) ................................................................. 36

Yamaha Corp. of Am. v. United States, 961 F.2d 245 (D.C. Cir. 1992) ............................... 38

## Statutes:

11 U.S.C. § 786 ..................................................................................................................... 19

11 U.S.C. § 1141 .................................................................................................................... 24

11 U.S.C. § 1144 ............................................................................................................. Passim

28 U.S.C. § 1334 ................................................................................................................... 28

## Other Authority:

5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure, § 1363 (2d ed. 1990 & 2002 supp.) ........................................................................................................... 16

8 Collier on Bankruptcy § 1144.04[02] (15th Ed. 1996) ...................................................... 18

Appellees, Neighborcare Inc. (one of the reorganized Debtors, sued as Genesis Health Ventures, Inc. (hereinafter "Genesis" or the "Debtor"), its former corporate name), Goldman, Sachs & Co. ("Goldman Sachs"), Mellon Bank, N.A. ("Mellon Bank"), Highland Capital Management, L.P. ("Highland" and together with Goldman Sachs and Mellon Bank, alleged to be senior creditors (hereinafter the "Senior Lenders") of Genesis and The Multicare Companies, Inc.), and George V. Hager jointly submit this memorandum of law in opposition to Appellants' (275 former subordinated debentureholders of Genesis) appeal of the May 10, 2005, order of the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"), Judge Judith H. Wizmur. Judge Wizmur dismissed Appellants' Complaint against (i) the Debtor as time-barred by operation of Section 1144 of the Bankruptcy Code and precluded by the September 20, 2001 order confirming Debtors' Joint Plan of Reorganization (the "2001 Confirmation Order"); (ii) the Senior Lenders as barred by the doctrine of *res judicata*; and (iii) the Senior Lenders and Mr. Hager as barred by the doctrine of collateral estoppel.[1]

## PRELIMINARY STATEMENT

This action is an attempt by a group of disgruntled subordinated debentureholders to undo the 2001 Confirmation Order, and the creditor distributions directed thereunder, by means of an impermissible and untimely collateral attack -- a purported damages action against certain participants in the bankruptcy process. Appellants filed this action in 2004, over two years after Genesis' Plan of Reorganization (the "Plan") was confirmed. Plaintiffs allege that Defendants (Genesis, its Senior Lenders and Genesis' CFO) engaged in a fraudulent scheme to depress Debtors' EBITDA projections and to secure confirmation of the Plan -- which, they claim provided an unduly large distribution to the Senior Lenders at the expense of

---

[1] References to Appellants' appendix filed with the Court on Nov. 21, 2005 are denoted as "A." with numerical page references. References to Appellees' appendix filed herewith are denoted as "AA." with numerical page references. References to Appellants' brief to this Court are referred to herein as "Appellants' Brief."

subordinated debentureholders such as Plaintiffs. In short, Plaintiffs seek a do-over to redistribute the creditor pie through the vehicle of a damages action.

The Bankruptcy Court record shows conclusively that Plaintiffs objected to the Plan during the confirmation process, claiming the very same thing they do now -- that the Debtors had grossly undervalued their EBITDA projections so as to benefit the Senior Lenders. For example, Plaintiff Charles Grimes objected to Genesis' Disclosure Statement (AA 4) regarding the Plan by claiming that "[t]he Plan and Disclosure Statement appear to grossly understate the enterprise value of the combined merged Reorganized Genesis . . . there is considerable value in Genesis that the Plan and Disclosure Statement improperly and unjustifiably conceal, release and ultimately strip away from holders of the Genesis 2005 Notes [ ] -- for no consideration -- for the benefit of the Senior Lenders, the Debtors' Officers and Directors, and the Multicare Creditors." Judge Wizmur considered and rejected Plaintiffs' objections as part of the Plan Confirmation process and issued the 2001 Confirmation Order.

Recognizing the Complaint for what it clearly is -- an impermissible collateral attack on the 2001 Confirmation Order -- Judge Wizmur, the very judge who presided over the bankruptcy proceedings at issue and the very judge who Plaintiffs claim was allegedly defrauded, carefully reviewed the bankruptcy record and the controlling law and produced a thorough, 43-page opinion dismissing Plaintiffs' lawsuit, finding that their claims were barred on multiple grounds:

- Bankruptcy Code Section 1144 (as to Genesis): Plaintiffs' claims were barred because they failed to seek to revoke the 2001 Confirmation Order on the grounds of fraud within the exclusive 180-day time period Section 1144 mandates for such fraud-based claims.

- Section 10.2 of the Plan (as to Genesis): Plaintiffs' claims were barred by the Plan's discharge and injunction provisions.

- *Res judicata* (as to the Senior Lenders): The Complaint improperly sought to re-litigate the creditor distributions that were central to the Plan approved by the 2001 Confirmation Order.

- Collateral estoppel (as to the Senior Lenders and Hager): Plaintiffs and all other former Genesis creditors were bound by the Court's finding in connection with the 2001 confirmation of Genesis' Plan that the Debtors' EBITDA projections were not understated

On this appeal, Plaintiffs seek to overturn the Bankruptcy Court's decision dismissing their Complaint based on four principal contentions -- each of which were considered and properly rejected by the Bankruptcy Court. First, Plaintiffs assert that their fraud and gross negligence claims never were litigated during the bankruptcy proceeding and, thus, are not barred by the principles of *res judicata* and collateral estoppel. Second, Plaintiffs contend that *res judicata* and collateral estoppel do not apply because the 2001 Confirmation Order was allegedly procured by fraud. Third, Plaintiffs contend that Section 10.6 of the Plan preserves their claims and limits the *res judicata* effect of the 2001 Confirmation Order. Fourth, Plaintiffs argue that their claims should not be barred under Section 1144 because they are seeking a monetary recovery, not a revocation of the 2001 Confirmation Order.

Each of these arguments fails for reasons fully addressed in the Argument section below. In particular, three points bear emphasis at the outset:

1.    The law is clear that Plaintiffs cannot avoid the preclusive effect of the 2001 Confirmation Order and the Plan incorporated therein by styling this action as a damages action for "fraud" and "gross negligence". First, the 2001 Confirmation Order and the Plan incorporated therein finally and conclusively determined the entitlement of all Genesis creditors -- including Plaintiffs -- to distributions from the Debtors' bankruptcy estate. This action -- which seeks damages based on the theory that the Plaintiffs received less than their entitlement and the Senior Lenders received more than their entitlement -- is accordingly barred by settled principles of *res judicata*. Second, in determining the distributions to be made to creditors in the bankruptcy, the Bankruptcy Court fully considered and squarely determined (after contested hearings) the very fact determination that Plaintiffs now seek to re-litigate in this action -- the fact issue of the Debtors' enterprise value (a key issue in this and almost any contested Chapter 11

case). That fact determination is binding on every creditor that filed claims in the bankruptcy proceeding, including Plaintiffs, and cannot now be undone by an individual creditor. Because this action is based on a blatant attempt to re-determine the Debtors' enterprise value, it is barred by collateral estoppel.

2.      Plaintiffs' contention that facts were fraudulently concealed from them in the bankruptcy -- and that they are thereby entitled to retry their contentions anew in the instant action -- fails both as a matter of settled law and because the notion of "fraudulent concealment" here is directly belied by the record in the bankruptcy proceedings, a subject addressed at great length in Judge Wizmur's opinion. As an initial matter, this argument, even if not belied by the bankruptcy record, would be precluded by Section 1144 of the Bankruptcy Code. Section 1144 bars all efforts to revoke a confirmation order (particularly and explicitly, to revoke a confirmation order on grounds of fraud) after the elapse of 180 days following plan confirmation. Likewise, the courts have held that Section 1144 bars collateral attacks on a confirmation order (such as this action) after the elapse of the 180 day period.

Second, Judge Wizmur in fact reviewed the record of the bankruptcy proceeding and found that the factual underpinnings of Plaintiffs' claims were either before the Bankruptcy Court at the confirmation hearing or the Bankruptcy Court was aware that it was dealing with a projection or uncertainty about the future and took this into account in determining enterprise value.

Realizing that this is fatal to their Complaint, Plaintiffs in their brief on appeal accuse Judge Wizmur of misapprehending[2] the allegations made in their Complaint concerning their own failure to timely review documents produced to them prior to the plan confirmation hearing and further claim that the Bankruptcy Judge failed to address Plaintiffs' fraudulent

---

[2]  If Plaintiffs truly believed Judge Wizmur's ruling was "based on a complete misreading of the complaint," (Appellants' Brief at 4) one would have expected them to move for reargument. Significantly, they did not.

concealment contention. See Complaint ¶ 172 (A. 118) ("[i]t was simply not possible for the debentureholders to uncover the massive deceptions inherent in the EBITDA data in the time allotted before the confirmation hearing"). But Judge Wizmur didn't get the allegations in the Complaint "wrong" as Plaintiffs claim and she directly addressed and properly rejected Plaintiffs' attempts to argue fraudulent concealment.

Specifically, Judge Wizmur properly found that "neither the circumstances before or after confirmation justify a finding of wrongful concealment of material facts." AA. 1352. In fact, Genesis produced to Plaintiffs in discovery prior to the confirmation hearing many of the documents which the Complaint contends show that certain EBITDA data was inappropriately used in the Debtors' projections. In other instances, Plaintiffs purport to use the SEC disclosures made by Genesis just months after the Plan was confirmed (and within the 180 day limitation period) to allege certain of these misrepresentations (which Defendants assert are really fraud by hindsight allegations that do not plead fraud). But Plaintiffs never sought to revoke the 2001 Confirmation Order in the time allotted under Section 1144 of the Bankruptcy Code based upon these now claimed "misrepresentations" admittedly known to them within 180 days of the 2001 Confirmation Order. In short, Plaintiffs' argument of "fraudulent concealment" is neither legally cognizable nor consistent with the record in the bankruptcy proceeding.

3.    Collateral attacks on the results of a bankruptcy proceeding and attempts to re-do the distributions awarded to creditors are fundamentally at odds with public policy. The underlying rationale for Section 1144 is the paramount public interest in the finality of a plan of reorganization. The law encourages creditors to accept less than they might obtain by pressing their claims to the fullest, and/or to accept equity in the reorganized debtor in lieu of their claims, by assuring them of the finality of the provisions of a plan of reorganization. Likewise, the law permits debtors to emerge from bankruptcy without fear that their subsequent success will lead to claims that creditors who have received their distributions under a plan should have gotten yet greater distributions in light of post-confirmation events. Without these assurances and the

certainty provided to all parties thereby, the incentives to reach a satisfactory compromise would be significantly impaired. The case at bar is a classic example of a case which seeks to revisit matters fully resolved in a bankruptcy proceeding, by recasting old allegations in a new form and by arguing that matters which arise post-confirmation constitute new facts justifying a re-determination of who gets what. This case never should have been brought, and it was properly dismissed.[3]

## STATEMENT OF FACTS

### A.    Appellants' Conduct During Genesis' Bankruptcy Proceeding

On June 22, 2000, Genesis, Multicare, and certain of their direct and indirect subsidiaries (collectively, the "Debtors") commenced chapter 11 proceedings in the Bankruptcy Court. During the course of these bankruptcy proceedings, Appellants were very active. They challenged Genesis' disclosure statement and objected to the Plan. Appellants' objections involved the same claims and issues asserted in their Complaint filed two years after the Plan was confirmed: that Genesis' EBITDA projections and thus its enterprise value used to determine Plan distributions to creditors was understated with the result that the Plan gave them too little of the pie.

