IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | |
| | : | |
| Genesis Health Ventures, Inc., *et al.*, | : | Civ. Act. No. 05-CV-427 (KAJ) |
| | : | Related to Case No. 00-2692 (JHW) |
| Debtors, | : | Jointly Administered |
| | : | |
| Richard Haskell, *et al.*, | : | |
| | : | |
| Plaintiffs-Appellants, | : | |
| | : | |
| v. | : | Adv. Pro. No.: 04-53375 (JHW) |
| | : | |
| Goldman, Sachs & Co., et al., | : | VOLUME I OF V |
| | : | |
| Defendants-Appellees. | : | |

**DEFENDANTS-APPELLEES' APPENDIX IN SUPPORT OF THEIR BRIEF IN OPPOSITION TO THE APPEAL OF RICHARD HASKELL ET AL. FROM THE MAY 10, 2005 ORDER OF THE BANKRUPTCY COURT**

Steven K. Kortanek
Morton R. Branzburg
KLEHR, HARRISON, HARVEY, BRANZBURG & ELLERS LLP
919 Market Street, Suite 1000
Wilmington, Delaware 19809-3062
(302) 426-1189
-and-
Sheldon Raab
Eric A. Hirsch
FRIED, FRANK, HARRIS, SHRIVER & JACOBSON LLP
One New York Plaza
New York, New York 10004-1980
(212) 859-8000

Attorneys for Defendant Goldman, Sachs & Co.

Russell C. Silberglied (No. 3462)
Jason M. Madron (No. 4431)
RICHARDS, LAYTON & FINGER, P.A.
P.O. Box 551
Wilmington, Delaware 19899
(302) 651-7700
- and -
Michael F. Walsh
Diane Harvey
Gary T. Holtzer
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
(212) 310-8000
- and -
Adam P. Strochak
Joanne M. Guerrera
WEIL, GOTSHAL & MANGES LLP
1501 K Street, NW, Suite 100
Washington, DC 20005
(202) 682-7000

Attorneys for Defendant NeighborCare Inc. (sued herein as Genesis Health Ventures, Inc.)

Daniel K. Hogan (No. 2814)
THE HOGAN FIRM
1311 Delaware Avenue
Wilmington, Delaware 19806
(302) 656-7540
- and -
Paul Lackey
Michael Aigen
LACKEY, HERSHMAN LLP
3102 Oak Lawn Avenue, Suite 700
Dallas, Texas 75219
(214) 560-2206

Attorneys for Defendant Highland Capital Management, L. P.

Robert S. Brady (No. 2847)
YOUNG CONAWAY STARGATT & TAYLOR LLP
1000 West Street, 17th Floor
Wilmington, Delaware 19899-0391
(302) 571-6690
- and -
Paul V. Shalhoub
WILLKIE FARR & GALLAGHER LLP
787 7th Avenue
New York, New York 10019-6099
(212) 728-8000

Attorneys for Defendant George V. Hager

Teresa K.D. Currier
Peter J. Duhig (No. 4024)
KLETT ROONEY LIEBER & SCHORLING, PC
The Brandywine Building
1000 West Street, Suite 1410
Wilmington, Delaware 19801
(302) 552-4200

Attorneys for Defendant Mellon Bank, N.A.

- and -

Richard S. Toder
Menachem O. Zelmanovitz
MORGAN, LEWIS & BOCKIUS LLP
101 Park Avenue
New York, New York 10178
(212) 309-6000

Attorneys for Defendant Mellon Bank, N.A. with respect to all Plaintiffs other than Charles L. Grimes, Louis IG Ireland Trust, C. Yvonne Cooke, Jane G. Brown, Serena R. Schwartz and Gordon W. Chaplin

- and -

Steven Russo
SIVE, PAGET & RIESEL, P.C.
460 Park Avenue
New York, New York 10022
(212) 421-2150

Attorneys for Defendant Mellon Bank N.A. with respect to Plaintiffs Charles L. Grimes, Louis IG Ireland Trust, C. Yvonne Cooke, Jane G. Brown, Serena R. Schwartz and Gordon W. Chaplin

# TABLE OF CONTENTS

| | PAGE |
|---|---|
| Objection of Creditor Charles L. Grimes to Motion to Approve Disclosure Statement | AA.1 |
| Objection of GMS Group LLC to Approval of Disclosure Statement | AA.19 |
| Order Approving the Form and Manner of Disclosure Statement Hearing and the Disclosure Statement | AA.36 |
| Objection of GMS Group LLC to Confirmation of the Joint Plan of Reorganization | AA.49 |
| Objection of Charles L. Grimes to Confirmation of the Joint Plan of Reorganization | AA.58 |
| Debtors' Omnibus Response to Objections to Joint Plan of Reorganization | AA.73 |
| Transcript of August 28, 2001 Confirmation Hearing before Judge Wizmur | AA.113 |
| Transcript of August 29, 2001 Confirmation Hearing before Judge Wizmur | AA.357 |
| Opinion on Confirmation | AA.682 |
| Findings of Fact, Conclusions of Law and Order Confirming Debtors' Joint Plan of Reorganization | AA.731 |
| Debtors' Joint Plan of Reorganization | AA.933 |
| Motion of Charles L. Grimes to Amend Findings | AA.936 |
| Transcript of October 5, 2001 Hearing before Judge Wizmur | AA.942 |
| Notice of Docketing of Grimes vs. Genesis Appeal | AA.999 |
| Portion of Charles L. Grimes' Motion for Partial Stay of Confirmation Order | AA.1000 |
| Order Granting Joint Motion to Dismiss Grimes vs. Genesis Appeal | AA.1022 |
| Order Dismissing Genesis vs. Grimes Appeal | AA.1042 |
| Motion of Charles L. Grimes and GMS Group for Limited Relief from Stipulated Protective Order | AA.1044 |
| Transcript of September 25, 2004 Hearing before Judge Wizmur | AA.1054 |
| Portion of August 23, 2001 Deposition Transcript of George Hager | AA.1079 |
| Portion of August 16, 2001 Deposition Transcript of J. Halisey Kennedy | AA.1101 |

Portion of August 20, 2001 Deposition Transcript of Michael R. Walker ............ AA.1104

Portion of August 15, 2001 Deposition Transcript of Joseph LaNasa .................. AA.1114

Portion of August 19, 2001 Deposition Transcript of William McGahan ............... AA.1116

Portion of August 24, 2001 Deposition Transcript of David Schulte .................... AA.1123

Portion of August 17, 2001 Deposition Transcript of David C. Barr ..................... AA.1127

Motion for Order Directing Appointment of Trustee or the Sale of the Related Party Contracts ................................................................................ AA.1133

Objection to Motion for Order Adjourning Hearing to Consider Approval of Disclosure Statement ................................................................................ AA.1271

Portion of August 27, 2001 Deposition Transcript of William R. Becklean, CVA ................................................................................ AA.1285

Declaration of Patrick M. Hurst in Support of Confirmation of Joint Plan of Reorganization ................................................................................ AA.1287

Order Granting Motion to Sell Debtors' (Mariner) Pharmaceutical Business ................................................................................ AA.1311

Amended Opinion on Joint Motion to Dismiss dated May 3, 2005 ..................... AA.1339

Plaintiffs-Appellants' Opening Memoranda dated November 21, 2005 ............... AA.1355

Plaintiffs' Memorandum in Opposition to Motion to Dismiss dated June 21, 2004 ................................................................................ AA.1477

Mellon Bank, N.A.'s Supplemental Memorandum in Support of Motion to Dismiss dated July 12, 2004 ................................................................................ AA.1708

Highland Capital Management, L.P.'s Reply to Plaintiffs' Opposition to Motion to Dismiss dated July 12, 2004 ................................................................................ AA.1739

Goldman, Sachs & Co.'s Supplemental Reply to Plaintiffs' Opposition to Motion to Dismiss Plaintiffs' Complaint dated July 12, 2004 .......................... AA.1749

Highland Capital Management, L.P.'s Motion to Dismiss dated April 23, 2004 ................................................................................ AA.1757

Disclosure Statement for Debtors' Joint Plan of Reorganization dated July 6, 2001 ................................................................................ AA1776

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

FILED
2001 JUN 29 PM 2:13
CLERK
U.S. BANKRUPTCY COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE:<br><br>GENESIS HEALTH VENTURES, INC., et al.,<br><br>Debtors. | CHAPTER 11<br>Case No. 00-2692 (JHW)<br>(Jointly Administered) |
| IN RE:<br><br>MULTICARE AMC, INC., et al.,<br><br>Debtors. | CHAPTER 11<br>Case No. 00-2494 (JHW)<br>(Jointly Administered)<br><br>RE: DOCKET NO. 1850<br>Hearing Date: 7/6/01 @ 10:00 am |

**OBJECTION OF CREDITOR CHARLES L. GRIMES
TO DEBTORS' JOINT MOTION FOR
ORDER APPROVING DISCLOSURE STATEMENT**

Charles L. Grimes, the holder of in excess of $20,310,000 in face amount of the 9 3/4 % Senior Subordinated Notes due 2005 (the "Genesis 2005 Notes") issued by Genesis Health Ventures, Inc. ("Genesis"), submits to the Court his objection to the Motion of these Debtors for an Order approving their Disclosure Statement respecting the Joint Plan (the "Plan") of the Genesis Debtors and the Multicare Debtors (together, the "Proponents"), and in support states the following:

PSH6860

## INTRODUCTION

It is impossible for Genesis creditors to adequately assess whether to vote to accept or to reject the proposed Plan based upon the woefully inadequate information presented by the Disclosure Statement currently before the Court. As more fully explained below, the Disclosure Statement does **not** provide the information creditors require to make an "**informed** judgment" about the Plan as required by Bankruptcy Code section 1125. Moreover, it reads as though it were designed to focus the recipient **away** from revealing information. These problems are exacerbated by, among other things, the lack of a Table of Contents and other "road maps" to assist the voter in assessing the information that is provided.

In addition, creditors need to receive the adequate disclosure to which they are entitled **before** they are required to vote on the Plan and in sufficient time to make the analyses required. The Proponents have not provided in the Disclosure Statement -- or to this Court -- the most relevant information creditors will need to effectively assess the Plan and, it is respectfully submitted, that the Court requires to effectively scrutinize and determine the adequacy of the Disclosure Statement. Nor will that information be mailed to creditors **with** the Disclosure Statement. The Proponents represent only that they will provide much of that information in an anticipated "Plan Supplement," which they advise will be "released" no later than five (5) days prior to the deadline for **receipt** of votes on the Plan and no later than ten (10) days prior to the confirmation hearing. This is inadequate, because the average creditor entitled to vote on the Plan will not "receive" the Plan Supplement the *moment* it is "released." Moreover, creditors have to transmit their ballots at the latest the day **before** the deadline for receipt of votes on the Plan because they have to insure timely receipt by the Debtors' Agent. Receiving this information only a few days

before the voting deadline or the confirmation hearing, or perhaps even at the confirmation hearing itself, is far too late for creditors to receive the disclosures they need to enable them to make informed judgments whether to vote to accept or to reject the Plan. For the Plan to be confirmable, the Debtors are required to meet this burden at the time the Disclosure Statement and Plan are disseminated for voting. 11 U.S.C. § 1129(a)(2).

Finally, receipt of this critical information ten days prior to the confirmation hearing will not give creditors the opportunity to test the validity of the information presented. They will not have adequate time to conduct due diligence or discovery, particularly respecting complicated valuation of two separate sets of enterprises, as well as the unique challenges presented by having to examine the enterprise value achieved by a merger of the two groups. Indeed, the description of the information to be included in the Plan Supplement appears to be insufficient to enable adequate assessment of the propositions for which it is presented – most particularly valuation.

The fact that this predicate information is not currently available for inclusion in the Disclosure Statement should be troubling to creditors and the Court for an additional significant reason. If the Proponents do not currently have this information, on what have they based their determinations respecting the structure of the Plan, the available value distributable to creditors, the allocation of such distributions, and their representations that the Plan as proposed is viable, confirmable and in the best interests of the Debtors' estates and their creditors?

The failure to disclose this information at this juncture only compounds the concern that the Plan as proposed is only in the best interest of the Senior Lenders and the Debtors' Officers and Directors – who have an incentive to minimize assets and going concern value at this time so as to enable them to capture all present and future value for themselves at the expense of the

Noteholders and general unsecured creditors.

Mr. Grimes preserves his continuing right to supplement his Objection to the Disclosure Statement through and including confirmation of any plan of reorganization for Genesis.

