for the holder of such postpetition personal injury tort Claim to file an application with the Court in any event and such personal injury tort claimant shall not be subject to any bar date, including any bar date for filing applications for administrative expenses. Holders of postpetition personal injury tort Claims are authorized to liquidate such Claims to judgment, settlement, or otherwise without further order of the Bankruptcy Court and to seek payment as set forth herein.

54. Discharge of Claims and Termination of Equity Interests. Pursuant to Section 10.2 of the Plan, except as otherwise provided in the Plan, the Final Order approving the DIP Credit Agreement, or this Confirmation Order, the rights afforded in the Plan and the payments and distributions to be made under the Plan shall discharge all existing debts and Claims, and terminate all Equity Interests, of any kind, nature, or description whatsoever against or in the Debtors or any of their assets or properties to the fullest extent permitted by section 1141 of the Bankruptcy Code. Except as provided in the Plan, upon the Effective Date, all existing Claims against the Debtors and Equity Interests in the Debtors, shall be, and shall be deemed to be, discharged and terminated, and all holders of Claims and Equity Interests shall be precluded and enjoined from asserting against the Reorganized Debtors, or any of their assets or properties, any other or further Claim or Equity Interest based upon any act or omission, transaction, or other activity of any kind or nature that occurred prior to the Effective Date, whether or not such holder has filed a proof of claim or proof of equity interest, such Claim is allowed under section 502 of the Bankruptcy Code, or such holder has accepted the Plan. Notwithstanding any provision of the Plan to the contrary, any valid setoff or recoupment rights held against any of the Debtors, including any such rights that HCR Manor Care,

Inc., Manor Care, Inc., and/or ManorCare Health Services, Inc. may have in connection with the pending prepetition litigation actions described in section V.D of the Disclosure Statement, shall not be affected by the Plan and shall be expressly preserved.

55.  Discharge of Debtors.  Pursuant to Section 10.3 of the Plan, upon the Effective Date and in consideration of the distributions to be made under the Plan, except as otherwise expressly provided in the Plan, each holder (as well as any trustees and agents on behalf of each holder) of a Claim or Equity Interest and any affiliate of such holder shall be deemed to have forever waived, released, and discharged the Debtors, to the fullest extent permitted by section 1141 of the Bankruptcy Code, of and from any and all Claims, Equity Interests, rights, and liabilities that arose prior to the Effective Date. Upon the Effective Date, all such persons shall be forever precluded and enjoined, pursuant to section 524 of the Bankruptcy Code, from prosecuting or asserting any such discharged Claim against or terminated Equity Interest in the Debtors.  Notwithstanding any provision of the Plan to the contrary, any valid setoff or recoupment rights held against any of the Debtors, including any such rights that HCR Manor Care, Inc., Manor Care, Inc., and/or ManorCare Health Services, Inc. may have in connection with the pending prepetition litigation actions described in section V.D of the Disclosure Statement, shall not be affected by the Plan and are expressly preserved.

56.  Indenture Trustees' Fees and Expenses.

(a)  The reasonable fees and expenses of each trustee under an Indenture described in Sections 1.37 and 1.50 of the Plan shall be paid in accordance with the procedures established in Section 2.5 of the Plan.

(b) With respect to Allowed Claims in Subclass M1-1 (Rosewood Center (Taylor County, West Virginia)), (i) all past due trustee fees and expenses, if any, shall be paid in full within thirty (30) days of the Effective Date and all trustee fees and expenses thereafter shall be paid in accordance with the terms of the relevant trust indenture and loan documents, and (ii) all amounts necessary to cure and reinstate such Allowed Claims shall be paid within thirty (30) days of the Effective Date.

57. Survival of Corporate Indemnitees. Pursuant to Section 8.5 of the Plan, any obligations of the Debtors pursuant to their corporate charters and bylaws or agreements entered into any time prior to the Effective Date, to indemnify current directors, officers, agents, and/or employees with respect to all present and future actions, suits, and proceedings against the Debtors or such directors, officers, agents, and/or employees, based upon any act or omission for or on behalf of the Debtors shall not be discharged or impaired by confirmation of the Plan. Such obligations shall be deemed and treated as executory contracts to be assumed by the Debtors pursuant to the Plan of Reorganization, and shall continue as obligations of the Reorganized Debtors.

58. Releases, Exculpations, and Injunctions.

(a) The release, exculpation, and injunction provisions contained in the Plan are fair and equitable, are given for valuable consideration, and are in the best interests of the Debtors and their chapter 11 estates, and such provisions shall be effective and binding upon all persons and entities.

(b) Notwithstanding anything to the contrary in the Plan, including Sections 10.2 and 10.3 of the Plan, and this Confirmation Order, with respect to the collective bargaining agreements between the Debtors and Service Employees

International Union and/or its affiliated local unions (collectively, the "Union"), no grievance that is unresolved or unliquidated under the applicable dispute resolution procedures as of the Effective Date shall be released, waived, or discharged. The foregoing shall not require the Debtors to pay, except under the terms of the Plan, any such grievance ultimately resolved in the Union's favor arising under a collective bargaining agreement under negotiation for which no collective bargaining agreement is concluded after the Effective Date; however, nothing in this Confirmation Order shall prevent the parties from reaching agreement regarding the disposition and payment of any such grievance other than under the terms of the Plan.

59. Subsidiary Guaranties. Pursuant to Section 5.14 of the Plan, Claims based upon guaranties of collection, payment, or performance of any obligation of the Debtors made by any direct or indirect subsidiary of Genesis or Multicare which is not a Debtor and all Claims against any such subsidiary for which any of the Debtors are jointly or severally liable, in each case which arise at any time prior to the Confirmation Date, shall be discharged, released, extinguished, and of no further force and effect, unless the appropriate Debtor otherwise agrees in writing to the beneficiary of such guaranties, including, without limitation, the Multicare Debtors' agreement to re-execute any guaranty by any direct or indirect subsidiary of Multicare on the bonds relating to Subclass M1-1 (Rosewood Center (Taylor County, West Virginia)).

