UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

------------------------------x
                              :
In re                         :    Chapter 11 Case No.
                              :
GENESIS HEALTH VENTURES, INC., *et al.*,  :    00-2692 (JHW)
                              :
        Debtors.              :
                              :    (Jointly Administered)
------------------------------x
                              :
In re                         :    Chapter 11 Case No.
                              :
MULTICARE AMC, INC., *et al.*,  :    00-2494 (JHW)
                              :
        Debtors.              :
                              :    (Jointly Administered)
------------------------------x

## AMENDMENTS TO DEBTORS' JOINT PLAN OF REORGANIZATION TO COMPLY WITH OPINION ON CONFIRMATION

Genesis Health Ventures, Inc. ("Genesis"), The Multicare Companies, Inc.

("Multicare"), and the other above-captioned debtors and debtors in possession

(collectively with Genesis and Multicare, the "Debtors"), hereby file these Amendments

to the Debtors' Joint Plan of Reorganization, dated July 6, 2001 (the "Plan"),[1] to Comply

with the Court's Opinion on Confirmation.

       1.      Section 5.10 of the Plan (Release of Representatives) is amended

by replacing the entire paragraph with the following paragraphs:

        (a)  As of the Effective Date, the respective officers,
directors, employees, financial advisors, professionals,
accountants, and attorneys of the Genesis Debtors, the
Multicare Debtors, and the respective statutory committees
of unsecured creditors appointed pursuant to section 1102

---

[1] Unless otherwise defined, capitalized terms used herein shall have the meanings
ascribed thereto in the Plan.

of the Bankruptcy Code in the Genesis Reorganization
Cases and the Multicare Reorganization Cases shall be
released by the Debtors from any and all Claims arising on
or after the Commencement Date against them in their
capacity as representatives of the Genesis Debtors, the
Multicare Debtors, or the statutory committees, as
applicable, except (i) for willful misconduct or gross
negligence and (ii) as otherwise expressly provided in the
order of the Bankruptcy Court, dated February 23, 2001,
approving a senior executive retention plan for certain
employees of Genesis.

   (b) As of the Effective Date, the respective officers,
directors, employees, financial advisors, professionals,
accountants, and attorneys of Mellon Bank, N.A., as
administrative agent under the Genesis Senior Lender
Agreements, the Multicare Senior Lender Agreements, and
the Revolving Credit and Guaranty Agreements described
in Section 2.4 hereof shall be released by the Debtors from
any and all Claims against them in their capacity as
representatives of Mellon Bank, N.A.

  2.  Section 10.6 of the Plan (Exculpation) is amended as follows:

in the fourth line after the words "agent under" delete the words ", and any lender under".

3.     Except as expressly amended hereby, all other provisions of the

Plan, as modified by the Technical Amendments to the Plan, dated August 27, 2001,

shall remain unaffected and in full force and effect.

Dated: September 13, 2001
       Wilmington, Delaware


WEIL, GOTSHAL & MANGES LLP            WILLKIE FARR & GALLAGHER
767 Fifth Avenue                      787 Seventh Avenue
New York, New York 10153              New York, New York 10019-6099
(212) 310-8000                        (212) 728-8000
Michael F. Walsh                      Marc Abrams
Gary T. Holtzer                       Paul V. Shalhoub


-and-                                 -and-


RICHARDS, LAYTON & FINGER, P.A.       YOUNG CONAWAY STARGATT &
One Rodney Square                     TAYLOR
P.O. Box 551                          11th Floor, Wilmington Trust Company
Wilmington, Delaware 19899            P.O. Box 391
(302) 658-6541                        Wilmington, Delaware 19899-0391
                                      (302) 571-6600

By: _____          By: _____
Mark D. Collins (No. 2981)            Robert S. Brady (No. 2847)

ATTORNEYS FOR THE GENESIS             ATTORNEYS FOR THE MULTICARE
DEBTORS AND DEBTORS IN                DEBTORS AND DEBTORS IN
POSSESSION                            POSSESSION

# EXHIBIT D

## <u>Objections to Confirmation</u>

1.   AGE Institute of Pennsylvania, Inc., AGE Institute of Massachusetts, Inc., AGE Institute of Florida, Inc., Delaware Valley Convalescent Homes, Inc., and AGE Holding, Inc.

2.   Bexar County

3.   Commonwealth of Pennsylvania, Department of Labor and Industry, Bureau of Employer Tax Operations

4.   Commonwealth of Pennsylvania, Department of Revenue

5.   GMS Group LLC

6.   Indiana Department of Revenue

7.   James J. Hayes

8.   JSM Company

9.   Massachusetts Housing Finance Agency

10.  Michael Goff, *et al.* Tort Claimants

11.  Mr. Charles L. Grimes

12.  Odessa Packaging

13.  Office of the United States Trustee

14.  Steven T. Sapperstein

15.  Susquehanna Center, Inc.

16.  THCI Company LLC

17.  Todd W. Martin, III

18.  Tort Claimants Represented by Wilkes & McHugh, P.A.

# EXHIBIT E

## Resolved Objections

1.  Bexar County

2.  Commonwealth of Pennsylvania, Department of Labor and Industry, Bureau of Employer Tax Operations

3.  Commonwealth of Pennsylvania, Department of Revenue

4.  Michael Goff, *et al.* Tort Claimants (other than with respect to Punitive Damage Claims)

5.  Indiana Department of Revenue

6.  JSM Company

7.  Massachusetts Housing Finance Agency

8.  Susquehanna Center, Inc.

9.  THCI Company LLC

# EXHIBIT F

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

-------------------------------------------------x
                                                 :
In re                                            :    Chapter 11 Case No.
                                                 :
GENESIS HEALTH VENTURES, INC., *et al.*,         :    00-2692 (JHW)
                                                 :
                                                 :    (Jointly Administered)
                                                 :
              Debtors.                           :
-------------------------------------------------x
                                                 :
In re                                            :    Chapter 11 Case No.
                                                 :
MULTICARE AMC, INC., *et al.*,                   :    00-2494 (JHW)
                                                 :
                                                 :    (Jointly Administered)
                                                 :
              Debtors.                           :
-------------------------------------------------x

NOTICE OF EXTENDED DEADLINE FOR: (i) OBJECTING TO
CONFIRMATION OF THE DEBTORS' JOINT PLAN OF
REORGANIZATION TO ALL HOLDERS OF CLASS M1-2 AND
M1-7 CLAIMS; AND (ii) VOTING ON THE PLAN OF
REORGANIZATION TO ALL HOLDERS OF CLASS M1-7 CLAIMS

PLEASE TAKE NOTICE THAT:

        1.     Pursuant to the order, dated July 13, 2001 (the "Order"), of the
United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"):
(i) approving the form and manner of notice of a disclosure statement hearing and the
disclosure statement; (ii) establishing a record date; (iii) establishing notice and objection
procedures for confirmation of the joint plan of reorganization, dated July 6, 2001 (as
amended, the "Plan") of the above-captioned debtors and debtors in possession
(collectively, the "Debtors"); (iv) approving solicitation packages and procedures for
distribution; (v) approving forms of ballots and establishing procedures for voting on the
Plan; and (vi) authorizing the retention of Poorman-Douglas Corporation ("Poorman-
Douglas") as voting agent, the Debtors were required to serve you with a Solicitation
Package, including a Ballot or a Notice of Non-Voting Status, as applicable, on or before
July 18, 2001.[1]

---

[1]    Capitalized terms used herein but not defined shall have the meanings ascribed to
such terms in the Order.

2.     The documents in the Solicitation Package indicate that the Ballots must be delivered to Poorman-Douglas so that they are received no later than 5:00 p.m. Pacific Time on August 17, 2001 (the "Voting Deadline").

3.     The documents in the Solicitation Package also indicate that any objections to confirmation of the Plan must be filed and served so that they are actually received no later than 4:00 p.m. Eastern Time on August 17, 2001 (the "Objection Deadline").

4.     Because you may not have received the Solicitation Package in a timely manner in accordance with the Order, the Debtors are:  (a) extending the Objection Deadline with respect to holders of (i) M1-2 Claims (Multicare Other Secured Claims – Care Haven Bonds), and (ii) M1-7 Claims (Multicare Other Secured Claims - Point Pleasant Bonds); and (b) extending the Voting Deadline with respect to holders of M1-7 Claims, as provided below, notwithstanding any statement to the contrary contained anywhere in the Solicitation Package.[2]

5.     If you are a holder of a Class M1-7 Claim, for your vote to accept or reject the Plan to be counted, you must complete all requested information on the Ballot, execute the Ballot, and return the completed Ballot to the address indicated on the Ballot by 5:00 p.m. **Pacific Daylight Savings Time, on August 24, 2001.**  Any failure to follow the voting instructions included with the Ballot (as modified by this Notice) may disqualify your Ballot and your vote.

6.     For holders of either Class M1-2 *or* Class M1-7 Claims, objections, if any, to the confirmation of the Plan must: (i) be in writing, (ii) state the name and address of the objecting party and the nature of the claim or interest of such party, (iii) state with particularity the basis and nature of any objection or proposed modification, and (iv) be filed, together with proof of service, with the Court and served so that they are received no later than 4:00 p.m., **Eastern Daylight Savings Time, on August 24, 2001** by: (a) the Clerk of the Court; (b) attorneys for the Genesis Debtors, Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153 (Attn: Gary T. Holtzer, Esq.) and Richards, Layton & Finger, P.A., One Rodney Square, P.O. Box 551, Wilmington, Delaware 19899 (Attn:  Mark D. Collins, Esq.); (c) attorneys for the Multicare Debtors, Willkie Farr & Gallagher, 787 Seventh Avenue, New York, New York 10019-6099 (Attn:  Paul V. Shalhoub, Esq.) and Young Conaway Stargatt &Taylor, 11th Floor, Wilmington Trust Company, P.O. Box 391, Wilmington, Delaware 19899-0391 (Attn:  Robert S. Brady, Esq.); (d) attorneys for Mellon Bank, N.A., as agent for the Genesis Debtors' prepetition senior lenders and postpetition lenders and the Multicare Debtors' prepetition senior lenders and postpetition lenders (the "Agent"), Morgan, Lewis & Bockius, 101 Park Avenue, New York, New York, 10178 (Attn:  Richard S. Toder, Esq.) and Klett Rooney Lieber & Schorling, The Brandywine Building, 1000

---

[2]     The Voting Deadline has not been extended with respect to holders of claims in class M1-2 because, pursuant to the Plan, such creditors are not entitled to vote.

