Such deemed consolidation, however, shall not (other than for purposes related to funding distributions under the Plan of Reorganization and as set forth above in this Section) affect: (i) the legal and organizational structure of the Reorganized Debtors; (ii) intercompany Claims by and among the Genesis Debtors or Reorganized Debtors; (iii) pre- and post-Commencement Date guaranties, liens, and security interests that are required to be maintained (A) in connection with executory contracts or unexpired leases that were entered into during the Genesis Reorganization Cases or that have been or will be assumed, (B) pursuant to the Plan of Reorganization, or (C) in connection with any financing entered into, or New Senior Notes issued, by the Reorganized Debtors on the Effective Date; and (iv) distributions out of any insurance policies or proceeds of such policies.

Notwithstanding anything contained in the Plan to the contrary, the deemed consolidation of the Genesis Debtors shall not have any effect on the Claims being reinstated and unimpaired in Class G1 of the Plan, and the legal, equitable, and contractual rights to which the holders of any such Claims is entitled shall be left unaltered by the Plan.

(b) Subject to the occurrence of the Effective Date, the Multicare Debtors shall be deemed consolidated for the following purposes under the Plan of Reorganization: (i) no distributions shall be made under the Plan of Reorganization on account of Multicare Intercompany Claims; (ii) all guaranties by any of the Multicare Debtors of the obligations of any other Multicare Debtor arising prior to the Effective Date shall be deemed eliminated so that any Claim against any Multicare Debtor and any guaranty thereof executed by any other Multicare Debtor and any joint and several liability of any of the Multicare Debtors shall be deemed to be one obligation of the deemed consolidated Multicare Debtors; and (iii) each and every Claim filed or to be filed in the Reorganization Case of any of the Multicare Debtors shall be deemed filed against the deemed consolidated Multicare Debtors and shall be deemed one Claim against and obligation of the deemed consolidated Multicare Debtors.

Such deemed consolidation, however, shall not (other than for purposes related to funding distributions under the Plan of Reorganization and as set forth above in this Section) affect: (i) the legal and organizational structure of the Reorganized Debtors; (ii) intercompany Claims by and among the Multicare Debtors or Reorganized Debtors; (iii) pre- and post-Commencement Date guaranties, liens, and security interests that are required to be maintained (A) in connection with executory contracts or unexpired leases that were entered into during the Multicare Reorganization Cases or that have been or will be assumed, (B) pursuant to the Plan of Reorganization, or (C) in connection with any financing entered into by the Reorganized Debtors on the Effective Date; and (iv) distributions out of any insurance policies or proceeds of policies.

Notwithstanding anything contained in the Plan to the contrary, the deemed consolidation of the Multicare Debtors shall not have any effect on the Claims being reinstated and unimpaired in Class M1 of the Plan, and the legal, equitable, and contractual rights to which the holders of any such Claims is entitled shall be left unaltered by the Plan.

5.2. *Merger of Corporate Entities.*

In accordance with the terms of the Plan of Merger and the votes of Genesis, as the sole shareholder of Multicare Acquisition Corporation, and the holders of the Multicare Senior Lender Claims, Multicare General Unsecured Claims, and Multicare Senior Subordinated Note Claims, Multicare Acquisition Corporation shall merge into Multicare, with Multicare being the surviving entity. On such merger, (i) the New Multicare Stock shall be exchanged for $147,682,000 of New Senior Notes and shares of New Convertible Preferred Stock with an aggregate liquidation preference of $11,600,000, to be distributed to holders of Allowed Claims in Class M2, 8,825,774 shares of New Common Stock, to be distributed to holders of Allowed Claims in Classes M2, M4, and M5, and 37.81% of New Warrants, to

be distributed to holders of Allowed Claims in Classes M4 and M5, (ii) Multicare Acquisition Corporation shall cease to exist as a separate legal entity, and (iii) Reorganized Multicare shall become a wholly-owned, indirect subsidiary of Reorganized Genesis.

### 5.3. *Authorization of Plan Securities.*

Reorganized Genesis is authorized to issue the Plan Securities in accordance with Sections 4 and 5.2 hereof, without the need for any further corporate action.

### 5.4. *Exit Facility.*

The Debtors are authorized to enter into new financing arrangements for purposes of funding obligations under the Plan of Reorganization, including the payment of Administrative Expense Claims and the repayment of obligations under the Debtors' respective Revolving Credit and Guaranty Agreements described in Section 2.4 hereof, and providing for working capital requirements. The new financing arrangements may be in any form acceptable to Reorganized Genesis, including, without limitation, a new revolving credit agreement and new Term A Notes, with priority in payment and collateral senior to the New Senior Notes.

### 5.5. *Waiver of Subordination.*

The distributions under the Plan of Reorganization do not take into account the relative priority of the Claims in each Class in connection with any contractual subordination provisions relating to the Genesis Senior Subordinated Note Claims and the Multicare Senior Subordinated Note Claims. Accordingly, the distributions to the holders of Claims in Classes G5 and M5 shall not be subject to levy, garnishment, attachment, or other legal process by any holder of indebtedness senior to the indebtedness of the holders of the Claims in Classes G5 and M5, in each case by reason of claimed contractual subordination rights. On the Effective Date, all creditors shall be deemed to have waived any and all contractual subordination rights which they may have with respect to such distribution, and the Confirmation Order shall permanently enjoin, effective as of the Effective Date, all holders of senior indebtedness from enforcing or attempting to enforce any such rights with respect to the distributions under the Plan of Reorganization to the holders of Claims in Classes G5 and M5.

### 5.6. *Registration Rights Agreement.*

On the Effective Date, Reorganized Genesis shall execute and deliver a registration rights agreement in the form set forth in the Plan Supplement, obligating Reorganized Genesis to register the Plan Securities under the Securities Exchange Act of 1933, as amended, upon the demand of any holder of 10% or more of the Plan Securities or the holders of 20% or more of the Plan Securities in the aggregate, and pursuant to customary "piggyback" provisions, all at the times and in accordance with the terms set forth in such registration rights agreement.

### 5.7. *Listing of New Common Stock.*

Reorganized Genesis shall use commercially reasonable efforts to cause the shares of New Common Stock to be listed on a national securities exchange or a qualifying interdealer quotation system. Reorganized Genesis will be a public reporting company under the Securities Exchange Act of 1934 and will file periodic and current reports as required thereunder.

5.8. *Management Incentive Plan.*

Reorganized Genesis shall adopt the New Management Incentive Plan. The solicitation of votes on this Plan of Reorganization shall be deemed a solicitation of the holders of New Common Stock for approval of the New Management Incentive Plan. Entry of the order confirming the Plan of Reorganization shall constitute such approval, and the order confirming the Plan of Reorganization shall so provide.

