56.     The Management Contract also imposes non-compete requirements based on geographic region. This provision artificially maintains Genesis's market share, and it inhibits the growth of Multicare.

57.     Moreover, the current Management Contract does not reflect Multicare's economic leverage in dealing with Genesis. An independent trustee, who literally could switch managers, would require Genesis to give Multicare the best price, rather than the least embarrassing one. The Committee believes that Genesis "needs" Multicare a lot more than Multicare needs Genesis. Accordingly, an open bidding process to identify the most cost-effective, skilled management would enable Multicare to unlock its economic leverage. To be sue, any debtor would and should do this in chapter 11. The only reason Multicare is not doing this is because it is under the control and domination of Genesis.

58.     The Committee believes that Multicare could save over $5.4 million be restructuring its Management Contract. This represents between $32.4 million and $47 million in increased enterprise value depending on the multiple used.

59.     The Multicare Board has "argued" that marketing the contracts might cause instability among the employees of Multicare (even though Multicare has no management level employees) or impact the quality of patient. This is nonsense. In fact, there is little risk that line management– the directors of nursing and administrators, each of whom is a Genesis employee– would leave their positions if Multicare's ancillary contracts were marketed because, among other things, they will receive stay bonuses at certain milestones throughout the cases, including confirmation of a plan of reorganization. There is also virtually no risk to the quality of patient care if the Related Party Contracts were marketed. Genesis itself is well aware that large

24

companies routinely switch suppliers without internal disruption because Genesis itself bids on such contracts in the normal course of its business.  Genesis, for example, recently acquired Vitalink (an entity with 172,000 beds) without disruptions to Vitalink's operations.  It borders on the absurd to suggest that patient care will be impacted adversely if Multicare purchases drugs at a fair price.  Moreover, with literally hundreds of millions of dollars of enterprise value at stake, Multicare can survive a little disruption.

60.    Based on the foregoing facts, the Committee submits that this Court must direct the appointment of an independent trustee to protect Multicare's estate and Multicare's creditors, and to preserve the legitimacy of this Court's oversight of the interconnected bankruptcies of Multicare and Genesis.

## ARGUMENT

## I.

### THIS COURT SHOULD APPOINT AN INDEPENDENT, UNCONFLICTED CHAPTER 11 TRUSTEE

A.    A Trustee Is Necessary When Management Is Conflicted

61.    The Bankruptcy Code empowers a creditors' committee to "request the appointment of a trustee or examiner under section 1104 of [title 11]."  11 U.S.C. § 1103.  Section 1104 of the Bankruptcy Code provides, in relevant part:

> At any time after the commencement of the case but before confirmation of a plan, on request of a party in interest. . . and after notice and a hearing, the court shall order the appointment of a trustee (1) for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management, either before or after the commencement of the case, or similar cause. . . or (2) if such appointment is in the interest of creditors, any equity security holders, and other interests of the estate. . . .

25

AA. 1159

11 U.S.C. § 1104(a). See also **In re Sharon Steel Corp.**, 871 F.2d 1217 (3d Cir. 1989) (affirming appointment of trustee where management failed to take action to recover assets that were systematically siphoned to affiliated entities on the eve of bankruptcy).

62.    Indeed, as this Court recently affirmed, "current management has an obligation to refrain from acting in a manner which could damage the estate or hinder [a] successful reorganization." **In re Lernout & Hauspie Speech Products, N.V.**, Case No. 00-4398, Transcript of Decision on Motions for Appointment of Chapter 11 Trustee and Disqualification of Milbank Tweed and Continuation of Uncontested/Contested Matters ("Lernout Tr.") (Bankr. D. Del. March 29, 2001) p. 18 (internal citation omitted).

63.    In accordance with that principle, courts repeatedly have found cause for appointment of a trustee under section 1104(a)(1) based upon an actual conflict of interest of management. In **Cajun Electric Power Cooperative, Inc.**, 191 B.R. 659 (Bankr. M.D. La. 1995), aff'd, 74 F.3d 599, 600 (5th Cir. 1996), cert. denied, 519 U.S. 808 (1996), for example, the court granted a creditor's motion for appointment of a trustee for cause where the debtor was a utility cooperative, and members of management were conflicted because they also served as managers of the individual utility companies in the cooperative. The court found that management was hopelessly conflicted in evaluating whether to appeal an order lowering utility rates; if management appealed, it would be seeking to charge higher rates to individual utility companies which would benefit the estates, but if management failed to appeal, the individual utility companies where management also served would benefit. In granting the motion for appointment of a trustee, the court found that a trustee was necessary where management was "working at cross-purposes." Id.; see also **In re Intercat, Inc.**, 247 B.R. 911 (Bankr. S.D. Ga. 2000)

432304.1 5/14/01

(granting creditor's motion to appoint trustee for cause where there was a "lack of [evenhandedness] in dealings with insiders or affiliated entities vis-a-vis other creditors or customers," an "unwillingness or inability of management to pursue estate causes of action" and "conflicts of interest on the part of management interfering with its ability to fulfill fiduciary duties to the debtor.")

64.     As this Court also recently recognized, section 1104(a)(2) of the Bankruptcy Code allows a bankruptcy court to appoint a trustee "when doing so addresses the interests of the creditors, equity, securityholders or other interests even when no cause exists." Lernout Tr., p. 18 (internal citation omitted). Accordingly, courts also have utilized section 1104(a)(2) to appoint a trustee where management faces a conflict of interest. See In re Oklahoma Refining Co., 838 F.2d 1133 (10th Cir. 1988) (granting creditor's motion to appoint trustee as in the best interest of creditors where debtor failed to collect debts from affiliated companies); In re Tel-Net Hawaii, Inc., 105 B.R. 594, 595 (Bankr. D. Haw. 1989) (appointing trustee in the best interest of creditors where debtor's sole shareholder faced a conflict in its fiduciary duty to the debtor's creditors and to its own creditors in its own bankruptcy, and therefore, it was unlikely the shareholder could vigorously investigate or prosecute claims against itself in the debtor's bankruptcy); In re Microwave Products of America, Inc., 94 B.R. 971 (Bankr. W.D. Tenn. 1989) (appointing trustee in the best interest of creditors where the debtor and its parent had overlapping management and the debtor failed to pursue claims against its parent).

65.     In In re Humphrey's Pest Control Franchises, Inc., 40 B.R. 174 (Bankr. E.D. Pa. 1984), the court granted a creditors committee's motion for appointment of a trustee under circumstances very similar to the case at bar. The debtor transferred assets to its parent company

27

AA. 1161

before and after the petition date, purportedly pursuant to the terms of a management agreement. Id. at 176. The creditors committee found, however, that the debtor's records did not justify the transfers, the transfers seriously depleted the debtor's assets, and that "an obvious conflict of interest exists in the management of the two corporations because the officers and principals of the parent corporation are the same individuals as the officers and principals of the debtor." Id. at 177. The court found:

> Once the issue of the propriety of the transfers was raised by the creditors, it was incumbent upon the debtor to convince the Court that the transfers were not an at-random siphoning of assets but rather could be appropriately accounted for.

Id. at 177. The debtor failed to come forward with an accounting, and therefore, the Court appointed a trustee in the best interest of creditors under Bankruptcy Code section 1104(a)(2). Id. at 177.

