13.    Multicare's financial advisor, Credit Suisse First Boston Corporation ("CSFB"), conducted a going concern valuation of Multicare. Based on CSFB's analyses, Multicare's enterprise value as of March 20, 2001 is between $350 million and $400 million. Disclosure Statement, at pp. 45-46. Additionally, both the valuations of the Debtors and of the Multicare Debtors are premised upon the Related Party Contracts as modified after extensive arms length negotiations which took place between Ernst & Young and Ms. Anderson and the Debtors' management.

14.    Treatment of Unsecured Classes – The estimated recovery for the Debtors' unsecured creditors is 6.94%. Disclosure Statement, at p. 9. The estimated recovery for Multicare's unsecured creditors (excluding the Multicare senior subordinated noteholders who will receive no recovery) is 5.67%. Disclosure Statement, at p. 10. This latter estimate is based on a distribution to the Multicare unsecured creditors of 0.18% of the New Common Stock, as defined in the Plan.

15.    Settlements with Unsecured Classes – The Debtors have arrived at a settlement with the Committee. Negotiations with the Multicare Committee have not resulted in a settlement. Accordingly, the Multicare unsecured creditors are treated in accordance with the absolute priority rule. Disclosure Statement, at pp. 11-12.

16.    Settlement between the Debtors and Multicare – In May 2000, Multicare retained Beverly Anderson as its independent restructuring officer and director and Ernst & Young and E&Y Capital Advisors (collectively, "Ernst & Young") to assist Ms. Anderson in the investigation and evaluation of all the relationships between Genesis and Multicare, including the Related Party Contracts. These analyses and subsequent negotiations with Genesis resulted in (a) modifications to the pricing structure of the Related Party Contracts which were used in the preparation of the valuations and (b) a settlement between the Debtors and Multicare, pursuant to which the parties shall set off, waive and release their claims against one another. The Debtors

will seek approval of this settlement in connection with the confirmation of the Plan. Disclosure Statement, at pp. 35-36.

## The Motion

17.    The Motion was filed on an expedited basis on June 15, 2001 and is scheduled for hearing on June 26, 2001. The Motion alleges that "disabling Genesis conflicts of interest" have "infected" the integrity of the plan process to such an extent that the Court should dispose of the Multicare Committee's Motion for an Order Directing the Appointment of a Trustee or, Alternatively, the Sale of the Related Party Contracts (the "Trustee Motion"), filed on May 14, 2001, before any consideration of the Disclosure Statement. Motion, at p. 2.

18.    The Multicare Committee makes four arguments in support of delaying the July 6, 2001 hearing on the adequacy of the Disclosure Statement: (a) the Court has the authority to adjourn a disclosure statement hearing (true); (b) the Plan proves the need for a trustee (false); (c) the allegations set forth in the Trustee Motion will enable the Court to determine the adequacy of the disclosure (false); and (d) the consideration of the Disclosure Statement prior to the Trustee Motion undermines the bankruptcy process (false).

## THE COMMITTEE'S OPPOSITION TO THE MOTION

19.    Section 105(a) of the Bankruptcy Code authorizes bankruptcy courts to issue any order "necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a). This authority undoubtedly extends to consideration of disclosure statements under Section 1125 of the Bankruptcy Code. Indeed, pursuant to these provisions, Court has authority to disapprove a disclosure statement if the proposed plan is patently unconfirmable. See In re Rodolitz Holding Corp., 187 B.R. 72 (Bankr. E.D.N.Y. 1995); In re Atlanta West VI, 91 B.R. 620 (Bankr. N.D. Ga. 1988). Notwithstanding this authority, the facts here do not support either a delay in the scheduled hearing on the adequacy of the Disclosure Statement or disapproval of the Disclosure Statement.

## The Motion Is Baseless and Is Nothing More than a Disguised Objection to Confirmation

20.     **Valuation** – The Motion and the Trustee Motion instead focuses on Ernst & Young's analyses of the Related Party Contracts. The Multicare Committee does not allege that the analyses are based on inaccurate or outdated information. *See, e.g., In re Global Ocean Carriers Ltd.*, 251 B.R. 31 (Bankr. D. Del. 2000) (Walrath, J.). Rather, they dispute Ernst & Young's methodology. Such valuation questions are appropriate for consideration during the Plan confirmation hearing, but not prior to approval of the Disclosure Statement. *See In re Zenith Elec. Corp.*, 241 B.R. 92 (Bankr. D. Del. 1999)(Walrath, J.).

21.     The *Zenith* case is instructive. In *Zenith*, the Court considered the objection of the equity committee to the debtor's pre-packaged plan of reorganization. The Court considered both the adequacy of disclosure and the requirements for confirmation during a single hearing. With respect to the adequacy of disclosure, the Court found that, as a publicly traded company, a wealth of information regarding the debtor was readily available to the public. The disclosure statement itself included valuation and liquidation analyses, disclosed the relationships between the parties and did not contain any false information. 241 B.R. at 99. Accordingly, the Court approved the adequacy of disclosure.

22.     Similarly, Genesis is a publicly traded company with a wealth of information publicly available. The Disclosure Statement is not based on and does not contain false information. It fully discloses the complex relationship between Genesis and Multicare. The Plan is confirmable and there is nothing alleged in the Motion or the Trustee Motion which on its face would render the Plan legally unconfirmable. Even if this Court were to ultimately grant the Trustee Motion (which the Committee believes is unlikely), the only harm which would be caused by proceeding with the scheduled hearing on the adequacy of the Disclosure Statement would be the cost of the hearing, and, if this Court approves the Disclosure Statement at that hearing as containing adequate information, the cost of the solicitation. If the Court determines

as a result of a hearing on the Trustee Motion or at the confirmation hearing that the disclosure requires supplementation, such supplementation can be provided. *See, e.g., In re Crowthers McCall Pattern, Inc.*, 120 B.R. 270 (Bankr. S.D.N.Y. 1990) (Court determined at confirmation hearing that notice was inadequate and ordered that supplemental disclosure and new ballots be provided to holders of claims in impaired classes). All of the parties in interest with any <u>real</u> economic stake in the Debtors' and the Multicare Chapter 11 cases (i.e. the parties who would actually bear this cost) urge this Court not to delay the scheduled hearing on the adequacy of the Disclosure Statement.

23. <u>Good Faith</u> – The Multicare Committee's allegations boil down to an objection to confirmation under Section 1129(a)(3), *i.e.*, whether the "plan has been proposed in good faith and not for any purposed forbidden by law." "For purposes of determining good faith under section 1129(a)(3) . . . the important point of inquiry is the plan itself and whether such a plan will fairly achieve a result consistent with the objectives and purposes of the Bankruptcy Code." *In re Abbott Dairies of Pennsylvania, Inc.*, 788 F.2d 143, 149 (3rd Cir. 1986) (*quoting In re Madison Hotel Assocs.* 749 F.2d 410, 425 (7th Cir. 1984)); *see also In re Jersey City Med.. Ctr.*, 817 F.2d 1055, 1057 (3rd Cir. 1989) (denying appeal that plan was not proposed in good faith, because record supported bankruptcy judge's finding that city officials had not misappropriated funds or failed to pursue claim against the city).

24. The record simply does not support the allegations that the Plan was proposed in bad faith or in violation of the law. The Plan is a product of months of extensive arms length negotiations between the various creditor constituencies who were all represented by counsel and had access to independent sophisticated financial advisors. In the Debtors' Chapter 11 cases, it took over three months of negotiations between the Genesis secured lenders, the Committee, and the Debtors to reach an agreement on an acceptable plan of reorganization. Independent respected investment bankers prepared the valuation analyses upon which the Plan is premised.

The treatment of the Multicare unsecured creditors under the Plan is consistent with both these analyses and the applicable law. Despite the interrelationships of the management and the boards of directors of the Debtors and the Multicare Debtors, the Committee believes, based on its interaction with the Debtors' management and Ernst & Young's and Ms. Anderson's roles in the Multicare Debtors' Chapter 11 cases, that the management and the boards of directors of the Debtors and the Multicare Debtors have acquitted their fiduciary duties to the various constituencies involved in these Chapter 11 cases. The Plan was not proposed in bad faith and the management and the board of directors of the Debtors and the Multicare Debtors have not acted in bad faith during the course of these Chapter 11 cases.

