I.    The transactions contemplated under the Asset Purchase Agreement pursuant to section 363 of the Bankruptcy Code are exempt from the purview of all state laws protecting the rights of creditors, including, without limitation, state fraudulent transfer, fraudulent conveyance, preference and bulk sale laws.

J.    The conveyance and assignment of Transferred Assets pursuant to the Asset Purchase Agreement will be a legal, valid, and effective transfer of the Transferred Assets to the Buyers, and will vest the Buyers with all right, title and interest of the Debtors in the Transferred Assets free and clear of all mortgages, deeds of trust, security interests, conditional sale or other title retention agreements, pledges, liens (including without limitation, all liens of the MPAN Bank Group and the MHG Bank Group in the Transferred Assets), judgments, demands, encumbrances, constructive or resulting trusts, or other encumbrances or charges of any kind or nature, if any, including but not limited to any restriction on the use, voting, transfer, receipt of income, or other exercise of any attributes of ownership, except for the Permitted Liens and any liens created by the Buyers on the Transferred Assets at Closing (collectively, "Liens") pursuant to Bankruptcy Code section 363(f), including the alleged liens of those parties identified on Exhibit "C" hereto. Sale of the Transferred Assets free and clear of Liens is appropriate under section 363(f) in that (a) the MPAN Bank Group and the MHG Bank Group have consented to the transfer of the Transferred Assets free

#103007 v1 - NAFH final sale order pharmacy        8

and clear of their respective prepetition and postpetition liens pursuant to section 363(f)(2), (b) as to any perfected interest senior in priority to the liens of the MPAN Bank Group and MHG Bank Group on the Transferred Assets, such interest is a lien, and there is sufficient equity in Transferred Assets to pay such lien in full, thereby allowing the Transferred Assets to be sold free and clear of any such lien pursuant to section 363(f)(3), and (c) as to any perfected interest junior in priority to the liens of the MPAN Bank Group and the MHG Bank Group on the Transferred Assets, the allowability of any such secured claim is in bona fide dispute under section 506(a) of the Bankruptcy Code, thereby allowing the Transferred Assets to be sold free and clear of such lien pursuant to section 363(f)(4). As a result, all holders of any Liens shall be forever barred from asserting their Liens or any Claims (as defined below) against the Buyers, their successors and assigns, and the Transferred Assets.

K.    Except as provided in this Order and with respect to Assumed Liabilities under the Asset Purchase Agreement, the Buyers are not assuming any liabilities of the Debtors, and at Closing the Buyers will be vested with all right, title and interest of Debtors in the Transferred Assets free and clear of any and all debts, claims (as that term is defined in the Bankruptcy Code), liabilities, obligations, demands, guaranties, options, rights, contractual commitments, restrictions, interests, and matters of any kind and nature, in favor of the Debtors' creditors, vendors, suppliers, lenders, employees,

lessors or any other person or entity including any "governmental unit" as defined in section 101(27) of the Bankruptcy Code ("Governmental Unit"), in any way connected with or relating to any disputes, demands, actions, liabilities, damages, suits in equity, administrative or judicial proceedings, exercise of police powers, accounts, costs, expenses, setoffs, contributions, attorneys' fees and/or causes of action of whatever kind or character, whether past, present, future, known or unknown, fixed, liquidated or unliquidated, contingent or noncontingent, accrued or unaccrued relating to the Debtors, and whether imposed by agreement, understanding, law, equity, or otherwise, including, without limitation, claims of any Governmental Unit, including claims of taxing authorities for sales, use, or any other taxes incurred or arising prior to, or as consequence of, the Closing (collectively, "Claims").

L. The failure to sell the Transferred Assets free and clear of Liens and Claims would impact adversely on Debtors' bankruptcy estates. Any attempt to sell the Transferred Assets other than free and clear of Liens and Claims would be of substantially less benefit to the Debtors' estates.

M. By virtue of the failure of any party in interest other than GE Capital Corporation to file any objection to the proposed assumption and assignment of the Contracts to Buyers as provided in the Asset Purchase Agreement, or to establish any cure amount due under sections 365(b)(A)(1) and (2) of the Bankruptcy Code, all objections to the assumption and assignment of the Contracts, and all such pre-existing defaults, if any,

other than the defaults recognized and agreed to by the Debtors as set forth on Exhibit "B" hereto, which defaults are to be cured at the time of Closing under the Asset Purchase Agreement, are deemed waived, and, upon the Closing Date, the other parties to such Contracts shall be estopped to raise and shall not assert any alleged uncured defaults under any Contract related to the Debtors' performance thereunder prior to the Closing. Any party that may have had the right to consent to the assignment of its Contract is deemed to have consented to such assignment as required by section 365(e)(2)(A)(ii) of the Bankruptcy Code by its failure to object to the assumption and assignment and/or the cure amounts proposed by the Debtors to be paid at Closing, and as a result thereof, no Contracts have been shifted from Schedule 2.4 of the Asset Purchase Agreement (assumed and assigned Contracts) to Schedule 2.1(b)(viii) of the Asset Purchase Agreement (excluded executory contracts and unexpired leases). The GECC Objection does not object to the assumption and assignment of the lease with GE Capital Corporation designated by the Debtors; rather, it questions the disposition of other leases not included at this time in the Transferred Assets. Any other leases between the Debtors and GECC to be assumed and assigned as part of the Transferred Assets must be the subject of either an agreement between GE Capital Corporation and the Debtors or further order of this Court.

