324 B.R. 510
324 B.R. 510
(Cite as: 324 B.R. 510)

its obligations to Genesis, thus forcing Genesis to draw down almost $200 million from its DIP lending facility.

Complaint at ¶¶ 184, 185. In support of these allegations, plaintiffs contend that Genesis management improperly decreased the debtors' EBITDA by deducting a host of unsubstantiated and unwarranted items.

In Count Two, plaintiffs allege that Goldman, Mellon and Highland were aware that the financial information being released by Genesis, and upon which the reorganization valuation of the Company would be determined, was false and misleading and had been designed to defraud the junior creditors of Genesis, and would be relied upon by the plaintiffs and the Court.
Goldman, Mellon and Highland conspired with, orchestrated and rewarded Genesis and its management, and in particular defendant George Hager, for perpetrating this fraud.

Complaint at ¶¶ 191, 192. In Count Three, plaintiffs allege thatBy virtue of their positions as debtor in a bankruptcy proceeding, as the chief financial officer of the debtor, as senior creditors of the debtor, and as proponents of a bankruptcy reorganization plan that would drastically affect the junior creditors, defendants owed the junior creditors of Genesis a duty of care, including the duty to provide fair, accurate and complete information.
Defendants violated that duty of care by disseminating false and misleading financial information that misled the bankruptcy court and the plaintiffs concerning the true financial condition and prospects of Genesis. Defendants' conduct was such an extreme and severe departure from due care as to constitute gross negligence, and was therefore not released as a result of the Genesis bankruptcy.

Complaint at ¶¶ 195, 196. Plaintiffs believe that if Genesis had been properly valued, there would have been sufficient value for the subordinated debenture holders to recover the full par value of their *515 debentures. They seek an award of damages in an amount not less than $200 million, plus interest, costs and fees.

Defendants view plaintiffs' complaint as another attempt to alter the distribution to creditors provided for under the debtors' confirmed Chapter 11 plan. Allowing the plaintiffs a recovery against the debtors in this action "would have the direct effect of diluting the value of its common stock distributed to its

former senior creditors, and a judgment against the Senior Lenders named in this suit would have the effect of transferring distributions made to them under Plan into the hands of the subordinated debentureholders." Motion to Dismiss at 4.

DISCUSSION

Pursuant to Federal Rule of Bankruptcy Procedure 7012(b), Rule 12(b)(6) of the Federal Rules of Civil Procedure, dismissal of a complaint for failure to state a claim upon which relief may be granted, is available to defendants in adversary proceedings filed in bankruptcy cases. To determine such a motion, the court must accept all of the facts pleaded in the complaint as true, and draw all reasonable inferences in plaintiff's favor. In re Great Atlantic & Pacific Tea Co., Inc. Securities Litigation, 103 Fed.Appx. 465, 467-68 (3d Cir.2004); Mele v. Federal Reserve Bank of New York, 359 F.3d 251, 253 (3d Cir.2004); Doug Grant, Inc. v. Greate Bay Casino Corp., 232 F.3d 173, 183 (3d Cir.2000), cert. denied, 532 U.S. 1038, 121 S.Ct. 2000, 149 L.Ed.2d 1003 (2001). The focus of the court on a 12(b)(6) motion "is whether under any reasonable reading of the pleadings, plaintiff may be entitled to relief." Simon v. Cebrick, 53 F.3d 17, 19 (3d Cir.1995). See also Haynes v. Metropolitan Life Ins. Co., 94 Fed.Appx. 956, 958 (3d Cir.2004) (court "may dismiss the complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations").

On this joint motion to dismiss the plaintiffs' complaint in its entirety, the defendants contend that no relief could be granted under any set of facts that could be proved consistent with the allegations because the plaintiffs' complaint:
(1) is time-barred under 11 U.S.C. § 1144;
(2) violates the order of confirmation and discharge injunction;
(3) is barred by the doctrine of res judicata;
(4) is barred by the doctrine of collateral estoppel, and
(5) fails to assert a claim for fraud with specificity as required by Fed.R.Civ.P. 9(b).

*I. Plaintiffs' Complaint is Time-Barred Under 11 U.S.C. § 1144*

[1] The Confirmation Order approving the debtors' reorganization plan was entered on September 12,

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

324 B.R. 510
324 B.R. 510
(Cite as: 324 B.R. 510)

2001. The plaintiffs' complaint was filed on January 24, 2004.

[2] Section 1144 provides that, "[o]n request of a party in interest at any time before 180 days after the entry of the order of confirmation, and after notice and a hearing, the court may revoke such order if and only if such order was procured by fraud." 11 U.S.C. § 1144. This six month time limitation is strictly construed, and courts have enforced the bar even where fraud is later discovered beyond the deadline. *See, e.g., In re Midstate Mortgage Investors, Inc.,* 105 Fed.Appx. 420, 423 (3d Cir.2004); *In re Orange Tree Assocs., Ltd.,* 961 F.2d 1445, 1447 (9th Cir.1992) ("courts have held uniformly that strict compliance with section 1144 is a prerequisite to relief"); *In re Space Bldg. Corp.,* 206 B.R. 269, 273 (D.Mass.1996). *516 The allegation by the plaintiffs that they had insufficient opportunity to uncover the fraud prior to the confirmation of the debtors' plan, and only discovered the alleged fraud by various means after the expiration of the six month limitation, does not alter the effectiveness of the bar here.

Instead, the threshold question is whether the plaintiffs' quest for money damages from the debtors and the other defendants, based on allegations of pre-confirmation fraud, constitutes a collateral attack on the confirmation order, which would be time-barred, or whether it represents a separate cause of action against the various defendants, which is not proscribed by § 1144.

On its face, the statute pertains only to the revocation of a confirmation order procured by fraud. Some courts have viewed fraud allegations seeking monetary damages, made against the debtor and others associated with a confirmed plan of reorganization, to constitute an impermissible collateral attack on a debtor's reorganization which would "allow [the plaintiffs] to do indirectly what they no longer may do directly because of 11 U.S.C. § 1144." *Hotel Corp. of the South v. Rampart 920, Inc.,* 46 B.R. 758, 770-71 (E.D.La.1985), aff'd, 781 F.2d 901 (5th Cir.1986).

[3] Other courts adopt a more nuanced approach to the applicability of § 1144, examining whether the case involves an attempt to " 'redivide the pie' by a disgruntled participant in the Plan," or whether the relief sought would upset the confirmed plan. *In re Coffee Cupboard, Inc.,* 119 B.R. 14, 19 (E.D.N.Y.1990) (citing to *In re Emmer Bros. Co.,* 52 B.R. 385, 392 (D.Minn.1985)) If a judgment awarding the plaintiff money damages would not

ultimately affect the plan distributions made to the creditor body, the cause of action premised on fraud may proceed. For example, in *In re Circle K Corp.,* 181 B.R. 457 (Bankr.D.Ariz.1995), the complaint alleged improper conduct, defective disclosures and erroneous valuation information in connection with the confirmation of the debtor's plan of reorganization. The court determined that although the plaintiffs were clearly "disgruntled creditors", *Id.* at 462, the cause of action may proceed because "the Court can fashion a remedy that does not upset the confirmed plan, i.e., monetary damages." *Id.* The court reflected that the remedies sought are intended "to redress harm and divest alleged tort-feasors of wrongfully obtained property, without affecting innocent parties and creditors." *Id.* at 459. Similarly, in *Emmer,* an independent cause of action against the debtor premised on an undisclosed asset could proceed because an adjudication of the dispute would not upset the confirmed plan. And in *In re Crown-Globe, Inc.,* 107 B.R. 60 (Bankr.E.D.Pa.1989), causes of action based on conversion, intentional misrepresentation and negligent misrepresentation survived a motion to dismiss based on § 1144, whereas a quest for equitable subordination did not. The equitable subordination count sought to shift the priority of claims as they were paid under debtor's confirmed plan, and therefore represented an untimely attempt to revoke the confirmation of the debtor's Chapter 11 plan. *Id.* at 62. The court concluded that the equitable subordination count was time barred under § 1144.

Applying these concepts to this case, I conclude that the plaintiffs' causes of action asserted against the debtor Genesis Health Ventures, Inc. must be dismissed as time-barred under 11 U.S.C. § 1144.[FN1] Because money damages, rather than a *517 revocation of the confirmation order, are sought by the plaintiffs against the debtor, it may appear at first blush that section 1144 does not apply. However, the impact of a significant money damages award against the debtor would be to "redivide the pie", to upset the confirmed plan, and to negatively affect innocent parties and creditors who received value in the forms of new equity and new debt in the reorganized debtor. Section 1144 was designed to limit challenge to the viability of the reorganized entity emerging from Chapter 11, to fix the liabilities of the reorganized debtor and to provide certainty and finality to the confirmation process.

FN1. The causes of action asserted against

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

the other defendants, including the Senior Lenders and Hager, are discussed infra in the context of the applicability of the doctrines of res judicata and collateral estoppel.

[A] Chapter XI proceeding [is] focused towards rehabilitating a business, which if successful, is to the benefit of all persons who had dealings with the debtor. Such plans are not easily devised, and once accomplished a short time for challenging such plan is necessary to keep alive the potential life of that business. Uncertainty of continued operations, injected by a Sword of Damocles in the form of fraud allegations which can be filed at any time in the future, would render meaningless the whole purpose of a Chapter XI proceeding.
*In re Newport Harbor Assocs., 589 F.2d 20, 24 n. 6 (1st Cir.1978).* FN2 *See also In re Orange Tree Assocs., Ltd., 961 F.2d 1445, 1447-48 (9th Cir.1992).*

> FN2. In *Newport Harbor,* the court interpreted section 386 of the Bankruptcy Act, 11 U.S.C. § 786 (1976) and Chapter XI Rule 11-41 of the Rules of Bankruptcy Procedure. Section 386 and Rule 11-41 are substantively identical to section 1144 of the Bankruptcy Code.

