Highland's position. (This is especially true when the actual language of the opinions is read as opposed to the creative description that Plaintiffs have inserted into their parenthetical.) For example, Plaintiffs cite *Board of Trustees v. Foodtown Inc.*, 296 F.3d 164 (3d Cir. 2002) for this proposition. This case does, as Plaintiffs contend, indeed state that "[a] cause of action is considered property of the estate if the claim existed at the commencement of the filing and the debtor could have asserted the claim on his own behalf . . . ."[21] The case does not, however, state anywhere that a "claim that accrued after filing of bankruptcy petition [is] not part of [the] estate," as Plaintiffs assert in their brief by placing this phrase in the parenthetical for *Board of Trustees* outside of the quotes. In fact, *Board of Trustees* does find, which Plaintiffs fail to mention, that the property of the bankruptcy estate includes, pursuant to Section 541(a)(7), "any interest in property that the estate acquires after the commencement of the case."[22]

Plaintiffs also attempt to twist cases cited by Highland it its Motion to Dismiss to support their erroneous position. For example, Plaintiffs note in their Response that the court in *In re Educator's Group Health Trust*, 25 F.3d 1281, 1286 (5th Cir. 1994), stated that "the bankruptcy estate succeeds to the causes of action which the debtor could have bought [sic] as of the commencement of the case . . . ."[23] Plaintiffs fail to mention, however, that the Court's analysis was limited to Section 541(a)(1), and contained no reference to Section 541(a)(7). The cases cited by Plaintiffs, as well as the cases cited by Highland it its Motion to Dismiss, all support the basic proposition of law accepted by the Third Circuit in *Kollar* that the estate's property can consist of causes of action that accrue after the commencement of the bankruptcy.

---

[21] *See Board of Trustees*, 296 F.3d at 169 n. 5.

[22] *See id.* at 169.

[23] *See* Plaintiffs' Response at 59.

## <u>REQUEST FOR RELIEF</u>

For all the foregoing reasons, Highland requests that the Court dismiss Plaintiffs' Complaint, and grant Highland any additional relief the Court finds necessary and just.

Dated:  July 12, 2004

Respectfully submitted,

/s/Daniel K. Hogan
Daniel K. Hogan (#2814)
1701 Shallcross Avenue, Suite C
Wilmington, Delaware  79806
(302) 656-7540

and

LACKEY HERSHMAN, L.L.P.
Paul B. Lackey
State Bar No. 00791061
Michael P. Aigen
State Bar No. 24012196
3102 Oak Lawn Avenue
Suite 700
Dallas, Texas  75219-4241
Telephone:    (214) 560-2201
Telecopier:    (214) 560-2203

**ATTORNEYS FOR DEFENDANT
HIGHLAND CAPITAL MANAGEMENT, L.P.**

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

```
                                          x
                                          :
Richard Haskell et al.,                   :    Civ. Act. No. 04-CV-157 (SLR)
                                          :    Related to
        Plaintiffs,                       :    Case No. 00-2692 (JHW)
                                          :    (Jointly Administered)
        v.                                :
Goldman, Sachs & Co. et al.,              :    Adv. Pro. No.: 04-53375 (JHW)
                                          :
        Defendants.                       :
                                          x
```

## GOLDMAN, SACHS & CO.'S SUPPLEMENTAL REPLY TO PLAINTIFFS' OPPOSITION TO JOINT MOTION TO DISMISS PLAINTIFFS' COMPLAINT

## TO THE HONORABLE JUDITH H. WIZMUR:

Defendant Goldman, Sachs & Co. ("Goldman Sachs"), alleged to have been a senior creditor of Genesis Health Ventures, Inc. and The Multicare Companies, Inc., hereby submits this supplemental reply brief in support of Defendants' joint motion to dismiss the Complaint. The purpose of this supplemental brief is to reply to Plaintiffs' arguments concerning their compliance with Fed. R. Civ. P. 9(b)'s requirement that fraud and conspiracy be pled with particularity with respect to their allegations concerning Goldman Sachs.[1]

---

[1]    Plaintiffs do not contest the application of Rule 9(b) to this action. Nor can they. See Fed. R. Civ. Pro. Rule 81(c) ("These rules apply to civil actions removed to the United States district courts from the state courts and govern procedure after removal. Repleading is not necessary unless the court so orders."); see also Fairmont Homes, Inc. v. Shred Pax Corp., 754 F. Supp. 665, 667 (N.D. Ind. 1990) (holding Rule 9(b) applies to case removed from state court and dismissing cause of action for fraud for failure to comply); Chi v. Age Grp., Ltd., 1996 WL 627580, at *9 (S.D.N.Y. Oct. 29, 1996) (citing Fairmont Homes favorably for proposition that Rule 9(b) applies to actions removed from state court and dismissing action for fraud for failure to comply). Fed. R. Bankr. P. 7009 specifically states that Fed. R. Civ. P. 9(b) applies in adversary proceedings.

## PRELIMINARY STATEMENT

Plaintiffs' Opposition[2] utterly fails to show why Plaintiffs have satisfied Fed. R. Civ. P. 9(b) with respect to their allegations concerning Goldman Sachs. The facts which Plaintiffs allege are nothing more than ordinary business activities that are part and parcel of participating in any bankruptcy restructuring, including buying distressed assets, joining a creditors' steering committee, and attending meetings with management; they certainly do not demonstrate fraud or conspiracy. To the extent that Plaintiffs add conclusory allegations of fraud, conspiracy or other wrongdoing, they are of no avail. Conclusory allegations of wrongdoing are routinely rejected under Rule 9(b) as insufficient. Accordingly, Plaintiffs' fraud and conspiracy claims against Goldman Sachs should be dismissed on Rule 9(b) grounds, as well as all other grounds set forth in the Joint Motion to Dismiss.

