## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | : |
| | : |
| Genesis Health Ventures, Inc., *et al.*, | : Civ. Act. No. 05-CV-427 (KAJ) |
| | : Related to Case No. 00-2692 (JHW) |
| Debtors, | : Jointly Administered |
| | : |
| Richard Haskell, *et al.*, | : |
| | : |
| Plaintiffs-Appellants, | : |
| | : |
| v. | : Adv. Pro. No.: 04-53375 (JHW) |
| | : |
| Goldman, Sachs & Co., et al., | : VOLUME V OF V |
| | : |
| Defendants-Appellees. | : |

## DEFENDANTS-APPELLEES' APPENDIX IN SUPPORT OF THEIR BRIEF IN OPPOSITION TO THE APPEAL OF RICHARD HASKELL ET AL. FROM THE MAY 10, 2005 ORDER OF THE BANKRUPTCY COURT

Steven K. Kortanek
Morton R. Branzburg
KLEHR, HARRISON, HARVEY,
BRANZBURG & ELLERS LLP
919 Market Street, Suite 1000
Wilmington, Delaware 19809-3062
(302) 426-1189
        -and-
Sheldon Raab
Eric A. Hirsch
FRIED, FRANK, HARRIS, SHRIVER &
JACOBSON LLP
One New York Plaza
New York, New York 10004-1980
(212) 859-8000

Attorneys for Defendant Goldman,
Sachs & Co.

Russell C. Silberglied (No. 3462)
Jason M. Madron (No. 4431)
RICHARDS, LAYTON & FINGER, P.A.
P.O. Box 551
Wilmington, Delaware 19899
(302) 651-7700
        - and -
Michael F. Walsh
Diane Harvey
Gary T. Holtzer
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
(212) 310-8000
        - and -
Adam P. Strochak
Joanne M. Guerrera
WEIL, GOTSHAL & MANGES LLP
1501 K Street, NW, Suite 100
Washington, DC 20005
(202) 682-7000

Attorneys for Defendant NeighborCare Inc.
(sued herein as Genesis Health Ventures, Inc.)

Daniel K. Hogan (No. 2814)
THE HOGAN FIRM
1311 Delaware Avenue
Wilmington, Delaware 19806
(302) 656-7540
    - and -
Paul Lackey
Michael Aigen
LACKEY, HERSHMAN LLP
3102 Oak Lawn Avenue, Suite 700
Dallas, Texas 75219
(214) 560-2206

Attorneys for Defendant Highland Capital
Management, L. P.

Robert S. Brady (No. 2847)
YOUNG CONAWAY STARGATT &
TAYLOR LLP
1000 West Street, 17th Floor
Wilmington, Delaware 19899-0391
(302) 571-6690
    - and -
Paul V. Shalhoub
WILLKIE FARR & GALLAGHER LLP
787 7th Avenue
New York, New York 10019-6099
(212) 728-8000

Attorneys for Defendant George V. Hager

Teresa K.D. Currier
Peter J. Duhig (No. 4024)
KLETT ROONEY LIEBER &
SCHORLING, PC
The Brandywine Building
1000 West Street, Suite 1410
Wilmington, Delaware 19801
(302) 552-4200

Attorneys for Defendant Mellon Bank, N.A.

    - and -

Richard S. Toder
Menachem O. Zelmanovitz
MORGAN, LEWIS & BOCKIUS LLP
101 Park Avenue
New York, New York 10178
(212) 309-6000

Attorneys for Defendant Mellon Bank, N.A.
with respect to all Plaintiffs other than
Charles L. Grimes, Louis IG Ireland Trust, C.
Yvonne Cooke, Jane G. Brown, Serena R.
Schwartz and Gordon W. Chaplin

    - and -

Steven Russo
SIVE, PAGET & RIESEL, P.C.
460 Park Avenue
New York, New York 10022
(212) 421-2150

Attorneys for Defendant Mellon Bank N.A.
with respect to Plaintiffs Charles L. Grimes,
Louis IG Ireland Trust, C. Yvonne Cooke,
Jane G. Brown, Serena R. Schwartz and
Gordon W. Chaplin

2

## UNITED STATES BANKRUPTCY COURT
### DISTRICT OF DELAWARE

| | | |
|---|---|---|
| **In re** | : | **Chapter 11 Cases No.** |
| | : | |
| **GENESIS HEALTH VENTURES INC.,** *et al.,* | : | **00-2692 (JHW)** |
| | : | |
| Debtors. | : | |
| | : | **(Jointly Administered)** |

| | | |
|---|---|---|
| **In re** | : | **Chapter 11 Cases No.** |
| | : | |
| **MULTICARE AMC, INC.,** *et al.,* | : | **00-2494 (JHW)** |
| | : | |
| Debtors. | : | |
| | : | **(Jointly Administered)** |

## DISCLOSURE STATEMENT FOR
### DEBTORS' JOINT PLAN OF REORGANIZATION

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
(212) 310-8000

Co-Attorneys for the Genesis Debtors
   as Debtors and Debtors in Possession

RICHARDS, LAYTON & FINGER P.A.
One Rodney Square
P.O. Box 551
Wilmington, Delaware 19899
(302) 658-6541

Co-Attorneys for the Genesis Debtors
   as Debtors and Debtors in Possession

WILLKIE FARR & GALLAGHER
787 Seventh Avenue
New York, New York 10019
(212) 728-8000

Co-Attorneys for the Multicare Debtors
   as Debtors and Debtors in Possession

YOUNG CONAWAY STARGATT &
TAYLOR LLP
11th Floor, Wilmington Trust Company
P.O. Box 391
Wilmington, Delaware 19899-0391
(302) 571-6600

Co-Attorneys for the Multicare Debtors
   as Debtors and Debtors in Possession

Dated:  July 6, 2001

# TABLE OF CONTENTS

Page

I.   Introduction .................................................................................................. 3

II.  Treatment of Creditors and Shareholders Under the Plan of Reorganization ................. 5

    A.   Merger of Genesis and Multicare ................................................................ 5

    B.   Summary of New Capital Structure of Reorganized Genesis ............................. 6

    C.   Summary of Classification and Treatment ..................................................... 7

    D.   Allocation of Value Under the Plan of Reorganization ................................... 9

        1.   Senior Lender Deficiencies ................................................................. 10

        2.   Compromise and Settlement with Unsecured Classes ........................... 11

        3.   Exceptions to the Liens of the Senior Lenders ..................................... 11

    E.   Description of the Genesis Classes .............................................................. 12

        1.   Genesis Other Secured Claims (Class G1) ............................................ 12

        2.   Genesis Senior Lender Claims (Class G2) ............................................. 16

        3.   Genesis Priority Non-Tax Claims (Class G3) ......................................... 19

        4.   Genesis General Unsecured Claims (Class G4) ...................................... 19

        5.   Genesis Senior Subordinated Note Claims (Class G5) ............................ 20

        6.   Genesis Intercompany Claims (Class G6) ............................................. 21

        7.   Genesis Punitive Damage Claims (Class G7) ......................................... 21

        8.   Genesis Series G Preferred Stock Interests (Class G8) ........................... 22

        9.   Genesis Series H Preferred Stock Interests (Class G9) ........................... 22

        10.  Genesis Series I Preferred Stock Interests (Class G10) .......................... 22

        11.  Genesis Common Stock Interests (Class G11) ....................................... 22

    F.   Description of the Multicare Classes ........................................................... 23

        1.   Multicare Other Secured Claims (Class M1) .......................................... 23

        2.   Multicare Senior Bank Claims (Class M2) ............................................. 24

        3.   Multicare Priority Non-Tax Claims (Class M3) ....................................... 25

        4.   Multicare General Unsecured Claims (Class M4) .................................... 25

        5.   Multicare Senior Subordinated Note Claims (Class M5) .......................... 26

        6.   Multicare Intercompany Claims (Class M6) ........................................... 26

        7.   Multicare Punitive Damage Claims (Class M7) ....................................... 27

        8.   Multicare Common Stock Equity Interests (Class M8) ............................. 27

    G.   Administrative Expenses for the Genesis Debtors and the Multicare
         Debtors ............................................................................................... 27

i

TABLE OF CONTENTS
(continued)

