Convertible Preferred Stock is nine years, but for purposes of calculating constructive distributions the term may be regarded as being less than nine years if an earlier date upon which a redemption may occur is the date that a redemption is most likely to occur based upon all the facts and circumstances at the time of issuance. Under the applicable Treasury Regulations, each holder will be bound by Reorganized Genesis's determination as to the presence or absence of constructive distributions, unless the holder explicitly discloses in its timely filed tax return for the taxable year in which it acquires the New Convertible Preferred Stock that it is taking a contrary position.

The constructive distributions would be treated in the same manner as an ordinary distribution (discussed above). To the extent a constructive distribution results in a taxable dividend to the holder, the holder's aggregate tax basis in the New Convertible Preferred Stock (including any additional shares actually distributed in respect of the stated dividend) would be increased by the amount of the constructive distribution. To the extent a constructive distribution does not result in a taxable dividend to the holder, the aggregate tax basis of the holder's New Convertible Preferred Stock will remain unchanged but will be spread over a greater number of shares (assuming actual payment of the stated dividend).

Aside from the treatment of any excess redemption premium, the presence or absence of an adjustment to the conversion price of the New Convertible Preferred Stock under anti-dilution provisions may, under certain circumstances, result in constructive distributions to the holder. Conversely, the absence of an adjustment to the conversion price of the New Convertible Preferred Stock may result in a constructive distribution to the holders of the New Common Stock or the holder of the New Warrants.

Any additional shares of New Convertible Preferred Stock distributed to the holders of the New Convertible Preferred Stock will be subject to the same tax treatment as the underlying New Convertible Preferred Stock. Accordingly, the rules discussed above relating to distributions and constructive distributions would apply to any New Convertible Preferred Stock received as a distribution. However, for purposes of applying the constructive distribution rules, the issue price of such New Convertible Preferred Stock would be determined at the time of the distribution, and the term of such stock would be determined based upon the date such stock is distributed. Thus, it is possible that the tax treatment of the additional shares received may not be identical to that of the underlying New Convertible Preferred Stock, and that the additional shares may, therefore, not be fungible with the underlying New Convertible Preferred Stock.

There is no assurance that the Internal Revenue Service will not take a contrary position. Because all stated dividends on the New Convertible Preferred Stock are required to be paid annually in additional shares of such stock, with the result that holders will not be entitled to the receipt of cash until the redemption of the New Convertible Preferred Stock, it is possible that for purposes of applying the constructive distribution rules, the Internal Revenue Service may take the position that "redemption price" of the New Convertible Preferred Stock is equal to the sum of the instrument's stated redemption price ($20.33) *and* the aggregate stated dividends provided for over the term of the instrument. Under such treatment, the right to distributions of additional shares of New Convertible Preferred Stock would be taxable solely under the constructive distribution rules, and the actual distribution of such stock in respect of a stated dividend would not be considered a separate taxable event.

*Distributions to Corporate Shareholders*. In general, a distribution to a corporate shareholder which is treated as a dividend for federal income tax purposes will qualify for the 70% dividends received deduction that is available to corporate shareholders that own less than

113

20% of the voting power or value of the outstanding stock of the distributing corporation (other than certain preferred stock not applicable here). A corporate shareholder holding 20% or more of the distributing corporation (other than certain preferred stock not applicable here) may be eligible for an 80% dividends received deduction. No assurance can be given that Reorganized Genesis will have sufficient earnings and profits (as determined for federal income tax purposes) to cause distributions to be eligible for a dividends received deduction. Dividend income that is not subject to regular federal income tax as a consequence of the dividends received deduction may be subject to the federal alternative minimum tax.

The dividends received deduction is only available if certain holding periods and taxable income requirements are satisfied. The length of time that a shareholder has held stock is reduced for any period during which the shareholder's risk of loss with respect to the stock is diminished by reason of the existence of certain options, contracts to sell, short sales, or similar transactions. The law is unclear whether there would also be excluded any period during which a holder can require, pursuant to the terms of the stock itself, the redemption of the stock, as in the case of New Convertible Preferred Stock. Also, to the extent that a corporation incurs indebtedness that is directly attributable to an investment in the stock on which the dividend is paid, all or a portion of the dividends received deduction may be disallowed. In addition, any dividend received by a corporation is also subject to the "extraordinary distribution" provisions of the Tax Code.

7.    *Subsequent Sale of New Common Stock or New Convertible Preferred Stock*

Any gain recognized by a holder upon a subsequent taxable disposition of New Convertible Preferred Stock or New Common Stock (including any New Common Stock received upon conversion) received pursuant to the Plan (or any stock or property received for it in a later tax-free exchange) will be treated as ordinary income to the extent of (i) any bad debt deductions (or additions to a bad debt reserve) claimed with respect to its claim and any ordinary loss deductions incurred upon satisfaction of its claim, less any income (other than interest income) recognized by the holder upon satisfaction of its claim, and (ii) with respect to a cash-basis holder, also any amounts which would have been included in its gross income if the holder's claim had been satisfied in full but which was not included by reason of the cash method of accounting.

In addition, a portion of any gain may be treated as ordinary income under the "market discount" rules of the Tax Code. See section XII.B.5, above.

8.    *Conversion of New Convertible Preferred Stock*

Except for cash received in lieu of a fractional share, a holder of New Convertible Preferred Stock generally will not recognize gain or loss upon conversion of the New Convertible Preferred Stock for New Common Stock. A holder who receives cash in lieu of a fractional share should recognize capital gain or loss equal to the difference between the amount of cash received and the holder's tax basis exchanged allocable to the fractional share.

Generally, a holder's tax basis in the New Common Stock received upon conversion of shares of New Convertible Preferred Stock will equal the tax basis of the shares of New Convertible Preferred Stock exchanged therefor (less the portion of the holder's basis allocable to any fractional share, as to which the holder receives cash), and the holding period of the New Common Stock received upon conversion will include the holding period of the shares of the New Convertible Preferred Stock exchanged therefor.

