UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE:<br><br>GENESIS HEALTH VENTURES, INC., et al.,<br><br>                Debtors.<br><hr>RICHARD HASKELL, et al.,<br><br>            Plaintiffs-Appellants,<br><br>        v.<br><br>GOLDMAN, SACHS & CO., et al.,<br><br>            Defendants-Appellees. | C.A. No. 05-CV-427 (KAJ)<br>Related to Case No. 00-2692 (JHW)<br>Jointly Administered<br><br><br><br><br><br>Adv. Pro. No.: 04-53375 (JHW) |

**PLAINTIFFS-APPELLANTS' REPLY TO DEFENDANTS-APPELLEES'
SUPPLEMENTAL MEMORANDA**

R. Bruce McNew (# 967)
TAYLOR & McNEW LLP
2710 Centerville Road, Suite 210
Wilmington, DE 19808
Telephone: (302) 655-9200
*Attorneys for Plaintiffs-Appellants*

*Co-Counsel*:
Stanley M. Grossman
H. Adam Prussin
Leigh Handelman Smollar
POMERANTZ HAUDEK BLOCK
   GROSSMAN & GROSS LLP
100 Park Avenue, 26th Floor
New York, New York 10017
Telephone: (212) 661-1100

Date of Filing: March 6, 2006

## TABLE OF CONTENTS

**Page**

NATURE AND STAGE OF PROCEEDINGS .......................................... 1

ARGUMENT ................................................................. 3

I. THE FRAUD CLAIMS SATISFY RULE 9(b) ...................................... 3

    A. The Complaint Provides More than Enough Detail to Enable
       Defendants to Prepare their Response .................................... 3

    B. This is Not Impermissible "Group Pleading" ............................... 7

    C. These Are Not "Normal Business Practices" ................................ 9

    D. The Complaint Establishes Scienter With Respect to Each Defendant ............ 9

       1. Each Defendant Had Knowledge of the Misrepresentations ............. 10

       2. Defendant's Motive and Opportunity ............................... 11

    E. The Complaint Adequately Pleads Justifiable Reliance ....................... 13

II. THE COMPLAINT STATES A CLAIM FOR CIVIL CONSPIRACY .................. 15

III. DEFENDANTS OWED PLAINTIFFS A DUTY OF CARE WHEN THEY
     MADE AFFIRMATIVE REPRESENTATIONS IN
     THE BANKRUPTCY PROCEEDINGS ..................................... 16

IV. APPELLANTS HAVE STANDING TO PURSUE THESE CLAIMS .................. 19

CONCLUSION .............................................................. 21

## TABLE OF AUTHORITIES

**CASES**                                                                      Page

*Adams v. Kinder-Morgan, Inc.*, 340 F.3d 1083 (10th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Airlines Reporting Corp. v. Belfon*, No. 2003-146, 2004 U.S. Dist. LEXIS 7381,
    2004 WL 903800 (D.V.I. Apr. 26, 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Aldridge v. A.T. Cross Corp.*, 284 F.3d 72 (1st Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Board of Trs. v. Foodtown, Inc.*, 296 F.3d 164 (3d Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Broudo v. Dura Pharms., Inc.*, 339 F.3d 933 (9th Cir. 2003),
    *rev'd*, 125 S. Ct. 1627 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Brug v. Enstar Group, Inc.*, 755 F. Supp. 1247 (D. Del. 1991) . . . . . . . . . . . . . . . . . . . . . . . 14

*In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410 (3d Cir. 1997) . . . . . . . . . . . . . . . . . . 3

*Carello v. PricewaterhouseCoopers, LLP*, C.A. No. 01C-10-219,
    2002 Del. Super. LEXIS 180, 2002 WL 1454111 (Del. Super. Ct. July 3, 2002) . . . . . . 16

*Casson v. Hornberger*, No. 159, 1990, 587 A.2d 454 (Table)
    (Text in LEXIS and Westlaw), 1991 Del. LEXIS 41,
    1991 WL 22364 (Del. 1991) (Unpublished Disposition) . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Christidis v. First Pennsylvania Mortg. Trust*, 717 F.2d 96
    (3d Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Commerce Ins. Services, Inc. v. Szczurek*, Civ. Nos. 05-3536, 05-3565,
    2006 U.S. Dist. LEXIS 515 (D.N.J. Jan. 6, 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Easton & Co. v. Mut. Ben. Life Ins. Co.*, Civ. No. 91-4012,
    1992 U.S. Dist. LEXIS 10913, 1992 WL 136857 (D.N.J. 1992) . . . . . . . . . . . . . . . . . . . 4

*In re Educators Group Health Trust*, 25 F.3d 1281 (5th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . 19

*Edwards v. William H. Porter, Inc.*, Civ. A. No. 88C-OC-174,
    1991 Del. Super. LEXIS 315 (Del. Super. Ct. July 26, 1991) . . . . . . . . . . . . . . . . . . . . . 13

*Financial Trust Co., Inc. v. Citibank, N.A.*, 351 F. Supp. 2d 329
    (D.V.I. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*First Fed. Sav. Bank v. CPm Energy Sys., Corp.*, Civ. A. No. 88C-MY-249-1-CV,
    1993 Del. Super. LEXIS 138 (Del. Super. Ct. Apr. 22, 1993) . . . . . . . . . . . . . . . . . . . . . 17

**CASES** Page

*Florida State Bd. of Admin. v. Green Tree Fin. Corp.,* 270 F.3d 645
(8th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*In re Fruehauf Trailer Corp.,* 250 B.R. 168 (D. Del 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*In re Granite Partners, L.P.,* 194 B.R. 318 (Bankr. S.D.N.Y. 1996) . . . . . . . . . . . . . . . . . . . . . 20

*Guardian Constr. Co. v. Tetra Tech Richardson, Inc.,* 583 A.2d 1378
(Del. Super. Ct. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Gurfein v. Sovereign Group,* 826 F. Supp. 890 (E.D. Pa. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Hanson, Jones & Leta, P.C. v. Segal,* 220 B.R. 434 (D. Utah 1998) . . . . . . . . . . . . . . . . . . . . . . 16

*In re Hechinger Inv. Co. of Del., Inc.,* No. 00-973-SLR, 2004 U.S.
Dist. LEXIS 5537, 2004 WL 724960 (D. Del. Mar. 28, 2004) . . . . . . . . . . . . . . . . . . . . 18

*Household Int'l, Inc. v. Westchester Fire Ins. Co.,* 286 F. Supp. 2d 369
(D. Del. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*In re Kollar,* 176 F.3d 175 (3d Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*In re Lois/USA, Inc.,* 264 B.R. 69 (Bankr. S.D.N.Y. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*MBIA Ins. Corp. v. Royal Indem. Co.,* 221 F.R.D. 419 (D. Del. 2004) . . . . . . . . . . . . . . . . . . . . 8

*In re ML-Lee Acquisition Fund II, L.P.,* 848 F. Supp. 527 (D. Del. 1994) . . . . . . . . . . . . . . . . . 6

*Mixing and Mass Transfer Techs., LLC v. Lightnin, Inc.,* No. 4:05cv1519,
2006 U.S. Dist. LEXIS 3440, 2006 WL 14044 (M.D. Pa. Jan. 18, 2006) . . . . . . . . . . . . 3