### 1.    Appellants' Objections to Genesis' Disclosure Statement

Specifically, on June 29, 2001, Mr. Grimes, one of the Appellants in this action and holder of approximately $20 million in junior debt, filed an Objection to Debtors' Joint Motion for Order Approving Disclosure Statement (AA. 1). He claimed that the Plan "grossly understate[d] the enterprise value" of the Debtors, and that "there is considerable value in Genesis

---

[3] The Bankruptcy Court properly took notice of what transpired in the bankruptcy proceedings, and this Court likewise may take those proceedings into account in deciding the current appeal: "To resolve a 12(b)(6) motion, a court may properly look at public records, *including judicial proceedings*, in addition to allegations in the complaint" (emphasis added). See S. Cross Overseas Agencies, Inc. v Wah Kwong Shipping Group Ltd., 181 F.3d 410, 426 (3d Cir. 1999) (examining a prior court's opinion "to see if it contradicts the complaint's legal conclusions or factual claims"); see also Lum v Bank of America, 2004 U.S. App. LEXIS 4637, at *9 (3d Cir. Mar. 11, 2004)(courts may properly look to "exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim.")

that the Plan and Disclosure Statement *improperly and unjustifiably conceal, release, and ultimately strip away from holders of the Genesis 2005 Notes [ ] -- for no consideration – for the benefit of the Senior Lenders, the Debtors' Officers and Directors, and the Multicare Creditors."* AA. 4 (emphasis added).

GMS Group LLC (an affiliate of GMS Investment Advisors, Inc., the brokerage firm of "many of the plaintiffs" (Compl. ¶ 13) (A 54-55)) ("GMS"), which held approximately $170-180 million in junior debt, filed a similar objection to the Disclosure Statement, and indeed successfully persuaded the Court to allow it to include a letter in the Debtors' solicitation package urging creditors to vote against the Plan. AA. 19.

On July 13, 2001, notwithstanding the Grimes and GMS Objections, the Court entered an Order approving the Debtors' Disclosure Statement. AA. 36.

### 2.     Appellants' Objections to the Debtors' Plan and the Discovery Taken In Connection Therewith

The Debtors filed their Plan on July 6, 2001. Prior to the Confirmation Hearing, both GMS and Grimes served extensive discovery requests on the parties in interest, including document requests, interrogatories, and numerous deposition notices. Six valuation experts prepared and exchanged reports pursuant to Rule 26 of the Federal Rules of Civil Procedure, including one expert retained by GMS and another retained by Grimes. Thousands of documents were produced to GMS and Grimes by the Debtors, Mellon Bank, Goldman Sachs, and other major constituencies. Documents were also produced to GMS and Grimes by the parties' experts. Appellants liberally reference and rely on these documents in their Complaint. See Compl., Preamble.

In total, twelve depositions were taken. GMS and Grimes deposed all of the Plan proponents' experts, as well as Genesis' Chairman and CEO, Vice Chairman, and CFO, and an employee of Goldman Sachs. Notably, GMS and Grimes vigorously questioned Genesis' CFO, Mr. Hager, at his deposition regarding valuation, and more specifically, the preparation of the

EBITDA projections, and the propriety of the adjustments made to those projections -- as discussed more fully below, specifically probing many of the very same adjustments at issue in this action.

On August 17, 2001, GMS formally interposed an Objection to the Plan, arguing that the Plan was not "fair and equitable" because the Senior Lenders were oversecured. GMS stated that it would prove at trial that the Debtors *"ha[d] significantly undervalued their business enterprise* by utilizing an unreasonably low multiplier, and applying this multiplier to an EBITDA that is undisputedly out of date," and urged the use of an *"accurate and current EBITDA."* AA. 51-52 (emphasis added).

On August 21, 2001, Grimes filed his Objection, asserting that "[t]he central feature of the Plan is a *dramatic misvaluation and undervaluation* of the reorganized entity for purposes of Plan Distributions," and that the enterprise value was "grossly understate[d]." AA. 59 (emphasis added).

The Debtors, Mellon Bank, and the statutory committee appointed in the Genesis case ("the Genesis Creditors' Committee") filed responses to the Objections, taking issue with the accusations of "misvaluation and undervaluation." AA. 73.

### B.    The Contested Confirmation Hearing

The Confirmation Hearing took place on August 28 and 29, 2001. GMS' and Grimes' Objections were the focus of the hearing. See AA. 215-355; (August 28, 2001 Hearing Transcript) and AA. 363-671 (August 29, 2001 Hearing Transcript). Counsel for GMS and Grimes vigorously examined and cross-examined eight witnesses, including Mr. Hager and each of the valuation experts.

Significantly, on direct, Mr. Hager testified regarding the Multicare contract (discussed supra), and the payment rates charged by Genesis to Multicare that led to an $11.9 million reduction in rates (AA. 181-82), as well as the Debtors' projected EBITDA and the assumptions, risks and adjustments used to arrive at a projected EBITDA (including the

adjustment for possible loss of pharmacy sales to Mariner Post-Acute Network ("Mariner")) (AA.

174-183). On cross-examination, counsel for GMS and counsel for Grimes further explored Mr.

Hager's testimony regarding projected and last twelve month (or "LTM") EBITDA, including

Genesis' budget, the purported existence of differing EBITDA figures, the purported existence of

financial incentives for Mr. Hager to obtain approval of the Plan, and the various projected

EBITDA assumptions and adjustments (in particular, the topics now alleged in Appellants'

complaint with respect to a potential purchase of the pharmacy business of APS, the potential loss

of sales to Mariner, insurance rate adjustments, improved prospects in the industry, and the

exclusion of non-recurring items from EBITDA, such as executive restructuring bonuses and

other restructuring-related costs). See AA. 218-249, 264-272; see also AA 250-251, 291-293

(further testimony by Mr. Hager concerning a potential transaction with APS and its effect on the

Debtors' EBITDA).

> All six valuation experts were questioned and challenged extensively regarding

enterprise valuation of the Debtors. The Debtors' financial expert was specifically asked to

explain how the Debtors' projected EBITDA was derived, and the assumptions and adjustments

within those projections. AA. 311-14, 318, 320-33, 340 (discussing several of the adjustments to

EBITDA at issue in this action). Mellon Bank's expert, David Schulte, was extensively

questioned on the company's LTM EBITDA results.[4] AA. 374-385, 427-28. The expert

proffered by the Genesis Creditors' Committee also testified about the company's projections and

the extensive diligence they employed in working with the company to analyze the assumptions

underlying the projections. AA. 451-55.

> Appellants' experts testified regarding their use and views as to the relevance of

LTM data for the valuation of Genesis. GMS' expert testified as to how he arrived at a projected

EBITDA for the company for use in his analysis (stating that "the EBITDA for the current period

---

[4] Ironically, Plaintiffs in their Complaint feign surprise concerning the use by Mr. Schulte of LTM
EBITDA data in his valuation, yet Grimes' expert, William Becklean, also used such data in his valuation.

is a relevant issue") (AA 490-91), and Grimes' expert explained why he used last twelve month

data, rather than projections, which he characterized as "subject to all kinds of subjective, you

know, guesses . . . I chose to accept them as they were, but they clearly are projections with

which one could raise potentially one or a number of questions " AA 538-39.

### C.     Bankruptcy Judge Wizmur Approves Genesis' Plan

The Bankruptcy Court considered all of the evidence presented, including the

numerous contentions made concerning Debtors' valuation, and the reasonableness of the

Debtors' projections used in the analysis, and issued a 49-page opinion on September 12, 2001

(the "Plan Confirmation Opinion"), confirming the Plan  See AA 682. The court specifically

overruled the GMS and Grimes objections on the Debtors' enterprise value, finding that the Plan

was indeed "fair and equitable." The Bankruptcy Court specifically considered their arguments

that upward adjustments should be made to EBITDA, and ultimately concluded that

management's projections were reasonable:

> The objectors, particularly GMS, Inc., introduced various
> documents that suggested that the $215 million EBITDA utilized
> by the valuation experts to support the plan was too low . . The
> fixing of a projected EBITDA for the companies is largely a
> matter of judgment, and the judgment exercised by management
> in this regard appeared to be balanced, taking into account both
> positive and negative forces and trends  Many of the cited
> references were produced in various negotiating postures, in
> which context the reliability of specific numbers is generally
> more suspect. . . The fact that the debtors' actual results are on
> target with 2001 budget projections for the first ten months of
> the fiscal year confirms the reasonableness of the management
> projections.

AA 715-17  The Bankruptcy Court also held that the opinions expressed by GMS'

expert were "substantially discredited," and that Grimes' expert expressed no "qualitative

judgments." AA 718-20.

The Bankruptcy Court determined that the Plan was proposed in good faith, and

overruled the objection to the "speed with which the debtors pursued the presentation of the

reorganization plan, the approval of the disclosure statement, and the confirmation hearings."

AA. 706. The Bankruptcy Court also "decline[d] to assign bad faith motives to the debtors on

this record for moving the case to confirmation promptly." Id.

        The Bankruptcy Court entered the Confirmation Order on September 20, 2001,

which expressly incorporated all of the Plan provisions, and the directions for distributions to

creditors made therein. See AA. 751 (providing that "[t]he terms of the Plan and the Plan

Supplement are incorporated by reference into and are an integral part of the Plan and this

Confirmation Order."). That Order explicitly found that the Plan was proposed in good faith

(AA. 744-45) and also found that the Plan "does not discriminate unfairly and is fair and

equitable with respect to the Rejecting Classes." AA. 748. The 2001 Confirmation Order found

that the releases and injunctions contained in the Plan were "fair and equitable" and were "in the

best interests of the Debtors and their chapter 11 estates." AA. 771. The Plan at Section 10.2

provided for a discharge of all pre-Effective Date claims against the Debtor, and, at Section 10.3,

enjoined all claimants from prosecuting such claims. The Plan became effective on October 2,

2001. See AA. 779.

    **D.**    **Appellants' Post-Trial Motions and Appeals**

        Two days after the Plan Confirmation Opinion was issued, Grimes moved to

amend the findings, arguing that the Court misunderstood his expert's valuation analysis. AA.

936-41. The Bankruptcy Court denied the motion, holding that "[t]he overwhelming and

convincing and credible and competent evidence presented at trial supports still the conclusions

that [Judge Wizmur] reached at trial." AA. 951.

        Grimes then filed an appeal of the 2001 Confirmation Order with the District

Court, and moved this Court for a partial stay of the Order pending the appeal, again raising the

valuation issue. AA. 999, 1000-21. Grimes' Motion to Stay was heard and denied on November

2, 2001, on the grounds that that the motion was mooted by the fact that distributions under the

Plan had already been made, and that he failed to demonstrate the likelihood of success on appeal

of the valuation issue. AA. 1029-30. Grimes' appeal to the District Court was dismissed on June 14, 2002 (AA. 1022), and he voluntarily dismissed his Third Circuit appeal on December 16, 2002. AA. 1042.

GMS chose not to appeal the 2001 Confirmation Order.

On July 3, 2003, almost two years after the Confirmation Order, Grimes and GMS moved the Bankruptcy Court for relief from the Protective Order entered in the bankruptcy cases in connection with the pre-confirmation discovery. AA. 1044. Grimes and GMS sought leave to provide confidential documents to the law firm of Pomerantz, Haudek, Block, Grossman, and Gross LLP, whom they had "recently retained" "to investigate the possibility that a fraud was perpetrated upon [the Bankruptcy] Court in connection with approval of the Plan." AA. 1045-46. The Bankruptcy Court granted limited relief from the Protective Order. AA. 1074 (stating that the court would not address at that time whether such an investigation was untimely). The same law firm represents Appellants in this action.