## SUMMARY OF OBJECTIONS

The Plan and Disclosure Statement appear to grossly understate the enterprise value of the combined merged Reorganized Genesis and the liquidation value of the Debtors' assets. In addition, Mr. Grimes believes that there is considerable value in Genesis that the Plan and Disclosure Statement improperly and unjustifiably conceal, release and ultimately strip away from holders of the Genesis 2005 Notes (the "Genesis 2005 Noteholders") -- for no consideration -- for the benefit of the Senior Lenders, the Debtors' Officers and Directors, and the Multicare Creditors.

The underpinnings for the enterprise valuations upon which the Plan and its distributions allegedly are predicated are incomplete and not adequately disclosed in the Disclosure Statement. Particularly fatal to the adequacy of the Disclosure Statement is the fact that it contains **no** enterprise valuation for the combined, merged Reorganized Genesis. Mr. Grimes believes that a properly executed enterprise valuation for the merged entities will reveal that the Senior Lenders will realize substantial post-consummation "upside" that appropriately should be distributed equitably at the "front end," at confirmation, for the benefit of **all** Genesis creditors.

In addition, the Plan improperly releases -- for no consideration-- numerous claims of potentially significant value to the Estate and to the Genesis 2005 Noteholders, without any disclosure of the nature of these claims, their potential recoveries, the impact of such recoveries on valuation and creditor distributions, whether any investigation has even been undertaken to make these assessments, and the justification for providing these releases. These released claims include

claims against non-debtor third parties held by **both** Genesis and its creditors -- including potential claims against the Multicare Debtors, the Senior Lenders, Officers and Directors of the Debtors, recipients of avoidable transfers, and the Multicare and Genesis Creditors' Committees.

To the extent that neither the Debtors nor their respective Creditors' Committees have conducted adequate, or any, investigations respecting the possible claims being released and enjoined by the Plan prior to proposing the Plan or determining to support it, they have failed to fulfill their fiduciary duties under the Bankruptcy Code and have not properly represented the interests of Mr. Grimes and similarly situated creditors.

The Disclosure Statement also fails to reveal the true nature of what the Proponents euphemistically term the "deemed" consolidation effectuated by the Plan. Rather, the Plan effectuates an improper **substantive** consolidation of the Multicare Debtors with the Genesis Debtors and the claims against them prior to their proposed merger upon confirmation of the Joint Plan – to the detriment of the Genesis 2005 Noteholders. The purpose, nature and effect of such consolidation should be disclosed, as should the implications for the Genesis 2005 Noteholders if such consolidation were **not** effectuated.

Mr. Grimes particularly is concerned about the allegations raised by the Multicare Creditors' Committee in its Motion for the appointment of an independent Trustee, especially the allegations respecting the manner in which the Senior Lenders and the Debtors' Officers and Directors have dealt with these presumably "independent" Debtors in the year prior to the filing of the Debtors' Chapter 11 petitions and during the course of the Debtors' bankruptcy cases and plan promulgation. These allegations raise significant concerns about conflict of interest, control over the Debtors and the plan process, potential fraudulent conveyance claims and the possibility that all

or a portion of the claims of the Senior Lenders should be equitably subordinated. While the Multicare Creditors' Committee has now withdrawn its Trustee Motion in exchange for a distribution under the Plan, that withdrawal does not moot these allegations.

Accordingly, an independent Examiner should be appointed to assess the concerns raised by this Objection, determine the enterprise values of the individual and combined Debtors and evaluate the propriety and benefit to the Estate of the releases proposed by the Plan.

## I. THE VALUATIONS ARE INSUFFICIENT AND NOT ADEQUATELY DISCLOSED

The Genesis 2005 Noteholders are being asked to determine whether to vote to accept or to reject a proposed Plan that provides them with minuscule recovery on in excess of $125 million in claims based upon the Proponents' representation that they are entitled to **no** distribution under the Plan because there is insufficient value in the Reorganized Genesis to satisfy the Senior Lenders in full. The Proponents base this assertion on their adoption of the "middle" of a range of "valuations" prepared by financial advisors to the Debtors. The Disclosure Statement reveals that these valuations were based on a review of minimal data, are made subject to extensive, broad disclaimers and qualifications, and, at best, are inconclusive. There is **no** indication that the Debtors' financial advisors independently verified management's projections or sought independent evaluations or appraisals.

The information so provided is insufficient to enable creditors to effectively make an informed assessment whether such "valuations" are sustainable and, therefore, whether the Proponents' assertions are accurate. It is impossible to ascertain the underlying assumptions and assess their appropriateness and reasonableness. It similarly is impossible to assess the reasonableness of the projections or the methodologies employed. Nor is there sufficient explanation

for the adoption of a multiple of 7 or 8 in light of the current Standard & Poors' market multiple for similar companies of 23.5.

Similarly lacking is an explanation for why the proposed recapitalized Genesis is to be much less levered than comparable companies, particularly in light of the losses to be incurred by the Noteholders under the Proponents' scheme.

Most troubling is the apparent method by which the Proponents arrived at an enterprise valuation for the Reorganized Genesis. Here we have the classic situation where 2+2 is more than 4. The Proponents themselves tout the enhancements to be realized by the merger as opposed to maintaining the Debtors as separate enterprises. However, such merged enterprise value is not appropriately determined by merely adding together the separate values of the two enterprises. The true value of the joint enterprise must be recognized or, at the least, allocated between them based on proper relative values in determining distributions under the Plan.

We recognize that the Proponents and others supporting the Plan will counter that the Court should disregard Mr. Grimes' concerns about the lack of adequate disclosure about the valuations upon which the Plan is wholly predicated because, they will argue, valuation is a "confirmation issue." They will claim that the "truth" regarding valuation will be established at the confirmation hearing and the predicate information will be revealed through the Plan Supplement to be presented to creditors shortly before the confirmation hearing, as well as through any discovery which might be taken by Mr. Grimes or others leading up to confirmation.

However, *that is* **not** *sufficient* for purposes of adequately informing creditors entitled to vote on the Plan who will be forced to make their decision before the benefit of that intelligence comes to light. A factual basis must be presented for valuations contained in a disclosure statement.

*See, e.g.*, In re Fierman, 21 Bankr. 314 (Bankr. E.D. Pa. 1982); In re East Redley Corp., 16 Bankr. 429 (Bankr. E.D. Pa. 1982); In re Civitella, 14 Bankr. 151 (Bankr. E.D. Pa. 1981).

Moreover, Genesis itself has acknowledged that "an objection to valuation is not a basis for disapproval of a Disclosure Statement **where the pertinent facts** relating to the valuation **are disclosed**." *See* Genesis' Objection to Multicare Creditors' Committee's Motion to adjourn Disclosure Statement hearing at pp 7-8 (Docket No. 1873)(emphasis added). Here, however, the pertinent facts have **not** been disclosed. The Proponents should be put to their proof before the Estates incur the cost of disseminating the Disclosure Statement and ballots. *See, e.g.*, In re Crowthers McCall Pattern, Inc. 120 Bankr 279, 297 (Bankr. S.D.N.Y. 1990)(where liquidation analysis found "significantly in error," proponents ordered to transmit corrected analysis and ballot to impaired classes with court-approved explanatory notice).

## II. THE NON-DEBTOR RELEASES AND EXCULPATION CLAUSES ARE IMPROPER AND NOT ADEQUATELY DISCLOSED

The Proponents fail to disclose any facts establishing that the non-debtor releases and exculpation clauses set forth in the Plan are fair and necessary. The release clauses and exculpation clauses, therefore, are legally insupportable and must be stricken from the Plan. In re Continental Airlines, 203 F.3d 203, 211 (3d Cir. 2000); In re Greate Bay Hotel & Casino, Inc., 251 Bankr. 213, 222 (Bankr. D. N.J. 2000).

Moreover, even absent the release provisions, the Proponents' mere failure to disclose such possible claims may result in the Debtors and their creditors being equitably or judicially estopped from asserting those claims against the non-debtor third parties post-confirmation. *See* Oneida Motor Freight, Inc. v. United Jersey Bank, 848 F.2d 414 (3d Cir. 1988), *cert. denied*, 488

U.S. 967 (1988); *In re Okan's Foods Inc.*, 217 Bankr. 739, 756 (Bankr. E.D. Pa. 1998).

Creditors who vote to reject the Plan cannot be bound by the releases the Plan provides and the Plan should expressly provide for the exclusion of rejecting creditors from such releases. *Nordhoff Investments, Inc. v. Zenith Electronics Corp.*, ___ F.3d ___ 2001 WL 698000 (3d Cir. June 21, 2001), *affirming* *In re Zenith Electronics Corp.*, 250 Bankr. 207 (D. Del. 2000), *affirming* *In re Zenith Electronics Corp.*, 241 Bankr. 92, 111 (Bankr. D. DE 1999)(release of third party claims "cannot be accomplished without the affirmative agreement of the creditor affected"). *See also, e.g.*, *In re West Coast Video Enters., Inc.*, 174 Bankr. 906, 911 (Bankr. E.d. Pa. 1994)("each creditor bound by the terms of the release must individually affirm same...."); *In re Elsinor Shore Assocs.*, 91 Bankr. 238, 252 (Bankr. D.N.J. 1988)(plan provisions deeming non-debtor proponents and their principals to be discharged and released from any and all claims prohibited by Bankruptcy Code and relevant case law).

The Plan provides for extremely broad releases – for absolutely **no consideration** – by **both** the Debtors and their creditors of any and all claims they may have against non-debtor third parties – including the Senior Lenders, non-debtor affiliates, and current and former officers and directors of the Debtors. The Disclosure Statement fails to provide any information to justify these releases -- either about the nature of these claims, their potential recovery for the Estate or its creditors, whether the claims even have been investigated by the Debtors prior to proposing their release for no consideration, the fairness of the releases or their necessity for the reorganization of the Debtors.

The Disclosure Statement also fails to disclose that, in voting to accept the Plan, the Genesis Noteholders will be giving up – for absolutely no consideration – significant claims they

may have against non-debtor third parties that they otherwise are not obligated to relinquish, in violation of express limitations on altering the rights of a creditor to collect from third parties, as provided under Bankruptcy Code section 524(e). *See First Fidelity Bank v. McAteer*, 985 F.2d 114, 118 (3d Cir. 1993); *In re Zenith Electronics Corp.*, 241 Bankr. 92, 111 (Bankr. D. Del. 1999). Nor does the Disclosure Statement offer any justification for these releases.

For example, if the Proponents are wrong about their valuations – as Mr. Grimes contends they are – the Senior Lenders will be receiving under the Plan a distribution equal in value to at least 100% of their claims, at which point the Genesis Noteholders' subrogation rights would kick in. However, the Plan completely vitiates the Genesis Noteholders' subrogation rights under their Indentures. The Plan also affirmatively enjoins the Genesis Noteholders from enforcing these rights.

The Disclosure Statement fails to disclose that the Plan's release provisions have this effect on the Genesis Noteholders' rights and fails to explain that absent affirmative agreement and consent of the creditor affected such creditor otherwise would not be obligated to release its claims against third parties. Creditors, therefore, are not apprised that they are giving something "up"that they are not obligated to give up – and are doing so for no consideration.

The Plan also includes releases and injunctions related to claims non-debtor third parties may have against the Debtors' Officers and Directors, protecting them from actions taken prior to bankruptcy that may have violated securities laws or otherwise harmed the Genesis 2005 Noteholders, abrogating their liability without any consideration therefor, in violation of 11 U.S.C. section 524(e). *In re PWS Holding Corp.*, 228 F.3d 224, 246 (3d Cir. 2000); *In re Continental Airlines*, 203 F.3d 203, 211 (3d Cir. 2000). The Plan similarly improperly releases and enjoins

claims that non-debtor third parties, such as the Genesis 2005 Noteholders, may have directly against other non-debtor third parties, such as the Senior Lenders. The Disclosure Statement fails to justify these releases or present any disclosure concerning such claims and the effect of their release on creditors, the enterprise valuations and creditor recoveries under the Plan.

Finally, the Plan includes releases by the **Debtors** of claims they may have against numerous debtor and non-debtor third parties – for no consideration to the Estate. Any recoveries on such claims would inure to the benefit of the Estate, further enhance the enterprise values and, hence, improve the recoveries to the Genesis 2005 Noteholders. The Proponents, however, provide no disclosure about these potential claims, the potential recoveries therefor or the reasons justifying their release. Nor do they make any representations about what they have done – if anything – to investigate the existence of such claims and assess their viability.