60. Termination of Injunctions and Automatic Stay. Pursuant to Section 10.4 of the Plan, all injunctions or stays arising under or entered during the Reorganization Cases under sections 105 or 362 of the Bankruptcy Code or otherwise,

and in existence on the Confirmation Date, shall remain in full force and effect until the later of the Effective Date and the date indicated in such order.

61. Cancellation of Existing Securities and Agreements. Pursuant to Section 5.11 of the Plan, except for purposes of evidencing a right to distributions under the Plan or otherwise provided in the Plan, on the Effective Date all the agreements and other documents evidencing the Claims or rights of any holder of a Claim against the Debtors, including all indentures and notes evidencing such Claims and any options or warrants to purchase Equity Interests, obligating the Debtors to issue, transfer, or sell Equity Interests or any other capital stock of the Debtors, shall be canceled; *provided, however*, that the indentures relating to the Genesis Senior Subordinated Note Claims and the Multicare Senior Subordinated Note Claims shall continue in effect solely for the purposes of (i) allowing the indenture trustees to make any distributions on account of Classes G5 and M5 pursuant to the Plan and to perform such other necessary administrative functions with respect thereto, and (ii) permitting the indenture trustees to maintain any rights or liens they may have for fees, costs, and expenses under the indentures.

62. Nonoccurrence of Effective Date. In the event that the Effective Date does not occur, then (i) the Plan, (ii) assumption or rejection of executory contracts or unexpired leases pursuant to the Plan, (iii) any document or agreement executed pursuant to the Plan, and (iv) any actions, releases, waivers, or injunctions authorized by this Confirmation Order or any order in aid of consummation of the Plan shall be deemed null and void. In such event, nothing contained in this Confirmation Order, any order in aid of consummation of the Plan, or the Plan, and no acts taken in preparation for

consummation of the Plan, (a) shall be deemed to constitute a waiver or release of any

Claims or Equity Interests by or against the Debtors or any other persons or entities, to

prejudice in any manner the rights of the Debtors or any person or entity in any further

proceedings involving the Debtors or otherwise, or to constitute an admission of any sort

by the Debtors or any other persons or entities as to any issue, or (b) shall be construed as

a finding of fact or conclusion of law in respect thereof.

63. Notice of Entry of Confirmation Order. On or before the tenth (10th)

Business Day following the date of entry of this Confirmation Order, the Debtors shall

serve notice of entry of this Confirmation Order pursuant to Bankruptcy Rules

2002(f)(7), 2002(k), and 3020(c) on all creditors and interest holders, the United States

Trustee, and other parties in interest, by causing notice of entry of the Confirmation

Order (the "Notice of Confirmation"), to be delivered to such parties by first-class mail,

postage prepaid. The notice described herein is adequate under the particular

circumstances and no other or further notice is necessary. The Debtors also shall cause

the Notice of Confirmation to be published as promptly as practicable after the entry of

this Confirmation Order once in each of *The New York Times* (National Edition), *The

Wall Street Journal* (National Edition), *USA Today, The Tampa Tribune, The Baltimore

Sun, The Philadelphia Inquirer,* and *The Boston Globe.*

64. Notice of Effective Date. Within five (5) Business Days following the

occurrence of the Effective Date, the Reorganized Debtors shall file notice of the

occurrence of the Effective Date and shall serve a copy of same on the parties identified

in the General Service List as defined in the Order Pursuant to Sections 102 and 105 of

the Bankruptcy Code and Bankruptcy Rules 2002(m) and 9007 Establishing Notice

Procedures, dated July 28, 2000.

      65. <u>Authorization to File Conformed Plan</u>.  The Debtors are authorized to

file a conformed Plan, dated on the date hereof, which incorporates the Technical

Amendments and the Amendments to Comply with Confirmation Opinion within thirty

(30) days of the entry of this Confirmation Order.

      66. <u>Binding Effect</u>.  Pursuant to sections 1123(a) and 1142(a) of the

Bankruptcy Code and the provisions of this Confirmation Order, the Plan, the Plan

Supplement, and the Plan Documents shall apply and be enforceable notwithstanding any

otherwise applicable nonbankruptcy law.

      67. <u>Severability</u>.  Each term and provision of the Plan, as it may have been

altered or interpreted by the Bankruptcy Court in accordance with Section 12.7 of the

Plan, is valid and enforceable pursuant to its terms.

      68. <u>Conflicts Between Order and Plan</u>.  To the extent of any inconsistency

between the provisions of the Plan and this Confirmation Order, the terms and conditions

contained in this Confirmation Order shall govern.  The provisions of this Confirmation

Order are integrated with each other and are nonseverable and mutually dependent unless

expressly stated by further order of this Bankruptcy Court.

Dated: September 29, 2001
       Wilmington, Delaware

<u>UNITED STATES BANKRUPTCY JUDGE</u>

# EXHIBIT A

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

----------------------------------------------x
In re                                          :        Chapter 11 Case No.
                                               :
GENESIS HEALTH VENTURES, INC., *et al.*,       :        00-2692 (JHW)
                                               :
Debtors.                                       :        (Jointly Administered)
----------------------------------------------x
In re                                          :        Chapter 11 Case No.
                                               :
MULTICARE AMC, INC., *et al.*,                 :        00-2494 (JHW)
                                               :
Debtors.                                       :        (Jointly Administered)
----------------------------------------------x

### DEBTORS' JOINT PLAN OF REORGANIZATION
### UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

Genesis Health Ventures, Inc., The Multicare Companies, Inc., and the other above-captioned debtors and debtors in possession propose the following joint chapter 11 Plan of Reorganization, pursuant to section 1121(a) of title 11 of the United States Code:

## SECTION 1.  DEFINITIONS AND INTERPRETATION

A.    **Definitions.**

The following terms used herein shall have the respective meanings defined below (such meanings to be equally applicable to both the singular and plural):

1.1.    *Administrative Expense Claim* means any right to payment constituting a cost or expense of administration of any of the Reorganization Cases allowed under sections 503(b), 507(a)(1), and 1114(e) of the Bankruptcy Code, including, without limitation, any actual and necessary costs and expenses of preserving the Debtors' estates, any actual and necessary costs and expenses of operating the Debtors' businesses, any indebtedness or obligations incurred or assumed by the Debtors, as debtors in possession, during the Reorganization Cases, including, without limitation, for the acquisition or lease of property or an interest in property or the rendition of services, any allowances of compensation and reimbursement of expenses to the extent allowed by Final Order under sections 330 or 503 of the Bankruptcy Code, and any fees or charges assessed against the estates of the Debtors under section 1930 of chapter 123 of title 28 of the United States Code.