West Street, Wilmington, Delaware 19801 (Attn: Teresa Currier, Esq.); (e) attorneys for the statutory committee of unsecured creditors appointed in the Genesis Debtors' chapter 11 cases (the "Genesis Committee"), Akin, Gump, Strauss, Hauer & Feld, L.L.P., 590 Madison Avenue, New York, New York 10022 (Attn: Lisa Beckerman, Esq.) and Pachulski, Stang, Ziehl, Young, & Jones, P.C., 919 N. Market Street, 16th Floor, P.O. Box 8075, Wilmington, Delaware 19899-8705 (Attn: Laura Davis Jones, Esq.); (f) attorneys for the statutory committee of unsecured creditors appointed in the Multicare Debtors' chapter 11 cases (the "Multicare Committee"), Kasowitz, Benson, Torres & Friedman LLP, 1633 Broadway, New York, New York 10019 (Attn: David S. Rosner, Esq.) and Saul Ewing LLP, 222 Delaware Avenue, Suite 1200, P.O. Box 1266, Wilmington, Delaware 19899 (Attn: Mark Minuti, Esq.); and (g) the United States Trustee for the District of Delaware, 601 Walnut Street, Curtis Center, Suite 950 West, Philadelphia, Pennsylvania 19106 (Attn: Joseph McMahon, Esq.). Objections not timely filed and served in the manner set forth above shall not be considered and shall be overruled.

Dated: July 31, 2001

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Michael F. Walsh
Gary T. Holtzer

-and-

RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
P.O. Box 551
Wilmington, Delaware 19899
Mark D. Collins (No. 2981)

ATTORNEYS FOR THE GENESIS DEBTORS AND DEBTORS IN POSSESSION

WILLKIE FARR & GALLAGHER
787 Seventh Avenue
New York, New York 10019-6099
Paul V. Shalhoub
Steven Wilamowsky

-and-

YOUNG CONAWAY STARGATT & TAYLOR
11th Floor, Wilmington Trust Company
P.O. Box 391
Wilmington, Delaware 19899-0391
Robert S. Brady (No. 2847)

ATTORNEYS FOR THE MULTICARE DEBTORS AND DEBTORS IN POSSESSION

3

# EXHIBIT G

2.    The documents in the Solicitation Package indicate that the Ballots must be delivered to Poorman-Douglas so that they are received no later than 5:00 p.m. Pacific Time on August 17, 2001 (the "Voting Deadline").

3.    The documents in the Solicitation Package also indicate that any objections to confirmation of the Plan must be filed and served so that they are actually received no later than 4:00 p.m. Eastern Time on August 17, 2001 (the "Objection Deadline").

4.    Because you may not have received the Solicitation Package in a timely manner in accordance with the Order, the Debtors are extending the Voting Deadline and the Objection Deadline with respect to certain holders of 9 7/8% Genesis Senior Subordinated Notes due 2009 in Class G5 (Genesis Subordinated Note Claims) as provided below.

5.    For your vote to accept or reject the Plan to be counted, you must complete all requested information on the Ballot, execute the Ballot, and return the completed to the address indicated on the Ballot by **5:00 p.m. Pacific Time, on August 24, 2001.** Any failure to follow the voting instructions included with the Ballot may disqualify your Ballot and your vote.

6.    Objections, if any, to the confirmation of the Plan must (i) be in writing, (ii) state the name and address of the objecting party and the nature of the claim or interest of such party, (iii) state with particularity the basis and nature of any objection or proposed modification, and (iv) be filed, together with proof of service, with the Court and served so that they are received no later than **4:00 p.m. Eastern Time on August 24, 2001** by (a) the Clerk of the Court, (b) attorneys for the Genesis Debtors, Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153 (Attn:  Gary T. Holtzer, Esq.) and Richards, Layton & Finger, P.A., One Rodney Square, P.O. Box 551, Wilmington, Delaware 19899 (Attn:  Mark D. Collins, Esq.), (c) attorneys for the Multicare Debtors, Willkie Farr & Gallagher, 787 Seventh Avenue, New York, New York 10019-6099 (Attn:  Paul V. Shalhoub, Esq.) and Young Conaway Stargatt & Taylor, 11th Floor, Wilmington Trust Company, P.O. Box 391, Wilmington, Delaware 19899-0391 (Attn:  Robert S. Brady, Esq.), (d) attorneys for Mellon Bank, N.A., as agent for the Genesis Debtors' prepetition senior lenders and postpetition lenders and the Multicare Debtors' prepetition senior lenders and postpetition lenders (the "Agent"), Morgan, Lewis & Bockius, 101 Park Avenue, New York, New York, 10178 (Attn:  Richard S. Toder, Esq.) and Klett Rooney Lieber & Schorling, The Brandywine Building, 1000 West Street, Wilmington, Delaware 19801 (Attn:  Teresa Currier, Esq.), (e) attorneys for the statutory committee of unsecured creditors appointed in the Genesis Debtors' chapter 11 cases (the "Genesis Committee"), Akin, Gump, Strauss, Hauer & Feld, L.L.P., 590 Madison Avenue, New York, New York 10022 (Attn:  Lisa Beckerman, Esq.) and Pachulski, Stang, Ziehl, Young, & Jones, P.C., 919 N. Market Street, 16th Floor, P.O. Box 8075, Wilmington, Delaware 19899-8705 (Attn:  Laura Davis Jones, Esq.), (f) attorneys for the statutory committee of unsecured creditors appointed in the Multicare Debtors' chapter 11 cases (the "Multicare Committee"), Kasowitz, Benson,

Torres & Friedman LLP, 1633 Broadway, New York, New York 10019 (Attn: David S. Rosner, Esq.) and Saul Ewing LLP, 222 Delaware Avenue, Suite 1200, P.O. Box 1266, Wilmington, Delaware 19899 (Attn: Mark Minuti, Esq.), and (g) the United States Trustee for the District of Delaware, 601 Walnut Street, Curtis Center, Suite 950 West, Philadelphia, Pennsylvania 19106 (Attn: Joseph McMahon, Esq.). Objections not timely filed and served in the manner set forth above shall not be considered and shall be overruled.

Dated: July 31, 2001

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Michael F. Walsh
Gary T. Holtzer

-and-

RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
P.O. Box 551
Wilmington, Delaware 19899
Mark D. Collins (No. 2981)

ATTORNEYS FOR THE GENESIS
DEBTORS AND DEBTORS IN
POSSESSION

WILLKIE FARR & GALLAGHER
787 Seventh Avenue
New York, New York 10019-6099
Marc Abrams
Paul V. Shalhoub

-and-

YOUNG CONAWAY STARGATT &
TAYLOR
11th Floor, Wilmington Trust Company
P.O. Box 391
Wilmington, Delaware 19899-0391
Robert S. Brady (No. 2847)

ATTORNEYS FOR THE MULTICARE
DEBTORS AND DEBTORS IN
POSSESSION

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re | : | Chapter 11 Cases No. |
| GENESIS HEALTH VENTURES INC., *et al.*, | : | 00-2692 (JHW) |
| Debtors. | : | (Jointly Administered) |
| In re | : | Chapter 11 Cases No. |
| MULTICARE AMC, INC., *et al.*, | : | 00-2494 (JHW) |
| Debtors. | : | (Jointly Administered) |

## DEBTORS' JOINT PLAN OF REORGANIZATION
### UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
(212) 310-8000

Co-Attorneys for the Genesis Debtors
as Debtors and Debtors in Possession

RICHARDS, LAYTON & FINGER P.A.
One Rodney Square
P.O. Box 551
Wilmington, Delaware 19899
(302) 658-6541

Co-Attorneys for the Genesis Debtors
as Debtors and Debtors in Possession

---

WILLKIE FARR & GALLAGHER
787 Seventh Avenue
New York, New York 10019
(212) 728-8000

Co-Attorneys for the Multicare Debtors
as Debtors and Debtors in Possession

YOUNG CONAWAY STARGATT &
TAYLOR LLP
11th Floor, Wilmington Trust Company
P.O. Box 391
Wilmington, Delaware 19899-0391
(302) 571-6600

Co-Attorneys for the Multicare Debtors
as Debtors and Debtors in Possession

Dated: July 6, 2001

2335334-1

# TABLE OF CONTENTS

Page

Section 1.    DEFINITIONS AND INTERPRETATION..................................................................... 1

A.    Definitions................................................................................................................... 1

1.1.    Administrative Expense Claim................................................................... 1

1.2.    Allowed......................................................................................................... 1

1.3.    Amended Bylaws ......................................................................................... 2

1.4.    Amended Certificate of Incorporation .................................................... 2

1.5.    Bankruptcy Code......................................................................................... 2

1.6.    Bankruptcy Court......................................................................................... 2

1.7.    Bankruptcy Rules......................................................................................... 2

1.8.    Business Day................................................................................................. 2

1.9.    Cash................................................................................................................ 2

1.10.    Catch-up Distribution................................................................................. 2

1.11.    Claim.............................................................................................................. 2

1.12.    Class............................................................................................................... 2

1.13.    Collateral....................................................................................................... 2

1.14.    Commencement Date................................................................................... 2

1.15.    Confirmation Date....................................................................................... 2

1.16.    Confirmation Hearing ................................................................................ 2

1.17.    Confirmation Order..................................................................................... 3

1.18.    Debtors.......................................................................................................... 3

1.19.    Disbursing Agent......................................................................................... 3

1.20.    Disputed Claim............................................................................................ 3

1.21.    Distribution Record Date .......................................................................... 3

1.22.    Effective Date............................................................................................... 3

1.23.    Equity Interest.............................................................................................. 3

1.24.    Final Distribution Date............................................................................... 3

1.25.    Final Order ................................................................................................... 3

1.26.    Genesis .......................................................................................................... 4

1.27.    Genesis Common Stock Interest ............................................................... 4

1.28.    Genesis Debtors........................................................................................... 4

1.29.    Genesis General Unsecured Claim........................................................... 4

1.30.    Genesis Intercompany Claim .................................................................... 4

2335334-1

i

## TABLE OF CONTENTS
### (continued)

| | | Page |
|---|---|---|
| 1.31. | Genesis Other Secured Claim | 4 |
| 1.32. | Genesis Priority Non-Tax Claim | 4 |
| 1.33. | Genesis Punitive Damage Claim | 4 |
| 1.34. | Genesis Reorganization Cases | 4 |
| 1.35. | Genesis Senior Lender Agreements | 4 |
| 1.36. | Genesis Senior Lender Claim | 5 |
| 1.37. | Genesis Senior Subordinated Note Claim | 5 |
| 1.38. | Insured Claim | 5 |
| 1.39. | Multicare | 5 |
| 1.40. | Multicare Common Stock Interest | 5 |
| 1.41. | Multicare Debtors | 5 |
| 1.42. | Multicare General Unsecured Claim | 5 |
| 1.43. | Multicare Intercompany Claim | 5 |
| 1.44. | Multicare Other Secured Claim | 5 |
| 1.45. | Multicare Priority Non-Tax Claim | 6 |
| 1.46. | Multicare Punitive Damage Claim | 6 |
| 1.47. | Multicare Reorganization Cases | 6 |
| 1.48. | Multicare Senior Lender Agreements | 6 |
| 1.49. | Multicare Senior Lender Claim | 6 |
| 1.50. | Multicare Senior Subordinated Note Claim | 6 |
| 1.51. | New Common Stock | 6 |
| 1.52. | New Convertible Preferred Stock | 6 |
| 1.53. | New Management Incentive Plan | 6 |
| 1.54. | New Multicare Stock | 6 |
| 1.55. | New Senior Notes | 6 |
| 1.56. | New Warrants | 7 |
| 1.57. | Plan Documents | 7 |
| 1.58. | Plan of Merger | 7 |
| 1.59. | Plan of Reorganization | 7 |
| 1.60. | Plan Securities | 7 |
| 1.61. | Plan Supplement | 7 |
| 1.62. | Priority Non-Tax Claim | 7 |