5.9. *Release of Non-Debtor Affiliates.*

As of the Effective Date, the non-Debtor corporate, partnership, and joint venture subsidiaries or affiliates of the Debtors who are obligors under any of the Genesis Senior Lender Agreements or the Multicare Senior Lender Agreements shall be released from all such obligations provided that such entities become guarantors of the New Senior Notes and assuming that the net worth of such entities is not greater than an amount acceptable to the agent for the holders of the Genesis Senior Lender Claims and the Multicare Senior Lender Claims.

5.10. *Release of Representatives.*

As of the Effective Date, the respective officers, directors, employees, financial advisors, professionals, accountants, and attorneys of the Genesis Debtors, the Multicare Debtors, the respective statutory committees of unsecured creditors appointed pursuant to section 1102 of the Bankruptcy Code in the Genesis Reorganization Cases and the Multicare Reorganization Cases, and Mellon Bank, N.A., as administrative agent under the Genesis Senior Lender Agreements, the Multicare Senior Lender Agreements, and the Revolving Credit and Guaranty Agreements described in Section 2.4 hereof shall be released from any and all Claims against them by the Debtors in their capacity as representatives of the Genesis Debtors, the Multicare Debtors, the statutory committees, or Mellon Bank, N.A., as applicable, except as otherwise expressly provided in the Plan of Reorganization, the Confirmation Order, or the order of the Bankruptcy Court, dated February 23, 2001, approving a senior executive retention plan for certain employees of Genesis.

5.11. *Cancellation of Existing Securities and Agreements.*

Except for purposes of evidencing a right to distributions under the Plan of Reorganization or otherwise provided hereunder, on the Effective Date all the agreements and other documents evidencing the Claims or rights of any holder of a Claim against the Debtors, including all indentures and notes evidencing such Claims and any options or warrants to purchase Equity Interests, obligating the Debtors to issue, transfer, or sell Equity Interests or any other capital stock of the Debtors, shall be canceled; *provided, however*, that the indentures relating to the Genesis Senior Subordinated Note Claims and the Multicare Senior Subordinated Note Claims shall continue in effect solely for the purposes of (i) allowing the indenture trustees to make any distributions on account of Classes G5 and M5 pursuant to the Plan and to perform such other necessary administrative functions with respect thereto, and (ii) permitting the indenture trustees to maintain any rights or liens they may have for fees, costs, and expenses under the indentures.

5.12. *Board of Directors.*

The initial Board of Directors of Reorganized Genesis shall consist of seven members whose names shall be disclosed at or prior to the Confirmation Hearing. Six members will be selected by the holders of the Genesis Senior Lender Claims and the Multicare Senior Lender Claims. The seventh member shall be the Chief Executive Officer of Reorganized Genesis. Each of the members of such

initial Board of Directors shall serve a one-year term. After selection of the initial Board of Directors, the holders of the New Common Stock will elect members of the Board of Directors of Reorganized Genesis in accordance with the Amended Certificate of Incorporation and Amended Bylaws and applicable nonbankruptcy law.

### 5.13. *Corporate Action.*

Reorganized Genesis shall file the Amended Certificate of Incorporation and an amended certificate of incorporation for each of the Reorganized Debtors that are corporations, other than Reorganized Genesis, with the Secretary of State of the State of Delaware on the Effective Date. The Amended Certificate of Incorporation and the certificates of incorporation for each of the Reorganized Debtors that are corporations, other than Reorganized Genesis, shall prohibit the issuance of nonvoting equity securities, subject to further amendment of such certificates of incorporation as permitted by applicable law. The Amended Bylaws shall be deemed adopted by the board of directors of Reorganized Genesis as of the Effective Date. All partnership and limited liability company agreements to which any of the Debtors are parties shall be treated in accordance with Section 8.1 hereof.

### 5.14. *Subsidiary Guaranties.*

Claims based upon guaranties of collection, payment, or performance of any obligation of the Debtors made by any direct or indirect subsidiary of Genesis or Multicare which is not a Debtor and all Claims against any such subsidiary for which any of the Debtors are jointly or severally liable, in each case which arise at any time prior to the Confirmation Date, shall be discharged, released, extinguished, and of no further force and effect, unless the appropriate Debtor otherwise agrees in writing to the beneficiary of such guaranties.

### 5.15. *Settlement with the Federal Government.*

The Settlement Agreement among the Genesis Debtors and the United States of America acting through the United States Department of Health and Human Services, the Centers for Medicare and Medicaid Services f/k/a the Health Care Financing Administration, the Office of Inspector General, the Department of Justice, and other agencies or departments of the United States concerning the resolution of certain Claims asserted by such agencies against the Genesis Debtors, in the form set forth in the Plan Supplement, is hereby made a part of the Plan of Reorganization.

### 5.16. *Settlement Between the Genesis Debtors and the Multicare Debtors.*

The settlement between Genesis and its direct and indirect subsidiaries, on the one hand, and Multicare and its direct and indirect subsidiaries, on the other hand, regarding any and all Claims against each other shall be effectuated pursuant to the terms of that certain Settlement Agreement among Genesis, Multicare, and their direct and indirect subsidiaries or affiliates, in the form set forth in the Plan Supplement. The effect of the settlement is that neither the Genesis Debtors nor the Multicare Debtors will have claims against each other.

## SECTION 6.  DISTRIBUTIONS

### 6.1. *Distribution Record Date.*

As of the close of business on the Distribution Record Date, the various transfer registers for each of the Classes of Claims or Equity Interests as maintained by the Debtors, or their respective agents, shall be deemed closed, and there shall be no further changes in the record holders of any of the

Claims or Interests. The Debtors shall have no obligation to recognize any transfer of the Claims or Equity Interests occurring on or after the Distribution Record Date. The Debtors shall be entitled to recognize and deal for all purposes hereunder only with those record holders stated on the transfer ledgers as of the close of business on the Distribution Record Date, to the extent applicable.

6.2. *Date of Distributions.*

Unless otherwise provided herein, any distributions and deliveries to be made hereunder shall be made on the Effective Date or as soon thereafter as is practicable. In the event that any payment or act under the Plan of Reorganization is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on or as soon as reasonably practicable after the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

6.3. *Distributions to Classes G2, G4, G5, M2, M4, and M5.*

On the Effective Date, the Disbursing Agent shall distribute the New Senior Notes, the New Convertible Preferred Stock, the New Common Stock, and any Cash allocable to Classes G2 and M2 to the individual holders of the Genesis Senior Lender Claims and Multicare Senior Lender Claims in such denominations and registered in the names of the holders as Mellon Bank, N.A. shall have directed in writing. On the Effective Date, the Disbursing Agent shall distribute the New Common Stock and the New Warrants to holders of Allowed Claims in Classes G4, G5, M4, and M5. For the purpose of calculating the amount of New Common Stock and New Warrants to be distributed to holders of Allowed Claims in Classes G4, G5, M4, and M5 on the Effective Date, all Disputed Claims in such Classes will be treated as though such Claims will be Allowed Claims in the amounts asserted, Allowed pursuant to Section 6.12 hereof, or as estimated by the Bankruptcy Court, as applicable. On the Final Distribution Date, each holder of an Allowed Claim in Classes G4, G5, M4, and M5 shall receive a Catch-up Distribution of New Common Stock and/or New Warrants, as applicable. After the Effective Date but prior to the Final Distribution Date, the Reorganized Debtors, in their sole discretion, may direct the Disbursing Agent to distribute shares of New Common Stock and/or New Warrants, as applicable, to a holder of a Disputed Claim in Class G4 or M4 which becomes an Allowed Claim after the Effective Date such that the holder of such Claim receives the same shares of New Common Stock and/or New Warrants, as applicable, that such holder would have received had its Claim been an Allowed Claim in such amount on the Effective Date.