66. Here, Management not only cannot account for the siphoning, Management concedes that it siphons over $15 million a year. The Committee believes that it siphons over $27 million a year. But either way, a trustee must be appointed. Management faces an undeniable conflict of interest. Management has a duty to Multicare to right-size the Related Party Contracts, and a conflicting duty to Genesis (the one it chose to observe) to maintain the profitable contracts. Because Management receives compensation only from Genesis, and because it intends to merge Multicare into Genesis– after it ultimately wipes out Multicare's unsecured creditors– it is not surprising that Management has refused the Committee's request to market the Related Party Contracts.

67. Management cannot reconcile its conflicting duties, and does not want to. Accordingly, the Committee seeks the appointment of a trustee to market the Related Party

28

Contracts, to negotiate and document a fair plan of reorganization, and to prosecute claims against Genesis arising from the Related Party Contracts. To be clear, the Committee does not seek to disrupt the daily operations of Multicare, and thus does not seek at this point to dislodge the Management Agreement. The trustee may determine that issue and oversee a smooth transition if that is in Multicare's best interest.

### B.    Management Of The Multicare Debtors Undeniably Is Conflicted

68.    Here, appointment of a trustee is appropriate under both Bankruptcy Code sections 1104(a)(1) and 1104(a)(2). The practice of leaving a debtor in possession of its estate is "premised upon an assurance that the officers and managing employees can be depended upon to carry out the fiduciary responsibilities of a trustee." Commodity Futures Trading Commission v. Weintraub, 471 U.S. 343, 355 (1985) (internal citation omitted). See also In re Marvel Entertainment Group, Inc., 140 F.3d 463, 474 (3d Cir. 1998) (a debtor in possession has a duty to "protect and conserve property in its possession for the benefit of creditors"); In re Microwave Products of America, 102 B.R. 659, 671 (Bankr. W.D. Tenn. 1989) ("Because a debtor-in-possession stands in a fiduciary relationship with its creditors, its fiduciary obligation includes refraining from acting in a manner which could damage the estate, or hinder a successful reorganization of the business.")

69.    Indeed, as this Court recently found, although there may be a general presumption that directors who serve at both the parent and subsidiary levels will advocate for the subsidiary when acting on behalf of the subsidiary,

> This general presumption is not a per se rule. . . [and] it is prudent to say that the presumption that an act is taken on behalf of the corporation for whom the officer claims to act is strongest when the act is perfectly consistent with the norms of corporate behavior, but wanes as the distance

29

from those accepted norms approaches the point of action by a dual officer
plainly contrary to the interests of the subsidiary, yet nonetheless
advantageous to the parent.

Lernout Tr., p. 25 (*quoting* United States v. Best Foods, 524 U.S. 51, 70 n.13 (1998)) (emphasis

added). Here, of course, Management has acted in a manner plainly contrary to the interests of

Multicare, yet nonetheless advantageous to Genesis, by allowing Multicare to enter into and to

continue to operate under the detrimental Related Party Contracts.

70.   Management, in fact, has acknowledged its serious conflict of interest in a recent

Multicare filing with the Securities and Exchange Commission:

> Genesis and Messrs. Walker, Hager and Howard have substantial influence
> on Multicare and the outcome of any matters submitted to our stockholders
> for approval, and are in positions that may result in conflicts of interest
> with respect to transactions involving us and Genesis. Genesis and its
> affiliates provide healthcare and related services to our customers and
> facilities either directly or through contracts with us. Conflicts of interest
> may arise in connection with the negotiation of the terms of such
> arrangement.
>
> Genesis is in the business of providing healthcare and support services to
> the elderly, and substantially all if its markets are contiguous to or overlap
> with our existing markets. Genesis may compete with us in certain of these
> markets or in the provision of certain healthcare services. Although our
> directors who are also directors or officers of Genesis have certain
> fiduciary obligations to us under Delaware law, such directors and Genesis
> are in positions that may create potential conflicts of interest with respect
> to certain business opportunities available to and certain transactions
> involving us. Neither Genesis nor Messrs. Walker, Hager and Howard are
> obligated to present to us any particular investment opportunity which
> comes to their attention, even if such opportunity is of a character which
> might by suitable for investment by us.

Multicare 2000 10K (emphasis added).

71.   The Committee firmly believes that the Multicare Board has breached its fiduciary

duties to the estates. Among other things, the Multicare Board has failed to investigate vigorously

30

432304.1 5/14/01

**AA. 1164**

the Related Party Contracts, has failed to realize the inherent value in those contracts for the benefit of Multicare, has directed Multicare to continue to overpay Genesis, and has failed to prosecute actions arising out of those contracts. As detailed above, E&Y did not conduct a thorough, arm's length investigation of the Related Party Contracts, but yet nevertheless determined that the Related Party Contracts are $15 million overmarket. That itself is a staggering concession. Yet even after E&Y's analysis, the Multicare Board has failed to implement all of E&Y's modest recommendations. The Multicare Board likely will not allow unaffiliated third parties to bid on the Related Party Contracts and will not commence litigation against Genesis to recapture value lost prepetition. Meanwhile, more than one-fourth of Multicare's total operating expenses are being consumed by the Related Party Contracts, to the benefit of Genesis and to the detriment of Multicare. Absent a break of Genesis's iron grip on Multicare's potential, this value will be lost forever, and over $284 million in unsecured creditors will be wiped out.

72. This case thus presents a compelling case for a trustee, and is decidedly unlike Lernout, where this Court denied a shareholders' motion for appointment of a trustee. In Lernout, this Court found that general allegations of poor management decisions, such as the cancellation of a debtor's international development activity, and allegations of overlapping management between the debtor and its parent, were insufficient bases for the appointment of a trustee. Lernout Tr., pp. 22-24. The management decisions at issue in Lernout were not, like here, made for the benefit of a controlling manager who was systematically draining valuable assets from its captive debtor. The overlapping management in Lernout did not benefit personally from the transfer of assets, as Management does here. In this case, as distinguished from

31

Lernout, management certainly has not "change[d] hats to represent the two corporations separately." Tr., p. 24. Rather, here, Management maintains its Genesis hat while operating at Multicare, and uses Genesis to deplete Multicare. Also in Lernout, unlike here, the Court found that introduction of a trustee would severely disrupt the debtors' business. Lernout Tr., p. 25. Here, introduction of a trustee for limited purposes in this case would not disrupt Multicare because under a trustee, the Manager would continue to operate Multicare while the Trustee pursued Multicare's interests.

73.    In sum, the Multicare Board is paralyzed by Management's conflict of interest. Under Cajun Electric, this conflict is sufficient cause to appoint a trustee under section 1104(a)(1). Under Humphrey's Pest Control, a trustee would be in the best interest of creditors under section 1104(a)(2).

## II.

## MULTICARE MANAGEMENT MUST PROVE THE INTRINSIC FAIRNESS OF THE RELATED PARTY CONTRACTS

74.    Here, the business judgment rule cannot insulate Management's self-interested decisions. In fact, the business judgment rule does not even apply here. The rule generally provides a "presumption that in making a business decision the director of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interest of the company." Aronson v. Lewis, 473 A.2d 805, 812 (Del. 1984). However, the protections of the business judgment rule "can only be claimed by disinterested directors. . . [which] means that directors can neither appear on both sides of a transaction nor expect to derive any personal benefit from it." Id. at 812; see also In re Main, Inc., 1999 WL 424296, *19

32

(E.D. Pa. June 23, 1999) (the "business judgment rule will not apply... if there is evidence that the director's decisions were either made in bad faith or influenced by self-interest.")

75.    Management cannot use the business judgment rule to justify its inaction concerning the Related Party Contracts because Management appears on both sides of the transactions. George Hager, of course, actually executed the Management Contract for both Multicare and Genesis. Management's broader conflict is plain: Although renegotiation or termination of the Related Party Contracts would clearly benefit Multicare, the same adjustments would be detrimental to Genesis. Therefore, Management has, and surely will continue to, obstruct the actions it must take as a Multicare fiduciary. Moreover, Management concedes the contracts are unfair to Multicare by over $15 million.