25. This Court will have an opportunity to fully consider all of the allegations contained in the Trustee Motion at a hearing on the Trustee Motion and/or at a confirmation hearing in the context of the Multicare Committee's objection to confirmation of the Plan. Accordingly, this Court should reject the Multicare Committee's efforts to delay the hearing on the adequacy of the Disclosure Statement and deny the relief sought in the Motion.

**WHEREFORE,** for all of the foregoing reasons, the Committee objects to the Motion and respectfully requests that this Court (i) deny the Motion and (ii) grant the Committee such other and further relief as this Court deems just and proper.

Dated: June 22, 2001

AKIN, GUMP, STRAUSS, HAUER & FELD, L.L.P.
Lisa G. Beckerman
Mark D. Taylor
590 Madison Avenue
New York, New York 10022
Chicago, Illinois 60601
Telephone: (212) 872-1000
Facsimile: (212) 872-1002

and

PACHULSKI, STANG, ZIEHL, YOUNG & JONES P.C.

Laura Davis Jones (Bar No. 2436)
David W. Carickhoff, Jr. (Bar No. 3715)
919 North Market Street, 16th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400

Co-Counsel to the Official Committee of
Unsecured Creditors

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| GENESIS HEALTH VENTURES, INC., et al. | ) Case No. 00-2692 (JHW) |
| | ) Jointly Administered |
| Debtors. | ) |

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| MULTICARE AMC, INC., et al. | ) Case No. 00-2494 (JHW) |
| | ) Jointly Administered |
| Debtors. | ) |

## AFFIDAVIT OF SERVICE

| | |
|---|---|
| STATE OF DELAWARE | ) |
| | )SS |
| COUNTY OF NEW CASTLE | ) |

Karina Yee, being duly sworn according to law, deposes and says that she is

employed by the law firm of Pachulski, Stang, Ziehl, Young & Jones P.C., co-counsel for the

Official Committee of Unsecured Creditors, in the above-captioned action, and that on the

22nd day of June, 2001, she caused a copy of the following document(s) to be served upon the

attached service list(s) in the manner indicated:

**OBJECTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF GENESIS HEALTH VENTURES, INC., ET AL., TO THE MOTION FOR ORDER PURSUANT TO BANKRUPTCY CODE SECTIONS 105(A) AND 1125 ADJOURNING THE**

DOCS_DE:24640 1

-1-

AA. 1281

## HEARING TO CONSIDER APPROVAL OF DISCLOSURE STATEMENT

Dated: June 22, 2001

_Kaura Yee_
Karin Yee

Sworn to and subscribed before
me this _22 nd_ day of June, 2001

_MaryRuthie Johnson_
Notary Public
My Commission Expires: _9-12-02_

DOCS_DE:24640.1

-2-

Genesis/Multicare Obj to Expedited Hearing
Motion Service List
Case No. 00-02692 (JHW) (Genesis)
Case No. 00- 2494 (JHW) (Multicare)
June 22, 2001
Document No. 24633
001 – DHL
013 - Facsimile

(Co-Counsel to Committee)
Laura Davis Jones, Esq.
919 Market Street, 16th Floor
P.O. Box 8705
Wilmington, DE 19899 (Courier 19801)

*DHL*
The Honorable Judith H. Wizmur
U.S. Bankruptcy Court
Mitchell H. Cohen Courthouse
4th and Cooper Streets, Room 2020
Camden, NJ 08101

*Facsimile*
(Counsel to Genesis Debtors)
Mark D. Collins, Esq.
Deborah E. Spivack, Esq.
Margreta M. Sundelin, Esq.
Richards, Layton & Finger, P.A.
302-658-6548

*Facsimile*
(Counsel to Multicare Debtors)
Robert S. Brady, Esq.
Young Conaway Stargatt & Taylor, LLP
302-571-1253

*Facsimile*
(Counsel to Administrative Agent, Mellon
Bank, N.A.)
Teresa Currier, Esquire
Kathleen P. Makowski, Esquire
Klett, Rooney, Lieber & Schorling
302-552-4295

*Facsimile*
(Counsel to Official Committee of
Unsecured Creditors of Multicare Debtors)
Mark Minuti, Esq.
Saul Ewing LLP
302-421-6813

*Facsimile*
(U.S. Trustee to Genesis Debtors)
Daniel K. Astin, Esq.
Office of the U.S. Trustee
215-597-5795

*Facsimile*
(U.S. Trustee to Multicare Debtors)
Kevin Callahan, Esq.
Office of the U.S. Trustee
215-597-5795

*Facsimile*
(Counsel to Genesis Debtors)
Michael F. Walsh, Esq.
Hans Hwang, Esq.
Christopher Marcus, Esq.
Weil, Gotshal & Manges LLP
212-310-8007

*Facsimile*
(Counsel to Multicare Debtors)
Marc Abrams, Esq.
Willkie Farr & Gallagher
212-728-8111

*Facsimile*
(Counsel to Administrative Agent, Mellon
Bank, N.A.)
Richard S. Toder, Esq.
Morgan, Lewis & Bockius
212-309-6273

*Facsimile*
(Counsel to Administrative Agent, Mellon
Bank, N.A.)
Jill Bronson, Esq.
Drinker Biddle & Reath LLP
215-988-2757

*Facsimile*
(Counsel to Official Committee of
Unsecured Creditors of Genesis Debtors)
Lisa Beckerman, Esq.
Mark D. Taylor, Esq.
Akin, Gump, Strauss, Hauer & Feld, LLP
212-872-1002

*Facsimile*
(Counsel to Official Committee of
Unsecured Creditors of Genesis Debtors)
Sam J. Alberts, Esq.
Akin, Gump, Strauss, Hauer & Feld, L.L.P.
202-887-4288

*Facsimile*
(Counsel to Official Committee of
Unsecured Creditors of Multicare Debtors)
David S. Rosner, Esq.
Kasowitz, Benson, Torres & Friedman LLP
212-506-1800

# In The Matter Of:

*Genesis Health Ventures/Multicare AMC, Inc.*

---

*William R. Becklean, CFA*

*August 27, 2001*

*C.A. # 00-2692 (JHW)*

---

*Wilcox & Fetzer, Ltd.*

*Registered Professional Reporters*

*1330 King Street*

*Wilmington, DE  U.S.A.  19801*

*(302) 655-0477*

*Original File 082701WB.AC, 89 Pages*
*Min-U-Script® File ID: 0695463873*

## Word Index included with this Min-U-Script®

William R. Becklean, CFA
August 27, 2001

C.A. # 00-2692 (JHW)
Genesis Health Ventures/Multicare AMC, Inc.

Page 45

[1]  A: Yes.
[2]  Q: EBITDAR is the same but also before rent
[3]  payments?
[4]  A: Yes.
[5]  Q: Okay. So we have a common language?
[6]  A: Right.
[7]  Q: Let's start with the earnings calculation. And
[8]  by earnings I'm using earnings as shorthand for —
[9]  A: EBITDA.
[10]  Q: — EBITDA or EBITDAR.
[11]  How did you derive the earnings portion of
[12]  the equation for your valuation?
[13]  A: I took it right out of the forecasts that were
[14]  included in the UBS Warburg and CSFB reports. I didn't
[15]  create anything out of the whole cloth.
[16]  Q: So you assumed what UBSW and CSFB was using?
[17]  A: Assumed those numbers. According to those
[18]  reports, they were provided by the management. And I had
[19]  no basis other than to use the available information from
[20]  those two reports, right.
[21]  Those, by the way, were the cash flows on
[22]  which UBS Warburg and CSFB based their values. They are
[23]  the same cash flows on which I base mine.
[24]  Q: Okay. Could I get the number? What was the

Page 46

[1]  number for the Genesis side, if you recall? What EBITDA
[2]  number did you use in your analysis?
[3]  A: Actually, you'll find that on page — you'll
[4]  find my complete list of data on page 16 of my report.
[5]  Right there.
[6]  Q: Okay. Under historic?
[7]  A: That is the sheet called "Historic and Projected
[8]  Data Used in Comparable Company Valuation." And you'll
[9]  see that I have several columns starting with the
[10]  information from the UBSW and CSFB valuations for 2000,
[11]  actual results, and for 2001, projected results.
[12]  Q: Okay.
[13]  A: I also have the actual information that I
[14]  extracted from company reports.
[15]  Q: Okay.
[16]  A: And then, you will see there's a column there
[17]  called "Merged Parent Addition, 2000 A." That is what
[18]  you get if you actually add together the results of
[19]  Genesis, Neighbor Care, and Multicare.
[20]  Q: Okay. I think I understand. You'll have to
[21]  forgive me if I go a little slower here. We didn't
[22]  receive the tables from your report until just before the
[23]  depositions?
[24]  A: I understand.