      N. The use of acquisition companies is common. Here, any entity designated by the Buyers as of the Closing Date

will be adequately capitalized and acquiring a business which generates sufficient operating income to perform the obligations arising under the Contracts to be assumed and assigned. Accordingly, as to all parties to the Contracts, the assignment of the executory contracts and unexpired leases identified in the Asset Purchase Agreement to any designee identified by Buyers to acquire the Transferred Assets provides adequate assurance of future performance based upon the price to be paid by Buyers under the terms of the Asset Purchase Agreement, and the continuing ability of the Transferred Assets to generate revenues in the future.

O.    The Debtors have established that incurring unsecured credit allowable under section 503(b)(1) and 507(a)(1) as an administrative claim for obligations incurred by Debtors under the Asset Purchase Agreement is in the best interests of the Debtors, their creditors, and their estates, and that there exists good and sufficient business justification for consummating the transactions contemplated by the Asset Purchase Agreement and incurring the potential administrative obligations as provide for thereunder.

P.    The Asset Purchase Agreement contemplates that certain post-closing adjustments and reconciliations will be made in respect of the initial cash payment and the subsequent "Earnout Payments" due under the Asset Purchase Agreement. To the extent such adjustments and reconciliations constitute or require the compromise of disputed issues, the Debtors should be

authorized to resolve such matters without further order of this Court.

Q.    The transfers to be made in connection with the Asset Purchase Agreement are integral to, and are made in contemplation of, a plan or plans of reorganization to be confirmed by Debtors under section 1129 of the Bankruptcy Code, and thus shall not be subject to law imposing a stamp tax, transfer fee, or similar tax pursuant to section 1146(c) of the Bankruptcy Code.

R.    The Asset Purchase Agreement was negotiated, proposed, and entered into by the parties without collusion, in good faith, and from arm's-length bargaining positions. The Buyers are not "insiders" of the Debtors within the meaning of section 101(31) of the Bankruptcy Code, and Buyers are unrelated to Debtors in that there is no substantial similarity between or among the ultimate shareholders of Debtors and Buyers. As a result, upon consummation of the transactions contemplated by the Asset Purchase Agreement, the Buyers will be purchasers in "good faith" within the meaning of Bankruptcy Code section 363(m), and, as such, are entitled to the protections afforded thereby. Neither the Debtors nor the Buyers have engaged in any conduct that would cause or permit the Asset Purchase Agreement, or the transfers contemplated thereby, to be avoided under Bankruptcy Code section 363(n). If the Debtors consummate the transactions contemplated by the Asset Purchase Agreement absent a stay, the reversal or modification on appeal of this Order shall not affect the validity of the contemplated transactions.

#103007 v1 - MAPN final sale order pharmacy        13

S. All objections, if any, to the approval of the Asset Purchase Agreement, or to the transaction contemplated thereby, have been withdrawn, resolved or overruled.

T. To ensure an orderly transition of operations from the Debtors to the Buyers and to protect the well-being of the thousands of patients serviced by the Debtors' Pharmaceutical Business, it is essential that the Buyers be permitted to occupy on a temporary basis those pharmacy premises which are subject to the non-residential real property leases set forth on Exhibit "D" hereto which are not being assumed and assigned pursuant to the Asset Purchase Agreement, subject to the Debtors' future rights to assume, assume and assign, or reject such non-residential real property leases.

U. The Weisz Objection has been rendered moot by virtue of the Debtors' withdrawal, without prejudice, of their request to assign as part of their sale of the Transferred Assets the Debtors' rights in the non-competition agreement executed by the Weiszes.

NOW, THEREFORE, IT HEREBY IS ORDERED THAT:

1. The Motion is GRANTED.

2. The terms and conditions of, and the transactions contemplated by, the Asset Purchase Agreement are hereby authorized and approved in all respects; and, pursuant to Bankruptcy Code sections 363, 364 and 365, the Debtors hereby are fully authorized and empowered to (a) execute, deliver, perform under, consummate, and implement the Asset Purchase Agreement, (b) execute all additional instruments and documents

410300/ v1 - MAPH final sale order pharmacy        14

that may be reasonably necessary or desirable to implement the Asset Purchase Agreement and the transactions contemplated thereby, (c) take all further actions as may be necessary or appropriate for the purpose of assigning, transferring, granting or conveying the Debtors' interest in the Transferred Assets to Buyers as contemplated by the Asset Purchase Agreement, and (d) take such other and further steps as are contemplated thereby to fulfill the Debtors' obligations thereunder or as may be necessary to effectuate the terms of this Order.