I conclude that as to the debtor, the complaint is time-barred by operation of 11 U.S.C. § 1144.

## II. Order of Confirmation, Discharge and Injunction

[4] An alternate ground for the dismissal of the causes of action asserted against the debtor is found in the discharge and injunction provisions contained in the debtors' confirmed plan of reorganization. *See* Order Confirming the Debtors' Joint Plan of Reorganization entered September 20, 2001. In paragraphs 10.2 and 10.3 of the debtors' plan of reorganization, FN3 all claims against the debtors that *518 occurred prior to the Effective Date were discharged, and all claimants were permanently enjoined from prosecuting such claims.

> FN3. 10.2. Discharge of Claims and Termination of Equity Interests.
> Except as otherwise provided herein or in the Confirmation Order, the rights afforded in the Plan of Reorganization and the payments and distributions to be made

hereunder shall discharge all existing debts and Claims, and terminate all Equity Interests, of any kind, nature, or description whatsoever against or in the Debtors or any of their assets or properties to the fullest extent permitted by section 1141 of the Bankruptcy Code. Except as provided in the Plan of Reorganization, upon the Effective Date, all existing Claims against the Debtors and Equity Interests shall be precluded and enjoined from asserting against the Reorganized Debtors, or any of their assets or properties, any other or further Claim or Equity Interest based upon any act or omission, transaction, or other activity of any kind or nature that occurred prior to the Effective Date, whether or not such holder has filed a proof of claim or proof of equity interest....
10.3. Discharge of Debtors.
Upon the Effective Date and in consideration of the distributions to be made hereunder, except as otherwise expressly provided herein, each holder (as well as any trustees and agents on behalf of each holder) of a Claim or Equity Interest and any affiliate of such holder shall be deemed to have forever waived, released, and discharged the Debtors, to the fullest extent permitted by section 1141 of the Bankruptcy Code, of and from any and Claims, Equity Interests, rights and liabilities that arose prior to the Effective Date. Upon the Effective Date, all such persons shall be forever precluded and enjoined, pursuant to section 524 of the Bankruptcy Code, from prosecuting or asserting any such discharged Claim against or terminated Equity Interest in the Debtors.
Appendix of Exhibits to Defendants' Joint Motion to Dismiss, Exhibit K at 30.

In the Order of Confirmation, a finding was entered that "the release, exculpation and injunction provisions contained in the plan are fair and equitable, are given for valuable consideration, and are in the best interests of the debtors and their chapter 11 estates, and such provisions shall be effective and binding upon all persons and entities." *See* Order of Confirmation, September 20, 2001, ¶ 58a at 37. While modification of the exculpation provisions of the plan was required and accomplished, *see, e.g.,* Exhibit B to the Order of Confirmation detailing the required amendments, sections 10.2 and 10.3 of the plan remained intact and

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

became effective. The plaintiffs' contention, without specific citation, that the "Confirmed Plan expressly does not release any claim against the debtors for willful misconduct or gross negligence in *post-petition* matters" [FN4] is not substantiated.

> FN4. Plaintiffs' Memorandum in Opposition to Motion to Dismiss at 53.

The causes of action asserted by the plaintiffs against the debtor must be dismissed in their entirety on the ground that the final Order of Confirmation acts to discharge the reorganized debtor of all such claims, and enjoins the plaintiffs from prosecuting their claims.

### III. *Res Judicata*

[5] Defendants Goldman, Mellon, Highland Capital and Hager seek to dismiss plaintiffs' complaint on the ground that it is barred by res judicata. They believe that the plaintiffs' "challenge to valuation and to the distribution to creditors that is central to the instant litigation is directly at odds with the Plan, and the claims Plaintiffs assert against the proponents of the Plan directly contradict the allocations determined by the Plan and the related determinations of enterprise value." Defs' Joint Reply at 6.

In response, plaintiffs contend that "[i]n the Third Circuit, the res judicata doctrine is narrowly applied where the prior judgment was issued in a bankruptcy proceeding." Memo in Opposition at 42 (citing to *Eastern Minerals & Chems. Co. v. Mahan*, 225 F.3d 330, 337 (3d Cir.2000)). They contend that "[u]nder *Eastern Minerals* ..., it is irrelevant what Plaintiffs could have done, unless the claim that they actually litigated was the same as their current claims: 'Claim preclusion only bars claims arising from the same cause of action previously raised, not every conceivable claim that could have been brought in the context of a bankruptcy case over which the court would have had jurisdiction.' " Memo in Opposition at 46 (quoting 225 F.3d at 337). The plaintiffs contend further that res judicata does not bar the complaint herein because section 10.6 of the debtors' confirmed plan expressly reserves the plaintiffs' right to sue designated parties for willful misconduct or gross negligence in connection with the Chapter 11 process. Lastly, the plaintiffs' invoke the fraud exception to res judicata to contend that the doctrine cannot serve to bar this complaint.

Most, if not all, of the plaintiffs herein [FN5] vigorously litigated issues involving the debtors' plan of reorganization prior to confirmation. Charles Grimes, a plaintiff in this action and holder of approximately *519 $20 million in subordinated debt, filed an objection to the adequacy of the debtors' Disclosure Statement. He claimed that the debtors' Plan "grossly understate[d] the enterprise value" of the debtors, and that "there is considerable value in Genesis that the Plan and Disclosure Statement improperly and unjustifiably conceal, release and ultimately strip away from holders of the Genesis 2005 Notes ... for no consideration-for the benefit of the Senior Lenders, the Debtors' Officers and Directors, and the Multicare Creditors." Defs' Exh. A. at 4. He expressed "the concern that the Plan as proposed is only in the best interest of the Senior Lenders and the Debtors' Officers and Directors-who have an incentive to minimize assets and going concern value at this time so as to enable them to capture all present and future value for themselves at the expense of the Noteholders and general unsecured creditors." *Id* at 3-4.

> FN5. The plaintiffs allege that as a group, prior to confirmation of the debtors' reorganization plan, they held Genesis Senior Subordinated Notes with a face value in excess of $205 million. Of that amount, Grimes held $20 million and GMS Group LLC, a brokerage firm, acted on behalf of holders of $170-180 million during the confirmation process. *See* note 6 *infra*.

Grimes' concerns in this regard are repeated in his objection to the confirmation of the debtors' plan, as a challenge to the good faith of the plan, and as a challenge to the compliance by the plan with the fair and equitable requirements of 11 U.S.C. § 1129(b). Defs' Exh. E at 5. Grimes referred to allegations in a motion for the appointment of a trustee filed by the Multicare Creditors' Committee, which was withdrawn prior to confirmation. The motion contained allegations respecting the manner in which the Senior Lenders and the debtors' officers and directors dealt with the debtors in the year prior to the filing of the petition and during the course of the debtors' bankruptcy cases and plan promulgation. Defs' Exh. A at 5. "These allegations raise significant concerns about conflict of interest, control over the Debtors and the plan process, potential fraudulent conveyance claims and the possibility that all or a portion of the claims of the Senior Lenders should be equitably subordinated. While the Multicare

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

324 B.R. 510                                                    Page 9
324 B.R. 510
(Cite as: 324 B.R. 510)

Creditors' Committee has now withdrawn its Trustee
Motion in exchange for a distribution under the Plan,
that withdrawal does not moot these allegations." *Id*
at 5-6.

Further, in his objection to confirmation, Grimes
characterized

[t]he central feature of the Plan [as] a dramatic
misvaluation and undervaluation of the reorganized
entity for purposes of Plan distributions. As will be
adduced through evidence to be presented at the
Confirmation Hearing, the Plan and Disclosure
Statement grossly understate-and the Debtors employ
incorrect methodologies to determine-the enterprise
value of the merged Reorganized Genesis and, hence,
the value of the securities to be distributed under the
Plan. This results in ownership going
overwhelmingly to the Senior Lenders, allowing
them to capture for themselves the substantial upside
potential that appropriately should be distributed
equitably at the front end at confirmation for the
benefit of *all* Genesis creditors.
The Senior Lenders will recover more than 100% of
their allowable claims, while junior creditors receive
mere pennies on the dollar for their claims.

Defs' Exh. E at 2.

GMS Group LLC  [FN6], which acted during the
Genesis confirmation hearings on behalf*520  of
holders of approximately $170-$180 million in junior
debt, filed a similar objection to the debtors'
Disclosure Statement, and received permission from
the court to include a letter in the debtors' solicitation
package urging creditors to vote against the plan.
On August 17, 2001, GMS filed its objection to the
debtor's Plan, contending that the debtors
"significantly undervalued their business enterprise
by utilizing an unreasonably low EBITDA multiplier,
and applying this multiplier to an EBITDA that is
undisputedly out of date." Defendants' Exh. D at 3.
GMS urged that an "accurate and current EBITDA"
be used. *Id.* at 4. Responses to the Grimes and GMS
objections were filed by the debtors, the Senior
Lenders and the Genesis Creditors' Committee.