## ARGUMENT

I. **Plaintiffs Have Not Alleged Specific Facts Which Demonstrate That Goldman Sachs Knowingly Participated in a Fraud or Conspiracy**

Although Plaintiffs concede their Complaint must meet the stringent pleading standards of Rule 9(b) to state a claim for fraud under Delaware law (Pl. Opp. at 66), their Opposition fails to identify any specific misrepresentation or omission made by Goldman Sachs in the Bankruptcy Proceedings.[3] See Grant v. Kingswood Apts., 2001 Dist. LEXIS 15815, at *5 (E.D. Pa. Oct. 2, 2001) (complaint must specify the "who, what, when, where and how" of the alleged

---

2 The capitalized terms herein shall have the same definitions as set forth in the Defendants' Joint Moving and Reply Briefs.

3 Plaintiffs' claim that they need not plead conspiracy with particularity under Rule 9(b) (Pl. Opp. at 73 n.43) is contrary to applicable law. Where the allegations of civil conspiracy are grounded in an alleged underlying fraud, the heightened pleading standard of Rule 9(b) applies. See, e.g., Odyssey Re (London) Ltd. v. Stirling Cooke Brown Holdings Ltd., 85 F. Supp. 2d 282, 297-98 (S.D.N.Y. 2000), aff'd, 2 Fed. Appx. 109 (2d Cir. 2001) (finding that a civil conspiracy to defraud was inadequately established as to one alleged co-conspirator, and granting that party's motion to dismiss); 5 Wright & Miller, Fed. Prac. & Proc. Civ. 3d § 1233 (West 2004).

fraud).  Nor do Plaintiffs allege any facts showing that Goldman Sachs instructed Hager or anyone at Genesis to manipulate EBITDA or to present misleading or omissive information as to enterprise value, or that they in any way "orchestrated a fraudulent scheme."

Lacking specific, particularized allegations of wrongdoing, Plaintiffs point to the following "facts" as forming the basis of their claim that Goldman Sachs had knowledge of and participated in an alleged fraud:

- **Ordinary Course Business Activities**

  - "Goldman and Highland aggressively purchased Genesis debt participations at drastic discounts, seeing an opportunity to double or triple their money within the space of 18 months." (Pl. Opp. at 33).

  - Goldman Sachs had an "intent to enrich itself, as much as possible, at the expense of the debentureholders." (Id.).

  - "[I]n July of 2000, [Goldman Sachs] took a lead position in the DIP lending facility." (Id.).

- **Ordinary Course Negotiations With Management for the Reorganized Debtor**

  - Goldman Sachs offered Genesis senior management "immensely lucrative retention bonuses, including stock grants, options and the forgiveness of debt they had incurred to purchase Genesis shares." (Id. at 34).

- **Goldman Sachs' Committee Membership and Attendance at Meetings**

  - "Goldman then inserted itself into these proceedings by joining the senior lender steering committee." (Id. at 33).

  - Goldman "conducted monthly meetings with Genesis management. Goldman's notes of those meetings show that they were tracking, in minute

3

detail" Genesis' EBITDA and various adjustments thereto. (Id. at 35.)

o "Goldman Sachs' personnel actually kept notes of the intense monitoring of all EBITDA related developments." (Id. at 69).

o "Mellon, Goldman and Highland were well aware of . . . manipulations [to Genesis' EBITDA], through their attendance at senior lender steering committee meetings and at DIP Financing meetings, even if they did not expressly direct management regarding each manipulation to artificially depress Genesis' EBITDA." (Id. at 36.)

- **Presentation of Testimony at Hearings**

  o "[A]djustments to Budgeted EBITDA were fed to Hager by the senior creditors' financial advisors, Policano & Manzo and Chilmark, through the Steering Committee ([Compl.] ¶ 166)." (Id. at 35.)

  o "Despite [Mellon, Goldman Sachs, and Highland's] knowledge that the figures had been manipulated, they nonetheless made affirmative use of them in this Court, by feeding them to their advisor and Chilmark then submitting the resulting Chilmark valuations in support of the Plan." (Id. at 36.)

- **Naked Conclusory Allegations of Wrongdoing**

  o "Goldman orchestrated and directed the scheme, with the cooperation of Mellon and Highland." (Id. at 33).

  o "Under the guise of monitoring compliance with DIP loan covenants, Goldman quarterbacked the entire panoply of financial manipulations detailed in this Complaint." (Id. at 35.)

**Ordinary Course Business Activities.**  Allegations concerning Goldman Sachs' purchase of senior debt, lead role in the DIP facility, and participation in business activities with the intent to make a profit are nothing more than a series of pejorative characterizations of Goldman Sachs' unremarkable investment in distressed assets and participation in the

Bankruptcy Proceedings. These ordinary business activities are typical of the countless investors who take part in corporate restructuring proceedings and cannot form the basis for a claim of fraud. See Lum v. Bank of Am., 361 F.3d 217, 223 (3d Cir. 2004) (affirming dismissal of complaint for fraud on ground that plaintiffs only averred conclusory allegations of misconduct "and their specific allegations regarding particular transactions do not amount to fraud"); Schmidt v. Fleet Bank, 1998 WL 47827, at *9 (S.D.N.Y. Feb. 4, 1998) ("routine and general benefits that are derived in the ordinary course of business do not constitute the type of 'concrete benefit' that is necessary to allege fraudulent intent under Rule 9(b)"); Thacker v. Medaphis Corp., 1998 WL 684595, at *3 (S.D.N.Y. 1998) (allegations of "aggressive acquisition of related companies" were insufficient to state claim for fraud, as such conduct could be attributed to "any publicly-owned, for-profit endeavor").

**Ordinary Course Negotiations With Management for the Reorganized Debtor.**
Ordinary course negotiations by creditors who have a substantial investment in a multi-million dollar corporation concerning terms and conditions of employment of management do not demonstrate wrongdoing. Courts have held in analogous situations that the mere allegation that an executive sought to increase his compensation cannot form the basis of a claim for fraud. See Shields v. Citytrust Bancorp, 25 F.3d 1124, 1130 (2d Cir. 1994) ("Incentive compensation can hardly be the basis on which an allegation of fraud is predicated. On a practical level, were the opposite true, the executives of virtually every corporation in the United States could be subject to fraud allegations.") (citation omitted); Wilson v. Bernstock, 195 F. Supp. 2d 619, 635 (D. N.J. 2002) (citing Shields). The same, obviously, is true of the new shareholder body and their representatives with whom management negotiates.