Page

| | | | |
|---|---|---|---|
| | 1. | Debtor in Possession Financing | 28 |
| | 2. | Federal Medicare Claims | 28 |
| | 3. | State Medicaid Claims | 29 |
| | 4. | Fees and Expenses of Professionals | 29 |
| | 5. | Payments to Employees | 29 |
| | 6. | Fees and Expenses of Indenture Trustees | 29 |
| H. | | Securities to be Issued Under the Plan of Reorganization | 29 |
| | 1. | New Senior Notes | 29 |
| | 2. | New Convertible Preferred Stock | 30 |
| | 3. | New Common Stock | 31 |
| | 4. | New Warrants | 31 |
| | 5. | New Multicare Common Stock | 31 |
| I. | | Deemed Consolidation of Certain Debtors for Purposes of the Plan | 32 |
| | 1. | Genesis Debtors | 32 |
| | 2. | Multicare Debtors | 33 |
| | 3. | Proviso | 34 |
| J. | | Securities Law Matters | 34 |
| | 1. | Issuance and Resale of New Securities Under the Plan of Reorganization | 35 |
| | 2. | Listing | 37 |
| | 3. | Secondary Stock Offering | 37 |
| | 4. | Registration Rights | 37 |
| K. | | Settlement and Compromise | 37 |
| | 1. | Settlement with the Federal Government | 37 |
| | 2. | Settlement Between the Genesis Debtors and the Multicare Debtors | 38 |
| L. | | Reservation of "Cram Down" Rights | 39 |
| III. | | Voting Procedures And Requirements | 39 |
| A. | | Vote Required for Acceptance by a Class | 40 |
| B. | | Classes Not Entitled to Vote | 40 |
| C. | | Voting | 40 |
| IV. | | Financial Information, Projections, And Valuation Analyses | 41 |
| A. | | Introduction | 41 |

ii

TABLE OF CONTENTS
(continued)

Page

B.    The Genesis Debtors ...................................................................................42

    1.    Operating Performance ....................................................................42

    2.    Five Year Projections.......................................................................44

    3.    Going Concern Valuation ...............................................................45

C.    The Multicare Debtors ...............................................................................47

    1.    Operating Performance ....................................................................47

    2.    Five Year Projections.......................................................................47

    3.    Going Concern Valuation ...............................................................48

D.    Reorganized Genesis (Merger of Genesis and Multicare) ........................50

    1.    Operating Performance ....................................................................50

    2.    Five Year Projections.......................................................................50

V.    Business Description and Reasons for Chapter 11 ..............................................51

A.    The Debtors' Businesses .............................................................................51

    1.    Relationship Between the Genesis Debtors and the Multicare
       Debtors..............................................................................................51

    2.    Pharmacy and Medical Supply Services (Genesis Debtors)...................52

    3.    Inpatient Services (Genesis Debtors and Multicare Debtors)................53

    4.    Other Services (Genesis Debtors and Multicare Debtors).......................53

    5.    Revenue Sources...............................................................................54

    6.    Personnel...........................................................................................54

B.    Events Leading to the Commencement of the Chapter 11 Cases .................55

    1.    Medicare Reimbursement ................................................................55

    2.    Medicaid Reimbursement ................................................................57

    3.    Debt Burden......................................................................................57

C.    Prepetition Negotiations ............................................................................58

D.    Pending Litigation and Other Proceedings ...............................................58

    1.    The Genesis and Vitalink Actions Against the Manor Care
       Entities..............................................................................................58

    2.    The Vitalink Action Against Omnicare and Heartland........................60

    3.    The Manor Care Action Against Genesis in Delaware.........................60

    4.    The Manor Care Action Against Genesis in Ohio ...............................60

    5.    Age Institute......................................................................................61

    6.    Qui Tam Suits ...................................................................................61

iii

TABLE OF CONTENTS
(continued)

Page

| | | | |
|---|---|---|---|
| | 7. | Personal Injury and Employment Law Litigation | 62 |
| | 8. | Multicare Litigation | 63 |
| | 9. | Ordinary Course Litigation | 63 |
| VI. | Significant Events During the Reorganization Cases | | 64 |
| | A. | Filing and First Day Orders | 64 |
| | B. | Appointment of the Creditors' Committee | 65 |
| | | 1. | Genesis Creditors' Committee | 65 |
| | | 2. | Multicare Creditors' Committee | 66 |
| | C. | DIP Credit Agreements | 66 |
| | | 1. | Genesis Debtors | 66 |
| | | 2. | Multicare Debtors | 67 |
| | D. | Cash Collateral Protection | 67 |
| | | 1. | Genesis Debtors | 67 |
| | | 2. | Multicare Debtors | 68 |
| | E. | Key Employee and Executive Retention Programs | 68 |
| | | 1. | First Retention Program | 69 |
| | | 2. | Second Retention Program | 69 |
| | F. | Claims Process and Bar Date | 69 |
| | | 1. | Schedules and Statements | 69 |
| | | 2. | Bar Date | 70 |
| | G. | ElderTrust Transactions | 70 |
| | H. | CareFirst Transactions | 70 |
| | I. | Swap Settlement | 71 |
| | J. | Alternative Dispute Resolution Procedures | 71 |
| | K. | Settlement with the Multicare Debtors | 72 |
| | L. | Appointment of Fee Auditor | 73 |
| | M. | Motion for Appointment of Trustee in the Multicare Reorganization Cases | 73 |
| | N. | Potential Purchase of Pharmacy Business of Mariner Post-Acute Networks and Mariner Health Group | 73 |
| VII. | Governance of the Reorganized Debtors | | 74 |
| | A. | Board of Directors of Reorganized Genesis | 74 |
| | B. | Senior Management of Reorganized Genesis | 74 |

iv

**TABLE OF CONTENTS**
**(continued)**

Page

VIII.  Other Aspects of the Plan of Reorganization ................................................. 75

    A.  Analysis of the Proposed Merger of Genesis and Multicare ........................ 75

    B.  Mechanics of the Merger ............................................................................ 76

    C.  Exit Facility -- Condition Precedent to Effective Date ................................ 76

    D.  Distributions Under the Plan of Reorganization ......................................... 77

        1.  Timing and Conditions of Distributions ............................................ 77

        2.  Certain Claims Allowed ....................................................................... 78

        3.  Procedures for Treating Disputed Claims Under the Plan of
           Reorganization .................................................................................... 78