114

9.    *Redemption of New Convertible Preferred Stock*

The federal income tax treatment of a redemption to a holder of New Convertible Preferred Stock will depend on the particular facts relating to such holder at the time of the redemption. If the redemption of such stock (i) is "not essentially equivalent to a dividend" with respect to the holder (taking into account any ownership of common stock), (ii) is "substantially disproportionate" with respect to the holder (defined generally as a greater than 20% reduction in a holder's voting stock interest in a corporation), or (iii) results in a "complete termination" of all such holder's equity interest in the corporation, then the receipt of cash or property by such holder will be treated as an exchange on which gain or loss will be recognized. Such exchange will be treated as a taxable disposition in which gain or loss will be recognized. See section X.B.7, above. In applying these tests, certain constructive ownership rules apply to determine stock ownership.

If none of the above tests giving rise to taxable disposition treatment is satisfied in respect of a redemption of New Convertible Preferred Stock, the holder will be treated as having received an ordinary distribution with respect to such stock. The amount of such distribution generally will be equal to the amount of cash and the fair market value of property received in the redemption, and will be treated first as a taxable dividend to the extent of Reorganized Genesis's current and accumulated earnings and profits, if any, and then as a tax-free return of capital to the extent of the holder's tax basis in the stock redeemed, with any excess treated as capital gain from the sale or exchange of such stock. See section X.B.6, above, for discussion of distributions to corporate shareholders.

10.    *Ownership and Disposition of New Warrants*

A holder of a New Warrant will not recognize gain or loss upon the exercise of such warrant (except possibly in respect of any cash received in lieu of fractional shares). A holder's tax basis in the New Common Stock received upon exercise of a New Warrant will be equal to the sum of the holder's tax basis in the New Warrant and the exercise price (less the sum of the portion of the holder's tax basis allocable to any fractional share, as to which the holder receives cash, as discussed below). The holding period of the New Common Stock received upon exercise of a New Warrant will commence on the day following the exercise of such warrant.

A holder who receives cash in lieu of a fractional share upon exercise of a New Warrant should recognize capital gain or loss equal to the difference between the amount of cash received and the portion of the holder's tax basis in the New Warrant allocable to such fractional share.

The presence of an adjustment to the exercise price of the New Warrants under anti-dilution provisions may, under certain circumstances, result in constructive distributions to the holder. Conversely, the absence of an adjustment to the exercise price of the New Warrants may result in a constructive distribution to the holders of the New Common Stock or the holders of the New Convertible Preferred Stock.

Upon the lapse or disposition of a New Warrant, the holder generally should recognize gain or loss equal to the difference between the amount received (nothing in the case of a lapse) and its tax basis in the warrant. In general, such gain or loss should be a capital gain or loss, long-term or short-term, depending on whether the requisite holding period was satisfied.

*11.    Interest and Original Issue Discount on the New Senior Notes*

Pursuant to the Plan, interest on the New Senior Notes generally will be payable at least annually at a rate of interest equal to the LIBOR plus 5%. Stated interest on the New Senior Notes should be includable in income by a holder in accordance with such holder's method of accounting.

In addition, under certain circumstances, holders of the New Senior Notes may be required to recognize imputed interest to the extent that such New Senior Notes are issued with OID. In general, a debt instrument is treated as having OID to the extent its "stated redemption price at maturity" (in this case, the stated principal amount of the New Senior Notes) exceeds its "issue price." The "issue price" of the New Senior Notes will depend upon whether they are traded on an "established securities market" during the sixty day period ending thirty days after the Effective Date. Pursuant to Treasury Regulations, an "established securities market" includes a system of general circulation (including a computer listing disseminated to subscribing brokers, dealers, or traders) that provides a reasonable basis to determine fair market value by disseminating either recent price quotations or actual prices of recent sales transactions. If the New Senior Notes are traded on an established securities market, the "issue price" will be their fair market value. If they are not so traded, the issue price of the New Senior Notes will be their stated principal amount.

In general, if the New Senior Notes are treated as issued with OID, each holder will be required to accrue the OID in respect of its New Senior Notes, and include such amount in gross income as interest, over the term of such notes based on the constant interest method. Accordingly, each holder generally will be required to include amounts in gross income in advance of the payment of cash in respect of such income. A holder's tax basis in a New Senior Note will be increased by the amount of any OID included in income and reduced by any cash payments (other than payment of stated interest) made with respect to such New Senior Note.

In addition, as discussed in section XII.A.4, above, certain debt obligations that are issued with substantial OID and have a maturity of over five years are treated as applicable high yield discount obligations (AHYDOs) within the meaning of the Tax Code. With respect to such obligations, a portion of a corporate holder's income with respect to such accrued OID may be treated as a dividend for purposes of the dividend-received-deduction to the extent such amount would be so treated if it had been a distribution made by the issuer with respect to its stock (that is, to the extent the issuer has sufficient earnings and profits such that a distribution in respect of stock would constitute a dividend for federal income tax purposes and, presumably, subject to certain holding period and taxable income requirements and other limitations on the dividend-received-deduction). The AHYDO rules will have no applicability to the New Senior Notes *unless* the New Senior Notes are considered to be traded on an established securities market and are issued with sufficient OID such that there would be unamortized OID as of the end of the fifth year after issuance in excess of one year's interest, both actual and imputed.