*Nathenson v. Zonagen,* 267 F.3d 400 (5th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Nielsen Elecs. Inst. v. Student Fin. Corp.,* Civ. A. No. 99-285-JJF,
2001 U.S. Dist. LEXIS 25556, 2001 WL 343673 (D. Del. Jan. 16, 2001) . . . . . . . . . . . . 6

*Odyssey Re (London) Ltd. v. Stirling Cooke Brown Holdings Ltd.,*
85 F. Supp. 2d 282 (S.D.N.Y. 2000), *aff'd,* 242 F.3d 366
(2d Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

**CASES** Page

*Official Comm. of Unsecured Creditors ex rel. SmarTalk Teleservices, Inc.*
*Bankruptcy Estate v. Donaldson, Lufkin & Jenrette Sec. Corp.,*
No. 00 Civ. 8688. 2002 U.S. Dist. LEXIS 3747, 2002 WL 362794
(S.D.N.Y. Mar. 6, 2002) ..................................................... 16

*Outdoor Techs. v. Allfirst Fin.*, C.A. No. 99C-09-151 WTQ,
2000 Del. Super. LEXIS 16, 2000 WL 141274 (Del. Super. Ct. Jan. 24, 2000) ........ 14

*In re Penn Treaty Am. Corp. Secs. Litig.*, 202 F. Supp.2d 383
(E.D. Pa. 2002) ......................................................... 10

*People v. Baldassara*, 151 A.D.2d 1004 (N.Y. App. Div.),
*appeal denied*, 546 N.E.2d 192 (N.Y. 1989) .................................... 6

*Playtex v. Columbia Casualty*, No. 88C-MR-233, 1993 Del. Super. LEXIS 286,
1993 WL 390469 (Del. Super. Ct. Sept. 20, 1993) ............................. 16

*Prudential Ins. Co. v. Dewey, Ballantine, Bushby, Palmer & Wood,*
605 N.E.2d 318 (N.Y. 1992) ................................................ 16

*In re Reliance Sec. Litig.*, 91 F. Supp.2d 706 (D. Del. 2000) ........................... 10

*Schmeusser v. Schmeusser*, 559 A.2d 1294 (Del. 1989) ................................ 13

*In re Scientific Atlanta, Inc. Sec. Litig*, 239 F. Supp. 2d 1351 (N.D. Ga. 2002),
*aff'd sub nom. Phillips v. Scientific-Atlanta, Inc.*, 374 F.3d 1015
(11th Cir. 2004) ......................................................... 10

*Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786
(3d Cir. 1984) ............................................................ 3

*Snyder v. Butcher & Co.*, C.A. No. 91C-04-0289, 1992 Del. Super. LEXIS 362,
1992 WL 240344 (Del. Super. Ct. Sept. 15, 1992) ............................. 6

*State Farm Mut. Auto. Ins. Co. v. Makris*, No. 01-5351,
2003 U.S. Dist. LEXIS 3374, 2003 WL 924615 (E.D. Pa. Mar. 4, 2003) ............. 6

*Stephensen v. Capano Dev., Inc.*, 462 A.2d 1069 (Del. 1983) ........................... 17

*In re Tenn-Fla Partners*, 226 F.3d 746 (6th Cir. 2000) ................................ 18

*Universal Computer Consulting, Inc. v. Pitcairn Enters.*, No. 03-2398,
2004 U.S. Dist. LEXIS 2719, 2004 WL 345415 (E.D. Pa. Feb. 24, 2004) ............ 3

**CASES**                                                    Page

*Weiner v. Quaker Oats Co.*, 129 F.3d 310 (3d Cir. 1997) .............................. 9

**STATUTES, RULES and REGULATIONS**

Fed. R. Civ. P. 9(b) ............................................................. 9

**OTHER**

RESTATEMENT (SECOND) OF TORTS § 552 (1977) ................................... 16

## NATURE AND STAGE OF PROCEEDINGS

In this reply memorandum plaintiffs-appellants ("Plaintiffs") will respond to the arguments raised in the supplemental memoranda individually submitted by defendants-appellees ("Defendants") Mellon Bank ("Mellon"), Goldman Sachs ("Goldman") and Highland Capital Partners ("Highland"). The bankruptcy court did not reach these arguments in its opinion (*see In re Genesis Health Ventures, Inc.*, 324 B.R. 510, 529 (Bankr. D. Del. 2005)), but Defendants proffer them now as a laundry list of potential alternative grounds for affirmance. Most of these supplemental arguments are based on the theory that the complaint does not allege, with the required specificity, that these senior creditors did anything wrong in connection with the Genesis Plan confirmation proceedings. In effect, these Defendants claim that the facts alleged in the complaint paint them as nothing more than innocent bystanders while Genesis cooked its own books for their benefit.[1]

To the contrary, the complaint describes how these Defendants orchestrated the fraud through their lead positions on the Genesis senior creditors' steering committee, where they exercised total financial control over the Genesis bankruptcy. It alleges that these Defendants had a preconceived plan whereby Genesis' EBITDA results, to be used to determine Genesis' value for Plan confirmation purposes, would be artificially suppressed below an arbitrary figure of about $158 million; that this number was "reverse engineered" to produce a valuation that would support giving all, or virtually all, of Genesis' newly issued stock to the senior creditors; that to that end they used their financial leverage to pressure and seduce Genesis' management to go along with this scheme and to manipulate their own EBITDA projections and results; and that the entire scheme was micro-managed through frequent meetings of the steering committee where Genesis' financial results were put under a microscope to make sure that they stayed within the pre-determined limit.

The fraud culminated when these Defendants submitted their own motion papers in support

---

[1] Genesis itself has not submitted a supplemental brief on its own behalf.

of their application for approval of the reorganization Plan.[2] Those submissions included a valuation by Chilmark Partners, which these Defendants had commissioned to provide a valuation of Genesis to the court, and the fraudulent "LTM EBITDA" data on which the Chilmark report was based. The complaint alleges that each of these Defendants manipulated not only the "LTM EBITDA" data used by Chilmark but also Genesis' "budgeted EBITDA" projections as well, which were used as the basis of the Warburg valuation which Genesis submitted in support of its motion to approve the Plan.

Thus, these Defendants were not mere bystanders to Genesis' efforts to reorganize. They manipulated the Genesis EBITDA and then used this corrupted data to make affirmative representations to the Bankruptcy Court, and to the debentureholders, concerning Genesis' results and value, in a systematic effort to get their way.[3] Defendants' assertion, in their supplemental briefs, that no one has told them exactly what they did wrong, is therefore utterly at odds with the facts.

In support of their position, Defendants invoke a variety of the "usual suspect" defenses that are almost invariably raised on any motion to dismiss a fraud complaint. Goldman, Highland and Mellon agree on only two points: that the fraud claims are not specific enough and therefore do not comply with Rule 9(b) of the Federal Rules of Civil Procedure; and that they had no "duty of care" to the junior creditors, even when they made affirmative representations in the bankruptcy proceedings concerning the value of the company, and that they therefore cannot be guilty of gross negligence.

Mellon and Highland also challenge the sufficiency of the allegations that they conspired to commit fraud, because of the alleged absence of any act in furtherance of the conspiracy: Mellon also

---

[2] The submission was made by counsel for Mellon Bank, "as Administrative Agent to the Senior Lenders" of Genesis. (A67, ¶43; A58, ¶21). Although some effort was obviously made to obscure the identities of the senior lenders involved, Plaintiffs have determined, and the complaint alleges, that this group included Goldman and Highland.