### E.     Appellants' Complaint

On January 24, 2004, over two years after the Plan was confirmed, Plaintiffs filed this Complaint in the Supreme Court for the State of New York against Genesis, Goldman Sachs, Mellon Bank, Highland Capital Management, L.P., and George V. Hager asserting claims for fraud (Count I), conspiracy to commit fraud (Count II), and gross negligence (Count III). That action was removed by Defendants to the United States District Court for the Southern District of New York, and with the parties' stipulation, that Court ordered the action transferred to the United States District Court for the District of Delaware. The District Court referred the case to the United States Bankruptcy Court for the District of Delaware and assigned it as an adversary proceeding in In re Genesis Health Ventures, Inc., et al., Chapter 11, Case No. 00-2692 (JHW).

Appellants attempt to create the impression that a flow of new information was disclosed after the Plan was confirmed. The record of the bankruptcy proceedings reveals, however, that the central allegations in Appellants' Complaint concerning the propriety of the

adjustments and assumptions underlying the valuation of Genesis were squarely before the

Bankruptcy Court during the bankruptcy proceedings:

| Complaint Allegation | Record Citation Where Issue Was Raised During Bankruptcy Proceeding |
|---|---|
| **The Multicare Contract.** Appellants allege Genesis deducted $11.6 million from projected and LTM EBITDA as a result of improperly revising management contracts between itself and Multicare (Compl. ¶¶ 9, 69-109, 162) (A 52, 81-90, 113-14). | See, e.g., AA. 172-76, 181-82; Deposition of George Hager ("Hager Tr.") at AA. 1080-86, 1089-90, 1092-93; Deposition of J. Halisey Kennedy at AA. 1102-03; Deposition of Michael Walker ("Walker Tr.") at AA. 1105-08. The issue was also raised by the creditors committee of Multicare in connection with a motion seeking the appointment of a trustee. See AA. 1135-1173. |
| **Loss of Sales to Manorcare.** Appellants allege Genesis excluded $11 million from projected and LTM EBITDA based on the possibility that this business might be lost and/or price concessions may need to be made to keep the Manorcare business due to litigation with Manorcare over its contract with Genesis (Compl. ¶¶ 9, 110-118, 162) (A 52, 90, 93, 113-14). | See, e.g., AA. 180; Hager Tr. at AA. 1097-98. |
| **APS Transaction/Loss of Sales to Mariner.** Appellants allege Genesis excluded $13 million from projected and LTM EBITDA based on the possibility that business with Mariner may be lost, even though Genesis had signed a letter of intent to acquire APS, a subsidiary of Mariner (Compl. ¶¶9, 119-29, 162) (A 52, 93-98, 113-14). | See, e.g., AA. 182, 232-34, 239-40, 242-44, 291-92, 296, 313-14, 321, 325-27, 329-31; AA. 402-03, 415-18, 421-23; Hager Tr. at AA. 1091, 1094-97, 1099-1100; Deposition of Joseph LaNasa at AA. 1115; Deposition of William McGahan ("McGahan Tr.") at AA. 1117-20; Walker Tr. at AA. 1109-13; Deposition of David Schulte at AA. 1124-25; Deposition of Dave Barr ("Barr Tr.") at AA. 1128-30. |
| **Insurance Loss Reserves.** Appellants allege Genesis booked excessive insurance loss reserves and improperly took a $13 million charge to LTM EBITDA for those reserves (Compl. ¶¶ 9, 58-68, 162) (A 52, 75-81, 113-14). | AA. 291, 332; Hager Tr. at AA. 1083-84, 1087-88. |
| **Non-Recurring Reorganization Charges.** Appellants allege Genesis improperly deducted $19 million from LTM EBITDA in certain non-recurring bankruptcy reorganization costs and costs associated with a discontinued employee health plan (the "First Choice Plan") (Compl. ¶¶ 9, 136-143, 162) (A 52, 101-104, 113-14). | See, e.g., AA. 272; Hager Tr. at AA. 1083-84, 1087-88. |

| | |
|---|---|
| **Loss of AGE Institute Business.** Appellants allege Genesis' estimated earnings deficit due to the loss of business from the AGE Institute was higher than was reasonable and resulted in a $3 million over-charge to projected EBITDA (Compl. ¶¶ 130-35, 162) (A 99-105, 113-14). | See, e.g., Hager Tr. AA. at 1083-84, 1088; Barr Tr. at AA. 1131-32. |
| **Personnel Costs.** Appellants allege Genesis unreasonably estimated the amount personnel costs would increase, resulting in a $35 million over-charge to projected EBITDA (Compl. ¶¶ 152-53, 162) (A 106-107, 113-14). | See, e.g., Hager Tr. at AA. 1083-84, 1093; McGahan Tr. at AA. 1117-18. |
| **Cost of Pharmacy Goods Sold.** Appellants allege Genesis inflated the cost of pharmacy goods sold by approximately $13 million (Compl. ¶¶ 56, 144-45, 162) (A 73, 104-05, 113-14); and | See, e.g., Hager Tr. at AA. 1093. |
| **Medicare Population Increase.** Appellants allege Genesis failed to increase projected EBITDA by $4 million to reflect an increase in the projected Medicare population (Compl. ¶¶ 147-151, 162) (A 105-06, 113-14). | See Barr Tr. at AA. 1132A. |

Appellants argue that evidence concerning the Mariner and Manorcare transactions, as well as insurance loss reserves and pharmacy costs of goods sold, was not disclosed until "months after confirmation." Appellants' Brief at 2. But as the above listing clearly shows, the allegations in the current lawsuit are not new. With respect to the other matters listed, Appellants do not even attempt to argue that such matters were fraudulently concealed.

## STANDARD OF APPELLATE REVIEW

Generally, a district court reviews a bankruptcy court's findings of fact under a "clearly erroneous" standard and its legal conclusions under a "plenary" standard of review. In re Transworld Airlines Inc., 322 F.3d 283, 287 (3rd Cir. 2003). When reviewing a bankruptcy court's application of res judicata or collateral estoppel, district courts apply the "clearly erroneous" standard of review. See In re Botany Industries, Inc., 463 F. Supp. 793, 795 (E.D. Pa. 1978) aff'd, 609 F.2d 500 (3d Cir. 1986)) ("we must determine whether the bankruptcy court was clearly erroneous when it determined that the doctrines of res judicata and collateral estoppel barred the admission . . . of testimony alleging fraud and newly discovered evidence"); Rafferty

v. First Union Mortgage Corp., 1998 U.S. Dist. LEXIS 104, at *7 (E.D. Pa. Jan. 9, 1998) (stating in support of its application of *res judicata* barring plaintiff's belated proof of claim that "[t]hese are findings of fact which are reviewed under the clearly erroneous standard")

The United States Supreme Court has described the clearly erroneous standard of review as "significantly deferential," holding that a reversal of factual findings requires that the reviewing court must have a "definite and firm conviction that a mistake has been committed." Concrete Pipe & Prods. Inc. v. Constr. Laborers Pension Trust, 508 U.S. 602, 623 (1993); Universal Minerals, Inc. v. C.A. Hughes & Co., 669 F.2d 98, 103 (3d Cir. 1981) (district court must "accept the trial court's findings of historical and narrative facts unless they are clearly erroneous."). It is not enough that the reviewing court might or would have decided the case differently. Indeed, the reviewing court may not "'reverse the findings of the trier of fact simply because it is convinced that it would have decided the case differently.'" In re Memorex Telex Corp., 242 B.R. 826, 830 (D. Del. 1999) (citation omitted) ("a strong presumption exists in favor of the trial court's findings of fact, and the burden of proof is on the party attacking their validity."); see also In re B. Cohen & Sons Caterers, Inc., 108 B.R. 482, 484 (E.D. Pa. 1989) ("This [clearly erroneous] standard precludes this Court from reversing the Bankruptcy Court's decision if its account of the evidence is plausible, even if this Court is convinced that it would have weighed the evidence differently.") (citations omitted). Moreover, the Bankruptcy Court's decision may be upheld on any theory finding support in the record even if not relied on by the Court below. See Morse v. Lower Merion School District, 132 F.3d 902, 903 (3d Cir. 1997).

Accordingly, Judge Wizmur's conclusions concerning the historical record of a case over which she presided for more than five years is subject to a clearly erroneous standard of review, and her determinations concerning what claims and issues Plaintiffs advanced during the bankruptcy proceeding should be affirmed unless there is a definite and firm conviction that a mistake has been committed. As set forth below, Appellants cannot show that the Bankruptcy Court's review of the record was "clearly erroneous" or that Judge Wizmur made a mistake in

finding that Appellants were barred from pursuing the claims asserted in the Complaint on account of *res judicata* or collateral estoppel. Additionally, Judge Wizmur did not err in dismissing the Complaint against Genesis as time-barred under Bankruptcy Code Section 1144 and under the terms of the Confirmation Order she approved and signed.[5]

## ARGUMENT

## I.    APPELLANTS' COMPLAINT IS TIME BARRED UNDER SECTION 1144

The 2001 Confirmation Order incorporates the terms of the Plan, which sets forth the distributions to be made to Genesis' creditors. AA. 751, 792-797. Lawsuits such as this one -- which allege that different distributions should have been made under the Plan -- are contrary to the strong public policy that encourages the finality of bankruptcy judgments. To safeguard this policy, Congress explicitly wrote it into the Bankruptcy Code. Under 11 U.S.C. § 1144, a party that seeks to revoke a confirmed bankruptcy plan for "fraud" must do so within 180 days of confirmation. Section 1144 provides: "On request of a party in interest *at any time before 180 days* after the date of the entry of the order of confirmation, and after notice and a hearing, the court may revoke such order *if and only if such order was procured by fraud*" (emphasis added). As a Congressional enactment, Section 1144 is paramount and conclusive. Because Appellants did not seek relief under Section 1144 within 180 days, the Bankruptcy Court properly dismissed their claims. Appellants have no excuse for not meeting this limitation period, and their attempt

---

[5] Judge Wizmur was required to apply and did properly apply the following standards in dismissing the complaint under Rule 12(b)(6): (i) motion to dismiss must be granted where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief" Rottlund Homes, Inc. v. Saul, Ewing, Remick & Saul, L.L.P., 243 F. Supp. 2d 145, 156 (D. Del. 2003) (quoting Conley v. Gibson, 355 U.S. 41, 45 (1957)); (ii) while the Court is required to accept well-pled allegations in the Complaint as true, "conclusory allegations unsupported by any factual assertions . . . cannot withstand a motion to dismiss." CareFirst of Md., Inc. v. Care First Transp., Inc., 2002 WL 31500927, at *3 (D. Del. Nov. 1, 2002); (iii) the Court "is not required to accept legal conclusions either alleged or inferred from the pleaded facts" Rottlund Homes, Inc., 243 F. Supp. 2d at 156 (quoting Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993)); (iv) courts "will not accept as true allegations that are *contradicted by facts that can be judicially noticed* or by other allegations or exhibits attached to or incorporated in the pleading." 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure, § 1363 (2d ed. 1990 & 2002 Supp.) (emphasis added).

to avoid the application of this absolute bar by couching their allegations as damage claims rather than revocation of the 2001 Confirmation Order are unavailing.

### A.     Bankruptcy Code Section 1144 Is Strictly Construed and Applies Even If Fraud is Discovered Beyond the 180-Day Time Limit

Even if Appellants' Complaint set forth a viable fraud claim -- and it does not -- there is no question that Appellants waited until almost two years after the 180-day time limit to file this Action. The Bankruptcy Court properly found that the 180-day time limitation has been "strictly construed" and enforced by courts even where fraud is not discovered until _after_ the 180 day period. AA. 1344 (citing In re Midstate Mortgage Investors, Inc., 105 Fed. App'x. 420, 423 (3d Cir. 2004) ("Expiration of the limitations period [under Section 1144] bars a motion to set aside the confirmation of a reorganization plan even if the fraud is not discovered until the period has passed . . . .") (emphasis added)); see also In re 680 Fifth Ave. Assocs., 209 B.R. 314 (S.D.N.Y. 1997) (section 1144 contains "a short six-month window," and that "usually accepted 'discovery of the fraud' exceptions to a limitations period are not available to late confirmation challenges"); In re Crown-Globe, Inc., 107 B.R. 60, 62 (Bankr. E.D. Pa. 1989) (rejecting the plaintiffs' defense that it had discovered fraud after 180-day period and barring untimely attempt to revoke plan under Section 1144).