These Estate claims [which inure derivatively to its creditors] include not only preferences and other avoidance actions typical in large Chapter 11 cases, but also potential significant claims of the Estate against the Senior Lenders arising out of their dealings with the two sets of Debtors as though they were one when it was convenient and as separate when it was not, particularly during the restructuring of their debts at both the Genesis and Multicare debtors within the year prior to the filing of the Debtors' Chapter 11 cases.[1] On numerous occasions, during these

[1] For example, the Debtors' public filings, including filings with the Securities and Exchange Commission, disclose that in the summer of 1999 – within the year prior to the Debtors' commencement of these Chapter 11 cases – while Multicare was in serious distress, the Senior Lenders loaned additional funds to Genesis at substantially increased rates and fees and for additional security, which funds appear to have ultimately been used by Multicasre to pay down Multicare's debts owed to the Senior Lenders – effectively enabling the Senior Lenders to transfer to the stronger Genesis credit their distressed Multicare claims. By early 2000, Genesis was paying nothing to its subordinated lenders, while Multicare was making payments to its

proceedings and prior to their commencement, Mr. Grimes has raised these concerns with representatives of Genesis and demanded that they pursue them.

The Plan also states that Senior Lender claims are not subject to setoff, without disclosing why that is justifiable, what claims might be setoff against them and that such claims might include claims for lender liability and other causes of action whose successful pursuit would result in recoveries beneficial to other creditors.

## III. THE RELEASE OF INTER-COMPANY CLAIMS UNDER THE PLAN IS IMPROPER AND NOT ADEQUATELY DISCLOSED

The Plan also provides that claims that Genesis holds against Multicare are to be released and expunged. The Disclosure Statement fails to adequately disclose the value of these claims to Genesis creditors, fails to discuss whether an offset of the intercompany claims would result in a net benefit to the Genesis Estate and fails to justify their release. The release of claims owing to Genesis from Multicare is particularly troubling in light of concerns that the released intercompany claims represent funds lent to Genesis by the Senior Lenders in the summer of 1999 at higher interest rates and fees and for enhanced security, which funds thereafter were transferred by Genesis to Multicare for less than fair consideration to Genesis to retire indebtedness owed by illiquid Multicare to the Senior Lenders, as more fully discussed in footnote 1 herein.

---

senior subordinated lenders. This information is not disclosed in the Debtors' Disclosure Statement. The Debtors also do not disclose that the Senior Lenders of Genesis historically were the same as the Senior Lenders of Multicare. In addition, it appears that, even though they were separate credits, due to a stapling agreement, the Senior Lenders could not trade these credits apart from one another. This information is not disclosed in the Disclosure Statement, nor is there any discussion of whether the Debtors or their respective Committees have made any investigation into the implication of these and other issues for claims assertable to the benefit of the estates and their creditors.

## IV. THE FORGIVENESS OF LOANS TO OFFICERS AND DIRECTORS IS IMPROPER AND NOT ADEQUATELY DISCLOSED

The Plan also proposes to forgive loans Genesis made to its officers and directors – for no consideration to the Estate. The Disclosure Statement, however, provides no disclosure about these loans and does not discuss the impact such forgiveness might have on Genesis, including tax consequences in the event that the loans were used in connection with securities.

## V. THE DISCLOSURE STATEMENT INADEQUATELY DISCLOSES THE POTENTIAL PAYMENT OF INTEREST ON INTEREST ON THE CLAIMS OF THE SENIOR LENDERS

The Disclosure Statement at the top of page 17 describes a re-allocation of postpetition payments that have been received by the Senior Lenders during the bankruptcy proceedings, in the event that the valuation of the Genesis Debtors proves to be higher than asserted by the Disclosure Statement. The Disclosure Statement states that the amount of such payments made to the Senior Lenders postpetition as of June 30, 2001 is $195,979,000.

The Disclosure Statement further indicates that, if the valuation of Genesis is greater than asserted, the Genesis Senior Lender Claims would include postpetition interest. Moreover, the $195,979,000+ in postpetition payments they will have received would be allocated to repay the Tranche II facility, prepetition interest, and approximately $112,000,000 of postpetition interest. However, the Disclosure Statement fails to explain the basis for these enhancements, justify their propriety, or describe the impact they will have on recoveries to junior creditors. There also is no discussion of whether the Senior Lenders would be receiving interest on interest by virtue of the enhancement and, if so, the entitlement to and appropriateness of such treatment. Arguably, at least $83 million ($195 million minus $112 million) should be accounted for.

## VI. THE CLASSIFICATION OF GENESIS 2005 NOTEHOLDER CLAIMS IS IMPROPER AND NOT ADEQUATELY DISCLOSED

Section 1122(a) permits the placement of a claim or interest in a particular class "**only if** such claim or interest is substantially similar to the other claims or interests of such class." 11 U.S.C. § 1122(a) (emphasis added). The Plan classifies in one class holders of four (4) different series of senior subordinate Genesis debt. However, Class G5 is not internally homogenous. The claims of the holders of Genesis 2005 Notes are significantly different from those of the holders of the other series of debt in that class.

In addition to holding notes having different rates and maturities, the Genesis 2005 Noteholders possess claims against Genesis – and potentially the Senior Lenders – that are not held by the other holders of Genesis senior secured notes. These additional claims arise out of the breach of certain enhanced protections against the incurrence of later indebtedness that the holders of the other senior secured debt did not enjoy under the terms of their notes.

Accordingly, the classification scheme is improper. The claims of the holders of Genesis 2005 Notes should be separated out and re-classified in a separate class. In addition, the differences of the claims of such holders – and their entitlement to separate, and indeed preferred, treatment – should be adequately disclosed in the Disclosure Statement.

## VI. THE SUBSTANTIVE CONSOLIDATION EFFECTUATED BY THE PLAN IS IMPROPER AND NOT ADEQUATELY DISCLOSED

The Proponents claim to effect through the Plan a rather innocent sounding "deemed" consolidation of the Debtors and to do so solely intra-murally with each Debtor body. However, the consolidation effectuated by the Plan is far more pervasive than disclosed. Contrary to the Proponents' assertions, the Plan effects a pre-merger **substantive** consolidation of Genesis and Multicare – improperly and to the detriment of the Genesis 2005 Noteholders. The Proponents must disclose the true nature of the consolidation caused by the Plan and explain the impact on the Estates and their creditors. The Proponents must also set forth in the Disclosure Statement the legal requirements for such a consolidation and the reasons why the Plan should be sustained thereunder. Finally, the Proponents should be required to disclose the impact on creditors if the substantive consolidation is **not** permitted to go forward.

While the Plan contemplates the ultimate eventual merger of the two sets of Debtors **post-confirmation**, that does not legitimate otherwise illegitimate substantive consolidation of the two sets of Debtors – and their creditors and claims – for the purposes of distributions pursuant to the Plan.

## VII. THE PROPERTY TO BE DISTRIBUTED IS NOT ADEQUATELY DISCLOSED

Finally, the Disclosure Statement does not adequately describe the securities to be issued to creditors under the Plan with sufficient information to enable recipients reasonably to assess their value. It, therefore, is not possible for creditors to determine whether the value of the securities is underestimated, thereby increasing the deficiencies and justifying the proposed treatment of the Genesis 2005 Noteholders under the Plan.

## CONCLUSION

WHEREFORE, for the above reasons, Mr. Grimes respectfully requests that the Court: (1) either (a) decline to approve the adequacy of the Disclosure Statement or (b) in the alternative, order the Proponents to modify the Disclosure Statement to cure the defects identified by this Objection; or (c) if the Court determines to approve the Proponent's Disclosure Statement without curing all of the defects identified by this Objection, authorize Mr. Grimes to include with the dissemination of the Disclosure Statement, Plan and Ballots a Counter-Statement in Opposition to Plan setting forth the bases for his opposition and his encouragement that creditors vote to reject the Plan; and (2) provide Mr. Grimes with such other and further relief as may be just and proper.

SMITH, KATZENSTEIN & FURLOW, LLP

Selinda A. Melnik

Selinda A. Melnik (Bar No. 4032)
David A. Jenkins (Bar No. 932)
The Corporate Plaza
800 Delaware Avenue
PO Box 410
Wilmington, DE 19899 (Courier 19801)
Tel: (302) 652-8400
Fax: (302) 652-8405

June 29, 2001

Attorneys for Charles L. Grimes

**CERTIFICATE OF SERVICE**

I hereby certify that on this **29nd** day of **June, 2001**, a copy of the foregoing **Objection of Creditor Charles L. Grimes to Debtors' Joint Motion for Order Approving Disclosure Statement** was served on the following by facsimile on out-of state counsel and by hand on local counsel:

**VIA HAND DELIVERY**

Mark D. Collins, Esquire
Richards, Layton & Finger, P.A.
One Rodney Square, 8th Floor
Wilmington, DE 19801

**VIA FACSIMILE**

Gary T. Holtzer, Esquire
Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153
Fax: 212-310-8007

**VIA HAND DELIVERY**

Robert S. Brady, Esquire
Young Conaway Stargatt & Taylor, LLP
1100 North Market St., 11th Floor
P.O. Box 391
Wilmington, DE 19899-0391

**VIA FACSIMILE**

Paul V. Shalhoub, Esquire
Willkie Farr & Gallagher
787 Seventh Avenue
New York, NY 10019-6099
Fax: 212-728-8111

**VIA HAND DELIVERY**

Teresa K.D. Currier, Esquire
Klett Rooney Lieber & Schorling
The Brandywine Building
1000 West Street, Suite 1410
Wilmington, DE 19801

**VIA FACSIMILE**

Richard Toder, Esquire
Morgan Lewis & Bockius LLP
101 Park Avenue
New York, NY 10178-0060
Fax: 212-309-6273

**VIA HAND DELIVERY**

Laura Davis Jones, Esquire
Rachel Lowy, Esquire
Pachulski Stang Ziehl Young & Jones P.C.
919 N. Market Street, 16th Floor
P.O. Box 8075
Wilmington, DE 19899-8705

**VIA FACSIMILE**

Lisa Beckerman, Esquire
Akin Gump Strauss Hauer & Feld LLP
590 Madison Avenue
New York, NY 10022
Fax: 212-872-1002

MCM4119 WPD

**VIA HAND DELIVERY**

Mark Minuti, Esquire
Saul Ewing Remick & Saul
222 Delaware Ave., Ste. 1200
P.O. Box 1266
Wilmington, DE 19899

**VIA FACSIMILE**

David S. Rosner, Esquire
Kasowitz Benson Torres & Friedman
1633 Broadway
New York, NY 10019
Fax: 212-506-1800

**VIA FACSIMILE**

Joseph McMahon, Esquire
Office of the U.S. Trustee
601 Walnut Street, Suite 950 West
Curtis Center
Philadelphia, PA 19106
Fax: 215-597-5795

Selinda A. Melnik

MCM4119.WPD

FILED
2001 JUL -2 PM 5:46
CLERK
US BANKRUPTCY COURT
DISTRICT OF DELAWARE

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| GENESIS HEALTH VENTURES INC., *et al.*, | : | Case No. 00-2692 (JHW) |
| Debtors. | : | (Jointly Administered) |
| In re: | : | Chapter 11 |
| MULTICARE AMC, INC., *et al.*, | : | Case No. 00-2494 (JHW) |
| Debtors. | : | (Jointly Administered) |

**OBJECTION BY GMS GROUP LLC**
**TO APPROVAL OF DISCLOSURE STATEMENT**
**FOR DEBTORS' JOINT PLAN OF REORGANIZATION**

**TO THE HONORABLE JUDITH H. WIZMUR**
**UNITED STATES BANKRUPTCY JUDGE:**

GMS Group LLC, on behalf of itself and its customers (collectively, "GMS"), by its counsel, LeBoeuf, Lamb, Greene & MacRae, L.L.P. and The Bayard Firm, hereby objects (the "Objection") to Court approval of the disclosure statement (the "Disclosure Statement") filed by Genesis Health Ventures Inc. et al. (collectively, "Genesis") and Multicare AMC, Inc. et al. (collectively, "Multicare" and, together with Genesis, the "Debtors") in connection with their Joint Plan of Reorganization (the "Plan"), and respectfully sets forth as follows:

1918

## SUMMARY OF OBJECTIONS

1. GMS objects to Court approval of the Disclosure Statement on the grounds that the Debtors will be unable to confirm the Plan[1] because (a) it is not "fair and equitable" in accordance with section 1129(b) of the Bankruptcy Code, (b) contrary to the Debtors' contentions, the Plan constitutes a substantive consolidation of the Genesis and Multicare cases to the prejudice of Genesis creditors and (c) the releases granted in favor of management and other agents of the Debtors are improper. Specifically, the Plan is not "fair and equitable" because, as described below, it provides the Genesis Senior Lenders and the Multicare Senior Lenders (as such entities are defined in the Glossary to the Disclosure Statement and which entities are substantially the same institutions in each case) with greater than a 100% recovery on account of their allowed claims while providing junior classes of claims with a mere fractional recovery. In addition, the Plan constitutes a substantive consolidation of the Genesis Debtors[2] with the Multicare Debtors, for purposes of Plan distributions, by misallocating value to Reorganized Multicare, for distribution to Multicare creditors, that properly is allocable to Reorganized Genesis for distribution to Genesis creditors. Accordingly, value properly attributable to the Genesis junior classes is being used to defray the losses by the Multicare Senior Lenders that are substantially the same entities as the Genesis Senior Lenders. Finally, the Plan releases that are to be granted in favor of the Debtors'

---

[1] GMS hereby specifically reserves its right to raise and present testimony, at a plan confirmation hearing, with respect to all issues concerning confirmability of the Plan including, without limitation, the issues raised herein, in the event that the Court approves the Disclosure Statement now or in the future and schedules a confirmation hearing in connection with the Plan.