1.2.    *Allowed* means, with reference to any Claim, (i) any Claim against any Debtor which has been listed by such Debtor in the Schedules, as such Schedules may be amended by the Debtors from time to time in accordance with Bankruptcy Rule 1009, as liquidated in amount and not disputed or contingent and for which no contrary proof of claim has been filed, (ii) any timely filed Claim as to which no objection to allowance has been interposed in accordance with Section 7.1 hereof or such other applicable period of limitation fixed by the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or as to which any objection has been determined by a Final Order to the extent such objection is determined in favor of the respective holder, or (iii) any Claim expressly allowed by a Final Order or hereunder.

RLF1-2353946-1 8/29/019:52 AM

1

1.3.    *Amended Bylaws* means the Bylaws of Reorganized Genesis, as restated, and which shall be substantially in the form set forth in the Plan Supplement.

1.4.    *Amended Certificate of Incorporation* means the Certificate of Incorporation of Reorganized Genesis, as restated, and which shall be substantially in the form set forth in the Plan Supplement.

1.5.    *Bankruptcy Code* means title 11 of the United States Code, as amended from time to time, as applicable to the Reorganization Cases.

1.6.    *Bankruptcy Court* means the United States District Court for the District of Delaware having jurisdiction over the Reorganization Cases and, to the extent of any reference made under section 157 of title 28 of the United States Code, the unit of such District Court having jurisdiction over the Reorganization Cases under section 151 of title 28 of the United States Code.

1.7.    *Bankruptcy Rules* means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code, as amended from time to time, applicable to the Reorganization Cases, and any Local Rules of the Bankruptcy Court.

1.8.    *Business Day* means any day other than a Saturday, a Sunday, or any other day on which banking institutions in New York, New York are required or authorized to close by law or executive order.

1.9.    *Cash* means legal tender of the United States of America.

1.10.    *Catch-up Distribution* means with respect to each holder of an Allowed Claim in Classes G4, G5, M4, and M5, the difference between (i) the number of shares of New Common Stock or New Warrants such holder would have received if the resolution of all Disputed Claims in such Classes had been known on the Effective Date, and (ii) the aggregate number of shares of New Common Stock or New Warrants previously received by such holder.

1.11.    *Claim* has the meaning set forth in section 101 of the Bankruptcy Code.

1.12.    *Class* means any group of Claims or Equity Interests classified by the Plan of Reorganization pursuant to section 1122(a)(1) of the Bankruptcy Code.

1.13.    *Collateral* means any property or interest in property of the estate of any Debtor subject to a lien, charge, or other encumbrance to secure the payment or performance of a Claim, which lien, charge, or other encumbrance is not subject to avoidance under the Bankruptcy Code.

1.14.    *Commencement Date* means (i) June 22, 2000 with respect to the Genesis Debtors (other than Healthcare Resources Corp.) and the Multicare Debtors, and (ii) July 31, 2000 with respect to Healthcare Resources Corp.

1.15.    *Confirmation Date* means the date on which the Clerk of the Bankruptcy Court enters the Confirmation Order.

1.16.    *Confirmation Hearing* means the hearing to be held by the Bankruptcy Court regarding confirmation of the Plan of Reorganization, as such hearing may be adjourned or continued from time to time.

RLF1-2353946-1 8/29/019:52 AM                                2

1.17. *Confirmation Order* means the order of the Bankruptcy Court confirming the Plan of Reorganization pursuant to section 1129 of the Bankruptcy Code.

1.18. *Debtors* means the Genesis Debtors and the Multicare Debtors.

1.19. *Disbursing Agent* means any entity (including any applicable Debtor if it acts in such capacity) in its capacity as a disbursing agent under Section 6.4 hereof.

1.20. *Disputed Claim* means any Claim which has not been Allowed pursuant to the Plan of Reorganization or a Final Order, *and*

(a)    if no proof of claim has been filed by the applicable deadline:  (i) a Claim that has been or hereafter is listed on the Schedules as disputed, contingent, or unliquidated; or (ii) a Claim that has been or hereafter is listed on the Schedules as other than disputed, contingent, or unliquidated, but as to which the Debtors or Reorganized Debtors or any other party in interest has interposed an objection or request for estimation which has not been withdrawn or determined by a Final Order; *or*

(b)    if a proof of claim or request for payment of an Administrative Claim has been filed by the applicable deadline: (i) a Claim for which no corresponding Claim has been or hereafter is listed on the Schedules; (ii) a Claim for which a corresponding Claim has been or hereafter is listed on the Schedules as other than disputed, contingent, or unliquidated, but the nature or amount of the Claim as asserted in the proof of claim varies from the nature and amount of such Claim as listed on the Schedules; (iii) a Claim for which a corresponding Claim has been or hereafter is listed on the Schedules as disputed, contingent, or unliquidated; (iv) a Claim for which a timely objection or request for estimation is interposed by the Debtors or the Reorganized Debtors which has not been withdrawn or determined by a Final Order; or (v) any Tort Claim.

1.21. *Distribution Record Date* means the Confirmation Date.

1.22. *Effective Date* means a Business Day on or after the Confirmation Date specified by Genesis and Multicare on which (i) no stay of the Confirmation Order is in effect, and (ii) the condition to the effectiveness of the Plan of Reorganization specified in Section 9 hereof has been satisfied or waived.

1.23. *Equity Interest* means the interest of any holder of an equity security of any of the Debtors represented by any issued and outstanding shares of common or preferred stock or other instrument evidencing a present ownership interest in any of the Debtors, whether or not transferable, or any option, warrant, or right, contractual or otherwise, to acquire any such interest.

1.24. *Final Distribution Date* means, in the event there exist on the Effective Date any Disputed Claims classified in Classes G4, G5, M4, or M5, a date selected by the Reorganized Debtors, in their sole discretion, on which all such Disputed Claims have been resolved by Final Order.