2335334-1

ii

**TABLE OF CONTENTS**
(continued)

Page

1.63.  Priority Tax Claim.................................................................. 7
1.64.  Ratable Proportion ................................................................ 8
1.65.  Reorganization Cases ........................................................... 8
1.66.  Reorganized Debtors ............................................................ 8
1.67.  Reorganized Genesis ............................................................ 8
1.68.  Reorganized Multicare ......................................................... 8
1.69.  Schedules .............................................................................. 8
1.70.  Secured Claim ....................................................................... 8
1.71.  Senior Lender Claim ............................................................. 8
1.72.  Tort Claim ............................................................................. 8
B.     Interpretation; Application of Definitions and Rules of Construction. ..... 8
Section 2.  ADMINISTRATIVE EXPENSE CLAIMS AND PRIORITY TAX CLAIMS ............. 9
2.1.   Administrative Expense Claims ............................................ 9
2.2.   Compensation and Reimbursement Claims .......................... 9
2.3.   Priority Tax Claims ............................................................... 9
2.4.   DIP Credit Agreement Claims .............................................. 9
2.5.   Special Provisions Regarding the Indenture Trustees' Fees and Expenses ....... 10
Section 3.  CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS ....................... 11
3.1.   Genesis Classes. ................................................................. 11
3.2.   Multicare Classes. .............................................................. 12
3.3.   Subclasses for Class G1 ..................................................... 12
3.4.   Subclasses for Class M1 ..................................................... 14
Section 4.  TREATMENT OF CLAIMS AND EQUITY INTERESTS ......................... 14
4.1.   Genesis Other Secured Claims (Class G1)............................ 14
4.2.   Genesis Senior Lender Claims (Class G2)............................ 16
4.3.   Genesis Priority Non-Tax Claims (Class G3) ....................... 16
4.4.   Genesis General Unsecured Claims (Class G4) .................... 16
4.5.   Genesis Senior Subordinated Note Claims (Class G5) .......... 16
4.6.   Genesis Intercompany Claims (Class G6). ........................... 17
4.7.   Genesis Punitive Damage Claims (Class G7) ....................... 17
4.8.   Genesis Series G Preferred Stock Interests (Class G8).......... 17
4.9.   Genesis Series H Preferred Stock Interests (Class G9).......... 17

# TABLE OF CONTENTS
## (continued)

| | | Page |
|---|---|---|
| 4.10. | Genesis Series I Preferred Stock Interests (Class G10) | 17 |
| 4.11. | Genesis Common Stock Interests (Class G11) | 17 |
| 4.12. | Multicare Other Secured Claims (Class M1) | 17 |
| 4.13. | Multicare Senior Lender Claims (Class M2) | 18 |
| 4.14. | Multicare Priority Non-Tax Claims (Class M3) | 18 |
| 4.15. | Multicare General Unsecured Claims (Class M4) | 18 |
| 4.16. | Multicare Senior Subordinated Note Claims (Class M5) | 19 |
| 4.17. | Multicare Intercompany Claims (Class M6) | 19 |
| 4.18. | Multicare Punitive Damage Claims (Class M7) | 19 |
| 4.19. | Multicare Common Stock Interests (Class M8) | 19 |
| Section 5. | MEANS FOR IMPLEMENTATION | 19 |
| 5.1. | Deemed Consolidation of Debtors for Plan Purposes Only | 19 |
| 5.2. | Merger of Corporate Entities | 20 |
| 5.3. | Authorization of Plan Securities | 21 |
| 5.4. | Exit Facility | 21 |
| 5.5. | Waiver of Subordination | 21 |
| 5.6. | Registration Rights Agreement | 21 |
| 5.7. | Listing of New Common Stock | 21 |
| 5.8. | Management Incentive Plan | 22 |
| 5.9. | Release of Non-Debtor Affiliates | 22 |
| 5.10. | Release of Representatives | 22 |
| 5.11. | Cancellation of Existing Securities and Agreements | 22 |
| 5.12. | Board of Directors | 22 |
| 5.13. | Corporate Action | 23 |
| 5.14. | Subsidiary Guaranties | 23 |
| 5.15. | Settlement with the Federal Government | 23 |
| 5.16. | Settlement Between the Genesis Debtors and the Multicare Debtors | 23 |
| Section 6. | DISTRIBUTIONS | 23 |
| 6.1. | Distribution Record Date | 23 |
| 6.2. | Date of Distributions | 24 |
| 6.3. | Distributions to Classes G2, G4, G5, M2, M4, and M5 | 24 |
| 6.4. | Disbursing Agent | 24 |

iv

# TABLE OF CONTENTS
## (continued)

|  |  |  | Page |
|---|---|---|---|
| | 6.5. | Rights and Powers of Disbursing Agent | 25 |
| | 6.6. | Surrender of Instruments | 25 |
| | 6.7. | Delivery of Distributions | 25 |
| | 6.8. | Manner of Payment Under Plan of Reorganization | 26 |
| | 6.9. | Fractional Shares and Fractional Warrants | 27 |
| | 6.10. | Setoffs | 27 |
| | 6.11. | Allocation of Plan Distribution Between Principal and Interest | 27 |
| | 6.12. | Allowance of Claims in Classes G2, G5, M2, and M5 | 27 |
| Section 7. | | PROCEDURES FOR DISPUTED CLAIMS | 27 |
| | 7.1. | Objections to Claims | 27 |
| | 7.2. | Payments and Distributions with Respect to Disputed Claims. | 27 |
| | 7.3. | Distributions After Allowance | 28 |
| | 7.4. | Estimation of Claims. | 28 |
| | 7.5. | Interest and Dividends | 28 |
| Section 8. | | EXECUTORY CONTRACTS AND UNEXPIRED LEASES | 29 |
| | 8.1. | General Treatment | 29 |
| | 8.2. | Cure of Defaults | 29 |
| | 8.3. | Rejection Claims. | 29 |
| | 8.4. | Senior Executives of Reorganized Genesis | 29 |
| | 8.5. | Survival of the Debtors' Corporate Indemnities. | 29 |
| Section 9. | | CONDITION PRECEDENT TO THE EFFECTIVE DATE | 30 |
| Section 10. | | EFFECT OF CONFIRMATION | 30 |
| | 10.1. | Vesting of Assets | 30 |
| | 10.2. | Discharge of Claims and Termination of Equity Interests | 30 |
| | 10.3. | Discharge of Debtors | 30 |
| | 10.4. | Term of Injunctions or Stays | 31 |
| | 10.5. | Injunction Against Interference With Plan | 31 |
| | 10.6. | Exculpation | 31 |
| | 10.7. | Retention of Causes of Action/Reservation of Rights | 31 |
| Section 11. | | RETENTION OF JURISDICTION | 32 |
| Section 12. | | MISCELLANEOUS PROVISIONS | 33 |
| | 12.1. | Payment of Statutory Fees | 33 |

**TABLE OF CONTENTS**
(continued)

Page

12.2.    Retiree Benefits ................................................................................ 33

12.3.    Dissolution of Statutory Committees of Unsecured Creditors.................... 33

12.4.    Substantial Consummation ................................................................ 33

12.5.    Amendments ................................................................................... 34

12.6.    Revocation or Withdrawal of the Plan ................................................ 34

12.7.    Severability .................................................................................... 34

12.8.    Governing Law ............................................................................... 34

12.9.    Time ............................................................................................. 35

12.10.   Notices .......................................................................................... 35

2335334-1

vi

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ————————————————x | | |
| In re | : | Chapter 11 Case No. |
| GENESIS HEALTH VENTURES, INC., *et al.*, | : | 00-2692 (JHW) |
| Debtors. | : | (Jointly Administered) |
| ————————————————x | | |
| In re | : | Chapter 11 Case No. |
| MULTICARE AMC, INC., *et al.*, | : | 00-2494 (JHW) |
| Debtors. | : | (Jointly Administered) |
| ————————————————x | | |

## DEBTORS' JOINT PLAN OF REORGANIZATION
## UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

Genesis Health Ventures, Inc., The Multicare Companies, Inc., and the other above-captioned debtors and debtors in possession propose the following joint chapter 11 Plan of Reorganization, pursuant to section 1121(a) of title 11 of the United States Code:

## SECTION 1.  DEFINITIONS AND INTERPRETATION

A.    **Definitions.**

The following terms used herein shall have the respective meanings defined below (such meanings to be equally applicable to both the singular and plural):

1.1.    *Administrative Expense Claim* means any right to payment constituting a cost or expense of administration of any of the Reorganization Cases allowed under sections 503(b), 507(a)(1), and 1114(e) of the Bankruptcy Code, including, without limitation, any actual and necessary costs and expenses of preserving the Debtors' estates, any actual and necessary costs and expenses of operating the Debtors' businesses, any indebtedness or obligations incurred or assumed by the Debtors, as debtors in possession, during the Reorganization Cases, including, without limitation, for the acquisition or lease of property or an interest in property or the rendition of services, any allowances of compensation and reimbursement of expenses to the extent allowed by Final Order under sections 330 or 503 of the Bankruptcy Code, and any fees or charges assessed against the estates of the Debtors under section 1930 of chapter 123 of title 28 of the United States Code.

1.2.    *Allowed* means, with reference to any Claim, (i) any Claim against any Debtor which has been listed by such Debtor in the Schedules, as such Schedules may be amended by the Debtors from time to time in accordance with Bankruptcy Rule 1009, as liquidated in amount and not disputed or contingent and for which no contrary proof of claim has been filed, (ii) any timely filed Claim as to which no objection to allowance has been interposed in accordance with Section 7.1 hereof or such other applicable period of limitation fixed by the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or as to which any objection has been determined by a Final Order to the extent such objection is determined in favor of the respective holder, or (iii) any Claim expressly allowed by a Final Order or hereunder.

1.3.    *Amended Bylaws* means the Bylaws of Reorganized Genesis, as restated, and which shall be substantially in the form set forth in the Plan Supplement.

1.4.    *Amended Certificate of Incorporation* means the Certificate of Incorporation of Reorganized Genesis, as restated, and which shall be substantially in the form set forth in the Plan Supplement.

1.5.    *Bankruptcy Code* means title 11 of the United States Code, as amended from time to time, as applicable to the Reorganization Cases.