6.4. *Disbursing Agent.*

All distributions under the Plan of Reorganization (other than distributions described in the next sentences) shall be made by the applicable Debtor as Disbursing Agent or such other entity designated by the applicable Debtor as a Disbursing Agent on or after the Effective Date. Each Indenture Trustee shall be the Disbursing Agent for its respective noteholders in Classes G5 and M5, and The Bank of New York, as indenture trustee in relation to Tyler County West Virginia Taxable Refunding Revenue Bonds (Care Haven Associates Limited Partnership Project) Series 1994B and Series 1995 (the "Care Haven Indenture Trustee") for its respective bondholders in Subclass M1-2. All distributions to the creditors of each of the Multicare Debtors under the Plan of Merger shall be made by Multicare Acquisition Corporation as Disbursing Agent or such other entity designated by Multicare Acquisition Corporation as a Disbursing Agent on or after the Effective Date. A Disbursing Agent shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court, and, in the event that a Disbursing Agent is so otherwise ordered, all costs and expenses of procuring any such bond or surety shall be borne by the applicable Debtor.

2335334-1

24

6.5. *Rights and Powers of Disbursing Agent.*

(a) *Powers of the Disbursing Agent.* The Disbursing Agent shall be empowered to (i) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties under the Plan of Reorganization, (ii) make all distributions contemplated hereby, (iii) employ professionals to represent it with respect to its responsibilities, and (iv) exercise such other powers as may be vested in the Disbursing Agent by order of the Bankruptcy Court, pursuant to the Plan of Reorganization, or as deemed by the Disbursing Agent to be necessary and proper to implement the provisions hereof.

(b) *Expenses Incurred on or After the Effective Date.* Except as otherwise ordered by the Bankruptcy Court, the amount of any reasonable fees and expenses incurred by the Disbursing Agent on or after the Effective Date (including, without limitation, taxes) and any reasonable compensation and expense reimbursement claims (including, without limitation, reasonable attorneys' fees and expenses) made by the Disbursing Agent shall be paid in Cash by the Reorganized Debtors.

6.6. *Surrender of Instruments.*

As a condition to receiving any distribution under the Plan of Reorganization, each holder of a certificated instrument or note must surrender such instrument or note held by it to the Disbursing Agent or its designee, unless such certificated instrument or note is being reinstated or being left unimpaired under the Plan of Reorganization. Any holder of such instrument or note that fails to (i) surrender such instrument or note, or (ii) execute and deliver an affidavit of loss and/or indemnity reasonably satisfactory to the Disbursing Agent and furnish a bond in form, substance, and amount reasonably satisfactory to the Disbursing Agent before the first anniversary of the Effective Date shall be deemed to have forfeited all rights and Claims and may not participate in any distribution under the Plan of Reorganization. Any distribution so forfeited shall become property of Reorganized Genesis.

6.7. *Delivery of Distributions.*

Subject to Bankruptcy Rule 9010, all distributions to any holder of an Allowed Claim except the holders of an Allowed Senior Lender Claim, shall be made at the address of such holder as set forth on the Schedules filed with the Bankruptcy Court or on the books and records of the Debtors or their agents or in a letter of transmittal unless the Debtors have been notified in writing of a change of address, including, without limitation, by the filing of a proof of claim or interest by such holder that contains an address for such holder different from the address reflected on such Schedules for such holder. All distributions to any holder of an Allowed Senior Lender Claim shall be made to Mellon Bank N.A., as administrative agent under the Genesis Senior Lender Agreements and the Multicare Senior Lender Agreements. Any distribution of New Common Stock or New Warrants to any of the Indenture Trustees shall be deemed a distribution to the respective holder of a Genesis Senior Subordinated Note Claim or Multicare Senior Subordinated Note Claim. In the event that any distribution to any holder is returned as undeliverable, the Disbursing Agent shall use reasonable efforts to determine the current address of such holder, but no distribution to such holder shall be made unless and until the Disbursing Agent has determined the then current address of such holder, at which time such distribution shall be made to such holder without interest; *provided* that such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of one year from the Effective Date. After such date, all unclaimed property or interest in property shall revert to Reorganized Genesis, and the Claim of any other holder to such property or interest in property shall be discharged and forever barred.

6.8. *Manner of Payment Under Plan of Reorganization.*

(a) All distributions of Cash, New Senior Notes, New Convertible Preferred Stock, New Common Stock, and New Warrants to the creditors of each of the Genesis Debtors under the Plan of Reorganization shall be made by, or on behalf of, the applicable Reorganized Debtor. Where the applicable Reorganized Debtor is a subsidiary of Reorganized Genesis, Reorganized Genesis shall make a capital contribution, either directly or indirectly, to the applicable Reorganized Debtor equal to the amount distributed, but only at such time as, and to the extent, the amounts are actually distributed to holders of Allowed Claims. All distributions under the Plan of Reorganization of New Senior Notes to the creditors of the Genesis Debtors shall be made by, or on behalf of, Reorganized Genesis. To the extent that New Senior Notes are issued by Reorganized Genesis to creditors of a Reorganized Debtor that is a subsidiary of Reorganized Genesis, the portion of the Claims for which such New Senior Notes are issued shall be treated as acquired by Reorganized Genesis. Immediately thereafter, and pursuant hereto, Reorganized Genesis shall make a capital contribution, either directly or indirectly, to any applicable Reorganized Debtor, and such Claim shall be immediately cancelled and discharged. Any distributions that revert to any of the Reorganized Debtors or are otherwise canceled (such as to the extent any distributions have not been claimed within one year or are canceled pursuant to Section 6.6 hereof) shall revest solely in Reorganized Genesis, and any applicable Reorganized Debtor (other than Reorganized Genesis) shall not have (nor shall it be considered to ever have had) any ownership interest in the amounts distributed.

(b) Subject to Section 4.13 hereof, the distribution of New Multicare Stock to the creditors of each of the Multicare Debtors immediately prior to the merger of Multicare Acquisition Corporation (a newly-formed, second tier subsidiary of Genesis) into Multicare shall be made by, or on behalf of, the applicable Multicare Debtor. Where the applicable Multicare Debtor is a subsidiary of Multicare, Multicare shall make a capital contribution, either directly or indirectly, to the applicable Multicare Debtor equal to the amount of New Multicare Stock distributed to the creditors of the Multicare Debtors.