76.    In cases where directors have conflicts of interest and their duty of loyalty is in question, it is well established that the directors bear the burden of establishing the "intrinsic fairness" of a transaction. Pepper v. Litton, 308 U.S. 295, 306 (1939); see also In re Reading Co., 711 F.2d 509, 517-18 (3d Cir. 1983) (where a "majority shareholder has used his control over the corporation's board of directors to engage in self-dealing, the Delaware courts will judge the self-dealing action of the dominated board by the test of 'intrinsic fairness'"); Byelick v. Vivadelli, 79 F. Supp.2d 610, 629 (E.D. Va. 1999) (once "an interested director transaction is established, the burden of proof shifts to the defendant [the interested directors who]... bear the burden of showing that the transaction at issue was fair to the corporation"); Mills Acquisition Co. v. MacMillan, Inc., 559 A.2d 1261, 1280 (Del. 1989) (directors are "required to demonstrate both their utmost good faith and the most scrupulous inherent fairness of transactions in which they possess a financial, business or other personal interest."). Here, Genesis has

33

432304.1 5/14/01

installed its own executives on the Multicare Board and provides substantial compensation to Management. Accordingly, the Multicare Board has the burden to show the propriety of the Related Party Contracts. Of course, Genesis cannot prove that such contracts, which steadily and substantially deplete the value of Multicare, are somehow intrinsically fair to the Multicare estates and their creditors. This is particularly true because its own advisors already have conceded that Genesis is abusing its control over Multicare and exacting at least $15 million in value.

77.     The Multicare Board was not relieved of the burden of proving the intrinsic fairness of the Related Party Contracts when Management (in connection with the Bank Group) selected Beverly Anderson to be a purportedly "disinterested" director. Directors are independent only if they are not "beholden" to other directors or "so under the influence that their discretion would be sterilized." Rales v. Blasbard, 634 A.2d 927, 936 (Del. 1993). However, where such independent directors are "torpid, if not supine" in their efforts to act independently from the interested members of the board, a board of directors is not relieved of the burden of showing intrinsic fairness. Mills Acquisition Co., infra, 559 A.2d at 1268 and 1280 (reviewing management-led LBO under intrinsic fairness standard where interested directors selected the financial advisor to the independent directors, and where the independent directors lacked negotiating authority regarding the proposed restructuring).

78.     The Committee believes that Ms. Anderson has exercised no independent decision-making and, in fact, has not countermanded a single Management decision.[12] Management, acting in concert with the Bank Group, installed Ms. Anderson immediately before the Petition Date,

---

[12]     The Committee asked Multicare to provide it with evidence of any decisions of Management overruled by Ms. Anderson or evidence of areas in which Ms. Anderson has actual decisionmaking unfettered by the Genesis-infected directors. Multicare declined.

34

and upon information and belief, there is no evidence that Ms. Anderson has ever acted independently from Management in twelve months of service with respect to any issue where Management faced a conflict of interest. There is also no evidence that Ms. Anderson wields any authority to renegotiate the Related Party Contracts, and no evidence that she has engaged independent legal counsel. Moreover, Ms. Anderson was (and still may be) an employee of E&Y, the very firm that Multicare retained to investigate the Related Party Contracts, and who has submitted applications for over $1.3 million in fees and expenses so far in these cases. Accordingly, the appointment of Ms. Anderson may simply "mask an ineffectual or corrupted effort" for independent review of Multicare's transactions with Genesis. __Kahn v. Tremont Corp.__, 1992 WL 205637, *3 (Del. Ch. Aug. 21, 1992) (denying conflicted directors' motion to stay discovery in a derivative action). Moreover, even if Multicare could demonstrate that Ms. Anderson is independent or has some authority, she cannot whitewash the historical upstream of value to Genesis, the failure or Multicare to market the contracts, and Multicare's continuing to operate post-petition under Genesis's dominance and control. For this, Ms. Anderson is just as culpable as the Genesis directors, and a trustee should be appointed to pursue Multicare's claims.

### III.

## A TRUSTEE WOULD NEGOTIATE WITHOUT A CONFLICT OF INTEREST

79. The Multicare Board's own financial advisors have identified various aspects of the Related Party Contracts that should be renegotiated to the benefit of Multicare, but the Multicare Board has only partially implemented even those cost-saving measures. The Committee has identified other significant contract terms that should be renegotiated, but the Multicare Board has

35

refused to do so. Therefore, it is clearly in the best interests of the Multicare estates and the Multicare creditors for the Court to order the appointment of an independent trustee to evaluate the Related Party Contracts, market, renegotiate and/or replace them, and to prosecute all available estate claims against Genesis.

## IV.

### IN THE ALTERNATIVE, THE COURT SHOULD DIRECT MULTICARE TO ENGAGE IN A FAIR SALE PROCESS OF THE RELATED PARTY CONTRACTS IN ORDER TO BRING THE RELATED PARTY CONTRACTS TO MARKET PRICING FOR THE BENEFIT OF MULTICARE'S CREDITORS

80.     In the alternative, the Court could order a more limited remedy: the sale of the Related Party Contracts on the open market. A public auction would establish conclusively the value of the services provided under the Related Party Contracts. See, e.g., Amerada Hess Corp. v. Commissioner of Internal Revenue, 517 F.2d 75 (3d Cir. 1975), cert. denied, 423 U.S. 1037 (1975) (value of stock was price on the open market, not price that the buyer and seller assigned to the stock in their sale contract); see also Keener v. Exxon Co., USA, 32 F.3d 127, 132, cert. denied, 513 U.S. 1154 (1995) ("fair market value is, by necessity, best set by the market itself"); In re The Two S Corp., 875 F.2d 240, 243 (9th Cir. 1989) ("the price paid at a commercially reasonable sale is the best evidence of value"); In re Harris, 1998 WL 318724, *3 (Bankr. E.D. Pa. 1998) ("What better indication of fair market value is there than the price a willing buyer not obligated to pay an owner, who is not obligated to sell, would pay"); In re Flores de New Mexico, 151 B.R. 571, 576 (Bankr. D. N.M. 1993) (same). The Committee certainly is willing to abide by the dictates of the marketplace, and has told Multicare its Bank Group so.

432304.1 5/14/01

81.     Estate property is typically sold upon a motion brought by a debtor.  However, courts have directed estate property to be sold without the support of the debtor.  In **In re Bjolmes Realty Trust**, 134 B.R. 1000 (Bankr. D. Mass. 1991), for example, the court ordered the sale of the debtor's equity at auction after a secured creditor objected to the debtor's proposed plan, which provided that the principals would retain their stock in consideration for a capital contribution.  **Id.** at 1000.  In order to determine if the principals were making a capital contribution that was reasonably equivalent to the stock, the court held that the "transaction should be measured against market forces" and therefore, the court required, as a condition to plan confirmation, that an auction of the shares be held.  **Id.** at 1009.