Page 47

[1]  Q: Apparently due to an e-mail glitch. They didn't
[2]  make it over from France or where you were vacationing.
[3]  We just got them this morning.
[4]  Let me see if I understand where you are
[5]  starting at the top of the page. Let's use the 2001
[6]  projections.
[7]  A: Fine.
[8]  Q: So you've got UBSW valuation and then a couple
[9]  for 2001 P, which I take it is projection?
[10]  A: Yes.
[11]  Q: And you've got an EBITDA number of
[12]  252.7 million, is that correct?
[13]  A: For the UBSW valuation for 2001 projected, yes.
[14]  Q: Now —
[15]  A: That's for Beverly Enterprises
[16]  Q: That's for Beverly?
[17]  A: That's the comparable company.
[18]  Q: There we go.
[19]  A: See, I've done Beverly Enterprises, Manor Care,
[20]  and Omnicare, which are the three comparable companies.
[21]  Then I also did Genesis, the long-term care portion of
[22]  Genesis, the Neighbor Care which is the pharmacy part of
[23]  Genesis split out from the long-term care part, and then
[24]  Multicare. So there were three pieces of the combined

Page 48

[1]  company.
[2]  Then, at the bottom, I have merged company.
[3]  Where, in that column, it says "merged addition." I
[4]  simply add up the contributions from the three different
[5]  piece parts for a merged company number for all of the
[6]  sales, EBITDAR, EBITDA, and the rent.
[7]  Q: Terrific. So your valuation of the two
[8]  companies combined is based on the earnings so to speak,
[9]  numbers reported on the very bottom right-hand portion of
[10]  this page of your report, page 16. So yours is going to
[11]  be based on $214.4 million of EBITDA combined, is that
[12]  right?
[13]  A: Actually, see, there are two. One is last
[14]  12 months, and the other is projected. So I got the
[15]  column for last-12-months number. So my valuation is
[16]  actually based on looking at the last 12 months and
[17]  projected.
[18]  Q: Okay.
[19]  A: That's basically a four factor valuation.
[20]  Q: You've looked at both last 12 months and fiscal
[21]  2001 projections?
[22]  A: For both EBITDA and EBITDAR.
[23]  Q: The number you used, the fiscal 2001 projection
[24]  is 214.4 million, correct?

Min-U-Script®

Wilcox & Fetzer, Ltd. (302) 655-0477

AA. 1286

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

```
---------------------------------x
                                 :
In re                            :    Chapter 11 Cases No.
                                 :
GENESIS HEALTH VENTURES INC., et al.,  :    00-2692 (JHW)
                                 :
         Debtors.                :
                                 :    (Jointly Administered)
---------------------------------x
                                 :
In re                            :    Chapter 11 Cases No.
                                 :
MULTICARE AMC, INC., et al.,     :    00-2494 (JHW)
                                 :
         Debtors.                :
                                 :    (Jointly Administered)
---------------------------------x
```

## DECLARATION OF PATRICK M. HURST IN SUPPORT OF CONFIRMATION OF JOINT PLAN OF REORGANIZATION

Pursuant to 28 U.S.C. Section 1746, I, Patrick M. Hurst, hereby declare as follows:

1.    I am the National Health Care Group Director of Houlihan Lokey Howard & Zukin ("Houlihan Lokey"). I also hold the position of Managing Director.

2.    I received my Master's Degree in Business Administration with a specialization in finance from the University of Wisconsin-Madison in 1982. In 1982, I began my professional career at Peterson & Co. Consulting, eventually becoming a Senior Consultant. In 1985, I joined Ernst and Young's Corporate Development Group as a Senior Consultant and was eventually promoted to the position of Manager. In 1989, I joined Houlihan Lokey.

3.    Over the past eleven years at Houlihan Lokey, I have provided financial advisory services in connection with mergers and acquisitions – and more recently, in connection with

financial restructurings. For the last six years, my practice has focused solely on the health care industry.

4.     As the Director of the National Health Care Group and a Managing Director, I am responsible for the initiation and management of a wide variety of corporate finance, valuation and financial restructuring engagements in the health care industry, ranging from acquisition analysis and securities valuation to strategy formulation and implementation. Health care industry clients for whom I have provided services include hospitals, home health care agencies, nursing homes, managed care companies and other health care providers. A copy of my curriculum vitae is attached hereto as Exhibit A.

5.     Pursuant to an order of the Bankruptcy Court dated September 5, 2000, Houlihan Lokey was retained by the Official Committee of Unsecured Creditors (the "Committee") of Genesis Health Ventures, Inc. ("Genesis" or the "Company") to perform an analysis of the Company and advise the Committee as to the Company's value in connection with its reorganization and for the purpose of assisting the Committee in negotiating a deal with the Company and its secured lenders in the cases entitled *In Re Genesis Health Ventures, Inc., et. al., Case Nos. 00-2692 and 00-2494 (JHW)*.

6.     In August 2001, Houlihan Lokey prepared a report entitled "Presentation to the Official Committee of the Unsecured Creditors of Genesis Health Ventures", dated August 21, 2001 (the "August 2001 Valuation"), a copy of which is attached hereto as Exhibit B. The August Valuation utilized two valuation methodologies: (i) a Comparable Company Analysis, which involved a review and analysis of the valuations of public companies comparable to Genesis, and (ii) a Discounted Cash Flow Analysis. Based on these analyses, Houlihan Lokey

has concluded that, as of August 21, 2001, the enterprise value of Genesis is $1,375,000,000.

(See August 2001 Valuation, Exhibit B at p. 10).

7.    I understand that I may be asked to testify at the confirmation hearing scheduled for August 28 and August 29, 2001 in support of the Joint Plan of Reorganization that presently is before the Court, on the subject matters set forth herein and in the attached August 2001 Valuation.

I declare under the penalty of perjury that the foregoing is true and correct.

Patrick M. Hurst

Dated: August 24, 2001

3

# EXHIBIT A

PATRICK M. HURST

*A.*   *EXPERIENCE*

| 1989-Present | **Houlihan Lokey Howard & Zukin** | Chicago, IL |

National Health Care Group Director/Managing Director. Responsible for initiation and management of a wide variety of corporate finance, valuation and financial restructuring engagements in the health care industry ranging from acquisition analysis and securities valuation to strategy formulation and implementation. Health care industry clients include hospitals, home health care agencies, nursing homes, managed care companies and other health care providers. Actively involved in the formation of integrated delivery systems and the analysis of alternative transaction structures considering reimbursement and regulatory issues.

| 1985-1989 | **Ernst & Young** | Chicago, IL |

Manager. Joined Corporate Development Group as a Senior Consultant. Worked in both Valuation and Bankruptcy Groups. Responsible for development of valuation practice and the initiation of engagements at Arthur Young. Engagements included business enterprise and intellectual property valuations, workouts, preparation of plans of reorganization, liquidation and pre-acquisition feasibility analysis.

| 1982-1985 | **Peterson & Co. Consulting** | Chicago, IL |

Senior Consultant. Joined firm as a staff consultant. Developed damage claims based on contact disputes involving lost profits, delays and disruptions. Prepared cost analysis studies.

*EDUCATION*

| 1982 | **University of Wisconsin-Madison** |
| | Masters in Business Administration, Finance |

| 1980 | **Marquette University** |
| | Bachelor of Science, Finance |

EXHIBIT B

Highly Confidential



**Presentation to the Official Committee**
**Of the Unsecured Creditors of**
**Genesis Health Ventures**
**August 21, 2001**



**Genesis Health Ventures** ®

AA. 1293

HOULIHAN LOKEY HOWARD & ZUKIN
Investment Bankers
http://www.hlhz.com

Los Angeles   New York   Chicago   San Francisco   Washington, D.C.   Minneapolis   Dallas   Atlanta   Toronto   Seoul

*Genesis*

**Confidential**                                                    Highly Confidential

# *Introduction*

- Houlihan Lokey Howard & Zukin ("Houlihan") is pleased to present an updated analysis of Genesis Health Ventures ("Genesis" or the "Company") for the Unsecured Creditors of Genesis Health Ventures (the "Committee").