3.    Pursuant to sections 105(a) and 363(f) of the Bankruptcy Code, and Bankruptcy Rule 6004, upon the Closing of the Asset Purchase Agreement, the Transferred Assets, including without limitation, all of the Debtors' right, title and interest (including common law rights) to all of their intangible property specified in the Asset Purchase Agreement, shall be sold, transferred, and assigned to the Buyers free and clear of all Liens and Claims, including, without limitation, the Liens and Claims of the MPAN Bank Group, the MHG Bank Group and the parties identified on Exhibit "C" hereto. There is no requirement under section 363 to pay the secured claims of creditors holding perfected liens against the Transferred Assets at the time of closing so long as adequate protection is provided for the payment of such creditors' allowed secured claims. Pursuant to section 363(e) of the Bankruptcy Code, adequate protection is hereby afforded to all lienholders claiming an interest in the Transferred Assets, including, without limitation, the MPAN Bank Group, the MHG Bank Group and

the parties identified on Exhibit "C" hereto, by the transfer of all such Liens on the Transferred Assets to the impounded and segregated net proceeds of sale with the same extent, validity and priority as such interests are now attached to any of the Transferred Assets, subject to such lienholder's right to establish a claim against Debtors and a valid and perfected ownership, security, or other interest in any of the Transferred Assets formerly subject to their alleged Claims or Liens; provided, however, that all such liens shall be subject to the rights, claims, defenses, and objections, if any, of the Debtors and all interested parties, except as limited to the extent permitted by prior orders approving financings with the MPAN Bank Group and the MHG Bank Group. As a result, the Waco Objection and the Denver Objection should be overruled. The impounded and segregated net proceeds of sale shall not be distributed thereafter absent further order of the MPAN and MHG Bankruptcy Courts; provided, however, that the Debtors' are hereby authorized at the time of Closing in their discretion to pay (a) any tax Lien on the Transferred Assets senior in priority to the Liens of the MPAN Bank Group and the MHG Bank Group, and (b) any other Liens senior in priority to the Liens of the MPAN Bank Group and the MHG Bank Group with the consent of the respective bank group asserting a junior lien on the encumbered asset.

4. Each and every federal, state and local governmental agency or department is hereby directed to accept any and all documents and instruments necessary and appropriate

81019007 v1   MPAN final sale order pharmacy      16

to consummate the transactions contemplated by the Asset Purchase Agreement. A certified copy of this Order shall be accepted by any federal, state or local recording or filing authority as evidence of the discharge of all Liens and Claims against the Transferred Assets.

5. Except as otherwise expressly set forth in the Asset Purchase Agreement or this Order, the consummation of the transactions contemplated by the Asset Purchase Agreement shall not constitute an assumption, express or implied, by the Buyers and/or by any and all parties claiming any right, interest, and/or title by, through and/or under any of them, of the obligations of the Debtors in respect of any Claims against the Debtors. Buyers shall not be liable in any way (as successor entity or otherwise) for any Claims that any person or entity, including any Governmental Unit, may have against any of Debtors, the Debtors' Pharmaceutical Business, or the Transferred Assets. The Buyers shall not be considered, for any purpose, to be the successors of any of the Debtors, and shall not be liable for any Claims against the Debtors, except with respect to post-Closing Date obligations arising under the Contracts, as expressly set forth as Assumed Liabilities in the Asset Purchase Agreement, or as set forth in this Order. Without limiting the foregoing, except as set forth in the Asset Purchase Agreement or in this Order, no action based upon a theory of successor, transferee or vicarious liability or substantial continuity may be brought against the Buyers or their "Affiliates" (as such term is defined in section 101(2) of

8103007 v1  MAPH final sale order pharmacy      17

the Bankruptcy Code) as a result of the consummation of the Asset Purchase Agreement, or the ownership, use and operation of the Transferred Assets, other than for claims under the Contracts first arising after the Closing Date, and on the account of Assumed Liabilities under the Asset Purchase Agreement, nor shall any person or entity, including any Governmental Unit, take any action against Buyers or their Affiliates to recover any Claims or realize upon any Liens which such person or entities have solely against Debtors or any of Debtors' Affiliates.

6.    As a result of the foregoing, all persons or entities, including any Governmental Unit, holding any Liens against the Transferred Assets or asserting any Claims against the Debtors are forever barred and estopped from asserting any such Liens or Claims against the Buyers, the Transferred Assets, or any other assets of the Buyers, except with respect to Assumed Liabilities under the Asset Purchase Agreement.   This Court shall retain exclusive jurisdiction to enforce this Order to bar the enforcement or assertion of any Liens or Claims against Buyers or the Transferred Assets.

7.    The consummation of the transactions contemplated by the Asset Purchase Agreement, including the Debtors' rights to receive Earnout Payments as provided for therein, shall not constitute an assumption, express or implied, by the Debtors and/or by any and all parties claiming any right, interest, and/or title by, through and/or under any of them, of any debts, claims (as that term is defined in the Bankruptcy Code),

liabilities, obligations, demands, guaranties, options, rights, contractual commitments, restrictions, interests, and matters of any kind and nature, arising in favor of Buyers' creditors, vendors, suppliers, lenders, employees, lessors or any other person or entity, including any Governmental Unit, in any way connected with or relating to any disputes, demands, actions, liabilities, damages, suits in equity, administrative or judicial proceedings, the exercise of police powers, accounts, costs, expenses, set offs, contributions, attorneys' fees and/or causes of action of whatever kind or character, whether past, present, future, known or unknown, fixed, liquidated or unliquidated, contingent or noncontingent, accrued or unaccrued relating to the Buyers' operation of the Debtors' Pharmaceutical Business, the Buyers' use of the Transferred Assets from and after the Closing Date, or otherwise, regardless of whether imposed by agreement, understanding, law, equity, or otherwise, including, without limitation, claims against Buyers by any Governmental Unit (collectively, "Buyers' Obligations"). Following the Closing Date, the Debtors shall not be considered, for any purpose, to be operating the Debtors' Pharmaceutical Business or the Transferred Assets, and the Debtors' right to receive the Earnout Payments under the Asset Purchase Agreement shall create only a debtor/creditor relationship with the Buyers, and shall not be considered to create a partnership, joint venture, or any other relationship that would impose post-Closing liability on the Debtors for any of the Buyers' Obligations, including the Buyers' operation of the Transferred