> FN6. "GMS" as referred to in this opinion
> and in the opinion on confirmation refers to
> the investment brokerage firm identified in
> the various pleadings as "GMS Group
> LLC". In paragraph 13 of the Complaint,
> plaintiffs identify "GMS Investment
> Advisors, Inc." as the brokerage firm of
> "many of the plaintiffs". The description of

the holdings of GMS Investment Advisors in
the Complaint and of GMS Group LLC in
their objections to confirmation appear to be
identical. The difference in names has not
been highlighted by any of the parties.

The debtors' plan was filed on July 6, 2001. Prior to
confirmation hearings on August 28 and 29, 2001,
extensive discovery was conducted by Grimes and
GMS. Six valuation experts exchanged reports,
including two experts retained by Grimes and GMS.
Twelve depositions were taken, including the
deposition of defendant George Hager, then Chief
Financial Officer of the debtors, as well as a
representative of the defendant Goldman.
Thousands of documents were produced to GMS and
Grimes.

At the two-day confirmation hearings, eight
witnesses, including the six valuation experts,
testified. GMS and Grimes raised many of the issues
reflected in the complaint, including various
EBITDA assumptions and adjustments. *See In re
Genesis Health Ventures, Inc., 266 B.R. 591
(Bankr.D.Del.2001)*. Among the objections litigated
by Grimes and GMS were the following:
1. The good faith of the proposed plan was
challenged. The objectors suggested "that the plan
only serves the interests of the Senior Lenders and
the debtors' directors and officers, all of whom have
incentive to minimize the going concern value at this
time to enable them to capture all present and future
value for themselves at the expense of subordinated
debt and general unsecured creditors." *Id.* at 609-10.
Based on the proofs presented, I concluded that the
debtors had met their burden of proof to establish that
their plan of reorganization was proposed in good
faith.
2. In the context of § 1129(b)(2) "fair and equitable"
requirements, the objectors proposed that the plan
violated the absolute priority rule because Senior
Lenders were receiving more than full compensation
for their claims. They claimed that the reorganized
enterprise value of Genesis and Multicare, either
individually or combined, provided a recovery to
Senior Lenders that was greater than 100% of their
claims. *Id.* at 612. The objectors produced various
documents and expert testimony to challenge
valuations produced on behalf of the plan. They
specifically attacked the level of projected EBIDTA,
and the approximate multiple to apply to EBIDTA to
arrive at the debtors' reorganized enterprise value, as
too low. In my decision, I rejected the opinions of
the objectors' experts as "inflated and unrealistic",
while I affirmed as reasonable the valuations offered

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

324 B.R. 510
324 B.R. 510
(Cite as: 324 B.R. 510)

by the plan proponents' experts.
3. Management incentives contained in the plan were challenged as not fair and equitable. The distributions to management proposed under the plan were contended to be "in essence on account of [management's] prepetition equity interests, whereby other equity holders will receive *521 nothing." _Id. at 616._ This challenge was also rejected.
4. The objectors challenged the proposed merger of the reorganized Genesis and Multicare entities, claiming that the merger "misallocated value from Genesis to Multicare, to the detriment of the Genesis creditors." _Id. at 618._ I overruled this objection as well, concluding that "the allocation of Genesis New Common Stock is based strictly on the relative equity values of Genesis and Multicare on a pro rata basis, assuming the new capital structure proposed in the plan." _Id. at 619._

My opinion confirming the debtors' plan was issued on September 12, 2001, and the Confirmation Order was entered on September 20, 2001. On September 14, 2001, Grimes filed a motion to amend the findings in the opinion, particularly with regard to the valuation analysis. The motion was denied. An appeal to the District Court was dismissed on June 14, 2002, and Grimes' appeal to the Third Circuit was ultimately dismissed on December 16, 2002. GMS did not appeal the Confirmation Order.

[6] [7] The application of res judicata, or claim preclusion, "bars a party from litigating a claim that it could have raised or did raise in a prior proceeding in which it raised another claim based on the same cause of action." _CoreStates Bank, N.A. v. Huls Am., Inc._, 176 F.3d 187, 191 (3d Cir.1999). _See also Board of Trustees of Trucking Employees Welfare Fund, Inc. v. Centra_, 983 F.2d 495, 504 (3d Cir.1992). The use of claim preclusion "avoids 'the expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions.' " _EEOC v. United States Steel Corp._, 921 F.2d 489, 492 (3d Cir.1990) (quoting _Montana v. United States_, 440 U.S. 147, 153-54, 99 S.Ct. 970, 973-74, 59 L.Ed.2d 210 (1979)). _See also General Elec. Co. v. Deutz AG_, 270 F.3d 144, 157-58 (3d Cir.2001) ("res judicata or claim preclusion is designed to avoid piecemeal litigation of claims arising from the same events"). The party seeking the application of res judicata bears the burden of showing that it applies. _General Elec. Co._, 270 F.3d at 158; _United States v. Athlone Indus., Inc._, 746 F.2d 977, 983 (3d Cir.1984).

Res judicata, or claim preclusion, requires:
(1) a final judgment on the merits in a prior suit involving;
(2) the same parties or their privities; and
(3) a subsequent suit based on the same cause of action.

_CoreStates_, 176 F.3d at 194 (quoting _Centra_, 983 F.2d at 504). _See also Saudi v. Acomarit Maritimes Services, S.A._, 114 Fed.Appx. 449, 454 (3d Cir.2004); _EEOC v. United States Steel Corp._, 921 F.2d 489, 493 (3d Cir.1990); _United States v. Athlone Indus., Inc._, 746 F.2d 977, 983 (3d Cir.1984).

The first two elements of claim preclusion are clearly evident on this record. The Confirmation Order constitutes a final judgment on the merits. _CoreStates Bank_, 176 F.3d at 194 ("The principle of claim preclusion applies to final orders overruling objections to a reorganization plan in bankruptcy proceedings just as it does to any other final judgment on a claim."). All of the plaintiffs, as creditors of the debtors, were parties to the bankruptcy case and are bound by the Confirmation Order under 11 U.S.C. § 1141(a) ("the provisions of a confirmed plan bind ... any creditor ... whether or not such creditor ... has accepted the plan"). _See also_ 11 U.S.C. § 1109(b) ("A party in interest,*522 including ... a creditor ... may raise and may appear and be heard on any issue in a case under this chapter."). It is noted as well that the objector GMS, representing many of the plaintiffs herein, was a member of the Genesis Creditors' Committee.

As to the defendants, the named Senior Lenders, including Goldman, Mellon and Highland Capital, were parties to the bankruptcy process. The status of defendant George V. Hager, the debtors' Chief Financial Officer, as a party is less certain. Hager was not a party in interest in the debtors' bankruptcy case. He was deposed prior to confirmation, and testified at the confirmation hearings. As an important part of the debtors' management team, Hager no doubt participated actively in the bankruptcy case in his capacity as an officer of the debtors, but not in his capacity as an individual. I conclude that the named Senior Lenders were parties to the bankruptcy case for claim preclusion purposes, but that Hager was not.

As to the third requirement for claim preclusion, whether a claim asserted in a bankruptcy case and a later claim asserted in a separate complaint are based

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

324 B.R. 510                                                Page 11
324 B.R. 510
(Cite as: 324 B.R. 510)

on the same "cause of action," the Third Circuit has explained:

Claim preclusion doctrine must be properly tailored to the unique circumstances that arise when the previous litigation took place in the context of a bankruptcy case. Difficult as it may be to define the contours of a cause of action in a bankruptcy setting, we conclude that a claim should not be barred unless the factual underpinnings, theory of the case, and relief sought against the parties to the proceeding are so close to a claim actually litigated in the bankruptcy that it would be unreasonable not to have brought them both at the same time in the bankruptcy forum.

*Eastern Minerals,* 225 F.3d at 337-38. The Court explained further that... one does not get a second bite at the proverbial apple simply because the first bite was taken in a bankruptcy case. *See Huls,* 176 F.3d at 202 (citations omitted). Similarly, we note that care must be taken in determining whether the first bite was actually taken such that it would preclude the second. *Huls* does not stand for the proposition that nondebtors must assert all potential claims in a bankruptcy case or be forever barred .... Rather, *Huls* helps us frame the key question that the parties agree we should ask whenever the affirmative defense of claim preclusion is raised on the basis of a prior bankruptcy confirmation order, namely, whether the later claim arises from the same cause of action as a claim that was actually asserted or interposed in the earlier bankruptcy case and resolved in the confirmation order.

*Id.* at 339. *See also In re Justice Oaks II, Ltd.,* 898 F.2d 1544, 1552 (11th Cir.1990) (Where the claims raised in a subsequent complaint were already raised, or could have been raised as an objection to confirmation, the doctrine of claim preclusion bars the relitigation of these claims).

Here, "the factual underpinnings, theory of the case, and relief sought" of the claim against the named Senior Lenders all confirm that the claim asserted here "arises from the same cause of action as a claim that was actually asserted or interposed in the earlier bankruptcy case and resolved in the confirmation order." *Eastern Minerals,* 225 F.3d at 339. Plaintiffs are seeking to relitigate a cause of action that proposes a revaluation of the debtors' enterprise to engineer a different distribution scheme. The factual underpinnings of this complaint, involving the alleged undervaluation of the enterprise value of the *523 debtors by the debtors' officer, Hager, and the Senior Lenders to eliminate junior creditors and receive most of the ownership of the reorganized

companies, and the alleged participation by the Senior Lenders in presenting misleading and false financial information to the court in the course of confirmation hearings, are so close to the claim actually litigated at confirmation that it would be unreasonable not to have brought them both at the same time in the bankruptcy forum. At confirmation, the objectors challenged the debtors' proposed plan on the grounds that the enterprise value of the debtors was dramatically misvalued and undervalued, that the financial information and analyses regarding valuation, particularly the projected EBIDTA used, was incorrect, and that the plan was not proposed in good faith and was not fair and equitable because the distributions impermissibly favored the Senior Lenders and afforded them a recovery in excess of 100%.