5

**Goldman Sachs' Attendance at Meetings**.  The participation in steering committee meetings and alleged "tracking, in minute detail" of Genesis' EBITDA (Pl. Opp. at 33-34) cannot form the basis for a claim of fraud under Rule 9(b).  Such allegations, which attempt to infer wrongdoing from a defendant's position or access to information, again amount to nothing more than monitoring a substantial investment and have been routinely rejected in other contexts as a basis for a claim of fraud.  In re Advanta Corp. Sec. Litig., 180 F.3d 525, 539 (3d Cir. 1999) ("[A]llegations that a securities-fraud defendant, because of his position within the company, 'must have known' a statement was false or misleading are 'precisely the types of inferences which [courts], on numerous occasions, have determined to be inadequate to withstand Rule 9(b) scrutiny.'") (quoting Maldanado v. Dominguez, 137 F.3d 1, 10 (1st Cir. 1998)).

Indeed, the very example Plaintiffs point to as a supposed example of a well-pled allegation of fraud is nothing more than an allegation that Goldman Sachs attended a meeting and had access to certain information.  See Pl. Opp. at 69-70 ("At a meeting of management and the senior creditors steering committee of March 13, 2001, Goldman and the other lenders present recognized that the First Choice Plan had been discontinued and that the charges associated with that plan were non-recurring.  Nonetheless they did nothing to take these costs out of the LTM EBITDA calculation.") (citing Compl. ¶ 143.)  This paragraph does not allege that Goldman Sachs procured, or in any way assisted in, any fraudulent omission; and as the Court well knows, the issue of whether non-recurring reorganization charges were properly included in management's presentation of LTM EBITDA was fully aired in the Confirmation Hearings.  Moving Br. ¶ 38.

**Presentation of Testimony at Hearings**.  The relevant facts alleged in the Complaint are that expert testimony of an independent third party was presented by the Senior Lenders at the

Confirmation Hearing and that adjustments to Budgeted EBITDA were suggested by the expert. (Compl. ¶166). The fact that an independent expert testified and made EBITDA adjustments is a routine matter in a bankruptcy proceeding. Plaintiffs had plenty of opportunity to question the presentation and use of those numbers by that independent expert during the Confirmation Hearing. See Moving Br. ¶ 24. Ultimately, the expert's testimony is taken into account and given the weight that the Court deems proper.

**Conclusory Allegations of Wrongdoing.** Plaintiffs cannot bring a fraud claim based on the bald, unsupported statements that Goldman Sachs "orchestrated and directed" or "quarterbacked" a fraudulent scheme. In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1418 (3d Cir. 1997) ("even under a relaxed application of Rule 9(b), boilerplate and conclusory allegations will not suffice"). Courts have routinely rejected such allegations as precisely the type of non-specific fraud allegations that Rule 9(b) is designed to prevent. See Seville Indus. Mach. Corp. v. Southmost Mach. Corp., 742 F.2d 786, 791 (3d Cir. 1984) (purpose of Rule 9(b) is "to place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior.")

Thus, Plaintiffs' arguments and citations cannot refute the fact that they have not alleged any factual particulars demonstrating wrongdoing on the part of Goldman Sachs, and their fraud and conspiracy claims as to Goldman Sachs should therefore be dismissed on this ground.

## CONCLUSION

For the reasons set forth above, and in the Defendants' Joint Moving and Reply briefs, Goldman Sachs requests an order dismissing Plaintiffs' Complaint, together with such other and further relief as this Court deems just and proper.

Dated:  July 12, 2004

Respectfully submitted,

Steven K. Kortanek (#3106)
Morton R. Branzburg
KLEHR, HARRISON, HARVEY,
BRANZBURG & ELLERS LLP
919 Market Street, Suite 1000
Wilmington, Delaware 19809-3062
(302) 426-1189 Telephone
(302) 426-9193 Facsimile
skortanek@klehr.com

- and –

Barry Sher, Esq.
Sheldon Raab, Esq.
Eric. A. Hirsch, Esq.
FRIED, FRANK, HARRIS, SHRIVER
  & JACOBSON LLP
One New York Plaza
New York, New York  10004-1980
(212) 859-8000

Attorneys for Defendant
 Goldman, Sachs & Co.

8

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

RICHARD HASKELL, et al.,         )
                                      )
            Plaintiffs,        )      Civ. Action No.: 04-CV-157 (SLR)
                                      )
      v.                            )
                                      )
GOLDMAN SACHS & CO., et al.     )
                                      )
           Defendants.      )

## HIGHLAND CAPITAL MANAGEMENT, L.P.'S MOTION TO DISMISS

Defendant Highland Capital Management, L.P. ("Highland") files this Motion to Dismiss, as follows:

### I.

### PRELIMINARY STATEMENT

Plaintiffs, debenture holders of Genesis Health Ventures, Inc. ("Genesis"), have initiated this action in a desperate attempt to reallocate the proceeds of the Genesis Bankruptcy Plan that has long since been approved by this Court. These issues have already been litigated in, and decided by, this Court, and Plaintiffs have no right to re-litigate these issues.[1] Further, Plaintiffs fail to allege a single fact demonstrating that Highland has done anything wrong. Finally, Plaintiffs do not have standing to bring these claims, which, if they existed, were owned by the Genesis estate. Accordingly, Highland requests that the Court dismiss this action pursuant to Federal Rule of Civil Procedure 12(b)(6).

---

[1]     The issues of whether Plaintiffs' claims are jurisdictionally time-barred, barred by res judicata, and whether they constitute an impermissible attack on a final confirmation order, are being briefed and submitted in a Motion to Dismiss separately filed by Weil, Gotshal & Manges, LLP on behalf of all Defendants. Therefore, these issues are not addressed in this Motion.