    E.  Treatment of Executory Contracts and Unexpired Leases ........................... 79

        1.  Contracts and Leases Not Expressly Rejected are Assumed ................. 79

        2.  Cure of Defaults .................................................................................. 80

        3.  Rejection Claims ................................................................................. 80

    F.  Management Incentive Plan ........................................................................ 80

    G.  Releases ..................................................................................................... 80

    H.  Effect of Confirmation ............................................................................... 81

        1.  Discharge of Claims and Termination of Equity Interests .................... 81

        2.  Indemnification ................................................................................... 82

        3.  Exculpation ......................................................................................... 82

    I.  Preservation of Certain Avoidance Actions ................................................ 82

    J.  Miscellaneous Provisions ........................................................................... 82

IX.  Certain Factors To Be Considered ..................................................................... 82

    A.  Certain Bankruptcy Considerations ........................................................... 82

    B.  Risks Relating to the Plan Securities ......................................................... 83

        1.  Variances from Projections ................................................................. 83

        2.  Substantial Leverage; Ability to Service Debt ..................................... 83

        3.  Significant Holders .............................................................................. 83

        4.  Lack of Trading Market ...................................................................... 84

        5.  Dividend Policies ................................................................................ 84

        6.  Restrictions on Transfer ..................................................................... 84

    C.  Risks Associated with the Business ........................................................... 84

X.  Confirmation of the Plan of Reorganization ....................................................... 85

v

**TABLE OF CONTENTS**
(continued)

Page

A.     Confirmation Hearing ...........................................................................85

B.     General Requirements of Section 1129 ................................................86

C.     Best Interests Tests .............................................................................87

D.     Liquidation Analyses ...........................................................................88

      1.     The Genesis Debtors................................................................89

      2.     Multicare Debtors ...................................................................94

E.     Feasibility ...........................................................................................99

F.     Section 1129(b)...................................................................................99

      1.     No Unfair Discrimination .........................................................99

      2.     Fair and Equitable Test ...........................................................99

XI.   Alternatives to Confirmation and Consummation of the Plan of Reorganization ..........101

A.     Liquidation Under Chapter 7 ..............................................................101

B.     Alternative Plan of Reorganization......................................................102

XII.  Certain Federal Income Tax Consequences of the Plan of Reorganization....................102

A.     Consequences to the Debtors ..............................................................103

      1.     Cancellation of Debt ..............................................................103

      2.     Limitations on Loss Carryforwards and Other Tax Benefits...............104

      3.     Alternative Minimum Tax .......................................................107

      4.     Issuance of the New Senior Notes ...........................................107

B.     Consequences to Holders of Certain Claims ........................................108

      1.     Consequences to All Holders (Including Holders Whose Claims Are Against Any of the Multicare Debtors) Who Receive Cash, New Senior Notes, New Convertible Preferred Stock, New Common Stock, or New Warrants, Other Than Holders of Claims Against Genesis That Constitute "Securities"...........108

      2.     Consequences to Holders of Genesis Senior Subordinated Note Claims and Genesis General Unsecured Claims That Constitute "Securities"...........................................110

      3.     Consequences to Holders of Genesis Senior Lender Claims That Constitute "Securities".....................................110

      4.     Distributions in Discharge of Accrued Interest .........................111

      5.     Market Discount ....................................................................111

      6.     Treatment of Distributions on New Convertible Preferred Stock and New Common Stock ......................................112

vi

TABLE OF CONTENTS
(continued)

Page

7.   Subsequent Sale of New Common Stock or New Convertible
     Preferred Stock ............................................................. 114

8.   Conversion of New Convertible Preferred Stock ................................. 114

9.   Redemption of New Convertible Preferred Stock ................................ 115

10.  Ownership and Disposition of New Warrants ................................ 115

11.  Interest and Original Issue Discount on the New Senior Notes............ 116

12.  Information Reporting and Withholding ................................ 116

XIII.  Conclusion ................................................................................. 117

vii

# GLOSSARY

The terms in the following table are used in the Disclosure Statement and Plan of Reorganization. These definitions are summaries. Please refer to the Plan of Reorganization for the complete definitions of these terms.

| | |
|---|---|
| *Administrative Expense Claim* | Any expense relating to the administration of the chapter 11 cases, including actual and necessary costs and expenses of preserving the Debtors' estates and operating the Debtors' businesses, any indebtedness or obligations incurred or assumed during the chapter 11 cases, allowances for compensation and reimbursement of expenses to the extent allowed by the Bankruptcy Court, claims arising under (i) that certain Revolving Credit and Guaranty Agreement, dated as of June 22, 2000, as amended, among Genesis, certain subsidiary Genesis Debtors named therein, Mellon Bank N.A., as administrative agent, and the lenders party thereto, or (ii) that certain Revolving Credit and Guaranty Agreement, dated as of June 22, 2000, as amended, among The Multicare Companies, Inc., certain subsidiary Multicare Debtors named therein, Mellon Bank N.A., as administrative agent, and the lenders party thereto, and certain statutory fees chargeable against the Debtors' estates. |
| *Bankruptcy Code* | Title 11 of the United States Code. |
| *Bankruptcy Court* | The United States Bankruptcy Court for the District of Delaware. |
| *Commencement Date* | The date the Debtors' chapter 11 cases were commenced (June 22, 2000, for all the Debtors other than Healthcare Resources Corp., whose Commencement Date is July 31, 2000). |
| *Debtors* | The Genesis Debtors and the Multicare Debtors. |
| *Disclosure Statement* | This document together with the annexed exhibit. |
| *Effective Date* | A business day selected by the Debtors on or after the date of confirmation of the Plan of Reorganization, on which any conditions to the effectiveness of the Plan have been satisfied or waived and there is no stay of the order confirming the Plan of Reorganization. |
| *Genesis* | Genesis Health Ventures, Inc. |
| *Genesis Debtors* | Genesis and the entities listed on Exhibit "A" to the Plan of Reorganization. |
| *Genesis General Unsecured Claim* | Any general unsecured claim against any of the Genesis Debtors. |
| *Genesis Senior Lender Claim* | Any claim against any of the Genesis Debtors based on the Genesis Senior Lender Agreements (as defined in the Plan of Reorganization) net of all postpetition cash payments made by the Genesis Debtors. |
| *Multicare* | Genesis ElderCare Corp. (the corporate parent of The Multicare Companies, Inc.). |
| *Multicare Debtors* | Multicare and the entities listed on Exhibit "B" to the Plan of Reorganization. |
| *Multicare General Unsecured Claim* | Any general unsecured claim against any of the Multicare Debtors. |