*12.    Information Reporting and Withholding*

All distributions to holders of allowed claims under the Plan are subject to any applicable withholding (including employment tax withholding). Under federal income tax law, interest, dividends, and other reportable payments may, under certain circumstances, be subject to "backup withholding" at a rate of 31%, subject to adjustment under recent legislation. Backup withholding generally applies if the holder (i) fails to furnish its social security number or other taxpayer identification number ("TIN"), (ii) furnishes an incorrect TIN, (iii) fails properly to

116

report interest or dividends, or (iv) under certain circumstances, fails to provide a certified statement, signed under penalty of perjury, that the TIN provided is its correct number and that it is not subject to backup withholding. Backup withholding is not an additional tax but merely an advance payment, which may be refunded to the extent it results in an overpayment of tax. Certain persons are exempt from backup withholding, including, in certain circumstances, corporations and financial institutions.

THE FOREGOING SUMMARY HAS BEEN PROVIDED FOR INFORMATIONAL PURPOSES ONLY. ALL HOLDERS OF CLAIMS ARE URGED TO CONSULT THEIR TAX ADVISORS CONCERNING THE FEDERAL, STATE, LOCAL, AND OTHER TAX CONSEQUENCES APPLICABLE UNDER THE PLAN.

## XIII.

### Conclusion

The Debtors believe the Plan of Reorganization is in the best interests of all creditors and equity holders and urges the holders of impaired claims in Subclasses G1-13 through G1-17 (Genesis Other Secured Claims), Class G2 (Genesis Senior Lender Claims), Class G4 (Genesis General Unsecured Claims), Class G5 (Genesis Senior Subordinated Note Claims), Subclass M1-7 (Multicare Other Secured Claims), Class M2 (Multicare Senior Lender Claims), Class M4 (Multicare General Unsecured Claims), and Class M5 (Multicare Senior Subordinated

117

Note Claims) to vote to accept the Plan of Reorganization and to evidence such acceptance by returning their Ballots so that they will be received not later than August 17, 2001.

Dated: July 6, 2001

Respectfully submitted,

GENESIS HEALTH SERVICES CORPORATION
GENESIS HEALTH VENTURES, INC.
ACCUMED, INC.
ASCO HEALTHCARE, INC.
ASCO HEALTHCARE OF NEW ENGLAND, INC.
BRINTON MANOR, INC.
BURLINGTON WOODS CONVALESCENT CENTER, INC.
CARECARD, INC.
CAREFLEET, INC.
CHELTENHAM LTC MANAGEMENT, INC.
COMPASS HEALTH SERVICES, INC.
CONCORD HEALTHCARE CORPORATION
CONCORD PHARMACY SERVICES, INC.
CRESTVIEW CONVALESCENT HOME, INC.
CRESTVIEW NORTH, INC.
CRYSTAL CITY NURSING CENTER, INC.
DELCO APOTHECARY, INC.
DERBY NURSING CENTER CORPORATION
DIANE MORGAN AND ASSOCIATES, INC.
DOVER HEALTHCARE ASSOCIATES, INC.
EASTERN MEDICAL SUPPLIES, INC.
EASTERN REHAB SERVICES, INC.
EIDOS, INC.
ENCARE OF MASSACHUSETTS, INC.
GENESIS ELDERCARE ADULT DAY HEALTH SERVICES, INC.
GENESIS ELDERCARE DIAGNOSTIC SERVICES, INC.
GENESIS ELDERCARE HOME CARE SERVICES, INC.
GENESIS ELDERCARE HOME HEALTH SERVICES-SOUTHERN, INC.
GENESIS ELDERCARE HOSPITALITY SERVICES, INC.
GENESIS ELDERCARE MANAGEMENT SERVICES, INC.
GENESIS ELDERCARE NETWORK SERVICES, INC.
GENESIS ELDERCARE NATIONAL CENTERS, INC.
GENESIS ELDERCARE NETWORK SERVICES OF MASSACHUSETTS, INC.
GENESIS ELDERCARE PHYSICIAN SERVICES, INC.
GENESIS ELDERCARE PROPERTIES, INC.
GENESIS ELDERCARE REHABILITATION MANAGEMENT SERVICES, INC.
GENESIS ELDERCARE REHABILITATION SERVICES, INC.
GENESIS ELDERCARE STAFFING SERVICES, INC.
GENESIS ELDERCARE TRANSPORTATION SERVICES, INC.
GENESIS HEALTH VENTURES OF ARLINGTON, INC.
GENESIS HEALTH VENTURES OF BLOOMFIELD, INC.

118

AA. 1901

GENESIS HEALTH VENTURES OF CLARKS SUMMIT, INC.
GENESIS HEALTH VENTURES OF INDIANA, INC.
GENESIS HEALTH VENTURES OF LANHAM, INC.
GENESIS HEALTH VENTURES OF MASSACHUSETTS, INC.
GENESIS HEALTH VENTURES OF NAUGATUCK, INC.
GENESIS HEALTH VENTURES OF NEW GARDEN, INC.
GENESIS HEALTH VENTURES OF POINT PLEASANT, INC.
GENESIS HEALTH VENTURES OF WAYNE, INC.
GENESIS HEALTH VENTURES OF WEST VIRGINIA, INC.
GENESIS HEALTH VENTURES OF WILKES-BARRE, INC.
GENESIS HEALTH VENTURES OF WINDSOR, INC.
GENESIS HEALTHCARE CENTERS HOLDINGS, INC.
GENESIS HOLDINGS, INC.
GENESIS IMMEDIATE MED CENTER, INC.
GENESIS PROPERTIES OF DELAWARE CORPORATION
GENESIS SELECTCARE CORP.
GERIATRIC & MEDICAL COMPANIES, INC.
GERIATRIC AND MEDICAL SERVICES, INC.
GERIATRIC AND MEDICAL INVESTMENTS CORPORATION
GERIMED CORP.
GMC LEASING CORPORATION
GMC MEDICAL CONSULTING SERVICES, INC.
GMS MANAGEMENT-TUCKER, INC.
GMS MANAGEMENT, INC.
GOVERNOR'S HOUSE NURSING HOME, INC.
HEALTHCARE RESOURCES CORP.
HEALTH CONCEPTS AND SERVICES, INC.
HEALTHOBJECTS CORPORATION
HILLTOP HEALTH CARE CENTER, INC.
HORIZON MEDICAL EQUIPMENT AND SUPPLY, INC.
INNOVATIVE HEALTH CARE MARKETING, INC.
INNOVATIVE PHARMACY SERVICES, INC.
INSTITUTIONAL HEALTH CARE SERVICES, INC.
KEYSTONE NURSING HOME, INC.
KNOLLWOOD MANOR, INC.
KNOLLWOOD NURSING HOME, INC.
LIFE SUPPORT MEDICAL EQUIPMENT, INC.
LIFE SUPPORT MEDICAL, INC.
LINCOLN NURSING HOME, INC.
MANOR MANAGEMENT CORP. OF GEORGIAN MANOR, INC.
MCKERLEY HEALTH CARE CENTERS, INC.
MEDICAL SERVICES GROUP, INC.
MERIDIAN HEALTH, INC.
MERIDIAN HEALTHCARE, INC.
METRO PHARMACEUTICALS, INC.
NATIONAL PHARMACY SERVICE, INC.
NEIGHBORCARE INFUSION SERVICES, INC.
NEIGHBORCARE-MEDISCO, INC.
NEIGHBORCARE OF NORTHERN CALIFORNIA, INC.
NEIGHBORCARE OF OKLAHOMA, INC.
NEIGHBORCARE OF VIRGINIA, INC.