[3] The details of those manipulations, the reasons why they were improper, and the fact that these Defendants, not Genesis, were the parties that stood to benefit from this scheme, at the expense of Genesis' junior creditors, are described in Plaintiffs' opening memorandum as well as in their reply to Defendants' joint memorandum on this appeal, and need not be repeated here.

argues that it could not have committed a fraud because it allegedly had no "motive" to do so, and that it is therefore irrelevant whether it knew about the fraud or participated in it; and Highland argues that Plaintiffs did not rely on the alleged misrepresentations, and that, in any event, they have no standing to assert these claims because they belong exclusively to Genesis.

As demonstrated below, none of Defendants' arguments has any merit.

**ARGUMENT**

**I. THE FRAUD CLAIMS SATISFY RULE 9(b)**

**A. The Complaint Provides More than Enough Detail to Enable Defendants
to Prepare their Response**

The purpose of Rule 9(b) is to "place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior." *Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 791 (3d Cir. 1984).[4] "The most basic consideration in judging the sufficiency of the pleading is whether it provides adequate notice to an adverse party to enable it to prepare a responsive pleading." *Commerce Ins. Services*, 2006 U.S. Dist. LEXIS 515, at *18 n.8 (citing 5A Charles Alan Wright and Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE § 1298, at 648 (1990)). "[A] claim satisfies the requirements of Rule 9(b) if it adequately delineates the acts and transactions constituting the fraud to apprise defendants fairly of the claim, and its allegations

---

[4] *Accord*: *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1418 (3d Cir. 1997); *Commerce Ins. Services, Inc. v. Szczurek*, Civ. Nos. 05-3536, 05-3565, 2006 U.S. Dist. LEXIS 515, at *18 n.8 (D.N.J. Jan. 6, 2006); *Universal Computer Consulting, Inc. v. Pitcairn Enters.*, No. 03-2398, 2004 U.S. Dist. LEXIS 2719, at *14, 2004 WL 345415, at *4 (E.D. Pa. Feb. 24, 2004) (The main purpose of Rule 9(b) "is to provide notice, not to test the factual allegations of the claim") (citation omitted); *Christidis v. First Pennsylvania Mortg. Trust*, 717 F.2d 96, 100 (3d Cir. 1983) ("[I]n applying [Rule 9(b)], focusing exclusively on its 'particularity' language is too narrow an approach and fails to take account of the general simplicity and flexibility contemplated by the rules") (citation omitted).

3

are sufficiently clear to enable defendants to answer." *Mixing and Mass Transfer Techs., LLC v. Lightnin, Inc.*, No. 4:05cv1519, 2006 U.S. Dist. LEXIS 3440, at *8, 2006 WL 14044, at *2 (M.D. Pa. Jan. 18, 2006) (citations omitted).[5]

Here, this standard is easily satisfied. First the complaint(A42-A127, paragraph numbers referenced as "¶") lays out the details of the scheme, in great detail, including:

- the content of the alleged misrepresentations and omissions, the identities of the parties who made the misrepresentations, and the reason why they were materially misleading (¶¶ 8-11, 157, 160-68, 184-85);

- how and to what extent each of Defendants' manipulations depressed EBITDA and thereby lowered Genesis' valuation (¶¶ 4, 8-10, 53-56, 58-61, 65-67, 72, 109, 111, 126-27, 142-43, 149, 150, 155-57, 161, 162(1)-(11));

- who ordered the fraudulent manipulations(¶¶ 157, 185, 161-66);

- who carried out the scheme (¶¶ 11, 19-22, 31, 125-26, 161-68);

- who was present at the meetings where the scheme was discussed(¶¶ 180(a)-(c));

- when the meetings took place (¶¶ 161-62); and

- why the Defendants engaged in the scheme (¶¶ 31, 49, 108, 161-62, 164, 168, 180(a)-(c)).

The complaint alleges that these Defendants all participated in the EBITDA manipulations and then knowingly submitted the resulting corrupted data to Chilmark and Warburg, to be used in fabricating false and misleading valuations of Genesis. (¶¶ 41-45, 161-62, 166). It further alleges that

---

[5] This interpretation accords with the Third Circuit's requirement that Rule 9(b) is to be read flexibly. "[T]he Third Circuit has instructed that in applying Rule 9(b), focusing exclusively on its 'particularity' language is too narrow an approach and fails to take account of the general simplicity and flexibility contemplated by the rules." *Mixing and Mass Transfer*, 2006 U.S. Dist. LEXIS, at *8, 2006 WL 14044, at *2 (citing *Seville*, 742 F.2d at 791). *See also Easton & Co. v. Mut. Ben. Life Ins. Co.*, Civ. No. 91-4012, 1992 U.S. Dist. LEXIS 10913, at *4-*5, 1992 WL 136857, at *2 (D.N.J. 1992) ("The Third Circuit applies a lenient, flexible reading of complaints under Rule 9(b)"), citing *Seville, id.*; *see also In re Fruehauf Trailer Corp.*, 250 B.R. 168, 198 (D. Del. 2000); *Household Int'l. Inc. v. Westchester Fire Ins. Co.*, 286 F. Supp. 2d 369, 373 (D. Del. 2003).

they conducted the fraudulent scheme through their dominant position in the Steering Committee. which met monthly ( ¶¶ 11, 19-22, 31, 161-68), and effectively controlled all of the Genesis purse strings for the duration of the bankruptcy, and they also controlled the financial fate of the individual Genesis senior managers, including the four individual defendants named in this action.

At steering committee monthly meetings with Genesis management, Defendants tracked, in detail, (a) the actual EBITDA being generated; (b) the targeted EBITDA level necessary in order to achieve a finding of senior lender impairment; (c) reconciliation of the LTM EBITDA being used for valuation purposes to the pro forma budgeted EBITDA, which was also being used for valuation purposes, to make sure that they were in agreement; (d) the EBITDA relationship of Genesis and MC; (e) the "current state of play;" (f) the various adjustments discussed in this Complaint, and their affect on the "current state of play"; (g) anticipated Medicare revenue and its potential affect on the "current state of play;" (h) the "significant exposure" created by the fact that the valuation multipliers the experts were going to be using was 20% to 30% higher for the Genesis pharmacy sector than for the nursing home sector (¶¶ 165, 185).

This, apparently, is not enough detail for Goldman, which asserts in conclusory fashion that all the claims of wrongdoing against it are too "conclusory" and are not supported by enough "specific facts". Goldman never explains, however, what "specific facts" it believes are missing from the complaint; but Goldman would apparently require Plaintiffs to provide a blow by blow description of who, exactly, said what during those closed door steering committee meetings.