Imposing a strict 180-day limit effectuates the intent of "Congress [which] has determined that a 180-day limitations period strikes the appropriate balance between the strong need for finality in reorganization plans and the interest in affording parties in interest a reasonable opportunity to discover and assert fraud. In recognition of the strength of interest in finality of reorganization plans, courts have held uniformly that strict compliance with Section 1144 is a prerequisite to relief . . . ." In re Orange Tree Assocs., 961 F.2d 1445, 1447 (9th Cir.

1992).[6] Chapter 11 encourages negotiation and re-investment in the reorganized debtor, in exchange for creditors giving up the right to be paid the full amount they would receive on their claim in a liquidation. If the parties involved in a Chapter 11 proceeding believe that the confirmed plan of reorganization is subject to attack outside of the 180-day limit imposed by Section 1144, there would be no reason to agree to compromise or to accept equity in the reorganized debtor. See <u>MSR Exploration, Ltd.</u> v. <u>Meridian Oil, Inc.</u> 74 F.3d 910, 916 (9th Cir. 1996) (collateral attacks on bankruptcy judgments risk "a world where the specter of additional litigation must haunt virtually every actor in a bankruptcy."). In all ongoing businesses, circumstances can change on a daily basis. Contracts in negotiation are finalized or fall through. Estimates and projections almost invariably require refinement. If changing circumstances such as these are seized on as a basis to relitigate, all bankruptcies would be vulnerable to such an attack.

Judge Wizmur recognized this concept, and took great pains to emphasize the importance of Section 1144's preclusive effect, echoing the views of several courts:

> [A] Chapter XI proceeding [is] focused towards rehabilitating a business, which if successful, is to the benefit of all persons who had dealings with the debtor. Such plans are not easily devised, and once accomplished a short time for challenging such plan is necessary to keep alive the potential life of that business. Uncertainty of continued operations, injected by a Sword of

---

[6] There is no "exception" to the fraud exception laid out in Section 1144:

> The 180-day deadline applies even if fraud is not discovered until after the expiration of the 180-day period. This deadline can sometimes be harsh in that fraud by its very nature is difficult to discover and may not be discovered, or even discoverable, until the 180-day period has elapsed. While there is a strong bankruptcy policy against allowing a chapter 11 plan procured by fraud, there is an equally strong policy in favor of the finality of a confirmation order. An order confirming a plan is *res judicata* with regard to all matters dealt with by the plan. The confirmation order typically starts the debtor off on its post-chapter 11 existence and parties dealing with the debtor after confirmation come to expect that the order establishing that existence is settled and will not be disturbed. Congress chose to continue the 180-day time period established by the Bankruptcy Act as the cut-off period for seeking revocation of confirmation orders. While the cut-off might occasionally lead to an inequitable result, it is necessitated by the need for finality.

8 COLLIER ON BANKRUPTCY § 1144.04 [02], at 1144-7 (15th ed. 1996)

> Damocles in the form of fraud allegations which can be filed at
> any time in the future, would render meaningless the whole
> purpose of a Chapter XI proceeding.

AA. 1345 (quoting In re Newport Harbor Assocs., 589 F.2d 20, 24 n.6 (1st Cir. 1978);[7] see also

In re Orange Tree Assocs., Ltd., 961 F.2d 1445, 1447-48 (9th Cir. 1992); In re 680 Fifth Ave.

Assocs., 209 B.R. 314 (S.D.N.Y. 1997).

**B.      Appellants Cannot Avoid Section 1144 By Characterizing
          Their Allegations As Claims For Money Damages**

Appellants claim that Section 1144 does not apply because "[t]he present action

does not seek an order revoking or modifying the Plan . . ." but instead alleges common law

fraud claims for damages. Appellants' Brief at 35. But Appellants' characterization of their

claims does not obviate the fact that their claims (if successful) would undo the valuation and

allocation established by the 2001 Confirmation Order. Appellants allege that "the senior

creditors walked away from the bankruptcy with over 94% of the equity of Genesis, and junior

creditors, including plaintiffs, received next to nothing." Compl. ¶ 3 (A 50). They argue that

"[h]ad Genesis' EBITDA been fairly presented, defendants' own experts, using the same

valuation methodologies, would have valued Genesis hundreds of millions of dollars higher, and

the debentureholders' distribution in the bankruptcy would have been commensurately greater."

Id. at 3 (A 50). Appellants, in short, seek to re-litigate the bankruptcy and re-divide the pie,

which is precisely what Congress prohibited.

Nor can Appellants avoid the Section 1144 bar by couching their allegations as

claims for damages. See Hotel Corp. of the South v Rampart 920, Inc., 46 B.R. 758, 770-71

(E.D. La. 1985), aff'd, 781 F.2d 901 (5th Cir. 1986) ("[Section 1144] places a limit on the period

of time within which a party may attack a bankruptcy plan on the ground that it was procured by

fraud. To allow Plaintiffs to collaterally attack the Bankruptcy reorganization on grounds of

---

[7] As the Bankruptcy Court noted: "In Newport Harbor, the court interpreted section 386 of the Bankruptcy
Act, 11 U.S.C. § 786 (1976) and Chapter XI Rule 11-41 of the Rules of Bankruptcy Procedure. Section
386 and Rule 11-41 are substantively identical to Section 1144 the Bankruptcy Code." 324 B.R. at 517 n.2

fraud is to allow them to do indirectly what they no longer may do directly because of 11 U.S.C.
§ 1144."). As the Bankruptcy Court recognized, it is the effect of Appellants claims, not the
characterization, that matters. The court must review the allegations and determine "whether the
case involves an attempt to redivide the pie by a disgruntled participant in the Plan or whether the
relief sought would upset the confirmed plan." AA. 1344 (citing In re Coffee Cupboard, Inc., 119
B.R. 14, 19 (E.D.N.Y. 1990); In re Emmers Bros. Co., 52 B.R. 385, 392 (D. Minn. 1985))
(internal quotations omitted). The Bankruptcy Court correctly rejected this argument, and
concluded that "the impact of a significant money damages award against the debtor would be to
'redivide the pie', to upset the confirmed plan, and to negatively affect innocent parties and
creditors who received value in the forms of new equity and new debt in the reorganized debtor."
AA. 1344.

On this appeal, Appellants attack the Bankruptcy Court's decision based upon
three cases that bear no factual resemblance to the facts at bar. While Appellants glibly assert
(Appellants' Brief at 37) that the Bankruptcy "[C]ourt never attempted to distinguish those cases
from the present case," the Bankruptcy Court did in fact consider the cases and held that the
principles espoused by such decisions warranted a dismissal of the Complaint. See AA. 1344-45.

Two of Plaintiffs' cases -- Coffee Cupboard and Emmer Bros. -- stand for the
very proposition that a fraud claim should be time-barred under Section 1144 if the case, like this
one, involves an attempt to "'redivide the pie' by a disgruntled participant in the Plan," or if the
relief sought would upset the confirmed plan -- the same test Judge Wizmur employed to reach
her conclusion that Appellants were trying to circumvent the purview of Section 1144. AA.
1344-45. These courts found from the facts before them that no such re-division of the pie was
taking place and there was no upset of the confirmed plan.

Thus, in Emmer Bros., the plaintiffs alleged "that the debtor wrongfully withheld
and concealed the existence of an asset from [plaintiffs] and the bankruptcy court" in order to
obtain a settlement. Emmer Bros., 52 B.R. at 388 (emphasis added). Significantly, the asset in

question "was never a part of the plan." <u>Id.</u> at 391. Thus, the court found that the relief sought by the plaintiff "would not affect the distributions previously made to the creditors under the plan nor the debtor's reorganization." <u>Id.</u> at 392.

Coffee Cupboard is equally inapplicable here. <u>Coffee Cupboard</u> involved a motion to convert a bankruptcy from Chapter 11 to Chapter 7. 119 B.R. at 15. Applying the "redivide the pie" test, the court held that the appellant's motion to convert the bankruptcy was not time-barred by Section 1144 because under the circumstances, a "conversion to Chapter 7 would affect neither positively, nor negatively what the creditors would ultimately receive under the debtor's plan." <u>Id.</u> at 20.

Appellants' reliance on <u>In re Circle K Corp.</u>, 181 B.R. 457 (Bankr. D. Ariz. 1995) is likewise misplaced. First, the action in <u>Circle K</u> was in fact filed <u>within</u> 180 days of the confirmation order in the Circle K bankruptcy, and was brought as an application to revoke the order under Section 1144. <u>See</u> <u>In re Circle K Corp.</u>, 171 B.R. 666, 667 (Bankr. D. Ariz. 1994) ("In a timely filed complaint under 11 U.S.C. § 1144, plaintiffs alleged defendants perpetrated a fraud during confirmation of debtors' plan"). The court declined to entertain the action in the form it was brought because the plan had already begun to be consummated and viewed the request for revocation to have been mooted, but permitted plaintiffs to amend and, in the same action, to assert claims for damages. <u>Id.</u> at 670. Accordingly, <u>Circle K</u> cannot possibly lend support to an action brought outside the 180 day limit. Second, the court in <u>Circle K</u> gave an overly expansive reading to the First Circuit's dicta concerning *res judicata* in <u>In re Newport Harbor Assocs.</u>, 589 F.2d 20 (1st Cir. 1978). <u>Circle K</u>, 181 B.R. at 460-61. <u>Newport Harbor</u> did not write an exception for fraud-based claims seeking money damages into Section 1144. Indeed, it did not even address the issue, it simply noted that plaintiffs were not "necessarily without other remedies" when it dismissed their claims. <u>Newport Harbor</u>, 589 F.2d at 24. In fact, the First Circuit does not permit re-litigation of the distributions awarded in a bankruptcy. <u>See</u> <u>In re Public Serv. Co.</u>, 43 F.3d 763, 769 (1st Cir. 1995).

C.    **The Section 1144 Time Bar Should Be Extended To All Appellees**

Although Judge Wizmur applied Section 1144 to the Debtor only, the statute is equally applicable to claims against former creditors. 680 Fifth Ave. Assocs., 209 B.R. 314 (Bankr. S.D.N.Y. 1997), involved a former creditor's counterclaim against both the reorganized debtor and former creditors of the reorganized debtor. The counterclaimant alleged that a complex fraud was perpetrated by plan proponents that prevented the debtor from confirming a competing plan. The court dismissed the counterclaim against the debtor and the former creditors with prejudice, finding it was filed weeks after the 180-day time period had passed and rejecting the argument that the claim was viable because the alleged fraud was discovered after the 180 day-time period. Id. at 323 (holding, under Section 1144, "the usually accepted 'discovery of the fraud' exceptions to a limitations period are not available to late confirmation challenges"); see also Crown-Globe, 107 B.R. at 62 (equitable subordination action brought against former creditor more than 180 days after confirmation "should be dismissed as an untimely attempt to revoke confirmation of debtor's chapter 11 plan"). In addition, in Hotel Corp. of the South, claims against non-debtor third parties were found to be barred by Section 1144. 46 B.R. at 770-71 (recognizing that "[t]o allow Plaintiffs to collaterally attack the Bankruptcy reorganization on grounds of fraud is to allow them to do indirectly what they no longer may do because of 11 U.S.C. § 1144").