[2] Unless otherwise defined, all capitalized terms herein have the meaning ascribed to them in the Plan.

management and agents represent extraordinary relief that is not justified under applicable law.

2. The Disclosure Statement does not provide adequate information, pursuant to section 1125(a) of the Bankruptcy Code, sufficient to enable a hypothetical reasonable investor typical of holders of claims or interests to make an informed judgment about the Plan with respect to these very serious confirmation issues that result in greater than 100% recoveries by the Genesis and Multicare Senior Lenders at the expense of junior classes and the diversion of value from Genesis to Multicare to the prejudice of Genesis creditors. Moreover, the Disclosure Statement fails to address additional issues that relate to the relative value received and to be received under the Plan by creditors of Genesis including, without limitation, the effect of certain tax attributes such as net operating loss carryforwards on EBITDA, value and, ultimately, creditor recoveries.

**BACKGROUND**

3. GMS is the holder of (a) $51,514,000 face amount of 9-3/4% Senior Subordinated Notes due 2005 pursuant to an indenture, dated as of June 15, 1995, between Genesis and State Street Bank and Trust Company as indenture trustee, (b) $50,205,000 face amount of 9-1/4% Senior Subordinated Notes due 2006 pursuant to an indenture, dated as of October 7, 1996, between Genesis and State Street Bank and Trust Company as indenture trustee, and (c) $70,425,000 face amount of 9-7/8% Senior Subordinated Notes due 2009 pursuant to an indenture, dated as of December 23, 1998, between Genesis and The Bank of New York as indenture trustee. Accordingly, GMS and its customers hold approximately $172 million in Genesis bonds and are Class G5 creditors of Genesis.

## PART I
## INADEQUACY OF THE PLAN[3]

4. The Plan is not confirmable because (a) it is not "fair and equitable" in accordance with section 1129(b) of the Bankruptcy Code, (b) it constitutes a substantive consolidation of the Genesis and Multicare cases to the prejudice of Genesis creditors and (c) the releases granted in favor of management and other agents of the Debtors is improper.

### The Plan is not Fair and Equitable

5. The Plan is not "fair and equitable", as required under section 1129(b) of the Bankruptcy Code, because the Plan is specifically designed to maximize the recoveries of the Genesis Senior Lenders and the Multicare Senior Lenders at the expense of all other junior creditors. As a result, contrary to the Debtors' assertions in sections II C and D of the Disclosure Statement, the Genesis Senior Lender Claims and the Multicare Senior Lender Claims will receive a greater than 100% recovery while junior classes of claims, including Class G5, will receive only a fractional recovery on account of their claims. Moreover, in determining whether a plan is fair and equitable, the court may look beyond the enumerated standards of section 1129. *See In re MCorp Fin., Inc.*, 137 B.R. 219, 235 (Bankr. S.D. Tex. 1992)(holding that a plan of reorganization was not fair and equitable because the senior class would receive more than full compensation for its claims after the effective date upon liquidation of a litigation trust to which they were entitled under the plan); *In re P.J. Keating Co.*, 168 B.R. 464, 468 (Bankr. D. Mass.

---

[3] As set forth earlier, GMS expressly reserves all of its rights to raise any and all plan confirmation issues at a hearing on Plan confirmation should the Court approve the Disclosure Statement.

1994)(holding that projections of future cash flow from operations under a Plan may be used to value the relevant securities in the Debtor).

6. Specifically, the Genesis Senior Lender Claims, constituting Class G2, will receive $99,923,000 in New Senior Notes and 30,577,814 shares of New Common Stock representing approximately 74.58% of the total shares of New Common Stock to be issued and outstanding as of the effective date of the Plan in addition to approximately $195,979,000 in cash paid prior to June 30, 2001 in connection with cash collateral stipulations and New Convertible Preferred Stock possessing an aggregate liquidation preference of $31 million. See Section II C of the Disclosure Statement. Moreover, in connection with the merger of Genesis and Multicare, the Multicare Senior Lender Claims, constituting Class M2, will receive $147,682,000 in New Senior Notes and 8,751,980 shares of New Common Stock representing approximately 21.35% of the total shares of New Common Stock to be issued and outstanding as of the effective date of the Plan in addition to $25 million in cash and New Convertible Preferred Stock with an aggregate liquidation preference of $11.6 million.[4] See Section II C of the Disclosure Statement. Pursuant to the terms of the Plan, Classes G2 and M2 are the only classes of claims that will receive New Convertible Preferred Stock and New Senior Notes under the Plan, while all other classes of claims receiving distributions under the Plan (other than secured, administrative and priority claimants), will receive a minority share of New Common Stock and New Warrants.

---

4 Pursuant to the merger of Genesis and Multicare under the Plan, the New Multicare Stock issued by Reorganized Multicare will be exchanged for $147,682,000 of New Senior Notes issued by Reorganized Genesis and shares of New Convertible Preferred Stock issued by Reorganized Genesis having an aggregate liquidation preference of $11,600,000, to be distributed to holders of allowed claims in Multicare Class M2, and 8,825,774 shares of New Common Stock issued by Reorganized Genesis, to be distributed to holders of allowed claims in Multicare Classes M2 and M4. See section 5.2 of the Plan and, as applicable, the definitions set forth in section 1A of the Plan.

7. Thus, Reorganized Genesis is being allocated significantly less debt, in the form of New Senior Notes, than Multicare, notwithstanding the Debtors' own assessment of the enterprise value of Genesis[5] as being approximately three times the enterprise value of Multicare ($1,125,000,000 in the case of Genesis versus $400,000,000 in the case of Multicare), see Section II D of the Disclosure Statement, and their description of Genesis as historically possessing an EBITDA that is approximately four times the historical EBITDA possessed by Multicare (according to the Debtors' income statements dated March 31, 2001) as well as a projected EBITDA that is approximately three times the projected EBITDA of Multicare (according to the Debtors' five year projections). See Sections IV B and C of the Disclosure Statement.

8. The fact that the Plan is allocating only approximately 40% of the New Senior Notes to Reorganized Genesis, while it is allocating approximately 60% of the New Senior Notes to Reorganized Multicare, a company possessing approximately one-fourth the enterprise value and one-third the EBITDA of Reorganized Genesis, according to the Debtors' analysis, is unusual given the fact that banks generally prefer to be taken out with cash and, where that is impossible, with relatively risk free senior debt. The fact that the Plan does not allocate the senior debt being created in the Reorganized Debtors to reflect the EBITDA attributed by the Debtors to Reorganized Genesis and Reorganized Multicare respectively, for the purpose of distributing cash or replacement senior secured debt to the Genesis Senior Lenders and the Multicare Senior Lenders respectively

---

[5] GMS believes that the Debtors have significantly undervalued the entire enterprise by utilizing an unreasonably low EBITDA multiplier leading to unreasonably low market capitalization compared to similarly situated companies engaged in the same business. Moreover, the GMS analysis of the appropriate amount of debt to be allocated between Genesis and Multicare should reflect a 78%-22% split based upon the actual earnings and valuations in the Plan.

(leaving a larger share of New Common Stock for distribution to junior classes of claims), is explained, however, by the value that will be realized through ownership of the New Common Stock after the effective date.

9. Specifically, utilization of a reasonable EBITDA multiple given the Debtors' historical and projected performance, and based upon the Debtors' own projections, should yield substantially greater than 100% recoveries to the Genesis Senior Lenders and the Multicare Senior Lenders within one year after the effective date of the Plan, while junior classes should receive only marginally larger fractional portions of their allowed claims notwithstanding the anticipated increase in the Debtors' market capitalization. This recovery by the Genesis and Multicare Senior Lenders is directly attributable to their proposed ownership of a disproportionate number of shares of New Common Stock of Reorganized Genesis given the debt levels that Reorganized Genesis could reasonably be expected to carry. While it is true that under the Plan's debt allocation, the Multicare Senior Lenders receive less New Common Stock than they would be expected to receive in a fair allocation between the companies, the disproportionate increase in the number of shares received by the Genesis Senior Lenders under the Plan's allocation scheme more than counteracts the effect of the smaller allocation of shares to be received by the Multicare Senior Lenders. The Genesis Senior Lenders are substantially the same entities as the Multicare Senior Lenders. Accordingly, it becomes obvious, as discussed in the next section of this Objection, that value properly attributable to the Genesis junior classes is being provided to the Genesis Senior Lenders to defray the losses by the Multicare Senior Lenders that are substantially the same entities as the Genesis Senior Lenders.

<u>The Plan Results in an Improper Substantive Consolidation</u>

10. Contrary to the assertions made in the Disclosure Statement, the Plan does not merely constitute a "deemed" consolidation of the Genesis Debtors into a single entity and the Multicare Debtors into a single entity for purposes of distributions under the Plan. Instead, the effect of the merger of Reorganized Genesis with Reorganized Multicare and the allocation of debt and equity set forth in the Plan results in a substantive consolidation of the Genesis Debtors with the Multicare Debtors, for purposes of Plan distributions, that prejudices the creditors of Genesis contrary to the requirements for substantive consolidation. Specifically, the merger diverts value, in the form of New Common Stock issued by Reorganized Genesis, from the Genesis junior classes to the Genesis Senior Lenders, for the purpose of defraying the losses by Multicare Senior Lenders that are substantially the same entities as the Genesis Senior Lenders in consideration for New Multicare Stock which does not possess sufficient value to justify the level of New Senior Notes and New Common Stock (as well as the other consideration being provided by Reorganized Genesis) transferred to Reorganized Multicare on behalf of its Senior Lenders (who are the only Multicare creditors receiving any significant value in the form of Plan distributions).

11. Substantive consolidation should be contemplated cautiously and used only in extreme situations. *Bracaglia v. Manzo (In re United Stairs Corp.)*, 176 B.R. 359, 368-69 (Bankr. D.N.J. 1995). In balancing the equities of a specific case, a court must "weigh the economic prejudice of continued debtor separateness against the economic prejudice of substantive consolidation." *Bracaglia*, 176 B.R. at 369. Courts within the Third Circuit have adopted a combination of tests to determine whether

substantive consolidation is appropriate. Courts may require a demonstration (a) of a necessity for substantive consolidation or a harm to be avoided by its use, and (b) that the benefits of substantive consolidation outweigh the harm to objecting creditors. *Raslavich v. Ira S. Davis Storage Co. (In re Ira S. Davis, Inc.)*, No. 92-14259S, 1993 Bankr. LEXIS 1383, at *16 (Bankr. E.D. Pa. 1993); *Bruce Energy Centre Ltd. v. Orfa Corp. of America (In re Orfa Corp. of Philadelphia)*, 129 B.R. 404, 414 (Bankr. E.D. Pa. 1991); *In re F.A. Potts & Co.*, 23 B.R. 569, 572 (Bankr. E.D. Pa. 1982). Courts may also examine (a) whether creditors did not rely on the entities separate identities, but dealt with them as a single unit, or (b) whether the debtors' affairs were so entangled that consolidation will benefit all creditors. *Raslavich*, 1993 Bankr. LEXIS 1383, at *18 (citing *In re Augie/Restivo Baking Co.*, 860 F.2d 515, 518 (2d Cir. 1988)). GMS submits that the facts in these chapter 11 cases, particularly the "synergies" alleged in section II A of the Disclosure Statement and the "efficiencies" alleged in section VIII A of the Disclosure Statement do not warrant substantive consolidation in light of the significant prejudice to Genesis creditors resulting from the allocation of debt and equity in connection with the merger.