1.25. *Final Order* means an order or judgment of the Bankruptcy Court entered by the Clerk of the Bankruptcy Court on the docket in the Reorganization Cases, which has not been reversed, vacated, or stayed and as to which (i) the time to appeal, petition for *certiorari*, or move for a new trial, reargument, or rehearing has expired and as to which no appeal, petition for *certiorari*, or other proceedings for a new trial, reargument, or rehearing shall then be pending, or (ii) if an appeal, writ of *certiorari*, new trial, reargument, or rehearing thereof has been sought, such order or judgment of the Bankruptcy Court shall have been affirmed by the highest court to which such order was appealed, or *certiorari* shall have been denied, or a new trial, reargument, or rehearing shall have been denied or

AA. 779

resulted in no modification of such order, and the time to take any further appeal, petition for *certiorari* or move for a new trial, reargument, or rehearing shall have expired; *provided, however*, that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be filed relating to such order shall not cause such order to not be a Final Order.

1.26.    ***Genesis*** means Genesis Health Ventures, Inc., a Pennsylvania corporation, the parent debtor or debtor in possession, as the context requires.

1.27.    ***Genesis Common Stock Interest*** means the Equity Interest of any holder of the authorized common stock issued by Genesis or any option, warrant, or right, contractual or otherwise, to acquire any such Equity Interest.

1.28.    ***Genesis Debtors*** means Genesis and the entities listed on Exhibit A hereto.

1.29.    ***Genesis General Unsecured Claim*** means any Claim against any of the Genesis Debtors that (a) is not a Genesis Other Secured Claim, Genesis Senior Lender Claim, Administrative Expense Claim, Priority Tax Claim, Genesis Priority Non-Tax Claim, Genesis Senior Subordinated Note Claim, Genesis Intercompany Claim, or Genesis Punitive Damage Claim, or (b) is otherwise determined by the Bankruptcy Court to be a Genesis General Unsecured Claim.

1.30.    ***Genesis Intercompany Claim*** means a Claim held by a wholly-owned Genesis Debtor against another wholly-owned Genesis Debtor.

1.31.    ***Genesis Other Secured Claim*** means any Secured Claim against any of the Genesis Debtors not constituting a secured Genesis Senior Lender Claim.

1.32.    ***Genesis Priority Non-Tax Claim*** means any Claim against any of the Genesis Debtors other than an Administrative Expense Claim or a Priority Tax Claim, entitled to priority in payment as specified in section 507(a)(3), (4), (5), (6), (7), or (9) of the Bankruptcy Code.

1.33.    ***Genesis Punitive Damage Claim*** means any Claim against any of the Genesis Debtors, whether secured or unsecured, for any fine, penalty, forfeiture, attorneys' fees (to the extent such attorneys' fees are punitive in nature), or for multiple, exemplary, or punitive damages, to the extent that such fine, penalty, forfeiture, attorneys' fees, or damages is not compensation for actual pecuniary loss suffered by the holder of such Claim and not statutorily prescribed.

1.34.    ***Genesis Reorganization Cases*** means the jointly administered cases under chapter 11 of the Bankruptcy Code commenced by the Genesis Debtors on June 22, 2000, and July 31, 2000 in the United States District Court for the District of Delaware and styled *In re Genesis Health Ventures, Inc., et al.*, 00-2692 (JHW).

1.35.    ***Genesis Senior Lender Agreements*** means (i) that certain Fourth Amended and Restated Credit Agreement, dated as of August 20, 1999, among Genesis, certain other Genesis Debtors named therein , Mellon Bank N.A., as administrative agent, certain co-agents named therein, and the lender parties thereto, and any of the documents and instruments relating thereto or referred to therein, (ii) that certain Amended and Restated Synthetic Lease Financing Facility, dated as of October 7, 1996, among Genesis, Genesis Eldercare Properties, Inc., Mellon Bank N.A., as administrative agent, certain co-agents named therein, and the lender parties thereto, and any of the documents and instruments relating thereto, and (iii) any Swap Agreement (as defined in that certain Fourth Amended and Restated Collateral Agency Agreement, dated as of August 20, 1999, among Genesis, Mellon Bank, N.A., as agent for the lenders party to the Fourth Amended and Restated Credit Agreement, as agent for the lenders party

to the Amended and Restated Synthetic Lease Financing Facility, and as collateral agent for the secured parties thereto), among Genesis and the counterparties to such Swap Agreement.

      1.36.   *Genesis Senior Lender Claim* means any Claim against any of the Genesis Debtors based on the Genesis Senior Lender Agreements (inclusive of postpetition interest) net of all Cash payments made by the Genesis Debtors to the holders of such Claims on or after the Commencement Date; *provided, however,* that the Claims of Citibank, N.A. in connection with the prepetition termination of interest rate hedging agreements are Genesis Senior Lender Claims to the extent of $17,290,962.

      1.37.   *Genesis Senior Subordinated Note Claim* means a Claim against Genesis arising under or in connection with (i) the Indenture, dated as of June 15, 1995, between Genesis and State Street Bank and Trust Company, as trustee, as such Indenture may have been amended or modified, and the $120,000,000 of 9-3/4% Senior Subordinated Notes due 2005 issued thereunder, (ii) the Indenture, dated as of October 7, 1996, between Genesis and State Street Bank and Trust Company, as successor trustee, as such Indenture may have been amended or modified, and the $125,000,000 of 9-1/4% Senior Subordinated Notes due 2006 issued thereunder, (iii) the Indenture, dated as of December 23, 1998, between Genesis and The Bank of New York, as trustee, as such Indenture may have been amended or modified, and the $125,000,000 of 9-7/8% Senior Subordinated Notes due 2009 issued thereunder, or (iv) the Indenture, dated as of September 15, 1995, between Grancare, Inc. and Marine Midland Bank, as trustee, as such Indenture may have been amended or modified, and the $100,000,000 of 9-3/8% Senior Subordinated Notes due 2005 issued thereunder, of which $1,590,000 remains outstanding, excluding the fees and expenses of the trustees under these Indentures, which shall be paid pursuant to Section 2.5 hereof.

      1.38.   *Insured Claim* means any Claim arising from an incident or occurrence that is covered under any of the Debtors' insurance policies.