1.6.    *Bankruptcy Court* means the United States District Court for the District of Delaware having jurisdiction over the Reorganization Cases and, to the extent of any reference made under section 157 of title 28 of the United States Code, the unit of such District Court having jurisdiction over the Reorganization Cases under section 151 of title 28 of the United States Code.

1.7.    *Bankruptcy Rules* means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code, as amended from time to time, applicable to the Reorganization Cases, and any Local Rules of the Bankruptcy Court.

1.8.    *Business Day* means any day other than a Saturday, a Sunday, or any other day on which banking institutions in New York, New York are required or authorized to close by law or executive order.

1.9.    *Cash* means legal tender of the United States of America.

1.10.    *Catch-up Distribution* means with respect to each holder of an Allowed Claim in Classes G4, G5, M4, and M5, the difference between (i) the number of shares of New Common Stock or New Warrants such holder would have received if the resolution of all Disputed Claims in such Classes had been known on the Effective Date, and (ii) the aggregate number of shares of New Common Stock or New Warrants previously received by such holder.

1.11.    *Claim* has the meaning set forth in section 101 of the Bankruptcy Code.

1.12.    *Class* means any group of Claims or Equity Interests classified by the Plan of Reorganization pursuant to section 1122(a)(1) of the Bankruptcy Code.

1.13.    *Collateral* means any property or interest in property of the estate of any Debtor subject to a lien, charge, or other encumbrance to secure the payment or performance of a Claim, which lien, charge, or other encumbrance is not subject to avoidance under the Bankruptcy Code.

1.14.    *Commencement Date* means (i) June 22, 2000 with respect to the Genesis Debtors (other than Healthcare Resources Corp.) and the Multicare Debtors, and (ii) July 31, 2000 with respect to Healthcare Resources Corp.

1.15.    *Confirmation Date* means the date on which the Clerk of the Bankruptcy Court enters the Confirmation Order.

1.16.    *Confirmation Hearing* means the hearing to be held by the Bankruptcy Court regarding confirmation of the Plan of Reorganization, as such hearing may be adjourned or continued from time to time.

1.17. *Confirmation Order* means the order of the Bankruptcy Court confirming the Plan of Reorganization pursuant to section 1129 of the Bankruptcy Code.

1.18. *Debtors* means the Genesis Debtors and the Multicare Debtors.

1.19. *Disbursing Agent* means any entity (including any applicable Debtor if it acts in such capacity) in its capacity as a disbursing agent under Section 6.4 hereof.

1.20. *Disputed Claim* means any Claim which has not been Allowed pursuant to the Plan of Reorganization or a Final Order, *and*

(a)      if no proof of claim has been filed by the applicable deadline: (i) a Claim that has been or hereafter is listed on the Schedules as disputed, contingent, or unliquidated; or (ii) a Claim that has been or hereafter is listed on the Schedules as other than disputed, contingent, or unliquidated, but as to which the Debtors or Reorganized Debtors or any other party in interest has interposed an objection or request for estimation which has not been withdrawn or determined by a Final Order; *or*

(b)      if a proof of claim or request for payment of an Administrative Claim has been filed by the applicable deadline: (i) a Claim for which no corresponding Claim has been or hereafter is listed on the Schedules; (ii) a Claim for which a corresponding Claim has been or hereafter is listed on the Schedules as other than disputed, contingent, or unliquidated, but the nature or amount of the Claim as asserted in the proof of claim varies from the nature and amount of such Claim as listed on the Schedules; (iii) a Claim for which a corresponding Claim has been or hereafter is listed on the Schedules as disputed, contingent, or unliquidated; (iv) a Claim for which a timely objection or request for estimation is interposed by the Debtors or the Reorganized Debtors which has not been withdrawn or determined by a Final Order; or (v) any Tort Claim.

1.21. *Distribution Record Date* means the Confirmation Date.

1.22. *Effective Date* means a Business Day on or after the Confirmation Date specified by Genesis and Multicare on which (i) no stay of the Confirmation Order is in effect, and (ii) the condition to the effectiveness of the Plan of Reorganization specified in Section 9 hereof has been satisfied or waived.

1.23. *Equity Interest* means the interest of any holder of an equity security of any of the Debtors represented by any issued and outstanding shares of common or preferred stock or other instrument evidencing a present ownership interest in any of the Debtors, whether or not transferable, or any option, warrant, or right, contractual or otherwise, to acquire any such interest.

1.24. *Final Distribution Date* means, in the event there exist on the Effective Date any Disputed Claims classified in Classes G4, G5, M4, or M5, a date selected by the Reorganized Debtors, in their sole discretion, on which all such Disputed Claims have been resolved by Final Order.

1.25. *Final Order* means an order or judgment of the Bankruptcy Court entered by the Clerk of the Bankruptcy Court on the docket in the Reorganization Cases, which has not been reversed, vacated, or stayed and as to which (i) the time to appeal, petition for *certiorari*, or move for a new trial, reargument, or rehearing has expired and as to which no appeal, petition for *certiorari*, or other proceedings for a new trial, reargument, or rehearing shall then be pending, or (ii) if an appeal, writ of *certiorari*, new trial, reargument, or rehearing thereof has been sought, such order or judgment of the Bankruptcy Court shall have been affirmed by the highest court to which such order was appealed, or *certiorari* shall have been denied, or a new trial, reargument, or rehearing shall have been denied or

resulted in no modification of such order, and the time to take any further appeal, petition for *certiorari* or move for a new trial, reargument, or rehearing shall have expired; *provided, however,* that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be filed relating to such order shall not cause such order to not be a Final Order.

1.26.  *Genesis* means Genesis Health Ventures, Inc., a Pennsylvania corporation, the parent debtor or debtor in possession, as the context requires.

1.27.  *Genesis Common Stock Interest* means the Equity Interest of any holder of the authorized common stock issued by Genesis or any option, warrant, or right, contractual or otherwise, to acquire any such Equity Interest.

1.28.  *Genesis Debtors* means Genesis and the entities listed on Exhibit A hereto.

1.29.  *Genesis General Unsecured Claim* means any Claim against any of the Genesis Debtors that (a) is not a Genesis Other Secured Claim, Genesis Senior Lender Claim, Administrative Expense Claim, Priority Tax Claim, Genesis Priority Non-Tax Claim, Genesis Senior Subordinated Note Claim, Genesis Intercompany Claim, or Genesis Punitive Damage Claim, or (b) is otherwise determined by the Bankruptcy Court to be a Genesis General Unsecured Claim.

1.30.  *Genesis Intercompany Claim* means a Claim held by a wholly-owned Genesis Debtor against another wholly-owned Genesis Debtor.

1.31.  *Genesis Other Secured Claim* means any Secured Claim against any of the Genesis Debtors not constituting a secured Genesis Senior Lender Claim.

1.32.  *Genesis Priority Non-Tax Claim* means any Claim against any of the Genesis Debtors other than an Administrative Expense Claim or a Priority Tax Claim, entitled to priority in payment as specified in section 507(a)(3), (4), (5), (6), (7), or (9) of the Bankruptcy Code.

1.33.  *Genesis Punitive Damage Claim* means any Claim against any of the Genesis Debtors, whether secured or unsecured, for any fine, penalty, forfeiture, attorneys' fees (to the extent such attorneys' fees are punitive in nature), or for multiple, exemplary, or punitive damages, to the extent that such fine, penalty, forfeiture, attorneys' fees, or damages is not compensation for actual pecuniary loss suffered by the holder of such Claim and not statutorily prescribed.

1.34.  *Genesis Reorganization Cases* means the jointly administered cases under chapter 11 of the Bankruptcy Code commenced by the Genesis Debtors on June 22, 2000, and July 31, 2000 in the United States District Court for the District of Delaware and styled *In re Genesis Health Ventures, Inc., et al.*, 00-2692 (JHW).

1.35.  *Genesis Senior Lender Agreements* means (i) that certain Fourth Amended and Restated Credit Agreement, dated as of August 20, 1999, among Genesis, certain other Genesis Debtors named therein , Mellon Bank N.A., as administrative agent, certain co-agents named therein, and the lender parties thereto, and any of the documents and instruments relating thereto or referred to therein, (ii) that certain Amended and Restated Synthetic Lease Financing Facility, dated as of October 7, 1996, among Genesis, Genesis Eldercare Properties, Inc., Mellon Bank N.A., as administrative agent, certain co-agents named therein, and the lender parties thereto, and any of the documents and instruments relating thereto, and (iii) any Swap Agreement (as defined in that certain Fourth Amended and Restated Collateral Agency Agreement, dated as of August 20, 1999, among Genesis, Mellon Bank, N.A., as agent for the lenders party to the Fourth Amended and Restated Credit Agreement, as agent for the lenders party

to the Amended and Restated Synthetic Lease Financing Facility, and as collateral agent for the secured parties thereto), among Genesis and the counterparties to such Swap Agreement.

1.36.   *Genesis Senior Lender Claim* means any Claim against any of the Genesis Debtors based on the Genesis Senior Lender Agreements (inclusive of postpetition interest) net of all Cash payments made by the Genesis Debtors to the holders of such Claims on or after the Commencement Date; *provided, however,* that the Claims of Citibank, N.A. in connection with the prepetition termination of interest rate hedging agreements are Genesis Senior Lender Claims to the extent of $17,290,962.

1.37.   *Genesis Senior Subordinated Note Claim* means a Claim against Genesis arising under or in connection with (i) the Indenture, dated as of June 15, 1995, between Genesis and State Street Bank and Trust Company, as trustee, as such Indenture may have been amended or modified, and the $120,000,000 of 9-3/4% Senior Subordinated Notes due 2005 issued thereunder, (ii) the Indenture, dated as of October 7, 1996, between Genesis and State Street Bank and Trust Company, as successor trustee, as such Indenture may have been amended or modified, and the $125,000,000 of 9-1/4% Senior Subordinated Notes due 2006 issued thereunder, (iii) the Indenture, dated as of December 23, 1998, between Genesis and The Bank of New York, as trustee, as such Indenture may have been amended or modified, and the $125,000,000 of 9-7/8% Senior Subordinated Notes due 2009 issued thereunder, or (iv) the Indenture, dated as of September 15, 1995, between Grancare, Inc. and Marine Midland Bank, as trustee, as such Indenture may have been amended or modified, and the $100,000,000 of 9-3/8% Senior Subordinated Notes due 2005 issued thereunder, of which $1,590,000 remains outstanding, excluding the fees and expenses of the trustees under these Indentures, which shall be paid pursuant to Section 2.5 hereof.

1.38.   *Insured Claim* means any Claim arising from an incident or occurrence that is covered under any of the Debtors' insurance policies.

1.39.   *Multicare* means Genesis ElderCare Corp., a Delaware corporation, the parent debtor or debtor in possession, as the context requires, and the owner of all the common stock of The Multicare Companies, Inc., a Delaware corporation.