(c) All distributions of Cash, New Senior Notes, New Convertible Preferred Stock, New Common Stock, and New Warrants to the creditors of each of the Multicare Debtors under the Plan of Merger shall be made by, or on behalf of, Multicare Acquisition Corporation. Reorganized Genesis shall make a capital contribution to the intermediate corporate parent of Multicare Acquisition Corporation, which in turn shall make a capital contribution to Multicare Acquisition Corporation, equal to the amount distributed, with such contributions occurring only at such time as, and to the extent, the amounts are actually distributed to holders of Allowed Claims. All distributions under the Plan of New Senior Notes to the creditors of the Multicare Debtors shall be made by, or on behalf of, Reorganized Genesis. To the extent that the acquisition of the New Multicare Stock pursuant to the Plan of Reorganization and the Plan of Merger is in exchange for the New Senior Notes, such stock shall be treated as acquired by Reorganized Genesis. Immediately thereafter, and pursuant hereto, Reorganized Genesis shall contribute such stock to the intermediate corporate parent of Multicare Acquisition Corporation. Any distributions that revert to the Reorganized Debtors or are otherwise canceled (such as to the extent any distributions have not been claimed within one year or are canceled pursuant to Section 6.6 hereof) shall revest solely in Reorganized Genesis, and no Reorganized Debtor (other than Reorganized Genesis) shall have (or shall be considered to ever have had) any ownership interest in the amounts distributed.

(d) At the option of the Debtors, any Cash payment to be made hereunder may be made by a check or wire transfer or as otherwise required or provided in applicable agreements.

6.9. *Fractional Shares and Fractional Warrants.*

No fractional shares of New Common Stock or New Convertible Preferred Stock, or fractional New Warrants or Cash in lieu thereof, shall be distributed. For purposes of distribution, fractional shares of New Common Stock or New Convertible Preferred Stock, or fractional New Warrants, shall be rounded down to the next whole number or zero, as applicable.

6.10. *Setoffs.*

Except with respect to the Genesis Senior Lender Claims and the Multicare Senior Lender Claims, the Debtors may, but shall not be required to, set off against any Claim (for purposes of determining the Allowed amount of such Claim on which distribution shall be made), any claims of any nature whatsoever that the Debtors may have against the holder of such Claim, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtors of any such claim the Debtors may have against the holder of such Claim.

6.11. *Allocation of Plan Distribution Between Principal and Interest.*

All distributions in respect of any Claim shall be allocated first to the principal amount of such Claim, as determined for federal income tax purposes, and thereafter, to the remaining portion of such Claim, if any.

6.12. *Allowance of Claims in Classes G2, G5, M2, and M5.*

The aggregate Claims in Classes G2, G5, M2, and M5 shall be deemed Allowed in the amounts of $1,193,460,000 (excluding postpetition interest and before giving effect to postpetition payments), $387,425,000, $443,400,000 (excluding postpetition interest), and $257,817,000, respectively. The Claims in Class G5 shall be deemed Allowed in the following amounts for each issue of senior subordinated notes: (i) 9-3/4% Senior Subordinated Notes due 2005: $126,077,500; (ii) 9-1/4% Senior Subordinated Notes due 2006: $133,414,931; (iii) 9-7/8% Senior Subordinated Notes due 2009: $126,303,247; and (iv) 9-3/8 Senior Subordinated Notes due 2005: $1,629,313.

SECTION 7.  PROCEDURES FOR DISPUTED CLAIMS

7.1. *Objections to Claims.*

The Reorganized Debtors shall be entitled to object to Claims. Any objections to Claims shall be served and filed on or before the later of (i) one hundred twenty (120) days after the Effective Date, and (ii) such date as may be fixed by the Bankruptcy Court, whether fixed before or after the date specified in clause (i) above.

7.2. *Payments and Distributions with Respect to Disputed Claims.*

(a)  *General.* Notwithstanding any other provision hereof, if any portion of a Claim is a Disputed Claim, no payment or distribution provided hereunder shall be made on account of such Claim unless and until such Disputed Claim becomes an Allowed Claim.

(b)  *Tort Claims.* All Tort Claims shall be deemed Disputed Claims unless and until they are liquidated. Any Tort Claim which has not been liquidated prior to the date of this Plan and as to which a proof of claim was timely filed in the Reorganization Cases shall be determined and liquidated in accordance with an alternative dispute resolution procedure or if the claimant pursuing the Tort Claim has

received relief from the automatic stay (through such alternative dispute resolution procedure or otherwise), the Tort Claim shall be determined and liquidated in the administrative or judicial tribunal in which it is pending on the Confirmation Date or in any administrative or judicial tribunal of appropriate jurisdiction. Any Tort Claim determined and liquidated (i) pursuant to a judgment obtained in accordance with this Section and applicable nonbankruptcy law which is no longer appealable or subject to review, or (ii) in the alternative dispute resolution or similar proceeding approved by order of the Bankruptcy Court shall be deemed, to the extent applicable, an Allowed Claim in Class G4 or Class M4, as applicable, in such liquidated amount (*provided* that for Insured Claims, such amount shall not exceed the liquidated amount of the Claim less the amount paid by the insurer) and treated in accordance with Sections 4.4 and 4.15 hereof. Nothing contained in this Section shall constitute or be deemed a waiver of any Claim, right, or cause of action that the Debtors may have against any person in connection with or arising out of any Tort Claim, including, without limitation, any rights under section 157(b) of title 28 of the United States Code.

### 7.3. *Distributions After Allowance.*

After such time as a Disputed Claim becomes, in whole or in part, an Allowed Claim, the Reorganized Debtors shall distribute to the holder thereof the distributions, if any, to which such holder is then entitled under the Plan of Reorganization. Such Cash distributions shall be made as soon as practicable after the date that the order or judgment of the Bankruptcy Court allowing such Disputed Claim (or portion thereof) becomes a Final Order, but in no event more than thirty (30) days thereafter. Shares of New Common Stock or New Warrants distributable to the holder of a Disputed Claim which becomes an Allowed Claim (in whole or in part) as a result of the entry of an order or judgment of the Bankruptcy Court allowing such Disputed Claim (or portion thereof) shall be made in accordance with Section 6.3 hereof.

### 7.4. *Estimation of Claims.*

The Reorganized Debtors may at any time request that the Bankruptcy Court estimate any contingent, unliquidated, or Disputed Claim pursuant to section 502(c) of the Bankruptcy Code regardless of whether the Debtor previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including, without limitation, during the pendency of any appeal relating to any such objection. In the event that the Bankruptcy Court estimates any contingent, unliquidated, or Disputed Claim, the amount so estimated shall constitute either the allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on the amount of such Claim, the Reorganized Debtors may pursue supplementary proceedings to object to the allowance of such Claim. All of the aforementioned objection, estimation, and resolution procedures are intended to be cumulative and not exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court.