82.     A debtor's decisions "made in furtherance of its statutory duties are subject to judicial review for an abuse of discretion."  **In re Monsour Medical Center**, 5 B.R. 715, 718 (Bankr. W.D. Pa. 1980).  Accordingly, when a debtor-in-possession breaches its statutory duties, a creditor "may petition the Court to compel the. . . debtor-in-possession to act."  **Id.** at 718 (affirming that creditors' committee had standing to bring fraudulent transfer action on behalf of the estate).  In fact, the Bankruptcy Code specifically empowers a committee to investigate the debtor's conduct, and "perform such other services as are in the interest of those represented." 11 U.S.C. § 1103(c).[13]

83.     It also is well established that a court may empower a creditors' committee to take action for the benefit of the estates when the debtor unreasonably fails to do so.  See, e.g., **In re Philadelphia Light Supply Co.**, 39 B.R. 51, 53 (Bankr. E.D. Pa. 1984) (granting motion of creditors' committee for leave to commence preference action against debtor's president and sole

---

[13]     Furthermore, any party in interest, including a creditors' committee, "may raise and may appear and be heard on any issue in a case" under chapter 11.  11 U.S.C. § 1109(b).

432304.3 5/14/01

shareholder where it was "unreasonable to expect the debtor in possession to objectively view its claim against that defendant"); **In re Walnut Leasing Co., Inc.**, 1999 WL 729267 (E.D. Pa. Sept. 8, 1999) (creditors' committee had standing to bring securities fraud action against debtors' insiders).

84.     Here, where the Multicare Board has abused its discretion by failing to obtain the services under the Related Party Contracts at market prices, if the Court will not appoint an independent trustee, the Committee submits that the Court should permit the Committee to receive market bids on the services. Short of a trustee, an order directing the sale of the Related Party Contracts would be consistent with the goals of the Bankruptcy Code to maximize the value of Multicare's estate for the benefit of Multicare's, rather than Genesis's, creditors. Again, the cost savings achieved by a sale of the contracts would enure to the benefit of all Multicare creditors.

432304.1 5/14/01

## CONCLUSION

WHEREFORE, the Committee requests that the Court enter an order (i) directing the appointment of a trustee for the Multicare estates (a) to evaluate, renegotiate, and bring to market-pricing the Related Party Contracts among Multicare and Genesis, (b) to evaluate and to prosecute Multicare claims against Genesis, and (c) to propose and to seek confirmation of a fair plan of reorganization that maximizes Multicare's value for the benefit of Multicare's creditors; or, alternatively, (ii) directing Multicare to engage in a fair sale process of the Related Party Contracts in order to bring such Related Party Contracts to market-pricing for the benefit of Multicare's creditors, and (iii) granting such other and further relief as is just and proper.

Mark Minuti (No. 2659)
Tara L. Lattomus (No. 3515)
**SAUL EWING LLP**
222 Delaware Avenue, Suite 1200
P.O. Box 1266
Wilmington, DE 19899
(302) 421-6840/6847

-and-

David S. Rosner
Athena F. Foley
**KASOWITZ, BENSON, TORRES
& FRIEDMAN LLP**
1633 Broadway
New York, NY 10019
(212) 506-1700

Counsel to Official Committee of Unsecured
Creditors of Multicare AMC, Inc., et al.

Dated: May 14, 2001

39

432304.1 5/14/01

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: | ) | Chapter 11 |
| | ) | |
| MULTICARE AMC, INC., *et al.*, | ) | Case No. 00-2494 (JHW) |
| | ) | through 00-2623 (JHW) |
| | ) | |
| Debtors. | ) | Jointly Administered |

## ORDER GRANTING MOTION BY THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR AN ORDER DIRECTING THE APPOINTMENT OF A TRUSTEE OR, ALTERNATIVELY, THE SALE OF THE RELATED PARTY CONTRACTS

Upon the motion (the "Motion") of the Official Committee of Unsecured Creditors (the "Committee") for the estates of the above-captioned debtors (the "Debtors"), for an order (i) directing the appointment of a trustee for the estates of Multicare (a) to evaluate, renegotiate, and bring to market-pricing the Related Party Contracts among Multicare and Genesis, (b) to evaluate and to prosecute Multicare claims against Genesis, and (c) to propose and to seek confirmation of a fair plan of reorganization that maximizes Multicare's value for the benefit of Multicare's creditors; or, alternatively, (ii) directing Multicare to engage in a fair sale process of the Related Party Contracts in order to bring such Related Party Contracts to market-pricing for the benefit of Multicare's creditors; and all capitalized terms herein having the meanings ascribed to them in the Motion; and the Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334; and consideration of the Motion, the relief requested therein and the responses thereto, if any, being a core proceeding in accordance with 28 U.S.C. § 157(b); and good and sufficient notice of the Motion having been given, and it appearing that no other or further notice need be given; and all objections to the Motion, if any, having been overruled or otherwise resolved; and the Court further having found

432304.1 5/14/01

**AA. 1174**

that appointment of an independent trustee as set forth in the Motion is in the best interest of the

estates and their creditors; and after due deliberation and sufficient cause appearing therefor

IT IS HEREBY ORDERED, ADJUDGED, FOUND AND DECREED that:

1.  The Motion is approved.

2.  The Office of the United States Trustee is hereby directed to appoint a chapter 11

trustee (the "Trustee") for the purposes set forth herein.

3.  The Trustee is authorized and directed to review the Related Party Contracts and

any documents relating thereto, as the Trustee deems reasonably necessary.

4.  The Trustee is authorized and directed to take all steps necessary to bring to

market-pricing the Related Party Contracts.

5.  The Trustee is authorized to evaluate and to prosecute all available claims of the

Multicare estates against Genesis.

6.  The Trustee is authorized to take all steps on behalf of Multicare necessary to

propose and to seek confirmation of a fair plan of reorganization that maximizes Multicare's value

for the benefit of Multicare's creditors.

7.  Multicare, Genesis and each of their directors, officers, employees, attorneys,

advisors, and agents are directed to provide all information requested by the Trustee and to

cooperate with the Trustee in all respects.


_____

United States Bankruptcy Judge

Dated: June ___, 2001

432304.1 5/14/01

**AA. 1175**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: | ) | Chapter 11 |
| | ) | |
| MULTICARE AMC, INC., *et al.*, | ) | Case No. 00-2494 (JHW) |
| | ) | through 00-2623 (JHW) |
| | ) | |
| Debtors. | ) | Jointly Administered |

<u>CERTIFICATE OF SERVICE</u>

    I, Mark Minuti, Esquire, hereby certify that on May 14, 2001, I caused a copy of

the foregoing **Motion By The Official Committee Of Unsecured Creditors For An Order**

**Directing The Appointment Of A Trustee Or, Alternatively, The Sale Of The Related Party**

**Contracts** to be served on each of the parties on the attached list in the manner indicated thereon.

 

Mark Minuti (No. 2659)
**SAUL EWING LLP**
222 Delaware Avenue, Suite 1200
P.O. Box 1266
Wilmington, DE  19899
(302) 421-6840

432304.1 5/14/01

**MULTICARE AMC, INC.,** *et al.*
**2002 Service List**

**Via Hand Delivery:**
Robert S. Brady, Esquire
Maureen D. Luke, Esquire
Young Conaway Stargatt & Taylor, LLP
1100 North Market St., 11th Floor
P.O. Box 391
Wilmington, DE 19899-0391

Teresa K. D. Currier, Esquire
Kathleen P. Makowski, Esquire
Klett Rooney Lieber & Schroling
The Brandywine Building
1000 West Street, Suite 1410
Wilmington, DE 19801

Laura Davis Jones, Esquire
Rachel S. Lowy, Esquire
Pachulski, Stang, Ziehl, Young & Jones
919 N. Market Street, Suite 1600
P.O. Box 8705
Wilmington, DE 19801

William P. Bowden, Esquire
Ashby & Geddes
222 Delaware Avenue, 17th Floor
P.O. Box 1150
Wilmington, DE 19801