- As we indicated to the Committee previously, the March 19, 2001 presentation was prepared for settlement discussion purposes with the Senior Bank Group. As such, very optimistic assumptions were utilized as to the Company's operating performance and enterprise value. We have conducted an updated valuation of Genesis and adjusted these assumptions accordingly. We believe the adjustments made to the assumptions are reasonable based on latest discussions with management. Examples include:

  - The EBITDA Run Rate for 2001 was reconciled to actual results;
  - 2002 EBITDA does not include a separate adjustment for additional NeighborCare bed and adjustments to Management Services; and
  - The 5-year projections do not include acquisitions.

- Houlihan's current findings are based upon its due diligence and analysis regarding the operating and financial condition of Genesis as of June 30, 2001 (the latest financial information available) and the current market for the comparable companies.

- According to the Company, the current DIP balance is $196 million. Additionally, the current burn rate is $5 million to $7 million per month.

- As previously discussed, the Company developed a budget ("Budget") for 2001 of $166.2 million of EBITDA. After the Budget was prepared, the Company revised the Budget ("the Plan") with an EBITDA of $158.4 million. Through the third quarter, the Company had EBITDA of $120.3 million and is estimating the EBITDA for fiscal year 2001 at $162.0 million, which we believe is reasonable based upon estimated results for the fourth quarter.

- Based on our current analysis, we believe that the current enterprise value of Genesis is $1,375 million.

*Houlihan Lokey Howard & Zukin*                    1

*Genesis*

Confidential

Highly Confidential

# *Overview - Consolidated*

- **Nine Months Compared to Budget and Plan** – For the nine months ended June 30, 2001, Genesis's EBITDA was $120.3 million, or approximately $11.4 million above the Plan and $4.1 million above the Budget.

| | YTD June 30, 2001 | | | Variance | |
| | Actual | Plan | Budget | Actual to Plan | Actual to Budget |
|---|---|---|---|---|---|
| **EBITDA(M)** | | | | | |
| ElderCare | $53.1 | $57.1 | $57.1 | ($4.1) | ($4.0) |
| NeighborCare | 71.5 | 66.0 | 74.0 | $5.5 | ($2.6) |
| Rehab Services | 19.1 | 13.8 | 18.9 | $5.4 | $0.3 |
| Other | (23.4) | (27.9) | (33.7) | $4.5 | $10.4 |
| **Total EBITDA** | $120.3 (1) | $109.0 | $116.3 (1) | $11.4 | $4.1 |

- **Estimated 2001** – The Company is currently estimating 2001 EBITDA at $162 million, or $3.6 million above the Plan of $158.4 million. Management does not believe that it will be able to achieve the projected growth in the 4ᵗʰ quarter, having missed the Plan in July. The $162 million of EBITDA assumes that August and September results are similar to July result of approximately $14.0 million.

(1) Actual and budgeted results have been adjusted to take into account the synthetic lease and MultiCare contractual adjustments. The Plan includes these adjustments.

*Houlihan Lokey Howard & Zukin*    2

AA. 1295

*Genesis*

*Confidential*                                                    Highly Confidential

# *2001 EBITDA Run Rate*

■ **2001 Run Rate** – The Company made the following adjustments to derive a run rate for 2001.

| Company Adjustments | 2001 EBITDA |
|---|---|
| 2001 Estimated EBITDA | $162.0 |
| BIPA | 6.0 |
| Managed Care Full Year Rate | 1.1 |
| ElderTrust | 0.3 |
| Development Facilities | 3.0 |
| Additional Multicare Revenue | 0.4 |
| Mariner Contract | (13.2) |
| New Pharmacy Beds | 5.5 |
| **2001 EBITDA Run Rate** | **$165.1** |

■ Based on discussions with the Company and a detailed line item review of the Plan, Houlihan made the following additional adjustments:

| Additional Adjustments | |
|---|---|
| Additional Developmental Facilities | $1.4 |
| Less: 3 mo. BIPA Revenue | (3.0) |
| **2001 Adjusted Run Rate** | **$163.5** |

■ **BIPA Full Year Adjustment ($6.0 million)** – BIPA went into effect on April 1, 2001 and therefore, only a 6 month adjustment is required. The adjustment annualizes the first six months to reflect a full year effect.

■ **Managed Care Full Year Rate Adjustment ($1.1 million)** – Genesis has received increased reimbursement from managed care providers effective January 1, 2001. The total managed care impact is $4.2 million. The $1.05 million represents one quarter of revenue that is not included in FY 2001 results.

■ **ElderTrust Transaction ($0.3 million)** – The ElderTrust transaction became effective on February 1, 2001. The full year effect is $945,000. The $316,000 represents the 4 months of EBITDA from facilities that are currently in start-up.

■ **Development Facilities ($3.0 million)** – Adjusts for normalized profitability from facilities that Genesis is receiving is being

■ **MultiCare Management Fee ($0.4 million)** – The MultiCare management fee income is being adjusted upward by $400,000 to reflect BIPA.

*Houlihan Lokey Howard & Zukin*    3

AA. 1296

*Genesis*

**Confidential**                                                                 Highly Confidential

# *2001 EBITDA Run Rate*

■ **Mariner Contract ($13.2 million)** – The budget includes revenue from the continuation of the Mariner contract. If Genesis does not complete the APS acquisition, the Mariner contract will be lost. The $13.2 million reflects the estimated loss of the Mariner contract.

■ **New Pharmacy Beds ($5.5 million)** – Reflects new unidentifiable beds that will be added in order to replace the lost Mariner beds.

■ **Additional Adjustments** – The following details the additional Houlihan adjustments to the 2001 Run Rate EBITDA:

   ➢ **3 mo. BIPA Revenue ($3.0 million)** – The run rate EBITDA assumes 12 months of BIPA revenue. Since BIPA went into effect in April, and all of the comparable companies have a December 31 year end, three months of BIPA revenue was reduced from the run rate for a representative 2001 EBITDA.

   ➢ **Additional Development Facilities ($1.4 million)** – Management did not take into account the Longwood facility and understated the Highland Lakes facility.

   ➢ The Other Expenses adjustment of $2.0 million and the Corporate / Other adjustment of $3.3 million previously included were not taken into account in our current analysis due to:

      → Other Expenses - Management was able to reconcile the $2.0 million of unidentified expenses.

      → Corporate – The Corporate adjustment represented the positive variance to Plan estimated by Houlihan in March. This adjustment is no longer appropriate.

AA. 1297

Genesis

**Confidential**                                    Highly Confidential

# *Adjusted Five Year Plan Summary*

■  Houlihan Lokey prepared a detailed analysis of the Five Year Plan, including a line item analysis of both revenue and expenses. This analysis resulted in revenue and expense adjustments to the Five Year Plan (the "Revised Plan"). The table below compares the Base Case Plan with the Revised Plan.

|  | 2002 | 2003 | 2004 | 2005 | 2006 |
|---|---|---|---|---|---|
| **Base Case (1)** | | | | | |
| Total Revenue | $2,126,651 | $2,229,302 | $2,349,099 | $2,476,038 | $2,610,653 |
| EBITDAR | $187,756 | $193,057 | $201,256 | $209,573 | $218,080 |
| EBITDA | $170,369 | $174,872 | $182,252 | $189,723 | $197,361 |
| *EBITDAR Margin* | *8.8%* | *8.7%* | *8.6%* | *8.5%* | *8.4%* |
| *EBITDA Margin* | *8.0%* | *7.8%* | *7.8%* | *7.7%* | *7.6%* |
| *Revenue Growth* | *4.3%* | *4.8%* | *5.4%* | *5.4%* | *5.4%* |
| *EBITDA Growth* | *7.5%* | *2.6%* | *4.2%* | *4.1%* | *4.0%* |
| | | | | | |
| **Revised w/o Acquisitions** | | | | | |
| Total Revenue | $2,129,751 | $2,232,702 | $2,352,601 | $2,479,645 | $2,614,368 |
| EBITDAR | $200,505 | $209,342 | $220,153 | $229,849 | $239,833 |
| EBITDA | $183,118 | $191,158 | $201,149 | $210,000 | $219,113 |
| *EBITDAR Margin* | *9.4%* | *9.4%* | *9.4%* | *9.3%* | *9.2%* |
| *EBITDA Margin* | *8.6%* | *8.6%* | *8.6%* | *8.5%* | *8.4%* |
| *Revenue Growth* | *4.4%* | *4.8%* | *5.4%* | *5.4%* | *5.4%* |
| *EBITDA Growth* | *11.8%* | *4.4%* | *5.2%* | *4.4%* | *4.3%* |
| | | | | | |
| **Difference** | | | | | |
| Total Revenue | $3,100 | $3,400 | $3,502 | $3,607 | $3,715 |
| EBITDAR | $12,749 | $16,285 | $18,897 | $20,276 | $21,753 |
| EBITDA | $12,749 | $16,286 | $18,897 | $20,277 | $21,752 |
| *EBITDAR Margin* | *0.6%* | *0.7%* | *0.8%* | *0.8%* | *0.8%* |
| *EBITDA Margin* | *0.6%* | *0.7%* | *0.8%* | *0.8%* | *0.8%* |
| *Revenue Growth* | *0.2%* | *0.0%* | *0.0%* | *0.0%* | *0.0%* |
| *EBITDA Growth* | *4.3%* | *1.7%* | *1.0%* | *0.3%* | *0.3%* |

(1) Base Case adjusted from the previous Plan for the synthetic lease and the net loss of Mariner beds.