Assets and the Debtors' Pharmaceutical Business. Without limiting the foregoing, except in relation to cure amounts due as set forth on Exhibit "B" hereto, no liability action may be brought against the Debtors and their Affiliates on account of the Buyers' Obligations, including as a result of the consummation of the Asset Purchase Agreement, or the Buyers' ownership, use and operation of the Transferred Assets and the Debtors' Pharmaceutical Business.

8. On and after the Closing Date and in accordance with the terms of the Asset Purchase Agreement, the holders of Claims and Liens are directed to execute such documents and take all other actions as may be reasonably necessary to terminate and expunge such Liens and Claims against the Transferred Assets as such Claims or Liens may have been recorded or may otherwise exist.

9. Pursuant to sections 105(a), 363 and 365 of the Bankruptcy Code, and Bankruptcy Rule 6004 and 6006, and in accordance with the Asset Purchase Agreement, Debtors are hereby authorized at Closing to assume and assign to Buyers the Contracts and to pay from the impounded and segregated proceeds of sale the amounts set forth on Exhibit "B" hereto in full and complete satisfaction of the requirements of Bankruptcy Code sections 365(b)(1)(A) and (B). Upon the payment of the cure amounts as set forth on Exhibit "B" hereto, the Contracts shall be (a) in full force and effect, with no defaults thereunder that need to be cured in connection with their assumption and assignment by Debtors, and (b) valid, binding, and enforceable

in accordance with their terms upon assignment to Buyers. Upon consummation of such assignments and payment of the cure amounts required by this Order, pursuant to section 365(k) of the Bankruptcy Code, the Debtors and the Debtors' estates shall have no further liability for any breach of, or any other obligations arising under, the Contracts. The foregoing assumption and assignment of the Contracts shall occur and be effective only upon Closing. In addition to the foregoing, the Debtors are authorized, without further order of this Court, to assume and assign any other equipment leases they may have relating to the operation of the Debtors' Pharmaceutical Business upon (a) agreement thereto, including as to cure amount and identity of assigee, by and between the Debtors and GE Capital Corporation, or (b) upon further order of this Court.

10. Pursuant to sections 105(a) and 364 of the Bankruptcy Code and Bankruptcy Rule 4001, all obligations and liabilities of Debtors arising under or in connection with the Asset Purchase Agreement, whether direct or indirect, absolute or contingent, shall constitute costs of administration and shall be allowable and immediately payable as administrative expenses under Bankruptcy Code section 503(b)(1) and 507(a)(1) if and when they arise under the Asset Purchase Agreement without any further order of the Debtors' Bankruptcy Court, and shall include, without limitation, all amounts due under the Asset Purchase Agreement in respect of (a) any payments with respect to Purchase Price adjustments pursuant to Section 2.3 of the Asset Purchase Agreement, (b) any payments with respect to

any indemnification obligations pursuant to Section 9 of the Asset Purchase Agreement, and (c) any termination payments due Genesis Health Ventures, Inc. and NeighborCare Pharmacy Services, Inc. as approved by the Court in the Sale Procedures Order; provided, however, that Debtors shall have the right to reasonably contest the amount of any such asserted claims.

11. The Debtors are hereby authorized to reconcile or adjust the initial cash payments and the Earnout Payments as contemplated by and provided in the Asset Purchase Agreement, and to compromise any controversies in connection therewith, without further order of this Court.

12. The consideration provided by Buyers for the Transferred Assets and the Debtors' Pharmaceutical Business under the Asset Purchase Agreement constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory or the District of Columbia.

13. The failure specifically to include any particular provisions of the Asset Purchase Agreement in this Order shall not diminish or impair the efficacy of such provisions, it being the intent of the Court that the Asset Purchase Agreement be approved in its entirety.

14. The Asset Purchase Agreement and any related agreements, documents, or other instruments may be modified, amended, or supplemented by the parties thereto in accordance with the terms thereof without further order of the Court,

provided that any such modification, amendment, or supplement is not material.

15. The terms of any final plan of reorganization confirmed in the Debtors' chapter 11 cases, and the consummation thereof, will not affect the Asset Purchase Agreement or any of the transactions contemplated thereby.

16. The Debtors rights under Paragraph 4 of the "Order Authorizing Certain Debtors To Enter Into Master Amendment To Various Pharmacy Services Agreements With Debtor American Pharmaceutical Services, Inc. and Affiliates" entered in each of their respective Bankruptcy Cases to terminate the Services Contracts approved by such Order pursuant to confirmation of a plan of reorganization be, and hereby are, terminated and of no force and effect.