In comparing the factual underpinnings of the confirmation hearings and the subsequent complaint filed herein, I recognize that the alleged misconduct on the part of the named Senior Lenders, including control of the debtors, fraudulent manipulation of adjustments to projected and actual EBIDTA numbers, and fraudulent misrepresentations through the Debtors' management to the creditor body, was not specifically asserted at confirmation by the objectors. The objectors contend that these allegations were not made because details of the described conduct did not come to light until after the plan was confirmed. However, accepting as true on this Rule 12(b)(6) motion all of the factual allegations contained in the complaint, I must conclude that the critical factual underpinnings at issue in the complaint, i.e., the correctness of the enterprise valuation of the debtors proposed by the proponents of the plan, are the same in the first and second claims. To revisit the factual underpinnings of the valuation process would be to have a second bite at the proverbial apple, and to open up the possibility of inconsistent decisions between the confirmation order and the resolution of the issues presented.

Similarly, the theories advanced in the two cases coincide. In both instances, the objectors (the plaintiffs herein) focus on the propriety of the adjustments and assumptions underlying the valuation of the debtors. Both claims theorize that due to miscalculations or improper adjustments, as asserted in the first case, or a fraudulent scheme to misrepresent, as asserted in the second case, the Senior Lenders received a greater distribution under the plan than they were entitled to receive, or more than 100% of their claim.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

324 B.R. 510
324 B.R. 510
**(Cite as: 324 B.R. 510)**

As to the relief sought, during the confirmation process, the objectors sought to defeat confirmation of the debtors' proposed plan and to substitute a plan that would recognize a higher enterprise value for the debtors, and would offer a reduced distribution to the Senior Lenders and an increased distribution to the junior creditors, in particular, holders of the Senior Subordinated Notes. In this complaint, the plaintiffs seek monetary damages against the named Senior Lenders, in effect redistributing, at least in part, the recovery received by these parties through the confirmed plan.

To be distinguished factually here is the *Eastern Minerals* case. In *Eastern Minerals*, a creditor aggressively litigated many issues in the case, including the retention of professionals and the rejection of an executory contract. In connection with its objection to the sale of the debtor's assets, the creditor attached a draft complaint seeking equitable subordination of certain claims of the debtor, on the grounds that the affiliates obtained liens against the debtor's assets without *524 any lawful basis, and that they improperly received substantial postpetition payments from the debtor. The complaint did not name the debtor's sole shareholder, Mahan, as a party, but described Mahan's conduct in allegedly preferring the affiliates over other creditors of the debtor. The complaint was never filed, the issues between creditor and the debtor were consensually resolved, and there was never a final judgment on the merits. The debtor's liquidating Chapter 11 plan was confirmed, and the bankruptcy case was closed.

Thereafter, the creditor filed a complaint in state court against Mahan, seeking to recover the remainder of its claim against the debtor from Mahan by piercing the corporate veil on an alter ego theory. The creditor alleged "that Mahan caused [the debtor] to be undercapitalized, 'pilfered' corporate opportunity, and acted to further his own personal ends, thereby abusing corporate privilege and breaching his fiduciary duty and his duty of loyalty." 225 F.3d at 333. The action was removed to federal district court.

In concluding that the doctrine of res judicata did not apply to bar the complaint against Mahan, the Court of Appeals focused on the third element of the doctrine, i.e. whether the same cause of action was actively litigated in the context of the bankruptcy case.

In passing, the court raised questions about whether the first two elements of res judicata, including a final judgment on the merits, and an action including the same parties on their privies, had been established. *Id.* at 336 n. 11. The court noted that the creditor "never litigated any cause of action against Mahan that sought what its current claim would accomplish", *Id.* at 338, that the draft equitable subordination complaint sought to subordinate the claims of the affiliates, with no direct impact on Mahan, and that the issue of Mahan's personal liability for the debt due to the creditor was not raised. *Id.*

In contrast here, GMS and Grimes, representing the plaintiffs in this complaint, actually litigated the same cause of action presented here. At the confirmation of the debtors' reorganization plan, they challenged the distribution to be received by the Senior Lenders on the ground that the enterprise value of the debtors advanced by the plan proponents and supported by the Senior Lenders was "a dramatic misvaluation and undervaluation of the reorganized entity for purposes of Plan distributions." Def's Exh. E at 2. <sup>FN7</sup> The plaintiffs here seek merely to add additional factual bases to the allegation that the debtor was misvalued, with factual claims that the Senior Lenders fraudulently misrepresented and manipulated adjustments to the debtors' EBIDTA in various ways prior to and after the bankruptcy case was filed, which caused the "dramatic misvaluation and undervaluation" of the debtors.

> FN7. The fact that the plaintiffs have singled out three of the Senior Lenders in this complaint, rather than naming all of the Senior Lenders, does not alter the conclusion that the same cause of action against the named Senior Lenders was actually litigated in the context of the bankruptcy case.

[8] Plaintiffs contend that even if the doctrine of res judicata would otherwise apply to bar this litigation, debtors' confirmed plan expressly reserves in section 10.6 the plaintiffs' right to sue the debtors and the senior creditors for "willful misconduct or gross negligence" for "any act or omission in connection with, or arising out of, the Reorganization Cases, the confirmation of the Plan of Reorganization, the consummation of the Plan of Reorganization, or the administration of the Plan of Reorganization or property to be distributed*525 under the Plan of Reorganization". As the defendants correctly point

out, section 10.6 is not a reservation of rights provision and it does not preserve any right to bring claims that would be otherwise barred by the plan and the confirmation order. It does not provide disgruntled creditors an affirmative right to relitigate claims barred by res judicata. It is instead a contractual protection clause designed to protect the debtors and related parties from liability in connection with the bankruptcy, the plan and its consummation, with a carve-out for conduct that is not protected, if the adjudication of liability for that conduct is not barred on some other basis.

Section 10.6 of the Plan, entitled "Exculpation", provides:
Neither the Debtors, any Disbursing Agent, the respective statutory committees of unsecured creditors appointed pursuant to section 1102 of the Bankruptcy Code in the Genesis Reorganization Cases and the Multicare Reorganization Cases, Mellon Bank, N.A., as administrative agent under, and any lender under, the Genesis Senior Lender Agreements, the Multicare Senior Lender Agreements, and the Revolving Credit and Guaranty Agreements described in Section 2.4 hereof, nor any of their respective members, officers, directors, employees, agents, or professionals shall have or incur any liability to any holder of any Claim or Equity Interest for any act or omission in connection with, or arising out of, the Reorganization Cases, the confirmation of the Plan of Reorganization, the consummation of the Plan of Reorganization, or the administration of the Plan of Reorganization or property to be distributed under the Plan of Reorganization, except for willful misconduct or gross negligence.

Plaintiffs are correct that the debtors and the Senior Lenders are vulnerable to liability for their actions by operation of section 10.6, to the extent that their actions constituted "willful misconduct or gross negligence." However, Section 10.6 does not override the doctrine of res judicata where there is nothing in that section or in the plan otherwise which "expressly" reserves the cause of action asserted by the plaintiffs. *See Browning v. Levy, 283 F.3d 761, 774 (6th Cir.2002)* ("Res judicata does not apply where a claim is expressly reserved by the litigant in the earlier bankruptcy proceeding."); *D & K Props. Crystal Lake v. Mutual Life Ins. Co. of N.Y., 112 F.3d 257, 261 (7th Cir.1997)* (to avoid res judicata the reservation must be express and specific; *In re Kelley, 199 B.R. 698 (9th Cir. BAP 1996)* Here, while the Senior Lenders may be sued for willful

misconduct or gross negligence, absent an express reservation, they may defend such a suit by asserting the doctrine of res judicata.

[9] [10] The plaintiffs' last challenge to the application of res judicata to bar the complaint is the so-called fraud exception. The plaintiffs contend that res judicata does not apply here because the defendants obtained the confirmation order by defrauding the court and the plaintiffs. They cite to *McCarty v. First of Georgia Ins. Co., 713 F.2d 609 (10th Cir.1983)* for the proposition that " 'where plaintiff's omission of an item of his cause of action was brought about by defendant's fraud, deception, or wrongful conduct, the former judgment has been held not to be a bar to suit.' " *Id.* at 613 (quoting *Christian v. American Home Assur. Co., 577 P.2d 899, 905 (Okl.1977)*). The Sixth Circuit in *Browning v. Levy, 283 F.3d 761, 770 (6th Cir.2002)* refined the *McCarty* elements to require a showing that there was a "(1) wrongful concealment of material facts that (2) prevented plaintiffs from asserting their claims in the first action." *See also *526 Harnett v. Billman, 800 F.2d 1308, 1313 (4th Cir.1986)* ("An exception to the general principle that lack of knowledge will not avoid the application of res judicata rules is found in cases where fraud, concealment, or misrepresentation have caused the plaintiff to fail to include a claim in a former action."). Concealment in this context requires an affirmative act or contrivance to hinder the plaintiffs' inquiry. " '[M]ere silence or unwillingness to divulge wrongful activities is not sufficient.' " *Browning, 283 F.3d at 770* (quoting *Helmbright v. Martins Ferry, No. 94-4089, 1995 WL 445730, *1 (6th Cir. July 26, 1995)*)

Plaintiffs' final attempt to avoid the application of res judicata fails for two reasons. First, the plaintiffs do not contend that the defendants wrongfully concealed material facts from them prior to confirmation. Rather, the plaintiffs contend that the documents produced by the defendants prior to confirmation were too voluminous to review adequately, that there was insufficient time to review the materials thoroughly, and that the materials were not reviewed to ferret out fraud, because the prospect that fraud had been committed in connection with management assumptions and adjustments to EBITDA was not yet apparent. [FN8] The affirmative act of concealment or contrivance is missing in the plaintiffs' presentation. According to the plaintiffs, all or all of the information establishing the defendants' fraudulent conduct was actually provided in discovery prior to the confirmation hearings, or in various required

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

324 B.R. 510
324 B.R. 510
(Cite as: 324 B.R. 510)

Page 14

filings with the Securities and Exchange Commission after the confirmation hearings. As to the discovery provided prior to the confirmation hearings, at the time of the hearings, the defendants did not request additional time to review the materials and prepare their objections to confirmation. As to the SEC disclosure, the SEC filings were timely filed, and included post confirmation data. Neither the circumstances before or after confirmation justify a finding of wrongful concealment of material facts.