---

HIGHLAND CAPITAL MANAGEMENT, L.P.'S MOTION TO DISMISS           PAGE 1

## II.

## ARGUMENTS AND AUTHORITIES

**A.**  **Plaintiffs' Complaint Should Be Dismissed Because It Fails To State A Claim Upon Which Relief Can Be Granted.**

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a motion to dismiss may be granted if, accepting all well-pleaded allegations in the complaint as true, and viewing them in the light most favorable to the Plaintiffs, Plaintiffs are not entitled to relief. In deciding a Rule 12(b)(6) motion, however, the Court need not "accept as true unsupported conclusions and unwarranted inferences." Courts are instructed to "view the complaint as a whole and to base rulings not upon the presence of mere words but, rather, upon the presence of a factual situation which is or is not justiciable."

Plaintiffs have asserted three claims against all of the Defendants: 1) fraud; 2) conspiracy to commit fraud; and 3) gross negligence. Plaintiffs, however, have failed to provide factual support for essential elements of each of these claims. Therefore, pursuant to Federal Rule of Civil Procedure 12(b)(6), Plaintiffs' claims should be dismissed because they fail to state a claim upon which relief can be granted.

**1.**  **Plaintiffs' fraud claim must be dismissed because Plaintiffs failed to comply with Federal Rule of Civil Procedure 9(b).**

Federal Rule of Civil Procedure 9(b) requires that in a pleading alleging fraud "the circumstances constituting fraud or mistake shall be stated with particularity." Specifically, a plaintiff must provide sufficient factual detail regarding the circumstances of the alleged fraud to place the defendants on notice of the precise misconduct charged. The lack of any detail regarding alleged acts by Highland in Plaintiffs' Complaint fails to provide sufficient detail to place Highland on notice of the nature of the misconduct with which they are charged.

---

HIGHLAND CAPITAL MANAGEMENT, L.P.'S MOTION TO DISMISS                                    PAGE 2

2. **Plaintiffs' fraud claim must be dismissed because Plaintiffs do not adequately allege reliance on the alleged misrepresentations.**

The general elements of fraud are (1) a false representation, (2) made either with knowledge or belief or with ruthless indifference to its falsity, (3) with an intent to induce the plaintiff to act or refrain from acting, (4) the plaintiff's action or inaction resulted from a reasonable reliance on the representation, and (5) reliance damaged the defendant. Noticeably absent from Plaintiffs' Complaint are any facts supporting Plaintiffs' allegation that they relied on any misrepresentations by Defendants, including Highland.

3. **Plaintiffs' conspiracy to commit fraud claim must be dismissed because Plaintiffs fail to allege acts that would support such a claim.**

Plaintiffs' Complaint fails to allege *any* acts taken by Highland in support of any alleged conspiracy. Therefore, Plaintiffs' conspiracy to commit fraud claim must be dismissed because it fails to state a claim upon which relief can be granted.

4. **Plaintiffs' gross negligence claim must be dismissed because it fails to state a claim on which relief can be granted.**

Plaintiffs' Complaint fails to allege any negligent, much less grossly negligent, acts taken by Highland. In addition, gross negligence requires that there be a legal duty between Highland and Plaintiffs. As a matter of law, however, Highland did not owe a duty to Plaintiffs. Therefore, Plaintiffs' gross negligence claim must be dismissed as a matter of law.

B. **Plaintiffs' Complaint Must Be Dismissed Against Highland Because Plaintiffs Do Not Have Standing To Assert The Claims.**

Plaintiffs' Complaint fails to state a claim upon which relief can be granted because Plaintiffs' claims, if any, are owned by the debtor. The underlying basis of Plaintiffs' alleged losses, and thus their attempt to make a private right of action claims against Highland and the other Defendants, is the pre-petition debt originally owed to Plaintiffs by Genesis and actions allegedly aimed at the value of the estate. Plaintiffs' claims regarding diminishing value of the

estate belong to the estate.  Therefore, Plaintiffs lack standing to assert the claims set forth in their

Complaint.

## II.

### REQUEST FOR RELIEF

WHEREFORE, Highland requests that the Court dismiss Plaintiffs' Complaint, and grant

Highland any additional relief the Court finds necessary and just.

Dated:   April 23, 2004

Respectfully submitted,

Daniel K. Hogan, Esquire (#2814)
1701 Shallcross Avenue, Suite C
Wilmington, Delaware   79806
(302) 656-7540

and

LACKEY HERSHMAN, L.L.P.
Paul B. Lackey
State Bar No. 00791061
Michael P. Aigen
State Bar No. 24012196
3102 Oak Lawn Avenue
Suite 700
Dallas, Texas  75219-4241
Telephone:     (214) 560-2201
Telecopier:     (214) 560-2203

**ATTORNEYS FOR DEFENDANT
HIGHLAND CAPITAL MANAGEMENT, L.P.**

---

HIGHLAND CAPITAL MANAGEMENT, L.P.'S MOTION TO DISMISS                                                PAGE 5

## CERTIFICATE OF SERVICE

I certify that on April 23, 2004, I caused a true and correct copy of the foregoing document to be served on all counsel of record.