1

| | |
|---|---|
| *Multicare Senior Lender Claim* | Any claim against any of the Multicare Debtors based on the Multicare Senior Lender Agreements (as defined in the Plan of Reorganization). |
| *New Common Stock* | New common stock of Reorganized Genesis to be issued under the Plan of Reorganization as described in section II.H.3 of this Disclosure Statement. |
| *New Convertible Preferred Stock* | New convertible 6% PIK preferred stock of Reorganized Genesis to be issued under the Plan of Reorganization as described in section II.H.2 of this Disclosure Statement. |
| *New Multicare Stock* | New common stock of Reorganized Multicare to be issued under the Plan of Reorganization as described in section II.H.5 of this Disclosure Statement. |
| *New Senior Notes* | New senior notes in the aggregate principal amount of $242.6 million to be issued under the Plan of Reorganization as described in section II.H.1 of this Disclosure Statement. |
| *New Warrants* | New warrants to purchase 11.1% of the New Common Stock to be issued under the Plan of Reorganization, as described in section II.H.4 of this Disclosure Statement. |
| *Plan of Merger* | The Plan of Merger among Genesis, Multicare Acquisition Corporation, and Multicare, as set forth in the Plan Supplement. The proposed merger is described in section II.A of this Disclosure Statement. |
| *Plan* or *Plan of Reorganization* | The Debtors' Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code annexed as Exhibit A to this Disclosure Statement. |
| *Plan Securities* | The New Senior Notes, the New Convertible Preferred Stock, the New Common Stock, and the New Warrants. |
| *Plan Supplement* | A supplemental appendix to the Plan of Reorganization. The Plan Supplement will be filed with the Bankruptcy Court within 10 days before the hearing to confirm the Plan, but no later than 5 days before the last day to vote to accept or reject the Plan. Documents to be included in the Plan Supplement will be posted at www.ghv.com as they become available, but no later than 5 days before the last day to vote to accept or reject the Plan. After the Plan Supplement is filed, copies may be requested from the Voting Agent. |
| *Reorganized Genesis* | Genesis as reorganized as of the Effective Date in accordance with the Plan of Reorganization and after giving effect to the merger described in section II.A of this Disclosure Statement. |
| *Voting Agent* | See section I of this Disclosure Statement for contact information. |

2

## I.

### Introduction

The Genesis Debtors and the Multicare Debtors are soliciting votes to accept or reject their joint plan of reorganization. A copy of the Plan is attached as Exhibit A to this Disclosure Statement. *Please refer to the Glossary and the Plan for definitions of terms used in this Disclosure Statement.*

The purpose of the Disclosure Statement is to provide sufficient information to enable the creditors of the Debtors who are entitled to vote to make an informed decision on whether to accept or reject the Plan of Reorganization. The Disclosure Statement describes:

- the proposed merger of Genesis and Multicare, the new capital structure for the combined companies, how creditors and shareholders of the Debtors are treated, and the terms of the securities to be issued under the Plan (section II)

- how to vote on the Plan and who is entitled to vote (section III)

- certain financial information about the Debtors, including their 5-year cash flow projections, and a range of potential enterprise valuations (section IV)

- the businesses of the Debtors and the reasons why they commenced their chapter 11 cases (section V)

- significant events that have occurred in the Debtors' chapter 11 cases (section VI)

- how the Debtors will be governed when the Plan becomes effective (section VII)

- how distributions under the Plan will be made and the manner in which disputed claims are resolved (section VIII)

- certain factors creditors should consider before voting (section IX)

- the procedure and requirements for confirming the Plan, including a liquidation analysis (section X)

- alternatives to the Plan (section XI) and

- certain federal tax considerations (section XII)

Additional financial information about the Genesis Debtors can be found in the annual report on Form 10-K for the fiscal year ended September 30, 2000, which was filed by Genesis with the Securities and Exchange Commission on February 21, 2001, and the quarterly report on Form 10-Q for the fiscal quarter ended March 31, 2001, which was filed by Genesis on May 17, 2001. Copies of these SEC filings are included in the Plan Supplement and may be obtained over the internet at www.sec.gov or www.freeedgar.com.

3

Additional financial information about the Multicare Debtors can be found in the annual report on Form 10-K for the fiscal year ended September 30, 2000, which was filed by The Multicare Companies, Inc. (the wholly-owned subsidiary of Multicare) with the Securities and Exchange Commission on February 21, 2001, and that company's quarterly report on Form 10-Q for the fiscal quarter ended March 31, 2001, which was filed on May 17, 2001. Copies of these SEC filings are included in the Plan Supplement and may be obtained over the internet at www.sec.gov or www.freeedgar.com.

This Disclosure Statement and the attached Plan of Reorganization are the only materials creditors should use to determine whether to vote to accept or reject the Plan of Reorganization.

> The *last day* to vote to accept or reject the Plan of Reorganization is **August 17, 2001.**
>
> The *record date* for determining which creditors may vote on the **Plan of Reorganization is July 6, 2001.**

The Plan of Reorganization is based on extensive negotiations with the holders of the largest claims against the Genesis Debtors and the Multicare Debtors. The Debtors believe that approval of the Plan is their best chance for emerging from chapter 11 and returning their businesses to profitability. The agent and the informal steering committee for the holders of the Genesis Senior Lender Claims and the Multicare Senior Lender Claims and the respective official committees of unsecured creditors in the Genesis Debtors' and the Multicare Debtors' reorganization cases fully support the Plan of Reorganization.

> **Recommendations:** The Debtors believe that confirmation of the Plan is the best chance for creditors to maximize their recoveries and for the business operations of the Debtors to succeed. The Debtors encourage creditors to vote in favor of the Plan.
>
> The respective official unsecured creditors' committees in the Genesis Debtors' and the Multicare Debtors' reorganization cases have participated fully in the reorganization process and also urge creditors of the Genesis Debtors and Multicare Debtors to vote to accept the Plan. Please review the letter from the Genesis unsecured creditors' committee which is included with this Disclosure Statement.

Additional copies of this Disclosure Statement or copies of the Plan Supplement are available upon request made to the Voting Agent, at the following address:

| If by overnight or hand delivery: | If by standard mailing: |
| --- | --- |
| **Poorman-Douglas Corporation** | **Poorman-Douglas Corporation** |
| **10300 S.W. Allen Boulevard** | **P.O. Box 4390** |
| **Beaverton, Oregon 97005** | **Portland, Oregon 97208-4390** |
| **Attn: Genesis-Multicare Balloting Ctr.** | **Attn: Genesis-Multicare Balloting Center** |

The summaries of the Plan and other documents related to the restructuring of the Debtors are qualified in their entirety by the Plan, its exhibits, and the documents and exhibits contained in the Plan Supplement. The Plan Supplement will be filed with the Bankruptcy Court within 10 days prior to the hearing to confirm the Plan, but no later than 5 days before the last day to vote to accept or reject the Plan. Documents to be included in the Plan Supplement will also be posted at www.ghv.com as they become available, but no later than 5 days before the last day to vote to accept or reject the Plan. The financial and other information included in this Disclosure Statement is for purposes of soliciting acceptances of the Plan and are being communicated for settlement purposes only.

The Bankruptcy Code provides that only creditors who vote on the Plan will be counted for purposes of determining whether the requisite acceptances have been attained. Failure to timely deliver a properly completed ballot by the voting deadline will constitute an abstention and any improperly completed or late ballot will not be counted.

## II.

### Treatment of Creditors and Shareholders
### Under the Plan of Reorganization

The Plan of Reorganization governs the treatment of claims against and interests in the Genesis Debtors and the Multicare Debtors. This section describes the proposed merger of Genesis and Multicare, summarizes the new capital structure of the combined companies, summarizes the treatment of each of the classes, describes which claims and interests are in each class, and discusses certain legal issues affecting the trading of Plan Securities.