119

NEIGHBORCARE OF WISCONSIN, INC.
NEIGHBORCARE PHARMACIES, INC.
NEIGHBORCARE PHARMACY SERVICES, INC.
NEIGHBORCARE-ORCA, INC.
NEIGHBORCARE-TCI, INC.
NETWORK AMBULANCE SERVICES, INC.
OAK HILL HEALTH CARE CENTER, INC.
PHARMACY EQUITIES, INC.
PHILADELPHIA AVENUE CORPORATION
PROFESSIONAL PHARMACY SERVICES, INC.
PROSPECT PARK LTC MANAGEMENT, INC.
STATE STREET ASSOCIATES, INC.
SUBURBAN MEDICAL SERVICES, INC.
THE TIDEWATER HEALTHCARE SHARED SERVICES GROUP,
       INC.
THERAPY CARE, INC.
TRANSPORT SERVICES, INC.
UNITED HEALTH CARE SERVICES, INC.
VALLEY MEDICAL SERVICES, INC.
VALLEY TRANSPORT AMBULANCE SERVICE, INC.
VERSALINK, INC.
VILLAS REALTY & INVESTMENTS, INC.
WALNUT LTC MANAGEMENT, INC.
WAYSIDE NURSING HOME, INC.
WEISENFLUH AMBULANCE SERVICE, INC.
WEST PHILA. LTC MANAGEMENT, INC.
WYNCOTE HEALTHCARE CORP.
YORK LTC MANAGEMENT, INC.

BY: GENESIS HEALTH VENTURES, INC., as agent and
attorney-in-fact for each of the foregoing entities

       By:    /s/ George V. Hager, Jr.
               Name: George V. Hager, Jr.
               Title: Executive Vice President, Chief Financial
               Officer


ASCO HEALTHCARE OF NEW ENGLAND, LIMITED PARTNERSHIP

BY: ASCO HEALTHCARE OF NEW ENGLAND, INC., its
     General partner

       By:    /s/ George V. Hager, Jr.
               Name: George V. Hager, Jr.
               Title: Executive Vice President, Chief Financial
               Officer

BREVARD MERIDIAN LIMITED PARTNERSHIP
CATONSVILLE MERIDIAN LIMITED PARTNERSHIP
EASTON MERIDIAN LIMITED PARTNERSHIP
GREENSPRING MERIDIAN LIMITED PARTNERSHIP
HAMMONDS LANE MERIDIAN LIMITED PARTNERSHIP
MERIDIAN EDGEWOOD LIMITED PARTNERSHIP
MERIDIAN PERRING LIMITED PARTNERSHIP
MERIDIAN VALLEY LIMITED PARTNERSHIP
MERIDIAN VALLEY VIEW LIMITED PARTNERSHIP
MERIDIAN/CONSTELLATION LIMITED PARTNERSHIP
MILLVILLE MERIDIAN LIMITED PARTNERSHIP

BY:  MERIDIAN HEALTHCARE, INC., as General Partner of
     each of the foregoing limited partnerships

        By:    /s/ George V. Hager, Jr.
                Name: George V. Hager, Jr.
                Title: Executive Vice President, Chief Financial
                Officer


CARE4, L.P.

BY:    INSTITUTIONAL HEALTH CARE SERVICES, INC., its
        general partner

        By:    /s/ George V. Hager, Jr.
                Name: George V. Hager, Jr.
                Title: Executive Vice President, Chief Financial
                Officer


EDELLA STREET ASSOCIATES

BY:    GENESIS HEALTH VENTURES OF CLARK SUMMIT,
        INC., its General Partner

        By:    /s/ George V. Hager, Jr.
                Name: George V. Hager, Jr.
                Title: Executive Vice President, Chief Financial
                Officer

GENESIS-GEORGETOWN SNF/JV, LIMITED LIABILITY
    COMPANY
RESPIRATORY HEALTH SERVICES, L.L.C.