That is unnecessary and, in fact, irrelevant. Although it is clear now that Goldman took the lead in instigating this scheme, every one of these Defendants participated in it and are equally culpable. Every one of them was in the steering committee meeting room each month when Genesis management described what was actually going on in connection with the Mariner, Manor Care, AGE Institute and other revenue generating transactions at issue here, and when the numbers relating to

these and other transactions were manipulated. "adjusted" and excluded from EBITDA so that the totals would fit within the committee's EBITDA target numbers. As a result, they all knew that the EBITDA data that was being submitted to the court in support of the plan was false and misleading. The problem is not that they all keep silent. but that they all knowingly submitted this false data to the Court to support their gross undervaluation of Genesis, upon which court approval of the Plan was predicated.[6]

Nothing more is required. *See e.g., Snyder v. Butcher & Co.,* C.A. No. 91C-04-0289. 1992 Del. Super. LEXIS 362, at *34, 1992 WL 240344. at *10 (Del. Super. Ct. Sept. 15, 1992)("Plaintiffs have identified the Memorandum, the specific manner in which the Memorandum is misleading, and the Defendants as those who prepared and offered the Memorandum to them. Defendants are free to deny these allegations at trial. The . . . purpose of Rule 9(b) have been fulfilled."); *Nielsen Elecs. Inst. v. Student Fin. Corp.,* No. Civ. A. No. 99-2285-JJF, 2001 U.S. Dist. LEXIS 25556, 2001 WL 343673 (D. Del. Jan. 16, 2001.[7]  Indeed, in light of the above, Mellon's exclusive focus on allegations

---

[6] Even if they had not directly manipulated these data and submit them to the court on their own behalf, Defendants' silence in the face of the financial representations made to the Court establishes a presumption of acquiescence to their accuracy. *People v. Baldassara,* 151 AD 2d 1004, 1005 (N.Y. App. Div.), *appeal denied,* 546 N.E. 2d 492 (N.Y. 1989) (where statements made by co-defendant were made in defendant's presence under circumstances where defendant heard and understood what was said and had the opportunity to reply and deny the statements if untrue, defendant's silence in the face of these statements was held to be a tacit admission of their truth).

[7] *See also Board of Trs. v. Foodtown, Inc.* 296 F.3d 164, 173 n.10( 3d Cir. 2002) (Rule 9(b) may be satisfied "if the complaint describes the circumstances of the alleged fraud with 'precise allegations of date, time, or place' or by using some means of 'injecting precision and some measure of substantiation into their allegations of fraud.'"), quoting *Naporano Iron & Metal Co. v. Amer. Crane Corp.,* 79 F. Supp. 2d 494. 511 (D.N.J. 1999) (internal citations omitted): *State Farm,* 2003 U.S. Dist. LEXIS 3374. at *13. 2003 WL 924615, at *4 ("There is no formula for pleading [the circumstances of] fraud with particularity: 'Allegations of "date, place or time" fulfill these functions. but nothing in the rule requires them. A plaintiff is free to use alternative means of injecting precision and some measure of substantiation into their allegations of fraud.'") (quoting *McHale v. NuEnergy Group,* Civ. A No. 01-4111, 2002 U.S. Dist. LEXIS 3307, at *7. 2002 WL 321797, at *3 (E.D. Pa. Feb 27, 2002) (citation omitted)); *Gurfein v. Sovereign Group,* 826 F. Supp. 890, 906 (E.D. Pa. 1993).

pertaining to the independence of Beverly Anderson is absurdly misplaced.

Plaintiffs are not required to provide "'"an exhaustive cataloging of facts"'" supporting their allegations. *In re ML-Lee Acquisition Fund II, L.P.*, 848 F. Supp. 527, 555 (D. Del. 1994) (quoting *Temple v. Haft*, 73 F.R.D. 49, 53 (D. Del. 1976), quoting *Du Pont v. Wyly*, 61 F.R.D. 615, 631 (D. Del.1973), citing *Segal v. Gordon*, 467 F.2d 602, 608 (2d Cir. 1970)).

Nor are plaintiffs required to plead: circumstances that are solely within the knowledge of defendants. *See Financial Trust Co., Inc. v. Citibank, N.A.*, 351 F. Supp. 2d 329, 331 (D.V.I. 2004) ("Courts should apply Rule 9(b) with some flexibility and should not require plaintiffs to plead issues that may have been concealed by the defendants" (citing *Rolo v. City Investing Co. Liquidating Trust*, 155 F.3d 644 (3d Cir. 1998)). Here, the steering committee meetings were conducted in private. Plaintiffs are not required to plead information about those meetings that could be known only by Defendants or a "fly on the wall".[8]

### B. This is Not Impermissible "Group Pleading"

Highland and Mellon argue that the fraud claims fail to identify specific representations or other acts committed by them alone but, instead, improperly lump them all together into an undifferentiated "group". In Highland's view, this is "group pleading" that is permissible only when all the participants in the fraud are officers of the same company. Highland Mem. at 7-10. Mellon

---

[8] *See also Board of Trs. v. Foodtown, Inc.* 296 F.3d 164, 173 n.10( 3d Cir. 2002) (Rule 9(b) may be satisfied "if the complaint describes the circumstances of the alleged fraud with 'precise allegations of date, time, or place' or by using some means of 'injecting precision and some measure of substantiation into their allegations of fraud.'"), quoting *Naporano Iron & Metal Co. v. Amer. Crane Corp.*, 79 F. Supp. 2d 494, 511 (D.N.J. 1999) (internal citations omitted); *State Farm*. 2003 U.S. Dist. LEXIS 3374. at *13, 2003 WL 924615. at *4 ("There is no formula for pleading [the circumstances of] fraud with particularity: 'Allegations of "date, place or time" fulfill these functions, but nothing in the rule requires them. A plaintiff is free to use alternative means of injecting precision and some measure of substantiation into their allegations of fraud.'") (quoting *McHale v. NuEnergy Group*, Civ. A No. 01-4111. 2002 U.S. Dist. LEXIS 3307. at *7, 2002 WL 321797, at *3 (E.D. Pa. Feb 27, 2002) (citation omitted)); *Gurfein v. Sovereign Group*, 826 F. Supp. 890, 906 (E.D. Pa. 1993).

adds that the complaint only ascribes one specific. but insignificant act to a Mellon person identified by name. Mellon Mem. at 9-11. Given that Mellon routinely made submissions to the bankruptcy court – including the all-important submission of the Chilmark report and its supporting "LTM EBITDA" – in its capacity as "administrative agent for the senior lenders". its objection on "group pleading" grounds is especially ironic. (A58. ¶21; A67, ¶43).

The "group pleading" doctrine is designed for cases where a corporation issues misleading statements and the complaint indiscriminately tries to hang those statements on a large number of senior executives on the basis of their positions at the company, without specifying exactly how each of them was involved. For example. in *MBIA Ins. Corp. v. Royal Indem. Co.*, 221 F.R.D. 419, 422 (D. Del. 2004), in upholding plaintiff's treatment of related entities as a group in alleging fraud, the court held that

> [T]he Court concludes that each Third-Party Defendant in the SFC Group of Entities has notice of the allegations against which they must defend, thus distinguishing the instant action from cases where courts are compelled to dismiss complaints because of vague attributions of fraudulent statements to "defendants."

(Citations omitted.)

This complaint does not "vaguely attribute" the false representations to these Defendants. To the contrary, it alleges with great specificity that *all* these Defendants were responsible for these misrepresentations, essentially by (1) knowingly imposing and approving the various EBITDA manipulations at senior creditor steering committee meetings with Genesis management. and (2) knowingly submitting the end result of those manipulations – the EBITDA data itself and the valuation reports based on that data -- to the court and the debentureholders, in their papers seeking approval of the Genesis reorganization Plan – as a group acting through their "administrative agent". Mellon Bank.