More recently, the Texas Supreme Court held that Section 1144 operated as a complete bar to a former junior creditor's claims against not only the reorganized debtor, but also against a senior creditor and the officers and directors of the debtor. See Browning v. Prostok, 165 S.W.3d 336, 351 (Tex. 2005). In Prostok, like here, a junior creditor argued that the debtor, officers and directors of the debtor, and a senior creditor engaged in misconduct during the bankruptcy proceedings calculated to artificially understate enterprise value of the debtor. Id. at 346. The court found the claim was barred under Section 1144, holding that plaintiffs' action "necessarily challenges the integrity of the [confirmation] order and results in a review, perhaps a

recalculation, of the bankruptcy determinations of the assets to which some claimants are

entitled." Id. at 346-47 (citing Miller v. Meinhard-Commercial Corp., 462 F.2d 358 (5th Cir.

1972)).

For the reasons stated above, the Court should find that Section 1144 operates as

a complete bar to Appellants' claims against all of the Appellees.

## II.    JUDGE WIZMUR CORRECTLY FOUND THAT THE PLAN RELEASED GENESIS FROM THE APPELLANTS' CLAIMS

The Bankruptcy Court also held that Appellants' Complaint is additionally barred

as to Genesis by the Plan's discharge and injunction provisions, which the Bankruptcy Court

found to be fair and equitable and in the best interests of Debtors and their estates. AA. 1345.

Plan Section 10.2 provides that it:

> discharge[d] all existing debts and Claims, and terminate[d] all
> Equity Interests, of any kind, nature, or description whatsoever
> against or in the Debtors or any of their assets or properties to
> the fullest extent permitted by section 1141 of the Bankruptcy
> Code . . . . [and] precluded and enjoined from asserting against
> the Reorganized Debtors, or any of their assets or properties, any
> other or further Claim or Equity Interest based upon any act or
> omission, transaction, or other activity of any kind or nature that
> occurred prior to the Effective Date.

See AA. 901.[8] Plan Section 10.3 provides that:

> [u]pon the Effective Date, all [holders of Claims against or
> Equity Interests in the Debtors] shall be forever precluded and
> enjoined, pursuant to section 524 of the Bankruptcy Code, from
> prosecuting or asserting any such discharged Claim against or
> terminated Equity Interest in the Debtors.

AA. 901-02. There is no dispute that Appellants' allege claims arising before the Plan's October

2, 2001 Effective Date; thus, Appellants' claims are barred by the Plan's discharge and injunction

provisions. In re Chicago, Milwaukee, St. Paul & Pac. R.R. Co., 6 F.3d 1184, 1194 (7th Cir.

1993) (bankruptcy court is in the best position to interpret its Confirmation Order and determine

whether claim has been discharged).

---

[8] Plan Section 10.6 does not counteract the effect of Section 10.2. See Section III.D., infra.

### III.    THE BANKRUPTCY COURT PROPERLY DISMISSED THE COMPLAINT AS BARRED BY THE DOCTRINE OF RES JUDICATA

Appellants' claims are a textbook example of the types of claims that are barred by *res judicata*. The 2001 Confirmation Order approved and incorporated the Plan provisions and overruled any objections to the Plan. The 2001 Confirmation Order was a final judgment on the merits which determined what each creditor -- including the Senior Lenders and Appellants -- would receive. See Donaldson v. Bernstein, 104 F.3d 547, 554 (3d Cir. 1997) ("A confirmation order is *res judicata* as to all issues decided or which could have been decided at the hearing on confirmation.") (quoting In re Szostek, 886 F.2d 1405, 1408 (3d Cir. 1989)). Section 1141(a) of the Bankruptcy Code binds each creditor to that result.[9] Nothing is more central to a confirmed plan than the discharge of the debtor and the allocation of the debtor's assets among the classes of creditors -- precisely what Appellants challenge here when they claim that they were entitled to receive more and that the Senior Lenders should have received less in the reorganization. See Compl. ¶ 3. See A. 50.

Appellants do not dispute that there was a final judgment on the merits or that they were involved in both proceedings, the first two elements of *res judicata*.[10] See CoreStates Bank, N.A. v. Huls Am., Inc., 176 F.3d 187, 194 (3d Cir. 1999) (setting forth elements of doctrine of *res judicata*). Rather, Appellants argue (as they did before the Bankruptcy Court) that the claims in their Complaint are not the same as those raised by them in the bankruptcy proceedings and that *res judicata* is inapplicable where the prior judgment was allegedly procured by fraud. The Bankruptcy Court properly rejected both of these contentions.

---

[9]  In relevant part, Section 1141(a) reads: "the provisions of a confirmed plan bind . . . any creditor, equity security holder, or general partner in the debtor . . . whether or not such creditor, equity security holder, or general partner has accepted the plan."

[10]  There is no dispute that the 2001 Confirmation Order constitutes a final judgment on the merits (see Donaldson, 104 F.3d at 554), and that, as the Bankruptcy Court found, "[a]ll of the [Appellants], as creditors of the debtors, were parties to the bankruptcy case and are bound by the Confirmation Order under 11 U.S.C. § 1141(a)." AA. 1348; see also CoreStates, 176 F.3d at 195 ("We believe . . . that claim preclusion should apply . . . between all parties to a bankruptcy case.").

**A.**    **The Same Cause of Action Was or Could Have Been Litigated**

The Third Circuit in Eastern Minerals & Chem. Co. v. Mahan, 225 F.3d 330, 336

(3d Cir. 2000), explained that *res judicata* applies if:

> the factual underpinnings, theory of the case, and relief sought
> against the parties to the proceeding are so close to a claim
> actually litigated in the bankruptcy that it would be unreasonable
> not to have brought them both at the same time in the bankruptcy
> forum.

Id. at 338-39. Here, the factual underpinnings, the theory of the case, and relief sought by

Appellants at the time of confirmation of the Plan are substantially identical to what is asserted

now. Judge Wizmur, by virtue of presiding over this bankruptcy case for over five years, was

fully familiar with the assertions and legal positions of the Appellants during the confirmation

hearing, and therefore was uniquely able to determine whether the claims litigated in the

bankruptcy case barred Appellants' Complaint. In dismissing the Complaint, Judge Wizmur

stated:

> [Appellants] are seeking to relitigate a cause of action that
> proposes a revaluation of the debtors' enterprise to engineer a
> different distribution scheme. The factual underpinnings of this
> complaint, involving the alleged undervaluation of the enterprise
> value of the debtors by the debtors' officer, Hager, and the
> Senior Lenders to eliminate junior creditors and receive most of
> the ownership of the reorganized companies, and the alleged
> participation by the Senior Lenders in presenting misleading and
> false financial information to the court in the course of
> confirmation hearings, are so close to the claim actually litigated
> at confirmation that it would be unreasonable not to have
> brought them both at the same time in the bankruptcy forum.

AA. 1349. Without a doubt, that is what Appellants sought to do.

Appellants argue that the claims in the Complaint are "fundamentally different"

from the objections raised in the bankruptcy proceeding because the objections "assumed that the

EBITDA data used by Geneses and the senior creditors as the basis for the valuation were

prepared in good faith . . . ." Appellants' Brief at 25. This in no way undoes the *res judicata* bar

to Appellants' claims, for two fundamental reasons. First, *res judicata* is not dependant on what

particular facts were adduced or arguments were made in a prior litigation. It focuses on <u>claims</u>, and all claims that <u>were</u> or <u>could have been</u> raised in the prior litigation are forever barred. <u>Federated Dep't Stores, Inc.</u> v. <u>Moitie</u>, 452 U.S. 394, 398 (1981) ("[a] final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action."); <u>Garr</u> v. <u>Lerner</u>, 528 F. Supp. 630, 632-33 (S.D.N.Y. 1981) (finding fraud claim was barred by *res judicata* and holding that a "shift in legal theories or a new or different ground for relief sought does not of itself work magic and dissolve the defense of *res judicata* [and a] plaintiff cannot escape the effect of the adverse determination by clothing the claim in a different garb.") (citation omitted).

Second, each of the issues encompassed by the Complaint was explicitly addressed in the Bankruptcy Court proceedings. <u>See</u> *supra* at 13-14 (comparing Appellants' allegations to issues raised during the bankruptcy proceeding); AA. 1347-48 (detailing Grimes' and GMS's objections during the Bankruptcy Proceedings). The Bankruptcy Court's finding that "the critical factual underpinnings at issue in the complaint, i.e., the correctness of the enterprise valuation of the debtors proposed by the proponents of the plan, are the same," was based on her review of the historical factual record and therefore subject to a "clearly erroneous" standard of review. AA. 1347-48. Appellants do not, and cannot, demonstrate that this finding was erroneous, much less "clearly erroneous."

Appellants seek to shift the recoveries made to the Senior Lenders under the Plan to themselves, a junior class. That Appellants formalistically invocation of words like "fraud" or "gross negligence" in their Complaint has no bearing as to whether the claim -- regarding which creditors were entitled to which recoveries -- has previously been adjudicated.

Indeed, this is precisely the conclusion reached in <u>In re Public Serv. Co.</u>, 148 B.R. 702 (Bankr. D.N.H. 1992), <u>aff'd</u>, 848 F. Supp. 318 (D.R.I. Mar 23, 1994), <u>aff'd</u>, 43 F.3d 763 (1st Cir. 1995). There plaintiffs brought allegations of fraud and violations of the securities laws which were asserted for the first time after confirmation. The bankruptcy court rejected the

claims, holding they were barred by *res judicata*: "[t]he fact that they may not have 'thought' of

that analysis in the specific form now presented until [plaintiffs] were prompted to do so by

statements made in other proceedings, subsequent to confirmation, *does not in my view justify*

*their failure to raise those contentions in more detail during the course of the reorganization*

*proceedings* prior to entry of the confirmation order if they deemed them material." Id. at 719

(emphasis added); see also Southmark Props. v. Charles House Corp., 742 F.2d 862, 869 (5th Cir.

1984) (affirming summary judgment for defendant on fraud suit, "[n]otwithstanding [plaintiffs']

protestations to the contrary, it is obvious that [their] state court suit attempts -- by seeking to

strip [defendants] of any benefits received as a result of the reorganization sale -- to effectively

nullify that sale.") (citing Miller, 462 F.2d at 361).

Appellants boldly assert that their objections during the bankruptcy proceedings

"assumed that the EBITDA data used by Genesis and the senior creditors as the basis for the

valuation were prepared in good faith" and that the "complaint in this action alleges exactly the

opposite." Appellants' Brief at 25. This statement is wholly inaccurate and flies in the face of

Judge Wizmur's opinion confirming the Plan where she stated that "[a]t confirmation, the

objectors challenged the debtors' proposed plan on the grounds . . . that the plan was not proposed

in good faith," (AA. 1349) and she went on to find the contrary   AA. 1353 ( "I declined to assign

bad faith motives to the debtors for moving the case to confirmation promptly, and determined

that the plan was proposed in good faith"). Appellants' attempt to rewrite the record does not

change the fact that these claims were already litigated in the bankruptcy proceedings, and

therefore cannot be litigated again under the doctrine of *res judicata*.

     **B.**    **Eastern Minerals and CoreStates Support The**
              **Application f Res Judicata In The Instant Case**

Appellants wrongly suggest, under Eastern Minerals, that *res judicata* is all but

inoperative in the bankruptcy context. Appellants' Brief at 26. That argument is completely

wrong, as is evident both from Eastern Minerals itself and from the Third Circuit's CoreStates decision.

Eastern Minerals held simply that *res judicata* "must be properly tailored to the unique circumstances that arise when the previous litigation took place in the context of a bankruptcy case." 225 F.3d at 337. This is due to the fact that, because of the broad jurisdiction afforded to bankruptcy courts under 28 U.S.C. § 1334, numerous issues -- some tangential, some central -- may be raised at various times in a bankruptcy proceeding.