<u>**The Release of the Debtors' Management and Agents is Unwarranted**</u>

12. Section 5.10 of the Plan provides that, on the effective date, the respective officers, directors and agents of the Debtors, as well as the administrative agent for the entities that comprise the Multicare and Genesis Senior Lenders, will be released from all claims against them in their representative capacities. Moreover, section VIII G of the Disclosure Statement, which references these releases, does not even attempt to justify the granting of the releases under existing law.

13. Specifically, the general rule in the Third Circuit is that third-party releases are permissible only with the consent of the affected creditors. *Gillman v. Continental Airlines (In re Continental Airlines)*, 203 F.3d 203, 214 n.11 (3d Cir. 2000); *In re Zenith Elec. Corp.*, 241 B.R. 92, 111 (Bankr. D. Del. 1999); *In re West Coast Video Enters., Inc.*, 174 B.R. 906, 911 (Bankr. E.D. Pa. 1994). Although some Third Circuit courts have permitted third-party releases without creditor consent, they have done so only under "exceptional or extraordinary circumstances." *In re American Family Enters.*, 256 B.R. 377, 406 (D.N.J. 2000); *In re Int'l Wireless Communications Holdings, Inc.*, No. 98-2007, 1999 Bankr. LEXIS 1853, at *25-26 (Bankr. D. Del. 1999). Before such a release is permitted, the court must find "(1) an identity of interest between the debtor and the third party, such that a suit against the non-debtor is, in essence, a suit against the debtor or will deplete assets of the estate; (2) substantial contribution by the non-debtor of assets to the reorganization; (3) the essential nature of the injunction to the reorganization is such that, without the injunction, there is little likelihood of success; (4) an agreement by a substantial majority of creditors to support the injunction, specifically if the impacted class or classes 'overwhelmingly' votes to accept the plan; and (5) a provision in the plan for payment of all or substantially all of the claims of the class or classes affected by the injunction." *Int'l Wireless*, 1999 Bankr. LEXIS 1853, at *25-26 (citing *In re Master Mortgage Inv. Fund, Inc.*, 168 B.R. 930, 934-37 (Bankr. W.D. Mo. 1994)). As set forth earlier, the Debtors have not made any showing whatsoever to establish that the releases are warranted.

## PART II
## INADEQUACY OF DISCLOSURE

14. Assuming, arguendo, that the Plan deficiencies set forth above should be raised in connection with a hearing on Plan confirmation and do not constitute a basis for withholding approval of the Disclosure Statement, GMS nonetheless contends that the Disclosure Statement should not be approved to the extent that it does not provide creditors with adequate information of the kind contemplated by section 1125 of the Bankruptcy Code. These deficiencies are enumerated in the succeeding paragraphs.

15. The most obvious and glaring omission in the Disclosure Statement is the Debtors' failure to disclose the existence of the arguments that weigh against confirmation of the Plan set forth above. In an effort to avoid redundancy, GMS merely notes herein that the objections set forth in Part I above should be disclosed as information necessary for a hypothetical reasonable investor to make an informed decision whether to vote for or against the Plan. Accordingly, GMS has annexed, as Exhibit A hereto, a proposed letter to creditors summarizing why it believes the Plan should not be confirmed. GMS proposes that, should the Court approve the Disclosure Statement and authorize the solicitation of creditor votes in favor of the Plan, such approval be conditioned upon the Debtors being required to simultaneously serve Exhibit A together with the solicitation package that will be sent to creditors.

16. Sections II A and VIII A of the Disclosure Statement describe the benefits that purportedly will derive from the merger of Genesis and Multicare. The Disclosure Statement fails to disclose, however, why these purported benefits, and indeed the merger itself, cannot be realized without the misallocation of value between Reorganized Genesis and Reorganized Multicare and that this misallocation of value between the two estates

effectuates a substantive consolidation in which value attributable to Reorganized Genesis is transferred to Reorganized Multicare for the benefit of Multicare Senior Lenders.

17. Similarly, the description in section II I of the Disclosure Statement, concerning the so-called "deemed consolidation" of the Genesis Debtors into a single entity and the Multicare Debtors into a single entity, is misleading to the extent the it implies that the only form of substantive consolidation occurring in the Plan is the consolidation of Genesis Debtors with other Genesis Debtors and Multicare Debtors with other Multicare Debtors rather than the more pernicious consolidation of Genesis with Multicare that derives from the value misallocation in the Plan that benefits Multicare creditors at the expense of Genesis creditors.

18. Section VI C of the Disclosure Statement states that while the Genesis Debtors have thus far drawn approximately $180 million under their debtor in possession credit facility, the Multicare Debtors have not drawn any funds under their debtor in possession credit facility. In view of the financial information provided in the Disclosure Statement with respect to the financial strength of Genesis relative to Multicare, the Debtors should be required to disclose how it was possible for the Multicare Debtors to avoid any drawdown under their debtor in possession credit facility while the Genesis Debtors had the need to draw such a substantial amount under their own debtor in possession credit facility. Given the business relationship between the Genesis Debtors and the Multicare Debtors, this distinction in the utilization of their respective credit facilities raises questions as to whether value was further diverted from Genesis to

Multicare in the form of post-petition credit that may have been extended from Genesis to Multicare in the course of their business relationship.

19. Section X F of the Disclosure Statement is misleading to the extent that its explanation of "fair and equitable" under section 1129(b) of the Bankruptcy Code implies that the only standards that must be satisfied are those enumerated in the statute rather than the broader standard set forth in the case law cited earlier in this Objection.

20. The Disclosure Statement is deficient to the extent that a proper evaluation of the value of the New Common Stock is not possible without knowing what the tax attributes of the Debtors are worth and without an understanding of the tax treatment of the proposed restructuring to the Debtors.

21. The Disclosure Statement does not mention the amount of Genesis and Multicare net operating losses ("NOLs") which would be reduced by cancellation of indebtedness income ("COD") as a result of the Plan. If the COD is greater than the NOLs, the basis in certain assets could be reduced. Accordingly, depreciation deductions would be reduced and a greater amount of gain could be realized upon a subsequent sale of assets. In addition, the Disclosure Statement does not describe to what extent the NOLs would be limited under Section 382 of the Internal Revenue Code due to the 1999 change in control.

22. The Disclosure Statement does not quantify the amount of any built-in gains which can be offset against NOL's without limitation. Moreover, it does not mention the impact that Original Issue Discount ("OID") would have on Genesis or whether any consideration was given to freshening the NOLs with the issuance of OID

type instruments. If the New Senior Notes were issued with OID, then the Debtors would have interest deductions without the payment of cash.

23. The allocation of debt and equity under the Plan will create COD income. However, any misallocation of New Common Stock in favor of G2 creditors, as opposed to an additional debt allocation, would reduce the amount of the NOLs. If the Plan converts less debt of the G2 creditors into New Common Stock, then more NOLs would be available to offset projected taxable income. Consequently, the value of the New Common Stock may be greater if the NOLs are preserved as a result of a different allocation. In addition, the Disclosure Statement fails to explain why the G2 creditors want more stock than debt. This is especially unusual when it appears that Reorganized Genesis easily can service additional debt post-petition.

24. The Disclosure Statement does not identify what assumptions were used in determining the enterprise value of the Debtors; for example, what discount rate was used by UBS Warburg in determining the $ 1,525,000,000 enterprise value for the Debtors.

25. The tax disclosure does not explain whether other alternative reorganizations (*i.e.*, a taxable reorganization) were considered and why they were rejected. For example, a taxable reorganization would provide a step-up in basis in the assets. In addition, it is unclear how the Plan affects or restricts any future issuance of additional securities.

26. The Disclosure Statement does not provide the basis of assets held by the Debtors for federal tax purposes in order to determine any potential gain or the effect of any basis reduction.

27. Since the Disclosure Statement does not quantify the value of the NOLs, the value of the stock may be understated. It is not clear what assumptions have been placed, if any, on the value of the NOLs and if the value is assumed to be zero, why is this not explained in the Disclosure Statement.

28. It is not clear what assumptions were used in applying the Black-Scholes model for purposes of determining the value of the warrants. For example, it is unclear what volatility assumption was used for the New Common Stock. It is this volatility assumption which primarily determines the value of the warrants. If the value of the New Common Stock is expected to increase based on a 5-year projection model, it is unclear why the warrants expire only after 1 year.

WHEREFORE, GMS respectfully requests that the Court deny approval of the Disclosure Statement or, alternatively, should the Court determine that approval of the Disclosure Statement is warranted, condition such approval upon requiring the Debtors to serve Exhibit A with the solicitation package that will be sent to creditors.

Dated: Wilmington, Delaware
July 2, 2001

THE BAYARD FIRM

By: ______________________

Jeffrey M. Schlerf (DE Bar No. 3047)
Elio Battista, Jr. (DE Bar No. 3814)
222 Delaware Avenue, Suite 900
Wilmington, DE 19801
Phone: (302) 655-5000

-and-

Timothy W. Walsh (TW-7409)
Ira A. Reid (IR-0113)
LeBOEUF, LAMB, GREENE & MacRAE, L.L.P.
125 West 55th Street
New York, NY 10019
Phone: (212) 424-8000

Counsel to GMS Group LLC

# ORIGINAL




IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

2001 JUL -5 PM 1:37

CLERK
U.S. BANKRUPTCY COURT
DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| GENESIS HEALTH VENTURES INC., *et al.*, | : | Case No. 00-2692 (JHW) |
| | : | (Jointly Administered) |
| Debtors. | | |

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| MULTICARE AMC, INC., *et al.*, | : | Case No. 00-2494 (JHW) |
| Debtors. | : | (Jointly Administered) |

**SUPPLEMENT OF EXHIBIT TO OBJECTION BY GMS GROUP LLC TO APPROVAL OF DISCLOSURE STATEMENT FOR DEBTORS' JOINT PLAN OF REORGANIZATION**

1918

GMS Group LLC, on behalf of itself and its customers, by its counsel, LeBoeuf, Lamb, Greene & MacRae, L.L.P. and The Bayard Firm hereby file the attached supplement Exhibit "A" to the Objection by GMS Group LLC to Approval of Disclosure Statement for Debtors' Joint Plan of Reorganization filed with the United States Bankruptcy Court for the District of Delaware on July 2, 2001.

Dated: July 5, 2001

THE BAYARD FIRM

By: Elio Battista [signature]

Jeffrey M. Schlerf (DE Bar No. 3047)
Elio Battista, Jr. (DE Bar No. 3814)
222 Delaware Avenue, Suite 900
Wilmington, DE 19801
Phone: (302) 655-5000

-and-

ORIGINAL

FILED
JAMES ... [illegible]
1
U.S. [illegible] COURT
CAMDEN, NJ
[illegible] DEPUTY

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| In re<br>GENESIS HEALTH VENTURES, INC., *et al.*,<br>Debtors. | Chapter 11 Case No.<br>00-2692 (JHW)<br>(Jointly Administered) |
| In re<br>MULTICARE AMC, INC., *et al.*,<br>Debtors. | Chapter 11 Case No.<br>00-2494 (JHW)<br>(Jointly Administered) |

**ORDER (I) APPROVING THE FORM AND MANNER OF NOTICE OF THE DISCLOSURE STATEMENT HEARING AND THE DISCLOSURE STATEMENT; (II) ESTABLISHING A RECORD DATE; (III) ESTABLISHING NOTICE AND OBJECTION PROCEDURES FOR CONFIRMATION OF THE PLAN; (IV) APPROVING SOLICITATION PACKAGES AND PROCEDURES FOR DISTRIBUTION; (V) APPROVING FORMS OF BALLOTS AND ESTABLISHING PROCEDURES FOR VOTING ON THE PLAN; AND (VI) AUTHORIZING THE RETENTION OF POORMAN-DOUGLAS CORPORATION AS VOTING AGENT**

01 JUL 13 AM 11:57

Upon the motion, dated June 18, 2001 (the "Motion"), of Genesis Health Ventures, Inc. and certain of its direct and indirect subsidiaries, as debtors and debtors in possession (collectively, the "Genesis Debtors") and Multicare AMC, Inc., The Multicare Companies, Inc. and certain of their direct and indirect subsidiaries, as debtors and debtors in possession (collectively, the "Multicare Debtors" and, together with the Genesis Debtors, the "Debtors"), seeking an order (i) approving the form and manner of notice of the disclosure statement hearing; (ii) establishing, for voting purposes only, a

1990

1973

2333960_1.DOC

record date for the holders of claims, (iii) establishing notice and objection procedures for confirmation of the Debtors' joint plan of reorganization, dated July 6, 2001 (as the same has been or may be amended, the "Plan"), (iv) approving the Solicitation Packages (as defined below) and procedures for distribution, (v) approving forms of ballots and establishing procedures for voting on the Plan, and (vi) authorizing the retention of Poorman-Douglas Corporation ("Poorman-Douglas") as voting agent, as more fully set forth in the Motion; and it appearing that the Court has jurisdiction over this matter; and due and sufficient notice of the Motion and this order having been provided, and it appearing that no other or further notice need be provided; and it further appearing that the relief requested in the Motion is in the best interests of the Debtors, their creditors, and all parties in interest; and the Court having determined that the legal and factual basis set forth in the Motion establish just cause for the relief granted herein; and

IT IS HEREBY FOUND THAT:

A. The Debtors' disclosure statement for the Plan, dated July 6, 2001 (as the same has been or may be amended, the "Disclosure Statement") contains adequate information within the meaning of section 1125 of title 11 of the United States Code (the "Bankruptcy Code").