      1.39.   *Multicare* means Genesis ElderCare Corp., a Delaware corporation, the parent debtor or debtor in possession, as the context requires, and the owner of all the common stock of The Multicare Companies, Inc., a Delaware corporation.

      1.40.   *Multicare Common Stock Interest* means the Equity Interest of any holder of the authorized common stock issued by Multicare or any option, warrant, or right, contractual or otherwise, to acquire any such Equity Interest.

      1.41.   *Multicare Debtors* means Multicare, a Delaware corporation, and the entities listed on Exhibit B hereto.

      1.42.   *Multicare General Unsecured Claim* means any Claim against any of the Multicare Debtors that (i) is not a Multicare Other Secured Claim, Multicare Senior Lender Claim, Administrative Expense Claim, Priority Tax Claim, Multicare Priority Non-Tax Claim, Multicare Senior Subordinated Note Claim, Multicare Intercompany Claim, or Multicare Punitive Damage Claim, or (ii) is otherwise determined by the Bankruptcy Court to be a Multicare General Unsecured Claim.

      1.43.   *Multicare Intercompany Claim* means a Claim held by a wholly-owned Multicare Debtor against another wholly-owned Multicare Debtor.

      1.44.   *Multicare Other Secured Claim* means any Secured Claim against any of the Multicare Debtors not constituting a secured Multicare Senior Lender Claim.

1.45.    *Multicare Priority Non-Tax Claim* means any Claim against any of the Multicare Debtors, other than an Administrative Expense Claim or a Priority Tax Claim, entitled to priority in payment as specified in section 507(a)(3), (4), (5), (6), (7), or (9) of the Bankruptcy Code.

1.46.    *Multicare Punitive Damage Claim* means any Claim against any of the Multicare Debtors, whether secured or unsecured, for any fine, penalty, forfeiture, or attorneys' fees (to the extent such attorneys' fees are punitive in nature), or for multiple, exemplary, or punitive damages, to the extent that such fine, penalty, forfeiture, attorneys' fees, or damages is not compensation for actual pecuniary loss suffered by the holder of such Claim and not statutorily prescribed.

1.47.    *Multicare Reorganization Cases* means the jointly administered cases under chapter 11 of the Bankruptcy Code commenced by the Multicare Debtors on June 22, 2000 in the United States District Court for the District of Delaware and styled *In re Multicare AMC, Inc., et al.*, 00-2494 (JHW).

1.48.    *Multicare Senior Lender Agreements* means that certain Credit Agreement dated as of October 9, 1997, as amended, among Multicare, certain other Multicare Debtors named therein, Mellon Bank N.A., as administrative agent, certain co-agents named therein, and the lender parties thereto, and any of the documents and instruments relating thereto.

1.49.    *Multicare Senior Lender Claim* means any Claim against any of the Multicare Debtors based on the Multicare Senior Lender Agreements net of all Cash payments made by the Multicare Debtors to the holders of such Claims on or after the Commencement Date.

1.50.    *Multicare Senior Subordinated Note Claim* means a Claim against The Multicare Companies, Inc. arising under or in connection with the Indenture, dated as of August 11, 1997, between Genesis ElderCare Acquisition Corp. (now known as The Multicare Companies, Inc.) and PNC Bank, National Association, as trustee, and the $250,000,000 of 9% Senior Subordinated Notes due 2007 issued thereunder.

1.51.    *New Common Stock* means the 41,000,000 shares of common stock of Reorganized Genesis authorized and issued hereunder on the Effective Date and any additional shares authorized for the purposes specified herein or in the Plan Securities.

1.52.    *New Convertible Preferred Stock* means the shares of convertible 6% PIK preferred stock of Reorganized Genesis with a liquidation preference of $42,600,000 authorized and issued hereunder on the Effective Date. The conversion rate for this preferred stock is $20.33 of liquidation value for each share of New Common Stock.

1.53.    *New Management Incentive Plan* means the management incentive plan for certain employees of Reorganized Genesis, as set forth in the Plan Supplement.

1.54.    *New Multicare Stock* means the common stock of Reorganized Multicare authorized and issued hereunder on the Effective Date.

1.55.    *New Senior Notes* means the Term B Notes in the aggregate principal amount of $242,605,000, authorized and issued hereunder by Reorganized Genesis on the Effective Date, the terms of which are governed by the Note Indenture, dated as of the Effective Date, between Reorganized Genesis and an indenture trustee acceptable to Reorganized Genesis and the steering group for the holders of the Senior Lender Claims, in the form set forth in the Plan Supplement and the security agreements, mortgages, and guaranties, dated as of the Effective Date, in the form set forth in the Plan Supplement.

to the Amended and Restated Synthetic Lease Financing Facility, and as collateral agent for the secured parties thereto), among Genesis and the counterparties to such Swap Agreement.

1.36.    *Genesis Senior Lender Claim* means any Claim against any of the Genesis Debtors based on the Genesis Senior Lender Agreements (inclusive of postpetition interest) net of all Cash payments made by the Genesis Debtors to the holders of such Claims on or after the Commencement Date; *provided, however,* that the Claims of Citibank, N.A. in connection with the prepetition termination of interest rate hedging agreements are Genesis Senior Lender Claims to the extent of $17,290,962.

1.37.    *Genesis Senior Subordinated Note Claim* means a Claim against Genesis arising under or in connection with (i) the Indenture, dated as of June 15, 1995, between Genesis and State Street Bank and Trust Company, as trustee, as such Indenture may have been amended or modified, and the $120,000,000 of 9-3/4% Senior Subordinated Notes due 2005 issued thereunder, (ii) the Indenture, dated as of October 7, 1996, between Genesis and State Street Bank and Trust Company, as successor trustee, as such Indenture may have been amended or modified, and the $125,000,000 of 9-1/4% Senior Subordinated Notes due 2006 issued thereunder, (iii) the Indenture, dated as of December 23, 1998, between Genesis and The Bank of New York, as trustee, as such Indenture may have been amended or modified, and the $125,000,000 of 9-7/8% Senior Subordinated Notes due 2009 issued thereunder, or (iv) the Indenture, dated as of September 15, 1995, between Grancare, Inc. and Marine Midland Bank, as trustee, as such Indenture may have been amended or modified, and the $100,000,000 of 9-3/8% Senior Subordinated Notes due 2005 issued thereunder, of which $1,590,000 remains outstanding, excluding the fees and expenses of the trustees under these Indentures, which shall be paid pursuant to Section 2.5 hereof.