1.40.   *Multicare Common Stock Interest* means the Equity Interest of any holder of the authorized common stock issued by Multicare or any option, warrant, or right, contractual or otherwise, to acquire any such Equity Interest.

1.41.   *Multicare Debtors* means Multicare, a Delaware corporation, and the entities listed on Exhibit B hereto.

1.42.   *Multicare General Unsecured Claim* means any Claim against any of the Multicare Debtors that (i) is not a Multicare Other Secured Claim, Multicare Senior Lender Claim, Administrative Expense Claim, Priority Tax Claim, Multicare Priority Non-Tax Claim, Multicare Senior Subordinated Note Claim, Multicare Intercompany Claim, or Multicare Punitive Damage Claim, or (ii) is otherwise determined by the Bankruptcy Court to be a Multicare General Unsecured Claim.

1.43.   *Multicare Intercompany Claim* means a Claim held by a wholly-owned Multicare Debtor against another wholly-owned Multicare Debtor.

1.44.   *Multicare Other Secured Claim* means any Secured Claim against any of the Multicare Debtors not constituting a secured Multicare Senior Lender Claim.

1.45.   *Multicare Priority Non-Tax Claim* means any Claim against any of the Multicare Debtors, other than an Administrative Expense Claim or a Priority Tax Claim, entitled to priority in payment as specified in section 507(a)(3), (4), (5), (6), (7), or (9) of the Bankruptcy Code.

1.46.   *Multicare Punitive Damage Claim* means any Claim against any of the Multicare Debtors, whether secured or unsecured, for any fine, penalty, forfeiture, or attorneys' fees (to the extent such attorneys' fees are punitive in nature), or for multiple, exemplary, or punitive damages, to the extent that such fine, penalty, forfeiture, attorneys' fees, or damages is not compensation for actual pecuniary loss suffered by the holder of such Claim and not statutorily prescribed.

1.47.   *Multicare Reorganization Cases* means the jointly administered cases under chapter 11 of the Bankruptcy Code commenced by the Multicare Debtors on June 22, 2000 in the United States District Court for the District of Delaware and styled *In re Multicare AMC, Inc., et al.*, 00-2494 (JHW).

1.48.   *Multicare Senior Lender Agreements* means that certain Credit Agreement dated as of October 9, 1997, as amended, among Multicare, certain other Multicare Debtors named therein, Mellon Bank N.A., as administrative agent, certain co-agents named therein, and the lender parties thereto, and any of the documents and instruments relating thereto.

1.49.   *Multicare Senior Lender Claim* means any Claim against any of the Multicare Debtors based on the Multicare Senior Lender Agreements net of all Cash payments made by the Multicare Debtors to the holders of such Claims on or after the Commencement Date.

1.50.   *Multicare Senior Subordinated Note Claim* means a Claim against The Multicare Companies, Inc. arising under or in connection with the Indenture, dated as of August 11, 1997, between Genesis ElderCare Acquisition Corp. (now known as The Multicare Companies, Inc.) and PNC Bank, National Association, as trustee, and the $250,000,000 of 9% Senior Subordinated Notes due 2007 issued thereunder.

1.51.   *New Common Stock* means the 41,000,000 shares of common stock of Reorganized Genesis authorized and issued hereunder on the Effective Date and any additional shares authorized for the purposes specified herein or in the Plan Securities.

1.52.   *New Convertible Preferred Stock* means the shares of convertible 6% PIK preferred stock of Reorganized Genesis with a liquidation preference of $42,600,000 authorized and issued hereunder on the Effective Date. The conversion rate for this preferred stock is $20.33 of liquidation value for each share of New Common Stock.

1.53.   *New Management Incentive Plan* means the management incentive plan for certain employees of Reorganized Genesis, as set forth in the Plan Supplement.

1.54.   *New Multicare Stock* means the common stock of Reorganized Multicare authorized and issued hereunder on the Effective Date.

1.55.   *New Senior Notes* means the Term B Notes in the aggregate principal amount of $242,605,000, authorized and issued hereunder by Reorganized Genesis on the Effective Date, the terms of which are governed by the Note Indenture, dated as of the Effective Date, between Reorganized Genesis and an indenture trustee acceptable to Reorganized Genesis and the steering group for the holders of the Senior Lender Claims, in the form set forth in the Plan Supplement and the security agreements, mortgages, and guaranties, dated as of the Effective Date, in the form set forth in the Plan Supplement.

2335334-1

6

The New Senior Notes are guarantied by all of the subsidiaries of Reorganized Genesis and are secured by the real estate and related fixtures of the Reorganized Debtors and each other subsidiary of Reorganized Genesis in accordance with the Security Agreement, in the form set forth in the Plan Supplement, subject to (i) any existing validly perfected and unavoidable security interests in Class G1 or Class M1, and (ii) any security interests granted to lenders providing financing under Section 5.4 hereof (and to lenders providing a replacement for or refinancing of such financing); *provided*, that a subsidiary of Reorganized Genesis shall not guaranty the New Senior Notes and/or grant a security interest in its assets to secure the New Senior Notes to the extent the existing debt instruments of such subsidiary or, in the case of Classes G1 and M1, the reinstated debt instruments of such Debtor, would prohibit such a guaranty or grant of a security interest. The New Senior Notes are also secured by a junior lien on the property securing the claims in Subclass G1-17.

1.56. *New Warrants* means warrants to purchase 4,559,475 shares of New Common Stock. The New Warrants shall expire on the first anniversary of the Effective Date and shall have an exercise price of $20.33 per share of New Common Stock. The New Warrants will be in the form set forth in the Plan Supplement.

1.57. *Plan Documents* means the documents to be executed, delivered, assumed, and/or performed in conjunction with the consummation of the Plan of Reorganization on the Effective Date, including but not limited to (i) the Amended Bylaws, (ii) the Amended Certificate of Incorporation, (iii) the Term B Note Indenture, (iv) the security agreements, mortgages, and guaranties, (v) the Certificate of Designation for the New Convertible Preferred Stock, (vi) the Plan of Merger, (vii) the Registration Rights Agreement, (viii) the settlement agreement referred to in Section 5.15 hereof, (ix) the settlement agreement referred to in Section 5.16 hereof, and (x) the New Management Incentive Plan. Each of the Plan Documents to be entered into as of the Effective Date will be filed in draft form in the Plan Supplement.

1.58. *Plan of Merger* means that certain Plan of Merger among Genesis, Multicare Acquisition Corporation, a wholly-owned, indirect subsidiary of Genesis, and Multicare, in the form set forth in the Plan Supplement.

1.59. *Plan of Reorganization* means this joint chapter 11 plan of reorganization, including the exhibits hereto, as the same may be amended or modified from time to time in accordance with the provisions of the Bankruptcy Code and the terms hereof.

1.60. *Plan Securities* means, collectively, the New Senior Notes, the New Convertible Preferred Stock, the New Common Stock, and the New Warrants.

1.61. *Plan Supplement* means a supplemental appendix to the Plan of Reorganization that will contain the draft form of the Plan Documents to be entered into as of the Effective Date, to be filed 10 days before the date of the Confirmation Hearing, and in any event no later than 5 days prior to the last date by which votes to accept or reject the Plan of Reorganization must be submitted. Documents to be included in the Plan Supplement will be posted at www.ghv.com as they become available, but no later than 5 days prior to the last date by which votes to accept or reject the Plan must be submitted.

1.62. *Priority Non-Tax Claim* means any Claim, other than an Administrative Expense Claim or a Priority Tax Claim, entitled to priority in payment as specified in section 507(a)(3), (4), (5), (6), (7), or (9) of the Bankruptcy Code.

1.63. *Priority Tax Claim* means any Claim of a governmental unit of the kind entitled to priority in payment as specified in sections 502(i) and 507(a)(8) of the Bankruptcy Code.

1.64.    *Ratable Proportion* means the ratio (expressed as a percentage) of the amount of an Allowed Claim in a Class to the aggregate amount of all Allowed Claims in the same Class.

1.65.    *Reorganization Cases* means the Genesis Reorganization Cases and the Multicare Reorganization Cases.

1.66.    *Reorganized Debtors* means Reorganized Genesis and each of the Debtors listed on Exhibits A and B hereto.

1.67.    *Reorganized Genesis* means Genesis, as reorganized as of the Effective Date in accordance with the Plan of Reorganization and after giving effect to the merger described in Section 5.2 hereof.

1.68.    *Reorganized Multicare* means Multicare, as reorganized as of the Effective Date in accordance with the Plan of Reorganization before giving effect to the merger described in Section 5.2 hereof.

1.69.    *Schedules* means the schedules of assets and liabilities and the statement of financial affairs filed by the Genesis Debtors or the Multicare Debtors under section 521 of the Bankruptcy Code, Bankruptcy Rule 1007, and the Official Bankruptcy Forms of the Bankruptcy Rules as such schedules and statements have been or may be supplemented or amended through the Confirmation Date.

1.70.    *Secured Claim* means a Claim to the extent (i) secured by Collateral, the amount of which is equal to or less than the value of such Collateral (A) as set forth in the Plan of Reorganization, (B) as agreed to by the holder of such Claim and the Debtors, or (C) as determined by a Final Order in accordance with section 506(a) of the Bankruptcy Code, or (ii) secured by the amount of any rights of setoff of the holder thereof under section 553 of the Bankruptcy Code.

1.71.    *Senior Lender Claim* means the Genesis Senior Lender Claims and the Multicare Senior Lender Claims.

1.72.    *Tort Claim* means any Claim related to personal injury, property damage, products liability, wrongful death, employment litigation, or other similar Claims against any of the Debtors which arise out of events which occurred, in whole or in part, prior to the Commencement Date.

B.    *Interpretation; Application of Definitions and Rules of Construction.*

Unless otherwise specified, all section or exhibit references in the Plan of Reorganization are to the respective section in, or exhibit to, the Plan of Reorganization, as the same may be amended, waived, or modified from time to time. The words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to the Plan of Reorganization as a whole and not to any particular section, subsection, or clause contained therein. A term used herein that is not defined herein shall have the meaning assigned to that term in the Bankruptcy Code. The rules of construction contained in section 102 of the Bankruptcy Code shall apply to the Plan of Reorganization. The headings in the Plan of Reorganization are for convenience of reference only and shall not limit or otherwise affect the provisions hereof.

## SECTION 2.  ADMINISTRATIVE EXPENSE CLAIMS AND PRIORITY TAX CLAIMS

### 2.1.    *Administrative Expense Claims.*

Except to the extent that a holder of an Allowed Administrative Expense Claim agrees to a different treatment, the Debtors shall pay to each holder of an Allowed Administrative Expense Claim Cash in an amount equal to such Claim on, or as soon thereafter as is reasonably practicable, the later of the Effective Date and the first Business Day after the date that is thirty (30) calendar days after the date such Administrative Expense Claim becomes an Allowed Administrative Expense Claim; *provided, however,* that Allowed Administrative Expense Claims representing liabilities incurred in the ordinary course of business by the Debtors, as debtors in possession, or liabilities arising under loans or advances to or other obligations incurred by the Debtors, as debtors in possession, whether or not incurred in the ordinary course of business, shall be paid by the Debtors in the ordinary course of business, consistent with past practice and in accordance with the terms and subject to the conditions of any agreements governing, instruments evidencing, or other documents relating to such transactions; and *provided further, however,* that the liabilities of Genesis and Multicare under the Revolving Credit and Guaranty Agreement referred to in Section 2.4 hereof shall be paid as set forth in such Section.