### 7.5. *Interest and Dividends.*

To the extent that a Disputed Claim becomes an Allowed Claim after the Effective Date and is entitled to a Cash distribution under the Plan of Reorganization, the holder of such Claim shall be entitled to a Cash distribution plus interest thereon, calculated at the average rate received by the Debtors in their deposit accounts, from the Effective Date to the date of distribution. In the event that dividend distributions have been made with respect to the New Common Stock distributable to a holder of a Disputed Claim that later becomes Allowed, such holder shall be entitled to receive such previously distributed dividends without any interest with respect thereto.

## SECTION 8. EXECUTORY CONTRACTS AND UNEXPIRED LEASES

### 8.1. *General Treatment.*

All executory contracts and unexpired leases to which any of the Debtors are parties are hereby assumed, including the bonds executed by Liberty Bond Services on behalf of the Debtors, except for an executory contract or unexpired lease that (i) has been assumed or rejected pursuant to Final Order of the Bankruptcy Court, (ii) is specifically designated as a contract or lease to be rejected on the Schedule of Rejected Contracts attached hereto, (iii) is the subject of a separate motion to assume or reject filed under section 365 of the Bankruptcy Code by the Genesis Debtors or Multicare Debtors prior to the Confirmation Date, or (iv) is an option or warrant to purchase common stock of any of the Debtors or right to convert any Equity Interest into common stock of any of the Debtors to the extent such option, warrant, or conversion right is determined not to be an Equity Interest.

### 8.2. *Cure of Defaults.*

Except to the extent that different treatment has been agreed to by the nondebtor party or parties to any executory contract or unexpired lease to be assumed pursuant to Section 8.1 hereof, the Debtors shall, pursuant to the provisions of sections 1123(a)(5)(G) and 1123(b)(2) of the Bankruptcy Code and consistent with the requirements of section 365 of the Bankruptcy Code, within thirty (30) days of the Confirmation Date, file and serve a pleading with the Bankruptcy Court listing the cure amounts of all executory contracts or unexpired leases to be assumed. The parties to such executory contracts or unexpired leases to be assumed by the Debtors shall have fifteen (15) days from service to object to the cure amounts listed by the Debtors. If there are any objections filed, the Bankruptcy Court shall hold a hearing. The Debtors shall retain their right to reject any of their executory contracts or unexpired leases, including contracts or leases that are subject to a dispute concerning amounts necessary to cure any defaults.

### 8.3. *Rejection Claims.*

In the event that the rejection of an executory contract or unexpired lease by any of the Debtors pursuant to the Plan of Reorganization results in damages to the other party or parties to such contract or lease, a Claim for such damages, if not heretofore evidenced by a filed proof of claim, shall be forever barred and shall not be enforceable against the Debtors, or their respective properties or interests in property as agents, successors, or assigns, unless a proof of claim is filed with the Bankruptcy Court and served upon counsel for the Debtors on or before the date that is thirty (30) days after the Confirmation Date or such later rejection date that occurs as a result of a dispute concerning amounts necessary to cure any defaults.

### 8.4. *Senior Executives of Reorganized Genesis.*

Reorganized Genesis shall enter into long-term employment agreements with Michael R. Walker, Richard R. Howard, David C. Barr, and George V. Hager, Jr. in the form set forth in the Plan Supplement.

### 8.5. *Survival of the Debtors' Corporate Indemnities.*

Any obligations of the Debtors pursuant to their corporate charters and bylaws or agreements entered into any time prior to the Effective Date, to indemnify current directors, officers, agents, and/or employees with respect to all present and future actions, suits, and proceedings against the Debtors or such directors, officers, agents, and/or employees, based upon any act or omission for or on

2335334-1

29

AA. 900

behalf of the Debtors shall not be discharged or impaired by confirmation of the Plan of Reorganization. Such obligations shall be deemed and treated as executory contracts to be assumed by the Debtors pursuant to the Plan of Reorganization, and shall continue as obligations of the Reorganized Debtors.

## SECTION 9. CONDITION PRECEDENT TO THE EFFECTIVE DATE

The occurrence of the Effective Date of the Plan of Reorganization is subject to satisfaction of the condition precedent that the Reorganized Debtors shall enter into the new financing arrangements referred to in Section 5.4 hereof for purposes of funding obligations under the Plan of Reorganization and providing for working capital requirements and all of the conditions precedent to the initial extensions of credit thereunder shall be satisfied.

## SECTION 10. EFFECT OF CONFIRMATION

### 10.1. *Vesting of Assets.*

Upon the Effective Date, pursuant to sections 1141(b) and (c) of the Bankruptcy Code, all property of the Debtors' bankruptcy estates shall vest in the Reorganized Debtors free and clear of all Claims, liens, encumbrances, charges, and other interests, except as provided herein. The Reorganized Debtors may operate their businesses and may use, acquire, and dispose of property free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules and in all respects as if there were no pending cases under any chapter or provision of the Bankruptcy Code, except as provided herein.

### 10.2. *Discharge of Claims and Termination of Equity Interests.*

Except as otherwise provided herein or in the Confirmation Order, the rights afforded in the Plan of Reorganization and the payments and distributions to be made hereunder shall discharge all existing debts and Claims, and terminate all Equity Interests, of any kind, nature, or description whatsoever against or in the Debtors or any of their assets or properties to the fullest extent permitted by section 1141 of the Bankruptcy Code. Except as provided in the Plan of Reorganization, upon the Effective Date, all existing Claims against the Debtors and Equity Interests in the Debtors, shall be, and shall be deemed to be, discharged and terminated, and all holders of Claims and Equity Interests shall be precluded and enjoined from asserting against the Reorganized Debtors, or any of their assets or properties, any other or further Claim or Equity Interest based upon any act or omission, transaction, or other activity of any kind or nature that occurred prior to the Effective Date, whether or not such holder has filed a proof of claim or proof of equity interest. Notwithstanding any provision of the Plan to the contrary, any valid setoff or recoupment rights held against any of the Debtors, including any such rights that HCR Manor Care, Inc., Manor Care, Inc., and/or ManorCare Health Services, Inc. may have in connection with the pending prepetition litigation actions described in section V.D of the disclosure statement for the Plan, shall not be affected by the Plan and shall be expressly preserved in the Confirmation Order.