Michael R. Lastowski, Esquire
Duane Morris & Heckscher, LLP
1201 Orange Street, Suite 1001
Wilmington, DE 19801

Mark D. Collins, Esquire
Deborah E. Spivack, Esquire
Margareta M. Sundelin, Esquire
Richards, Layton & Finger
One Rodney Square
P.O. Box 551
Wilmington, DE 19899

James S. Green, Esquire
R. Karl Hill, Esquire
Seitz, Van Ogtrop & Green, P.A.
222 Delaware Avenue
Suite 1500
Wilmington, DE 19801

Rachel B. Mersky, Esquire
Walsh Monzack and Monaco, P.A.
1201 N. Orange Street, Suite 400
Wilmington, DE 19801

Scott D. Cousins, Esquire
Victoria Watson Counihan, Esquire
Greenberg Traurig, LLP
The Brandywine Builidng
1000 West Street, Suite 1540
Wilmington, DE 19801

Steven F. Mones, Esquire
McCullough, McKenty & Kafader, P.A.
824 Market Street, Fourth Floor
P.O. Box 397
Wilmington, DE 19899-0397

**Via Federal Express:**
Marc Abrams, Esquire
Paul V. Shalhoub, Esquire
Willkie Farr & Gallagher
The Equitable Center
787 Seventh Avenue
New York, NY 10019-6099

Kevin Callahan, Esquire
Office of the U.S. Trustee
601 Walnut Street
Curtis Center, Suite 950 West
Philadelphia, PA 19106

**Via U.S. Mail:**
Marla Rosoff Eskin, Esquire
Jacobs & Crumplar, P.A.
2 East 7th Street
P.O. Box 1271
Wilmington, DE 19899

David E. Retter, Esquire
Karen Ostad, Esquire
Kelley Drye & Warren LLP
101 Park Avenue
New York, NY 10178

Mr. Robert Conrad
Vice Presisdent
HSBC BankUSA
140 Broadway
New York, NY 10005-1180

Michael F. Walsh, Esquire
Gary T. Holzer, Esquire
Weil, Gotshal & Manges, LLP
767 Fifth Avenue
New York, NY 10153

Mary F. Rubinstein, Esquire
Deputy Attorney General
Attorney General's Off./RJ Hughes Justice
Complex
P.O. Box 112
Trenton, NJ 08625

William J. Perlstein, Esquire
Craig Goldblatt, Esquire
Wilmer Cutler & Pickering
2445 M Street, NW
Washington, DC 20037-1420

Peter A. Chapman, Esquire
24 Perdicaris Place
Trenton, NJ 08618

Joseph J. Wielebinski, Esquire
Munsch Hardt Kops & Harr, P.C.
1445 Ross Avenue, Suite 4000
4000 Fountain Place
Dallas, TX 75202

Lisa G. Beckerman, Esquire
Akin Gump Strauss Hauer & Feld, LLP
590 Madison Avenue, 19th Floor
New York, NY 10022

Sam J. Alberts, Esquire
Akin Gump Strauss Hauer & Feld, LLP
1333 New Hampshire Ave., N.W., Ste. 400
Washington, DC 20036

Ms. Nancy Gregoris
APCI Credit A6327
Air Products and Chemicals, Inc.
7201 Hamilton Boulevard
Allentown, PA 18195-1501

Lawrence D. Coppel, Esquire
Gordon Feinblatt Rothman Hoffberger
  & Hollander
233 East Redwood Street
Baltimore, MD 21202

Margaret A. Holland, Esquire
Deputy Attorney General
Attorney General's Off./RJ Hughes Justice
Complex
P.O. Box 106
Trenton, NJ 08625

Daniel J. Lett, Esquire
General Counsel
Bunzl Distribution USA, Inc.
701 Emerson Road Suite 500
St. Louis, MO 63141

-2-

Deborah L. Thorne, Esquire
Dennis E. Quaid, Esquire
Fagel & Haber
140 South Dearborn Street
Suite 1400
Chicago, IL  60603


Peter M. Gilhuly, Esquire
Latham & Watkins
633 West Fifth Street, Suite 4000
Los Angeles, CA  90071


Richard S. Toder, Esquire
Robert Scheibe, Esquire
Morgan Lewis & Bockius, LLP
101 Park Avenue
New York, NY  10178-0060


Matthew P. Gerdisch, Esquire
Kohner, Mann & Kailas, S.C.
1572 East Capitol Drive
P.O. Box 11982
Milwaukee, WI  53211-0982


Jeanne P. Darcey, Esquire
Eddirland D. Christel
Palmer & Dodge, LLP
One Beacon Street
Boston, MA  02108


Jill Bronson, Esquire
Counsel to Mellon Bank
Drinker Biddle & Reath LLP
One Logan Square
18th & Cherry Streets
Philadelphia, PA  19103-6996


Sondra M. Korman, Esquire
Commonwealth of Massachusetts,
Dept. Public Health
250 Washington St.
Executive Office of Health and Human Serv.
Boston, MA  02108-4619


Christopher Beard, Esquire
Beard & Beard
4601 North Park Avenue
Chevy Chase, MD  20815


Marnie S. Gordon, Esquire
Angelo Gordon & Co.
245 Park Avenue, 26th Floor
New York, NY  10167


Mr. Art Sundby
Healthcare Property Investors, Inc.
4675 MacArthur Court, Suite 900
Newport Beach, CA  92660


Raymond L. Shapiro, Esquire
Steven M. Miller, Esquire
Blank Rome Comisky & McCauley LLP
One Logan Square
Philadelphia, PA  19103-6998


First Union National Bank
Attn:  Mr. Matthew Maciver
NC 0737
Capital Markets
301 South College Street, TW-5
Charlotte, NC  28288-0737


Kevin J. Carey, Esquire
Fox, Rothschild, O'Brien & Frankel
2000 Market Street, 10th Floor
Philadelphia, PA 19103-3291


Kathleen M. Miller, Esquire
Smith, Katzenstein & Furlow LLP
800 Delaware Avenue
P.O. Box 410
Wilmington, DE  19899


John J. Nesius, Esquire
Spilman, Thomas & Battle
P.O. Box 273
Charleston, WV  25231


-3-

Michele C. Gott, Esquire
Smith, Katzenstein & Furlow LLP
800 Delaware Avenue
P.O. Box 410
Wilmington, DE 19899

Lawrence F. Landgraff, Esquire
Pension Benefit Guaranty Corporation
Office of the General Counsel
1200 K Street, N.W., Suite 340
Washington, D.C. 20005-4026

Sean C. Kulka, Esquire
Mark I. Duedall, Esquire
Alston & Bird LLP
1201 West Peachtree Street
Atlanta, GA 30309-3424

David S. Musgrave, Esquire
Piper Marbury Rudnick & Wolfe
6225 Smith Avenue
Baltimore, MD 21209-3600

Mr. Eric Scroggins
Chanin Capital Partners
11100 Santa Monica Blvd., Suite 830
Los Angeles, CA 90025

Timothy W. Walsh, Esquire
LeBeouf, Lamb, Greene & MacRae, L.L.P.
125 West 55th Street
New York, NY 10019

Douglas Bacon, Esquire
Timothy Barnes, Esquire
Latham & Watkins
Sears Tower, Suite 5600
Chicago, IL 60606

Phil Seligman, Esquire
Commercial Litigation Branch
Department of Justice – Civil Div.
P.O. Box 875, Ben Franklin Station
1100 L Street, N.W., Room 10152
Washington, D.C. 20044