■  The 2002 adjustments of $12.7 million are detailed per business unit on the following pages, versus $23.2 million in adjustments included in our previous analysis.

*Houlihan Lokey Howard & Zukin*  ■■■  5

AA. 1298

*Genesis*

**Confidential**                                                          Highly Confidential

# *Base Case Adjustments*

ElderCare

| Description | Plan | Adjustment | 2002 EBITDA Impact ($ millions) | Rational |
|---|---|---|---|---|
| Medicaid census | Medicaid census declines by 0.3% in 2002 and 2003 and by 0.4% in 2004 – 2006. | Increased by 0.5% in 2002 and 0.5% in 2003 and flat for 2004 – 2006. | $1.7 | Overall census growth is consistent with industry expectations. |
| Bad Debt | 1.2% in 2001 and 1.5% from 2002 – 2006 | 1.2% from 2002 – 2006 to be consistent with bad debt expense in 2001 and 2000. | $2.1 | Consistent with historical collection patterns. |
| Start-up Facilities | 9 facilities totaling $3.0 million | Increased Highlands Lake and added Longwood | $1.4 | Longwood was not included and Highlands Lake was understated. |
| Tort Reform | Insurance costs grew at inflation | Florida insurance costs reduced from $4,000 per bed to $2,500 per bed. The impact is reflected 1/2 in 2003 and the full benefit in 2004 - 2006 | NA [1] | There is growing pressure to reform the tort system in Florida as the state currently has insurance rates that are 8X that of other states. Governor Bush has been very outspoken in his desire to see some meaningful reform passed. |
| Total | | | $5.2 | |

(1) Tort reform will increase EBITDA by $1.35 million in 2003 and $2.7 million in 2004 – 2006.

NeighborCare

| Description | Plan | Adjustment | 2002 EBITDA Impact ($ millions) | Rational |
|---|---|---|---|---|
| COGS | 62.5% in 2001 to 64.1% in 2006 | A reduction of 1/4 percent for 2002 – 2006. | $3.0 | Higher Medicare rates will increase the Medicare mix and the patient acuity in facilities served by NeighborCare. |
| Other Operating Expenses | 7.2% of revenue in 2001 to 6.3% of revenue in 2006 | A reduction of 1/4 percent for 2002 – 2006. | $3.0 | Delivery expenses and telecommunication expense have been over-budget through 1 Q 2001. The reduction contemplates getting delivery costs and / or telecommunication costs in line with the budget. |
| Total | | | $6.0 | |

*Houlihan Lokey Howard & Zukin*                    6

AA. 1299

*Genesis*

Highly Confidential

# Base Case Adjustments

**NeighborCare (cont.)**

■ Our revised NeighborCare analysis excludes the following adjustments previously included:

➢ $2.4 million in additional EBITDA due to bed growth was not considered since management included bed growth in the revised Plan.

**Other Business Units**

| Description | Plan | Adjustment | 2002 EBITDA Impact ($ millions) | Rational |
|---|---|---|---|---|
| EBITDA Margin | EBITDA Margin declines from 11.4% in the second half of 2001 to 8.2% in 2006 | 11.4% held constant | $1.5 | 3Q and 4Q 2001 EBITDA margins are 10.9% and 11.9%, respectively. The margins were held at the midpoint between 3Q and 4Q 2001 for 2002 – 2006. |
| Total | | | $1.5 | |
| Grand Total | | | $12.7 | |

**Management Services**

■ Revised analysis excludes the following adjustments previously included:

➢ $2.8 million in additional EBITDA due to Florida and Other Management Contracts were not taken into account during 2001 since management has not been able to increase its management business.

➢ Management was able to reconcile the $2.0 million of unidentified expenses previously included as reduced salary and wage expense.

➢ The Corporate adjustment of $3.3 million represented the variance to Plan that was estimated by Houlihan in March. The $162 million 2001 EBITDA estimate already includes a positive variance of $3.6 million.

*Houlihan Lokey Howard & Zukin*    7

AA. 1300

**Genesis**

Confidential                    Highly Confidential

# *Comparable Company Analysis*

| ($millions) | LTM ended June 30, 2001 | | | EBITDAR Margin | 2001E EBITDA | 2002E EBITDA |
|---|---|---|---|---|---|---|
| | Revenue | EBITDAR | EBITDA | | | |
| **Consolidated** | | | | | | |
| Beverly | $2,663.7 | $261.7 | $146.8 | 9.8% | $245.5 | $268.3 |
| HCR Manor Care | $2,530.9 | $359.6 | $337.2 | 14.2% | $364.6 | $402.3 |
| Kindred | $2,982.8 | $410.7 | $151.6 | 13.8% | $150.2 | $144.7 |
| Average | | | | 12.6% | | |
| **Genesis Health Ventures** | $2,039.8 | $179.1 | $162.0 | 8.8% | $163.5 | $183.1 |

| | Revenue | COGS | EBITDA | Margin | 2001E EBITDA | 2002E EBITDA |
|---|---|---|---|---|---|---|
| **Pharmacy** | | | | | | |
| OmniCare - Consolidated | $2,051.5 | 69.6% | $245.4 | 12.0% | $270.2 | $296.2 |
| **NeighborCare (1)** | $1,150.0 | 62.5% | $85.2 | 7.4% | $85.2 | $90.5 |

Notes:
(1) NeighborCare EBITDA and EBITDA margins reduced by 0.7% due to corporate overhead

■ The business segments of Manor Care and Beverly were not segmented into long-term care only. Both companies derive in excess 85% of their revenue and EBITDA from their long term care operations and therefore, the segmentation is not meaningful.

*Houlihan Lokey Howard & Zukin* ▬▬    8

AA. 1301

**Genesis**

**Confidential**

**Highly Confidential**

# Comparable Company Analysis

| (000,000s) | Ticker | Equity Value (1) | Total Debt (2) | Cash & S.T. Invest. | EV (3) | EV / LTM EBITDA | EV / 2001 EBITDA | EV / 2002 EBITDA |
|---|---|---|---|---|---|---|---|---|
| **Long Term Care** | | | | | | | | |
| Beverly Enterprises, Inc. | BEV | $1,224.95 | 777.00 | 80.00 | 1,921.95 | 13.1x | 7.8x | 7.2x |
| HCR Manor Care | HCR | $3,033.39 | 716.70 | 19.30 | $3,730.79 | 11.1x | 10.2x | 9.3x |
| Kindred | KIND | $986.51 | 302.50 | 158.30 | $1,130.71 | 7.5x | 7.5x | 7.8x |
| **Pharmacy** | | | | | | | | |
| Omnicare, Inc. | OCR | $2,272.95 | $771.00 | $124.00 | $2,919.95 | 11.9x | 10.8x | 9.9x |

(1) Prices as of August 17, 2001 close.
(2) Total Debt includes capital leases.
(3) EV = Enterprise Value less cash & short term investments.

■ **2001/2002 Industry Outlook –**

➢ The pricing environment remains positive. Medicaid pricing increases have exceeded previous year's increases as states are recognizing the higher inflationary costs being experienced by facilities. However, Medicare recently announced a 2.8 percent increase for 2001. In most markets, inflation has exceeded 2.8 percent

➢ Both Beverly and HCR Manor Care continue to project increases in occupancy in 2001 and 2002.