17. The Asset Purchase Agreement, and all transactions contemplated thereby, shall be binding upon any successors in interest, including without limitation any chapter 11 trustee, chapter 7 trustee or other responsible officer appointed for any of the parties thereto.

18. The provisions of this Order, the terms of the Asset Purchase Agreement, and the transactions contemplated thereby are nonseverable and mutually dependent.

19. The Buyers and their designee are hereby granted the benefits and protections of section 363(m) of the Bankruptcy Code, as a good faith purchasers and assignees, in connection with all Transferred Assets, including the Contracts. No portion of the Transferred Assets, including any of the

Contracts to be assumed and assigned pursuant to the Asset Purchase Agreement, shall be severable for mootness or any other purpose from any other portion of the Transferred Assets, and the sale of the Transferred Assets shall constitute but one non-severable transaction under section 363 of the Bankruptcy Code.

20. Pursuant to section 1146(c) of the Bankruptcy Code, the transfers contemplated under the Asset Purchase Agreement shall be exempt from any stamp, transfer, recording, or similar taxes or fees.

21. Pursuant to Bankruptcy Code section 105(a), the Buyers are hereby authorized to occupy, under the Debtors' leases of the pharmacy premises, on a temporary basis for a period of up to six months following Closing, or such additional time as the Court may hereafter approve upon notice to the lessors in question and a hearing, those pharmacy premises identified on Exhibit "D" hereto which are the subject of non-residential real property leases which are not being assumed and assigned pursuant to the Asset Purchase Agreement. During such period of occupancy, the Debtors and the Buyers shall comply with all provisions of Bankruptcy Code section 365(d)(3), and both the Debtors and the Buyers shall be responsible for all costs of use and occupancy and for the acts of the Buyers, subject to a right of indemnity in favor of the Debtors against Buyers for use and occupancy costs and any injury or damages caused by Buyers' occupancy. Nothing provided for hereby shall in any way affect the Debtors' future rights to assume, assume

and assign, or reject such non-residential real property leases following the required transition period.

22. This Court hereafter shall and does retain exclusive jurisdiction: (a) to interpret, construe, enforce and implement the terms and provisions of the Asset Purchase Agreement and this Order, all amendments thereto, any waivers and consents thereunder, each of the agreements executed in connection therewith, and any and all disputes that may arise under the Asset Purchase Agreement or this Order as between Debtors and Buyers; (b) to hear and determine any and all disputes between Debtors and/or Buyers, as the case may be, and any third parties relating to the Asset Purchase Agreement or any of the Contracts, concerning _inter_ _alia,_ Debtors' assignment thereof to Buyers under the Asset Purchase Agreement and any claims of such third parties arising under any agreements or otherwise related to Excluded Liabilities; (c) compel delivery and payment of the consideration provided for under the Asset Purchase Agreement; (d) resolve any disputes, controversies or claims arising out of or relating to the Asset Purchase Agreement; and (e) interpret, implement, and enforce the provisions of this Order; provided, however, that in the event that this Court abstains from exercising or declines to exercise jurisdiction with respect to any matter provided for in this clause, or is without jurisdiction, such abstention, refusal or lack of jurisdiction shall have no effect upon and shall not control, prohibit or limit the exercise of jurisdiction of any

other court having competent jurisdiction with respect to any such matter.

23. The Waco Objection and the Denver Objection are overruled. The Weisz Objection is dismissed as moot. Except as provided for herein, the GE Objection is overruled.

24. This Order shall be effective immediately upon its entry, and the 10-day stay provisions included in Bankruptcy Rule 6004(g) and 6006(d) are hereby waived.

Dated: December 5, 2001
       Wilmington, Delaware

THE HONORABLE MARY F. WALRATH,
UNITED STATES BANKRUPTCY JUDGE

103007

81030D7 v1 - MAPN final sale order pharmacy     26

AA. 1336

## CERTIFICATE OF SERVICE

I, Russell C. Silberglied, do hereby certify that on April 23, 2004 I caused copies

of the foregoing **Appendix of Exhibits to Defendants' Joint Motion to Dismiss Plaintiffs'**

**Complaint** to be served upon the parties in the manner indicated on the attached list.

Russell C. Silberglied (No. 3462)

RLF1-2732957-1

## Service List

*Via Hand Delivery*

Steven K. Kortanek
Morton R. Branzburg
Klehr, Harrison, Harvey
Branzburg & Ellers LLP
919 Market Street, Suite 1000
Wilmington, DE 19809-3062

Robert S. Brady
Young Conaway Stargatt & Taylor
1000 West St., 17th Floor
Wilmington, DE 19899-0391

Teresa K.D. Currier, Esquire
Klett Rooney Lieber & Schorling
The Brandywine Building
1000 West Street, Suite 1401
Wilmington, DE 19801

Joseph J. McMahon, Jr., Esquire
Office of the U.S. Trustee
844 King Street, Suite 2313
Lockbox 35
Wilmington, DE 19801-3519

*Via First Class Mail*

Paul Lackey
Michael Aigen
Lackey, Hershman LLP
3102 Oak Lawn Ave., Suite 700
Dallas, TX 75219

Paul V. Shalhoub
Willkie Farr & Gallagher LLP
787 7th Avenue
New York, NY 10019-6099

H. Adam Prussin
Pomerantz, Haudek, Block,
Grossman & Gross LLP
100 Park Avenue, 26th Floor
New York, NY 10017-5516

R. Bruce McNew
Taylor & McNewLLP
3711 Kenneth Pike, Ste. 210
Greenville, DE 19807

RLF1-2732958-1

Westlaw.