> FN8. The plaintiffs do assert that the defendants wrongfully concealed the fact that a new contract with Mariner "was executed on or about September 24, 2001, but defendants did not disclose it until October 8, 2001, 6 days after the Court approved the Genesis bankruptcy Plan. Genesis did not disclose the extension of the Mariner supply contract until its 10Q for the first quarter of 2002, which was filed 4 months after the confirmation of the Plan." Complaint at 57, ¶ 128. However, debtors' plan of confirmation was approved on September 12, 2001, approximately two weeks prior to the alleged execution of the agreement. Second, the proposed Mariner transaction was specifically addressed in the opinion on confirmation which recognized that the "debtors have entered into a letter of intent to purchase APS. If the purchase is consummated, the potential for an increase in the debtors' EBITDA is strong." 266 B.R. at 613. However, the "actual consummation of the transaction was deemed too speculative for inclusion as a basis for the calculation of a forecast EBITDA for valuation purposes." Id. The potential contract with Mariner was not new or concealed, but rather a recognized and contested adjustment to EBITDA during the confirmation process. Plaintiffs have failed to establish an affirmative act of concealment or contrivance on this record.

Second, the plaintiffs were not prevented from asserting their claims at confirmation. As noted above, their claims focused on the correctness of the enterprise valuation of the debtors. That claim was fully litigated at confirmation. The fraud exception to res judicata does not apply.

I conclude that the plaintiffs' complaint against each of the named Senior Lenders, including Goldman,

Mellon and Highland Capital, is barred by the doctrine of res judicata.

### IV. Collateral Estoppel

[11] In the alternative, the defendants contend that the doctrine of collateral estoppel,*527 or issue preclusion, bars the plaintiffs' complaint. They allege that "the central issue during the confirmation contest was the measure of enterprise value of the Debtors, including the reasonableness of the Debtors' fiscal year 2001 projections. As they did at confirmation, the Plaintiffs, now through the Complaint, have focused on the allegation that the valuation of Genesis has been depressed." Defs. Joint Reply at 12. Defendants insist that the plaintiffs should not be permitted to relitigate the issue of the debtors' valuation simply because the plaintiffs are now asserting fraud.

Plaintiffs respond that the issues asserted in their complaint were never previously adjudicated by the bankruptcy court. "In confirming the Plan, this Court made no finding as to whether defendants artificially depressed the value of Genesis by intentionally, recklessly or with gross negligence submitting false or misleadingly incomplete EBITDA information." Pl. Memo in Opposition at 50. Plaintiffs assert that "nobody challenged the data as false or manipulated." Id.

[12] [13] [14] There is no dispute that collateral estoppel principles apply in bankruptcy proceedings. Grogan v. Garner, 498 U.S. 279, 284 n. 11, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991); Brown v. Felsen, 442 U.S. 127, 139 n. 10, 99 S.Ct. 2205, 2213 n. 10, 60 L.Ed.2d 767 (1979) (applying collateral estoppel to a nondischargeability proceeding). Where the prior judgment was rendered by a federal court, federal principles of collateral estoppel apply. In re Docteroff, 133 F.3d 210, 214 (3d Cir.1997); In re Jordana, 232 B.R. 469, 475 (10th Cir. BAP 1999), aff'd, 216 F.3d 1087 (10th Cir.2000). To estop a party from relitigating an issue, the movant must show that:
(1) the issue sought to be precluded is the same as the one involved in the prior action;
(2) the issue must have been actually litigated;
(3) the issue must have been determined by a valid and final judgment; and
(4) the determination must have been essential to the prior judgment.

In re Docteroff, 133 F.3d at 214. See also Saudi v.

*Acomarit Maritimes Services, S.A.*, 114 Fed.Appx. 449, 454 (3d Cir.2004); *Witkowski v. Welch*, 173 F.3d 192, 199 (3d Cir.1999). All four elements of collateral estoppel are apparent in this case, and serve to bar the complaint against the three Senior Lenders and Hager.

First, the issue sought to be precluded is the same as the one involved in the prior action, i.e. the issue of the appropriate enterprise value of the debtor. As reflected in the opinion on confirmation, "[t]he issue raised by the objectors [was] whether the reorganized enterprise value of Genesis and Multicare, either individually or combined, provides a recovery to holders of claims in Class G2, the Senior Lenders, that is greater than 100% of their claim." *In re Genesis Health Ventures, Inc.*, 266 B.R. at 612. Various valuation methodologies were considered, with agreement among the experts, including the objectors' experts, that the Comparable Company analysis was the most significant way to ascertain the debtors' enterprise value in this case. That analysis is comprised of EBITDA and selecting an appropriate multiplier to apply to EBITDA to arrive at enterprise value.

The plaintiffs contend that the budgeted EBITDA, including the management assumptions underlying the projections, was not challenged at confirmation, and that the primary focus was only on the appropriate multiplier to be selected. The opinion itself, in which I reviewed the objectors' arguments challenging the budgeted EBITDA numbers presented by the plan proponents, belies the plaintiffs' contentions.**528** *Id.* at 613-14. I rejected the proofs submitted by the objectors, including various documents and the cross examination of Hager by the objectors, and accepted the reasonableness of the management projections. The contentions in this complaint that the fraud and manipulation by the Senior Lenders and Hager caused the management projections to be invalid do not alter the basic proposition that the issue of the debtors' enterprise value raised in this complaint is the same issue litigated in the prior action.

Secondly, the issue of enterprise value was actually litigated. This prong of the doctrine of collateral estoppel requires that the party against whom the issue is sought to be estopped must have had a full and fair opportunity to litigate the issue. The plaintiffs contend here that they were deprived of such full and fair opportunity because there was insufficient time prior to confirmation to review the thousands of documents given to them shortly before

confirmation, and that the documents were not reviewed with the possibility in mind that fraud had been committed prior to confirmation. Both arguments must be rejected. Most notably, the plaintiffs, then objectors to the debtors plan, did not object to the discovery schedule or assert at the confirmation hearing that they did not have sufficient time to review the materials. Some concern was raised regarding the speed with which the debtors pursued the presentation of the reorganization plan, the approval of the disclosure statement, and the confirmation hearings, with several objectors contending that the proponents of the plan presented the plan in bad faith. As I noted in the opinion, the suggestion appears to have been that in light of increases in value experienced in the healthcare industry by various companies during the last six months preceding confirmation, the deal that was consummated with the Senior Lenders, which presupposed that the Senior Lenders were undersecured, might fail if the enterprise value of the debtors continued to rise. *Id.* at 609. I declined to assign bad faith motives to the debtors for moving the case to confirmation promptly, and determined that the plan was proposed in good faith. *Id.* at 609-10.

As to the plaintiffs' contention that the documents were not reviewed with the possibility of fraud in mind, the plaintiffs cannot relitigate the same issue on this basis. *See, e.g., Liberty Mutual Ins. Co. v. FAG Bearings Corp.*, 335 F.3d 752, 761 (8th Cir.2003) ("Where the first and second actions are both based on an evaluation of the same historical facts, a litigant seeking to introduce newly discovered evidence otherwise in existence at the time of the first suit may not argue that the facts have changed in the time period between the two actions in order to avoid the preclusive effect of the first decision."); *Klein v. C.I.R.*, 880 F.2d 260, 263 (10th Cir.1989) ("A party may not assert a change in controlling facts when the facts allegedly showing a change in circumstances could have been discovered in the exercise of due diligence."). The plaintiffs' new contention that the Senior Lenders and Hager are guilty of fraud does not present a new issue, but simply represents new factual assertions underlying the issue that was resolved in the first litigation, i.e. the issue of the debtors' enterprise value. *See Yamaha Corp. of America v. United States*, 961 F.2d 245, 257-58 (D.C.Cir.1992), *cert. denied*, 506 U.S. 1078, 113 S.Ct. 1044, 122 L.Ed.2d 353 (1993) ("A new contention is not ... necessarily a new issue.").

The third and fourth elements of collateral estoppel are also established here. The confirmation order

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

324 B.R. 510
324 B.R. 510
(Cite as: 324 B.R. 510)

Page 16

represents a valid and final judgment on the issue of the confirmability of the debtors' plan. The determination of the debtors' enterprise value was essential to the judgment of *529 confirmation to establish the good faith of the plan, and that the plan was fair and equitable under 11 U.S.C. § 1129(b).