Adam P. Strochak
Joanne M. Guerrera
Weil, Gotshal & Manges LLP
1501 K Street, NW, Suite 100
Washington, DC  20005

Michael F. Walsh
Diane Harvey
Gary T. Holtzer
Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, New York  10153

Russell C. Silberglied
Mark D. Collins
Richards, Layton & Finger, P.A.
One Rodney Square
P.O. Box 551
Wilmington, Delaware  19899

Stanley M. Grossman
H. Adam Prussin
Pomerantz Haduek Block
     Grossman & Gross LLP
100 Park Avenue, 26th Floor
New York, New York  10017

Barry G. Sher, Esq.
Fried, Frank, Harris, Shriver
     & Jacobson LLP
One New York Plaza
New York, New York 10004

Richard S. Toder, Esq.
Menachem O. Zelmanovitz, Esq.
Morgan, Lewis & Bockius LLP
101 Park Avenue
New York, New York  10178

Steven K. Kortanek
Morton R. Branzburg
Klehr Harrison Harvey
Branzburg & Ellers, LLP
919 Market Street, Suite 1000
Wilmington, DE 19809-3062

Peter J. Duhig
Teresa K.D. Currier
Klett Rooney Lieber & Schorling, PC
The Brandywine Building
1000 West Street, Suite 1410
Wilmington, DE 19801

George V. Hager
c/o Robert S. Brady
Young Conaway Stargatt & Taylor LLP
1000 West Street, 17th Floor
Wilmington, DE 19899-0391

George V. Hager
c/o Paul V. Shalhoub
Willkie Farr & Gallagher, LLP
787 7th Avenue
New York, NY 10019-6099

Steven Russo
Sive Paget & Riesel, PC
460 Park Avenue
New York, NY 10022

R. Bruce McNew
Taylor & McNew, LLP
3711 Kennett Pike, Suite 210
Greenville, DE 19807

DANIEL K. HOGAN

**AA. 1762**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

RICHARD HASKELL, <u>et al.</u>,     )
                )
        **Plaintiffs,**     )     **Civ. Action No.: 04-CV-157 (SLR)**
                )
        **v.**         )
                )
GOLDMAN SACHS & CO., <u>et al.</u>,     )
                )
        **Defendants.**     )

## HIGHLAND CAPITAL MANAGEMENT, L.P.'S
## MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS

Defendant Highland Capital Management, L.P. ("Highland") files this Memorandum in Support of its Motion to Dismiss, as follows:

### I.

### PRELIMINARY STATEMENT

Plaintiffs, debenture holders of Genesis Health Ventures, Inc. ("Genesis"), have initiated this action in a desperate attempt to reallocate the proceeds of the Genesis Bankruptcy Plan that has long since been approved by this Court. Plaintiffs seek hundreds of millions of dollars from several financial entities, including Highland, for actions that allegedly occurred and were adjudicated in this Court during the Genesis bankruptcy proceedings. Initially, Plaintiffs do not have standing to bring these claims, which, if they existed, were owned by the Genesis estate. Furthermore, these issues have already been litigated in, and decided by, this Court, and Plaintiffs have no right to re-litigate these issues.[1]  Finally, Plaintiffs fail to allege a single fact

---

[1] The issues of whether Plaintiffs' claims are jurisdictionally time-barred, barred by res judicata, and whether they constitute an impermissible attack on a final confirmation order, are being briefed and submitted in a Motion to Dismiss separately filed by Weil, Gotshal & Manges, LLP on behalf of all Defendants. Therefore, these issues are not addressed in this Motion.

HIGHLAND CAPITAL MANAGEMENT, L.P.'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS     PAGE 1

demonstrating that Highland has done anything wrong.  Accordingly, Highland requests that the Court dismiss this action pursuant to Federal Rule of Civil Procedure 12(b)(6).

**II.**

**FACTUAL AND PROCEDURAL BACKGROUND**

**A.    Factual Background.**

Plaintiffs are 275 investors who collectively held over $205,000,000 in debentures issued by Genesis.[2]  The Complaint alleges that Goldman, Sachs & Co. ("Goldman") and Mellon Bank, N.A. ("Mellon"), the lead bank in the bank group that included Highland, were "direct beneficiaries" of alleged improper accounting maneuvers perpetrated by Genesis's Chief Financial Officer, George Hager.[3]  Highland, along with several other investment banks, including Defendants Goldman and Mellon (Highland, Goldman, and Mellon are collectively referred to as the "Defendants"), owned senior debt participations and allegedly conspired with Genesis management to file Genesis into bankruptcy and "cram down" a reorganization plan that would eliminate the junior creditors, including Plaintiffs, from recovering anything out of the bankruptcy.[4]

Specifically, Plaintiffs allege that Defendants misled the Court and the junior creditors by representing that the enterprise value of Genesis was approximately $1.3 billion.[5]  Plaintiffs allege that the Defendants deceived the Court into accepting this valuation, and thus persuaded the Court to approve a Plan that allowed the senior creditors to gain 94% of the equity of Genesis as a result

---

[2]      *See* Complaint at ¶ 1.

[3]      *See id.* at ¶¶ 9, 11.

[4]      *See id.*

[5]      *See id.* at ¶ 3.

---

of the bankruptcy.[6]   Additionally, Plaintiffs allege that as a result of this scheme, Plaintiffs received "next to nothing" out of the bankruptcy.[7]

On June 22, 2000, Genesis filed its Chapter 11 Bankruptcy Petition.[8]  On October 2, 2001, the Bankruptcy Court issued an Order confirming a Joint Plan of Reorganization for Genesis under Chapter 11 of the Bankruptcy Code (the "Plan").[9]  Plaintiffs allege that the Plan canceled all of the Genesis debentures in exchange for nominal consideration, while transferring over 94% of the equity in Genesis to the senior creditors, including Defendants.[10]

On January 27, 2004, almost two and a half years after the Plan was confirmed, Plaintiffs filed this action in the Supreme Court of the State of New York.  Defendants removed the action to the New York federal courts and, by agreement among all of the parties, the case was transferred to this Court.

**B.    Noticeably Absent From Plaintiffs' Complaint Are Any Factual Allegations Of Wrongdoing Against Highland.**

Plaintiffs' Complaint fails to allege any legally cognizable claims against Highland in any of its 192 paragraphs.  Although Plaintiffs set out an extremely long (86-page) description of how they were "defrauded" by the senior lenders, the only "allegations" even mentioning Highland are described below:

- Paragraph 31:  The Genesis senior lender group was initially headed by Mellon Bank, but by March 2000, Goldman and **Highland** had acquired so many of the debt participations that they were invited to join Mellon on the seven member Senior Lending Steering Committee.  (emphasis added).