### A.    Merger of Genesis and Multicare

Genesis and Multicare are proposing a merger as part of the Plan of Reorganization. Both Debtors believe that the merger of the two companies will be beneficial to all creditors receiving distributions under the Plan due primarily to the preservation of the benefits created by the significant synergies each company already realizes under the current relationship, enhanced by the incremental savings which may be achieved. Today, Multicare is a significant subsidiary of Genesis which, while not wholly-owned, is consolidated from an operational perspective as well as for public financial reporting purposes. Multicare is managed by Genesis subject to a comprehensive management agreement which includes all operational as well as financial and administrative responsibilities and accordingly, has no management or administrative infrastructure of its own. Together, the two companies create significant critical mass which benefits both entities in numerous ways, including: a) revenue enhancements through the marketing and provision of services under a common "ElderCare" brand name and strategy, b) purchasing leverage, which both reduces operating costs and expands access to services which are more difficult to obtain, such as professional liability insurance, c) the ability to attract and effectively utilize human resources, and d) providing better access to capital markets in which size and diversification are critical factors. The merger of the two companies would eliminate risks created by continuing uncertainty regarding the permanence of these operating and administrative efficiencies, as well as create additional administrative cost savings through the reduction of duplicative staffing and other costs required to maintain segregated accounts and financial reporting and separate governance structures. For a more complete discussion of the benefits of the merger and the effects of a separation of the companies, see section VIII.A, below.

5

At the present time, Genesis owns 43.6% of the common stock of Multicare. The balance of that common stock presently is owned by persons who have no affiliation with Genesis. Under the Plan of Reorganization, the common stock of Multicare will be cancelled and new common stock of Reorganized Multicare will be deemed to be allocated to certain of the creditors of the Multicare Debtors. By voting for the Plan of Reorganization, such creditors, as persons otherwise entitled to the new common stock of Multicare, will also be deemed to have voted to adopt the Plan of Merger. The Plan of Merger provides that such creditors will receive cash, New Senior Notes, New Convertible Preferred Stock, New Common Stock, and/or New Warrants of Reorganized Genesis in exchange for the new common stock of Reorganized Multicare allocated to them and that a newly created indirect subsidiary of Genesis will be merged into Multicare. The creditors who will participate in this exchange are described below. The Plan of Merger will be effective on the Effective Date and will result in Multicare and all its interests in the other Multicare Debtors becoming owned by Reorganized Genesis. It is important to note that the merger of Genesis and Multicare is not based on Genesis's present 43.6% ownership interest in Multicare. Reorganized Genesis will be providing Plan Securities to the future owners of the Multicare Debtors as consideration for agreeing to the proposed merger. By voting to accept the Plan of Reorganization, the creditors of the Genesis Debtors will also be approving the transaction, including the issuance of shares of the New Common Stock of Reorganized Genesis to accomplish the merger.

## B.     Summary of New Capital Structure of Reorganized Genesis

The following table summarizes the proposed capital structure for Reorganized Genesis, including the post-Effective Date financing arrangements Genesis expects to execute to fund Administrative Expense Claims and the working capital needs of the ongoing business operations of the restructured companies. The post-Effective Date financing arrangements are anticipated to include a revolving credit facility in the amount of at least $100,000,000. The Debtors' administrative expenses will be paid through the incurrence of senior secured debt of approximately $235,000,000. In the alternative, it may be desirable for Reorganized Genesis to raise funds in the public debt markets. The Debtors will determine the best form of such exit financing as the projected Confirmation Date approaches. Possible terms of the exit financing are described in section VIII.C, below. Except as otherwise provided in the Plan and described herein, unless the underlying property is sold or surrendered, the Genesis Debtor or Multicare Debtor that is the current obligor on a mortgage will continue as the mortgagee. The securities to be issued to creditors are described in section II.H, below.

| Instrument | Description | Comments |
|---|---|---|
| Revolver | up to $150.0 million | (exit financing) |
| Senior Secured Term Loans or New Public Debt | $235.0 to $245.0 million | (exit financing) |
| Mortgages | $146.4 million | (reinstated or amended) |
| New Senior Notes | $242.6 million | (restructuring securities) |
| New Convertible Preferred Stock | $42.6 million | (restructuring securities) |
| New Common Stock | 41,000,000 shares | (restructuring securities) |
| New Warrants | To purchase up to 11.1% of the New Common Stock | (restructuring securities) |

6

C.    Summary of Classification and Treatment

        The following tables divide the claims against, and equity interests in, the Genesis Debtors and the Multicare Debtors into separate classes and summarize the treatment for each class. The tables also identify which classes are entitled to vote on the Plan of Reorganization based on rules set forth in the Bankruptcy Code and an order of the Bankruptcy Court establishing voting procedures. Finally, the tables indicate an estimated recovery for each class. **Important Note**: As described in section IX, below, the long-term care industry is affected by numerous uncertainties, including changes in Medicare and Medicaid reimbursement, labor costs, professional liability exposure and the ability to insure those risks, and regulatory enforcement. Those uncertainties and other risks related to the Genesis Debtors and the Multicare Debtors make it difficult to determine a precise value for the Debtors and the equity interests to be distributed under the Plan of Reorganization. The recoveries described in the following tables represent the Debtors' best estimates of those values given the information available at this time. Unless otherwise specified, the information in the following tables and in the sections below are based on calculations as of June 30, 2001. The estimation of recoveries makes the following assumptions:

- The new debt instruments to be issued under the Plan of Reorganization have a value equal to their face amounts.

- The enterprise value for the Debtors is $1,525,000,000 (including cash on hand). This amount, less cash on hand of $25,000,000, is the mid-point of the range of valuations for the Genesis Debtors and the Multicare Debtors described in section IV, below.

- The aggregate amount of allowed secured claims against the Genesis Debtors (excluding the Genesis Senior Lender Claims) is $120,077,000 and against the Multicare Debtors (excluding the Multicare Senior Lender Claims) is $26,318,000.

- The aggregate amount of Genesis Senior Lender Claims is $1,193,460,000 (excluding postpetition interest and before giving effect to postpetition payments) and the aggregate amount of Multicare Senior Lender Claims is $443,400,000 (excluding postpetition interest).

- The aggregate amount of general unsecured claims against the Genesis Debtors is $467,494,000 (Classes G4 and G5 described below, but excluding the claims of the Multicare Debtors against the Genesis Debtors) and the aggregate amount of general unsecured claims against the Multicare Debtors is $284,256,000 (Classes M4 and M5 described below, but excluding the claims of the Genesis Debtors against the Multicare Debtors).

- For purposes of the recovery estimate in the table below, no current value is included for the New Warrants because they are priced at the approximate projected value of the New Common Stock. However, under a Black-Scholes analysis, the New Warrants would have a value between $16,000,000 and $23,000,000.