BY:    GENESIS HEALTH VENTURES, INC., its Member

        By:    /s/ George V. Hager, Jr.
                Name: George V. Hager, Jr.
                Title: Executive Vice President, Chief Financial
                Officer


GENESIS ELDERCARE EMPLOYMENT SERVICES, LLC

BY:    GENESIS ELDERCARE MANAGEMENT SERVICES,
        INC., its Member

        By:    /s/ George V. Hager, Jr.
                Name: George V. Hager, Jr.
                Title: Executive Vice President, Chief Financial
                Officer


GENESIS HEALTH VENTURES OF WEST VIRGINIA,
    LIMITED PARTNERSHIP

BY:    GENESIS HEALTH VENTURES OF WEST VIRGINIA,
        INC., its General Partner

        By:    /s/ George V. Hager, Jr.
                Name: George V. Hager, Jr.
                Title: Executive Vice President, Chief Financial
                Officer


GENESIS PROPERTIES LIMITED PARTNERSHIP

BY:    GENESIS HEALTH VENTURES OF ARLINGTON,
        INC., its General Partner

        By:    /s/ George V. Hager, Jr.
                Name: George V. Hager, Jr.
                Title: Executive Vice President, Chief Financial
                Officer

GENESIS PROPERTIES OF DELAWARE LTD.
    PARTNERSHIP, L.P.

BY:    GENESIS PROPERTIES OF DELAWARE
    CORPORATION, its General Partner

        By:    /s/ George V. Hager, Jr.
                Name: George V. Hager, Jr.
                Title: Executive Vice President, Chief Financial
                Officer


HALLMARK HEALTHCARE LIMITED PARTNERSHIP

BY:  PHARMACY EQUITIES, INC., its General Partner

        By:    /s/ George V. Hager, Jr.
                Name: George V. Hager, Jr.
                Title: Executive Vice President, Chief Financial
                Officer


MAIN STREET PHARMACY, L.L.C.

BY:  PROFESSIONAL PHARMACY SERVICES, INC., its
      Member

        By:    /s/ George V. Hager, Jr.
                Name: George V. Hager, Jr.
                Title: Executive Vice President, Chief Financial
                Officer


MCKERLEY HEALTH CARE CENTER-CONCORD LIMITED
    PARTNERSHIP

BY:  MCKERLEY HEALTH CARE CENTER-CONCORD,
      INC., its General Partner

        By:    /s/ George V. Hager, Jr.
                Name: George V. Hager, Jr.
                Title: Executive Vice President, Chief Financial
                Officer


123

MCKERLEY HEALTH FACILITIES
SEMINOLE MERIDIAN LIMITED PARTNERSHIP
VOLUSIA MERIDIAN LIMITED PARTNERSHIP

BY:   MERIDIAN HEALTH, INC., as General Partner of each of
      the foregoing Limited Partnerships

      By:    /s/ George V. Hager, Jr.
            Name: George V. Hager, Jr.
            Title: Executive Vice President, Chief Financial
            Officer


NORRISTOWN NURSING AND REHABILITATION CENTER
  ASSOCIATES, LIMITED PARTNERSHIP

BY:   GMC-LTC MANAGEMENT, INC., its General Partner

      By:    /s/ George V. Hager, Jr.
            Name: George V. Hager, Jr.
            Title: Executive Vice President, Chief Financial
            Officer


NORTH CAPE CONVALESCENT CENTER ASSOCIATES, L.P.
NORTHWEST TOTAL CARE CENTER ASSOCIATES, L.P.

BY:   GERIATRIC AND MEDICAL SERVICES, INC., as
      General Partner for each of the foregoing Limited
      Partnerships

      By:    /s/ George V. Hager, Jr.
            Name: George V. Hager, Jr.
            Title: Executive Vice President, Chief Financial
            Officer


PHILADELPHIA AVENUE ASSOCIATES

BY:   PHILADELPHIA AVENUE CORPORATION, its General
      Partner

      By:    /s/ George V. Hager, Jr.
            Name: George V. Hager, Jr.
            Title: Executive Vice President, Chief Financial
            Officer


124

AA. 1907

RIVER RIDGE PARTNERSHIP
RIVER STREET ASSOCIATES

BY: GENESIS HEALTH VENTURES OF WILKES-BARRE, INC.,
    as General Partner for each of the foregoing Limited
    Partnerships

    By:    /s/ George V. Hager, Jr.
            Name: George V. Hager, Jr.
            Title: Executive Vice President, Chief Financial
            Officer


STATE STREET ASSOCIATES, L.P.

BY: STATE STREET ASSOCIATES, INC., its General Partner

    By:    /s/ George V. Hager, Jr.
            Name: George V. Hager, Jr.
            Title: Executive Vice President, Chief Financial
            Officer


THERAPY CARE SYSTEMS, LP

BY: GENESIS ELDERCARE REHABILITATION
    SERVICES, INC., its General Partner

    By:    /s/ George V. Hager, Jr.
            Name: George V. Hager, Jr.
            Title: Executive Vice President, Chief Financial
            Officer


MULTICARE AMC, INC.
ADS PALM CHELMSFORD, INC.
ADS RESERVOIR WALTHAM, INC.
MARKGLEN, INC.
ACADEMY NURSING HOME, INC.
ADS CONSULTING, INC.
ADS HINGHAM ALF, INC.
ADS HOME HEALTH, INC.
ADS VILLAGE MANOR, INC.
ANR, INC.
APPLEWOOD HEALTH RESOURCES, INC.
ASL, INC.
AUTOMATED PROFESSIONAL ACCOUNTS, INC.
BERKS NURSING HOME, INC.
BETHEL HEALTH RESOURCES, INC.