Given that the complaint makes specific allegations about the involvement of each of these Defendants – all of whom were present at the steering committee meetings – the "group pleading"

8

doctrine is irrelevant. Nor were Plaintiffs required to allege that Highland or, for that matter, Mellon or Goldman, did anything different from the other Defendants, because they all participated in the fraudulent scheme together. What counts is that we connected them all to the fraudulent representations, most notably their knowing submission of fraudulent information to the Court and the debentureholders, as part of their own motion to approve the Plan.

### C. These Are Not "Normal Business Practices"

Goldman, for its part, claims that the allegations against it describe only "normal business practices of a creditor in a bankruptcy proceeding", coupled with "conclusory, unsupported" allegations of wrongdoing. Goldman Mem. at 2-4. In describing its "normal business practices", Goldman confines itself to background allegations of the complaint, and does not talk about the complaint's allegations concerning its involvement in the fraud. Goldman does not, and cannot, claim that causing a debtor to cook its books, and misleading the junior creditors and the Court about it so that the senior creditors can steal the company, is a "normal business practice" of a creditor.

### D. The Complaint Establishes Scienter With Respect to Each Defendant

Rule 9(b) expressly allows for a "general" allegation of defendants' scienter. Particularity is not required. *See Weiner v. Quaker Oats Co.*, 129 F.3d 310, 318 n.8 (3d Cir. 1997) ("[s]cienter 'need not be [pleaded] with "great specificity."'" (citation omitted, alteration in original);. *Easton*, 1992 U.S. Dist. LEXIS 10913, at *4-*5, 1992 WL 136857, at *2. While requiring that "the circumstances constituting fraud or mistake shall be stated with particularity," Rule 9(b) expressly provides that "[m]alice, intent, knowledge, and other condition of mind of a person may be averred *generally*." Fed. R. Civ. P. 9(b) (emphasis added). In determining whether a complaint satisfies this standard, the court should look at the totality of the allegations, and whether their *collective* impact demonstrates a strong inference of scienter. *See Florida State Bd. of Admin. v. Green Tree Fin. Corp.*, 270 F.3d 645, 660 (8th Cir. 2001) (securities fraud claim properly stated if allegations "collectively

9

add up to a strong inference of the required state of mind").[9]

It is well-settled that scienter can be alleged by either (1) "'a motive and an opportunity to commit fraud.'" or (2) facts indicative of "'either reckless or conscious behavior.'" *In re Penn Treaty Am, Corp. Secs. Litig*, 202 F. Supp. 2d 383, 391 (citation omitted); *see also In re Reliance Sec. Litig.*, 91 F. Supp. 2d 706, 724 (D. Del. 2000). Here, the Complaint identifies numerous compelling facts in support of Defendants' motivation to commit fraud, as well as knowing or reckless misconduct.

### 1. Each Defendant Had Knowledge of the Misrepresentations

Mellon attempts to discredit the complaint's scienter allegations by calling them conclusory or vague. Mellon Mem. at 13-14. However, the allegations are far from vague. For example, Plaintiffs have alleged:

- that these Defendants all knew from Hager that, although the Budgeted and LTM EBITDA reflected a loss of the entire Mariner business, the Mariner contract had already been extended and that the Mariner business would therefore not be lost (¶¶ 123, 125, 127-28).

- that, based on information Hager and other senior management at Genesis had given them at the August 8, 2000 steering committee meeting, Genesis' insurance reserve requirements were not nearly as great as the amount of insurance reserves Genesis was posting and was charging against EBITDA (¶¶ 61-68).

- that these Defendants all knew that LTM EBITDA excluded 10% of the sales to Manorcare, even though there was no basis to believe that these revenues would actually be lost. (¶¶ 110-18)

- that they knew from a meeting with Genesis that the reductions to EBITDA for the

---

[9] *See also Adams v. Kinder-Morgan, Inc.*, 340 F.3d 1083, 1092 (10th Cir. 2003) ("district court must evaluate 'the totality of the pleadings'") (citation omitted); *Broudo v. Dura Pharms., Inc.*, 339 F.3d 933, 940 (9th Cir. 2003) ("'Beyond each individual allegation we also consider "whether *the total of plaintiffs' allegations*, even though individually lacking, are sufficient . . . .'"'") (emphasis in original) (quoting *No. 84 Employer-Teamster Joint Council Pension Trust Fund v. Am. West Holding Corp.*, 320 F.3d 920, 938 (9th Cir.2003) (quoting *Lipton v. PathoGenesis Corp.*, 284 F.3d 1027, 1038 (9th Cir.2002) (emphasis added)), *rev'd on other grounds*, 125 S. Ct. 1627 (2005); *Aldridge v. A.T. Cross Corp.*, 284 F.3d 72, 82 (1st Cir. 2002); *Nathenson v. Zonagen*, 267 F.3d 400, 424 (5th Cir. 2001); *In re Scientific Atlanta, Inc.*, 239 F. Supp. 2d 1351, 1362-63 (N.D. Ga. 2002) (viewed in their totality, allegations supported strong inference of scienter), *aff'd sub nom. Phillips v. Scientific-Atlanta, Inc.*, 374 F.3d 1015 (11th Cir. 2004).

> loss of the AGE Institute business were less than the actual amounts lost (¶¶ 55, 132-33).

- that they knew that their "budgeted" figure for the pharmacy cost of goods sold was materially overstated (¶ 144).

- that by March 13, 2001, at the latest, they knew, through a steering committee meeting, that LTM EBITDA included an improper deduction for non-recurring expenses, such as the costs of the First Choice Plan and of the executive Special Recognition Program (¶¶ 9, 56. 136, 143).

- that they knew. from meetings with Genesis management, that the improvement in the Medicare census required an upward adjustment in EBIDTA. (¶¶ 149-50).

- in short. that they knew that the financial information being released by Genesis was false and misleading (¶ 191) and that without the manipulations, LTM EBITDA would have been significantly higher than Budgeted EBITDA data, and that the Budgeted EBITDA had turned out to be grossly off the mark (¶¶ 55, 152).

Despite their knowledge that the figures had been manipulated, Defendants nonetheless made affirmative use of them by intentionally feeding to them to their advisor and Chilmark. then submitting the resulting Chilmark valuations in support of the Plan.   In so doing, they deceived the debentureholders and the bankruptcy court.

## 2. Defendants' Motive and Opportunity

Goldman and Highland each also had sufficient motive and opportunity to commit the fraud.[10] Their motive is self-evident: the Plan gave the senior lenders over 94% of the newly issued Genesis stock. By undervaluing the company. they persuaded the court that the value of Genesis' stock was barely enough to cover the senior creditors' claims. and that little if anything could be left over to

---

[10] Mellon claims that it had no motive to commit fraud because by the time of Plan confirmation it had already sold off all its senior creditor claims against Genesis and therefore did not benefit from the allocation of shares provided by the Plan. Although that argument, if proven. could potentially short-circuit the "motive and opportunity" method of proving scienter, it would not absolve Mellon because the complaint alleges that they knew that the EBITDA and resulting valuations had been manipulated but nonetheless represented to the court that this data should be relied upon in determining whether to approve the Plan.

11

satisfy the claims of junior creditors. In effect, the lower the valuation of Genesis, the greater the share of Genesis stock each of the Defendants would receive through the bankruptcy (¶ 108).[11]

After confirmation of the Plan. Goldman took complete control of Genesis. It held over 15% of the common stock (the largest block by a factor of two) and its managing director. Jody LaNassa, is one of the six members of the board and is also a member of the compensation committee (¶ 168).