Here, Appellants' challenge is to matters unquestionably at the heart of the bankruptcy -- the Debtors' valuation and the distribution to creditors. As such, this challenge is directly at odds with the Plan and seeks to redo the allocations determined by the Plan through the award of damages. Under Appellants' reading of Eastern Minerals, *res judicata* would be virtually inapplicable in the bankruptcy context. To the contrary, the Third Circuit in Eastern Minerals emphasized that, as here, "one does not get a second bite at the proverbial apple simply because the first bite was taken in a bankruptcy case." Id. at 339; see also Katchen v. Landy, 382 U.S. 323, 334 (1966) ("The normal rules of *res judicata* and collateral estoppel apply to the decisions of bankruptcy courts."); Celotex Corp. v. Edwards, 514 U.S. 300, 314 (1995) (same).

Appellants also contend that under Eastern Minerals, "it is irrelevant what plaintiffs could have done, unless the claim that they actually litigated was the same as their current claims." Appellants' Brief at 26. This is incorrect. Eastern Minerals itself emphasized that *res judicata* applies if "the later claim *arises from the same cause of action* as a claim that was actually asserted or interposed in the earlier bankruptcy case and resolved in the confirmation order." 225 F.3d at 339 (emphasis added). Indeed, Appellants' interpretation would be directly at odds with the Supreme Court's 1981 holding in Federated Dep't Stores v. Moitie, 452 U.S. 394, 398 (1981), where the Supreme Court held that "[a] final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action."

Appellants ignore the facts that led the Third Circuit to find that *res judicata* did not apply -- circumstances which are easily distinguished from the case at bar. In <u>Eastern Minerals</u>, the subsequent claim was wholly different and separate from those adjudicated in the bankruptcy proceeding -- namely, that a shareholder operated the debtor as an "<u>alter ego</u>" and that the creditor-plaintiffs therefore should be entitled to separate recovery from the shareholder. See <u>Eastern Minerals</u>, 225 F.3d at 338. That claim clearly was not adjudicated in Eastern Minerals' prior bankruptcy proceeding which, of course, did not purport to adjudicate the shareholder's liability. Here, by contrast, Appellants raise the same issues as were determined in the bankruptcy proceeding -- valuation of the Debtor and the allocation of distributions among classes of creditors.

In putting all of their eggs in the <u>Eastern Minerals</u> basket, Appellants wholly ignore <u>CoreStates Bank</u> v. <u>Huls</u>, 176 F.3d 187 (3d Cir. 1999), and a variety of other applicable cases.

<u>CoreStates</u> is dispositive of Appellants' claims.[11] In <u>CoreStates</u>, the Third Circuit found that the plaintiffs' claim was barred because the bankruptcy court's order rejecting an objection to the reorganization plan based on a subordination agreement between the plaintiffs and the defendant precluded the plaintiffs' subsequent lawsuit to recover under that agreement. See <u>CoreStates Bank</u>, 176 F.3d at 206; see also <u>Selkridge</u> v. <u>United of Omaha Life Ins. Co.</u>, 360 F.3d 155 (3d Cir. 2004) (dismissing plaintiff's second suit on *res judicata grounds*, as "the claim in that lawsuit could have been raised in" the first suit).

---

[11] The Third Circuit in <u>Eastern Minerals</u> <u>reaffirmed</u> its decision in <u>CoreStates</u> v. <u>Huls</u>. As <u>Eastern Minerals</u> stated, its "factual underpinnings test" "is consistent with the reasoning in <u>Huls</u>, in which we recognized that courts normally must scrutinize the 'totality of the circumstances' to determine whether two claims are based on the same cause of action." <u>Eastern Minerals</u>, 225 F.3d at 338 n.14.

Moreover, Appellants have overlooked a post-<u>Eastern Minerals</u> case,[12] <u>McDuffy</u> v. <u>DeGeorge Alliance, Inc.,</u> 2002 WL 1858779 (D. Del. Aug. 9, 2002), which is directly on point. In <u>McDuffy</u>, the court, while quoting much of the same language from <u>Eastern Minerals</u> relied upon by the Appellants, held that plaintiffs were barred by *res judicata* from bringing a variety of civil rights claims against a defendant, because, during the defendant's bankruptcy proceedings, the plaintiffs had asserted the same claims. The bankruptcy court, "[u]pon hearing all of the evidence presented . . found that plaintiffs' claim was not sustainable." <u>McDuffy</u>, 2002 WL 1858779, at *2.

Here, the <u>Eastern Minerals</u> and <u>CoreStates</u> test clearly has been met, and therefore, the Bankruptcy Court's decision must be affirmed.

C.    <u>Appellants Cannot Rely On A Fraud Exception To *Res Judicata*</u>

Relying on <u>McCarty</u> v. <u>First of Georgia Insurance Co.</u>, 713 F.2d 609 (10th Cir. 1983), Appellants argue that the Confirmation Order does not bar this action because Appellees procured it by defrauding the Bankruptcy Court and the Appellants. Appellants' Brief at 21. But, as the Bankruptcy Court explained, the mere fact that a creditor claims to have found evidence, not previously presented, that supports its claim does not entitle the creditor to claim "fraud." Indeed, the Bankruptcy Court recognized that <u>McCarty</u> was later refined to require a showing that there was a "(1) wrongful concealment of material facts that (2) prevented plaintiffs from

---

[12]  Rather, Appellants cite to <u>Edwards</u> v <u>Wyatt</u>, 266 B R 64 (Bankr E D Pa 2001), as a post-<u>Eastern Minerals</u> case in which a *res judicata* defense was denied  See Appellants', at p 27  But <u>Edwards</u> has no application here  In that case, Edwards, a former Chapter 7 debtor, sued a former business partner (Wyatt) who had entered a joint bid at the debtors' asset sale with another former business partner (Phillips) Edwards alleged that Wyatt had breached promises made to Edwards prior to the asset sale that Wyatt would not enter into any agreement with Phillips to settle the bankruptcy sale proceedings without including Edwards in any such agreement  <u>Edwards</u>, 266 B R at 67-68  Wyatt argued that Edwards' objection to Wyatt and Phillips' joint bid as an illegal collusive effort to control the sale price for Edwards' assets barred Edwards' subsequent lawsuit on the grounds of *res judicata* <u>Id.</u> at 69, 71  The court disagreed, finding that the subsequent lawsuit involved the alleged "breach of independent financial promises" from Wyatt to Edwards that formed a separate cause of action from Edwards' objection to the Wyatt/Phillips joint bid on the grounds of illegal collusion  <u>Id</u> at 72  <u>Edwards</u> has no application to the case at bar  Edwards did not involve an attempt to redo distributions in a bankruptcy

asserting their claims in the first action." AA. 1351 (quoting by <u>Browning</u> v. <u>Levy</u>, 283 F.3d 761, 770 (6th Cir. 2002)).

Appellants claim that "the bankruptcy court erroneously concluded that the fraud was fully disclosed before the bankruptcy confirmation hearing." Appellants' Brief at 19. The Complaint admits, however, that it is based on "documents, pleadings, testimony, expert valuations and other information produced and/or presented to the Bankruptcy Court" (Compl., Preamble; <u>see</u> A. 48) and alleges that "[it] was simply not possible for the debentureholders to uncover the massive deceptions inherent in the EBITDA data in the time allotted before the confirmation hearing of August 28 and 29. Moreover, because the debentureholders did not, at that time, suspect that a fraud was being committed they did not review the documents with that possibility in mind." Compl ¶ 172 (A 118). Appellants cannot now argue away the allegations set forth in their own Complaint.

In any event, this argument falls short. The Bankruptcy Court correctly found that allegations based on these post-confirmation disclosures were insufficient to get around the *res judicata* bar because, based on Appellants' allegations, "[n]either the circumstances before or after confirmation justify a finding of wrongful concealment of material facts." AA. 1352.

Specifically, the allegations that Appellants contend came to light through post-Confirmation disclosures relate to i) the disclosure in November 2001, one month after the Plan was confirmed, of "massive increases in insurance reserves" relating to the pre-Confirmation period (Appellants' Brief at 19); ii) the disclosure in Genesis' 10Q for the quarter ending December 31, 2001 (filed February 12, 2002, four months after the Plan was confirmed) that, although future business with Mariner had been excluded from Genesis' EBITDA during the Plan confirmation hearings, a contract extension was signed on September 24, 2001 "before the Genesis Bankruptcy Plan was approved" (Compl. ¶ 128) (A 98); (iii) projections concerning Pharmacy Cost of Goods Sold that, when actual numbers the Genesis' 10Q for the quarter ending March 31, 2002 (the "March 2002 10-Q" filed May 15, 2002, seven months after the Plan was

confirmed) were subsequently available, turned out to be incorrect (Appellants' Brief at 20); and iv) the disclosure in the March 2002 10-Q that 10% of the revenues from sales to Manorcare had previously been excluded from EBITDA due to a pending arbitration that was not resolved until April 2002 (Id. at 19-20).[13]

Significantly, two of the four subjects relate to disclosures made by Genesis within the 180-day period proscribed by Section 1144. The Plan was confirmed on September 20, 2001. As is stated above, the disclosures related to the insurance reserves were made in November 2001 (Compl. ¶ 178(a) (A 121)) and the disclosures relating to the Mariner contract were made on February 12, 2002 (Compl. ¶ 178(b) (A 121)). Therefore even if there were a late discovered fraud exception to Section 1144 -- and for the reasons discussed in point I *supra*, there is none -- Appellants are not eligible for that exception. Also, as Judge Wizmur pointed out, the Mariner contract was executed after the Plan was approved, and therefore its execution (which

---

[13] As Defendants argued below, Plaintiffs' fraud claims are based upon nothing more than fraud by hindsight pleading which must be dismissed under Rule 12(b)(6). See In re Ikon Office Solutions, Inc. Sec. Litig., 277 F.3d 658, 673 (3d Cir. 2002) (defendant not liable for violating federal securities laws because accounting judgments were believed to be true *when made* and knowledge gained by "hindsight" was irrelevant) (internal citations omitted); see also Glen Holly Entm't, Inc v Tektronix, Inc., 100 F. Supp. 2d 1086 (C.D. Cal. 1999) ("[A] plaintiff does not satisfy the falsity requirement [of common law fraud] by merely asserting that a company's later revelation of bad news means that `earlier, cheerier' statements must have been false); Glaser v. Norris, 1992 Del. Ch. LEXIS 1, at *37 (Del. Ch. Ct., Jan. 6, 1992) (dismissing common law fraud claims because allegations concerning disclosure of company's financial growth were premised on "fraud by hindsight"). It is also black letter law that projections of a company's performance are not statements of fact but, rather, opinions that are not actionable even if, *in hindsight*, they are proven to have been incorrect. See Great Lakes Chem. Corp. v. Pharmacia Corp., 788 A.2d 544, 554 (Del. Ch. 2001) (holding that company's sales projections were opinions, not statements of fact, and, therefore, not actionable as common law fraud); see also Alnwick v. European Micro Holdings, Inc., 281 F. Supp. 2d 629, 643 (E.D.N.Y. 2003) (holding that "generalized allegations that the defendants were too optimistic when they projected future [business] prospects [are] insufficient to support a claim of [common law] fraud"); Daily Variety, Ltd. v. Term Leasing, Inc., 1989 U.S. Dist. LEXIS 5605, at *8 (S.D.N.Y., May 22, 1989) (dismissing common law fraud claims because plaintiffs failed to plead facts showing that allegedly misleading business projections were "anything more than defendants' best, albeit uncertain, guess about the future"). Indeed, for opinions of future business prospects to be actionable as fraud, they must lack any basis and be given with intent to defraud. See Scott-Douglas Corp. v. Greyhound Corp., 304 A.2d 309, 317 (Del. Super. Ct., 1973) (holding that statements of opinion may be actionable as fraud only if the opinions are given with the intent to deceive). Here, Plaintiffs' purported fraud claim is based in large part on allegations that certain of the Company's actual results in 2002 and 2003 differed from the 2001 projections of those future events. This model of textbook "fraud by hindsight" pleading is insufficient to state a claim.

was addressed as a possibility in the bankruptcy proceedings) could not have been "concealed" during those proceedings since it had not yet happened. AA. 1352.[14]

As to one of the two remaining subjects -- the allegations that concern Pharmacy Costs of Goods Sold -- nothing in the Complaint demonstrates that any of the Appellees knew that the projections made during the bankruptcy proceeding lacked a reasonable basis when made. These were nothing more than estimates, and Appellants were entitled to make different estimates and urge them on the court during the confirmation hearings. Moreover, Appellants had every opportunity to probe the basis for management's projections and reserves during the bankruptcy proceeding and the record is clear that these issues were addressed during that proceeding.[15] See e.g., Hager Tr. at AA. 1093 (Pharmacy Costs of Goods Sold); AA. 291, 332 (insurance loss reserves); Hager Tr. at AA. 1083-84, 1087-88 (same).