B. The forms of the ballots (the "Ballots") and master ballots (the "Master Ballots") annexed hereto as Exhibit "C" are sufficiently consistent with Official Form No. 14 and adequately address the particular needs of these chapter 11 cases and are appropriate for each class of claims or interests entitled under the Plan to vote to accept or reject the Plan.

C. Ballots need not be provided to (i) unimpaired claims in Classes G1 (Genesis Other Secured Claims) and M1 (Multicare Other Secured Claims), (ii) Classes G3 (Genesis Priority Non-Tax Claims), G6 (Genesis Intercompany Claims), M3 (Multicare Priority Non-Tax Claims), and M6 (Multicare Intercompany Claims) because they are unimpaired and, therefore, conclusively presumed to accept the Plan, and (iii) Classes G7 (Genesis Punitive Damage Claims), G8 (Genesis Series G Preferred Stock Interests), G9 (Genesis Series H Preferred Stock Interests), G10 (Genesis Series I Preferred Stock Interests), G11 (Genesis Common Stock Interests), M7 (Multicare Punitive Damage Claims), and M8 (Multicare Common Stock Interests) because they will retain and receive no property under the Plan and, therefore, are deemed to reject the Plan.

D. The period, set forth below, during which the Debtors may solicit acceptances to the Plan is a reasonable period of time for creditors to make an informed decision to accept or reject the Plan.

E. The procedures for the solicitation and tabulation of votes to accept or reject the Plan (as more fully set forth in the Motion) provide for a fair and equitable voting process and are consistent with section 1126 of the Bankruptcy Code.

F. The procedures set forth below regarding notice (the "Confirmation Hearing Notice") to all creditors of the time, date, and place of the hearing to confirm the Plan (the "Confirmation Hearing") and the contents of the Solicitation Package comply with Rules 2002 and 3017 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and constitute sufficient notice to all interested parties.

NOW, THEREFORE, IT IS:

ORDERED that the Motion is GRANTED; and it is further

ORDERED that the Disclosure Statement is APPROVED; and it is further

ORDERED that the form and manner of notice of the time set for filing objections to, and the hearing to consider the approval of, the Disclosure Statement was adequate; and it is further

ORDERED that the Ballots (and Master Ballots as appropriate) are to be distributed to (i) the holders of impaired claims in Classes G1 (Genesis Other Secured Claims) and M1 (Multicare Other Secured Claims), and (ii) holders of claims in Classes G2 (Genesis Senior Lender Claims), G4 (Genesis General Unsecured Claims), G5 (Genesis Senior Subordinated Note Claims), M2 (Multicare Senior Lender Claims), M4 (Multicare General Unsecured Claims), and M5 (Multicare Senior Subordinated Note Claims) under the Plan, which Classes are entitled to vote to accept or reject the Plan; and it is further

ORDERED that, with respect to the Ballots to be distributed to Classes G5 (Genesis Senior Subordinated Note Claims), M1-7 (Multicare Other Secured Claims -- Point Pleasant Bonds) (the "Point Pleasant Bonds"), and M5 (Multicare Senior Subordinated Note Claims), the Debtors are authorized to send Ballots to record holders of the Genesis Senior Subordinated Note Claims, the Point Pleasant Bonds, and the Multicare Senior Subordinated Note Claims, including, without limitation, brokers, banks, dealers, or other agents or nominees (collectively, the "Master Ballot Agents"), and each Master Ballot Agent shall be entitled to receive reasonably sufficient copies of Ballots to distribute to the beneficial owners of claims for whom such Master Ballot Agent holds the Genesis Senior Subordinated Note Claims, the Point Pleasant Bonds, and

the Multicare Senior Subordinated Note Claims, and the Debtors shall be responsible for each such Master Ballot Agent's reasonable costs and expenses associated with the distribution of copies of Ballots to the beneficial owners of such claims and tabulation of the Ballots; and it is further

ORDERED that each Master Ballot Agent shall receive returned Ballots from the beneficial owners, tabulate the results, and return, *inter alia*, such results to Poorman-Douglas in a Master Ballot by the Voting Deadline (as defined below); and it is further

ORDERED that the Master Ballot Agents shall complete the Master Ballots according to the instructions set forth in the Master Ballots annexed hereto as Exhibit "C;" and it is further

ORDERED that a Notice of Non-Voting Status, substantially in the forms annexed hereto as Exhibits "E" and "F," is to be distributed to (i) holders of unimpaired claims in Classes G1 and M1, and (ii) all holders of claims or interests in Classes G3, G6, G7, G8, G9, G10, G11, M3, M6, M7, and M8 under the Plan, which Classes are not entitled to vote to accept or reject the Plan; and it is further

ORDERED that the Debtors shall distribute Notices of Non-Voting Status, substantially in the form annexed hereto as Exhibit "F," to the holders of the Debtors' publicly traded stock as reflected in the records maintained by the Debtors' Transfer Agent(s) as of the close of business on the Record Date, which include, without limitation the brokers, dealers, commercial banks, trust companies, or other nominees (collectively, the "Nominee Stockholders") through which the beneficial owners (collectively, the "Beneficial Stockholders") hold stock, and each Nominee Stockholder shall be entitled to

receive reasonably sufficient copies of Notices of Non-Voting Status to distribute to the Beneficial Stockholders for whom such Nominee Stockholders hold stock, and the Debtors shall be responsible for each such Nominee Stockholders' reasonable costs and expenses associated with the distribution of copies of Notices of Non-Voting Status to the Beneficial Stockholders; and it is further

ORDERED that the Nominee Stockholders shall distribute the Notices of Non-Voting Status to the Beneficial Stockholders within three (3) days of receipt of such notices from the Debtors; and it is further

ORDERED that all Ballots and Master Ballots must be properly executed, completed, and delivered to Poorman-Douglas (i) by mail, in the return envelope provided with each Ballot, (ii) by overnight courier, or (iii) by personal delivery so that they are received by Poorman-Douglas no later than 5:00 p.m., Pacific Time, on August 17, 2001 (the "Voting Deadline"); and it is further

ORDERED that, solely for purposes of voting to accept or reject the Plan and not for the purpose of the allowance of, or distribution on account of, a claim and without prejudice to the rights of the Debtors in any other context, each claim within a class of claims entitled to vote to accept or reject the Plan is to be temporarily allowed in an amount equal to the amount of such claim as set forth in a timely filed proof of claim, or, if no proof of claim was filed, the amount of such claim as set forth in (i) the Genesis Debtors' schedules of assets and liabilities dated October 19, 2000, or any amendment thereof or (ii) the Multicare Debtors' schedules of assets and liabilities dated October 19, 2000, or any amendment thereof (collectively, the "Schedules"), provided that:

a. If a claim is deemed allowed in accordance with the Plan, such claim is allowed for voting purposes in the deemed allowed amount set forth in the Plan, notwithstanding subparagraph (e) of this decretal paragraph;

b. If a claim for which a proof of claim has been timely filed is marked as contingent, unliquidated, or disputed, the Debtors propose that such claim be temporarily allowed for voting purposes only, and not for purposes of allowance or distribution, at $1.00;

c. If a claim has been estimated or otherwise allowed for voting purposes by order of the Court, such claim is temporarily allowed in the amount so estimated or allowed by the Court for voting purposes only, and not for purposes of allowance or distribution;

d. If a claim is listed in the Schedules as contingent, unliquidated, or disputed, or scheduled in the amount of zero, and a proof of claim was not (i) filed by the applicable bar date for the filing of proofs of claim established by the Court or (ii) deemed timely filed by an order of the Court prior to the Voting Deadline, unless the Debtors have consented in writing, the Debtors propose that such claim be disallowed for voting purposes and for purposes of allowance and distribution pursuant to Bankruptcy Rule 3003(c); and

e. If the Debtors have served an objection to a claim at least ten (10) days before the Voting Deadline, the Debtors propose that such claim be temporarily disallowed for voting purposes only and not for purposes of allowance or distribution, except to the extent and in the manner as may be set forth in the objection; and it is further

ORDERED that if any claimant seeks to challenge the allowance of its claim for voting purposes in accordance with the above procedures, such claimant is directed to serve on the Debtors and file with the Court on or before the tenth (10th) day after the later of (i) service of the Confirmation Hearing Notice and (ii) service of notice of an objection, if any, to such claim, a motion for an order pursuant to Bankruptcy Rule 3018(a) temporarily allowing such claim in a different amount for purposes of voting to accept or reject the Plan; and it is further

ORDERED that as to any creditor filing a motion pursuant to Bankruptcy Rule 3018(a), such creditor's Ballot shall not be counted unless temporarily allowed by the Court for voting purposes after notice and a hearing; and it is further

ORDERED that any Ballot that is properly completed, executed, and timely returned to Poorman-Douglas but does not indicate an acceptance or rejection of the Plan, or indicates both an acceptance and a rejection of the Plan, shall not be counted; and it is further

ORDERED that if no votes to accept or reject the Plan are received with respect to a particular class, such class is deemed to have voted to accept the Plan; and it is further

ORDERED that if a creditor casts more than one Ballot voting the same claim before the Voting Deadline, the last Ballot received before the Voting Deadline is deemed to reflect the voter's intent and thus to supersede any prior Ballots; and it is further

ORDERED that creditors must vote all of their claims within a particular class under the Plan, whether or not such claims are asserted against the same or multiple Debtors, either to accept or reject the Plan and may not split their vote(s), and thus a Ballot that partially rejects and partially accepts the Plan will be deemed a vote to accept the Plan; and it is further

ORDERED that the following types of Ballots will not be counted in determining whether the Plan has been accepted or rejected: (i) any Ballot received after the Voting Deadline unless the Debtors shall have granted an extension of the Voting Deadline with respect to such Ballot; (ii) any Ballot that is illegible or contains

insufficient information to permit the identification of the claimant or interest holder; (iii) any Ballot cast by a person or entity that does not hold a claim in a class that is entitled to vote to accept or reject the Plan; (iv) any Ballot cast for a claim identified as unliquidated, contingent, or disputed for which no proof of claim was timely filed; (v) any unsigned Ballot; and (vi) any Ballot transmitted to Poorman-Douglas by facsimile; and it is further

ORDERED that the Confirmation Hearing will be held at 9:30 a.m. Eastern Time on August 28, 2001 (and August 29, 2001 if necessary); *provided, however*, that the Confirmation Hearing may be continued from time to time by the Court or the Debtors without further notice; and it is further

ORDERED that any objections to confirmation of the Plan must (i) be in writing, (ii) state the name and address of the objecting party and the nature of the claim or interest of such party, (iii) state with particularity the basis and nature of any objection or proposed modification, and (iv) be filed, together with proof of service, with the Court and served so that they are actually received no later than 4:00 p.m. Eastern Time, on August 17, 2001 by (a) the Clerk of the Court, (b) attorneys for the Genesis Debtors, (c) attorneys for the Multicare Debtors, (d) attorneys for Mellon Bank, N.A., as agent for the Genesis Debtors' prepetition senior lenders and postpetition lenders and the Multicare Debtors' prepetition senior lenders and postpetition lenders (the "Agent"), (e) attorneys for the statutory committee of unsecured creditors appointed in the Genesis Debtors' chapter 11 cases (the "Genesis Committee"), (f) attorneys for the statutory committee of unsecured creditors appointed in the Multicare Debtors' chapter 11 cases (the "Multicare