1.38.    *Insured Claim* means any Claim arising from an incident or occurrence that is covered under any of the Debtors' insurance policies.

1.39.    *Multicare* means Genesis ElderCare Corp., a Delaware corporation, the parent debtor or debtor in possession, as the context requires, and the owner of all the common stock of The Multicare Companies, Inc., a Delaware corporation.

1.40.    *Multicare Common Stock Interest* means the Equity Interest of any holder of the authorized common stock issued by Multicare or any option, warrant, or right, contractual or otherwise, to acquire any such Equity Interest.

1.41.    *Multicare Debtors* means Multicare, a Delaware corporation, and the entities listed on Exhibit B hereto.

1.42.    *Multicare General Unsecured Claim* means any Claim against any of the Multicare Debtors that (i) is not a Multicare Other Secured Claim, Multicare Senior Lender Claim, Administrative Expense Claim, Priority Tax Claim, Multicare Priority Non-Tax Claim, Multicare Senior Subordinated Note Claim, Multicare Intercompany Claim, or Multicare Punitive Damage Claim, or (ii) is otherwise determined by the Bankruptcy Court to be a Multicare General Unsecured Claim.

1.43.    *Multicare Intercompany Claim* means a Claim held by a wholly-owned Multicare Debtor against another wholly-owned Multicare Debtor.

1.44.    *Multicare Other Secured Claim* means any Secured Claim against any of the Multicare Debtors not constituting a secured Multicare Senior Lender Claim.

1.45. *Multicare Priority Non-Tax Claim* means any Claim against any of the Multicare Debtors, other than an Administrative Expense Claim or a Priority Tax Claim, entitled to priority in payment as specified in section 507(a)(3), (4), (5), (6), (7), or (9) of the Bankruptcy Code.

1.46. *Multicare Punitive Damage Claim* means any Claim against any of the Multicare Debtors, whether secured or unsecured, for any fine, penalty, forfeiture, or attorneys' fees (to the extent such attorneys' fees are punitive in nature), or for multiple, exemplary, or punitive damages, to the extent that such fine, penalty, forfeiture, attorneys' fees, or damages is not compensation for actual pecuniary loss suffered by the holder of such Claim and not statutorily prescribed.

1.47. *Multicare Reorganization Cases* means the jointly administered cases under chapter 11 of the Bankruptcy Code commenced by the Multicare Debtors on June 22, 2000 in the United States District Court for the District of Delaware and styled *In re Multicare AMC, Inc., et al.,* 00-2494 (JHW).

1.48. *Multicare Senior Lender Agreements* means that certain Credit Agreement dated as of October 9, 1997, as amended, among Multicare, certain other Multicare Debtors named therein, Mellon Bank N.A., as administrative agent, certain co-agents named therein, and the lender parties thereto, and any of the documents and instruments relating thereto.

1.49. *Multicare Senior Lender Claim* means any Claim against any of the Multicare Debtors based on the Multicare Senior Lender Agreements net of all Cash payments made by the Multicare Debtors to the holders of such Claims on or after the Commencement Date.

1.50. *Multicare Senior Subordinated Note Claim* means a Claim against The Multicare Companies, Inc. arising under or in connection with the Indenture, dated as of August 11, 1997, between Genesis ElderCare Acquisition Corp. (now known as The Multicare Companies, Inc.) and PNC Bank, National Association, as trustee, and the $250,000,000 of 9% Senior Subordinated Notes due 2007 issued thereunder.

1.51. *New Common Stock* means the 41,000,000 shares of common stock of Reorganized Genesis authorized and issued hereunder on the Effective Date and any additional shares authorized for the purposes specified herein or in the Plan Securities.

1.52. *New Convertible Preferred Stock* means the shares of convertible 6% PIK preferred stock of Reorganized Genesis with a liquidation preference of $42,600,000 authorized and issued hereunder on the Effective Date. The conversion rate for this preferred stock is $20.33 of liquidation value for each share of New Common Stock.

1.53. *New Management Incentive Plan* means the management incentive plan for certain employees of Reorganized Genesis, as set forth in the Plan Supplement.

1.54. *New Multicare Stock* means the common stock of Reorganized Multicare authorized and issued hereunder on the Effective Date.

1.55. *New Senior Notes* means the Term B Notes in the aggregate principal amount of $242,605,000, authorized and issued hereunder by Reorganized Genesis on the Effective Date, the terms of which are governed by the Note Indenture, dated as of the Effective Date, between Reorganized Genesis and an indenture trustee acceptable to Reorganized Genesis and the steering group for the holders of the Senior Lender Claims, in the form set forth in the Plan Supplement and the security agreements, mortgages, and guaranties, dated as of the Effective Date, in the form set forth in the Plan Supplement.

The New Senior Notes are guarantied by all of the subsidiaries of Reorganized Genesis and are secured by the real estate and related fixtures of the Reorganized Debtors and each other subsidiary of Reorganized Genesis in accordance with the Security Agreement, in the form set forth in the Plan Supplement, subject to (i) any existing validly perfected and unavoidable security interests in Class G1 or Class M1, and (ii) any security interests granted to lenders providing financing under Section 5.4 hereof (and to lenders providing a replacement for or refinancing of such financing); *provided*, that a subsidiary of Reorganized Genesis shall not guaranty the New Senior Notes and/or grant a security interest in its assets to secure the New Senior Notes to the extent the existing debt instruments of such subsidiary or, in the case of Classes G1 and M1, the reinstated debt instruments of such Debtor, would prohibit such a guaranty or grant of a security interest. The New Senior Notes are also secured by a junior lien on the property securing the claims in Subclass G1-17.

1.56. *New Warrants* means warrants to purchase 4,559,475 shares of New Common Stock. The New Warrants shall expire on the first anniversary of the Effective Date and shall have an exercise price of $20.33 per share of New Common Stock. The New Warrants will be in the form set forth in the Plan Supplement.