### 2.2.    *Compensation and Reimbursement Claims.*

All entities seeking an award by the Bankruptcy Court of compensation for services rendered or reimbursement of expenses incurred through and including the Confirmation Date under section 503(b)(2), 503(b)(3), 503(b)(4), or 503(b)(5) of the Bankruptcy Code (i) shall file their respective final applications for allowance of compensation for services rendered and reimbursement of expenses incurred by the date that is forty-five (45) days after the Effective Date, and (ii) shall be paid in full in such amounts as are allowed by the Bankruptcy Court (A) upon the later of (i) the Effective Date, and (ii) the date upon which the order relating to any such Administrative Expense Claim is entered, or (B) upon such other terms as may be mutually agreed upon between the holder of such an Administrative Expense Claim and the Debtors or, on and after the Effective Date, the Reorganized Debtors. The Reorganized Debtors are authorized to pay compensation for services rendered or reimbursement of expenses incurred after the Confirmation Date and until the Effective Date in the ordinary course and without the need for Bankruptcy Court approval.

### 2.3.    *Priority Tax Claims.*

Except to the extent that a holder of an Allowed Priority Tax Claim agrees to a different treatment, each holder of an Allowed Priority Tax Claim shall receive, at the sole option of the Debtors, (i) Cash in an amount equal to such Allowed Priority Tax Claim on, or as soon thereafter as is reasonably practicable, the later of the Effective Date and the first Business Day after the date that is thirty (30) calendar days after the date such Priority Tax Claim becomes an Allowed Priority Tax Claim, or (ii) equal annual Cash payments in an aggregate amount equal to such Allowed Priority Tax Claim, together with interest at a fixed annual rate equal to eight percent (8%), over a period not exceeding six (6) years after the date of assessment of such Allowed Priority Tax Claim. All Allowed Priority Tax Claims that are not due and payable on or before the Effective Date shall be paid in the ordinary course of business as such obligations become due.

### 2.4.    *DIP Credit Agreement Claims.*

On the Effective Date, (i) Genesis shall pay or arrange for the payment of all amounts outstanding under that certain Revolving Credit and Guaranty Agreement, dated as of June 22, 2000, as amended, among Genesis, certain other Genesis Debtors named therein, Mellon Bank N.A., as

administrative agent, certain co-agents named therein, and the lenders party thereto, and (ii) Multicare shall pay or arrange for payment of all amounts outstanding under that certain Revolving Credit and Guaranty Agreement, dated as of June 22, 2000, as amended, among Multicare, certain other Multicare Debtors named therein, Mellon Bank N.A., as administrative agent, certain co-agents named therein, and the lenders party thereto. Once such payments have been made, these agreements and any agreements or instruments related thereto shall be deemed terminated (subject in all respects to any carve-out approved by the Bankruptcy Court in the Bankruptcy Court orders approving the Revolving Credit and Guaranty Agreements on a final basis), and Mellon Bank, N.A., as administrative agent, and the lenders thereunder shall take all reasonable action to confirm the removal of any liens on the properties of the Genesis Debtors and the Multicare Debtors securing such Revolving Credit and Guaranty Agreements. On the Effective Date, any outstanding letters of credit issued under such agreements shall be either replaced or secured by letters of credit issued under the exit facility described in Section 5.4 hereof.

2.5.    *Special Provisions Regarding the Indenture Trustees' Fees and Expenses.*

(a)    The reasonable fees and expenses of each trustee under an Indenture described in Sections 1.37 and 1.50 hereof (an "Indenture Trustee") (which includes the reasonable fees and expenses of any professionals retained by the Indenture Trustees), shall be paid in accordance with the procedures established in this Section 2.5. Provided that such fees and expenses are paid in Cash in full by Genesis or Reorganized Genesis, distributions received by holders of Allowed Genesis Senior Subordinated Note Claims and Allowed Multicare Senior Subordinated Note Claims pursuant to this Plan will not be reduced on account of the payment of any Indenture Trustee's fees and expenses.

(b)    Ten (10) days prior to the Effective Date, each Indenture Trustee will submit to Genesis appropriate documentation in support of the fees and expenses incurred by such Indenture Trustee through that date (including any estimated fees and expenses through the Effective Date), whether incurred prior to or subsequent to the Commencement Date, together with a detailed, reasonable estimate of any fees and expenses to be incurred thereafter. Such estimate may include, without limitation, projected fees and expenses relating to surrender and cancellation of notes, distribution of securities, and fees and expenses to be incurred in respect of any challenge to the claims asserted by the Indenture Trustee, whether based on the notes or the claimed amount of such fees and expenses. On or prior to the Effective Date, Genesis will pay the undisputed amount of each Indenture Trustee's fees and expenses.

(c)    No later than thirty (30) days after the Effective Date, or as soon thereafter as may be practical, each Indenture Trustee will deliver to Reorganized Genesis a final invoice for its reasonable fees and expenses incurred through the Effective Date. Reorganized Genesis will have a period of thirty (30) days after receipt to review the final invoice and provide the Indenture Trustee with any objection to the final invoice, stating with specificity its objections to particular charges. If no objection is received by the Indenture Trustee within thirty (30) days after the Indenture Trustee provided Reorganized Genesis with its final invoice, then the Indenture Trustee shall be paid such amount without the need for any further approval of the Bankruptcy Court. If Reorganized Genesis timely advises the Indenture Trustee in writing that it objects to all or a portion of such fees, which objection states with specificity its objection to particular charges, (i) Reorganized Genesis shall pay the undisputed portion of the fees and expenses, and (ii) such Indenture Trustee, at its option, may either submit the disputed portion to the Bankruptcy Court for resolution or exercise its rights under its respective indenture. The Indenture Trustee will not be required to file a fee application or to comply with guidelines and rules applicable to a fee application, and will not be subject to section 330 or 503(b) of the Bankruptcy Code.

(d)    Subject to Section 5.11 hereof, each Indenture Trustee's charging lien will be discharged solely upon payment in full of such fees and expenses and termination of the Indenture Trustee's duties. Accordingly, nothing herein shall be deemed to impair, waive, or discharge the

Indenture Trustee charging lien for any fees and expenses not paid by Reorganized Genesis. Pursuant to Section 6.5(b) hereof, each Indenture Trustee shall be entitled to its fees and expenses incurred after the Effective Date as a Disbursing Agent.

## SECTION 3.  CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS

The following tables designate the Classes of Claims against and Equity Interests in the Genesis Debtors and the Multicare Debtors, respectively, and specify which of those Classes are (i) impaired or unimpaired by the Plan of Reorganization, (ii) entitled to vote to accept or reject the Plan of Reorganization in accordance with section 1126 of the Bankruptcy Code, and (iii) deemed to reject the Plan of Reorganization.

3.1.  *Genesis Classes.*

| *Class* | *Designation* | *Impairment* | *Entitled to Vote* |
|---|---|---|---|
| Subclasses G1-1 through G1-12 | Genesis Other Secured Claims | Unimpaired | No |
| Subclasses G1-13 through G1-17 | Genesis Other Secured Claims | Impaired | Yes |
| Class G2 | Genesis Senior Lender Claims | Impaired | Yes |
| Class G3 | Genesis Priority Non-Tax Claims | Unimpaired | No |
| Class G4 | Genesis General Unsecured Claims | Impaired | Yes |
| Class G5 | Genesis Senior Subordinated Note Claims | Impaired | Yes |
| Class G6 | Genesis Intercompany Claims | Unimpaired | No |
| Class G7 | Genesis Punitive Damage Claims | Impaired | No (deemed to reject) |
| Class G8 | Genesis Series G Preferred Stock Interests | Impaired | No (deemed to reject) |
| Class G9 | Genesis Series H Preferred Stock Interests | Impaired | No (deemed to reject) |
| Class G10 | Genesis Series I Preferred Stock Interests | Impaired | No (deemed to reject) |
| Class G11 | Genesis Common Stock Interests | Impaired | No (deemed to reject) |

3.2.    *Multicare Classes.*

| *Class* | *Designation* | *Impairment* | *Entitled to Vote* |
|---|---|---|---|
| Subclasses M1-1 through M1-6 | Multicare Other Secured Claims | Unimpaired | No |
| Subclass M1-7 | Multicare Other Secured Claims | Impaired | Yes |
| Class M2 | Multicare Senior Lender Claims | Impaired | Yes |
| Class M3 | Multicare Priority Non-Tax Claims | Unimpaired | No |
| Class M4 | Multicare General Unsecured Claims | Impaired | Yes |
| Class M5 | Multicare Senior Subordinated Note Claims | Impaired | Yes |
| Class M6 | Multicare Intercompany Claims | Unimpaired | No |
| Class M7 | Multicare Punitive Damage Claims | Impaired | No (deemed to reject) |
| Class M8 | Multicare Common Stock Interests | Impaired | No (deemed to reject) |

3.3.    *Subclasses for Class G1.*

    For convenience of identification, the Plan of Reorganization classifies the Allowed Claims in Class G1 as a single Class. This Class is actually a group of subclasses, depending on the underlying property securing such Allowed Claims, and each subclass is treated hereunder as a distinct Class for voting and distribution purposes. The following table identifies the material subclasses for Class G1.

| Subclass | Designation | Impairment | Entitled to Vote |
|---|---|---|---|
| G1-1 | Broad Street Office Building 148 West State Street, Kennett Square, Pa. (Pa. IDA) | Unimpaired | No |
| G1-2 | Broad Street Office Building 148 West State Street, Kennett Square, Pa. (Pa. IDA) | Unimpaired | No |
| G1-3 | Pleasant View Center (HUD) | Unimpaired | No |
| G1-4 | Country Village Center (HUD) | Unimpaired | No |
| G1-5 | Abington Manor (Lackawanna County IDA) | Unimpaired | No |
| G1-6 | Silver Lake Center (Del. EDA Bonds) | Unimpaired | No |
| G1-7 | River Street Center (Luzerne County IDA) | Unimpaired | No |
| G1-8 | Kresson View Center (NJEDA Refunding Bonds) | Unimpaired | No |
| G1-9 | Mifflin Court (ElderTrust) | Unimpaired | No |
| G1-10 | Oaks Center (ElderTrust) | Unimpaired | No |
| G1-11 | Coquina Assisted Living (ElderTrust) | Unimpaired | No |
| G1-12 | Homestead Center Kimberly Hall South Center Kimberly Hall North Center Seaford Center Milford Center Windsor Center (U.S. Bank, N.A., as trustee for the "Bradford Bonds") | Unimpaired | No |
| G1-13 | Brakely Park Center (HUD) | Impaired | Yes |
| G1-14 | North Cape Center (HUD) | Impaired | Yes |
| G1-15 | Oak Hill Center (HUD) | Impaired | Yes |
| G1-16 | Rittenhouse Pine Center (Meditrust) | Impaired | Yes |
| G1-17 | Atlantis Center Bowmans Center Fairway Center Oakwood Center Riverwood Center Tierra Center Williamsburg Center Windham Center Woodmont Center (synthetic lease lenders) | Impaired | Yes |