### 10.3. *Discharge of Debtors.*

Upon the Effective Date and in consideration of the distributions to be made hereunder, except as otherwise expressly provided herein, each holder (as well as any trustees and agents on behalf of each holder) of a Claim or Equity Interest and any affiliate of such holder shall be deemed to have forever waived, released, and discharged the Debtors, to the fullest extent permitted by section 1141 of the Bankruptcy Code, of and from any and all Claims, Equity Interests, rights, and liabilities that arose prior to the Effective Date. Upon the Effective Date, all such persons shall be forever precluded and enjoined, pursuant to section 524 of the Bankruptcy Code, from prosecuting or asserting any such

discharged Claim against or terminated Equity Interest in the Debtors. Notwithstanding any provision of the Plan to the contrary, any valid setoff or recoupment rights held against any of the Debtors, including any such rights that HCR Manor Care, Inc., Manor Care, Inc., and/or ManorCare Health Services, Inc. may have in connection with the pending prepetition litigation actions described in section V.D of the disclosure statement for the Plan, shall not be affected by the Plan and shall be expressly preserved in the Confirmation Order.

10.4.   *Term of Injunctions or Stays.*

Unless otherwise provided, all injunctions or stays arising under or entered during the Reorganization Cases under section 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the later of the Effective Date and the date indicated in such order.

10.5.   *Injunction Against Interference With Plan.*

Upon the entry of a Confirmation Order with respect to the Plan of Reorganization, all holders of Claims and Equity Interests and other parties in interest, along with their respective present or former employees, agents, officers, directors, or principals, shall be enjoined from taking any actions to interfere with the implementation or consummation of the Plan of Reorganization.

10.6.   *Exculpation.*

Neither the Debtors, any Disbursing Agent, the respective statutory committees of unsecured creditors appointed pursuant to section 1102 of the Bankruptcy Code in the Genesis Reorganization Cases and the Multicare Reorganization Cases, Mellon Bank, N.A., as administrative agent under, and any lender under, the Genesis Senior Lender Agreements, the Multicare Senior Lender Agreements, and the Revolving Credit and Guaranty Agreements described in Section 2.4 hereof, nor any of their respective members, officers, directors, employees, agents, or professionals shall have or incur any liability to any holder of any Claim or Equity Interest for any act or omission in connection with, or arising out of, the Reorganization Cases, the confirmation of the Plan of Reorganization, the consummation of the Plan of Reorganization, or the administration of the Plan of Reorganization or property to be distributed under the Plan of Reorganization, except for willful misconduct or gross negligence.

10.7.   *Retention of Causes of Action/Reservation of Rights.*

(a)   Nothing contained in the Plan of Reorganization or the Confirmation Order shall be deemed to be a waiver or the relinquishment of any rights or causes of action that the Debtors or the Reorganized Debtors may have or which the Reorganized Debtors may choose to assert on behalf of their respective estates under any provision of the Bankruptcy Code or any applicable nonbankruptcy law, including, without limitation, (i) any and all Claims against any person or entity, to the extent such person or entity asserts a crossclaim, counterclaim, and/or Claim for setoff which seeks affirmative relief against the Debtors, the Reorganized Debtors, their officers, directors, or representatives, and (ii) the turnover of any property of the Debtors' estates; *provided, however,* that this Section does not apply with respect to the settlement agreements described in Sections 5.15 and 5.16 hereof. Notwithstanding the foregoing, the Debtors and the Reorganized Debtors waive all avoidance actions, except as set forth in the Plan Supplement.

(b)   Nothing contained in the Plan of Reorganization or the Confirmation Order shall be deemed to be a waiver or relinquishment of any claim, cause of action, right of setoff, or other legal or

equitable defense which the Debtors had immediately prior to the Commencement Date, against or with respect to any Claim left unimpaired by the Plan of Reorganization. The Reorganized Debtors shall have, retain, reserve, and be entitled to assert all such claims, causes of action, rights of setoff, and other legal or equitable defenses which they had immediately prior to the Commencement Date fully as if the Reorganization Cases had not been commenced, and all of the Reorganized Debtors' legal and equitable rights respecting any Claim left unimpaired by the Plan of Reorganization may be asserted after the Confirmation Date to the same extent as if the Reorganization Cases had not been commenced.

SECTION 11. **RETENTION OF JURISDICTION**

On and after the Effective Date, the Bankruptcy Court shall retain jurisdiction over all matters arising in, arising under, and related to the Reorganization Cases for, among other things, the following purposes:

(a) To hear and determine applications for the assumption or rejection of executory contracts or unexpired leases and the allowance of Claims resulting therefrom.

(b) To determine any motion, adversary proceeding, application, contested matter, and other litigated matter pending on or commenced after the Confirmation Date.

(c) To ensure that distributions to holders of Allowed Claims are accomplished as provided herein.

(d) To consider Claims or the allowance, classification, priority, compromise, estimation, or payment of any Claim, Administrative Claim, or Equity Interest.

(e) To enter, implement, or enforce such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, reversed, revoked, modified, or vacated.

(f) To issue injunctions, enter and implement other orders, and take such other actions as may be necessary or appropriate to restrain interference by any person with the consummation, implementation, or enforcement of the Plan of Reorganization, the Confirmation Order, or any other order of the Bankruptcy Court.

(g) To hear and determine any application to modify the Plan of Reorganization in accordance with section 1127 of the Bankruptcy Code, to remedy any defect or omission or reconcile any inconsistency in the Plan of Reorganization, the disclosure statement for the Plan or Reorganization, or any order of the Bankruptcy Court, including the Confirmation Order, in such a manner as may be necessary to carry out the purposes and effects thereof.

(h) To hear and determine all applications under sections 330, 331, and 503(b) of the Bankruptcy Code for awards of compensation for services rendered and reimbursement of expenses incurred prior to the Confirmation Date.

(i) To hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan of Reorganization, the Confirmation Order, any transactions or payments contemplated hereby, or any agreement, instrument, or other document governing or relating to any of the foregoing.

(j) To take any action and issue such orders as may be necessary to construe, enforce, implement, execute, and consummate the Plan of Reorganization or to maintain the integrity of the Plan of Reorganization following consummation.

(k) To hear any disputes arising out of, and to enforce, the order approving alternative dispute resolution procedures to resolve personal injury, employment litigation, and similar claims pursuant to section 105(a) of the Bankruptcy Code.

(l) To determine such other matters and for such other purposes as may be provided in the Confirmation Order.

(m) To hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code.

(n) To hear and determine any other matters related hereto and not inconsistent with the Bankruptcy Code and title 28 of the United States Code.

(o) To enter a final decree closing the Reorganization Cases.

(p) To recover all assets of the Debtors and property of the Debtors' estates, wherever located.

## SECTION 12.    MISCELLANEOUS PROVISIONS

### 12.1.    *Payment of Statutory Fees.*

On the Effective Date, and thereafter as may be required, the Debtors shall pay all fees payable pursuant to section 1930 of chapter 123 of title 28 of the United States Code.

### 12.2.    *Retiree Benefits.*

On and after the Effective Date, pursuant to section 1129(a)(13) of the Bankruptcy Code, the Reorganized Debtors shall continue to pay all retiree benefits of the Debtors (within the meaning of section 1114 of the Bankruptcy Code), at the level established in accordance with section 1114 of the Bankruptcy Code, at any time prior to the Confirmation Date, for the duration of the period for which the Debtors had obligated themselves to provide such benefits.