Keith J. Shapiro, Esquire
Matthew T. Gensburg, Esquire
Greenberg Traurig, LLP
227 West Monroe Street, Suite 3500
Chicago, IL 60606

Bruce Rutsky, Esquire
Elk & Elk Co., L.P.A.
Landerhaven Corporate Center
6110 Parkland Boulevard
Mayfield Heights, OH 44124

Gene E. Matthews
Parcels/D.D.R.
917 King Street
Wilmington, DE 19801

Honorable Judith H. Wizmur
United States Bankruptcy Court
Mitchell H. Cohen Courthouse
4th and Cooper Streets, Room 2020
Camden, NJ 08101

-4-

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

2001 JUN 15  PM 12: 11

CLERK
U.S. BANKRUPTCY COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| In re:                                            : | Chapter 11 Case |
|                                                   : | |
| GENESIS HEALTH VENTURES, INC., *et al.*,    : | Case No. 00-02692 (JHW) |
|                                                   : | (Jointly Administered) |
|             Debtors.                         : | |
| In re:                                            : | Chapter 11 Case |
|                                                   : | |
| MULTICARE AMC, INC., *et al.*,              : | Case No. 00-02494 (JHW) |
|                                                   : | (Jointly Administered) |
|             Debtors.                         : | |

Objection Deadline:  N/A
Hearing Date:  N/A

**MOTION OF OFFICIAL COMMITTEE OF UNSECURED
CREDITORS OF MULTICARE AMC, INC., *et al.*
FOR ORDER SCHEDULING AN EXPEDITED HEARING**

The Official Committee of Unsecured Creditors (the "Committee") of the above-captioned cases *In re Multicare AMC, Inc., et al.,* by and through its counsel, hereby moves this Court, pursuant to Rules 2002 and 9006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Del.Bankr.L.R. 9006-1(e), for an order scheduling an expedited hearing with respect to the accompanying Motion for Order Pursuant to Bankruptcy Code Sections 105(a) and 1125 Adjourning the Hearing to Consider Approval of Disclosure Statement (the "Motion"). In support of this motion, the Committee respectfully represents as follows:

1.    On May 14, 2001, the Committee filed a Motion For An Order Directing The Appointment Of A Trustee Or, Alternatively, The Sale Of The Related Party Contracts (the "Trustee Motion"); wherein the Committee details the Genesis Health Ventures, Inc. *et al.*

434347.1 6/15/01

**AA. 1181**

debtors' absolute control over Multicare, the serious conflicts of interest that infect Multicare's chapter 11 process and the need for the appointment of an independent trustee to preside over Multicare to preserve the value of Multicare for the benefit of Multicare's (as oppose to Genesis') unsecured creditors.

2.    Since filing the Trustee Motion, the Committee has attempted to work with both the Multicare and Genesis debtors (collectively the "Debtors") and their pre-petition secured lenders to agree upon an appropriate discovery schedule for the orderly presentation of the Trustee Motion.  The Trustee Motion is currently scheduled for hearing on July 19, 2001.

3.    While the Committee was attempting to negotiate a discovery schedule in good faith, the Debtors, instead, quickly completed a "joint" disclosure statement (the "Disclosure Statement") with respect to the "joint" merger plan of reorganization (the "Plan") and scheduled a hearing on the adequacy of the Disclosure Statement for July 6, 2001 (the "Disclosure Statement Hearing").  As detailed in the Disclosure Statement and as set forth in the Plan, Genesis brazenly trumpets its absolute control over Multicare and seeks this Court's assistance in its total absorption of Multicare and the utter elimination of almost $300 million of Multicare unsecured debt.

4.    By this motion, the Committee seeks an order, pursuant to Bankruptcy Rules 2002 and 9006(b) and Del.Bankr.L.R. 9006-1(e), scheduling its Motion to adjourn the Disclosure Statement Hearing for June 26, 2001 at 2:00 p.m.

5.    As more fully set forth in the accompanying Motion, the Committee believes grounds exists to adjourn the Disclosure Statement hearing until after the Court can consider the Trustee Motion.  Given that the Disclosure Statement Hearing is scheduled for July 6, 2001, consideration of the Motion on the Court's next omnibus hearing date, June 26, 2001, will provide all parties with an opportunity to present their respective positions on the Motion prior to the

434347.1 6/15/01

Disclosure Statement Hearing.  Without expedited consideration of the Motion, the Committee will be denied the opportunity to obtain the request the relief requested in the Motion, as the next omnibus hearing date in these cases is scheduled to occur after the Disclosure Statement Hearing.

6.     No party will suffer prejudice if the Court approves this motion, as the issues presented by the Motion (i.e., whether the Trustee Motion should be heard prior to the Disclosure Statement) are not complex, and all interested parties will have a full and fair opportunity to present their views on the issues at the June 26, 2001 hearing.

434347.1 6/15/01

WHEREFORE, the Committee respectfully requests that the Court enter an order scheduling the Motion for hearing on June 26, 2001 at 2:00 p.m.; with responses to the Motion, if any, to be served and filed by 12:00 noon on June 25, 2001; and that the Court grant the Committee such further relief as is just and proper.

Mark Minuti (No. 2659)
Tara L. Lattomus (No. 3515)
**SAUL EWING LLP**
222 Delaware Avenue, Suite 1200
P.O. Box 1266
Wilmington, DE 19899
(302) 421-6840/6847

-and-

David S. Rosner
Athena F. Foley
KASOWITZ, BENSON, TORRES
   & FRIEDMAN LLP
1633 Broadway
New York, NY 10019
(212) 506-1700

Counsel to Official Committee of Unsecured Creditors of Multicare AMC, Inc., *et al.*

Dated: June 15, 2001

SO ORDERED this ____ day of June, 2001.

_____
United State Bankruptcy Judge

434347.1 6/15/01

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

————————————————————————x
In re:                                            :           Chapter 11 Case
                                                  :
GENESIS HEALTH VENTURES, INC., _et al._,          :           Case No. 00-02692 (JHW)
                                                  :           (Jointly Administered)
        Debtors.                                  :
————————————————————————x
In re:                                            :           Chapter 11 Case
                                                  :
MULTICARE AMC, INC., _et al._,                    :           Case No. 00-02494 (JHW)
                                                  :           (Jointly Administered)
        Debtors.                                  :
————————————————————————x

Objection Deadline:  June 25, 2001 @ 12:00 p.m.
Hearing Date:  June 26, 2001 @ 2:00 p.m.

## NOTICE OF MOTION

TO:

| | | |
|---|---|---|
| Robert S. Brady, Esquire<br>Young Conaway Stargatt &<br>Taylor, LLP<br>1100 North Market St., 11th Fl.<br>P.O. Box 391<br>Wilmington, DE  19899-0391<br>(Counsel to Debtors) | Marc Abrams, Esquire<br>Willkie Farr & Gallagher<br>153 East 53rd Street<br>One Citicorp Center<br>New York, NY  10022<br>(Counsel to Debtors) | Kevin Callahan, Esquire<br>Office of the US Trustee<br>601 Walnut Street<br>Curtis Center, Suite 950 West<br>Philadelphia, PA 19106<br>(US Trustee) |
| Multicare AMC, Inc.<br>Attn:  George V. Hager, Sr., CFO<br>101 East State Street<br>Kennett Square, PA  19348<br>  (Debtors) | Teresa K. D. Currier, Esquire<br>Kathleen P. Makowski, Esquire<br>Klett Rooney Lieber & Schroling<br>The Brandywine Building<br>1000 West Street, Suite 1410<br>Wilmington, DE  19801<br>(Counsel to Mellon Bank, N.A.) | Richard S. Toder, Esquire<br>Morgan Lewis & Bockius, LLP<br>101 Park Avenue<br>New York, NY  10178-0060<br>(Counsel to Mellon Bank, N.A.) |
| Jill Bronson, Esquire<br>Drinker Biddle & Reath LLP<br>One Logan Square<br>18th & Cherry Streets<br>Philadelphia, PA  19103-6996<br>(Counsel to Mellon Bank, N.A.) | All parties on the 2002<br>Service List | |

434332.1 6/15/01

AA. 1185

The Official Committee of Unsecured Creditors of the above captioned case *In re Multicare AMC, Inc., et al.* (the "Committee") filed the attached **Motion For Order Pursuant To Bankruptcy Code Sections 105(A) And 1125 Adjourning The Hearing To Consider Approval Of Disclosure Statement** (the "Motion"). In the Motion, the Committee seeks to order adjourn the Disclosure Statement hearing until a date after the determination of the Motion For an Order Directing The Appointment of a Trustee Or, Alternatively, The Sale of The Related Party Contracts.