➢ Tort reform has been passed in Florida effective October 1, 2001. The tort reform should help reduce rising insurance costs in Florida. However, plaintiff attorneys are becoming more aggressive and are expanding their practices to other states. While Florida insurance should decrease, insurance costs in other states may increase.

AA. 1302

**Genesis**

**Confidential**

**Highly Confidential**

## *Valuation Analysis*

| | |
|---|---|
| **Comparable Company Analysis** | |
| Representative 2001 EBITDA | $163.5 |
| Multiple | 8.5 X |
| Enterprise Value | $1,389.8 |
| | |
| **Discounted Cash Flow Analysis** | |
| Enterprise Value | $1,361.5 |
| | |
| **Concluded Enterprise Value** | $1,375.0 |
| | |
| **Recovery of Unsecured Creditors Under the Plan** | |
| Enterprise Value | $1,375.0 |
| New Debt | 440.0 |
| Preferred Stock | 31.0 |
| Equity Value | $904.0 |
| | |
| 5.25% of Equity (1) | $47.5 |
| 8.4% of Warrants (2) | 27.4 |
| Total Recovery | $74.9 |

(1) Settlement with the Banks was based on 5.25% of the equity of Genesis (stand-alone).

(2) Warrant valuation based on 8.4% of the equity of Genesis (stand-alone), assuming a strike price of $20.33 per share, and volatility of 50%.

AA. 1303

*Genesis*

**Confidential**                                                    Highly Confidential

## *Valuation Analysis – Discounted Cash Flow*

| | 2002 | 2003 | 2004 | 2005 | 2006 |
|---|---|---|---|---|---|
| | $134,363 | $138,603 | $144,620 | $149,315 | $154,081 |
| EBIT | - | - | - | - | - |
| Plus: Other Income / (Expense) | $134,363 | $138,603 | $144,620 | $149,315 | $154,081 |
| Pretax Income | ($53,745) | ($55,441) | ($57,848) | ($59,726) | ($61,633) |
| Less: Taxes | $80,618 | $83,162 | $86,772 | $89,589 | $92,449 |
| Net Income | | | | | |
| Plus: Depreciation & Amortization | $48,755 | $52,555 | $56,529 | $60,685 | $65,032 |
| Less: | ($17,712) | ($23,212) | ($24,702) | ($26,045) | ($27,622) |
| Incremental Working Capital | ($41,677) | ($43,523) | ($45,461) | ($47,495) | ($49,631) |
| Capital Expenditures | $69,984 | $68,982 | $73,138 | $76,734 | $80,228 |
| Free Cash Flow | | | | | |

| | |
|---|---|
| Sum of PV Free Cash Flow (1) | $291,373 |
| Residual Value | $1,070,148 |
| **Estimate of Enterprise Value** | **$1,361,521** |

| Residual Value | |
|---|---|
| 2006 EBITDA | $219,113 |
| Terminal Multiple | 7.5x |
| Residual Value in 2006 | $1,643,348 |
| PV Factor (1) | 0.6512 |
| PV of Residual Value | $1,070,148 |

(1) Discount Rate of 10.0%.

AA. 1304

*Genesis*

Confidential

Highly Confidential

# Summary of Claims

|  | Estimate as of the Effective Date |
|---|---|
| *($000's)* | |
| **Administrative Claims** | |
| Federal Government | $2,100 |
| Medicaid | 8,000 |
| DIP (1) | 200,000 |
| Payments to Employees | 6,500 |
| Fees and Other | 8,280 |
| Total Administrative Claims | $224,880 |
| | |
| **Senior Secured** | |
| Senior Bank Debt (2) | 1,063,954 |
| Swap (Secured Portion) | 17,291 |
| Third Party Mortgages | 70,077 |
| Synthetic Lease | 78,236 |
| Total Secured Debt | $1,229,558 |
| | |
| **Total Administrative and Secured Debt** | $1,454,438 |
| | |
| **Unsecured Claims** | |
| Bonds | $387,425 |
| Estimated Trade | 51,329 |
| Mortgage Compromise | 7,483 |
| Swap (unsecured portion) | 11,257 |
| Other debt (unsecured seller notes) | 10,000 |
| Total Unsecured Claims | $467,494 |

(1) Assumes a September 30, 2001 exit date.

(2) $195.979 million of payments have already been made including: $112 million of post-petition interest; $43.979 of pre-petition interest; and $40.0 million related to a Tranche II facility.

*Houlihan Lokey Howard & Zukin*    12

AA. 1305

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| GENESIS HEALTH VENTURES, INC., et al. | ) | Case No. 00-2692 (JHW) |
| | ) | Jointly Administered |
| Debtors. | ) | |

## CERTIFICATE OF SERVICE

I, Rachel S. Lowy, hereby certify that on the 24th day of August, 2001, I caused a

copy of the following document(s) to be served on the individuals on the attached service list in

the manner indicated:

**DECLARATION OF PATRICK M. HURST IN SUPPORT OF
CONFIRMATION OF JOINT PLAN OF REORGANIZATION**

/s/ Rachel S. Lowy
Rachel S. Lowy (Bar No. 3753)

DOCS_DE:29020.2

-1-

AA. 1306

Genesis Health Ventures, Inc.
Service List
Case No. 00-2692 (PJW)
August 24, 2001
Doc. # 28984
13 - by Facsimile
20 – by Overnight Delivery

*By Facsimile*
*302-658-6548*
(Counsel to Debtors)
Mark D. Collins, Esquire
Deborah E. Spivack, Esquire
Margreta M. Sundelin, Esquire
Richards, Layton & Finger, P.A.
One Rodney Square, 8th Floor
Wilmington, DE  19801

*By Facsimile*
*302-571-1253*
(Counsel to Multicare)
James L. Patton, Jr., Esquire
Maureen D. Luke, Esquire
Robert Brady, Esquire
Young Conaway Stargatt & Taylor, LLP
1100 North Market Street, 11th Floor
Wilmington, DE  19801

*By Facsimile*
*302-573-6497*
Joseph J. McMahon, Jr., Esquire
Office of the U.S. Trustee
The Curtis Center – Suite 950 West
601 Walnut Street
Philadelphia, PA  19106

*By Facsimile*
*302-552-4295*
(Counsel to Administrative Agent)
Teresa Currier, Esquire
Kathleen P. Makowski, Esquire
Klett, Rooney, Lieber & Schorling
The Brandywine Building
1000 West Street, Suite 1410
Wilmington, DE  19801

*By Facsimile*
*302-652-8405*
(Counsel for Charles L. Grimes)
Selinda A. Melnik, Esquire
David A. Jenkins, Esquire
Smith, Katzenstein & Furlow LLP
800 Delaware Avenue
Wilmington, DE  19801

*By Facsimile*
*302-652-1111*
(Counsel for Michael G. Bronfein)
Brian A. Sullivan, Esquire
Duane D. Werb, Esquire
Werb & Sullivan
300 Delaware Avenue, 10th Floor
Wilmington, DE  19801

*By Facsimile*
*302-661-7360*
(Counsel for THCI Company, LLC)
Scott D. Cousins, Esquire
Victoria W. Counihan, Esquire
William E. Chipman, Esquire
Greenberg Traurig, LLP
1000 West Street, Suite 1540
The Brandywine Building
Wilmington, DE  19801

30600-001\DOCS_DE:28984 1
08/24/01 3:12 PM

AA. 1307

*By Facsimile*
*302-658-6395*
(Counsel for GMS Group LLC)
Jeffrey M. Schlerf, Esquire
Ellio Battista, Jr., Esquire
The Bayard Firm
222 Delaware Avenue
Suite 900
Wilmington, DE 19801

*By Facsimile*
*302-576-2004*
(Counsel for Tort Claimants)
Charles M. Oberly, III, Esquire
Oberly & Jennings, P.A.
800 Delaware Avenue
P.O. Box 2054
Wilmington, DE 19899

*By Facsimile*
*302-657-4901*
(Counsel for Susquehanna Center, Inc.)
William K. Harrington, Equire
Duane, Morris & Heckscher, LLP
1100 North Market Street, Suite 1200
Wilmington, DE 18901

*By Facsimile*
*302-656-8920*
(Counsel for JSM Company)
Neal J. Levitsky, Esquire
Agostini, Levitsky, Isaacs & Kulesza
824 North Market Street, Suite 810
P.O. Box 2323
Wilmington, DE 19899