324 B.R. 510
324 B.R. 510
(Cite as: 324 B.R. 510)

Page 1

United States Bankruptcy Court,D. Delaware.
In the Matter of GENESIS HEALTH VENTURES,
INC., Debtors.
Richard Haskell, et al., Plaintiffs,
v.
Goldman, Sachs & Co.; Genesis Health Ventures,
Inc.; Mellon Bank, N.A.; Highland Capital
Management, L.P.; George V. Hager, Defendants.
Nos. 00-2691 to 00-2842.

May 3, 2005.

**Background:** Investors brought action in New York
state court post-confirmation against Chapter 11
debtor and various senior lenders alleging fraud,
conspiracy to commit fraud, and gross negligence.
Action was removed to federal court and transferred.
Defendants brought joint motion to dismiss.

**Holdings:** In an amended opinion, the Bankruptcy
Court, Judith H. Wizmur, J., held that:

1(1) investors' allegations of pre-confirmation fraud
against debtor constituted impermissible collateral
attack on confirmation order;

4(2) discharge and injunction provisions contained in
confirmed plan of reorganization precluded investors'
claims of pre-confirmation fraud against debtor;

5(3) investors' post-confirmation claim of pre-
confirmation fraud against senior lenders was barred
by res judicata doctrine;

8(4) confirmed reorganization plan, which allowed
claims for "willful misconduct or gross negligence,"
did not reserve or preserve any right to bring claims
that would have been otherwise barred by plan and
confirmation order;

9(5) investors did not show that senior lenders
wrongfully concealed material facts from investors
prior to confirmation; and

11(6) collateral estoppel, or issue preclusion, barred
investors' post-confirmation complaint against senior
lenders.

Motion granted.

West Headnotes

[1] Bankruptcy 51 ☜3568(2)

51 Bankruptcy
    51XIV Reorganization
        51XIV(B) The Plan
            51k3566 Confirmation; Objections
                51k3568 Effect
                    51k3568(2) k. Conclusiveness. Most
Cited Cases
Investors' allegations of pre-confirmation fraud
against Chapter 11 debtor constituted impermissible
collateral attack on confirmation order, which was
otherwise time-barred, although investors sought
money damages rather than revocation of
confirmation order; impact of significant money
damages award against debtor would have "redivided
the pie," upset confirmed plan, and negatively
affected innocent parties and creditors who received
value in forms of new equity and new debt in
reorganized debtor. Bankr.Code, 11 U.S.C.A. §
1144.

[2] Bankruptcy 51 ☜3569

51 Bankruptcy
    51XIV Reorganization
        51XIV(B) The Plan
            51k3569 k. Modification or Revocation.
Most Cited Cases
The six month time limitation for revocation of an
order of confirmation is strictly construed.
Bankr.Code, 11 U.S.C.A. § 1144.

[3] Bankruptcy 51 ☜3569

51 Bankruptcy
    51XIV Reorganization
        51XIV(B) The Plan
            51k3569 k. Modification or Revocation.
Most Cited Cases
If a judgment awarding the plaintiff money damages
would not ultimately affect the plan distributions
made to the creditor body, a cause of action premised
on fraud may proceed despite the six month time
limitation for revocation of an order of confirmation.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

324 B.R. 510
324 B.R. 510
(Cite as: 324 B.R. 510)

Page 2

Bankr.Code, 11 U.S.C.A. § 1144.

**[4] Bankruptcy 51 ⓒ~3568(3)**

51 Bankruptcy
    51XIV Reorganization
        51XIV(B) The Plan
            51k3566 Confirmation; Objections
                51k3568 Effect
                    51k3568(3) k. Effect as Discharge.
Most Cited Cases

**Bankruptcy 51 ⓒ~3570**

51 Bankruptcy
    51XIV Reorganization
        51XIV(B) The Plan
            51k3570 k. Execution and Performance.
Most Cited Cases
Discharge and injunction provisions contained in confirmed plan of reorganization, which stated that all claims against debtor that occurred prior to effective date were discharged and that all claimants were permanently enjoined from prosecuting such claims, precluded investors' claims of pre-confirmation fraud against Chapter 11 debtor.

**[5] Bankruptcy 51 ⓒ~3568(2)**

51 Bankruptcy
    51XIV Reorganization
        51XIV(B) The Plan
            51k3566 Confirmation; Objections
                51k3568 Effect
                    51k3568(2) k. Conclusiveness. Most
Cited Cases
Investors' post-confirmation claim of pre-confirmation fraud against senior lenders was barred by res judicata doctrine, since factual underpinnings, theory of case, and relief sought in post-confirmation claim arose from same cause of action as claim that was actually asserted or interposed in earlier bankruptcy case and resolved in confirmation order. Bankr.Code, 11 U.S.C.A. § § 1109(b), 1141.