I conclude that the plaintiffs' complaint must fail against the Senior Lenders and Hager because the central issue of the complaint is the correct enterprise value of the debtors at the time of the confirmation of the plan, an issue that was litigated in the context of confirmation.

## CONCLUSION

For the foregoing reasons, and by way of summary, I conclude as follows:
1. As to the former debtor, Genesis Health Ventures, Inc., the plaintiffs' complaint must be dismissed as time barred under 11 U.S.C. § 1144, and, in the alternative, on the basis of ¶¶ 10.2 and 10.3 of the debtors' confirmed plan of reorganization.
2. As to the Senior Lenders, the complaint must be dismissed on the basis of the application of defense of res judicata. In the alternative, as to the Senior Lenders and Hager, the plaintiffs' complaint must be dismissed in its entirety on the basis of the defense of collateral estoppel.

The additional arguments advanced by the defendants on their motion to dismiss need not be considered in light of these rulings. The defendants are directed to submit an order in conformance with this opinion.

For the reasons expressed above, plaintiffs' complaint will be dismissed in its entirety.

Bkrtcy.D.Del.,2005.
In re Genesis Health Ventures, Inc.
324 B.R. 510

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE:<br><br>GENESIS HEALTH VENTURES, INC., et al.,<br><br>      Debtors. | C.A. No. 05-CV-427 (KAJ)<br>Related to Case No. 00-2692 (JHW)<br>Jointly Administered |
| RICHARD HASKELL, et al.,<br><br>     Plaintiffs-Appellants,<br><br>  v.<br><br>GOLDMAN, SACHS & CO., et al.,<br><br>     Defendants-Appellees. | Adv. Pro. No.: 04-53375 (JHW) |

## PLAINTIFFS-APPELLANTS' OPENING MEMORANDUM

R. Bruce McNew (# 967)
TAYLOR & McNEW LLP
3711 Kennett Pike, Suite 210
Greenville, DE 19807
Telephone: (302) 655-9200
*Attorneys for Plaintiffs*

*Co-Counsel*:
Stanley M. Grossman
H. Adam Prussin
Leigh Handelman Smollar
POMERANTZ HAUDEK BLOCK
 GROSSMAN & GROSS LLP
100 Park Avenue, 26th Floor
New York, New York 10017
Telephone: (212) 661-1100

Date of Filing: November 21, 2005

## TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

I. NATURE AND STAGE OF THE PROCEEDINGS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II. SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

III. STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    A. The Parties . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    B. The Plan Confirmation Proceedings . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

        1. Defendants Submit Valuations of Genesis Based on "Budgeted"
           And "LTM" EBITDA . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

        2. The Debentureholders' Objections to the Plan . . . . . . . . . . . . . . . . . . . . . . . 9

        3. Discovery . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

        4. The Confirmation Hearing and Approval of the Plan . . . . . . . . . . . . . . . . . . 10

            a. The Court's Valuation of Genesis . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

            b. The Releases in the Plan . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

    C. The Post-Confirmation Discovery Of Defendants' Fraud . . . . . . . . . . . . . . . . . . . 12

        1. Improper Exclusion from EBITDA of All Sales to Mariner . . . . . . . . . . . . 12

        2. Improper Exclusion of 10% of Pharmacy Sales to Manorcare . . . . . . . . . . . 14

        3. Improper Expensing of Excessive Insurance Reserves . . . . . . . . . . . . . . . . . 15

        4. Excessive Deduction for Loss of AGE Institute Business . . . . . . . . . . . . . . 17

        5. Improper Deduction of Non-Recurring Employee and
           Management Retention Bonuses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

        6. Improper Deduction of Non-Recurring Costs for the "First Choice Plan" . 18

        7. Improper Inflation of Pharmacy Cost of Goods Sold . . . . . . . . . . . . . . . . . . 18

    D. The Misrepresentations Come to Light . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

i

III. ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

    A. JURISDICTION AND STANDARD OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . 20

    B. THE STRICT STANDARDS APPLICABLE TO A MOTION TO DISMISS . . . . . 21

    C. RES JUDICATA DOES NOT BAR PLAINTIFFS' ACTION . . . . . . . . . . . . . . . . 21

        1. Res Judicata Is Inapplicable Where the Prior Judgment Was
           Procured by Fraud . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

        2. The Claims for Relief Asserted in the Present Complaint Are Not
           the Same As Those Raised as Objections
           in the Bankruptcy Proceedings . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

    D. COLLATERAL ESTOPPEL IS INAPPLICABLE HERE AS WELL . . . . . . . . . . . 29

    E. THE PLAN DID NOT RELEASE GENESIS FROM THESE CLAIMS . . . . . . . . . 31

        1. The Plan Does Not Discharge or Release Any Claim Based on
           Fraud or Willful Misconduct in the Course of the Confirmation
           Proceedings . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

        2. Because Section 10.6 of the Plan Expressly Preserves These Claims
           It Also Necessarily Limits the Res Judicata Effect of the Plan Confirmation
           . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

    F. SECTION 1144'S LIMITATION PERIOD FOR REVOKING A PLAN
        DOES NOT APPLY TO THIS ACTION FOR MONEY DAMAGES . . . . . . . 35

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

L.R. 7.1.3(a)(G) Opinions Annexed

*In re Bridgeport Holdings, Inc.*, No. 03-12825(PJW)
    2005 Bankr. LEXIS 1552 (Bankr. D. Del. Aug. 12, 2005) . . . . . . . . . . . . . . . . . Annex 1

*Tanaka Bros. Farms, inc. v. Home State Bank,*
    (Civ. A. No. 86-2108-S, 1986 U.S. Dist. LEXIS 17745
    (D. Kan. Nov. 13, 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Annex 2

## TABLE OF AUTHORITIES

**CASES**                                                                    Page

*A.B.H Investments, Inc. v. Narven Enters., Inc.*, No. D040361,
    2003 Cal. App. Unpub. LEXIS 11126, 2003 WL 22796049
    (Cal. App. 4th Dist. filed Nov. 25, 2003) (Not Reported
    in Cal. Rptr. 3d) *review denied*, (Mar. 24, 2004) ........... 23 n.12, 28 n.15, 36 n.20

*A.J. Masi Electric Co. v. Marron & Sipe Bldg. & Contracting Corp.*,
    574 A.2d 1323 (Conn. App. Ct. 1990) ................................. 34 n.18

*In re AmeriServe Food Distrib. Inc.*, 267 B.R. 668 (D. Del. 2001) .................. 23 n.12

*In re Ampace Corp.*, 279 B.R. 145 (Bankr. D. Del. 2002) ............................. 35

*In re Ariz. Fast Foods, LLC*, 299 B.R. 589 (Bankr. D. Ariz. 2003) ................. 35 n.19

*In re Associated Vingage Group, Inc*, 283 B.R. 549
    (B.A.P. 9th Cir. 2002) ............................................... 35 n.19

*In re BCP Mgmt*, 320 B.R. 265 (D. Del. 2005) ............................................ 21

*In re Bankvest Capital Corp.*, 375 F.3d 51 (1st Cir. 2004) ......................... 35 n.19

*In re Bridgeport Holdings, Inc.*, No. 03-12825(PJW),
    2005 Bankr. LEXIS 1552 (Bankr. D. Del. Aug. 12, 2005), .................. 35 n.19
    (Op. annexed hereto).

*Browning v. Levy*, 283 F.3d 761 (6th Cir. 2002) ................................... 21

*Browning v. Navarro*, 826 F.2d 335 (5th Cir. 1987) ............................. 21, 22

*Buckley v. Goldman, Sachs & Co*, Civ. A. No. 02-CV-11497,
    2005 U.S. Dist. LEXIS 9626, 2005 WL 1206865
    (D. Mass. May 20, 2005) ........................................... 34 n.18

*In re Bulic*, 997 F.2d 299 (7th Cir 1993). ......................................... 29

*Christian v. American Home Assurance Co.*, 577 P.2d 899 (Okla. 1977) ................ 24

*In re Circle K Corp.*, 181 B.R. 457 (Bankr. D. Ariz. 1995). .......... 23 n.12, 36, 37, 38-39

*CitiSteel USA, Inc. v. General Electric Co.*,
    78 Fed. Appx. 832 (3d Cir. 2003) ...................................... 33

*In re Coffee Cupboard, Inc.*, 119 B.R. 14 (E.D.N.Y. 1990) ........................ 36, 37

iii

*D&K Props. Crystal Lake v. Mutual Life Ins. Co.*,
    112 F.3d 257 (7th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

*Donaldson v. Bernstein*, 104 F.3d 547 (3d Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . 36 n.20

*Eastern Minerals & Chems. Co. v. Mahan*, 225 F.3d 330
    (3d Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26-27, 28

*Edwards v. Wyatt*, 266 B.R. 64 (E.D. Pa. 2001) . . . . . . . . . . . . . . . . . . . . . . . . 25-26, 27-28

*In re Emmer Bros. Co.*, 52 B.R. 385 (D. Minn. 1985) . . . . . . . . . . . . . . . . . . . . . 28, 36, 37

*In re Freeman*, 30 F.3d 1459 (Fed. Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*GNB Battery Technologies v. Gould, Inc.*, 65 F.3d 615
    (7th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33-34

*In re Genesis Health Ventures, Inc.*, 266 B.R. 591
    (Bankr. D. Del. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11-12 n.9