---

[6]    *See id.*

[7]    *See id.*

[8]    *See id.* at ¶ 2.

[9]    *See id.* at ¶ 7.

[10]   *See id.*

- **Paragraph 126:** Goldman and **Highland** made an all-out, successful effort to persuade the unsecured creditors committee and its financial advisors, Houlihan Lokey, that the Mariner business was likely to be lost and that a downward adjustment of EBITDA was therefore warranted. (emphasis added).

- **Paragraph 154:** In July of 2000, Goldman, **Highland,** Mellon and two other senior creditors committed to providing debtor-in-possession ("DIP") financing of $200 million for Genesis and $50 million for MC. (emphasis added).

- **Paragraph 161 (p. 72):** Goldman orchestrated and directed the scheme described herein, with the cooperation of Mellon and **Highland**. Goldman and **Highland** aggressively purchased Genesis debt participations at drastic discounts, seeking an opportunity to double or triple their money within the space of 18 months. (emphasis added).

- **Paragraph 163:** After that point Goldman, Mellon and **Highland**, acting in concert, effectively controlled all of the Genesis purse strings for the duration of the bankruptcy, and they also controlled the financial fate of the individual Genesis senior managers, including the four individual defendants named in this action. (emphasis added).

- **Paragraph 164:** Goldman, Mellon and **Highland** procured the cooperation of Genesis senior management by offering them immensely lucrative retention bonuses, including stock grants, options and the forgiveness of debt they had incurred to purchase Genesis shares. (emphasis added).

- **Paragraph 168:** James Dondero of **Highland Capital** (the second largest holder) also sits on the Genesis Board and its audit committee. (emphasis added).

- **Paragraph 181: Highland Partners,** another member of the senior lender group, is the second largest shareholder, with just over 7% of the outstanding stock. **Highland Partners** has placed one of his executives, James D. Dondero, onto the Genesis Board as well. (emphasis added).

- **Paragraph 185:** Goldman, Mellon and **Highland** controlled this entire process, periodically reviewing in detail the financial information prepared by Genesis management on a monthly basis, to assure that EDITDA data were matching the "target" of about $158 million and that sufficient adjustments were being made to the budgeted EDITDA to bring about the same result. They offered enormous financial inducements to Genesis management to perpetrate this fraud, and they were the principle beneficiaries of the fraud. (emphasis added).

- **Paragraph 191:** Goldman, Mellon and **Highland** were aware that the financial information being released by Genesis, and upon which the reorganization valuation of the Company would be determined, was false and misleading and had

been designed to defraud the junior creditors of Genesis, and would be relied upon by the plaintiffs and the Court. (emphasis added).

- Paragraph 192: Goldman, Mellon and **Highland** conspired with, orchestrated, and rewarded Genesis and its management, and in particular Defendant George Hager, for perpetrating this fraud. (emphasis added).

Plaintiffs' Complaint fails to provide any specific allegations of wrongdoing against Highland (or even any factual allegations that Highland, as opposed to other Defendants, did anything at all). Instead, Plaintiffs merely make conclusory, unsupported allegations about Highland's general participation in a conspiracy.

## III.

## ARGUMENTS AND AUTHORITIES

**A.     Plaintiffs' Complaint Should Be Dismissed Because It Fails To State A Claim Upon Which Relief Can Be Granted.**

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a motion to dismiss may be granted if, accepting all well-pleaded allegations in the complaint as true, and viewing them in the light most favorable to the Plaintiffs, Plaintiffs are not entitled to relief.[11]  In deciding a Rule 12(b)(6) motion, however, the Court need not "accept as true unsupported conclusions and unwarranted inferences."[12]  Courts are instructed to "view the complaint as a whole and to base rulings not upon the presence of mere words but, rather, upon the presence of a factual situation which is or is not justiciable."[13]

Plaintiffs have asserted three claims against all of the Defendants: 1) fraud; 2) conspiracy to commit fraud; and 3) gross negligence.  Plaintiffs, however, fail to provide factual support for

---

[11]     *See Maio v. Aetna, Inc.*, 221 F.3d 472, 481-82 (3d Cir. 2000).

[12]     *See City of Pittsburgh v. West Penn Power Co.*, 147 F.3d 256, 263 n. 13 (3d Cir. 1998).

[13]     *See id.* at 263.

essential elements of each of these claims. Therefore, pursuant to Federal Rule of Civil Procedure 12(b)(6), Plaintiffs' claims should be dismissed because they fail to state a claim upon which relief can be granted.

1. **Plaintiffs' fraud claim must be dismissed because Plaintiffs failed to comply with Federal Rule of Civil Procedure 9(b).**

Federal Rule of Civil Procedure 9(b) requires that in a pleading alleging fraud "the circumstances constituting fraud or mistake shall be stated with particularity."[14] Specifically, a plaintiff must provide sufficient factual detail regarding the circumstances of the alleged fraud to place the defendants on notice of the precise misconduct charged.[15] The lack of any detail regarding acts by Highland in Plaintiffs' Complaint fails to place Highland on notice of the nature of the misconduct with which they are charged.

Specifically, Plaintiffs failed to allege that any specific misstatements were made by Highland or any of its representatives. Further, Plaintiffs failed to provide any information related to when and where such representations were allegedly made by Highland. As such, Highland has not been adequately put on notice of the alleged misconduct and, therefore, Plaintiffs' fraud claims must be dismissed pursuant to Federal Rule of Civil Procedure 9(b).

2. **Plaintiffs' fraud claim must be dismissed because Plaintiffs do not adequately allege reliance on the alleged misrepresentations.**

The general elements of fraud are (1) a false representation, (2) made either with knowledge or belief or with ruthless indifference to its falsity, (3) with an intent to induce the plaintiff to act or refrain from acting, (4) the plaintiff's action or inaction resulted from a

---

[14]     FED. R. CIV. P. 9.