*Treatment of Genesis Creditors and Shareholders*

| Class | Description | Treatment | Entitled to Vote | Estimated Recovery |
|-------|-------------|-----------|------------------|--------------------|
| -- | Debtor in Possession Credit Agreement Claims | Payment of all amounts outstanding, and cash collateralization or replacement of outstanding letters of credit by letters of credit issued under the exit facility. | No | 100% |
| -- | Other Administrative Expense Claims | Paid in full. | No | 100% |
| -- | Priority Tax Claims | Paid in full or with interest over a period not to exceed six (6) years from the date of assessment of the tax. | No | 100% |
| G1 | Genesis Other Secured Claims | See separate descriptions in section II.E, below. | See below | See below |
| G2 | Genesis Senior Lender Claims | $195,979,000 in cash* $94,923,000 in New Senior Notes $31,000,000 in New Conv. Preferred Stock 74.35% of the New Common Stock. *cash payments through June 30, 2001 | Yes | 78.89% |
| G3 | Genesis Priority Non-Tax Claims | Paid in full. | No | 100% |
| G4 | Genesis General Unsecured Claims | *Uninsured Claims:* 0.71% of the New Common Stock 10.65% of the New Warrants. *Insured Claims:* Paid in ordinary course of business from insurance proceeds to the extent of such insurance; any portion of such claims which are not covered by insurance will be treated in same manner as uninsured claims. | Yes | 7.34% (exclusive of the value of the New Warrants) |
| G5 | Genesis Senior Subordinated Note Claims | 3.41% of the New Common Stock 51.54% of the New Warrants. | Yes | 7.34% (exclusive of the value of the New Warrants) |
| G6 | Genesis Intercompany Claims | Unimpaired. | No | 100% |
| G7 | Genesis Punitive Damage Claims | No distribution (except to the extent covered by insurance). | No | None |
| G8 | Genesis Series G Preferred Stock Interests | No distribution. | No | None |
| G9 | Genesis Series H Preferred Stock Interests | No distribution. | No | None |
| G10 | Genesis Series I Preferred Stock Interests | No distribution. | No | None |
| G11 | Genesis Common Stock Interests | No distribution. | No | None |

8

*Treatment of Multicare Creditors and Shareholders*

| Class | Description | Treatment | Entitled to Vote | Estimated Recovery |
|---|---|---|---|---|
| -- | Debtor in Possession Credit Agreement Claims | Payment of all amounts outstanding, and cash collateralization or replacement of outstanding letters of credit by letters of credit issued under the exit facility. | No | 100% |
| -- | Other Administrative Expense Claims | Paid in full. | No | 100% |
| -- | Priority Tax Claims | Paid in full or with interest over a period not to exceed six (6) years from the date of assessment of the tax. | No | 100% |
| M1 | Multicare Other Secured Claims | See separate descriptions in section II.F, below. | See below | See below |
| M2 | Multicare Senior Lender Claims | $25,000,000 in cash<br>$147,682,000 in New Senior Notes<br>$11,600,000 in New Conv. Preferred Stock<br>19.02% of the New Common Stock. | Yes | 77.31% |
| M3 | Multicare Priority Non-Tax Claims | Paid in full. | No | 100% |
| M4 | Multicare General Unsecured Claims | *Uninsured Claims:*<br>0.23% of the New Common Stock<br>3.52% of the New Warrants.<br><br>*Insured Claims:*<br>Paid in ordinary course of business from insurance proceeds to the extent of such insurance; any portion of such claims which are not covered by insurance will be treated in same manner as uninsured claims. | Yes | 7.34% (exclusive of the value of the New Warrants) |
| M5 | Multicare Senior Subordinated Note Claims | 2.27% of the New Common Stock<br>34.29% of the New Warrants. | Yes | 7.34% (exclusive of the value of the New Warrants) |
| M6 | Multicare Intercompany Claims | Unimpaired. | No | 100% |
| M7 | Multicare Punitive Damage Claims | No distribution (except to the extent covered by insurance). | No | None |
| M8 | Multicare Common Stock Interests | No distribution. | No | None |

**D.     Allocation of Value Under the Plan of Reorganization**

The largest claims against the Genesis Debtors and the Multicare Debtors consist of the Genesis Senior Lender Claims (Class G2) and the Multicare Senior Lender Claims (Class M2). With minor exceptions discussed below, the claims in these classes are secured by first priority liens on substantially all the property of the Genesis Debtors and the Multicare Debtors, subject to the liens of the lenders under the debtor in possession credit agreements and the liens of pre-existing mortgagees and other secured creditors described in Classes G1 and M1.

9

1.    *Senior Lender Deficiencies*

   After setting aside the value of the properties that are collateral for the pre-existing secured claims (Classes G1 and M1), there is not enough enterprise value remaining to provide a full recovery to the holders of the Genesis Senior Lender Claims and the Multicare Senior Lender Claims, even if those classes received 100% of the New Senior Notes, the New Convertible Preferred Stock, the New Common Stock, and the New Warrants. In the absence of a consensual restructuring and except as described in section II.D.3, below, the absolute priority rule in section 1129(b) of the Bankruptcy Code would preclude the distribution of any value to junior classes, including to holders of unsecured claims in Classes G4, G5, M4, and M5. The following table, which draws information from later sections of the Disclosure Statement, illustrates the deficiencies of the Genesis Senior Lender Claims and the Multicare Senior Lender Claims.

| | | Value or Claim | Section |
|---|---|---|---|
| Genesis Enterprise Value | | $1,125,000,000 | IV.B.3 |
| less: | Debtor in Possession financing | 200,000,000 | II.E |
| | Administrative Expenses | 25,000,000 | |
| | Other Secured Claims (Class G1) | 120,077,000 | |
| Value Remaining | | $779,923,000 | |
| | | | |
| Amount of Genesis Senior Lender Claims (Class G2) | | $1,193,460,000 | II.E.2 |
| less: | Adequate Protection Payments Received | 195,979,000 | II.E.2 |
| Remaining Genesis Senior Lender Claims (Class G2) | | $997,481,000 | |
| Deficiency for Class G2 | | ($217,558,000) | |
| | | | |
| Multicare Enterprise Value (including cash on hand) | | $400,000,000 | IV.C.3 |
| less: | Administrative Expenses | 10,000,000 | II.F |
| | Other Secured Claims (Class M1) | 26,318,000 | |
| Value Remaining | | $363,682,000 | |
| | | | |
| Amount of Multicare Senior Lender Claims (Class M2) | | $443,400,000 | II.F.2 |
| Deficiency for Class M2 | | ($79,718,000) | |

In the case of the Genesis Debtors, the holders of the Genesis Senior Lender Claims have a deficiency of over $217 million. As to the claims of holders of the Genesis senior subordinated note claims (Class G5), the deficiency would include postpetition interest on the Genesis Senior Lender Claims, for a total deficiency, calculated as of June 30, 2001, of approximately $330 million. In the case of the Multicare Debtors, the holders of the Multicare Senior Lender Claims have a deficiency of over $79 million. As to the claims of holders of the Multicare senior subordinated note claims (Class M5), the deficiency would include postpetition interest on the Multicare Senior Lender Claims, for a total deficiency, calculated as of June 30, 2001, of approximately $120 million.