BREYUT CONVALESCENT CENTER, INC.
BRIGHTWOOD PROPERTY, INC.
CENTURY CARE CONSTRUCTION, INC.
CENTURY CARE MANAGEMENT, INC.
CHEATEAU VILLAGE HEALTH RESOURCES, INC.
CHG INVESTMENT CORP., INC.
CHNR - 1, INC.
COLONIAL HALL HEALTH RESOURCES, INC.
COLONIAL HOUSE HEALTH RESOURCES, INC.
CONCORD CAMPANION CARE, INC.
CONCORD HEALTHCARE SERVICES, INC.
CONCORD HEALTH GROUP, INC.
CONCORD HOME HEALTH, INC.
CONCORD REHAB, INC.
CONCORD SERVICE CORPORATION
CVNR, INC.
DAWN VIEW MANOR, INC.
DELM NURSING, INC.
ELDERCARE RESOURCES CORP.
ELMWOOD HEALTH RESOURCES, INC.
ENCARE OF MENDHAM, INC.
ENCARE OF PENNYPACK, INC.
ENR, INC.
GENESIS ELDERCARE CORP.
GLENMARK ASSOCIATES - DAWN VIEW MANOR, INC.
GLENMARK PROPERTIES, INC.
GMA - BRIGHTWOOD, INC.
GMA - MADISON, INC.
GMA - CONSTRUCTION, INC.
GMA UNIONTOWN, INC.
HEALTH RESOURCES OF ACADEMY MANOR, INC.
HEALTH RESOURCES OF BOARDMAN, INC.
HEALTH RESOURCES OF BRIDGETON, INC.
HEALTH RESOURCES OF BROOKLYN, INC.
HEALTH RESOURCES OF CEDAR GROVE, INC.
HEALTH RESOURCES OF CINNAMINSON, INC.
HEALTH RESOURCES OF COLCHESTER, INC.
HEALTH RESOURCES OF COLUMBUS, INC.
HEALTH RESOURCES OF CRANBURY, INC.
HEALTH RESOURCES OF ENGLEWOOD, INC.
HEALTH RESOURCES OF EATONTOWN, INC.
HEALTH RESOURCES OF EWING, INC.
HEALTH RESOURCES OF FARMINGTON, INC.
HEALTH RESOURCES OF GARDNER, INC.
HEALTH RESOURCES OF GLASTONBURY, INC.
HEALTH RESOURCES OF JACKSON, INC.
HEALTH RESOURCES OF KARAMENTA AND MADISON, INC.
HEALTH RESOURCES OF LAKEVIEW, INC.
HEALTH RESOURCES OF LEMONT, INC.
HEALTH RESOURCES OF LYNN, INC.
HEALTH RESOURCES OF MARCELLA, INC.

126

HEALTH RESOURCES OF MONTCLAIR, INC.
HEALTH RESOURCES OF MORRISTOWN, INC.
HEALTH RESOURCES OF NORFOLK, INC
HEALTH RESOURCES OF NORTH ANDOVER, INC.
HEALTH RESOURCES OF NORWALK, INC.
HEALTH RESOURCES OF PENNINGTON, INC.
HEALTH RESOURCES OF RIDGEWOOD, INC.
HEALTH RESOURCES OF ROCKVILLE, INC.
HEALTH RESOURCES OF SOLOMONT/BROOKLINE, INC.
HEALTH RESOURCES OF SOUTH BRUNSWICK, INC.
HEALTH RESOURCES OF TROY HILL, INC.
HEALTH RESOURCES OF VOORHEES, INC.
HEALTH RESOURCES OF WESTWOOD, INC.
HEALTHCARE REHAB SYSTEMS, INC.
HELSTAT, INC.
HMNR REALTY, INC.
HNCA, INC.
HORIZON MOBILE, INC.
HORIZON REHABILITATION, INC.
SCHUYLKILL NURSING HOMES, INC.
SCHUYLKILL PARTNERSHIP ACQUISITION CORPORATION
SCOTCHWOOD MASS. HOLDING CO., INC.
SENIOR LIVING VENTURES, INC.
SENIOR SOURCE, INC.
SNOW VALLEY HEALTH RESOURCES, INC.
SVNR, INC.
THE ADS GROUP, INC.
RIDGELAND HEALTH RESOURCES, INC.
RIVER PINES HEALTH RESOURCES, INC.
RIVERSHORES HEALTH RESOURCES, INC.
RLNR, INC.
ROPHEL CONVALESCENT CENTER, INC.
ROSE HEALTHCARE, INC.
ROSE VIEW MANOR, INC.
ROXBOROUGH NURSING HOME, INC.
RSNR, INC.
LWNR, INC.
MABRI CONVALESCENT CENTER, INC.
MARSHFIELD HEALTH RESOURCES, INC.
MHNR, INC.
MNR, INC.
MONTGOMERY NURSING HOMES, INC.
MULTICARE HOME HEALTH OF ILLINOIS, INC.
NORTHWESTERN MANAGEMENT SERVICES, INC.
NURSING AND RETIREMENT CENTER OF THE ANDOVERS, INC.
ARACADIA ASSOCIATES
PHC OPERATING CORP.
POCOHANTAS CONTINUOUS CARE CENTER, INC.
POMPTON CARE, INC.
PRESCOTT NURSING HOME, INC.
PROGRESSIVE REHABILITATION CENTERS, INC.

127

PROVIDENCE FUNDING CORPORATION
PROVIDENCE HEALTH CARE, INC.
PROVIDENCE MEDICAL; INC.
REST HAVEN NURSING HOME, INC.
HR OF CHARLESTON, INC.
HRWV HUNTINGTON, INC.
LAKEWOOD HEALTH RESOURCES, INC.
LAUREL HEALTH RESOURCES, INC.
LEHIGH NURSING HOMES, INC.
LRC HOLDING COMPANY
S.T.B. INVESTORS, LTD.
THE ASSISTED LIVING ASSOCIATES OF BERKSHIRE, INC.
THE ASSISTED LIVING ASSOCIATES OF LEHIGH, INC.
THE ASSISTED LIVING ASSOCIATES OF SANATOGA, INC.
THE ASSISTED LIVING ASSOCIATES OF WALL, INC.
THE HOUSE OF CAMPBELL, INC.
TM ACQUISITION CORP.
TRI-STATE MOBILE MEDICAL SERVICES, INC.
WILLOW MANOR NURSING HOME, INC.
WESTFORD NURSING AND RETIREMENT CENTER, INC.
RVNR, INC.
HORIZON ASSOCIATES, INC.
HEALTH RESOURCES OF WARWICK, INC.
HEALTH RESOURCES OF WALLINGFORD, INC.
HEALTH RESOURCES OF MIDDLETOWN (RI), INC.
HEALTH RESOURCES OF GROTON, INC.
HEALTH RESOURCES OF CUMBERLAND, INC.
HEALTH RESOURCES OF ARCADIA, INC.
ENCARE OF WYNCOTE, INC.
ENCARE OF QUAKERTOWN, INC.
ADS SENIOR HOUSING, INC.
ADS RECUPERATIVE CENTER, INC.
ADS HINGHAM NURSING FACILITY, INC.
ADS APPLE VALLEY, INC.
ADS/MULTICARE, INC.
GLENMARK ASSOCIATES, INC.
GMA PARTNERSHIP HOLDING COMPANY, INC.
STAFFORD CONVALESCENT CENTER, INC.
THE MULTICARE COMPANIES, INC.
NORTH MADISON, INC.