In fact, from the start Goldman and Highland viewed the entire bankruptcy proceeding as an opportunity to make a quick killing. They had aggressively purchased Genesis debt participations at drastic discounts and then joined the senior lender steering committee; they then used that position to push Genesis precipitously into bankruptcy. After they had pushed the Plan through. they walked away with hundreds of millions of dollars in gains within an 18 month period.(¶¶ 19. 21. 22. 30, 31. 37). [12]

These Defendants' opportunity to manipulate these valuations is also self-evident. Not only did they meet regularly with Genesis officials. as the steering committee, to review and give input with respect to Genesis' results, they had more than enough financial leverage to get Genesis' senior management to cooperate with their plan. They authorized immensely lucrative retention bonuses for Genesis senior management (¶ 164); and within a year after confirmation of the Plan three of the four recipients of these retention payments had departed from the Company and had cashed in their severance benefits, totaling an additional $10 million in cash and other benefits. These packages.

---

[11] In addition to 94% of the common stock. the Plan also gave the senior creditors $195 million in "adequate protection payments", and new senior notes in the face amount of $94.9 million, shares of the new convertible preferred stock with an aggregate liquidation preference of $31 million (¶ 49).

[12] Their motive of self-enrichment is apparent from Goldman's notes of the the March 2000 steering committee meeting. When management proposed that Genesis' debts be restructured so that the junior bonds could be repurchased at a deep discount to market, the response of the Goldman representative. Jody LaNassa, as recorded in his notes, was "R U Nuts?" (¶¶ 161-62). Such a plan would be far too generous to the debentureholders for LaNassa's taste.

when offered, had a value that was about three times the value of compensation paid to senior executives at comparable companies (¶¶ 180(a)-(c)).

### E.  The Complaint Adequately Pleads Justifiable Reliance

Highland is the only defendant that challenges Plaintiffs' allegations related to reliance. Highland claims that Plaintiffs have failed to allege what actions they took or refrained from taking in reliance on the false statements. This argument is preposterous. Had they known the concealed facts concerning such issues as Mariner, Manorcare, AGE Institute, the non-recurring charges and the improper increases in insurance reserves and in pharmacy costs of good sold, for example, Plaintiffs would have challenged the EBITDA data on those grounds, the court would have thrown out both the Chilmark and the Warburg valuations, and the Plan would not have been confirmed. Indeed, Highland admits that Plaintiffs have properly alleged that they relied on the integrity of the Budgeted and LTM Data during the confirmation process. Highland Mem. at 11.[13]

In this case, Defendants concealed material facts, on which Plaintiffs relied. This case, is similar to other concealment cases, where the reliance element has been satisfied. "Fraud may also occur through deliberate concealment of material facts, or by silence in the face of a duty to speak." *Edwards v. William H. Porter, Inc.*, Civ. A. No. 88C-OC-174, 1991 Del. Super. LEXIS 315, at *10, 1991 WL 165877, at *4 (Del. Super. Ct. July 26, 1991) (citing *Schmeusser v. Schmeusser*, 559 A.2d 1294, 1297 (Del. 1989)), *aff'd*, 616 A.2d 838 (Del. 1992). For example, the Supreme Court of Delaware, in *Casson v. Hornberger*, No. 159, 1990, 587 A.2d 454 (Table) (Text in LEXIS and Westlaw), 1991 Del. LEXIS 41, 1991 WL 22364 (Del. Jan. 28, 1991) (Unpublished Disposition), found that a wife committed fraud against a husband in their divorce proceedings by failing to disclose

---

[13] The objections included: the objection to the disclosure statement by Charles Grimes, a debentureholder, dated June 29, 2001; an objection to the disclosure statement of the GMS Group, an investment advisory firm representing many debentureholders, dated July 2, 2001: the GMS Group's objection to confirmation of the Plan, dated August 17, 2001; and Mr. Grimes' objection to confirmation, dated August 21, 2001.

13

to the court that their son dropped out of high school, and obtained a full time job, and therefore, was
not amenable to child support. The court found that the mother's testimony at the child support
hearing was false; that the Mother knew the statements were false, and intended to:

> "[D]eceiv[e] and defraud[] Father and this Court. Mother had an affirmative obligation to
> disclose the fact that Stephen, Jr. was no longer enrolled in high school and was working
> full-time. Likewise, Mother had an obligation to tell the truth in her representation through
> counsel and, especially, in her testimony to this Court. Mother intentionally breached these
> obligations in order to deceive Father and this Court.

*Id.* LEXIS, at *3, WL, at **1. The court reiterated its holding that:

> "[F]raud in Delaware does not consist solely of overt misrepresentations made in
> order to cause damage to third parties, who act in reliance upon such statements, but
> may also occur through deliberate concealment of facts and silence in the face of a
> positive duty to speak. *Nicolet, Inc. v. Nutt*, Del. Supr., 525 A.2d 146, 149 (1987);
> *Stephenson v. Capano Development, Inc.*, 462 A.2d at 1074. Moreover, the very
> special and unique jurisdiction of the Family Court requires complete candor and
> fairness by parties to proceedings before it. *Cf. Bruce E.M. v. Dorothea A.M.*, Del.
> Supr., 455 A.2d 866 (1983)."

*Id.* LEXIS, at *4, WL, at **2 (alteration in original)(quoting *Schmeusser v. Schmeusser*, 559 A.2d
1294, 1295-96 (Del. 1989) where the Family Court found that husband's omission of material
statements to the court constituted fraud on *both* the court and the plaintiff related to property
distribution).

Similarly, defendants in the case at bar deliberately concealed material facts from both
Plaintiffs and the court. They had a duty to render the misleading statements, wherein they knew that
the information given to the unsecured creditors at several unsecured creditor meetings was false, as
well as the information they gave to their experts, on which the LTM and Budgeted EBIDTA was
based. They had a duty to both the plaintiffs and the court, and the Court should not tolerate this lack
of candor and fairness during the court proceedings.

Highland alludes to one case. *Brug v. Enstar Group, Inc.*, 755 F.Supp. 1247 (D. Del. 1991),
Highland Mem. at 11, but in that case there were no allegations that plaintiffs relied on the challenged
documents. To the contrary, in the instant matter, the plaintiffs allege that the they relied on the

14

misrepresentations for valuing the Company.

## II. THE COMPLAINT STATES A CLAIM FOR CIVIL CONSPIRACY

To plead a cause of action for civil conspiracy. plaintiffs must allege a combination of two or more persons, an unlawful act done in furtherance of the conspiracy, and damages. *Outdoor Techs. v. Allfirst Fin.*, C.A. No. 99C-09-151 WTQ. 2000 Del. Super. LEXIS. at *18. 2000 WL 141275, at *6 (Del. Super. Ct. Jan. 24, 2000).[14]

Contrary to Highland's assertion, Plaintiffs have pled the period of the conspiracy (throughout the bankruptcy proceedings and confirmation of the Plan); the object of the conspiracy (to manipulate EBIDTA downwards in order to squeeze out the junior creditors and receive all of the equity in the newly formed Company): and the ways the Defendants achieved this (as described throughout this briefing).[15] These allegations satisfy the pleading requirements for a conspiracy. *See e.g., Airlines Reporting*, 2004 U.S. Dist. LEXIS 7381, at *10, 2004 WL 903800. at *3 (court upheld conspiracy claim finding that defendants alleged that all three defendant officers conspired and participated in the alleged fraud. "Only [Defendant] employees, like the three defendants named in this action, would know who participated in the alleged *fraud.* I will not require [Plaintiff] to plead how each participated without the benefit of discovery.") (emphasis added. citations omitted).