With respect to the last subject, the exclusion from EBITDA of 10% of future sales to Manorcare, there are no facts in the Complaint that show how Defendants could have predicted the outcome of an arbitration that was not decided until April 2002. The fact that these amounts were being placed in escrow was disclosed during the bankruptcy proceeding. See, e.g., Hager Tr. at AA. 1097-98; AA. 180. Appellants cannot rely on the outcome of the arbitration alone as a basis to allege that Defendants should have known that Manorcare would not prevail in the arbitration at the time of the Plan confirmation hearings. Nor can Appellants claim surprise that amounts which were disputed and paid into escrow were not taken into earnings.

---

[14] Inexplicably, Appellants claim that Judge Wizmur, in her opinion below, assumed this transaction was "totally unanticipated at the time of the Plan confirmation hearings . . . ." Appellants' Br. at 13-14. Exactly the opposite is true. Judge Wizmur addressed the uncertainty concerning the Mariner contract in her opinion on confirmation (266 B.R. at 613), and "[t]he potential contract with Mariner was not new or concealed, but rather a recognized and contested adjustment to EBITDA during the confirmation process. *Plaintiffs have failed to establish an affirmative act of concealment or contrivance on this record.*" AA. 1352 (emphasis added)

[15] The same is true of the insurance loss reserves which, in any event, were the subject of disclosures within the statutory 180-day period imposed by Section 1144.

Powell v. Am. Bank & Trust Co., 640 F. Supp. 1568 (N.D. Ind. 1986), which

Appellants attempt to use to create an overall fraud exception to *res judicata*, does not in any way

support their claims here. *Res judicata* did not apply in that case because the prior "proceeding"

was simply a *pro forma* authorization by a probate court for a trustee to sell stock in which the

judge simply signed an order, submitted by the trustee, which contained false factual assertions;

there was no litigation or proceedings of any kind, and the plaintiffs never even appeared before

the probate court. See Powell, 640 F. Supp. at 1572 ("[N]o hearing was ever held before the

court; the court simply signed an order which had been prepared by attorneys for the

defendants.").[16]  Moreover, any fraud exception to *res judicata* would be inapplicable in the

bankruptcy context because Section 1144 operates to bar actions based on fraud -- like this one --

brought more than 180 days after confirmation that would have the effect of revoking the plan.

For the reasons stated above, the Bankruptcy Court's determination that *res*

*judicata* bars Appellants' claims is not clearly erroneous and should be affirmed.

**D.    The Plan's Exculpation Provision Does
Not Operate as a Reservation of Rights**

Appellants argue that Section 10.6 of the Plan preserves claims based on willful

or grossly negligent conduct in the Plan confirmation process, and that, without explicitly so

stating, this provision authorizes prosecution of the Appellants' claims. Appellants' Brief at 33.

Section 10.6 of the Plan, entitled "Exculpation", provides:

> Neither the Debtors . . . the respective statutory committees of
> unsecured creditors . . . Mellon Bank, N.A. as administrative
> agent under, and any lender under, the Genesis Senior Lender
> Agreements, the Multicare Senior Lending Agreements, and the
> Revolving Credit and Guaranty Agreements . . . shall have or
> incur any liability to any holder of any Claim or Equity Interest

---

[16] Moreover, because Powell had nothing to do with a prior bankruptcy order, the claims in Powell did not implicate -- as the claims do here -- the finality accorded to a confirmation order by Section 1144. McCarty v. First of Georgia Insur. Co., 713 F.2d 609 (10th Cir. 1983) and Christian v. Am. Home Assurance Co., 577 P.2d 899 (Okla. 1978), which Appellants also rely on, and similarly did not involve a bankruptcy order, concerned the application of *res judicata* principles to Oklahoma insurance law, and have no application here.

> for any act or omission in connection with, or arising out of, the
> Reorganization Cases, the confirmation of the Plan of
> Reorganization, the consummation of the Plan of
> Reorganization, or the administration of the Plan of
> Reorganization or property to be distributed under the Plan of
> Reorganization, except for willful or gross negligence.

See AA 902.

The Bankruptcy Court considered the Appellants' contention that this provision

authorizes their claims and properly rejected it. The Bankruptcy Court correctly found that

Appellants had misconstrued the provision. Plan Section 10.6, entitled "Exculpation," provides

additional contractual protection to Debtors and related persons from liability in connection with

the bankruptcy, in addition to – not instead of – that which otherwise would flow from the

Confirmation Order. Section 10.6 simply limited the scope of that additional contractual

exculpation by carving out certain types of actions from that exculpation. It does not override the

*res judicata* effect of the 2001 Confirmation Order. The Bankruptcy Court stated:

> [S]ection 10.6 is not a reservation of rights provision and it does
> not preserve any right to bring claims that would be otherwise
> barred by the plan and the confirmation order. It does not
> provide disgruntled creditors an affirmative right to relitigate
> claims barred by res judicata. It is instead a contractual
> protection clause designed to protect the debtors and related
> parties from liability in connection with the bankruptcy, the plan
> and its consummation, with a carve-out for conduct that is not
> protected, if the adjudication of liability for that conduct is not
> barred on some other basis.

AA 1351 (emphasis added). [17]

A number of Court of Appeals decisions support the holding that *res judicata*

bars a subsequent action unless the debtor's disclosure statement and/or plan expressly reserves

the right to litigate that specific claim -- which neither Genesis' disclosure statement or plan did.

---

[17] In fact, the Plan does contain a reservation-of-rights provision that excepts certain claims from the
otherwise preclusive effect of Plan Confirmation, but it is not Section 10.6. It is Section 10.7, aptly entitled
"Retention of Causes of Action/Reservation of Rights." It is this clause, not Section 10.6, that sets forth
any and all claims that were to be reserved post-confirmation. Nothing in Section 10.7 remotely suggests
that the claims contained in the Complaint were to be reserved for a post-confirmation adjudication, so
Appellants simply ignore it.

See Browning v. Levy, 283 F.3d 761, 774 (6th Cir. 2002) ("*Res judicata* does not apply where a

claim is expressly reserved by the litigant in the earlier bankruptcy proceeding."); D&K Props.

Crystal Lake v. Mutual Life Ins. Co. of N.Y., 112 F.3d 257, 261 (7th Cir. 1997) (to avoid *res*

*judicata* the reservation must be express and specific); In re Kelley, 199 B.R. 698, 704 (9th Cir.

BAP 1996) ("Even a blanket reservation by the debtor reserving 'all causes of action which the

debtor may choose to institute' has been held insufficient to prevent the application of *res*

*judicata* to a specific action.").[18]

      In light of this consistent precedent, Judge Wizmur held that in order for

Appellants to successfully rely on Section 10.6, that section would have to "'expressly' reserve[]

the causes of action asserted by the plaintiffs," which it does not. AA. 1351. Since Section 10.6

does not expressly and specifically authorize post-confirmation causes of action, the Bankruptcy

Court properly held that Appellants' Complaint is barred by *res judicata* and collateral estoppel

and with respect to the Debtor under Sections 10.2 and 10.3 of the Plan.

## IV.    THE COMPLAINT IS BARRED BY COLLATERAL ESTOPPEL

      The Bankruptcy Court properly found that Appellants' claims were barred by the

doctrine of collateral estoppel. The doctrine of collateral estoppel precludes a party from

relitigating an issue where: (1) the issue sought to be precluded is the same as the one involved in

the prior action; (2) the issue must have been actually litigated; (3) the issue must have been

determined by a valid and final judgment; and (4) the determination must have been essential to

the prior judgment. See Saudi v. Acomarit Maritimes Servs., S.A., 114 Fed. App'x. 449, 454 (3d

Cir. 2004); Witkowski v. Welch, 173 F.3d 192, 199 (3d Cir. 1999); In re Docteroff, 133 F.3d 214

(3d Cir. 1997) (setting forth elements of collateral estoppel).

---

[18]  See also In re Am. Preferred Prescription, Inc., 266 B.R. 273, 279 (E.D.N.Y. 2000) (finding general
reservation in plan to be "insufficient to escape the res judicata bar"); In re Huntsville Small Engines, Inc.,
228 B.R. 9, 13 (Bankr. N.D. Ala. 1998) (finding preference action precluded by plan confirmation under
doctrine of res judicata where plan and disclosure statement "only contained a general retention clause
reserving the debtor's right to pursue post-confirmation all pre-petition causes of action without specifically
disclosing the cause of action")

The Bankruptcy Court found that each of these elements had been met. The issue before the Bankruptcy Court during the confirmation process was identical to the issue encompassed by the allegations in the Complaint -- i.e., "the issue of the appropriate enterprise value of the debtor." AA. 1352. Indeed, the enterprise value of Genesis was litigated, determined by a valid and final judgment, and the determination of the enterprise value of Genesis was essential to that judgment. Appellants cannot sidestep this fact by claiming they lacked "a full and fair opportunity" to litigate their current claims, "because evidence relating to that issue was covered up and misrepresented." Appellants' Brief at 29. On the contrary, as the Bankruptcy Court emphasized, "most notably, the [Appellants] . . . did not object to the discovery schedule or assert at the confirmation hearing that they did not have sufficient time to review the materials." AA. 1353. They were in a position to probe every element that went into the calculation of EBITDA. In short, the finality of the Bankruptcy Court's plan determinations cannot be overridden by after-the-fact objections to the discovery schedule set by that Court before it reached its determinations on the merits.

Moreover, Appellants' contention that "the issue of whether EBITDA data was fraudulent was not actually litigated" is also well off the mark. As Judge Wizmur stated, "[t]he opinion itself, in which I reviewed the objectors' arguments challenging the budgeted EBITDA numbers presented by the plan proponents, belies the plaintiffs' contentions." AA. 1352-53. The fact that Appellants changed their theory (if indeed that is the case) is irrelevant. By Appellants' reasoning, an accident victim could claim that the driver was negligent for speeding, then, having lost, could claim that the driver was negligent for failing to pay attention, and then, having lost again, could allege that the driver failed to (or "fraudulently" failed to) disclose that he was using a cell phone at the time of the accident. Adding words like "fraud" to their allegations does not change the fact that the issue of the enterprise value of Genesis (like the issue of negligence in the example given) has already been litigated. Judge Wizmur's conclusion that Appellants' claims are barred by collateral estoppel was based on the existing judicial record, properly considered on

the motion to dismiss, and hence subject to a "clearly erroneous" standard of review.  <u>See</u>

<u>Universal Minerals</u>, 669 F.2d at 103; <u>B. Cohen & Sons</u>, 108 B.R. at 484.  These findings were not

clearly erroneous but rather were fully supported by the voluminous factual record before the

very same judge who ruled on the plan confirmation and the motion to dismiss which is now

being appealed.