Committee"), and (g) the United States Trustee for the District of Delaware (the "U.S. Trustee"); and it is further

ORDERED that objections to confirmation of the Plan not timely filed and served in the manner set forth above shall not be considered and shall be overruled; and it is further

ORDERED that the Debtors, the Agent, the Genesis Committee, and the Multicare Committee may serve replies to such objections or proposed modifications by no later than August 24, 2001; and it is further;

ORDERED that the Confirmation Hearing Notice annexed hereto as Exhibit "B" is APPROVED; and it is further

ORDERED that July 6, 2001 shall be the Record Date for purposes of determining which creditors are entitled to vote on the Plan; and it is further

ORDERED that the Debtors are directed to mail or cause to be mailed solicitation packages containing a copy of this Order (without the exhibits annexed hereto), the Confirmation Hearing Notice, the Disclosure Statement, and the Plan (the "Solicitation Packages"), by July 18, 2001, to (i) the U.S. Trustee, (ii) attorneys for the Agent, (iii) attorneys for the Genesis Committee, (iv) attorneys for the Multicare Committee, (v) all persons or entities that filed proofs of claim on or before the date of the Disclosure Statement Notice, except to the extent a claim was expunged by prior order of the Bankruptcy Court, (vi) all persons or entities listed in the Schedules, in an amount greater than zero, as holding liquidated, noncontingent, or undisputed claims, (vii) the transfer agent(s) and registered holders of the Debtors' equity, (viii) all other parties in interest that have filed a request for notice pursuant to Bankruptcy Rule 2002 in

the Debtors' chapter 11 cases, (ix) the Securities and Exchange Commission, (x) the Internal Revenue Service, (xi) the United States Department of Justice, (xii) the Pension Benefit Guaranty Corporation, and (xiii) any other known holders of claims against or equity interests in the Debtors; *provided, however*, that the Debtors are not required to distribute copies of the Plan and Disclosure Statement to (i) any holder of an unimpaired claim in Classes G1 or M1 and (ii) any holder of a claim or interest in Classes G3, G6, G7, G8, G9, G10, G11, M3, M6, M7, or M8, unless such party makes a specific request in writing for the same; and it is further

ORDERED that in addition, holders of claims in classes entitled to vote to accept or reject the Plan shall receive, as part of their Solicitation Packages, a Ballot and a Ballot return envelope and a letter(s) recommending acceptance of the Plan from the Genesis Committee; and it is further

ORDERED that, pursuant to sections 1126(f) and (g) of the Bankruptcy Code and Bankruptcy Rule 3017(d), Solicitation Packages for holders of claims against or interests in any Debtor in a class under the Plan that is conclusively presumed to accept or is deemed to reject the Plan under section 1126(f) or (g) of the Bankruptcy Code will not include a Ballot; and it is further

ORDERED that the Debtors shall publish the Confirmation Hearing Notice not less than twenty five (25) days before the last date to object to confirmation of the Plan in the national editions of *The Wall Street Journal*, *The New York Times*, and *USA Today* and the local editions of *The Boston Globe*, *The Baltimore Sun*, *The Philadelphia Inquirer*, and *The Tampa Tribune*; and it is further

ORDERED that, with respect to addresses from which Disclosure Statement Notices were returned as undeliverable by the United States Postal Service, the Debtors are excused from mailing Solicitation Packages to those entities listed at such addresses unless the Debtors are provided with accurate addresses for such entities before July 18, 2001; and it is further

ORDERED that failure to mail Solicitation Packages to such entities will not constitute inadequate notice of the Confirmation Hearing, the Voting Deadline, or violation of Bankruptcy Rule 3017(d); and it is further

ORDERED that the Debtors are authorized to retain Poorman-Douglas as the voting agent on the terms and conditions set forth in the Balloting and Notice Estimate, a copy of which is annexed hereto as Exhibit "G" (the "Estimate"); and it is further

ORDERED that Poorman-Douglas is authorized to perform the following services as the Debtors voting agent:

(a) coordinating the printing and mailing of the Confirmation Hearing Notice;

(b) coordinating the printing of Ballots;

(c) identifying voting and non-voting creditors and equity security holders;

(d) preparing voting reports by Plan class and voting amount and maintaining all such information in a Poorman-Douglas database;

(e) printing Ballots specific to each creditor, indicating voting class under the Plan, voting amount of claim, and other relevant information;

(f) coordinating the mailing of Ballots and providing an affidavit verifying the mailing of Ballots;

(g) receiving Ballots and tabulating and certifying the votes on the Plan; and

(h) providing any other balloting-related services as the Debtors may from time to time request, including, without limitation, providing testimony at the confirmation hearing with respect to the Balloting Services and the results of the voting on the Plan; and it is further

ORDERED that, upon receipt of a reasonably detailed invoice and without the necessity of Poorman-Douglas filing a formal fee application, the Debtors are hereby authorized to compensate Poorman-Douglas in accordance with the Estimate; and it is further

ORDERED that the Debtors are authorized to take or refrain from taking any action necessary or appropriate to implement the terms of and the relief granted in this Order without seeking further order of the Court; and it is further

ORDERED that the Debtors are authorized to make nonsubstantive changes to the Disclosure Statement, the Plan, and related documents without further order of the Court, including, without limitation, changes to correct typographical and grammatical errors and to make conforming changes among the Disclosure Statement, the Plan, and any other materials in the Solicitation Package prior to their mailing.

Dated: Wilmington, Delaware
July 13, 2001

UNITED STATES BANKRUPTCY JUDGE

2333960-1

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | Chapter 11 Case No. |
| GENESIS HEALTH VENTURES INC., *et al.*, | : | 00-2692 (JHW) |
| Debtors. | : | (Jointly Administered) |
| In re: | : | Chapter 11 Case No. |
| MULTICARE AMC, INC., *et al.*, | : | 00-2494 (JHW) |
| Debtors. | : | (Jointly Administered) |

**OBJECTION BY THE GMS GROUP LLC**
**TO CONFIRMATION OF DEBTORS'**
**JOINT PLAN OF REORGANIZATION**

**TO THE HONORABLE JUDITH H. WIZMUR**
**UNITED STATES BANKRUPTCY JUDGE:**

The GMS Group LLC, on behalf of itself and its customers (collectively, "GMS"), by its counsel, LeBoeuf, Lamb, Greene & MacRae, L.L.P. and The Bayard Firm, hereby objects (the "Objection") to confirmation of the Joint Plan of Reorganization (the "Plan") filed by Genesis Health Ventures Inc. et al. (collectively, "Genesis") and Multicare AMC, Inc. et al. (collectively, "Multicare" and, together with Genesis, the "Debtors"), and respectfully sets forth as follows:

## SUMMARY OF OBJECTIONS

1. GMS objects to confirmation of the Plan on the grounds that (a) the Plan is not "fair and equitable" in accordance with section 1129(b) of the Bankruptcy Code, (b) contrary to the Debtors' contentions, the merger of Reorganized Genesis[1] with Reorganized Multicare under the Plan prejudices Genesis creditors and (c) the releases granted in favor of the Debtors' management and other third parties are improper. Specifically, the Plan is not "fair and equitable" because, as described below, it provides the Genesis Senior Lenders and the Multicare Senior Lenders (as such entities are defined in the Glossary to the Disclosure Statement For Debtors' Joint Plan of Reorganization (the "Disclosure Statement") and which entities are substantially the same institutions in each case) with greater than a 100% recovery on account of their allowed claims while providing junior classes of claims with a mere fractional recovery. In addition, the Plan merger of the Genesis Debtors with the Multicare Debtors misallocates value to Reorganized Multicare, for distribution to Multicare creditors, that properly is allocable to Reorganized Genesis for distribution to Genesis creditors. Accordingly, value properly attributable to the Genesis junior classes is being used primarily to defray the losses by the Multicare Senior Lenders that are substantially the same entities as the Genesis Senior Lenders. Finally, the Plan releases that are to be granted in favor of the Debtors' management and agents represent extraordinary relief that is not justified under applicable law.

[1] Unless otherwise defined, all capitalized terms herein have the meaning ascribed to them in the Plan.

## BACKGROUND

2. GMS is the holder of (a) $51,514,000 face amount of 9-3/4% Senior Subordinated Notes due 2005 pursuant to an indenture , dated as of June 15, 1995, between Genesis and State Street Bank and Trust Company as indenture trustee, (b) $50,205,000 face amount of 9-1/4% Senior Subordinated Notes due 2006 pursuant to an indenture, dated as of October 7, 1996, between Genesis and State Street Bank and Trust Company as indenture trustee, and (c) $70,425,000 face amount of 9-7/8% Senior Subordinated Notes due 2009 pursuant to an indenture, dated as of December 23, 1998, between Genesis and The Bank of New York as indenture trustee. Accordingly, GMS and its customers hold approximately $172 million in Genesis bonds and are Class G5 creditors of Genesis.

## THE PLAN IS NOT FAIR AND EQUITABLE

3. The Plan is not "fair and equitable", as required under section 1129(b) of the Bankruptcy Code, because the Genesis Senior Lender Claims and the Multicare Senior Lender Claims will receive, as of the effective date of the Plan, property possessing a value greater than 100% of the allowed amount of their claims, while junior classes of claims, including Class G5, will receive only a fractional recovery on account of their allowed claims, as GMS will demonstrate through the testimony of its financial advisors, Evercore Partners L.P. Specifically, GMS will demonstrate at trial that the Debtors, in their Plan, have significantly undervalued their business enterprise by utilizing an unreasonably low EBITDA multiplier, and applying this multiplier to an EBITDA that is undisputedly out of date, resulting in unreasonably low market capitalization compared to comparable companies in the same industry. In contrast,

utilization of a reasonable EBITDA multiplier and an accurate and current EBITDA, given the Debtors' historical and projected performance, as well as current trends in the health care industry, will yield greater than 100% recoveries to the Genesis Senior Lenders and the Multicare Senior Lenders when the Plan goes effective and the New Common Stock and New Warrants trade in the marketplace, while dissenting junior classes will receive only marginally larger fractional portions of their allowed claims[2].

4. The recovery by a senior class of greater than 100% of its allowed claims, while dissenting junior classes receive less than 100% of their allowed claims, renders a plan of reorganization unconfirmable on the grounds that it is not "fair and equitable" under section 1129(b) of the Bankruptcy Code. Specifically, courts have held that in order for a plan of reorganization to be "fair and equitable", the plan proponent must satisfy not only the technical elements enumerated in section 1129(b), but the plan must also be "fair and equitable" according to the literal meaning of that phrase. *See In re Bryson Properties, XVIII*, 961 F.2d 496 (4th Cir. 1992)("A plan must be fair and equitable in a broad sense, as well as in the particular manner specified in 11 U.S.C. 1129(b)(2)"); *In re Manion*, 127 B.R. 887, 890 (Bankr. N.D. Fla. 1991)("To be 'fair and equitable' under 1129(b)(1), a plan must literally be fair and equitable....Technical compliance with all the requirements in 1129(b)(2) does not assure that the plan is 'fair and equitable'....A court must consider the entire plan in the context of the rights of the

---

[2] This unfairness is compounded by the Debtors' proposed New Management Incentive Plan, pursuant to which the Debtors' management will receive approximately 10% of the New Common Stock in the form of shares and options to purchase shares of New Common Stock. While management incentives may not be uncommon, GMS submits that management incentives which include a 10% equity interest in Reorganized Genesis is outrageous when unsecured creditors are receiving mere pennies on the dollar on account of their claims and the Senior Lenders are receiving more than 100% on account of their claims.

creditors under state law and the particular facts and circumstances when determining whether a plan is 'fair and equitable'").