1.57. *Plan Documents* means the documents to be executed, delivered, assumed, and/or performed in conjunction with the consummation of the Plan of Reorganization on the Effective Date, including but not limited to (i) the Amended Bylaws, (ii) the Amended Certificate of Incorporation, (iii) the Term B Note Indenture, (iv) the security agreements, mortgages, and guaranties, (v) the Certificate of Designation for the New Convertible Preferred Stock, (vi) the Plan of Merger, (vii) the Registration Rights Agreement, (viii) the settlement agreement referred to in Section 5.15 hereof, (ix) the settlement agreement referred to in Section 5.16 hereof, and (x) the New Management Incentive Plan. Each of the Plan Documents to be entered into as of the Effective Date will be filed in draft form in the Plan Supplement.

1.58. *Plan of Merger* means that certain Plan of Merger among Genesis, Multicare Acquisition Corporation, a wholly-owned, indirect subsidiary of Genesis, and Multicare, in the form set forth in the Plan Supplement.

1.59. *Plan of Reorganization* means this joint chapter 11 plan of reorganization, including the exhibits hereto, as the same may be amended or modified from time to time in accordance with the provisions of the Bankruptcy Code and the terms hereof.

1.60. *Plan Securities* means, collectively, the New Senior Notes, the New Convertible Preferred Stock, the New Common Stock, and the New Warrants.

1.61. *Plan Supplement* means a supplemental appendix to the Plan of Reorganization that will contain the draft form of the Plan Documents to be entered into as of the Effective Date, to be filed 10 days before the date of the Confirmation Hearing, and in any event no later than 5 days prior to the last date by which votes to accept or reject the Plan of Reorganization must be submitted. Documents to be included in the Plan Supplement will be posted at www.ghv.com as they become available, but no later than 5 days prior to the last date by which votes to accept or reject the Plan must be submitted.

1.62. *Priority Non-Tax Claim* means any Claim, other than an Administrative Expense Claim or a Priority Tax Claim, entitled to priority in payment as specified in section 507(a)(3), (4), (5), (6), (7), or (9) of the Bankruptcy Code.

1.63. *Priority Tax Claim* means any Claim of a governmental unit of the kind entitled to priority in payment as specified in sections 502(i) and 507(a)(8) of the Bankruptcy Code.

RLF1-2353946-1 8/29/019:52 AM                    7

1.64.   *Ratable Proportion* means the ratio (expressed as a percentage) of the amount of an Allowed Claim in a Class to the aggregate amount of all Allowed Claims in the same Class.

1.65.   *Reorganization Cases* means the Genesis Reorganization Cases and the Multicare Reorganization Cases.

1.66.   *Reorganized Debtors* means Reorganized Genesis and each of the Debtors listed on Exhibits A and B hereto.

1.67.   *Reorganized Genesis* means Genesis, as reorganized as of the Effective Date in accordance with the Plan of Reorganization and after giving effect to the merger described in Section 5.2 hereof.

1.68.   *Reorganized Multicare* means Multicare, as reorganized as of the Effective Date in accordance with the Plan of Reorganization before giving effect to the merger described in Section 5.2 hereof.

1.69.   *Schedules* means the schedules of assets and liabilities and the statement of financial affairs filed by the Genesis Debtors or the Multicare Debtors under section 521 of the Bankruptcy Code, Bankruptcy Rule 1007, and the Official Bankruptcy Forms of the Bankruptcy Rules as such schedules and statements have been or may be supplemented or amended through the Confirmation Date.

1.70.   *Secured Claim* means a Claim to the extent (i) secured by Collateral, the amount of which is equal to or less than the value of such Collateral (A) as set forth in the Plan of Reorganization, (B) as agreed to by the holder of such Claim and the Debtors, or (C) as determined by a Final Order in accordance with section 506(a) of the Bankruptcy Code, or (ii) secured by the amount of any rights of setoff of the holder thereof under section 553 of the Bankruptcy Code.

1.71.   *Senior Lender Claim* means the Genesis Senior Lender Claims and the Multicare Senior Lender Claims.

1.72.   *Tort Claim* means any Claim related to personal injury, property damage, products liability, wrongful death, employment litigation, or other similar Claims against any of the Debtors which arise out of events which occurred, in whole or in part, prior to the Commencement Date.

B.   *Interpretation; Application of Definitions and Rules of Construction.*

Unless otherwise specified, all section or exhibit references in the Plan of Reorganization are to the respective section in, or exhibit to, the Plan of Reorganization, as the same may be amended, waived, or modified from time to time. The words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to the Plan of Reorganization as a whole and not to any particular section, subsection, or clause contained therein. A term used herein that is not defined herein shall have the meaning assigned to that term in the Bankruptcy Code. The rules of construction contained in section 102 of the Bankruptcy Code shall apply to the Plan of Reorganization. The headings in the Plan of Reorganization are for convenience of reference only and shall not limit or otherwise affect the provisions hereof.

## SECTION 2.  ADMINISTRATIVE EXPENSE CLAIMS AND PRIORITY TAX CLAIMS

### 2.1.  *Administrative Expense Claims.*

Except to the extent that a holder of an Allowed Administrative Expense Claim agrees to a different treatment, the Debtors shall pay to each holder of an Allowed Administrative Expense Claim Cash in an amount equal to such Claim on, or as soon thereafter as is reasonably practicable, the later of the Effective Date and the first Business Day after the date that is thirty (30) calendar days after the date such Administrative Expense Claim becomes an Allowed Administrative Expense Claim; *provided, however,* that Allowed Administrative Expense Claims representing liabilities incurred in the ordinary course of business by the Debtors, as debtors in possession, or liabilities arising under loans or advances to or other obligations incurred by the Debtors, as debtors in possession, whether or not incurred in the ordinary course of business, shall be paid by the Debtors in the ordinary course of business, consistent with past practice and in accordance with the terms and subject to the conditions of any agreements governing, instruments evidencing, or other documents relating to such transactions; and *provided further, however,* that the liabilities of Genesis and Multicare under the Revolving Credit and Guaranty Agreement referred to in Section 2.4 hereof shall be paid as set forth in such Section.