Subclass G1-8 consists of the secured Claim of SunTrust Bank, as successor indenture trustee ("SunTrust") under that certain Trust Indenture, dated as of May 1, 1990 (the "SunTrust Indenture"), between the New Jersey Economic Development Authority ("NJEDA") and SunTrust, pursuant to which NJEDA issued (i) those certain $1,175,000 New Jersey Economic Development Authority Economic Development Refunding Bonds (Geriatric and Medical Services, Inc. -- Care Inn of Voorhees Project) 1990 Series A; and (ii) those certain $5,000,000 New Jersey Economic Development Authority Economic Development Refunding Bonds (Geriatric and Medical Services, Inc. -- Care Inn of Voorhees Project) 1990 Series B (collectively, the "Kresson View Center Bonds"). The secured Claim of SunTrust in Subclass G1-8 is (i) allowed in the principal amount of $5,535,000, plus accrued and unpaid

interest, and reasonable costs and expenses, as more fully provided in the SunTrust Indenture and all other documents and agreements executed in connection with the Kresson View Center Bonds, and (ii) secured by a duly perfected, first priority mortgage and lien on certain real and personal property (whether now owned or hereafter acquired) of Geriatric and Medical Services, Inc. relating to a project known as the "Kresson View Center" f/k/a "Care Inn of Voorhees" located in the Township of Voorhees, New Jersey, including without limitation, all revenues and accounts arising therefrom, among other collateral. In addition, the secured Claim of SunTrust in Subclass G1-8 is guarantied pursuant to a Guaranty Agreement (the "Kresson View Center Guaranty") by and between Geriatric & Medical Companies, Inc. (as successor to Geriatric & Medical Centers, Inc.) and SunTrust.

### 3.4. *Subclasses for Class M1.*

For convenience of identification, the Plan of Reorganization classifies the Allowed Claims in Class M1 as a single Class. This Class is actually a group of subclasses, depending on the underlying property securing such Allowed Claims, and each subclass is treated hereunder as a distinct Class for voting and distribution purposes. The following table identifies the material subclasses for Class M1.

| Class | Designation | Impairment | Entitled to Vote |
|-------|-------------|------------|------------------|
| M1-1 | Rosewood Center (Tyler County, WV) | Unimpaired | No |
| M1-2 | Sisterville Center (Care Haven) (Tyler County, WV) | Unimpaired | No |
| M1-3 | Raleigh Center (WV Hospital Authority) | Unimpaired | No |
| M1-4 | Westford Center (HUD) | Unimpaired | No |
| M1-5 | Willows Center<br>Cedar Ridge Center<br>Dawn View Center<br>(MediTrust) | Unimpaired | No |
| M1-6 | Teays Valley (West Virginia Hospital Authority) | Unimpaired | No |
| M1-7 | Point Pleasant (Mason County WV) | Impaired | Yes |

## SECTION 4.   TREATMENT OF CLAIMS AND EQUITY INTERESTS

### 4.1. *Genesis Other Secured Claims (Class G1).*

Except for the Genesis Other Secured Claims in Subclasses G1-8 and G1-12, the treatment of which is set forth below, on or as soon as reasonably practicable after the later of the Effective Date and the first Business Day after the date that is thirty (30) calendar days after the date a Genesis Other Secured Claim becomes Allowed, each holder of an Allowed Genesis Other Secured Claim shall receive, at the option of the Reorganized Debtors, either (i) Cash in an amount equal to one hundred percent (100%) of the unpaid amount of such Allowed Genesis Other Secured Claim, (ii) the proceeds of the sale or disposition of the Collateral securing such Allowed Genesis Other Secured Claim to the extent of the value of the holder's secured interest in the Allowed Genesis Other Secured Claim, (iii) the Collateral securing such Allowed Genesis Other Secured Claim, (iv) a note with periodic Cash payments having a present value equal to the amount of the Allowed Genesis Other Secured Claim, (v) such treatment that leaves unaltered the legal, equitable, and contractual rights to which the holder of such Allowed Genesis Other Secured Claim is entitled, or (vi) such other distribution as necessary to satisfy the requirements of the Bankruptcy Code. In the event the Reorganized Debtors treat a Claim under

clause (i) or (ii) of this Section, the liens securing such Genesis Other Secured Claim shall be deemed released. In particular, the following subclasses shall receive the treatment described below.

      (a)    *Subclass G1-8.* As of the Effective Date, the Genesis Debtors' obligations in connection with the Kresson View Center Bonds shall be reinstated and each and every indenture, loan agreement, mortgage, security agreement, guaranty, subordination agreement, and other document executed in connection with the Kresson View Center Bonds, including, without limitation, the Kresson View Center Guaranty and the Subordination Agreement dated May 1, 1990 executed by Mellon Bank N.A., as agent, in favor of NJEDA (all of the foregoing, together with the Kresson View Center Bonds, the "Kresson View Center Bond Documents"), shall be reinstated. All legal, equitable, and contractual rights under the Kresson View Center Bond Documents and the Kresson View Center Bonds shall remain unaltered after confirmation of the Plan. To the extent necessary to reinstate all such obligations, rights, agreements, and documents, the Genesis Debtors shall execute and obtain such replacement agreements and documents, including, without limitation, a guaranty, subordination agreements, and UCC financing statements, each in form and substance materially identical to existing agreements and documents, as SunTrust may require. As of the Effective Date, the maturity date of the Kresson View Center Bonds shall be reinstated. On the Effective Date, the Genesis Debtors shall cure any default under the Kresson View Center Bonds and the Kresson View Center Bond Documents (including, without limitation, past due payments of principal), and shall reimburse SunTrust for all reasonable fees, costs, and expenses, including legal fees and expenses, which have accrued and are required to be paid under the relevant Kresson View Center Bond Documents.

      (b)    *Subclass G1-12.* Upon confirmation of the Plan, the claim of U.S. Bank Trust National Association ("U.S. Bank"), as successor indenture trustee pursuant to the Indenture of Mortgage and Deed of Trust, dated as of September 1, 1992 (the "U.S. Bank Indenture"), shall be deemed an Allowed Genesis Other Secured Claim in the principal amount of $19,337,000, plus accrued and unpaid interest, fees, and other costs. The Plan shall leave unaltered the legal, equitable, and contractual rights to which the holders of Claims in Subclass G1-12 are entitled, and the Allowed Claim of U.S. Bank in Subclass G1-12 shall be unimpaired under the Plan. In satisfaction of their Allowed Subclass G1-12 Claim, members of Subclass G1-12 shall receive, on or before the Effective Date, (i) all accrued and unpaid interest due under the 9 1/4% First Mortgage Bonds (Series A) due 2007 in the original principal amount of $25,000,000 (the "Bradford Bonds"), whether incurred prior to or after the Commencement Date, together with interest on interest, pursuant to the terms of the U.S. Bank Indenture, and (ii) all indenture trustee fees and expenses due under the U.S. Bank Indenture, including reasonable attorneys' fees, whether incurred prior to or after the Commencement Date. U.S. Bank shall submit to the Genesis Debtors an itemization of the amounts due and owing under the U.S. Bank Indenture ten (10) days prior to the Effective Date. From and after the Effective Date, all documents relating to the Bradford Bonds, including, but not limited to, the U.S. Bank Indenture, the mortgages securing repayment of the Bradford Bonds, and the bond instruments shall be deemed reinstated in their entirety. In connection with such reinstatement and as a result of the Genesis Debtors' failure to redeem the Bradford Bonds in April 2001, any holder of a Bradford Bond shall have the right for sixty (60) days following the Effective Date to present such Bradford Bonds for redemption in accordance with Article 9 of the U.S. Bank Indenture. Thereafter, the deadline to present the Bradford Bonds for redemption shall be governed by the applicable provisions of the Indenture. All rights and liens of U.S. Bank, as indenture trustee, shall survive to the same extent, validity, and priority as existed prior to the Commencement Date. Among other things, all of the mortgages securing repayment of the Bradford Bonds shall continue to be valid and perfected, and no further notice, filing, or other act shall be required to effect such perfection.

      (c)    *Subclass G1-17.* The holders of claims in Subclass G1-17 shall receive a mortgage note in the principal amount of $50,000,000. The mortgage note will bear interest at LIBOR plus 5% and will mature on the sixth anniversary of the Effective Date. The mortgage note will be

secured by (i) the Collateral presently securing the Claims in this subclass and (ii) a lien of equal priority with the New Senior Notes on the property securing such notes. The mortgage documents will permit a junior lien on the property securing the Claims in this subclass in favor of the New Senior Notes.

### 4.2. *Genesis Senior Lender Claims (Class G2).*

Holders of the Genesis Senior Lender Claims shall receive an aggregate of (i) Cash in an amount equal to interest on the Genesis Senior Lender Claims at contractual, nondefault rates, from the Commencement Date to the Effective Date (approximately $195,979,000 of which will have already been paid by the Genesis Debtors by June 30, 2001, in connection with certain cash collateral stipulations), (ii) $94,923,000 in New Senior Notes, (iii) New Convertible Preferred Stock with an aggregate liquidation preference of $31,000,000, and (iv) 30,485,079 shares of New Common Stock, representing approximately 74.35% of the total shares of New Common Stock to be issued and outstanding as of the Effective Date, subject to dilution from stock issuances occurring after the Effective Date, including, without limitation, in connection with the conversion of the New Convertible Preferred Stock, the exercise of the New Warrants, or options granted under the New Management Incentive Plan.

### 4.3. *Genesis Priority Non-Tax Claims (Class G3).*

Except to the extent that a holder of an Allowed Genesis Priority Non-Tax Claim against any of the Genesis Debtors has agreed to a different treatment of such Claim, each such holder shall receive, in full satisfaction of such Claim, Cash in an amount equal to such Claim, on or as soon as reasonably practicable after the later of (i) the Effective Date, (ii) the date such Claim becomes Allowed, and (iii) the date for payment provided by any agreement or understanding between the parties.