### 12.3.    *Dissolution of Statutory Committees of Unsecured Creditors.*

The respective statutory committees of unsecured creditors appointed pursuant to section 1102 of the Bankruptcy Code in the Genesis Reorganization Cases and the Multicare Reorganization Cases shall dissolve on the Effective Date, except that such statutory committees shall have the right to review and object to any applications for compensation and reimbursement of expenses filed in accordance with Section 2.2 hereof.

### 12.4.    *Substantial Consummation.*

On the Effective Date, the Plan of Reorganization shall be deemed to be substantially consummated under sections 1101 and 1127(b) of the Bankruptcy Code.

12.5. *Amendments.*

(a)  *Plan of Reorganization Modifications.* The Plan of Reorganization may be amended, modified, or supplemented by the Debtors or the Reorganized Debtors in the manner provided for by section 1127 of the Bankruptcy Code or as otherwise permitted by law without additional disclosure pursuant to section 1125 of the Bankruptcy Code, with the prior written consent of Mellon Bank, N.A., as administrative agent under the Genesis Senior Lender Agreements, the Multicare Senior Lender Agreements, and the Revolving Credit and Guaranty Agreements described in Section 2.4 hereof and the respective statutory committee of unsecured creditors appointed in the Genesis Reorganization Cases and Multicare Reorganization Cases, to the extent that such amendment, modification, or supplement would adversely and materially affect the treatment of the Senior Lender Claims, the Genesis General Unsecured Claims, and the Multicare General Unsecured Claims, respectively, except as the Bankruptcy Court may otherwise direct. In addition, after the Confirmation Date, so long as such action does not materially adversely affect the treatment of holders of Claims or Equity Interests under the Plan of Reorganization, the Debtors may institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in the Plan of Reorganization or the Confirmation Order, with respect to such matters as may be necessary to carry out the purposes and effects of the Plan of Reorganization.

(b)  *Other Amendments.* Prior to the Effective Date the Debtors may make appropriate technical adjustments and modifications to the Plan of Reorganization without further order or approval of the Bankruptcy Court, provided that such technical adjustments and modifications do not adversely affect in a material way the treatment of holders of Claims or Equity Interests.

12.6. *Revocation or Withdrawal of the Plan.*

The Debtors reserve the right to revoke or withdraw the Plan prior to the Effective Date. If the Debtors take such action, the Plan of Reorganization shall be deemed null and void.

12.7. *Severability.*

If, prior to the entry of the Confirmation Order, any term or provision of the Plan of Reorganization is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court, at the request of the Debtors, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan of Reorganization will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan or Reorganization, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

12.8. *Governing Law.*

Except to the extent that the Bankruptcy Code or other federal law is applicable, or to the extent an Exhibit hereto or a schedule in the Plan Supplement provides otherwise, the rights, duties, and obligations arising under the Plan of Reorganization shall be governed by, and construed and enforced in accordance with, the laws of the State of Delaware, without giving effect to the principles of conflict of laws thereof.

12.9. *Time.*

In computing any period of time prescribed or allowed by the Plan of Reorganization, unless otherwise set forth herein or determined by the Bankruptcy Court, the provisions of Bankruptcy Rule 9006 shall apply.

12.10. *Notices.*

All notices, requests, and demands to or upon the Debtors to be effective shall be in writing (including by facsimile transmission) and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

> Genesis Health Ventures, Inc.
> 101 East State Street
> Kennett Square, Pennsylvania 19348
> Attn: James J. Wankmiller, Esq.
> Corporate Secretary and General Counsel
> Telephone: (610) 444-6350
> Telecopier: (610) 444-3365
>
> - and -
>
> Weil, Gotshal & Manges LLP
> 767 Fifth Avenue
> New York, New York 10153
> Attn: Michael F. Walsh, Esq.
>       Gary T. Holtzer, Esq.
> Telephone: (212) 310-8000
> Telecopier: (212) 310-8007
>
> - and -
>
> Richards, Layton & Finger P.A.
> One Rodney Square
> P.O. Box 551
> Wilmington, Delaware 19899
> Attn: Mark D. Collins, Esq.
> Telephone: (302) 658-6541
> Telecopier: (302) 658-6548
>
> - and –
>
> The Multicare Companies, Inc.
> 101 East State Street
> Kennett Square, Pennsylvania 19348
> Attn: James J. Wankmiller, Esq.
> Corporate Secretary and General Counsel
> Telephone: (610) 444-6350
> Telecopier: (610) 444-3365

- and --

Willkie Farr & Gallagher
787 Seventh Avenue
New York, New York 10019-6099
Attn: Marc Abrams, Esq.
    Paul V. Shalhoub, Esq.
Telephone: (212) 728-8000
Telecopier: (212) 728-8111

- and --

Young Conaway Stargatt & Taylor
11th Floor, Wilmington Trust Company
P.O. Box 391
Wilmington, Delaware 19899-0391
Attn: James J. Patton, Esq.
    Robert S. Brady, Esq.
Telephone: (302) 571-6600
Telecopier: (302) 571-1253

Dated: Wilmington, Delaware
       July 6, 2001

Respectfully submitted,

GENESIS HEALTH SERVICES CORPORATION
GENESIS HEALTH VENTURES, INC.
ACCUMED, INC.
ASCO HEALTHCARE, INC.
ASCO HEALTHCARE OF NEW ENGLAND, INC.
BRINTON MANOR, INC.
BURLINGTON WOODS CONVALESCENT CENTER, INC.
CARECARD, INC.
CAREFLEET, INC.
CHELTENHAM LTC MANAGEMENT, INC.
COMPASS HEALTH SERVICES, INC.
CONCORD HEALTHCARE CORPORATION
CONCORD PHARMACY SERVICES, INC.
CRESTVIEW CONVALESCENT HOME, INC.
CRESTVIEW NORTH, INC.
CRYSTAL CITY NURSING CENTER, INC.
DELCO APOTHECARY, INC.
DERBY NURSING CENTER CORPORATION
DIANE MORGAN AND ASSOCIATES, INC.
DOVER HEALTHCARE ASSOCIATES, INC.
EASTERN MEDICAL SUPPLIES, INC.
EASTERN REHAB SERVICES, INC.
EIDOS, INC.