You are required to file a response to the attached Motion on or before **June 25, 2001 at 12:00 p.m.**

At the same time, you must also serve a copy of the response on the Committee's attorney:

| | |
|---|---|
| Mark Minuti, Esquire | David S. Rosner, Esquire |
| Saul Ewing LLP | Athena F. Foley, Esquire |
| 222 Delaware Avenue, Suite 1200 | Kasowitz, Benson, Torres & Friedman LLP |
| P.O. Box 1266 | 1633 Broadway |
| Wilmington, DE  19899 | New York, NY  10019 |

**HEARING ON THE MOTION WILL BE HELD ON June 26, 2001 at 2:00 p.m.** before The Honorable Judith H. Wizmur, United States Bankruptcy Judge, Mitchell H. Cohen Courthouse, 401 Cooper Street, Camden, New Jersey 80101.

2

434332.1 6/15/01

IF YOU FAIL TO RESPOND IN ACCORDANCE WITH THIS NOTICE, THE COURT MAY GRANT THE RELIEF DEMANDED BY THE MOTION WITHOUT FURTHER NOTICE OR HEARING.

_____

Mark Minuti (No. 2659)
Tara L. Lattomus (No. 3515)
**SAUL EWING LLP**
222 Delaware Avenue, Suite 1200
P.O. Box 1266
Wilmington, DE 19899
(302) 421-6840/6847

-and-

David S. Rosner
Athena F. Foley
KASOWITZ, BENSON, TORRES
  & FRIEDMAN LLP
1633 Broadway
New York, NY 10019
(212) 506-1700

Counsel to Official Committee of Unsecured
Creditors of Multicare AMC, Inc., *et al.*

Dated: June 15, 2001

434332.1 6/15/01

**AA. 1187**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

```
--------------------------------------x
In re:                                :      Chapter 11 Case
                                      :
GENESIS HEALTH VENTURES, INC., et al.,:      Case No. 00-02692 (JHW)
                                      :      (Jointly Administered)
        Debtors.                      :
--------------------------------------x
In re:                                :      Chapter 11 Case
                                      :
MULTICARE AMC, INC., et al.,          :      Case No. 00-02494 (JHW)
                                      :      (Jointly Administered)
        Debtors.                      :
--------------------------------------x
```

Objection Deadline:  June 25, 2001 @ 12:00 p.m.
Hearing Date:  June 26, 2001 @ 2:00 p.m.

## MOTION FOR ORDER PURSUANT TO BANKRUPTCY CODE SECTIONS 105(a) AND 1125 ADJOURNING THE HEARING TO CONSIDER APPROVAL OF DISCLOSURE STATEMENT

The Official Committee of Unsecured Creditors of the above captioned case *In re Multicare AMC, Inc., et al.* (the "Committee"), by its undersigned counsel, hereby moves this Court for entry of an order pursuant to sections 105(a) and 1125 of the Bankruptcy Code, adjourning the hearing to consider approval of the "joint" disclosure statement (the "Disclosure Statement" or "D.S.") filed with respect to the "joint" merger plan of reorganization (the "Plan") by the estates of *Genesis Health Ventures, Inc.*, et al. (together, "Genesis") and the Genesis-controlled estates of *Multicare AMC, Inc.*, et al. (together, "Multicare"). In support thereof, the Committee respectfully represents as follows:

434332.1 6/15/01

AA. 1188

## PRELIMINARY STATEMENT

This Court should not entertain approval of the "joint" Disclosure Statement, and thereby put its judicial imprimatur on a conflicted plan "process" in which Genesis – through its conceded absolute control over Multicare – sacrifices Multicare's interests for the benefit of Genesis. Rather, Multicare's Committee – which represents the only constituency not infected by disabling Genesis conflicts of interest – submits that the integrity of the chapter 11 process requires that this Court first consider the fundamental conflict-of-interest issues raised by the Committee's pending motion for appointment of an independent Multicare trustee.

After the culmination of an intensive effort to urge Multicare to unlock its true value and to test its Genesis-controlled contractual relationships in the market, and Multicare's (actually Genesis's) steadfast refusal, in mid-May, the Committee filed its Motion For an Order Directing The Appointment of a Trustee Or, Alternatively, The Sale of The Related Party Contracts (the "Trustee Motion"). The hearing on the Trustee Motion (the "Trustee Motion Hearing") was scheduled for June 6, 2001, but it was postponed at the request of Multicare, Genesis, and their prepetition secured lenders (the "Bank Group"), to enable discovery and currently is scheduled for July 19, 2001. In terms of discovery, Genesis, Multicare, the Bank Group, and the Committee have each served document requests, are each seeking depositions, and are discussing an orderly discovery schedule.

In response to the Trustee Motion, Genesis filed its merger Plan and Disclosure Statement by which Genesis brazenly trumpets its absolute control over Multicare and seeks this Court's assistance in its total absorption of Multicare and the utter elimination of almost $300 million of Multicare unsecured debt. Incredibly, at the very same time that the Committee, Genesis, and

AA. 1189

the Bank Group supposedly were working out a consensual discovery schedule on the Trustee Motion, Genesis accelerated the plan "process" and scheduled a hearing for Court approval on the Disclosure Statement with a view towards ramming through its merger plan before this Court addressed the threshold issues raised by the Trustee Motion: Namely, whether Genesis may use this Court to effectuate its total control of Multicare by simply taking it. In other words, the Trustee Motion raises fundamental questions regarding the total control of Multicare by Genesis and therefore, the justiciability in toto of the Disclosure Statement and the Plan.

The Trustee Motion, a copy of which is annexed hereto as Exhibit "A," documents the serious conflicts of interest that infect Multicare's chapter 11 process. Genesis controls Multicare's board of directors. Genesis controls Multicare's management. Genesis controls Multicare's decision making. Genesis takes huge value – literally in the hundreds of millions – from Multicare through above-market pricing of contracts and informal arrangements for management, other services, and supplies (the "Related Party Contracts"). The Bank Group turns a blind eye to this reality (just as Genesis is hoping this Court will do), because the Bank Group's claims against Genesis exceed its claims against Multicare by over $800 million. Genesis owes the Bank Group $1.2 billion, but Multicare owes the same Bank Group only $443 million. Thus, any transfer of value from Multicare to Genesis benefits the Bank Group at Genesis – where the Bank Group has by far the greater economic interest. In other words, by signing on to the "hurry up" Plan process, the Bank Group has demonstrated that it will allow Genesis to use Multicare to shore up the Bank Group's losses at Genesis.