*By Facsimile*
*302-654-0795*
(Counsel for Tort Claimants)
Thomas D. Walsh, Esquire
McCarter & English, LLP
919 North Market Street, Suite 700
P.O. Box 111
Wilmington, DE 19899

*By Facsimile*
*302-421-5873*
(Counsel to the Official Committee of
Unsecured Creditors)
Mark Minuti, Esquire
Norman L. Pernick, Esquire
J. Kate Stickles, Esquire
Saul, Ewing, Remick & Saul LLP
222 Delaware Avenue, Suite 1200
Wilmington, DE 19801

*By Overnight Delivery*
(Counsel to Debtors)
Michael F. Walsh, Esquire
Hans Hwang, Esquire
Christopher Marcus, Esquire
Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153

*By Overnight Delivery*
(Counsel to Multicare)
Myron Trepper, Esquire
Marc Abrams, Esquire
Paul V. Shaloub, Esquire
Willkie Farr & Gallagher
787 Seventh Avenue
New York, NY 10019

*By Overnight Delivery*
(Counsel to Administrative Agent)
Richard S. Toder, Esquire
Morgan, Lewis & Bockius
101 Park Avenue
New York, NY 10178

*By Overnight Delivery*
(Counsel for Michael G. Bronfein)
Bryan Krakauer, Esquire
Sidley Austin Brown & Wood
Bank One Plaza
10 South Dearborn Street
Chicago, IL 60603

AA. 1308

*By Overnight Delivery*
(Counsel for Todd W. Martin, III)
David E. Hudgens, Esquire
Thomas P. Oldweiler, Esquire
Armbrecht Jackson LLP
1300 Riverview Plaza
63 S. Royal Street
Mobile, AL  36602

*By Overnight Delivery*
Robert M. Ruzzo, Esquire
General Counsel
Massachusetts Housing Finance Agency
One Beacon Street
Boston, MA  02108

*By Overnight Delivery*
(Counsel for Bexar County)
David G. Aelvoet, Esquire
Heard Linebarger Graham Goggan Blair
Pena & Sampson, LLP
711 Navarro, Suite 300
San Antonio, TX  78205

*By Overnight Delivery*
(Counsel for AGE Entities)
Steven T. Davis, Esquire
Edmund M. George, Esquire
Obermayer, Rebmann, Maxwell & Hippel,
LLP
1617 John F. Kennedy Boulevard
Suite 1900
Philadelphia, PA 19103

*By Overnight Delivery*
(Counsel for THCI Company, LLC)
Richard S. Miller, Esquire
Thomas J. Weber, Esquire
Greenberg Traurig LLP
200 Park Avenue
New York, NY  10166

*By Overnight Delivery*
Timothy W. Walsh, Esquire
LeBoeuf, Lamb, Greene & MacRae, LLP
125 West 55th Street
New York, NY  10019

*By Overnight Delivery*
(Counsel for Commonwealth of
Pennsylvania, Department of Revenue)
Denise A. w, Esquire
Senior Deputy Attorney General
Office of the Attorney General
21 South 12th Street, 3rd Floor
Philadelphia, PA  19107

*By Overnight Delivery*
(Counsel for Tort Claimants)
Susan B. Morrison, Esquire
Wilkes & McHugh, P.A.
Tampa Commons, Suite 601
One North Dale Mabry Highway
Tampa, FL 33609

*By Overnight Delivery*
Thomas F. Michels
Odessa Packaging Services, Inc.
202 N. Bassett Street
Clayton, DE  19938

*By Overnight Delivery*
(Counsel for Susquehanna Center, Inc.)
Eric L. Brossman, Equire
Duane, Morris & Heckscher LLP
305 N. Front Street, 5th Floor
Harrisburg, PA  17108-1003

*By Overnight Delivery*
(Counsel for Official Committee of
Unsecured Creditors of the Susquehanna
Center, Inc.)
Barry D. Kleban, Esquire
Gary D. Bressler, Esqurie
Adelman, Lavine, Gold and Levin
1900 Two Penn Center Plaza
Philadelphia, PA  19102-1799

**By Overnight Delivery**
(Counsel for Indiana Department of
Revenue)
Anita A. Morse, Deputy Attorney General
Office of Attorney General
Indiana Government Center South, Fifth
Floor
402 West Washington Street
Indianapolis, IN 46204-2770

**By Overnight Delivery**
(Counsel for Tort Claimants)
Camille J. Iurillo, Esquire
Forizs & Dogali, P.L.
4301 Anchor Plaza Parkway, #300
Tampa, FL 33634

**By Overnight Delivery**
(Counsel for JSM Co.)
Allison M. Berger, Esquire
Fox, Rothschild, O'Brien & Frankel, LLP
2000 Market Street, Tenth Floor
Philadelphia, PA 19103-3291

**By Overnight Delivery**
(Counsel to the Official Committee of
Unsecured Creditors)
David S. Rosner, Esquire
Athena Foley, Esquire
Kasowitz, Benson, Torres & Friedman LLP
1633 Broadway
New York, NY 10019

**By Overnight Delivery**
The Honorable Judith H. Wizmur
U.S. Bankruptcy Court
Mitchell H. Cohen Courthouse
4th and Cooper Streets, Room 2020
Camden, NJ 08101

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE    

|  |  |
|---|---|
| In re | ) Chapter 11 |
|  | ) |
| MARINER POST-ACUTE | ) Case No. 00-00113 |
| NETWORK, INC. | ) |
| a Delaware Corporation, | ) (Jointly Administered |
|  | ) Case Nos. 00-00113 |
| and affiliates, | ) through 00-00214, |
|  | ) inclusive) |
| Debtors. | ) |
|  | ) Hearing Date: December 5, 2001 at 2:00 p.m. |
|  | ) |

ORDER GRANTING MOTION UNDER 11 U.S.C. §§ 105(a), 363, 364, 365
AND 1146 AND FED. R. BANKR. P. 2002, 4001, 6004, 6006, 9014 AND
9019 TO (A) SELL DEBTORS' PHARMACEUTICAL BUSINESS FREE AND CLEAR
OF LIENS AND ENCUMBRANCES PURSUANT TO SALE PROCEDURES ORDER; (B)
INCUR INDEBTEDNESS AND COMPROMISE CLAIMS IN CONNECTION
THEREWITH; (C) ASSUME AND ASSIGN EXECUTORY CONTRACTS AND
UNEXPIRED LEASES IN CONNECTION THEREWITH; AND (D) GRANT RELIEF
RELATED THERETO

Pursuant to the "MOTION UNDER 11 U.S.C. §§ 105(a), 363, 364, 365 AND 1146 AND FED. R. BANKR. P. 2002, 4001, 6004, 6006, 9014 AND 9019 TO (A) SELL DEBTORS' PHARMACEUTICAL BUSINESS FREE AND CLEAR OF LIENS AND ENCUMBRANCES PURSUANT TO SALE PROCEDURES ORDER; (B) INCUR INDEBTEDNESS AND COMPROMISE CLAIMS IN CONNECTION THEREWITH; (C) ASSUME AND ASSIGN EXECUTORY CONTRACTS AND UNEXPIRED LEASES IN CONNECTION THEREWITH; AND (D) GRANT RELIEF RELATED THERETO" (the "Motion")[1] filed by Mariner

---

[1] All capitalized terms utilized but not defined herein shall have the meanings ascribed to them in the Motion or in the executed "Asset Purchase Agreement" annexed hereto as Exhibit "A" which sets forth the terms and conditions of sale with the successful buyers (the "Asset Purchase Agreement"). The non-Debtor parties to the Asset Purchase Agreement, Omnicare Inc. and APS Acquisition LLC, are hereinafter referred to as the "Buyers".