**[6] Judgment 228 ⓒ~584**

228 Judgment
    228XIII Merger and Bar of Causes of Action and Defenses
        228XIII(B) Causes of Action and Defenses Merged, Barred, or Concluded
            228k584 k. Nature and Elements of Bar or Estoppel by Former Adjudication. Most Cited Cases

The application of res judicata, or claim preclusion, bars a party from litigating a claim that it could have raised or did raise in a prior proceeding in which it raised another claim based on the same cause of action.

**[7] Judgment 228 ⓒ~951(1)**

228 Judgment
    228XXIII Evidence of Judgment as Estoppel or Defense
        228k951 Evidence as to Judgment in General
            228k951(1) k. Presumptions and Burden of Proof. Most Cited Cases
The party seeking the application of res judicata bears the burden of showing that it applies.

**[8] Bankruptcy 51 ⓒ~3570**

51 Bankruptcy
    51XIV Reorganization
        51XIV(B) The Plan
            51k3570 k. Execution and Performance.
Most Cited Cases
Confirmed reorganization plan, which expressly allowed claims against debtor and senior creditors for "willful misconduct or gross negligence," did not reserve or preserve any right to bring claims that otherwise would have been barred by plan and confirmation order; contractual protection clause was designed to protect debtors and related parties from liability in connection with bankruptcy, plan, and its consummation, with carve-out for conduct that was not protected, if adjudication of liability for that conduct was not barred on some other basis.

**[9] Bankruptcy 51 ⓒ~3568(2)**

51 Bankruptcy
    51XIV Reorganization
        51XIV(B) The Plan
            51k3566 Confirmation; Objections
                51k3568 Effect
                  51k3568(2) k. Conclusiveness. Most
Cited Cases
Investors did not show that senior lenders wrongfully concealed material facts from investors prior to confirmation, in order to invoke fraud exception to res judicata doctrine, on allegations that documents produced by senior lenders prior to confirmation were too voluminous to review adequately, there was insufficient time to review materials thoroughly, and materials were not reviewed to ferret out fraud because prospect that fraud had been committed was

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

324 B.R. 510
324 B.R. 510
(Cite as: 324 B.R. 510)

Page 3

not yet apparent, since there was no affirmative act of concealment or contrivance and investors had not been prevented from asserting their claim at confirmation.

[10] Judgment 228 ☞576(3)

228 Judgment
    228XIII Merger and Bar of Causes of Action and Defenses
        228XIII(A) Judgments Operative as Bar
            228k576 Erroneous or Irregular Judgment
                228k576(3) k. Effect of Fraud in Obtaining Judgment. Most Cited Cases
To invoke doctrine of fraudulent concealment, presence of which bars a defendant from asserting res judicata as a defense, affirmative concealment must be shown, and mere silence or unwillingness to divulge wrongful activities is not sufficient.

[11] Bankruptcy 51 ☞3568(2)

51 Bankruptcy
    51XIV Reorganization
        51XIV(B) The Plan
            51k3566 Confirmation; Objections
                51k3568 Effect
                    51k3568(2) k. Conclusiveness. Most Cited Cases
Collateral estoppel, or issue preclusion, barred investors' post-confirmation complaint which alleged fraud by senior lenders prior to confirmation of debtor's reorganization plan, since alleged fraud related to appropriate enterprise value of debtor, issue of enterprise value had been actually litigated, investors' allegation did not present new issue but simply represented new factual assertions underlying issue that was resolved previously, confirmation order represented valid and final judgment on issue of confirmability of debtors' plan, and determination of debtors' enterprise value was essential to judgment of confirmation.    Bankr.Code,  11 U.S.C.A. § 1129(b).

[12] Judgment 228 ☞636

228 Judgment
    228XIV Conclusiveness of Adjudication
        228XIV(A) Judgments Conclusive in General
            228k635 Courts or Other Tribunals Rendering Judgment
                228k636 k. In General. Most Cited Cases
Collateral estoppel principles apply in bankruptcy proceedings.

[13] Federal Courts 170B ☞420

170B Federal Courts
    170BVI State Laws as Rules of Decision
        170BVI(C) Application to Particular Matters
            170Bk420 k. Judgments. Most Cited Cases
Where the prior judgment was rendered by a federal court, federal principles of collateral estoppel apply.

[14] Judgment 228 ☞634

228 Judgment
    228XIV Conclusiveness of Adjudication
        228XIV(A) Judgments Conclusive in General
            228k634 k. Nature and Requisites of Former Adjudication as Ground of Estoppel in General. Most Cited Cases
To collaterally estop a party from relitigating an issue, the movant must show that: (1) the issue sought to be precluded is the same as the one involved in the prior action; (2) the issue must have been actually litigated; (3) the issue must have been determined by a valid and final judgment; and (4) the determination must have been essential to the prior judgment.