*In re Graham*, 973 F.2d 1089 (3d Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . 29, 31 n.16

*Hotel Corp. of the South v. Rampart 920*, 46 B.R. 758
    (E.D. La. 1985), *aff'd*, 781 F.2d 901 (5th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . 37

*Houbigant, Inc. v. Dev. Specialists, Inc.*, 229 F. Supp. 2d 208
    (S.D.N.Y. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23 n.12

*Household Int'l, Inc. v. Westchester Fire Ins. Co.*,
    286 F. Supp. 2d 369 (D. Del. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 28 n.15

*In re Huang*, 275 F.3d 1173 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

*Hudgins v. Davison*, 127 B.R. 6 (E.D. Va. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

*In re I. Appel Corp*, 300 B.R. 564 (S.D.N.Y. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

*J.E. Faltin Motor Transp., Inc. v. Eazor Express, Inc.*,
    172 F. Supp. 175 (W.D. Pa. 1959), *aff'd*, 273 F.2d 444
    (3d Cir. 1959) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32-33

*Janess v. Messick*, 202 B.R. 196 (Bankr. D. Del, 1996) . . . . . . . . . . . . . . . . . . . . . . 31 n.16

*In re Kelley*, 199 B.R. 698 (B.A.P. 9th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

*In re Kmart Corp.*, 310 B.R. 107 (Bankr. N.D. Ill. 2004) . . . . . . . . . . . . . . . . . . . . . 35 n.19

iv

*In re Kovalchick*, 175 B.R. 863 (E.D. Pa. 1994) .................................. 29

*Kremer v. Chemical Constr. Corp.*, 456 U.S. 461 (1982) ......................... 22, 29

*Langford v. City of Atlantic City*, 235 F.3d 845 (3d Cir. 2000) ........................ 21

*In re Lernout & Hauspie Speech Prods. N.V.*, 308 B.R. 672
    (D. Del. 2004) ................................................................ 20

*In re Laing*, 945 F.2d 354 (10th Cir. 1991) ..................................... 29

*Lovell v. Mixon*, 719 F.2d 1373 (8th Cir. 1983) ................................... 29

*Lundborg v. Phoenix Leasing*, 91 F.3d 265 (1st Cir. 1996) ........................ 31 n.16

*In re Mariner Post-Acute Network Inc.*, 267 B.R. 46
    (Bankr. D. Del. 2001) ....................................... 26, 28 n.15

*Markowitz v. Northeast Land Co.*, 906 F.2d 100 (3d Cir. 1990) ....................... 21

*McCarty v. First of Georgia Ins. Co.*, 713 F.2d 609
    (10th Cir. 1983) ......................................... 21, 23-24

*Merrifield v. Beaven/Inter-American Cos.*, No. 89 C 8436,
    1992 U.S. Dist. LEXIS 11964, 1992 WL 193553
    (N.D. Ill. Aug. 3, 1992) ................................................ 34 n.18

*In re Midstate Mortg. Investors, Inc.*, 105 Fed. Appx. 420
    (3d Cir. 2004) .................................................... 37 n.22

*Montana v. United States*, 440 U.S. 147 (1979) ................................. 29

*National Gypsum Co. v. Prostok*, Civ. A. No. 3:98-CV0869,
    2000 U.S. Dist. LEXIS 16174, 2000 WL 1499345
    (N.D. Tex. 2000), *aff'd*, 44 Fed. Appx. 654
    (5th Cir. 2002) ..................................................... 32

*In re Newport Harbor Assocs.*, 589 F.2d 20 (1st Cir. 1978) ................. 36 n.20, 37-38

*In re Olick*, No. 99-CV-5128, 2000 U.S. Dist. LEXIS 4275,
    2000 WL 354191 (E.D. Pa. Apr. 4, 2000) ................................... 20

*In re Orange Tree Assocs., Ltd.*, 961 F.2d 1445
    (9th Cir. 1992) ................................................ 37-38

*In re PHP Healthcare Corp.*, No. 98-2608, 2002 Bankr. LEXIS 449,
    2002 WL 923932 (Bankr. D. Del. May 7, 2002) ........................... 22

v

*In re Pen Holdings, Inc.*, 316 B.R. 495 (Bankr. M.D. Tenn. 2004) ................. 35 n.19

*Pepper v. Litton*, 308 U.S. 295 (1939) ........................................... 29

*In re Piper Aircraft Corp.*, 244 F.3d 1289 (11th Cir. 2001) ................. 20-21, 28 & n.15

*Powell v. American Bank & Trust Co.*, 640 F. Supp. 1568
(N.D. Ind. 1986) ........................................................... 24

*In re RBGSC Inv. Corp*, 253 B.R. 352 (E.D. Pa. 2000) ............................. 20

*In re Railworks Corp.*, 325 B.R. 709 (Bankr. D. Md. 2005) ....................... 35 n.19

*Rushton v. Shea*, 419 F. Supp. 1349 (D. Del. 1976) ................................. 29

*In re S.N.A. Nut Co.*, 215 B.R. 1004 (Bankr. N.D. Ill. 1997) ...................... 27 n.14

*Sabratek Liquidating, LLC v. Ross & Hardies*,
Civ. A. No. 04-226, 2005 U.S. Dist. LEXIS 11257,
2005 WL 1385203 (D. Del. Mar. 30, 2005) ................................. 20

*Southland Corp. v. Ashland Oil, Inc.*, Civ. No. 88-0700,
1988 U.S. Dist. LEXIS 13108, 1988 WL 125855
(D.N.J. Nov. 23, 1988) ..................................................... 32

*Tanaka Bros. Farms, Inc. v. Home State Bank*,
Civ. A. No. 86-2108-S, 1986 U.S. Dist. LEXIS 17745
(D. Kan. Nov. 13, 1986)(Op. Annexed hereto) .......................... 23 n.12

*Timothy B. v. Neshaminy Sch. Dist.*, 153 F. Supp. 2d 621
(E.D. Pa. 2001) ........................................................... 21

*In re USN Communs., Inc.*, 280 B.R. 573 (Bankr. D. Del. 2002) ..................... 34-35

*In re United Artists Theatre Co.*, 315 F.3d 217 (3d Cir. 2003) ....................... 20

*United States Rubber Co. v. Lucky Nine, Inc.*, 159 So. 2d 874
(Fla. Dist. Ct. App. 1963) ................................................ 24 n.13

*In re Value Music Concepts, Inc.*, 329 B.R. 111
(Bankr. N.D. Ga. 2005) ..................................................... 35

*Washington Pub. Power Supply Sys. v. Pittsburgh-Des Moines
Corp.*, 876 F.2d 690 (9th Cir. 1989) ...................................... 34 n.18

*In re Western Integrated Networks, LLC*, 322 B.R. 156
(Bankr. D. Colo. 2005) ..................................................... 35 n.19

vi

*Whetherhold v. RadioShack Corp.*, 339 F. Supp. 2d 670
    (E.D. Pa. 2004) ................................................. 21

*Williams v. Texaco*, 165 B.R. 662 (D.N.M. 1994) .............................. 36 n.20

*In re YES! Entm't Corp. v. Kingsborough*, 316 B.R. 141
    (D. Del. 2004) ................................................. 20

**STATUTES and RULES**

Bankruptcy Code

    11 U.S.C. § 1144 ............................................ 4-5, 6, 35-39

Judiciary and Judicial Procedure

    28 U.S.C. § 158(a) ................................................. 20

**MISCELLANEOUS**

Lawrence P. King, ed., 8 COLLIER ON BANKRUPTCY ¶ 1144.04 [2][a]
    (Matthew Bender 15th ed. rev. 1997) .................................. 35-36

James Wm. Moore et al., 18 MOORE'S FEDERAL PRACTICE
    § 131.21 (Matthew Bender 3d ed. 1999) ................................ 21-22

RESTATEMENT (SECOND) OF JUDGMENTS (1982)

    § 26, cmt. j ...................................................... 24
    § 26(1)(b) ...................................................... 34 n.18

## I. NATURE AND STAGE OF THE PROCEEDINGS

This is an appeal from an order of the Delaware Bankruptcy Court dismissing this action on the pleadings.[1]

Plaintiffs are 275 former debentureholders of defendant Genesis Health Ventures, Inc. ("Genesis"), a multi-billion-dollar health care company. In 2000, sensing an opportunity to make a quick killing, a small group of financial institutions, led by defendant Goldman Sachs & Company ("Goldman"), bought up the lion's share of Genesis' senior debt at a huge discount and then forced Genesis into bankruptcy. In the bankruptcy court they pushed through a reorganization plan (the "Plan") that gave themselves and other senior creditors over 94% of the newly issued stock of the reorganized company while wiping out the claims of the junior creditors, including the plaintiffs, for 3.8 cents on the dollar. After the Plan was approved, the senior creditors held stock that was worth many times the value of their original investment.

To accomplish this, the defendant financial institutions worked closely with Genesis management to cook the books so that Genesis would look less valuable than it really was. They provided this manipulated financial information to their advisors, who used it to produce low-ball valuations of Genesis that were below the total amount of the senior creditor claims, and Defendants submitted those valuations to the bankruptcy court to support approval of the Plan. Unaware that the financial data had been corrupted, the objecting debentureholders had no chance of defeating the Plan, and the bankruptcy court approved it in September of 2001.