[15]     *See Seville Indus. Mach. Corp. v. Southmost Mach. Corp.,* 742 F.2d 786, 791 (3d Cir. 1984).

HIGHLAND CAPITAL MANAGEMENT, L.P.'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS                                                                                                    PAGE 6

reasonable reliance on the representation, and (5) reliance damaged the defendant.[16]  Noticeably

absent from Plaintiffs' Complaint are any facts supporting Plaintiffs' allegation that they relied on

any misrepresentations by Defendants, including Highland.   In their Complaint, Plaintiffs

generally describe their purported reliance as follows:

> Plaintiffs relied on the integrity of the Budgeted EBITDA and
> DATA the LTM EBITDA data.  More importantly, the Bankruptcy
> Court relied on that information in approving the Plan and
> cramming it down on the debenture holders, despite their
> objections.[17]

Plaintiffs fail to describe what specific acts they took or what acts they refrained from

taking in reliance upon Highland's representations.     Instead, Plaintiffs make generalized

statements that they relied on certain data.[18]  Such generalized conclusory statements, absent any

specific facts to indicate that acts or reliance occurred, are insufficient to state a cause of action

for fraud.[19]

Upon realizing that their fraud claims would fail because of this lack of reliance, Plaintiffs

attempt an alternative argument that, instead of Plaintiffs relying on the alleged

misrepresentations, it was the Bankruptcy Court that relied on the alleged misrepresentations.[20]

This, of course, is irrelevant.  Plaintiffs must demonstrate that they relied on the representations,

not that some third party, including the Court, relied on the misrepresentations.

---

[16]  *See Browne v. Robb*, 583 A.2d 949, 955 (Del. 1990).

[17]  *See* Complaint at ¶ 188.

[18]  In fact, Plaintiffs did not rely on anything said or done by Defendants.  Plaintiffs did not accept any
valuations proposed by Defendants in the bankruptcy.  To the contrary, Plaintiffs were the principal objecting parties
to the confirmation of the Plan.

[19]  *See Brug v. Enstar Group, Inc.*, 755 F. Supp. 1247, 1254 (D. Del. 1991).

[20]  *See* Complaint at ¶ 188.

---

HIGHLAND CAPITAL MANAGEMENT, L.P.'S MEMORANDUM IN SUPPORT OF ITS MOTION TO
DISMISS                                                                          PAGE 7

Additionally, Plaintiffs fail to allege any facts from which fraudulent knowledge on the part of Highland can be inferred. The Complaint states broadly that "Goldman, Mellon, and Highland controlled this entire process, periodically reviewing in detail the financial information prepared by Genesis Management on a monthly basis. . . ."[21] These general allegations do not claim that Highland was actually aware of any falsity in the misrepresentations and more importantly, no supporting facts are included which might indicate that any of the Defendants had such knowledge. Therefore, Plaintiffs' fraud cause of action must be dismissed pursuant to Federal Rule of Civil Procedure 12 (b)(6).

3.  **Plaintiffs' conspiracy to commit fraud claim must be dismissed because Plaintiffs fail to allege acts that would support such a claim.**

The Third Circuit has long required that claims of conspiracy be supported by allegations of specific facts.[22] General allegations of a conspiracy are inadequate.[23] Instead, allegations of a conspiracy must be particularized, such as including the period of the conspiracy, the object of the conspiracy, and certain actions of the alleged conspirators taken to achieve that purpose.[24]

Plaintiffs' Complaint fails to allege *any* acts taken by Highland in support of any alleged conspiracy. For example, nowhere in the Complaint is there any allegation that any employees of Highland made any false representations or aided and abided another individual making such false representations. Therefore, Plaintiffs' conspiracy to commit fraud claim must be dismissed because it fails to state a claim upon which relief can be granted.

---

[21]  *See id.* at ¶ 185.

[22]  *See Kalmanovitz v. G. Heileman Brewing Co.*, 595 F. Supp. 1385, 1400 (D. Del. 1984) (citing *Black & Yates, Inc. v. Mahogany Ass'n.*, 129 F.2d 227 (3d Cir. 1942)).

[23]  *See Kalmanovitz*, 595 F. Supp. at 1400.

[24]  *See id.* at 1400-01.

---

4.    **Plaintiffs' gross negligence claim must be dismissed because it fails to state a claim on which relief can be granted.**

As explained above, Plaintiffs' Complaint fails to allege any negligent (much less grossly negligent) acts taken by Highland. In addition, gross negligence requires that there be a legal duty between Highland and Plaintiffs.[25] In its Complaint, Plaintiffs allege that the Defendants, including Highland, owed a "duty of care" to Plaintiffs because Defendants were debtors in the bankruptcy proceeding; they were senior creditors of the debtor; and because they were a proponent of the bankruptcy organization plan.[26] During the bankruptcy proceedings, Highland was one of many creditors competing with Plaintiffs to collect on their respective claims. As a matter of law, Highland did not owe a duty to Plaintiffs because creditors simply do not owe a duty to other creditors in a bankruptcy proceeding.[27] Therefore, Plaintiffs' gross negligence claim must be dismissed as a matter of law.

B.    **Plaintiffs' Complaint Must Be Dismissed Against Highland Because Plaintiffs Do Not Have Standing To Assert The Claims.**

Plaintiffs' Complaint fails to state a claim upon which relief can be granted because even if these claims were viable, they were owned by the debtor. The underlying basis of Plaintiffs' alleged losses, and thus their attempt to make a private right of action claims against Highland and the other Defendants, is the pre-petition debt originally owed to Plaintiffs by Genesis.[28] Therefore, Plaintiffs' alleged losses and purported claims derive from the pre-petition debtor-

---

[25]    *See City of Philadelphia v. Beretta U.S.A. Corp.*, 277 F.3d 415, 422 n. 9 (3d Cir. 2002).

[26]    *See* Complaint at ¶ 195.