10

2.    *Compromise and Settlement with Unsecured Classes*

The Genesis Debtors, the Genesis unsecured creditors' committee, and the holders of the Genesis Senior Lender Claims have had extensive negotiations concerning a consensual restructuring and the advantages of facilitating a rapid conclusion to these chapter 11 cases. Based on those discussions and notwithstanding the deficiencies specified above, the holders of the Genesis Senior Lender Claims have agreed to provide a portion of the value to which they would otherwise be entitled to holders of unsecured claims in Classes G4 and G5. The Multicare Debtors, the Multicare unsecured creditors' committee, and the holders of the Multicare Senior Lender Claims have also engaged in negotiations concerning a consensual restructuring. Those discussions have also resulted in an agreement which is reflected in the terms of the Plan and is based on the agreement of the holders of the Multicare Senior Lender Claims to provide a portion of the value to which they would otherwise be entitled to holders of unsecured claims in Classes M4 and M5. The treatment of those classes in the Plan reflects this settlement and is not an admission by the holders of the Genesis Senior Lender Claims and the Multicare Senior Lender Claims that such classes would otherwise be entitled to any recovery. Conversely, the support of the Plan by the Genesis unsecured creditors' committee and the Multicare unsecured creditors' committee is not an agreement as to the enterprise value of the Genesis Debtors or the Multicare Debtors described in the Disclosure Statement, the validity of the liens of the holders of the Genesis Senior Lender Claims or the Multicare Senior Lender Claims, or, as to the Multicare unsecured creditors' committee, the representations made herein concerning the business relationship described below between the Genesis Debtors and the Multicare Debtors.

3.    *Exceptions to the Liens of the Senior Lenders*

As to Classes G4 and M4, the absolute priority rule would not apply to any properties of the Debtors that are not encumbered. As the following analysis indicates, Classes G4 and M4 would receive small recoveries in a nonconsensual restructuring.

*Recovery for Class G4 Under the Absolute Priority Rule.* The aggregate value of the properties owned by the Genesis Debtors that are unencumbered or likely would become unencumbered through the exercise of the Genesis Debtors' avoidance powers is approximately $4,290,000. In a nonconsensual restructuring, the value of these two properties would be available to the holders of unsecured claims, including the deficiency claims of the holders of the Genesis Senior Lender Claims. The following table shows how the value of those properties would be allocated, giving effect to the contractual subordination provisions of the holders of claims in Class G5 in favor of the Genesis Senior Lender Claims in Class G2.

|  | Claim | % | Distribution | Recovery % |
|---|---|---|---|---|
| Genesis Sr Lender Deficit | $221,848,000* | 32.18% | $3,792,000 | 1.71%** |
| G4 (Gen Unsecured Claims) | 80,069,000 | 11.62% | 498,000 | 0.62% |
| G5 (Gen Subord Claims) | 387,425,000 | 56.20% | 0 | 0.00%** |
| total unsecured claims | $689,342,000 | 100.00% | $4,290,000 | |

* This amount is greater than the deficiency calculated in section II D.1, above because it includes the value of the property on which the liens securing the Genesis Senior Lender Claims may be avoidable.

11

**All value otherwise allocable to Class G5 would be distributed to Class G2 until the deficiency in Class G2 is paid in full, in accordance with the subordination provisions in the indentures governing the senior subordinated notes in Class G5.

As the table illustrates, the recovery under the Plan is superior to the application of the absolute priority rule for Class G4 (7.34% compared to 0.62%) and Class G5 (7.34% compared to 0.00%).

*Recovery for Class M4 Under the Absolute Priority Rule.* The aggregate value of the properties owned by the Multicare Debtors that are unencumbered or likely would become unencumbered through the exercise of the Multicare Debtors' avoidance powers is approximately $19,300,000. In a nonconsensual restructuring, the value of these properties would be available to the holders of unsecured claims, including the deficiency claims of the holders of the Multicare Senior Lender Claims. The following table shows how such value would be allocated, giving effect to the contractual subordination provisions of the holders of claims in Class M5 in favor of the Multicare Senior Lender Claims in Class M2.

|  | Claim | % | Distribution | Recovery % |
|---|---|---|---|---|
| Multicare Sr Lender Deficit | $99,018,000* | 25.83% | $17,969,000 | 18.15%** |
| M4 (Mul Unsecured Claims) | 26,439,000 | 6.90% | 1,331,000 | 5.04% |
| M5 (Mul Subord Claims) | 257,817,000 | 67.27% | 0 | 0.00%** |
| total unsecured claims | $383,247,000 | 100.00% | $19,300,000 |  |

* This amount is greater than the deficiency calculated in section II.D.1, above because it includes the value of the property on which the liens securing the Multicare Senior Lender Claims may be avoidable.

**All value otherwise allocable to Class M5 would be distributed to Class M2 until the deficiency in Class M2 is paid in full, in accordance with the subordination provisions in the indentures governing the senior subordinated notes in Class M5.

As the table illustrates, the recovery under the Plan is superior to the application of the absolute priority rule for Class M4 (7.34% compared to 5.04%) and Class M5 (7.34% compared to 0.00%).

**E.    Description of the Genesis Classes**

Unless otherwise indicated, the characteristics and amount of the claims or equity interests in the following classes are based on the books and records of the Genesis Debtors. Each subclass is treated as a separate class for purposes of the Plan of Reorganization and the Bankruptcy Code. However, the following discussion may refer to a group of subclasses as a single class for ease of reference.

*1.    Genesis Other Secured Claims (Class G1)*

*Description.* Class G1 is a group of subclasses, including aggregate allowed mortgage secured claims of approximately $120,077,000 as of the date of this Disclosure Statement (exclusive of interest and net of reinstatement payments). For the most part, claims in these subclasses are mortgage financings of various properties owned and/or operated by the

12

Genesis Debtors and equipment financings of various types. Each subclass represents a separate mortgage or collateral pool. The following table describes the material subclasses in Class G1.

The Plan of Reorganization reinstates the claims in Subclasses G1-1 through G1-12. The aggregate cost to cure defaults and reinstate the debt in these subclasses is projected to be $6,604,000 as of June 30, 2001. These claims are not impaired, and the holders of the debt are not entitled to vote to accept or reject the Plan of Reorganization. Subclasses G1-13 through G1-17 are impaired and are entitled to vote. The following table identifies and summarizes the treatment for each of the material subclasses in Class G1. The interest rates for the new notes proposed for certain of the impaired classes will be as specified below, unless modified by the Bankruptcy Court at the time of confirmation of the Plan of Reorganization. The proposed notes will be secured by the same collateral securing the existing obligations. In the event any of those impaired classes rejects the Plan of Reorganization, the Genesis Debtors reserve the right to return the collateral in full satisfaction of the claims secured by such property or adjust the principal amount of the proposed note to the value of the collateral as determined by the Bankruptcy Court. The percentage recovery indicated in the following table is based on the value of the collateral securing these obligations.