BY:     Genesis Eldercare Corporation, as agent and attorney-in-
        fact for each of the foregoing entities

        By:     /s/ George V. Hager, Jr.
                Name: George V. Hager, Jr.
                Title: Executive Vice President, Chief Financial
                Officer

128

AA. 1911

CARE HAVEN ASSOCIATES LIMITED PARTNERSHIP
GLENMARK PROPERTIES I, LIMITED PARTNERSHIP
POINT PLEASANT HAVEN LIMITED PARTNERSHIP
RALEIGH MANOR LIMITED PARTNERSHIP
ROMNEY HEALTH CARE CENTER LTD. LIMITED PARTNERSHIP
SISTERVILLE HAVEN LIMITED PARTNERSHIP
TEAYS VALLEY HAVEN LIMITED PARTNERSHIP

BY:    GLENMARK ASSOCIATES, INC., as General Partner of
       each of the foregoing limited partnerships

       By:    /s/ George V. Hager, Jr.
              Name: George V. Hager, Jr.
              Title: Executive Vice President, Chief Financial
              Officer


ADS HINGHAM LIMITED PARTNERSHIP

BY:    ADS HINGHAM NURSING FACILITY, INC., its General
       Partner

       By:    /s/ George V. Hager, Jr.
              Name: George V. Hager, Jr.
              Title: Executive Vice President, Chief Financial
              Officer


ADS RECUPERATIVE CENTER LIMITED PARTNERSHIP

BY:    ADS RECUPERATIVE CENTER, INC., its General Partner

       By:    /s/ George V. Hager, Jr.
              Name: George V. Hager, Jr.
              Title: Executive Vice President, Chief Financial
              Officer


WESTFORD NURSING AND RETIREMENT CENTER, LIMITED
PARTNERSHIP

BY:    WESTFORD NURSING AND RETIREMENT CENTER, INC.,
       its General Partner

       By:    /s/ George V. Hager, Jr.
              Name: George V. Hager, Jr.
              Title: Executive Vice President, Chief Financial
              Officer


129


AA. 1912

ADS APPLE VALLEY LIMITED PARTNERSHIP

BY:    ADS APPLE VALLEY, INC., its General Partner

    By:    /s/ George V. Hager, Jr.
         Name: George V. Hager, Jr.
         Title: Executive Vice President, Chief Financial
         Officer

HOLLY MANOR ASSOCIATES OF NEW JERSEY, L.P.

BY:    ENCARE OF MENDHAM, L.L.C., its General Partner

    By:    /s/ George V. Hager, Jr.
         Name: George V. Hager, Jr.
         Title: Executive Vice President, Chief Financial
         Officer of The Multicare Companies, Inc. for
         and as the Majority Member of Encare of
         Mendham, L.L.C.

MERCERVILLE ASSOCIATES OF NEW JERSEY, L.P.

BY:    BREYUT CONVALESCENT CENTER, L.L.C., its General
      Partner

    By:    /s/ George V. Hager, Jr.
         Name: George V. Hager, Jr.
         Title: Executive Vice President, Chief Financial
         Officer

MIDDLETOWN (RI) ASSOCIATE OF RHODE ISLAND, L.P.

BY:    HEALTH RESOURCES OF MIDDLETOWN (RI), INC., its
      General Partner

    By:    /s/ George V. Hager, Jr.
         Name: George V. Hager, Jr.
         Title: Executive Vice President, Chief Financial
         Officer

AA. 1913

POMPTON ASSOCIATES, L.P.

BY:　　POMPTON CARE, L.L.C., its General Partner

　　　　　　By:　　/s/ George V. Hager, Jr.
　　　　　　　　　　Name: George V. Hager, Jr.
　　　　　　　　　　Title: Executive Vice President, Chief Financial
　　　　　　　　　　Officer of The Multicare Companies, Inc. for
　　　　　　　　　　and as Majority Member of Pompton Care,
　　　　　　　　　　L.L.C.

THE STRAUS GROUP - OLD BRIDGE, L.P.

BY:　　HEALTH RESOURCES OF EMERY, L.L.C., its General
　　　　Partner

　　　　　　By:　　/s/ George V. Hager, Jr.
　　　　　　　　　　Name: George V. Hager, Jr.
　　　　　　　　　　Title: Executive Vice President, Chief Financial
　　　　　　　　　　Officer of The Mutlicare Companies, Inc. for
　　　　　　　　　　and as Majority Member of Health Resources of
　　　　　　　　　　Emery, L.L.C.

THE STRAUS GROUP - RIDGEWOOD, L.P.

BY:　　HEALTH RESOURCES OF RIDGEWOOD, L.L.C., its
　　　　General Partner

　　　　　　By:　　/s/ George V. Hager, Jr.
　　　　　　　　　　Name: George V. Hager, Jr.
　　　　　　　　　　Title: Executive Vice President, Chief Financial
　　　　　　　　　　Officer of The Multicare Companies, Inc. for
　　　　　　　　　　and as the Majority Member of Health
　　　　　　　　　　Resources of Ridgewood, L.L.C.