---

[14] Contrary to Highland's assertion, civil conspiracy does not require additional allegations of "aiding and abetting.

[15] Mellon's argument that Rule 9(b) applies to conspiracy claims is incorrect. *See Official Comm. of Unsecured Creditors ex rel. SmarTalk Teleservices, Inc. Bankruptcy Estate v. Donaldson, Lufkin & Jenrette Sec. Corp.*, No. 00 Civ. 8688, 2002 U.S. Dist. LEXIS 3747. at *19, 2002 WL 362794, at *6 (S.D.N.Y. Mar. 6, 2002). Highland cites *Odyssey Re (London) Ltd. v. Stirling Cooke Brown Holdings Ltd.*. 85 F. Supp. 2d 282 (S.D.N.Y. 2000). *aff'd.* 242 F.3d 366 (2d Cir. 2001) as support for this proposition; however. this case actually supports plaintiffs' position. In *Odyssey*, the plaintiff alleged causes of action under common law fraud and RICO—the conspiracy claim was actually an allegation of a violation of RICO's conspiracy provision under 18 U.S.C. § 1962(d). The court, in analyzing the common law claim, specifically held that 9(b) does not apply to conspiracy ("the Second Circuit found that pleadings of conspiracy, as distinguished from the underlying acts of fraud, are properly measured under the 'more liberal pleading requirements of Rule 8(a).' *See* Fed. R. Civ. P. 8(a)"). *Id.* 85 F. Supp. 2d at 298 n.21.

15

Finally. Highland contends that Plaintiffs' Complaint fails to allege any actions taken by Highland in furtherance of the Conspiracy. Yet Highland participated in the submission of false information to the Court in support of its application for approval of the Plan (¶¶ 192-93).

### III. DEFENDANTS OWED PLAINTIFFS A DUTY OF CARE WHEN THEY MADE AFFIRMATIVE REPRESENTATIONS IN THE BANKRUPTCY PROCEEDINGS

Count III of the complaint alleges, in the alternative. that Defendants acted with gross negligence when they submitted the false EBITDA data in the bankruptcy proceedings. All three of these Defendants now argue that this cause of action should be dismissed because they. as senior creditors. owed no duty of care to other creditors in the reorganization proceedings.[16] Whether such a duty exists in a particular case is "often a fact-specific inquiry reserved for a jury" or other finder of fact. *Official Comm.*, 2002 U.S. LEXIS, at \*28, 2002 WL 362794 at \*9 (citation omitted). *see also In re Lois/USA, Inc.*, 264 B.R. 69. 120 (Bankr. S.D.N.Y. 2001).

Where a party makes affirmative representations that it has reason to believe a third party will rely upon, he has a duty of care. For example, in *Prudential Ins. Co. v. Dewey, Ballantine, Bushby, Palmer & Wood*, 605 N.E.2d 318, 320, 322 (N.Y. 1992), the New York Court of Appeals held that a duty of care can exist when a defendant is aware that his or her statements will be used for a particular purpose, where the plaintiffs have, in fact, relied on those statements, and where defendant understands that plaintiffs are going to rely upon these statements.

Section 552 of the Restatement (Second) of Torts (1977) further supports the existence of a duty. It provides that a party who negligently supplies false information "for the guidance of others in their business transactions". is liable for losses suffered as a result of their justifiable reliance thereon, if the plaintiff is among a "limited group" of persons "for whose benefit he intends to supply

---

[16] Genesis does not make this argument. because. as debtor in possession. it unquestionably had a fiduciary duty to the estate. including the unsecured creditors. *Hanson, Jones & Leta, P.C. v. Segal*, 220 B.R. 434, 450. 458 (D. Utah 1998).

the information."  Recently, the Delaware courts have been increasingly inclined to follow the principles of the *Restatement*. *See Carello v. PricewaterhouseCoopers LLP* , No. 01C-10-219. 2002 Del. Super. LEXIS 180, at \*20-\*21. 2002 WL 1454111, at \*5-\*6 (Del. Super. Ct. July 3. 2002): *Playtex v. Columbia Casualty*, No. 88C-MR-233, 1993 Del. Super. LEXIS 286, at \*23, 1993 WL 390469 at \*8 (Del. Super. Ct. Sept. 20, 1993); *Guardian Constr. Co. v. Tetra Tech Richardson, Inc.*, 583 A.2d 1378 (Del. Super. Ct. 1990).

Furthermore, the Delaware Supreme Court has found that a legal duty to speak arises "'when disclosures are necessary to prevent statements actually made from being misleading.'"  *First Fed. Sav. Bank v. CPM Energy Sys., Corp.*, Civ. A. No. 88C-MY-249-1-CV, 1993 Del Super. LEXIS 138. at \*14, 1993 WL 138986, at \*4 (Del. Super. Ct. Apr. 22, 1993). quoting *Nicolet, Inc. v. Nutt*. 525 A.2d 146, 149 (Del. 1987). *See also Stephensen v. Capano Dev., Inc.*. 462 A.2d 1069, 1074 (Del. 1983).

Here, Goldman. Highland and Mellon supplied the Chilmark valuation, with the LTM EBITDA data attached. to the court and to the debenture holders (among others), for "guidance" in connection with the decision to approve the Plan. They knew the court, Chilmark, and the debenture holders would rely on this data.  The bankruptcy court confirmed the Plan based on the misleading information provided by Defendants, thereby damaging Plaintiffs.  Under these circumstances, Defendants had a duty of care.

In addition. Defendants owed a duty of care to Plaintiffs because Defendants effectively controlled Genesis.  The complaint describes numerous facts concerning the senior creditor Defendants' exercise of effective control over the affairs of Genesis.  "'Once a creditor assumes control over a debtor's operations, it assumes a duty to deal fairly with the debtor and its creditors, and its conduct is subjected to the scrutiny of the court.'"  *Lois/USA*. 264 B.R. at 136 n.169 (quoting Andrew DeNatale and Prudence B. Abram, *The Doctrine of Equitable Subordination as Applied to Nonmanagement Creditors.* 40 BUS. LAW. 417. 424-25 (Feb. 1985)).

These Defendants' control, moreover, extended in particular to the formulation of the reorganization Plan, which was engineered to benefit them at the expense of the junior creditors. Thus, although they were not specifically identified as the Plan "proponents" (a title assumed by Genesis and MC), they were, de facto, the proponents of that Plan. Not only were they the moving force behind the formulation and propagation of the Plan, they also submitted evidence, in the form of the Chilmark valuation report, that proved critical in securing Court approval of the Plan. It is beyond peradventure that a plan proponent owes a duty to propose a plan in good faith. *In re Tenn-Fla Partners*, 226 F.3d 746, 749 (6th Cir. 2000).

*In re Hechinger Inv. Co. of Del., Inc.*, No. 00-973-SLR, 2004 U.S. Dist. LEXIS 5537, 2004 WL 724960 (D. Del. Mar. 28, 2004), upon which Defendants rely, is irrelevant. The alleged misconduct in that case was a corporation's violation of its contractual obligations to junior creditors, which put a limitation on the ability of the company to incur additional senior debt. In that case, the court rejected an effort by the junior creditors to impose an equitable lien on the corporation, to the detriment of the senior creditors. The court held that senior creditors, in entering into business transactions with a borrowing corporation, had no duty, absent a "badge of fraud," to conduct an investigation to assure that the rights of junior creditors were not being violated by their loan transaction.