        It does not matter whether Appellants were aware of the facts alleged in the

Complaint during the Confirmation Hearing.  Subsequently discovered facts do not permit a party

to relitigate previously determined issues of fact.  <u>Yamaha Corp.</u> v. <u>United States</u>, 961 F.2d 245,

257-58 (D.C. Cir. 1992), (cited by Genesis, 324 B.R. at 528) ("A new contention is not . . .

necessarily a new issue.  If a new legal theory or factual assertion put forward in the second

action is related to the subject-matter and relevant to the issues that were litigated and adjudicated

previously, so that it could have been raised, the judgment is conclusive on it despite the fact that

it was not in fact expressly pleaded or otherwise urged.") (internal citations omitted).

Accordingly, the Bankruptcy Court correctly ruled that Appellants' claims are barred by

collateral estoppel.

## CONCLUSION

For all the foregoing reasons, and the reasons stated in the supplemental briefing of Appellees Goldman Sachs, Mellon Bank and Highland Capital, the Appellees respectfully requests that this Court affirm Bankruptcy Judge Wizmur's Dismissal of Appellants' Complaint.

Dated:  January 23, 2006

_____

Steven K. Kortanek
Morton R. Branzburg
KLEHR, HARRISON, HARVEY,
BRANZBURG & ELLERS LLP
919 Market Street, Suite 1000
Wilmington, Delaware  19809-3062
(302) 426-1189

      -and-

Sheldon Raab
Eric A. Hirsch
FRIED, FRANK, HARRIS, SHRIVER &
JACOBSON LLP
One New York Plaza
New York, New York 10004-1980
(212) 859-8000

Attorneys for Defendant Goldman,
Sachs & Co.

Russell C. Silberglied (No. 3462)
Jason M. Madron (No. 4431)
RICHARDS, LAYTON & FINGER, P.A.
P.O. Box 551
Wilmington, Delaware  19899
(302) 651-7700

      - and –

Michael F. Walsh
Diane Harvey
Gary T. Holtzer
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York  10153
(212) 310-8000
      - and -
Adam P. Strochak
Joanne M. Guerrera
WEIL, GOTSHAL & MANGES LLP
1501 K Street, NW, Suite 100
Washington, DC 20005
(202) 682-7000

Attorneys for Defendant NeighborCare Inc.
(sued herein as Genesis Health Ventures, Inc.)

## CONCLUSION

For all the foregoing reasons, and the reasons stated in the supplemental briefing

of Appellees Goldman Sachs, Mellon Bank and Highland Capital, the Appellees respectfully

requests that this Court affirm Bankruptcy Judge Wizmur's Dismissal of Appellants' Complaint

Dated: January 23, 2006

*Steven K. Kortanek /by* (*Russ L. Avohad*)
_____    (#4147)
Steven K. Kortanek
Morton R Branzburg
KLEHR, HARRISON, HARVEY,
BRANZBURG & ELLERS LLP
919 Market Street, Suite 1000
Wilmington, Delaware 19809-3062
(302) 426-1189

-and-

Sheldon Raab
Eric A Hirsch
FRIED, FRANK, HARRIS, SHRIVER &
JACOBSON LLP
One New York Plaza
New York, New York 10004-1980
(212) 859-8000

Attorneys for Defendant Goldman,
Sachs & Co

_____
Russell C. Silberglied (No 3462)
RICHARDS, LAYTON & FINGER, P A
P.O. Box 551
Wilmington, Delaware 19899
(302) 651-7700

- and –

Michael F. Walsh
Diane Harvey
Gary T Holtzer
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
(212) 310-8000
- and -
Adam P. Strochak
Joanne M. Guerrera
WEIL, GOTSHAL & MANGES LLP
1501 K Street, NW, Suite 100
Washington, DC 20005
(202) 682-7000

Attorneys for Defendant NeighborCare Inc
(sued herein as Genesis Health Ventures, Inc )

Daniel K. Hogan (No. 2814)
1701 Shallcross Avenue, Suite C
Wilmington, Delaware  19806
(302) 656-7540

- and -

Paul Lackey
Michael Aigen
LACKEY, HERSHMAN LLP
3102 Oak Lawn Avenue, Suite 700
Dallas, Texas  75219
(214) 560-2206

Attorneys for Defendant Highland Capital
Management, L. P.

/s/ Robert S. Brady (No. 2847)

YOUNG CONAWAY STARGATT &
TAYLOR LLP
1000 West Street, 17th Floor
Wilmington, Delaware  19899-0391
(302) 571-6690

- and –

Paul V. Shalhoub
WILLKIE FARR & GALLAGHER LLP
787 7th Avenue
New York, New York  10019-6099
(212) 728-8000

Attorneys for Defendant George V. Hager

Teresa K.D. Currier
Peter J. Duhig (No. 4024)
KLETT ROONEY LIEBER &
SCHORLING, PC
The Brandywine Building
1000 West Street, Suite 1410
Wilmington, Delaware  19801
(302) 552-4200

Attorneys for Defendant Mellon Bank,
N.A.

- and –

Richard S. Toder
Menachem O. Zelmanovitz
MORGAN, LEWIS & BOCKIUS LLP
101 Park Avenue
New York, New York  10178
(212) 309-6000

Attorneys for Defendant Mellon Bank,
N.A. with respect to all Plaintiffs other than
Charles L. Grimes, Louis IG Ireland Trust,
C. Yvonne Cooke, Jane G. Brown, Serena
R. Schwartz and Gordon W. Chaplin

- and –

Steven Russo
SIVE, PAGET & RIESEL, P.C.
460 Park Avenue
New York, New York  10022
(212) 421-2150

Attorneys for Defendant Mellon Bank N.A.
with respect to plaintiffs Charles L.
Grimes, Louis IG Ireland Trust, C. Yvonne
Cooke, Jane G. Brown, Serene R. Schwartz
and Gordon W. Chaplin

_____

Daniel K. Hogan (No. 2814)
THE HOGAN FIRM
1311 Delaware Avenue
Wilmington, Delaware 19806
(302) 656-7540

- and -

Paul Lackey
Michael Aigen
LACKEY, HERSHMAN LLP
3102 Oak Lawn Avenue, Suite 700
Dallas, Texas 75219
(214) 560-2206

Attorneys for Defendant Highland Capital
Management, L. P.


_____

Robert S. Brady (No. 2847)

YOUNG CONAWAY STARGATT &
TAYLOR LLP
1000 West Street, 17th Floor
Wilmington, Delaware 19899-0391
(302) 571-6690

        - and –

Paul V. Shalhoub
WILLKIE FARR & GALLAGHER LLP
787 7th Avenue
New York, New York 10019-6099
(212) 728-8000

Attorneys for Defendant George V. Hager


_____

Teresa K.D. Currier
Peter J. Duhig (No. 4024)
KLETT ROONEY LIEBER &
SCHORLING, PC
The Brandywine Building
1000 West Street, Suite 1410

Wilmington, Delaware 19801
(302) 552-4200

Attorneys for Defendant Mellon Bank,
N.A.

- and –

Richard S. Toder
Menachem O. Zelmanovitz
MORGAN, LEWIS & BOCKIUS LLP
101 Park Avenue
New York, New York 10178
(212) 309-6000

Attorneys for Defendant Mellon Bank,
N.A. with respect to all Plaintiffs other than
Charles L. Grimes, Louis IG Ireland Trust,
C. Yvonne Cooke, Jane G. Brown, Serena
R. Schwartz and Gordon W. Chaplin

- and –

Steven Russo
SIVE, PAGET & RIESEL, P.C.
460 Park Avenue
New York, New York 10022
(212) 421-2150

Attorneys for Defendant Mellon Bank N.A.
with respect to plaintiffs Charles L
Grimes, Louis IG Ireland Trust, C. Yvonne
Cooke, Jane G. Brown, Serene R. Schwartz
and Gordon W. Chaplin

_____

Daniel K. Hogan (No. 2814)
1701 Shallcross Avenue, Suite C
Wilmington, Delaware 19806
(302) 656-7540

    - and -

Paul Lackey
Michael Aigen
LACKEY, HERSHMAN LLP
3102 Oak Lawn Avenue, Suite 700
Dallas, Texas 75219
(214) 560-2206

Attorneys for Defendant Highland Capital
Management, L. P.

_____

Robert S. Brady (No. 2847)

YOUNG CONAWAY STARGATT &
TAYLOR LLP
1000 West Street, 17th Floor
Wilmington, Delaware 19899-0391
(302) 571-6690

    - and –

Paul V. Shalhoub
WILLKIE FARR & GALLAGHER LLP
787 7th Avenue
New York, New York 10019-6099
(212) 728-8000

Attorneys for Defendant George V. Hager

Teresa K.D. Currier
Peter J. Duhig (No. 4024)
KLETT ROONEY LIEBER &
SCHORLING, PC
The Brandywine Building
1000 West Street, Suite 1410
Wilmington, Delaware 19801
(302) 552-4200

Attorneys for Defendant Mellon Bank,
N.A.

    - and –

Richard S. Toder
Menachem O. Zelmanovitz
MORGAN, LEWIS & BOCKIUS LLP
101 Park Avenue
New York, New York 10178
(212) 309-6000

Attorneys for Defendant Mellon Bank,
N.A. with respect to all Plaintiffs other than
Charles L. Grimes, Louis IG Ireland Trust,
C. Yvonne Cooke, Jane G. Brown, Serena
R. Schwartz and Gordon W. Chaplin

    - and –

Steven Russo
SIVE, PAGET & RIESEL, P.C.
460 Park Avenue
New York, New York 10022
(212) 421-2150

Attorneys for Defendant Mellon Bank N.A.
with respect to plaintiffs Charles L.
Grimes, Louis IG Ireland Trust, C. Yvonne
Cooke, Jane G. Brown, Serene R. Schwartz
and Gordon W. Chaplin

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

## CERTIFICATE OF SERVICE

I, Jason M. Madron, hereby certify that on the 23rd day of January, 2006, I electronically

filed the **Brief of Defendant-Appellees in Opposition to the Appeal of Richard Haskell et al.**

**From the May 10, 2005 Order of the Bankruptcy Court** with the Clerk of the Court using

CM/ECF which will send notifications of such filing to the following :

R. Bruce McNew
mcnew@taylormcnew.com

Robert Steven Brady
rbrady@ycst.com

Steven K. Kortanek
skortane@klehr.com

Teresa K.D. Currier
currier@klettrooney.com

Peter J. Duhig
duhig@klettrooney.com

Daniel K. Hogan
dkhogan@dkhogan.com

I, Jason M. Madron, hereby certify that on the 23rd day of January, 2006, I sent via Hand

Delivery Service (Local) or via First Class Mail (Non-Local) the **Brief of Defendant-Appellees**

**in Opposition to the Appeal of Richard Haskell et al. From the May 10, 2005 Order of the**

**Bankruptcy Court** to the following participants:

**Via Hand Delivery**
R. Bruce McNew, Esq.
TAYLOR & McNEW, LLP
3711 Kennett Pike, Suite 210
Wilmington, Delaware 19807
(*Counsel for Appellants*)

**Via Hand Delivery**
Laura Davis Jones, Esq.
PACHULSKI STANG ZIEHL JONES
 & WEINTRAUB P.C.
919 North Market Street, Suite 1600
Wilmington, Delaware 19899
(*Counsel for Official Committee of
 Unsecured Creditors*)

**Via First Class Mail**
Stanley M. Grossman, Esq.
H. Adam Prussin, Esq.
POMERANTZ HAUDEK BLOCK
 GROSSMAN & GROSS LLP
100 Park Avenue, 26th Floor
New York, New York  10017
(*Counsel for Appellants*)


Jason M. Madron (No. 4431)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
P.O. Box 551
Wilmington, DE 19899
(302) 651-7700
Madron@rlf.com