5. Accordingly, while section 1129(b)(2) of the Bankruptcy Code does not specifically prohibit a senior class of claims from recovering under a plan greater than 100% of its allowed claims while dissenting junior classes receive less than 100% on account of their claims, a bankruptcy court may nonetheless deny confirmation of such a plan on the grounds that to permit such disparate recoveries would not be "literally" fair and equitable. While the bill originally considered by the U.S. House of Representatives included a provision, which was subsequently deleted, assuring dissenting classes that no senior class would receive more than 100% of the amount of its claim, the legislative history of the Bankruptcy Code establishes that "the deletion is intended to be one of style and not one of substance" and was one of a number of deletions that were made to "avoid statutory complexity and because they would undoubtedly be found by a court to be fundamental to 'fair and equitable' treatment of a dissenting class". *See* 124 Cong. Rec. H 11,103 (Sept. 28, 1978); S 17,420 (Oct. 6, 1978); *see also In re P. J. Keating Company*, 168 B.R. 464, 469 (Bankr. D. Mass. 1994)("[A]n uncodified aspect of the fair and equitable rule governing the cram down of interests is that no class of creditors be paid more than in full"); *In re MCorp Financial, Inc.*, 137 B.R. 219, 235 (Bankr. S.D. Tex. 1992)(holding that a plan of reorganization was not fair and equitable because the senior class would receive more than full compensation for its claims after the effective date upon liquidation of a litigation trust under the plan).

THE PLAN MERGER PREJUDICES
GENESIS UNSECURED CREDITORS

6. Moreover, the Plan does not merely constitute a "deemed" consolidation of the Genesis Debtors into a single entity and the Multicare Debtors into a single entity for purposes of distributions under the Plan. Instead, the merger of Reorganized Genesis with Reorganized Multicare results in a *de facto* substantive consolidation through the misallocation of value from the Genesis Debtors to the Multicare Debtors for the benefit of Multicare creditors and to the prejudice of Genesis creditors. Specifically, the merger diverts value, in the form of New Common Stock issued by Reorganized Genesis, from the Genesis junior classes to Multicare, effectively defraying the losses by Multicare Senior Lenders that are substantially the same entities as the Genesis Senior Lenders, in consideration for New Multicare Stock which does not possess sufficient value to justify the level of New Senior Notes and New Common Stock (as well as the other consideration being provided by Reorganized Genesis) transferred to Reorganized Multicare.[3]

7. This *de facto* substantive consolidation is contrary to existing law. Substantive consolidation should be contemplated cautiously and used only in extreme situations. *Bracaglia v. Manzo (In re United Stairs Corp.)*, 176 B.R. 359, 368-69 (Bankr. D.N.J. 1995). In balancing the equities of a specific case, a court must "weigh the

[3] It is noteworthy that a portion of the value being provided by Reorganized Genesis to Reorganized Multicare arises out of the proposed settlement agreement between the Genesis and Multicare Debtors and results in the release by the Genesis Debtors of approximately $109 million in what appears to be contractual claims against the Multicare Debtors. While the proposed settlement agreement clearly quantifies the claims possessed by Genesis against Multicare, its description of the claims that Multicare purportedly possesses against Genesis, in the form of alleged causes of action and defenses to the Genesis claims, is vague, speculative, unquantified, subject to *bona fide* dispute and not currently available for setoff under the applicable provisions of the Bankruptcy Code. *See* 11 U.S.C. 502(d) and 553(a)(1). Accordingly, the "release" of those claims by Multicare appears to be of dubious value when measured against the claims that Genesis is releasing against Multicare.

economic prejudice of continued debtor separateness against the economic prejudice of substantive consolidation." *Bracaglia*, 176 B.R. at 369. Courts within the Third Circuit have adopted a combination of tests to determine whether substantive consolidation is appropriate. Courts may require a demonstration (a) of a necessity for substantive consolidation or a harm to be avoided by its use, and (b) that the benefits of substantive consolidation outweigh the harm to objecting creditors. *Raslavich v. Ira S. Davis Storage Co. (In re Ira S. Davis, Inc.)*, No. 92-14259S, 1993 Bankr. LEXIS 1383, at *16 (Bankr. E.D. Pa. 1993); *Bruce Energy Centre Ltd. v. Orfa Corp. of America (In re Orfa Corp. of Philadelphia)*, 129 B.R. 404, 414 (Bankr. E.D. Pa. 1991); *In re F.A. Potts & Co.*, 23 B.R. 569, 572 (Bankr. E.D. Pa. 1982). Courts may also examine (a) whether creditors did not rely on the entities separate identities, but dealt with them as a single unit, or (b) whether the debtors' affairs were so entangled that consolidation will benefit all creditors. *Raslavich*, 1993 Bankr. LEXIS 1383, at *18 (citing *In re Augie/Restivo Baking Co.*, 860 F.2d 515, 518 (2d Cir. 1988)). GMS submits that the facts in these chapter 11 cases, particularly the "synergies" alleged in section II A of the Disclosure Statement, and the "efficiencies" alleged in section VIII A of the Disclosure Statement, do not warrant substantive consolidation in light of the significant prejudice to Genesis creditors resulting from the misallocation of value in connection with the merger. In particular, even if the Debtors are correct in their assessment of the benefits to the enterprise that would be realized through the proposed merger, those benefits could still be realized through a merger that properly allocates value.

**THE RELEASE OF THE DEBTORS' MANAGEMENT, AGENTS AND OTHER THIRD PARTIES IS UNWARRANTED**

8. Section 5.10 of the Plan improperly provides that, on the effective date, the respective officers, directors professionals and agents of the Debtors, as well as the administrative agent for the entities that comprise the Multicare and Genesis Senior Lenders and other third parties, will be released from all claims against them in their representative capacities. The general rule in the Third Circuit is that third-party releases are permissible only with the consent of the affected creditors. *Gillman v. Continental Airlines (In re Continental Airlines)*, 203 F.3d 203, 214 n.11 (3d Cir. 2000); *In re Zenith Elec. Corp.*, 241 B.R. 92, 111 (Bankr. D. Del. 1999); *In re West Coast Video Enters., Inc.*, 174 B.R. 906, 911 (Bankr. E.D. Pa. 1994). Although some Third Circuit courts have permitted third-party releases without creditor consent, they have done so only under "exceptional or extraordinary circumstances." *In re American Family Enters.*, 256 B.R. 377, 406 (D.N.J. 2000); *In re Int'l Wireless Communications Holdings, Inc.*, No. 98-2007, 1999 Bankr. LEXIS 1853, at *25-26 (Bankr. D. Del. 1999). Before such a release is permitted, the court must find "(1) an identity of interest between the debtor and the third party, such that a suit against the non-debtor is, in essence, a suit against the debtor or will deplete assets of the estate; (2) substantial contribution by the non-debtor of assets to the reorganization; (3) the essential nature of the injunction to the reorganization such that, without the injunction, there is little likelihood of success; (4) an agreement by a substantial majority of creditors to support the injunction, specifically if the impacted class or classes 'overwhelmingly' votes to accept the plan; and (5) a provision in the plan for payment of all or substantially all of the claims of the class or classes affected by the

injunction." *Int'l Wireless*, 1999 Bankr. LEXIS 1853, at *25-26 (citing *In re Master Mortgage Inv. Fund, Inc.*, 168 B.R. 930, 934-37 (Bankr. W.D. Mo. 1994)). The Debtors have not made any showing whatsoever to establish that the releases are warranted.

WHEREFORE, for all of the reasons set forth above, GMS respectfully requests that the Court deny confirmation of the Plan.

Dated: New York, New York
August 17, 2001

LEBOEUF, LAMB, GREENE & MACRAE, L.L.P.

By: Timothy W. Walsh
Timothy W. Walsh (TW-7409)
Ira A. Reid (IR-0113)
125 West 55th Street
New York, NY 10019
Phone: (212) 424-8000

- and -

THE BAYARD FIRM

By: Elio Ba[illegible]
Jeffrey M. Schlerf (DE Bar No. 3047)
Elio Battista, Jr. (DE Bar No. 3814)
222 Delaware Avenue
Suite 900
Wilmington, DE 19801
Phone: (302) 655-5000

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE:<br><br>GENESIS HEALTH VENTURES, INC., et al.,<br><br>Debtors. | : | CHAPTER 11<br>Case No. 00-2692 (JHW)<br>(Jointly Administered) |
| IN RE:<br><br>MULTICARE AMC, INC., et al.,<br><br>Debtors. | : | CHAPTER 11<br>Case No. 00-2494 (JHW)<br>(Jointly Administered)<br><br>Hearing Date: August 28, 2001<br>Objection Deadline: August 21, 2001, per Debtor's Extension |

**OBJECTION OF CREDITOR CHARLES L. GRIMES
TO CONFIRMATION OF DEBTORS'
JOINT PLAN OF REORGANIZATION**

Charles L. Grimes, the holder of approximately $20,000,000 in face amount of the 9 3/4 % Senior Subordinated Notes due 2005 (the "Genesis 2005 Notes") issued by Genesis Health Ventures, Inc. ("Genesis"), by and through his undersigned counsel, hereby submits to the Court his objection to confirmation of the Debtors' Joint Plan of Reorganization (the "Plan")[1], and in support therefor respectfully states the following:

**SUMMARY OF ARGUMENT**

The Plan contains significant defects which prevent its confirmation. The Plan does not meet the predicate requirements for confirmation under Section 1129(a) of the Bankruptcy Code.

[1] Unless otherwise defined herein, capitalized terms used herein shall have meanings set forth in the Plan.

MCM4342 WPD

Even if it could pass that preliminary hurdle, the Plan cannot be confirmed under Section 1129(b) of the Bankruptcy Code over the objection and rejection of the Genesis Class G5 Senior Subordinated Noteholders.

1. **The Plan is not "Fair and Equitable"to Genesis Noteholders**

The central feature of the Plan is a dramatic misvaluation and undervaluation of the reorganized entity for purposes of Plan distributions. As will be adduced through evidence to be presented at the Confirmation Hearing, the Plan and Disclosure Statement grossly understate -- and the Debtors employ incorrect methodologies to determine -- the enterprise value of the merged Reorganized Genesis and, hence, the value of the securities to be distributed under the Plan. This results in ownership going overwhelmingly to the Senior Lenders, allowing them to capture for themselves the substantial upside potential that appropriately should be distributed equitably at the front end at confirmation for the benefit of **all** Genesis creditors.

The Senior Lenders will recover more than 100% of their allowable claims, while junior creditors receive mere pennies on the dollar for their claims. Moreover, Officers and Directors of the Debtors, who are pre-petition equity holders in a junior class of interests, are to receive and retain value under the Plan **for no consideration** while the Genesis Noteholders receive far less than full payment on their claims. These are clear violations of the Bankruptcy Code's "absolute priority" rule, rendering the Plan not fair and equitable vis-a-vis Genesis junior creditors who have voted to reject the Plan and, thus, unconfirmable under 11 U.S.C. §1129(b).

2. **The Plan effects an unlawful Substantive Consolidation**

The Plan misallocates value between two sets of Debtors – the Multicare Debtors and the Genesis Debtors – and amongst their creditors. The Multicare and Genesis Chapter 11 cases

were commenced and administered independently. However, their reorganizations unconventionally are being conducted through a single joint plan whose asserted justification is that these two sets of debtors ultimately are to be merged to create a single entity, Reorganized Genesis, *upon* confirmation. The Plan, however, effects unlawfully, without substantiation and justification, a substantive consolidation of the estates of these separate debtors for the purpose of distribution under the Plan *prior* to the confirmation merger -- to the serious detriment of Genesis junior creditors. The Court essentially is being asked to approve an unlawful conveyance of Genesis value to Multicare creditors, including the Multicare Senior Lenders, for no consideration. This alone renders the Plan as currently constituted unconfirmable.

3. **The Plan constains unsustainable non-debtor Third Party Releases**

The Plan unnecessarily and unfairly provides to the Senior Lenders, their Agent and to Officers and Directors of the Debtors **for no consideration** a series of sweeping and improper releases and exculpations from any liability to the Debtors or to their creditors. These releases are involuntarily forced upon the Genesis Noteholders and effect an unlawful discharge in violation of 11 U.S.C. §524(e), prohibiting the Plan's confirmation under 11 U.S.C. §1129(a)(1). The releases and exculpations also may further deny Genesis junior creditors the right to properly explore, and if justified act upon, contentions asserted in the Motion for the Appointment of a Trustee that had been filed by the Multicare Creditors' Committee (the "Trustee Motion") but withdrawn on the eve of the Disclosure Statement Hearing in exchange for a distribution to Multicare junior creditors under the Joint Plan. The Trustee Motion raised serious potential claims that the Debtors may hold against, among others, the Senior Lenders. Among other things, the Trustee Motion raised allegations respecting the manner in which the Senior Lenders