### 2.2.  *Compensation and Reimbursement Claims.*

All entities seeking an award by the Bankruptcy Court of compensation for services rendered or reimbursement of expenses incurred through and including the Confirmation Date under section 503(b)(2), 503(b)(3), 503(b)(4), or 503(b)(5) of the Bankruptcy Code (i) shall file their respective final applications for allowance of compensation for services rendered and reimbursement of expenses incurred by the date that is forty-five (45) days after the Effective Date, and (ii) shall be paid in full in such amounts as are allowed by the Bankruptcy Court (A) upon the later of (i) the Effective Date, and (ii) the date upon which the order relating to any such Administrative Expense Claim is entered, or (B) upon such other terms as may be mutually agreed upon between the holder of such an Administrative Expense Claim and the Debtors or, on and after the Effective Date, the Reorganized Debtors.  The Reorganized Debtors are authorized to pay compensation for services rendered or reimbursement of expenses incurred after the Confirmation Date and until the Effective Date in the ordinary course and without the need for Bankruptcy Court approval.

### 2.3.  *Priority Tax Claims.*

Except to the extent that a holder of an Allowed Priority Tax Claim agrees to a different treatment, each holder of an Allowed Priority Tax Claim shall receive, at the sole option of the Debtors, (i) Cash in an amount equal to such Allowed Priority Tax Claim on, or as soon thereafter as is reasonably practicable, the later of the Effective Date and the first Business Day after the date that is thirty (30) calendar days after the date such Priority Tax Claim becomes an Allowed Priority Tax Claim, or (ii) equal annual Cash payments in an aggregate amount equal to such Allowed Priority Tax Claim, together with interest at a fixed annual rate equal to eight percent (8%), over a period not exceeding six (6) years after the date of assessment of such Allowed Priority Tax Claim.  All Allowed Priority Tax Claims that are not due and payable on or before the Effective Date shall be paid in the ordinary course of business as such obligations become due.

### 2.4.  *DIP Credit Agreement Claims.*

On the Effective Date, (i) Genesis shall pay or arrange for the payment of all amounts outstanding under that certain Revolving Credit and Guaranty Agreement, dated as of June 22, 2000, as amended, among Genesis, certain other Genesis Debtors named therein, Mellon Bank N.A., as

AA. 787

administrative agent, certain co-agents named therein, and the lenders party thereto, and (ii) Multicare shall pay or arrange for payment of all amounts outstanding under that certain Revolving Credit and Guaranty Agreement, dated as of June 22, 2000, as amended, among Multicare, certain other Multicare Debtors named therein, Mellon Bank N.A., as administrative agent, certain co-agents named therein, and the lenders party thereto. Once such payments have been made, these agreements and any agreements or instruments related thereto shall be deemed terminated (subject in all respects to any carve-out approved by the Bankruptcy Court in the Bankruptcy Court orders approving the Revolving Credit and Guaranty Agreements on a final basis), and Mellon Bank, N.A., as administrative agent, and the lenders thereunder shall take all reasonable action to confirm the removal of any liens on the properties of the Genesis Debtors and the Multicare Debtors securing such Revolving Credit and Guaranty Agreements. On the Effective Date, any outstanding letters of credit issued under such agreements shall be either replaced or secured by letters of credit issued under the exit facility described in Section 5.4 hereof.

       2.5.    *Special Provisions Regarding the Indenture Trustees' Fees and Expenses.*

       (a)    The reasonable fees and expenses of each trustee under an Indenture described in Sections 1.37 and 1.50 hereof (an "Indenture Trustee") (which includes the reasonable fees and expenses of any professionals retained by the Indenture Trustees), shall be paid in accordance with the procedures established in this Section 2.5. Provided that such fees and expenses are paid in Cash in full by Genesis or Reorganized Genesis, distributions received by holders of Allowed Genesis Senior Subordinated Note Claims and Allowed Multicare Senior Subordinated Note Claims pursuant to this Plan will not be reduced on account of the payment of any Indenture Trustee's fees and expenses.

       (b)    Ten (10) days prior to the Effective Date, each Indenture Trustee will submit to Genesis appropriate documentation in support of the fees and expenses incurred by such Indenture Trustee through that date (including any estimated fees and expenses through the Effective Date), whether incurred prior to or subsequent to the Commencement Date, together with a detailed, reasonable estimate of any fees and expenses to be incurred thereafter. Such estimate may include, without limitation, projected fees and expenses relating to surrender and cancellation of notes, distribution of securities, and fees and expenses to be incurred in respect of any challenge to the claims asserted by the Indenture Trustee, whether based on the notes or the claimed amount of such fees and expenses. On or prior to the Effective Date, Genesis will pay the undisputed amount of each Indenture Trustee's fees and expenses.

       (c)    No later than thirty (30) days after the Effective Date, or as soon thereafter as may be practical, each Indenture Trustee will deliver to Reorganized Genesis a final invoice for its reasonable fees and expenses incurred through the Effective Date. Reorganized Genesis will have a period of thirty (30) days after receipt to review the final invoice and provide the Indenture Trustee with any objection to the final invoice, stating with specificity its objections to particular charges. If no objection is received by the Indenture Trustee within thirty (30) days after the Indenture Trustee provided Reorganized Genesis with its final invoice, then the Indenture Trustee shall be paid such amount without the need for any further approval of the Bankruptcy Court. If Reorganized Genesis timely advises the Indenture Trustee in writing that it objects to all or a portion of such fees, which objection states with specificity its objection to particular charges, (i) Reorganized Genesis shall pay the undisputed portion of the fees and expenses, and (ii) such Indenture Trustee, at its option, may either submit the disputed portion to the Bankruptcy Court for resolution or exercise its rights under its respective indenture. The Indenture Trustee will not be required to file a fee application or to comply with guidelines and rules applicable to a fee application, and will not be subject to section 330 or 503(b) of the Bankruptcy Code.

       (d)    Subject to Section 5.11 hereof, each Indenture Trustee's charging lien will be discharged solely upon payment in full of such fees and expenses and termination of the Indenture Trustee's duties. Accordingly, nothing herein shall be deemed to impair, waive, or discharge the

RLF1-2353946-1 8/29/019:52 AM          10