### 4.4. *Genesis General Unsecured Claims (Class G4).*

Except to the extent that an Allowed Genesis General Unsecured Claim is an Insured Claim, the holders of Allowed Genesis General Unsecured Claims shall receive a proportionate allocation of (i) 1,689,147 shares of New Common Stock and (ii) New Warrants to purchase 2,835,645 shares of New Common Stock, based on the aggregate amount of Allowed Claims in Classes G4 and G5. The shares of New Common Stock allocated to Classes G4 and G5 represent approximately 4.12% of the total shares of New Common Stock to be issued and outstanding on the Effective Date, subject to dilution from stock issuances occurring after the Effective Date, including, without limitation, in connection with the conversion of the New Convertible Preferred Stock, the exercise of the New Warrants, or options granted under the New Management Incentive Plan. Each holder of an Allowed Genesis General Unsecured Claim shall receive its Ratable Proportion of shares of New Common Stock allocated to this Class based on the aggregate amount of the Allowed Claims in Classes G4 and G5. A holder of an Allowed Genesis General Unsecured Claim that is an Insured Claim shall be paid in the ordinary course of the business of the Reorganized Debtors to the extent that Claim is insured and shall have an Allowed Genesis General Unsecured Claim to the extent the applicable insurance policy does not provide coverage with respect to any portion of the Insured Claim.

### 4.5. *Genesis Senior Subordinated Note Claims (Class G5).*

The holders of Allowed Genesis Senior Subordinated Note Claims shall receive a proportionate allocation of (i) 1,689,147 shares of New Common Stock and (ii) New Warrants to purchase 2,835,645 shares of New Common Stock, based on the aggregate amount of Allowed Claims in Classes G4 and G5. The shares of New Common Stock allocated to Classes G4 and G5 represent approximately 4.12% of the total shares of New Common Stock to be issued and outstanding on the Effective Date and are subject to dilution from stock issuances occurring after the Effective Date,

including, without limitation, in connection with the conversion of the New Convertible Preferred Stock, the exercise of the New Warrants, or options granted under the New Management Incentive Plan. Each holder of an Allowed Genesis Senior Subordinated Note Claim shall receive its Ratable Proportion of the shares of New Common Stock allocated to this Class, based on the aggregate amount of the Allowed Claims in Classes G4 and G5.

### 4.6.   *Genesis Intercompany Claims (Class G6).*

Each holder of a Genesis Intercompany Claim shall be unimpaired.

### 4.7.   *Genesis Punitive Damage Claims (Class G7).*

Each holder of a Genesis Punitive Damage Claim shall receive no distribution under the Plan of Reorganization, but shall be paid in the ordinary course of the business of the Reorganized Debtors solely to the extent such claims are covered by applicable insurance policies and such insurance is permitted under governing state law.

### 4.8.   *Genesis Series G Preferred Stock Interests (Class G8).*

All Equity Interests represented by the Series G Cumulative Convertible Preferred Stock issued by Genesis, and any Claims for dividends or a preference on liquidation or other rights in connection therewith, shall be deemed canceled as of the Effective Date, and each holder of such Equity Interest shall neither receive nor retain any property or interest in property on account of such Equity Interest.

### 4.9.   *Genesis Series H Preferred Stock Interests (Class G9).*

All Equity Interests represented by the Series H Senior Convertible Participating Cumulative Preferred Stock issued by Genesis, and any Claims for dividends or a preference on liquidation or other rights in connection therewith, shall be deemed canceled as of the Effective Date, and each holder of such Equity Interest shall neither receive nor retain any property or interest in property on account of such Equity Interest.

### 4.10.   *Genesis Series I Preferred Stock Interests (Class G10).*

All Equity Interests represented by the Series I Senior Convertible Exchangeable Participating Cumulative Preferred Stock issued by Genesis, and any Claims for dividends or a preference on liquidation or other rights in connection therewith, shall be deemed canceled as of the Effective Date, and each holder of such Equity Interest shall neither receive nor retain any property or interest in property on account of such Equity Interest.

### 4.11.   *Genesis Common Stock Interests (Class G11).*

All Genesis Common Stock Interests shall be deemed canceled as of the Effective Date, and each holder of a Genesis Common Stock Interest shall neither receive nor retain any property or interest in property on account of such Genesis Common Stock Interest.

### 4.12.   *Multicare Other Secured Claims (Class M1).*

On or as soon as reasonably practicable after the later of the Effective Date and the first Business Day after the date that is thirty (30) calendar days after the date a Multicare Other Secured

Claim becomes Allowed, each holder of an Allowed Multicare Other Secured Claim shall receive, at the option of the Reorganized Debtors, either (i) Cash in an amount equal to one hundred percent (100%) of the unpaid amount of such Allowed Multicare Other Secured Claim, (ii) the proceeds of the sale or disposition of the Collateral securing such Allowed Multicare Other Secured Claim to the extent of the value of the holder's secured interest in the Allowed Multicare Other Secured Claim, (iii) the Collateral securing such Allowed Multicare Other Secured Claim, (iv) a note with periodic Cash payments having a present value equal to the amount of the Allowed Multicare Other Secured Claim, (v) such treatment that leaves unaltered the legal, equitable, and contractual rights to which the holder of such Allowed Multicare Other Secured Claim is entitled, or (vi) such other distribution as necessary to satisfy the requirements of the Bankruptcy Code. In the event the Reorganized Debtors treat a Claim under clause (i) or (ii) of this Section, the liens securing such Multicare Other Secured Claims shall be deemed released; *provided, however,* that Subclasses M1-2 and M1-4 shall receive the treatment set forth in this Section 4.12(v), and Subclass M1-7 shall receive the treatment set forth in this Section 4.12(iii).

4.13.   *Multicare Senior Lender Claims (Class M2).*

Holders of the Multicare Senior Lender Claims shall be entitled to receive 88.37% of the shares of New Multicare Stock. Pursuant to the Plan of Merger, such holders shall be deemed to immediately exchange such common stock for (i) $25,000,000 in Cash, (ii) $147,682,000 in New Senior Notes, (iii) shares of New Convertible Preferred Stock with a liquidation preference of $11,600,000, and (iv) 7,798,917 shares of New Common Stock, representing approximately 19.02% of the total shares of New Common Stock to be issued and outstanding as of the Effective Date, subject to dilution from stock issuances occurring after the Effective Date, including, without limitation, in connection with the conversion of the New Convertible Preferred Stock, the exercise of the New Warrants, or options granted under the New Management Incentive Plan.

4.14.   *Multicare Priority Non-Tax Claims (Class M3).*

Except to the extent that a holder of an Allowed Multicare Priority Non-Tax Claim against any of the Multicare Debtors has agreed to a different treatment of such Claim, each such holder shall receive, in full satisfaction of such Claim, Cash in an amount equal to such Claim, on or as soon as reasonably practicable after the later of (i) the Effective Date, (ii) the date such Claim becomes Allowed, and (iii) the date for payment provided by any agreement or understanding between the parties.

4.15.   *Multicare General Unsecured Claims (Class M4).*

Except to the extent that an Allowed Multicare General Unsecured Claim is an Insured Claim, the holders of Allowed Multicare General Unsecured Claims shall receive a proportionate allocation of 11.63% of the shares of New Multicare Stock, based on the aggregate amount of Allowed Claims in Classes M4 and M5. Pursuant to the merger described in Section 5.2 hereof, the shares of New Multicare Stock allocated to Classes M4 and M5 will be exchanged for (i) 1,026,857 shares of New Common Stock and (ii) New Warrants to purchase 1,723,830 shares of New Common Stock. The shares of New Common Stock allocated to Classes M4 and M5 represent approximately 2.50% of the total shares of New Common Stock to be issued and outstanding as of the Effective Date, subject to dilution from stock issuances occurring after the Effective Date, including, without limitation, in connection with the conversion of the New Convertible Preferred Stock, the exercise of the New Warrants, or options granted under the New Management Incentive Plan. Each holder of an Allowed Multicare General Unsecured Claim shall receive its Ratable Proportion of the shares of New Common Stock and New Warrants allocated to this Class, based on the aggregate amount of Allowed Claims in Classes M4 and M5. The holder of an Allowed Multicare General Unsecured Claim that is an Insured Claim shall be paid in the ordinary course of the business of the Reorganized Debtors to the extent that Claim is insured, and

shall have an Allowed Multicare General Unsecured Claim to the extent the applicable insurance policy does not provide coverage with respect to any portion of the Insured Claim.

4.16.   *Multicare Senior Subordinated Note Claims (Class M5).*

The holders of Allowed Multicare Senior Subordinated Claims shall receive a proportionate allocation of 11.63% of the shares of New Multicare Stock, based on the aggregate amount of Allowed Claims in Classes M4 and M5.  Pursuant to the merger described in Section 5.2 hereof, the shares of New Multicare Stock allocated to Classes M4 and M5 will be exchanged for (i) 1,026,857 shares of New Common Stock and (ii) New Warrants to purchase 1,723,830 shares of New Common Stock.  The shares of New Common Stock allocated to Classes M4 and M5 represent approximately 2.50% of the total shares of New Common Stock to be issued and outstanding as of the Effective Date, subject to dilution from stock issuances occurring after the Effective Date, including, without limitation, in connection with the conversion of the New Convertible Preferred Stock, the exercise of the New Warrants, or options granted under the New Management Incentive Plan.  Each holder of an Allowed Multicare Senior Subordinated Claim shall receive its Ratable Proportion of shares of New Common Stock and New Warrants allocated to this Class, based on the aggregate amount of Allowed Claims in Classes M4 and M5.

4.17.   *Multicare Intercompany Claims (Class M6).*

Each holder of a Multicare Intercompany Claim shall be unimpaired.

4.18.   *Multicare Punitive Damage Claims (Class M7).*

Each holder of a Multicare Punitive Damage Claim shall receive no distribution under the Plan of Reorganization, but shall be paid in the ordinary course of the business of the Reorganized Debtors solely to the extent such claims are covered by applicable insurance policies and such insurance is permitted under governing state law.

4.19.   *Multicare Common Stock Interests (Class M8).*

All Multicare Common Stock Interests shall be deemed canceled as of the Effective Date, and each holder of a Multicare Common Stock Interest shall neither receive nor retain any property or interest in property on account of such Multicare Common Stock Interests.

SECTION 5.   **MEANS FOR IMPLEMENTATION**

5.1.   *Deemed Consolidation of Debtors for Plan Purposes Only.*

(a)      Subject to the occurrence of the Effective Date, the Genesis Debtors shall be deemed consolidated for the following purposes under the Plan of Reorganization: (i) no distributions shall be made under the Plan of Reorganization on account of the Genesis Intercompany Claims; (ii) all guaranties by any of the Genesis Debtors of the obligations of any other Genesis Debtor arising prior to the Effective Date shall be deemed eliminated so that any Claim against any Genesis Debtor and any guaranty thereof executed by any other Genesis Debtor and any joint and several liability of any of the Genesis Debtors shall be deemed to be one obligation of the deemed consolidated Genesis Debtors; and (iii) each and every Claim filed or to be filed in the Reorganization Case of any of the Genesis Debtors shall be deemed filed against the deemed consolidated Genesis Debtors and shall be deemed one Claim against and obligation of the deemed consolidated Genesis Debtors.