ENCARE OF MASSACHUSETTS, INC.
GENESIS ELDERCARE ADULT DAY HEALTH SERVICES, INC.
GENESIS ELDERCARE DIAGNOSTIC SERVICES, INC.
GENESIS ELDERCARE HOME CARE SERVICES, INC.
GENESIS ELDERCARE HOME HEALTH SERVICES-
 SOUTHERN, INC.
GENESIS ELDERCARE HOSPITALITY SERVICES, INC.
GENESIS ELDERCARE MANAGEMENT SERVICES, INC.
GENESIS ELDERCARE NETWORK SERVICES, INC.
GENESIS ELDERCARE NATIONAL CENTERS, INC.
GENESIS ELDERCARE NETWORK SERVICES OF
 MASSACHUSETTS, INC.
GENESIS ELDERCARE PHYSICIAN SERVICES, INC.
GENESIS ELDERCARE PROPERTIES, INC.
GENESIS ELDERCARE REHABILITATION
 MANAGEMENT SERVICES, INC.
GENESIS ELDERCARE REHABILITATION SERVICES,
 INC.
GENESIS ELDERCARE STAFFING SERVICES, INC.
GENESIS ELDERCARE TRANSPORTATION SERVICES,
 INC.
GENESIS HEALTH VENTURES OF ARLINGTON, INC.
GENESIS HEALTH VENTURES OF BLOOMFIELD, INC.
GENESIS HEALTH VENTURES OF CLARKS SUMMIT,
 INC.
GENESIS HEALTH VENTURES OF INDIANA, INC.
GENESIS HEALTH VENTURES OF LANHAM, INC.
GENESIS HEALTH VENTURES OF MASSACHUSETTS,
 INC.
GENESIS HEALTH VENTURES OF NAUGATUCK, INC.
GENESIS HEALTH VENTURES OF NEW GARDEN, INC.
GENESIS HEALTH VENTURES OF POINT PLEASANT,
 INC.
GENESIS HEALTH VENTURES OF WAYNE, INC.
GENESIS HEALTH VENTURES OF WEST VIRGINIA, INC.
GENESIS HEALTH VENTURES OF WILKES-BARRE, INC.
GENESIS HEALTH VENTURES OF WINDSOR, INC.
GENESIS HEALTHCARE CENTERS HOLDINGS, INC.
GENESIS HOLDINGS, INC.
GENESIS IMMEDIATE MED CENTER, INC.
GENESIS PROPERTIES OF DELAWARE CORPORATION
GENESIS SELECTCARE CORP.
GERIATRIC & MEDICAL COMPANIES, INC.
GERIATRIC AND MEDICAL SERVICES, INC.
GERIATRIC AND MEDICAL INVESTMENTS
 CORPORATION
GERIMED CORP.
GMC LEASING CORPORATION
GMC MEDICAL CONSULTING SERVICES, INC.
GMS MANAGEMENT-TUCKER, INC.
GMS MANAGEMENT, INC.

37

GOVERNOR'S HOUSE NURSING HOME, INC.
HEALTH CONCEPTS AND SERVICES, INC
HEALTHCARE RESOURCES CORP.
HEALTHOBJECTS CORPORATION
HILLTOP HEALTH CARE CENTER, INC.
HORIZON MEDICAL EQUIPMENT AND SUPPLY, INC.
INNOVATIVE HEALTH CARE MARKETING, INC.
INNOVATIVE PHARMACY SERVICES, INC.
INSTITUTIONAL HEALTH CARE SERVICES, INC.
KEYSTONE NURSING HOME, INC.
KNOLLWOOD MANOR, INC.
KNOLLWOOD NURSING HOME, INC.
LIFE SUPPORT MEDICAL EQUIPMENT, INC.
LIFE SUPPORT MEDICAL, INC.
LINCOLN NURSING HOME, INC.
MANOR MANAGEMENT CORP. OF GEORGIAN MANOR, INC.
MCKERLEY HEALTH CARE CENTERS, INC.
MEDICAL SERVICES GROUP, INC.
MERIDIAN HEALTH, INC.
MERIDIAN HEALTHCARE, INC.
METRO PHARMACEUTICALS, INC.
NATIONAL PHARMACY SERVICE, INC.
NEIGHBORCARE INFUSION SERVICES, INC.
NEIGHBORCARE-MEDISCO, INC.
NEIGHBORCARE OF NORTHERN CALIFORNIA, INC.
NEIGHBORCARE OF OKLAHOMA, INC.
NEIGHBORCARE OF VIRGINIA, INC.
NEIGHBORCARE OF WISCONSIN, INC.
NEIGHBORCARE PHARMACIES, INC.
NEIGHBORCARE PHARMACY SERVICES, INC.
NEIGHBORCARE-ORCA, INC.
NEIGHBORCARE-TCI, INC.
NETWORK AMBULANCE SERVICES, INC.
OAK HILL HEALTH CARE CENTER, INC.
PHARMACY EQUITIES, INC.
PHILADELPHIA AVENUE CORPORATION
PROFESSIONAL PHARMACY SERVICES, INC.
PROSPECT PARK LTC MANAGEMENT, INC.
STATE STREET ASSOCIATES, INC.
SUBURBAN MEDICAL SERVICES, INC.
THE TIDEWATER HEALTHCARE SHARED SERVICES GROUP, INC.
THERAPY CARE, INC.
TRANSPORT SERVICES, INC.
UNITED HEALTH CARE SERVICES, INC.
VALLEY MEDICAL SERVICES, INC.
VALLEY TRANSPORT AMBULANCE SERVICE, INC.
VERSALINK, INC.
VILLAS REALTY & INVESTMENTS, INC.
WALNUT LTC MANAGEMENT, INC.

WAYSIDE NURSING HOME, INC.
WEISENFLUH AMBULANCE SERVICE, INC.
WEST PHILA. LTC MANAGEMENT, INC.
WYNCOTE HEALTHCARE CORP.
YORK LTC MANAGEMENT, INC.

BY: GENESIS HEALTH VENTURES, INC., as agent and attorney-in-fact for each of the foregoing entities

By: _____
Name: George V. Hager, Jr.
Title: Executive Vice President, Chief Financial Officer


ASCO HEALTHCARE OF NEW ENGLAND, LIMITED PARTNERSHIP

BY: ASCO HEALTHCARE OF NEW ENGLAND, INC., its General Partner

By: _____
Name: George V. Hager, Jr.
Title: Executive Vice President, Chief Financial Officer


BREVARD MERIDIAN LIMITED PARTNERSHIP
CATONSVILLE MERIDIAN LIMITED PARTNERSHIP
EASTON MERIDIAN LIMITED PARTNERSHIP
GREENSPRING MERIDIAN LIMITED PARTNERSHIP
HAMMONDS LANE MERIDIAN LIMITED PARTNERSHIP
MERIDIAN EDGEWOOD LIMITED PARTNERSHIP
MERIDIAN PERRING LIMITED PARTNERSHIP
MERIDIAN VALLEY LIMITED PARTNERSHIP
MERIDIAN VALLEY VIEW LIMITED PARTNERSHIP
MERIDIAN/CONSTELLATION LIMITED PARTNERSHIP
MILLVILLE MERIDIAN LIMITED PARTNERSHIP

BY: MERIDIAN HEALTHCARE, INC., as General Partner of each of the foregoing limited partnerships

By: _____
Name: George V. Hager, Jr.
Title: Executive Vice President, Chief Financial Officer

39