Genesis's absolute control over Multicare is demonstrated first by Genesis's continued taking of at least $120 million – which Genesis concedes – and as much as $216 million in

3

434332.1 6/15/01

Multicare enterprise value annually accordingly to the Committee, <u>second</u>, by Multicare's flouting of its fiduciary obligations by absolutely refusing to market its Related Party Contracts and attempting to realize its inherent value separate from Genesis, and <u>third</u>, by Multicare's complicity in Genesis's Multicare-absorption plan. This control has so fundamentally corrupted Multicare's chapter 11 plan "process" and is so central to the good faith principles underlying the Bankruptcy Code that the Court first must determine the issues raised by the Trustee Motion before permitting Genesis to use the Court to undermine the integrity of the Bankruptcy Code.

Accordingly, the Committee respectfully requests that this Court adjourn the July 6 Disclosure Statement Hearing pending completion of discovery, the Trustee Motion Hearing, and a determination of the Trustee Motion.

## JURISDICTION AND VENUE

This Court has jurisdiction over this motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue of this proceeding is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

## LAW AND ARGUMENT:
### THE DISCLOSURE STATEMENT HEARING SHOULD BE
### ADJOURNED PENDING DETERMINATION OF THE TRUSTEE MOTION

A.    <u>The Court Has Authority To Adjourn The Disclosure Statement Hearing</u>

It is well established that this Court has authority to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions" of title 11. 11 U.S.C. § 105(a). As in the <u>Loewen Group International, Inc.</u> chapter 11 cases pending in the Delaware

4

**AA. 1191**

Bankruptcy Court (Walsh, J.), the Court should utilize this power when matters raised among the parties are central to the viability of the plan process itself:

> It seems to me that when a court, as this one does now, concludes that this is a serious enough issue that it ought to be decided prior to confirmation, lest the confirmation process be a wasted effort, then I think it's appropriate to embark upon a course of action which on an expedited basis allows that issue to be resolved and then the plan confirmation to go forward.

In re Loewen Group International, Inc., No. 99-1244 et al. (Dec. 21, 2000 Bankr. D. Del. 2000) (tr. at p.92) (decision not to schedule disclosure statement hearing) (attached hereto as Exhibit "B"); see also In re Atlanta West VI, 91 B.R. 620, 622 (Bankr. N.D. Ga. 1988) (it is appropriate to stay the plan process pending the resolution of a related proceeding in order to prevent the debtor from "engaging in a wasteful and fruitless exercise of sending the disclosure statement to creditors and soliciting votes . . . when the plan is unconfirmable on its face.") Accordingly, the Court has authority to adjourn the Disclosure Statement Hearing pending the resolution of central issues, like those raised by the Trustee Motion.

**B.    The Debtors' Plan Proves The Need For A Trustee**

Genesis responded to the Trustee Motion by filing its takeover Plan and setting the earliest possible date for the Disclosure Statement Hearing.  The Plan, however, could have served as exhibit A to the Trustee Motion because it confirms the exact issues raised by the Trustee Motion: Multicare is captive to Genesis and will not, unless under judicial imperative, take any steps to unburden itself from Genesis's suffocating control.  Multicare and Genesis concede that Genesis dominates Multicare:

> Multicare is managed by Genesis subject to a comprehensive management agreement which includes all operational as well as financial and administrative responsibilities and accordingly, has no management or administrative infrastructure of its own.

5

D.S., p.6.   Multicare and Genesis also concede that Genesis has significantly overcharged Multicare under the Related Party Contracts:

> Multicare retained [Ernst & Young] to conduct a comprehensive review and analysis of the related party transactions between Genesis and Multicare. . . Ultimately, Multicare and Genesis agreed to modifications of the related party business and contractual relationships that resulted in an annualized cost savings to the Multicare Debtors of approximately $12 million.

D.S., p. 48.[1] In spite of these admissions, of course, the Plan provides that these "cost savings" (i.e., partial correction of cost overcharges) will not occur until Genesis consumes Multicare; when it is in Genesis's interest not to overcharge and when Multicare's unsecured creditors already have been eliminated.  And the Plan provides that Multicare and Genesis will simply waive "intercompany" claims for past overcharging.  See D.S. pp 35-36.  The Plan further provides that $257,817,000 of Multicare Senior Subordinated Note claims will receive no distribution and the remaining unsecured claims against Multicare, which Multicare estimated to be $26,439,000, will receive New Multicare Stock to be exchanged for .18% of the common stock of the merged entity.  Thus, under the Plan, Genesis will never be called to account to Multicare's unsecured creditors, whose $285 million of claims will be wiped out under the Plan, for the funds that it has drained from Multicare under the Related Party Contracts.  Moreover, Multicare will never let its creditors realize or let this Court know what Multicare actually could have received in the market for its valuable Related Party Contracts and whether Genesis's taking of Multicare

---

[1]   The actual overcharging conceded is $15 million annually, not $12 million.  Genesis "nets" the overcharge to $12 million because Ernst & Young actually recommends that Genesis increase its third-party management pricing by $3 million annually.  Also, the $15 million conceded by Genesis, just like the $27 million that the Committee believes is the actual overcharge, goes directly to Multicare's operating income.  Applying Genesis's 8 times operating income formula, the $15 million in conceded overcharging equals $120 million in lost enterprise value to Multicare, and the Committee's $27 million in documented overcharging equals $216 million in lost enterprise value.

434332.1  6/18/01

actually maximizes (rather than minimizes) Multicare's value. George Hager, who signed the

Plan for both Genesis and Multicare, thinks that that's fair.[2]

**C.     Evidence Presented On The Trustee Motion Will Assist
        In Determining The Adequacy of the Disclosure Statement**

The Disclosure Statement Hearing should be adjourned to be heard at least

contemporaneously with, or on a date after, the Trustee Motion Hearing because the Trustee

Motion raises dispositive issues concerning the Disclosure Statement. By that time, the parties

will have completed discovery concerning the relationship between Multicare and Genesis, and

will be able to present to the Court evidence of whether Genesis and its captive Multicare can

legally propose any plan of reorganization for Multicare. Also, the Court will have a record that

can establish whether Genesis's Disclosure Statement truly and adequately discloses the extent and

effect of the Multicare conflicts.

**D.     Consideration of the Disclosure Statement Prior to Adjudication
        of the Trustee Motion Undermines the Chapter 11 Process**

Assuredly, Genesis (perhaps speaking through Multicare) will respond to this motion by

saying that (i) approval of the Disclosure Statement should not be meaningful to the Committee

because it is not confirmation of the Plan and (ii) Genesis's emergence from chapter 11 (albeit

fattened by its Multicare acquisition) should not be delayed. The Committee submits that Genesis

is wrong on both counts. Having sought refuge in this Court, Genesis cannot now expedite its

---

[2]     Mr. Hager does not receive compensation from Multicare, but he does receive from Genesis a $350,000 annual salary, plus an undisclosed amount of incentive pay. Mr. Hager also receives from Genesis $117,962 of deferred compensation (accrued as of March 2, 2001), $350,000 upon confirmation of a Genesis plan of reorganization, and $1,050,000 upon certain events of termination. In short, he cannot be considered a serious advocate for Multicare (as opposed to Genesis) in areas where Multicare's interests conflict with the interests of Genesis. The Committee is asking this Court to scrutinize carefully and fully, without rushing to adjudicate a Disclosure Statement under a merger plan of two debtors that has been negotiated by the same person on both sides of the transaction. See, e.g., Pepper v. Litton, 308 U.S. 295, 306 (1939).

7

434332.1 6/15/01