#103007 v1 - MAPN Final sale order pharmacy

Post-Acute Network, Inc., American Pharmaceutical Services, Inc., American Medical Insurance Billing Services, Inc., APS Pharmacy Management, Inc., Living Centers-Southeast, Inc., and GranCare Home Health Services, Inc., the debtors and debtors in possession in Case Nos. 00-00113(MFW), 00-00115(MFW), 00-00114(MFW), 00-00122(MFW), 00-00186 (MFW), and 00-00165(MFW) respectively, for and on behalf of all debtors whose chapter 11 cases under title 11 of the United States Code (the "Bankruptcy Code") are consolidated for administrative purposes only under Case No. 00-00113 (collectively, the "MPAN Group"), and filed by Mariner Health Group, Inc. ("MHG"), Compass Pharmacy Services, Inc., Compass Pharmacy Services of Maryland, Inc., Pinnacle Pharmaceutical Services, Inc., Ocean Pharmacy, Inc., Compass Pharmacy Services of Texas, Inc, and Windward Health Care, Inc., the debtors and debtors in possession in Case Nos. 00-00215(MFW), 00-00222(MFW), 00-00220(MFW), 00-00284(MFW) 00-00273(MFW), 00-00221(MFW) and 00-00300(MFW) respectively, for and on behalf of all debtors whose chapter 11 cases under the Bankruptcy Code are consolidated for administrative purposes only under Case No. 00-00215 (collectively, the "MHG Group" and with the MPAN Group, the "Debtors"), the Debtors sought an order pursuant to sections 105, 363, 364, 365 and 1146(c) of the Bankruptcy Code and Rules 2002, 4001, 6004, 6006 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") authorizing the sale of the Acquired Assets and the Additional Assets (collectively referred to herein as the "Transferred Assets") comprising the pharmaceutical and certain related

businesses owned and operated by the Debtors (the "Debtors' Pharmaceutical Business") as more particularly specified in the Asset Purchase Agreement as the Acquired Business, including the identified, related executory contracts, leases, and agreements to be assumed and assigned as part of the contemplated sale (the "Contracts") identified on Schedule 2.4 to the Asset Purchase Agreement and Exhibit "B" hereto, all as more fully described in the Motion and in the attached Asset Purchase Agreement.

Notice of the Motion and of an opportunity to be heard in opposition thereto or in support thereof having been provided; there having been objections to certain of the relief requested in the Motion filed by (a) the City of Waco, Waco Independent School District (the "Waco Objection"); (b) the City and County Of Denver (the "Denver Objection"), (c) GE Capital Corporation (the "GECC Objection"), and (d) Bentzie and Estee Weisz (the "Weisz Objection"); and this Court having reviewed and considered the pleadings and other documents filed in support of and in opposition to the relief requested in the Motion and the record and proceedings in these cases,

NOW, THEREFORE, after due deliberation and good cause appearing therefor;

IT IS HEREBY FOUND AND DETERMINED THAT:[2]

---

[2] When appropriate herein, findings of fact shall be construed as conclusions of law, and conclusions of law shall be construed as findings of fact. See Bankruptcy Rule 7052.

Raw

A.    This Court has jurisdiction to hear and determine the Motion pursuant to 28 U.S.C. §§ 157 and 1334.

B.    Determination of the Motion is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (D), (N), and (O). The statutory predicates for the relief requested in the Motion are sections 105, 363, 364, 365 and 1146(c) of the Bankruptcy Code and Bankruptcy Rules 2002, 4001, 6004, 6006 and 9014.

C.    Proper, timely, adequate, and sufficient notice of the Motion, and of the proposed relief described therein, was reasonable and appropriate under the circumstances and comports in all regards with the requirements of due process, Bankruptcy Code section 102(1), and Bankruptcy Rules 2002, 4001, 6004 and 6006, such that no other or further notice of the foregoing or of the entry of this Order is required.

D.    Pursuant to and in compliance with the "Order Granting Motion To (1) Establish Bidding Procedures For Sale of Debtors' Pharmaceutical Business; And (2) Approve Break-Up Fees" entered October 16, 2001 (the "Sale Procedures Order"), the Debtors served or provided a reasonable means to obtain, notice of the Sale Hearing and Auction (each as defined below), the Motion, the Sale Procedures Order, the original asset purchase agreement dated as of September 24, 2001, by and among Debtors, on the one hand, and Genesis Health Ventures, Inc. and NeighborCare Pharmacy Services, Inc., on the other hand, and a generic form of asset purchase agreement for use by competing bidders on all interested persons and entities, including: (i) the United States Trustee for the District of Delaware,

#103007 v1   NAPN final sale order pharmacy        4

(ii) counsel for Chase Manhattan Bank, in its capacity as Agent for the MPAN Group's senior secured prepetition lenders (the "MPAN Prepetition Bank Group"), (iii) counsel for Foothill Capital Corporation in its capacity as Agent for the MPAN Group's postpetition debtor in possession lenders (the "MPAN Postpetition Bank Group" and collectively with the MPAN Prepetition Bank Group, the "MPAN Bank Group"), (iv) counsel for PNC Bank, N.A., in its capacity as Agent for the MHG Group's senior secured prepetition lenders and in its capacity as Agent for the MHG Group's postpetition debtor in possession lenders (the "MHG Bank Group"), (v) counsel to MPAN's Official Committee of Unsecured Creditors (the "MPAN Committee"), (vi) counsel to MHG's Official Committee of Unsecured Creditors (the "MHG Committee"), (vii) counsel to Genesis Health Ventures, Inc. and NeighborCare Pharmacy Services, Inc., (viii) all parties to the Contracts, (ix) entities in addition to the MPAN and MHG Bank Groups who have asserted a security interest, lien or other interest in the Transferred Assets to be conveyed and assigned pursuant to the Asset Purchase Agreement as set forth on Exhibit "C" hereto, (x) all entities who, during the past 12 months, have expressed, in writing, an interest in purchasing the Transferred Assets, (xi) the Health Care Finance Administration and the Department of Justice, (xii) certain lessors identified on Exhibit "D" hereto whose leases of pharmacy facilities are not being assumed and assigned to the Buyers, and (xiii) all parties that are on the MPAN Group's and MHG Group's general service list, pursuant to this Court's prior orders limiting

#103007 v1 - MAPN final sale order pharmacy      5

notice. Such service, together with published notice in The Wall Street Journal as required by the Sale Procedures Order, provided parties in interest with an adequate opportunity to object or be heard regarding the relief requested in the Motion.

E.    The Debtors have taken commercially reasonable steps to communicate to the applicable market that the Transferred Assets were available for sale and to facilitate and encourage commercially reasonable expressions of interest in the Transferred Assets. As a consequence, the Debtors fully and adequately have marketed the Transferred Assets.

F.    The sale of the Debtors' Pharmaceutical Business was conducted in accordance with the "Sale Procedures" approved pursuant to the Sale Procedures Order, which procedures provided an opportunity for competitive bidding, thereby maximizing the value to be obtained for the Debtors' Pharmaceutical Business. Pursuant to the Sale Procedures Order, an auction of the Transferred Assets was conducted at the offices of Ashby & Geddes, 222 Delaware Avenue, Wilmington, Delaware 19899 on December 4, 2001, commencing at 10:00 a.m. (the "Auction") on the day prior to the hearing on the Motion (the "Sale Hearing"). At the Auction, the Buyers submitted the highest and best bid for the Transferred Assets, as determined by Debtors after application of the "Bid Review Standards" (as defined in the Sale Procedures Order), and therefore were the prevailing bidders. The Auction conducted complied in all material respects with the Sale Procedures Order and was fair and reasonable under the circumstances.

#103007 v1   MAPN final sale order pharmacy        6

G.    The Debtors have all requisite corporate power and authority necessary to enter into the Asset Purchase Agreement and all other documents contemplated thereby, and the transactions provided for in the Asset Purchase Agreement have been duly and validly authorized by all necessary corporate action of the Debtors.  The Debtors have all the corporate power and authority necessary to consummate the transactions contemplated by the Asset Purchase Agreement, and no consents or approvals other than those expressly provided for in the Asset Purchase Agreement are required for the Debtors to consummate such transactions.

H.    The Debtors' execution and delivery of the Asset Purchase Agreement, and the consummation of the transactions contemplated thereby, including the provisions thereof with respect to the conveyance and assignment of the Transferred Assets free and clear of liens and the assumption and assignment of the Contracts, reflect the exercise of the Debtors' sound business judgment, are proper exercises of the Debtors' fiduciary duties, are fair and reasonable, and are in the best interests of the Debtors, their creditors, and their estates. The total consideration to be realized by the Debtors under the Asset Purchase Agreement represents fair consideration and reasonably equivalent value in the context of any state or federal law governing the rights of creditors.  As a result, there exists good and sufficient business justification to consummate the transaction contemplated by the Asset Purchase Agreement pursuant to Bankruptcy Code sections 363, 364 and 365.

#103007 v1 - MASH final sale order pharmacy        7