*512 R. Bruce McNew, Taylor & McNew LLP, Greenville, DE, for Plaintiffs.
H. Adam Prussin, Pomerantz Haudek Block Grossman & Gross LLP, New York City, for Plaintiffs.
Russell C. Silberglied, Richards, Layton & Finger, P.A., Wilmington, DE, for NeighborCare, Inc.
Michael F. Walsh, Weil, Gotshal & Manges, LLP, New York City, for NeighborCare, Inc.
Steven K. Kortanek, Klehr, Harrison, Harvey, Branzburg & Ellers LLP, Wilmington, DE, for Goldman, Sachs & Co.
Barry Sher, Fried, Frank, Harris, Shriver & Jacobson LLP, New York City, for Goldman, Sachs & Co.
Daniel K. Hogan, Wilmington, DE, for Highland Capital Mgmt., LLP.
Robert S. Brady, Young, Conaway, Stargatt & Taylor LLP, Wilmington, DE, for George V. Hager.
Menachem O. Zelmanovitz, Morgan, Lewis & Bockius LLP, New York City, for Mellon Bank.
*513 Teresa K.D. Currier, Klett Rooney Lieber & Schorling, Wilmington, DE, for Mellon Bank.

AMENDED OPINION ON JOINT MOTION TO DISMISS

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

324 B.R. 510
324 B.R. 510
(Cite as: 324 B.R. 510)

<u>JUDITH H. WIZMUR</u>, Bankruptcy Judge.
The defendants jointly move to dismiss the plaintiffs' complaint in its entirety because it is time-barred under section 1144, because it violates the order of confirmation, because it is barred by the doctrines of res judicata and/or collateral estoppel, and because it fails to assert a claim for fraud with specificity as required by Rule 9(b). I conclude that plaintiffs' complaint as against the debtor is barred by operation of section 1144 and the order of confirmation, and must therefore be dismissed. Plaintiffs' complaint as against the remaining defendants is barred by the doctrines of res judicata and collateral estoppel. The defendants' motion is granted, and the complaint is dismissed in its entirety.

FACTS

The Genesis Health Ventures, Inc. ("Genesis") and Multicare AMC, Inc. ("Multicare") debtors filed separate Chapter 11 bankruptcy cases on June 22, 2000. The debtors' Joint Plan of Reorganization was filed on July 6, 2001 and confirmation hearings were held on August 28 and 29, 2001. Debtors' plan was confirmed on September 12, 2001 by written opinion. See *In re Genesis Health Ventures, Inc.*, 266 B.R. 591 (Bankr.D.Del.2001), appeal dismissed, 280 B.R. 339 (D.Del.2002).

Two and a half years later, plaintiffs filed this complaint on January 24, 2004 in the Supreme Court for the State of New York. The complaint was removed to the United States District Court for the Southern District of New York, transferred to the United States District Court for the District of Delaware, and then referred to the Delaware bankruptcy court.

The plaintiffs are comprised of 275 investors who, on October 2, 2001, collectively held 55% of all debentures ("Senior Subordinated Notes") issued by Genesis, with a face value in excess of $205 million. The debentures were subordinated to about $1.3 billion in senior debt. Defendant Goldman Sachs & Co. purchased about half of the Genesis senior debt participations shortly before the debtors' bankruptcy filings. Goldman became the largest senior creditor of both Genesis and Multicare, and served as the underwriter for the DIP and exit financing.

Plaintiffs allege that Goldman, Highland Capital Partners, another senior debt participant, and Mellon Bank N.A., the debtors' lead senior lender bank, ("Senior Lenders") "conspired with Genesis management to put the Company into bankruptcy and 'cram down' a reorganization plan that would eliminate junior creditors (including plaintiffs) and existing stockholders, while conveying virtually total ownership of Genesis to the senior creditors." Complaint at 8. The confirmed plan merged Genesis and Multicare, extinguished the Old Common Stock of both companies, and distributed about 94% of the newly issued stock of the reorganized, combined entities to the Senior Lenders. The junior creditors, including the Genesis Senior Subordinated Note claimants, received an approximate dividend of 7.34%, plus New Warrants.

Plaintiffs allege that the enterprise value of Genesis was misrepresented at confirmation as being about $1.3 billion. The enterprise value was based on a multiple of the Genesis budgeted EBITDA (earnings before interest, taxes, depreciation, and amortization) for 2001, which was projected at $158 million, down from between $205 and $210 million for the fiscal years *514 1998 and 1999. In August 2001, shortly before the confirmation hearing, the debtor presented its historical LTM EBITDA (last twelve months EBITDA) for the preceding 12 month period, which supported the $158 million projection. Plaintiffs contend that "both the Budgeted EBITDA projections and the LTM EBITDA were 'cooked', to depress EBITDA and thereby depress the valuation of Genesis." Complaint at 11. Because the LTM EBITDA was presented only six days prior to the confirmation hearing, plaintiffs complain that they were unable to challenge the EBITDA in a timely manner.

Plaintiffs assert causes of action for fraud, conspiracy to commit fraud and gross negligence. More specifically, plaintiffs assert in Count One of their complaint that
Genesis and Hager [the Chief Financial Officer of Genesis] were directly involved in the preparation of all the misleading financial information that led to the under-valuation of Genesis.
Goldman, Mellon and Highland controlled this entire process, periodically reviewing in detail the financial information prepared by Genesis management on a monthly basis, to assure that EBITDA data were matching the 'target' of about $158 million, and that sufficient adjustments were being made to the budgeted EBITDA to bring about the same result. They offered enormous financial inducements to Genesis management to perpetrate this fraud, and they were the principal beneficiaries of the fraud. Goldman also took all the steps needed to freeze MC's cash and lines of credit so that it could not pay

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.