The manipulated financial data consisted of actual and projected "EBITDA" data for the Company for the period of about one year preceding approval of the Plan (the "valuation period"). "EBITDA" is considered a good measure of a company's earnings capacity because it excludes non-recurring and extraordinary items. The Complaint specifically alleges that defendants artificially depressed Genesis' EBITDA, in large part by improperly excluding, as nonrecurring, earnings that

---

[1] Adv. Pro. No. 04-53375-JHW, Amended Opinion entered May 3, 2005 (D.I. #36).

actually *were* expected to recur, and by failing to exclude unusual or one-time-only expenses. The

bankruptcy court determined that the complaint "conceded" that evidence about these manipulations

had been disclosed during the Plan confirmation proceeding; however, in fact, the complaint alleges

the exact opposite, that this evidence was concealed until *months after confirmation.* For example:

- Months after approval of the Plan, Genesis publicly disclosed, for the first time, that it had signed, within days of the Court's approval of the Plan, an agreement to extend the Mariner supply contract years into the future. During the valuation period, Genesis had excluded from EBITDA millions of dollars of earnings from its contract with Mariner, arguing that its Mariner contract was almost certainly not going to be renewed and was therefore non-recurring revenue. This information was never disclosed during the Plan confirmation proceedings.

- Months after approval of the Plan, Genesis also disclosed for the first time that it had excluded from earnings during the valuation period 10% of the income it had been receiving pursuant to a pharmaceutical supply contract with Manorcare, even though Genesis officials testified before the bankruptcy court that none of this income was being excluded. There was no basis under GAAP for such an exclusion. This information was also never disclosed during the Plan confirmation proceedings.

- Months after approval of the Plan, Genesis also disclosed for the first time that it had almost doubled its insurance loss reserves in the space of a single year, an amount which was well beyond any possible liability exposure, and released financial data from which the debentureholders could figure out that it had charged most of those reserve increases against EBITDA during the valuation period. None of this information was disclosed during the Plan confirmation proceedings either.

- Months after approval of the Plan, Genesis also disclosed for the first time that its pharmacy costs of goods sold had been about 59% of revenues, a typical percentage, rather than the 61% used for valuation purposes. This overstatement of costs lowered EBITDA during the valuation period by millions of dollars, a fact which, once again, was never disclosed during the Plan confirmation proceedings.

Once plaintiffs realized that defendants had engaged in these manipulations, they searched

for other possible instances of fraud that could have affected the valuation process. Their research

eventually uncovered several additional items, including:

- Costs of certain self-insurance plans, which had been designated for cancellation *before approval of the Plan,* had been kept in the EBITDA figures for the valuation period, even though those costs were non-recurring and should have been excluded.

2

- Various special bankruptcy reorganization expenses, which were also non-recurring, had also been included in the EBITDA figures for the valuation period.

None of these additional manipulations, as well as others described below, had been disclosed prior to confirmation of the Plan. Had Genesis' EBITDA been fairly presented, defendants' own experts, using the same valuation methodologies, would have valued Genesis hundreds of millions of dollars higher, and the debentureholders' distribution in the bankruptcy would have been commensurately greater.  Plaintiffs estimate their damages to be at least $200 million.

Plaintiffs, who collectively had held over $205 million in Genesis debentures, brought the present action in New York State Supreme Court in January of 2004, alleging that the defendants were guilty of fraud or gross negligence in submitting false financial information to the bankruptcy court to obtain approval of the Plan. The debentureholders consented to removal and transfer of the action to the Genesis bankruptcy proceeding, which is still ongoing in Delaware.

Defendants moved to dismiss the complaint, primarily on the ground that the bankruptcy court, in approving the Plan, "conclusively" determined the value of Genesis and therefore barred any claims relating to that valuation. Plaintiffs countered that a judgment procured by fraud is not entitled to preclusive effect, and that to hold otherwise would allow those who submit false information in judicial proceedings to use the fruits of their own fraud to shield their own wrongdoing. The motion was argued in August, 2004.  In its dismissal opinion issued nine months later, in May, 2005, the bankruptcy court dismissed the action. *In re Genesis Health Ventures, Inc.*, 324 B.R. 510 (Bankr. D. Del. 2005).

The bankruptcy court recognized that a judgment procured by fraud cannot have preclusive effect (324 B.R. at 525-26).  However, after a dismissive two-sentence analysis, it concluded that the complaint did not really allege fraud at all, but, rather, *conceded* that "most or all the information establishing defendants' fraudulent conduct was actually provided in discovery prior to the confirmation hearings."   Although the complaint expressly alleged that the fraud had first been

3

revealed in post-confirmation SEC disclosures by Genesis, the court brushed that off with the offhand comment that those SEC disclosures had been "timely filed and included post-confirmation data" (*id.* at 526).

In fact, the complaint alleges exactly the opposite: that the fraud was carefully concealed until months after the Plan was confirmed, when substantial parts of it were first revealed in Genesis' post-confirmation SEC disclosures, which contained information about *pre-confirmation events*. Although most of the discovery in the Plan confirmation proceedings occurred in the two or three weeks preceding the confirmation hearings, the debentureholders never alleged that the fraud was actually disclosed at that time (and, of course, neither do the defendants); and although plaintiffs relied on post-confirmation SEC filings, the critical information in those filings related to the pre-confirmation period. The bankruptcy court's application of *res judicata* and collateral estoppel was therefore based on a complete misreading of the complaint.

The bankruptcy court also held that the claims against Genesis should be dismissed for two additional reasons. First, it determined that those claims were barred by §1144 of the Bankruptcy Code, which imposes a 180-day time limit on any attempt to "revoke" a bankruptcy plan. Although conceding that at "first blush" this action does not appear to seek revocation of the Plan, the bankruptcy court nevertheless held that any damage remedy against Genesis would amount to a de facto revocation because it would "negatively affect innocent parties and creditors who received value in the forms of new equity and new debt in the reorganized debtor" (324 B.R. at 517). But there was no showing that any "innocent party" would suffer any injury if the claims against Genesis were allowed to proceed.

Moreover, the court ignored well-settled case law holding that a party injured by bankruptcy fraud may still seek damages against a former debtor, without invoking the time limit on "revocation" actions. The bankruptcy court in effect created a new rule, unsupported by any case

4

law authority, that *any* post-confirmation damage action against the debtor amounts to a de facto "revocation" of the plan and is therefore subject to the 180-day time limit. Such a rule would effectively obliterate the limitation of § 1144 to "plan revocation" attempts, because *any* claim against the debtor would now be subject to the statute. Such a drastic expansion of § 1144 would not further any purpose of the Bankruptcy Code and would unfortunately encourage the very type of conduct that occurred here.

Second, the bankruptcy court held that the Plan itself discharged Genesis from any claim of fraud or gross negligence committed in the course of the Plan confirmation proceedings. Here, the court relied on §§ 10.2 and 10.3 of the Plan (A30-A31),[2] which released Genesis generally from all pre-confirmation claims; but it overlooked § 10.6 of the Plan (A31), which expressly preserved any claim based on "any act or omission in connection with, or arising out of, the Reorganization Cases, [or] the confirmation of the Plan of Reorganization" that are based on "willful misconduct or gross negligence". That type of conduct is, of course, exactly what the present complaint alleges. The court's separate grounds for dismissing the claims against Genesis were, therefore, groundless.

## II. SUMMARY OF ARGUMENT

1.     *Res judicata* and collateral estoppel are inapplicable because the Plan confirmation decision was procured by fraud. Contrary to the bankruptcy court's decision, the complaint did not "concede" that the fraud was disclosed during the confirmation proceedings, but, in fact, alleged exactly the opposite. The fraud crippled the debentureholders' ability to defeat or modify the Plan in those proceedings.

2.     *Res judicata* is also inapplicable because the claims for relief are different now from the "claim" asserted in the objections to Plan confirmation. No fraud claim, and no damage claim was asserted in those proceedings.

---

[2] "A" page references are to pages in accompanying Appendix.

5

3.      Collateral estoppel is also inapplicable because the issues raised here concerning manipulation of EBITDA, were not the same and were not actually adjudicated in the Plan confirmation proceedings.

4.      The 180-day limitation period imposed by §1144 of the Bankruptcy Code is inapplicable because the damages sought in this action would not amount to a "de facto revocation" of the Genesis reorganization Plan.

5.      The Plan does not exculpate any defendant from willful misconduct or gross negligence in the course of the Plan confirmation proceedings but, rather, expressly preserves such claims.

### III. STATEMENT OF FACTS[3]

#### A. The Parties

The 275 plaintiffs collectively held over $205 million of Genesis subordinated debentures. Genesis is a leading provider of health care and support services to the elderly.[4] It had two primary business segments:  pharmacy services and in-patient services.  Defendant George V. Hager, Jr. ("Hager") is executive vice president and chief financial officer of Genesis, and held that position during the relevant time period (A57 ¶ 18).[5]

By August of 2000 investment banks, including defendant Goldman, had purchased about half the total Genesis and MC senior debt participations from the original lending consortium, at

_____

[3] Because the court dismissed the action on the pleadings, the facts are taken from the allegations of the complaint, which are assumed to be true for purposes of this motion.

[4] Prior to October of 2001, Multi-Care Corp. ("MC") was a 43.6%-owned subsidiary of Genesis that was also in the elder care industry. Pursuant to the Plan, MC merged into Genesis. Since the approval of the Plan, Genesis has spun off its nursing home business, after which the Company was known as Neighborcare, Inc., until 2005, when it was sold for over $2 billion.

[5] Paragraph ("¶") references are to paragraphs of the Complaint, a copy of which is included in the accompanying Appendix.

6