[27]    *See In re W.T. Grant Co.*, 699 F.2d 599, 610 (2d Cir. 1983) ("[A] creditor is under no fiduciary obligation to its debtor or to other creditors of the debtor in the collection of its claims.").

[28]    *See* Complaint at ¶ 1.

---

creditor relationship between them and Genesis and alleged actions aimed at devaluing the bankruptcy estate.

These claims, however, belong to the bankruptcy estate of Genesis, not Plaintiffs. A cause of action belongs to the bankruptcy estate if the claim alleges only indirect harm to a creditor and the debtor could have raised a claim for its direct injury under applicable law.[29] Courts are instructed to "look to the injury for which relief is sought and consider whether it is peculiar and personal to the claimant or general and common to the corporation and creditors," in order to determine whether the bankruptcy estate or a particular creditor owns a cause of action.[30] A cause of action belongs to the corporation if the injury is common to the corporation and the creditors.[31]

Defendants' "fraud," if all of Plaintiffs' allegations were true, was committed on the estate, which would be the only entity with standing, and which, far from making a claim, sponsored the Plan Plaintiffs now seek to attack.[32] Plaintiffs' damages, if any, are derived from Defendants' alleged wrongdoing that devalued the Genesis estate. Because these alleged damages are common to Plaintiffs <u>and</u> to Genesis, Plaintiffs lack standing to bring their claims.[33] Plaintiffs' claims are for actions regarding the valuation of the estate, which do not depend on

---

[29]     See *Schertz Cebolo Universal City v. Wright, (In re Educator's Group Health Trust)*, 25 F.3d 1281, 1284-85 (5th Cir. 1994); *Goldin v. Primavera Familienstiftung, TAG Associates, Ltd., (In re Granite Partners)*, 194 B.R. 318, 325 (Bankr. S.D.N.Y. 1996).

[30]     See *In re E.F. Hutton Southwest Properties II, Ltd.*, 103 B.R. 808, 812 (Bankr. N.D. Tex. 1989) (citation omitted); *S.I. Acquisition., Inc. v. Eastway Delivery Serv., Inc. (In re S.I. Acquisition, Inc.)*, 817 F.2d 1142, 1151-52 (5th Cir. 1987).

[31]     See *id.*

[32]     Moreover, to the extent the senior lenders are alleged to have committed wrongdoing through any of the professionals and representatives including those of Mellon Bank, NA as agent for the senior lenders, such claims were released by the Genesis estate. *See* Joint Plan of Reorganization, filed July 6, 2001 at ¶ 5.10; Opinion on Confirmation, dated September 12, 2001 at 21-24.

[33]     See *In re E.F. Hutton Southwest Properties II, Ltd.*, 103 B.R. at 812; *In re S.I. Acquisition, Inc.*, 817 F.2d at 1151.

---

dealings or reliance by any one creditor or creditor group.[34]  Therefore, Plaintiffs' claims should

be dismissed as a matter of law.

IV.

**REQUEST FOR RELIEF**

WHEREFORE, Highland requests that the Court dismiss Plaintiffs' Complaint, and grant

Highland any additional relief the Court finds necessary and just.

Dated:  April 23, 2004

Respectfully submitted,

Daniel K. Hogan, Esquire (#2814)
1701 Shallcross Avenue, Suite C
Wilmington, Delaware   79806
(302) 656-7540

and

LACKEY HERSHMAN, L.L.P.
Paul B. Lackey
State Bar No. 00791061
Michael P. Aigen
State Bar No. 24012196
3102 Oak Lawn Avenue
Suite 700
Dallas, Texas 75219-4241
Telephone:     (214) 560-2201
Telecopier:    (214) 560-2203

**ATTORNEYS FOR DEFENDANT
HIGHLAND CAPITAL MANAGEMENT, L.P.**

---

[34]     *See id.*

HIGHLAND CAPITAL MANAGEMENT, L.P.'S MEMORANDUM IN SUPPORT OF ITS MOTION TO
DISMISS                                                                                    PAGE 11

## CERTIFICATE OF SERVICE

I certify that on April 23, 2004, I caused a true and correct copy of the foregoing document to be served on all counsel of record.

Adam P. Strochak
Joanne M. Guerrera
Weil, Gotshal & Manges LLP
1501 K Street, NW, Suite 100
Washington, DC 20005

Michael F. Walsh
Diane Harvey
Gary T. Holtzer
Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, New York 10153

Russell C. Silberglied
Mark D. Collins
Richards, Layton & Finger, P.A.
One Rodney Square
P.O. Box 551
Wilmington, Delaware 19899

Stanley M. Grossman
H. Adam Prussin
Pomerantz Haudek Block
    Grossman & Gross LLP
100 Park Avenue, 26th Floor
New York, New York 10017

Barry G. Sher, Esq.
Fried, Frank, Harris, Shriver
    & Jacobson LLP
One New York Plaza
New York, New York 10004

Richard S. Toder, Esq.
Menachem O. Zelmanovitz, Esq.
Morgan, Lewis & Bockius LLP
101 Park Avenue
New York, New York 10178

Steven K. Kortanek
Morton R. Branzburg
Klehr Harrison Harvey
Branzburg & Ellers, LLP
919 Market Street, Suite 1000
Wilmington, DE 19809-3062

Peter J. Duhig
Teresa K.D. Currier
Klett Rooney Lieber & Schorling, PC
The Brandywine Building
1000 West Street, Suite 1410
Wilmington, DE 19801

George V. Hager
c/o Robert S. Brady
Young Conaway Stargatt & Taylor LLP
1000 West Street, 17th Floor
Wilmington, DE 19899-0391

George V. Hager
c/o Paul V. Shalhoub
Willkie Farr & Gallagher, LLP
787 7th Avenue
New York, NY 10019-6099

Steven Russo
Sive Paget & Riesel, PC
460 Park Avenue
New York, NY 10022

R. Bruce McNew
Taylor & McNew, LLP
3711 Kennett Pike, Suite 210
Greenville, DE 19807

DANIEL K. HOGAN

**AA. 1775**