*Treatment of Subclasses*

| Sub-Class | Description Collateral (lender or guarantor) | Treatment | Entitled to Vote | Estimated Recovery |
|---|---|---|---|---|
| G1-1 | Broad Street Office Building 148 West State Street, Kennett Square, Pa. (Pa. IDA) | $1,600,000 mortgage reinstated | No | 100% |
| G1-2 | Broad Street Office Building 148 West State Street, Kennett Square, Pa. (Pa. IDA) | $985,039 mortgage reinstated | No | 100% |
| G1-3 | Pleasant View Center (HUD) | $8,864,446 mortgage reinstated | No | 100% |
| G1-4 | Country Village Center (HUD) | $1,810,259 mortgage reinstated | No | 100% |
| G1-5 | Abington Manor (Lackawanna County IDA) | $3,475,000 mortgage reinstated | No | 100% |
| G1-6 | Silver Lake Center (Del. EDA Bonds) | $2,155,000 mortgage reinstated | No | 100% |
| G1-7 | River Street Center (Luzerne County IDA) | $2,430,000 mortgage reinstated | No | 100% |
| G1-8 | Kresson View Center (NJEDA Refunding Bonds) See description below. | $5,535,000 mortgage reinstated See description below. | No | 100% |
| G1-9 | Mifflin Court (ElderTrust) | $2,474,000 mortgage reinstated (as previously reduced and approved by the Bankruptcy Court) | No | 100% |
| G1-10 | Oaks Center (ElderTrust) | $3,500,086 mortgage reinstated (as previously reduced and approved by the Bankruptcy Court) | No | 100% |
| G1-11 | Coquina Assisted Living (ElderTrust) | $1,400,000 mortgage reinstated (as previously reduced and approved by the Bankruptcy Court) | No | 100% |

13

| Sub-Class | Description Collateral (lender or guarantor) | Treatment | Entitled to Vote | Estimated Recovery |
|---|---|---|---|---|
| G1-12 | Homestead Center Kimberly Hall South Center Kimberly Hall North Center Seaford Center Milford Center Windsor Center (U.S. Bank, N.A., as trustee for the "Bradford Bonds") | $19,337,000 mortgage reinstated | No | 100% |
| G1-13 | Brakeley Park Center (HUD) Outstanding Mortgage: $7,985,079 Interest Rate: 10.35% Value of Collateral: approximately equal to amount of claim | New secured note maturing on January 1, 2033, in $7,985,079 principal amount with annual interest at 8.5% and level payments of principal and interest | Yes | 100%* |
| G1-14 | North Cape Center (HUD) Outstanding Mortgage: $5,573,020 Interest Rate: 9.5% Value of Collateral: approximately equal to amount of claim | New secured note maturing on March 1, 2036, in $5,573,020 principal amount with annual interest at 8.0% and level monthly payments of principal and interest | Yes | 100%* |
| G1-15 | Oak Hill Center (HUD) Outstanding Mortgage: $7,805,061 Interest Rate: 8.75% | Return the collateral | Yes | 100%* |
| G1-16 | Rittenhouse Pine Center (Meditrust) Outstanding Mortgage: $6,690,441 Interest Rate: 10.75% | New secured 10 year note in $5,000,000 principal amount with annual interest at 8% and level monthly payments of principal and interest based on a 25-year amortization schedule (unsecured deficiency of $1,690,441) | Yes | 100%* |
| G1-17 | Atlantis Center Bowmans Center Fairway Center Oakwood Center Riverwood Center Tierra Center Willimsburg Center Windham Center Woodmont Center (synthetic lease lenders) Outstanding Liability: $78,235,000 | New secured 6 year note in $50,000,000 principal amount with annual interest at LIBOR plus 5% and no amortization before maturity (secured deficiency of $28,236,000, but see discussion in section II.E.2, below) | Yes | 100%* |

\* Based on a valuation of the collateral securing these claims. Section 506(a) of the Bankruptcy Code provides that a claim is secured only to the extent of the value of the underlying collateral. Any deficiency claims of the holders of claims in Subclasses G1-13 through G1-16 are part of Class G4 (Genesis General Unsecured Claims). The obligations of the Genesis Debtors under the

14

synthetic lease (Subclass G1-17) are secured by the property identified above and by all the property of the Genesis Debtors that secures the claims in Class G2. Therefore the deficiency claims of the holders of claims in Subclass G1-17 are part of Class G2 (Genesis Senior Lender Claims). To the extent the Bankruptcy Court determines that any of the proposed interest rates do not meet the standards set forth in section 1129 of the Bankruptcy Code, the Debtors will adjust such rates accordingly.

*Subclass G1-8*. Subclass G1-8 consists of the secured claim of SunTrust Bank, as successor indenture trustee ("SunTrust") under that certain Trust Indenture, dated as of May 1, 1990 (the "SunTrust Indenture"), between the New Jersey Economic Development Authority ("NJEDA") and SunTrust, pursuant to which NJEDA issued (a) those certain $1,175,000 New Jersey Economic Development Authority Economic Development Refunding Bonds (Geriatric and Medical Services, Inc.—Care Inn of Voorhees Project) 1990 Series A; and (b) those certain $5,000,000 New Jersey Economic Development Authority Economic Development Refunding Bonds (Geriatric and Medical Services, Inc.—Care Inn of Voorhees Project) 1990 Series B (collectively, the "Kresson View Center Bonds"). The secured claim of SunTrust in Subclass G1-8 is (i) allowed in the principal amount of $5,535,000, plus accrued and unpaid interest, and reasonable costs and expenses, as more fully provided in the SunTrust Indenture and all other documents and agreements executed in connection with the Kresson View Center Bonds, and (ii) secured by a duly perfected, first priority mortgage and lien on certain real and personal property (whether now owned or hereafter acquired) of Geriatric and Medical Services, Inc. relating to a project known as the "Kresson View Center" f/k/a "Care Inn of Voorhees" located in the Township of Voorhees, New Jersey, including without limitation, all revenues and accounts arising therefrom, among other collateral. In addition, the secured claim of SunTrust in Subclass G1-8 is guaranteed pursuant to a Guaranty Agreement (the "Kresson View Center Guaranty") by and between Geriatric & Medical Companies, Inc. (as successor to Geriatric & Medical Centers, Inc.) and SunTrust.

As of the Effective Date, the Genesis Debtors' obligations in connection with the Kresson View Center Bonds shall be reinstated and each and every indenture, loan agreement, mortgage, security agreement, guaranty, subordination agreement, and other document executed in connection with the Kresson View Center Bonds, including, without limitation, the Kresson View Center Guaranty and the Subordination Agreement dated May 1, 1990 executed by Mellon Bank N.A., as agent, in favor of NJEDA (all of the foregoing, together with the Kresson View Center Bonds, the "Kresson View Center Bond Documents"), shall be reinstated. All legal, equitable, and contractual rights under the Kresson View Center Bond Documents and the Kresson View Center Bonds shall remain unaltered after confirmation of the Plan. To the extent necessary to reinstate all such obligations, rights, agreements, and documents, the Genesis Debtors shall execute and obtain such replacement agreements and documents, including, without limitation, a guaranty, subordination agreements, and UCC financing statements, each in form and substance materially identical to existing agreements and documents, as SunTrust may require. As of the Effective Date, the maturity date of the Kresson View Center Bonds shall be reinstated. On the Effective Date, the Genesis Debtors shall cure any default under the Kresson View Center Bonds and the Kresson View Center Bond Documents (including, without limitation, past due payments of principal), and shall reimburse SunTrust for all reasonable fees, costs, and expenses, including legal fees and expenses, which have accrued and are required to be paid under the relevant Kresson View Center Bond Documents.

*Subclass G1-12*. Upon confirmation of the Plan, the claim of U.S. Bank Trust National Association ("U.S. Bank"), as successor indenture trustee pursuant to the Indenture of Mortgage and Deed of Trust, dated as of September 1, 1992 (the "U.S. Bank Indenture"), shall be

15