WALLINGFORD ASSOCIATES OF CONNECTICUT, L.P.

BY:　　HEALTH RESOURCES OF WALLINGFORD, INC., its
　　　　General Partner

　　　　　　By:　　/s/ George V. Hager, Jr.
　　　　　　　　　　Name: George V. Hager, Jr.
　　　　　　　　　　Title: Executive Vice President, Chief Financial
　　　　　　　　　　Officer

131

AA. 1914

WARWICK ASSOCIATES OF RHODE ISLAND, L.P.

BY:     HEALTH RESOURCES OF WARWICK, INC., its General
        Partner

                By:     /s / George V. Hager, Jr.
                        Name: George V. Hager, Jr.
                        Title: Executive Vice President, Chief Financial
                        Officer


THE STRAUS GROUP - HOPKINS HOUSE, L.P.

BY:     ENCARE OF WYNCOTE, INC., its General Partner

                By:     /s/ George V. Hager, Jr.
                        Name: George V. Hager, Jr.
                        Title: Executive Vice President, Chief Financial
                        Officer


THE STRAUS GROUP - QUAKERTOWN MANOR, L.P.

BY:     ENCARE OF QUAKERTOWN, INC., its General Partner

                By:     /s/ George V. Hager, Jr.
                        Name: George V. Hager, Jr.
                        Title: Executive Vice President, Chief Financial
                        Officer


CUMBERLAND ASSOCIATES OF RHODE ISLAND, L.P.

BY:     HEALTH RESOURCES OF CUMBERLAND, INC., its
        General Partner

                By:     /s/ George V. Hager, Jr.
                        Name: George V. Hager, Jr.
                        Title: Executive Vice President, Chief Financial
                        Officer


GROTON ASSOCIATES OF CONNECTICUT, L.P.

BY:     HEALTH RESOURCES OF GROTON INC., its General
        Partner

                By:     /s/ George V. Hager, Jr.
                        Name: George V. Hager, Jr.
                        Title: Executive Vice President, Chief Financial
                        Officer


132

AA. 1915

HEALTH RESOURCES OF BRIDGETON, L.L.C.
HEALTH RESOURCES OF CINNAMINSON, L.L.C.
HEALTH RESOURCES OF CRANBURY, L.L.C.
HEALTH RESOURCES OF ENGLEWOOD, L.L.C.
HEALTH RESOURCES OF EWING, L.L.C.
HEALTH RESOURCES OF FAIRLAWN, L.L.C.
HEALTH RESOURCES OF JACKSON, L.L.C.
HEALTH RESOURCES OF WEST ORANGE, L.L.C.
ROEPHEL CONVALESCENT CENTER, L.L.C.
TOTAL REHABILITATION CENTER, L.L.C.
POMPTON CARE, L.L.C.
HEALTH RESOURCES OF LAKEVIEW, L.L.C.
HEALTH RESOURCES OF RIDGEWOOD,  L.L.C.
HEALTH RESOURCES OF EMERY, L.L.C.
ENCARE OF MENDHAM. L.L.C.
BREYUT CONVALESCENT CENTER, L.L.C.

BY:    THE MULTICARE COMPANIES, INC., as Member of the
       foregoing Limited Liability Companies

       By:    /s/ George V. Hager, Jr.
              Name: George V. Hager, Jr.
              Title: Executive Vice President, Chief Financial
              Officer

GLENMARK LIMITED LIABILITY COMPANY I

BY:    GLENMARK ASSOCIATES, INC., its Member

       By:    /s/ George V. Hager, Jr.
              Name: George V. Hager, Jr.
              Title: Executive Vice President, Chief Financial
              Officer

133

AA. 1916

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

**CERTIFICATE OF SERVICE**

I, Jason M. Madron, hereby certify that on the 23rd day of January, 2006, I electronically

filed the **Defendants-Appellees' Appendix In Support of Their Brief in Opposition to the**

**Appeal of Richard Haskell et al. From the May 10, 2005 Order of the Bankruptcy Court**

**(Volumes I through V)** with the Clerk of the Court using CM/ECF which will send notifications

of such filing to the following :

R. Bruce McNew
mcnew@taylormcnew.com

Robert Steven Brady
rbrady@ycst.com

Steven K. Kortanek
skortane@klehr.com

Teresa K.D. Currier
currier@klettrooney.com

Peter J. Duhig
duhig@klettrooney.com

Daniel K. Hogan
dkhogan@dkhogan.com

I, Jason M. Madron, hereby certify that on the 23rd day of January, 2006, I sent via Hand

Delivery Service (Local) or via First Class Mail (Non-Local) the **Defendants-Appellees'**

**Appendix In Support of Their Brief in Opposition to the Appeal of Richard Haskell et al.**

**From the May 10, 2005 Order of the Bankruptcy Court (Volumes I through V)** to the

following participants:

**Via Hand Delivery**
R. Bruce McNew, Esq.
TAYLOR & McNEW, LLP
3711 Kennett Pike, Suite 210
Wilmington, Delaware 19807
(*Counsel for Appellants*)

**Via Hand Delivery**
Laura Davis Jones, Esq.
PACHULSKI STANG ZIEHL JONES
  & WEINTRAUB P.C.
919 North Market Street, Suite 1600
Wilmington, Delaware 19899
(*Counsel for Official Committee of
  Unsecured Creditors*)

**Via First Class Mail**
Stanley M. Grossman, Esq.
H. Adam Prussin, Esq.
POMERANTZ HAUDEK BLOCK
 GROSSMAN & GROSS LLP
100 Park Avenue, 26th Floor
New York, New York  10017
(*Counsel for Appellants*)

Jason M. Madron (No. 4431)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
P.O. Box 551
Wilmington, DE 19899
(302) 651-7700
Madron@rlf.com

RLF1-2972715-1