Plaintiffs are not seeking to impose on the senior lenders such a free-floating duty to investigate and protect other creditors from someone else's violations. Rather, Plaintiffs are seeking to hold these Defendants responsible for their own actions and misrepresentations. Goldman and Highland deliberately interjected themselves into the Genesis bankruptcy, by buying up its distressed senior debt, and then were instrumental in the formulation of the Genesis reorganization Plan, so as to maximize their own financial gain. In so doing, they and Mellon collaborated with Genesis in formulating its EBITDA data, and in making adjustments to those data, which had the effect of

18

artificially depressing Genesis' perceived valuation. Their conduct culminated in the submission, *on their behalf*, of false and misleading financial information to this Court, to persuade it to approve a Plan that effectively transferred hundreds of millions of dollars of value from the debenture holders to themselves. This affirmative conduct, plaintiff submits, creates a duty on their part to exercise due care.

## IV. APPELLANTS HAVE STANDING TO PURSUE THESE CLAIMS

Only Highland challenges plaintiffs' standing, arguing that the claim belongs to Genesis' bankruptcy estate, not to plaintiffs. This contention is baseless. Plaintiffs' causes of action are *against* Genesis, as well as its senior creditors. It is the Plaintiffs who were injured – not Genesis.

Highland contends that these claims belong to Genesis because they involve conduct that "devalued" the estate and, therefore, injured Genesis directly and its creditors only indirectly. Highland is engaging in second-rate semantics. This case challenges the *valuation* of Genesis – that Defendants made Genesis appear less valuable than it actually was. It does *not* allege that Defendants did something to Genesis that lowered its *actual* value.

In support of its argument Highland cites two cases, both of which Highland is attempting to misuse here. In *In re Educators Group Health Trust*, 25 F.3d 1281 (5th Cir. 1994), the plaintiffs had purchased health insurance from a company (the "Trust"), which subsequently went bankrupt. Plaintiffs then sued the trustees of the Trust, alleging that they had mismanaged the Trust and had made misrepresentations to them directly concerning the financial condition of the Trust. Highland points to that part of the bankruptcy court's decision holding that the mismanagement claims belonged to the Trust's bankruptcy estate; but they ignore the other part of the decision that allowed the plaintiffs to prosecute, on their own behalf, claims arising from defendants' representations to them. The Fifth Circuit held that

> We do agree, however, with the plaintiff school districts' contention that some of
> the causes of action allege a direct injury to themselves, which is not derivative of any harm

19

> to the debtor. For example. the plaintiff school districts allege in paragraph XI of the complaint that the defendants intentionally misrepresented *to them* the financial situation of EGHT. and that they materially relied on such representations to their detriment. To the extent that this cause of action and others allege a direct injury to the plaintiff school districts. they belong to the plaintiff school districts and not the estate.

*Id.* at 1285 (emphasis in original).

In the present case. Plaintiffs are not alleging that they were injured indirectly by Defendants' mismanagement of Genesis. The claim concerns representations made by these Defendants, concerning Genesis' financial condition. that Plaintiffs relied on and which caused a "direct injury" to them.

Similarly, in *In re Granite Partners, LP*. 194 B.R. 318 (Bankr. S.D.N.Y. 1996), shareholders of Granite Partners sued the company (now a bankrupt) and its investment advisor and broker-dealer. The court held that claims alleging injury to the company caused by the other defendants belonged to the company itself, not to the investors: but that claims that the advisor and broker-dealer made representations to the investors themselves, which injured them directly, belonged to the investors. This principle does not help Highland here. because Plaintiffs are alleging a direct injury caused specially to them, and not some injury to Genesis that injured all its creditors indirectly.

Furthermore, Highland's reliance on *In re Kollar*, 176 F.3d 175(3d Cir. 1999) is equally misplaced. There, the plaintiff suffered a slip and fall accident before filing for bankruptcy, and sued for damages after the filing. There was no question that the debtor was the injured party and therefore owned the cause of action: nor was there any doubt that the claim had accrued before the bankruptcy filing.

Finally, contrary to Highland's assertion, the damages caused by the Defendants' fraud are not common to Plaintiffs and Genesis. The complaint in this action does not allege that Genesis itself suffered any injury from its own fraud, and the senior creditors' fraud.

## CONCLUSION

For the reasons stated above and in Plaintiffs' opening memorandum on this appeal, the

judgment of the bankruptcy court should be reversed.

Dated: March 6, 2006

Respectfully submitted,

By: /s/ R. Bruce McNew
Delaware Bar No. 967             .
TAYLOR & McNEW LLP
2710 Centerville Road, Suite 210
Wilmington. DE 19808
Telephone: (302) 655-9200

Stanley M. Grossman
H. Adam Prussin
POMERANTZ HAUDEK BLOCK
 GROSSMAN & GROSS LLP
100 Park Avenue. 26th Floor
New York, N.Y. 10017-5516
Telephone: (212) 661-1100

Leigh Handelman Smollar
POMERANTZ HAUDEK BLOCK
 GROSSMAN & GROSS LLP
One North LaSalle Street, Suite 2225
Chicago, IL 60602-3908
Telephone: (312) 377-1181

*Attorneys for Plaintiffs-Appellants*

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 6th day of March 2006, he caused a true and correct copy of the foregoing **PLAINTIFFS-APPELLANTS' REPLY TO DEFENDANTS-APPELLEES' SUPPLEMENTAL MEMORANDA** to be served upon the following counsel by hand delivery:

Steven K. Kortanek, Esquire
Klehr Harrison Harvey Branzburg & Ellers LLP
919 Market Street, Suite 1000
Wilmington. DE 19801
**Counsel for Defendant Goldman Sachs & Co.**

Teresa K. D. Currier, Esquire
Klett Rooney Lieber & Schorling
The Brandywine Building
1000 West Street, Suite 1410
P.O. Box 1397
Wilmington, DE 19899
**Counsel for Defendant Mellon Bank NA**

Russell C. Silberglied, Esquire
Richards, Layton & Finger, P.A.
P.O. Box 551
Wilmington, DE 19899
**Counsel for Defendant Neighborcare, Inc.**

Daniel K. Hogan, Esquire
1311 Delaware Avenue
Wilmington. DE 19806
**Counsel for Defendant Highland Capital Management, L.L.P.**

Robert S. Brady, Esquire
Young Conaway Stargatt & Taylor, LLP
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19899-0391
**Counsel for Defendant George V. Hager**

1

Laura Davis Jones, Esquire
Pachulski Stang Ziehl Young Jones & Weintraub P.C.
919 North Market Street, Suite 1600
P.O. Box 8705
Wilmington, DE 19899-8705
**Counsel for Creditor Committee**

Joseph J. McMahon, Jr.
Office of U.S. Trustee
844 King Street, Suite 2313
Lockbox 35
Wilmington, DE 19801-3519
**Trustee**

March 6, 2006

R. Bruce McNew, Esquire (# 967)
Taylor & McNew, LLP
2710 Centerville Road, Suite 210
Wilmington, Delaware 19808
(302) 655-9200

2